2020-2118, -2181, 2021-1664, -1667

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**BRIGHT DATA LTD.,**

**Plaintiff-Cross-Appellant**

**v.**

**BI SCIENCE (2009) LTD.,**

**Defendant-Appellant**

**BI SCIENCE INC.,**

**Defendant.**

**Appeals from the United States District Court for the Eastern District of Texas in No. 2:18-cv-00483-JRG, Chief Judge J. Rodney Gilstrap**

## APPELLANT'S NON-CONFIDENTIAL EMERGENCY MOTION TO STAY ENFORCEMENT OF THE DISTRICT COURT'S ORDER AND FINAL JUDGMENT

Michael A. Charish
**Charish Law Group, P.C.**
347 Fifth Avenue, Suite 1402
New York, New York 10016
646.328.0183

John Christopher Rozendaal
William H. Milliken
**Sterne Kessler Goldstein & Fox PLLC**
1100 New York Avenue, NW
Washington, DC 20005
202.371.2600

*Counsel for Appellant BI Science (2009) Ltd.*

Dated:  July 26, 2021

# TABLE OF CONTENTS

BACKGROUND ..........................................................................................3

ARGUMENT ...........................................................................................10

I.     Stays Pending Appeal Serve Important Public-Policy Goals. ...........10

II.    All Four Factors of the Stay Calculus Favor Granting a
Stay Pending Appeal ..........................................................................11

     A.    BI Science Has a Substantial Case on Appeal. ........................11

          i.     BI Science has shown it is not subject to personal
jurisdiction in Texas. .......................................................11

          ii.    BI Science has shown that the unsigned Mediator's
Proposal is unenforceable. ..............................................12

     B.    BI Science Cannot Survive Without a Stay. ............................14

     C.    A Temporary Stay Will Not Materially Harm Bright Data. ......16

     D.    A Stay Pending Appeal Serves the Public Interest. ..................21

CONCLUSION ........................................................................................22

\*     \*     \*

## CONFIDENTIAL MATERIAL OMITTED

The redactions in this non-confidential version of BI Science's emergency motion relate to information derived from the district court's final judgment, which is currently under seal. The parties have jointly moved the district court to unseal the final judgment and associated materials and are awaiting a decision on that motion.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barton v. Resort Dev. Latin Am., Inc.*,
　413 S.W.3d 232 (Tex. App. 2013)....................................................17

*Holt Atherton Indus., Inc. v. Heine*,
　835 S.W.2d 80 (Tex. 1992)..............................................................17

*Nat'l Instruments Corp. v. Mathworks, Inc.*,
　2003 WL 24049230 (E.D. Tex. 2003),
　*aff'd* 164 F. App'x 997 (Fed. Cir. 2006) ..........................................21

*Nken v. Holder*,
　556 U.S. 418 (2009)...................................................................10, 15

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
　897 F.2d 511 (Fed. Cir. 1990) ............................................10, 11, 15

*Wang Laboratories, Inc. v. Applied Computer Sciences, Inc.*,
　958 F.2d 355, 357 (Fed. Cir. 1992). ................................................13

## Other Authorities

Fed. Cir. R. 8(c) ............................................................................3, 11

Fed. R. App. P. 8(a)(2)(A)(ii) ..............................................................11

Fed. R. App. P. 8(a)(2)(E).....................................................................16

Tex. R. Civ. P. 11.........................................................................12, 13

**CONFIDENTIAL MATERIAL DELETED**

Pursuant to Federal Rule of Appellate Procedure 8(a)(2) and Federal Circuit Rule 8, Appellant BI Science (2009) Ltd. moves for an emergency stay of the district court's February 1, 2021 Final Judgment pending appeal. Counsel for Bright Data indicated that Bright Data opposes this motion.

BI Science's very existence hinges on the outcome of this motion. Absent a stay, BI Science will suffer catastrophic and irreversible harm that will likely put it out of business, thus rendering any appeal right illusory. BI Science urgently needs this relief. And both the law and the equities counsel in favor of granting it.

The Final Judgment is a virtual corporate death sentence for BI Science. It Information relating to sealed judgment as well as a Information relating to sealed judgment. *See* Exhibit A (Final Judgment). The Final Judgment imperils BI Science by: (1) requiring Information relating to sealed judgment; and (2) according to Bright Data (though disputed by BI Science), compelling Information relating to sealed judgment.[1]

BI Science appealed the Final Judgment to this Court and has filed its principal brief. But, in view of recent developments, appellate relief in the normal

---

[1] The dispute arises from the fact that the Mediator's Proposal contains two contradictory terms, one stating that Information relating to sealed judgment and the other stating that ▮▮▮▮▮▮▮▮.

**CONFIDENTIAL MATERIAL DELETED**

course would arrive too late to save BI Science.

In violation of the Final Judgment — which unequivocally provides that

"Information relating to sealed judgment

" — Bright

Data has prosecuted enforcement proceedings against BI Science in Israel (where

both companies are headquartered) under Israeli and international law.  BI Science

learned late last month that Bright Data obtained an *ex parte* order in Israel

appointing a receiver to enforce the Arbitration Award that BI Science is appealing

in this Court.  The receiver has notified all of BI Science's proxy-service

customers that they are to be transferred to Bright Data.  That transfer is set to take

place on August 16, 2021.  If BI Science loses all of its customers — whether

those customers agree to be transferred to Bright Data or seek service from

someone else entirely — it would self-evidently cause BI Science catastrophic and

irreparable harm.  Indeed, if the judgment is not stayed before August 16, this

appeal will likely be mooted because BI Science's business will cease to exist.

BI Science moved the district court for a stay pending appeal on April 5,

2021.  On June 28, 2021 — after BI Science learned of the *ex parte* order in Israel

— BI Science requested an emergency status conference on its motion.  At the July

1, 2021 conference, the district court suggested that the parties negotiate and agree

on a form of security that would protect Bright Data's rights if the judgment is

stayed pending appeal.  BI Science has proposed such security, but Bright Data has rejected BI Science's proposal.

On July 16, 2021, BI Science filed a supplement to its motion to stay advising the district court that it was prepared to deposit $███████ with the court as security.  This amount is expressly based on the Final Judgment and is more than adequate to protect Bright Data's rights if the court grants a stay.  The district court has not yet ruled on BI Science's stay motion.  In view of the imminent loss of its business, BI Science cannot wait any longer to seek relief in this Court.  *See* Fed. Cir. R. 8(c).

BI Science's appeal is meritorious and the balance of hardships weighs heavily in favor of a stay.  Accordingly, this Court should stay the Final Judgment pending BI Science's appeal.

## BACKGROUND

**Bright Data Sues BI Science in Texas**

Bright Data (formerly known as Luminati Networks Ltd.), an Israeli company, is the dominant player in the internet proxy-service industry.  BI Science, a smaller Israeli company, competes with Bright Data in that industry. Bright Data and BI Science have each created Internet Protocol ("IP") proxy networks providing internet users with access to content that websites otherwise would block from them (based on, for example, the geographical location of their

3

**CONFIDENTIAL MATERIAL DELETED**

IP addresses).  BI Science Principal Brief ("Br.") at 2-5.

Although neither party has had any presence in Texas, Bright Data sued BI
Science in the Eastern District of Texas in November 2018, asserting patent-
infringement and other claims.  After Bright Data filed an amended complaint, BI
Science moved to dismiss for lack of personal jurisdiction, or in the alternative to
transfer venue to New York, where BI Science maintained its U.S. office.  The
district court denied those motions in May 2019.  Br. at 5-6.

**The Parties Mediate and Reach a Settlement in Principle Only**

In February 2020, the district court ordered the parties to renew prior
mediation efforts.  The parties exchanged versions of a settlement proposal through
mediator William Cornelius over the weekend of February 22-23, and on February
23, Mr. Cornelius e-mailed counsel stating, "I am very pleased to report that the
mediator's proposal has resulted in a settlement."  The content of this purported
"settlement," however, was — at the risk of understatement — unclear.
Mr. Cornelius did not attach a version of the proposal, or any other document, to
that e-mail.  Instead, he referred to terms that ambiguously modified and counter-
modified each other: "Incorporated into that [settlement] is the list of terms that
Ron sent me yesterday, and that I provided to Eric.  That list, of course, is modified
in some respects by the terms of the proposal, including the most recent proposed
language added to it this morning regarding "███████████████.'"  Br. at 7.

**CONFIDENTIAL MATERIAL DELETED**

BI Science's counsel replied: "Thanks for all your hard work Bill."  Soon after, Bright Data's counsel requested approval to file a notice of settlement with the district court and BI Science's counsel replied simply, "Approved."  Bright Data then filed a Joint Motion to Stay All Deadlines and Notice of Settlement, stating: "The parties hereby notify the Court that all matters in controversy between the Parties have been settled, *in principle*."  Br. at 7.[2]

The next day, Mr. Cornelius prepared and signed a revised version of his mediator's proposal (the "Mediator's Proposal").  Until this point, the only person who had actually seen the proposal was Mr. Cornelius himself.  Mr. Cornelius then sent the Mediator's Proposal to Bright Data, but there is no evidence that he sent it to BI Science.  The Mediator's Proposal states the parties " ███████ ███████ " and Information relating to sealed judgment ███████ : "Information relating to sealed judgment ███████ ."  Br. at 8.

Neither Bright Data nor BI Science treated the Mediator's Proposal as a binding settlement agreement.  Bright Data revised the document to add a confidentiality provision.  It added signature blocks, had its CEO sign the document, and asked BI Science to counter-sign.  But BI Science did not sign the

---

[2] Unless otherwise indicated, all emphasis in this brief has been added.

**CONFIDENTIAL MATERIAL DELETED**

Mediator's Proposal because, as BI Science CEO Kfir Moyal testified in

unrebutted declarations, the Mediator's Proposal did not reflect the agreement BI

Science was prepared to make.  BI Science understood the document to be a

framework for further settlement discussions that might later lead to a definitive

settlement agreement.  Br. at 10, 14.

        After BI Science insisted on a formal settlement agreement, Bright Data

drafted and sent one.  Over the next three weeks, the parties negotiated the details

of that agreement.  As part of that negotiation, Bright Data sent BI Science a

proposed ▮Information relating to sealed judgment▮" that attempted to supply material

terms missing from the Mediator's Proposal.  BI Science never signed the draft

settlement agreement or the proposed ▮Information relating to sealed judgment▮.  Br. at

13.

### The District Court Finds a Binding Settlement Agreement and Enters Judgment; BI Science Twice Moves for a Stay

        On March 18, 2020, Bright Data filed a motion to enforce the Mediator's

Proposal, despite the fact that BI Science never signed it or the subsequent

settlement documents the parties began negotiating.  At a hearing on April 13,

2020, the district court ruled that the Mediator's Proposal was a binding settlement,

and ordered the parties to ▮Information relating to sealed judgment▮

▮▮.  The parties complied.  Br. at 15.  On April 29,

2020, Mr. Cornelius, then acting as arbitrator, ▮Information relating to sealed judgment▮

**CONFIDENTIAL MATERIAL DELETED**

█Information relating to sealed judgment██████████████. *See* Exhibit A

(Final Judgment).

On July 2, 2020, the district court issued a final judgment ████Information relating to sealed judgment███

██████████████████████████, from which both parties appealed

to this Court.  *See* Exhibit B (notices of appeal).  On August 12, 2020, BI Science

filed a motion to stay that judgment with the district court.  Exhibit C (stay

motion).

The parties then jointly moved to correct the final judgment to include a

claim-construction ruling adverse to Bright Data that it intended to cross-appeal.

On February 1, 2021, the district court issued the Final Judgment underlying this

appeal, which makes that addition and otherwise leaves the original judgment

unchanged.  Br. at 16.  The parties filed notices of appeal from the (new) Final

Judgment on February 16, 2021.  *See* Exhibit D (notices of appeal).

BI Science continued to await the district court's ruling on the stay motion it

filed in August 2020.[3]  But on March 25, 2021, Bright Data filed a motion for

contempt, claiming that BI Science was violating the Final Judgment.  In light of

Bright Data's motion, and out of an abundance of caution, BI Science filed a

---

[3] At a July 1, 2021 status conference, the Magistrate Judge advised the
parties that the court viewed the corrected Final Judgment as ruling on BI
Science's motion to stay the original final judgment.  Up to that point, however, BI
Science (and, apparently, Bright Data) had believed that first stay motion remained
pending.

**CONFIDENTIAL MATERIAL DELETED**

second stay motion on April 5, 2021.  *See* Exhibit E (second stay motion).  The

district court has not yet ruled on the second stay motion.

**BI Science Files its Principal Brief in this Court
and the Court Stays Proceedings**

On April 30, 2021, the parties filed a joint motion with the district court to

unseal the Final Judgment, to facilitate citation in their briefs in this Court.  *See*

Exhibit F (motion to unseal).  On May 17, 2021, BI Science filed its principal brief

in which it has asked this Court to reverse the district court's holdings that (1) BI

Science is subject to personal jurisdiction in Texas and (2) the Mediator's Proposal

constituted a binding settlement agreement.  Because the district court had not yet

ruled on the motion to unseal, BI Science simultaneously moved for an order

waiving the requirements of Federal Circuit Rule 25.1(d)(1)(A).  On June 21,

2021, this Court issued an order staying the appellate proceedings pending the

district court's decision on the parties' motion to unseal.  *See* Dkt. 44.  The motion

to unseal remains pending.

**Bright Data Violates the Final Judgment and Pursues
Enforcement Litigation in Israel.**

The Final Judgment provides: "Information relating to sealed judgment

███████████████████████████████████████████████████████████████████

███████████████████████████████████████ ."  Exhibit A.  In violation of that

provision, Bright Data (a) filed a lawsuit in Israel (Tel Aviv District Court) to

**CONFIDENTIAL MATERIAL DELETED**

enforce the Arbitration Award ███████████████████████, along with an

*ex parte* motion for temporary relief and (b) argued for the application of non-

Texas law.

On July 22, 2020, the Israeli court granted Bright Data temporary relief and

approved the appointment of a receiver, ordered BI Science to furnish its customer

list in the proxy-service sector to the receiver, and authorized the receiver to

inform Bright Data of the number of BI Science's customers.  *See* Exhibit G

(Declaration of Kfir Moyal) ("Moyal Decl.") ¶ 19.  The court ████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████.  *See id.*  BI Science has

complied with the Israeli court's order.  *Id.* ¶ 20.

On November 29, 2020, the Tel Aviv District Court issued a judgment

enforcing the Arbitration Award under the New York Arbitration Convention.  *See*

Exhibit H (Tel Aviv District Court decision).  On April 21, 2021, the Israeli

Supreme Court affirmed that judgment.  *See* Exhibit I (Israeli Supreme Court

decision).

On June 21, 2021, Bright Data obtained an *ex parte* order from Israel's Law

Enforcement and Collection System Authority (the "Israeli Enforcement

Authority").  The order appointed a receiver to enforce the Arbitration Award and

directed the receiver to notify BI Science's customers that they will soon be transferred to Bright Data.  *See* Exhibit J (order).   On June 30, 2021, the Israeli receiver e-mailed a letter to BI Science's proxy-service customers notifying them that, on or after August 16, 2021, they will be transferred to Bright Data.  *See* Moyal Decl. ¶ 24.   The clock is now ticking down to an August 16 doomsday for BI Science.  If BI Science loses its customers — whether those customers agree to move to Bright Data or seek services from another company altogether — it will irreversibly decimate BI Science's core business.  *See* Moyal Decl. ¶¶ 4-13.

## ARGUMENT

## I.    STAYS PENDING APPEAL SERVE IMPORTANT PUBLIC-POLICY GOALS.

Staying judgments pending appeal maintains the status quo for the benefit of parties threatened with irreparable harm and "ensur[es] that appellate courts can responsibly fulfill their role in the judicial process."  *Nken v. Holder*, 556 U.S. 418, 427 (2009).  In deciding whether to grant a stay, this Court considers (1) whether BI Science has shown that it is likely to succeed on the merits; (2) whether BI Science will be irreparably injured absent a stay; (3) whether issuing the stay will substantially injure Bright Data; and (4) the public interest.  *See*, *e.g.*, *id.* at 426; *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990).  Where the movant faces substantial harm absent a stay, the other factors "need not be given equal weight" and the movant need only show a "substantial

case on the merits" under the first factor.  *Standard Havens*, 897 F.2d at 512-13.

A party may file a stay motion with this Court if a motion previously has been filed with the district court but the district court has not "afford[ed] the relief requested."  Fed. R. App. P. 8(a)(2)(A)(ii); Fed. Cir. R. 8(c).  Here, a significant amount of time has passed without the district court ruling on BI Science's stay motion.  BI Science cannot afford to wait any longer because its business will be lost in a matter of weeks.  Therefore, BI Science's motion is properly before this Court.

## II.    ALL FOUR FACTORS OF THE STAY CALCULUS FAVOR GRANTING A STAY PENDING APPEAL

### A.    BI Science Has a Substantial Case on Appeal.

#### i.    BI Science has shown it is not subject to personal jurisdiction in Texas.

In its principal brief, BI Science demonstrates that it was not subject to specific personal jurisdiction in Texas.  Br. at 19-38.

The district court found that specific jurisdiction over BI Science in Texas was proper, not based on activity that BI Science purposefully directed at Texas or Texas residents, but instead based on evidence of BI Science's *worldwide* business activities and activities taken *unilaterally* by members of BI Science's proxy network.  Br. at 21-34.  The district court erred.

BI Science's operation of a website and a proxy network that is accessible to people around the world does not show that BI Science "purposefully directed"

activity specifically at Texas residents.  Br. at 23-25, 30-32.  The unilateral choice by a few Texas residents to download and use BI Science's software in their home state does not support specific jurisdiction over BI Science in Texas.  Br. at 24-25, 30.

Taken to its logical conclusion, the district court's finding of specific jurisdiction would subject a company owning internet software downloadable and usable worldwide to personal jurisdiction anywhere in the United States, even with only *de minimis* contacts with a particular state.  That would flout federal due-process standards.  The fact that some Texans chose to participate in BI Science's global proxy network, generating some modest revenue for BI Science, did not create the "minimum contacts" necessary for personal jurisdiction in Texas.  Br. at 37-38.

### ii.    BI Science has shown that the unsigned Mediator's Proposal is unenforceable.

In its principal brief, BI Science demonstrates that the Mediator's Proposal — riddled with irregularities and never signed by BI Science — is not an enforceable settlement agreement under Texas law or federal common law.  Br. at 38-61.

Texas state law governs the enforceability of the Mediator's Proposal.  Br. at 39-44.  The Mediator's Proposal is not enforceable under Texas Rule of Civil Procedure 11 ("Texas Rule 11") because BI Science never signed it.  Br. at 44-51

**CONFIDENTIAL MATERIAL DELETED**

(discussing Tex. R. Civ. P. 11, which states in relevant part that "*no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record*).

The Mediator's Proposal fails to satisfy Texas Rule 11 for two additional reasons. First, it is missing essential elements of the parties' purported agreement, and under Texas law is therefore incomplete and unenforceable. Br. at 51-52. Second, oral testimony would be necessary to attempt to resolve the contradiction between ███████████████████████████, which contemplates that ███ ███████████████████████████████████████████████████ ████████████████, and █████████, which contemplates that ███████████████████████ ████████████████████████. Br. at 52-53.

Even if this Court were to apply federal common law instead of Texas state law, the Mediator's Proposal is unenforceable. There was never a meeting of the minds or mutual assent regarding the Mediator's Proposal. Numerous undisputed facts preclude a finding under general contract-law principles that Bright Data and BI Science agreed to the same thing, in the same sense, at the same time. Br. at 55-60. Indeed, in *Wang Laboratories, Inc. v. Applied Computer Sciences, Inc.*, this Court reversed a district court's enforcement of an unsigned purported settlement agreement, based on facts that are strikingly similar to those presented in this case. 958 F.2d 355, 357 (Fed. Cir. 1992).

**CONFIDENTIAL MATERIAL DELETED**

Term 17 of the Mediator's Proposal — an arbitration provision — does not alter this analysis.  BI Science never signed the Mediator's Proposal, and therefore never agreed to the arbitration agreement in it.  Br. at 59-60.

\*       \*       \*

In sum, BI Science has a very substantial case on the merits of its appeal, on both the issue of personal jurisdiction and the issue of the enforceability of the Mediator's Proposal.  The first stay factor weighs decisively in favor of a stay.

### B.    BI Science Cannot Survive Without a Stay.

If the Court does not stay enforcement of the Final Judgment, BI Science will suffer imminent, devastating, and irreparable harm.  ███████████████

███ Information relating to sealed judgment ███████████████████████

████, even if it wins on appeal and is ████████████████████████.  Without its

███ Information relating to sealed judgment ███████████████████████

████, BI Science will likely go out of business entirely.  *See* Moyal Decl. ¶¶ 4-13.

The existential threat to BI Science is clear and present, as Bright Data has taken aggressive steps to ensure the swift demise of BI Science before this Court has a chance to hear this appeal.  Bright Data filed an action in Israel to enforce the Arbitration Award, even though ███ Information relating to sealed judgment ███

████████████████████████████████████████████.  The Israeli courts have decided to enforce the Arbitration Award, not under Texas or federal

14

CONFIDENTIAL MATERIAL DELETED

law, but under the New York Arbitration Convention.  Now, Bright Data has

obtained an *ex parte* order in Israel that led a receiver to notify all of BI Science's

customers that they will be transferred away from BI Science in a matter of weeks.

*See* Moyal Decl. ¶¶ 21-24.  Many BI Science customers have already contacted BI

Science to express serious concerns.  One customer advised BI Science that it had

████Information relating to sealed judgment██████████████      Another

customer advised BI Science that it will be ██Information relating to sealed judgment██

██████████████████████████████████.  *See* Moyal Decl. ¶¶ 25-28.

Thus, the irreparable harm to BI Science, which BI Science is already

beginning to experience, would be of the "catastrophic" caliber this Court has

found to warrant a stay pending appeal.  *See Standard Havens*, 897 F.2d at 515-16

(employee layoffs, immediate insolvency, and possible extinction arising from the

immediate enforcement of a judgment constituted "catastrophic" and "irreparable"

harm warranting a stay pending appeal).  Without a stay, this appeal would fail in

its essential purpose, because even if the Final Judgment is reversed, it would be

too late to recover BI Science's lost business.  *See Nken*, 556 U.S. at 421 (stay is

warranted if an appellate court's decision would "come too late for the party

seeking review").  The irreparable-harm factor weighs decisively in favor of

granting a stay.

**CONFIDENTIAL MATERIAL DELETED**

### C.    A Temporary Stay Will Not Materially Harm Bright Data.

If the Court maintains the status quo by staying the Final Judgment, Bright

Data would not be materially harmed.  Bright Data has obtained interim relief that

will protect it from adverse effects of a stay.  As discussed above, even before the

district court entered the Final Judgment, Bright Data filed a lawsuit in Israel to

enforce the Arbitration Award, along with an *ex parte* motion for temporary relief.

The Israeli District Court granted Bright Data temporary relief, and BI Science has

fully complied with the Israeli court's order.  *See* Moyal Decl. ¶¶ 19-20.  Last

month, the Israeli Enforcement Authority likewise appointed a receiver, and

awarded additional protections to Bright Data.  *See* Exhibit J (order).

Moreover, BI Science has now unilaterally offered to post with the district

court $▮▮▮▮ in cash security.  *Cf.* Fed. R. App. P. 8(a)(2)(E) ("The court may

condition relief on a party's filing a bond or other security in the district court").

As BI Science explained in the July 16, 2021 supplemental notice that it filed with

the district court, this amount is more than adequate to protect Bright Data.

The Final Judgment ▮Information relating to sealed judgment▮.  Any

future damages claimed by Bright Data based on BI Science's alleged delay in

complying with the judgment would necessarily take the form of a claim for lost

profits, on a theory that, if BI Science had complied with the judgment sooner,

Bright Data would have made more money.  It is not easy to prove lost profits.  As

**CONFIDENTIAL MATERIAL DELETED**

the Texas Supreme Court has held, "[t]he amount of the loss must be shown by competent evidence with reasonable certainty." *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 84 (Tex. 1992)). Moreover, "[p]rofits are largely speculative, not reasonably certain, and cannot be recovered, if they result 'from an activity dependent on uncertain or changing market conditions.'" *Barton v. Resort Dev. Latin Am., Inc.*, 413 S.W.3d 232, 239 (Tex. App. 2013) (quoting *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994)).

In this case, there is no assurance that Bright Data has incurred, or will incur, any lost profits. The judgment ██Information relating to sealed judgment██ ████████████████████████████████████████████████ ██████████. Under the judgment, ██Information relating to sealed judgment██ ████████████████████████████████████████ ████████████ (1) ██████████████████████████, (2) ██████████ ██████████████████, or (3) ████████████████████████. Any estimate of the financial impact from ██Information relating to sealed judgment██ would therefore require a complex economic model based on a host of assumptions.

BI Science calculated its $██████ security offer based on information in the Final Judgment as to the ██Information relating to sealed judgment██

17

**CONFIDENTIAL MATERIAL DELETED**

Information relating to sealed judgment .

Specifically, the Information relating to sealed judgment

. Exhibit A at 5.  The

Information relating to sealed judgment

. *Id.* at 6.  This provision implicitly assumes

, of which

. Generously assuming a

Information relating to sealed judgment .

This security offer thus covers not only the prospective period of a stay but also the retrospective period since the Court entered its original judgment: 12 months since the Court's original judgment in July 2020, and

Information relating to sealed judgment .  Accordingly, BI Science's proposed cash security of $      protects Bright Data not only from the possible financial impact of a stay but also secures a possible retrospective claim by Bright Data for lost profits.

There are strong grounds, moreover, for projecting that any lost profits that Bright Data might incur would be lower than BI Science's security of $      . For one thing, a substantial majority of Information relating to sealed judgment

**CONFIDENTIAL MATERIAL DELETED**

████. *See* Moyal Decl. ¶¶ 29-33.  Combined, BI Science estimates that roughly

███████ Information relating to sealed judgment ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████.  *Id.*  Accordingly, it is probable that if the

judgment is enforced and ███ Information relating to sealed judgment ███

████████████████████████████████████████████

████████.  *See* Moyal Decl. ¶ 33.  Information relating to sealed judgment

████████.

    In rejecting BI Science's security offer, Bright Data argued in the district

court that the security amount should be calculated based on ████████

Information relating to sealed judgment.  But that approach is deeply flawed.  The

Final Judgment does not Information relating to sealed judgment ████;

rather, Information relating to sealed judgment ████

████████████████████████████ — Information relating to sealed judgment

████████████████████.  BI Science's Information relating to sealed ju

████████████████ thus has no bearing on any recovery to which Bright

Data might be entitled if this Court affirms the Final Judgment.  And Bright Data

has not even tried to show what Information relating to sealed judgment

████████████████, or what Information relating to sealed judgment

19

**CONFIDENTIAL MATERIAL DELETED**

████████. The relevant assumptions are so uncertain that, despite Bright

Data's protestations to the district court, Information relating to sealed judgment

████████████████████████████████████████████████████

████████████. *See* Ex. J at 2. Although Bright Data has argued to the

district court that it is somehow already owed more than $██████, Information relating to sealed judg

████████████████████████████████████████████

████████████. *See id.*

Bright Data also has taken the position that any security offered by BI

Science should account not only for a Information relating to sealed judgment

████████████████████████████████, but that

position is flawed for at least two reasons. *First*, as discussed above, the term of

the Mediator's Proposal that purportedly requires Information relating to sealed judgment

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████. *Second*,

even if ████████████████, a projection of lost profits from ████████

████████████ would almost certainly be speculative and not subject to

proof with reasonable certainty.

In short, the security BI Science has offered is expressly based on the

assumptions built into the very Final Judgment that Bright Data is trying to

enforce, whereas the security Bright Data has demanded is utterly untethered from the provisions of that judgment.  The proffered security will protect Bright Data's rights in the event it prevails on appeal, and so Bright Data will suffer no harm — let alone significant harm — from a stay.  The third factor therefore also weighs decisively in BI Science's favor.

### D.    A Stay Pending Appeal Serves the Public Interest.

The public interest also weighs in favor of a stay.  BI Science's customers include businesses that rely on BI Science's services as part of their day-to-day operations.  Moyal Decl. ¶ 17.  Additionally, Bright Data will likely be incapable of servicing BI Science's business customers, leaving many third parties without vital access to the proxy service that they rely on.  *See id.* ¶¶ 10, 18, 25-33.

In *National Instruments*, this Court affirmed the district court's conclusion that "[a] stay of the injunction will ensure that any ultimate interference with the third parties' continuing reliance on these products occurs only after the Court of Appeals designated to hear patent cases has passed on this complex case."  *See Nat'l Instruments Corp. v. Mathworks, Inc.,* 2003 WL 24049230, at *7 (E.D. Tex. 2003), *aff'd* 164 F. App'x 997 (Fed. Cir. 2006).  Similar considerations apply here. BI Science's customers should not have their services disrupted pending this Court's adjudication of BI Science's appeal.  The public-interest factor supports a stay.

## CONCLUSION

BI Science asks this Court for a temporary respite so that this Court may properly consider BI Science's appeal.  The factors informing a stay decision all favor granting BI Science's application.  Most importantly, BI Science stands to suffer severe and irreparable injury if this Court does not issue an immediate stay.  Accordingly, this Court should maintain the status quo while the appeal is pending and stay enforcement of the Final Judgment pending BI Science's appeal.

Dated:  July 26, 2021

Respectfully submitted,

 /s/ *Michael A. Charish*
Michael A. Charish
**Charish Law Group P.C.**
347 Fifth Avenue, Suite 1402
New York, New York 10016
646.328.0183

John Christopher Rozendaal
William H. Milliken
**Sterne Kessler Goldstein
 & Fox PLLC**
1100 New York Avenue, NW
Washington, DC 20005
202.371.2600

*Counsel for Appellant
BI Science (2009) Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2020-2118, -2181, 2021-1664, -1667 |
| **Short Case Caption** | Luminati Networks Ltd. v. BI Science (2009) Ltd. |
| **Filing Party/Entity** | Appellant BI Science (2009) Ltd. |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/06/2021

Signature: /s/ John Christopher Rozendaal

Name: John Christopher Rozendaal

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| BI Science (2009) Ltd. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Findlay Craft PC: Eric H. Findlay | Findlay Craft PC: Kelce S. Wilson | Love Law Firm PC: Gregory P. Love |
| Findlay Craft PC: Robert B. Craft | Liston Abramson LLP: Ronald Abramson | |
| Findlay Craft PC: Debra E. Gunter | Liston Abramson LLP: Mord M. Lewis | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Luminati Networks Ltd. v. BI Science (2009) Ltd., No. 2:19-cv-352 (E.D. Tex.) | BI Science (2009) Ltd. a/k/a BIScience Inc. v. Luminati Networks Ltd., IPR2020-00166 (PTAB) | |
| Luminati Networks Ltd. v. BI Science (2009) Ltd., No. 2:19-cv-397 (E.D. Tex.) | BI Science (2009) Ltd. a/k/a BIScience Inc. v. Luminati Networks Ltd., IPR2020-00167 (PTAB) | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF EXHIBITS

**Exhibit A** – Order and Corrected Final Judgment, Dkt. No. 254 (Feb. 1, 2021)

**Exhibit B** – BI Science's Notice of Appeal, Dkt. No. 228 (July 29, 2020); Bright Data's Notice of Appeal, Dkt. No. 238 (Aug. 18, 2020)

**Exhibit C** – BI Science's Motion to Stay Enforcement of Final Judgment, Dkt. No. 234 (Aug. 12, 2020) (sealed version; redacted version filed at Dkt. No. 235)

**Exhibit D** – BI Science's Notice of Appeal of Corrected Final Judgment, Dkt. No. 256 (Feb. 16, 2021); Bright Data's Notice of Appeal of Corrected Final Judgment, Dkt. No. 257 (Feb. 16, 2021)

**Exhibit E** – BI Science's Motion to Stay Enforcement of Corrected Final Judgment, Dkt. No. 265 (Apr. 5, 2021) (sealed version; redacted version filed at Dkt. No. 266)

**Exhibit F** – Joint Motion to Unseal Order and Corrected Final Judgment, Dkt. No. 276 (Apr. 30, 2021)

**Exhibit G** – Declaration of Kfir Moyal

**Exhibit H** – Tel Aviv District Court Judgment (Nov. 29, 2020), filed at Dkt. No. 251-1 (sealed version; redacted version filed at Dkt. No. 252-1)

**Exhibit I** – Israeli Supreme Court Decision (Apr. 21, 2021), filed at Dkt. Nos. 272-1 and 272-2

**Exhibit J** – Irsaeli Enforcement Authority Order (June 21, 2021), filed at Dkt. No. 287-1

# Exhibit A

Redacted in its entirety

Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:18-CV-00483-JRG |
| BI SCIENCE, INC., | § | |
| Defendant. | § | |

## **NOTICE OF APPEAL**

Defendant BI Science (2009) Ltd. ("BI Science") (which plaintiff has alleged is also known as BI Science, Inc.) hereby respectfully gives notice that it appeals to the United States Court of Appeals for the Federal Circuit from the Order and Final Judgment entered in this action on July 2, 2020 (the "Final Judgment"), and from any ruling or order adverse to BI Science that is contained in, is subsumed by, or preceded the Final Judgment, including but not limited to: (1) the portion of the Memorandum Opinion and Order dated May 13, 2019 (Dkt. No. 82) that denied in part BI Science's motion to dismiss and, in the alternative, transfer venue; and (2) the Court's April 13, 2020 ruling on Plaintiff's Motion to Enforce Settlement Agreement (Dkt. No. 183).

Dated: July 29, 2020

Respectfully submitted,

By:  _/s/ *J.C. Rozendaal*_
J.C. Rozendaal
(admitted *pro hac vice*)
Sterne Kessler Goldstein & Fox P.L.L.C.
110 New York Avenue NW, Suite 600
Washington, D.C. 20005
Phone: (202) 772-8747
Fax: (202) 371-2540
jcrozendaal@sternekessler.com

Michael A. Charish (admitted *pro hac vice*)
Charish Law Group P.C.
347 Fifth Avenue, Suite 1402
New York, New York 10016
Phone:  (646) 328-0183
michael@charish.law

*Attorneys for Defendant BI Science (2009) Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 29th day of July 2020, with a copy of this document via the Court's CM/ECF system.

_/s/ *J.C. Rozendaal*_____
J.C. Rozendaal

Case 20-2118   Document 46   Page: 35   Filed: 07/26/2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:18-CV-00483-JRG |
| BI SCIENCE, INC., | § | |
| Defendant. | § | |

## PLAINTIFF LUMINATI NETWORKS LTD.'S NOTICE OF APPEAL

Following the July 29, 2020 Notice of Appeal (Dkt. 228) filed by Defendant BI Science

(2009) Ltd., also known as BI Science Inc., Plaintiff Luminati Networks Ltd. ("Luminati") hereby

respectfully gives notice that it appeals to the United States Court of Appeals for the Federal Circuit

from the Order and Final Judgment entered in this action on July 2, 2020 (the "Final Judgment")[1],

and from the Court's December 6, 2020 Order (the "Claim Construction Order," Dkt. No. 130)

subsumed within the Final Judgment, to the extent that Final Judgment and Claim Construction

Order found claim 108 of U.S. Patent No. 9,241,044 indefinite.

Dated: August 18, 2020                    Respectfully submitted,

                                          By: /s/ Korula T. Cherian
                                          Mark Mann
                                          Mann | Tindel | Thompson

---

[1] Luminati and Defendant BI Science (2009) Ltd., also known as BI Science Inc., filed a joint
Motion to Correct the Final Judgment on July 24, 2020 ("Joint Motion," Dkt. 223) pursuant to
Fed. R. Civ. Pro. 60 to expressly incorporate the finding that claim 108 of U.S. Patent No.
9,241,044 as indefinite.  While the Joint Motion is still pending and under Federal Circuit Rule
4(a)(4)(A)(vi) "the time to file an appeal runs for all parties from the entry of the order disposing
of the last such remaining motion," out of an abundance of caution, Luminati files this Notice of
Appeal with regard to the Final Judgment, and in the event that the Joint Motion is granted, the
corrected Final Judgment.

300 West Main
Henderson, TX 75652
mark@themannfirm.com
Office 903-657-8540
Cell 903-658-0401
Marshall Office 903-472-4294
Tyler Office 903-596-0900
Waco Office 254-776-3336

Amadou Kilkenny Diaw
Ronald Wielkopolski
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Attorneys for Plaintiff
Luminati Networks Ltd.

# Exhibit C

Redacted version

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION



| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § § | |
| | § | Case No. 2:18-CV-00483-JRG |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| BI SCIENCE, INC., | § § | |
| | § | |
| Defendant. | | |

## DEFENDANT BI SCIENCE'S OPPOSED MOTION
## TO STAY ENFORCEMENT OF THE FINAL JUDGMENT

Michael A. Charish
(admitted *pro hac vice*)
Charish Law Group P.C.
347 Fifth Avenue, Suite 1402
New York, New York 10016
Phone: (646) 328-0183
michael@charish.law

J.C. Rozendaal
(admitted *pro hac vice*)
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue NW, Suite 600
Washington, D.C. 20005
Phone: (202) 772-8747
jcrozendaal@sternekessler.com

*Attorneys for Defendant*
*BI Science (2009) Ltd.*

August 12, 2020

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ............................................................................................................2

    I.      STAYS PENDING APPEAL SERVE IMPORTANT PUBLIC-POLICY GOALS...............................................................................2

    II.     ALL FOUR FACTORS OF THE STAY CALCULUS FAVOR GRANTING A STAY PENDING APPEAL IN THIS CASE. ...........................3

          A.     BI SCIENCE'S APPEAL IS LIKELY TO SUCCEED.............................3

                 i.     BI Science will argue that it is not subject to personal jurisdiction in Texas. .........................................3

                      ■    ████████████████████████████████████████████4

                      ■    ██████████████████. ...............4

                      ■    ████████████████.................6

          B.     BI SCIENCE WILL SUFFER SEVERE AND IRREPARABLE HARM ABSENT A STAY. .........................11

          C.     A TEMPORARY STAY WILL NOT HARM LUMINATI....................13

          D.     A STAY PENDING APPEAL SERVES THE PUBLIC INTEREST............................................................14

CONCLUSION.......................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan Sales Inc. v. Pharmacia & Upjohn Inc.*,
  1997 WL 377983 (Fed. Cir. 1997)........................................................................................3

*In re Bunzl USA, Inc.*,
  155 S.W.3d 202 (Tex. App. – El Paso 2004)..........................................................................9

*Carey v. 24 Hour Fitness, USA, Inc.*,
  669 F.3d 202 (5th Cir. 2012) ...............................................................................................10

*Climb Tech, LLC v. Verble*,
  2008 WL 1133491 (W.D. Tex. Feb. 7, 2008)........................................................................6

*Condit Chem. & Grain Co. v. Helena Chem. Corp.*,
  789 F.2d 1101 (5th Cir. 1986) ...............................................................................................5

*Cunningham v. Zurich Am. Ins. Co.*,
  352 S.W.3d 519 (Tex. App. – Fort Worth 2011).....................................................................5

*Datatreasury Corp. v. Wells Fargo & Co.*,
  522 F.3d 1368 (Fed. Cir. 2008)..........................................................................................5, 6

*In re Deepwater Horizon*,
  786 F.3d 344 (5th Cir. 2015) .............................................................................................7, 8

*Fleetwood Enters., Inc. v. Gaskamp*,
  280 F.3d 1069 (5th Cir. 2002) ...............................................................................................5

*In re Green Tree Servicing LLC*,
  275 S.W.3d 592 (Tex. App. – Texarkana 2008)...................................................................10

*Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*,
  2013 WL 4061259 (E.D. Va. 2013)........................................................................................4

*Liberto v. D.F. Stauffer Biscuit Co.*,
  441 F.3d 318 (5th Cir. 2006) .....................................................................................9, 10, 11

*Luminati Networks Ltd. v. BIScience Inc.*,
  2019 WL 2084426 (E.D. Tex. May 13, 2019)..................................................................3, 14

*Moctezuma v. Islas*,
  2019 WL 8501013 (E.D. Tex. Dec. 28, 2019),
  *rejected in part on other grounds*, 2020 WL 548681,
  (E.D. Tex. Feb. 4, 2020) ........................................................................................................6

*National Instruments Corp. v. Mathworks, Inc.*,
   2003 WL 24049230 (E.D. Tex. 2003), *aff'd*, 164 Fed. Appx. 997
   (Fed. Cir. 2006).......................................................................................2, 12, 13, 14

*Neurovision Med. Prods., Inc. v. Medtronic plc*,
   2017 WL 1247139 (E.D. Tex. Apr. 5, 2017)...........................................................7

*Neurovision Med. Prods., Inc. v. Medtronic plc*,
   2017 WL 9470886 (E.D. Tex. Apr. 17, 2017)................................................7, 8, 12

*Nken v. Holder*,
   556 U.S. 418 (2009).......................................................................................2, 12, 14

*Oliver Street Dermatology, LLC v. Creger*,
   2018 WL 2452975 (W.D. Tex. 2018)......................................................................5

*In re Omni Video, Inc.*,
   60 F.3d 230 (5th Cir. 1995) .....................................................................................6

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*,
   688 F.3d 214 (5th Cir. 2012) ...................................................................................4

*Scaife v. Associated Air Ctr. Inc.*,
   100 F.3d 406 (5th Cir. 1996) ...................................................................................9

*Songer v. Archer*,
   23 S.W.3d 139 (Tex. App. – Texarkana 2000).......................................................5

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
   897 F.2d 511 (Fed. Cir. 1990)........................................................................2, 3, 12

*Tadayon v. Saucon Techs., Inc.*,
   2011 WL 1770172 (D. Md. 2011) ...........................................................................4

*TechRadium, Inc. v. Edulink Sys.*,
   2011 WL 2709029 (S.D. Tex. July 12, 2011)..........................................................6

*United Rentals, Inc. v. Smith*,
   445 S.W.3d 808 (Tex. App. – El Paso 2014).........................................................10

*Wang Labs., Inc. v. Applied Computer Scis., Inc.*,
   958 F.2d 355 (Fed. Cir. 1992)................................................................................11

## Rules

Fed. R. Civ. P. 62(d) ......................................................................................2, 14

Texas R. Civ. P. 11 ....................................................................................4, 5, 6, 8

Pursuant to Federal Rule of Civil Procedure 62, defendant BI Science (2009) Ltd. ("BI Science") hereby respectfully moves to stay enforcement of this Court's July 2, 2020 Order and Final Judgment (Dkt. No. 220) (the "Final Judgment") pending appeal to the Federal Circuit.

## PRELIMINARY STATEMENT

████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████ BI Science is appealing in the Federal Circuit, but appellate relief would arrive too late to save BI Science from irreparable harm.

Consequently, and as shown below, this case presents compelling grounds for staying enforcement of the Final Judgment pending appeal. BI Science's appeal is meritorious. Respectfully, BI Science will argue on appeal that it is not subject to personal jurisdiction in Texas ██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████ Indeed, Luminati filed its own notice of appeal in this case (Dkt. No. 233), indicating that it, too, takes issue with some aspects

of the Final Judgment. Accordingly, the Court should maintain the status quo pending appeal and stay enforcement of the Final Judgment.

## ARGUMENT

## I. STAYS PENDING APPEAL SERVE IMPORTANT PUBLIC-POLICY GOALS.

As the Supreme Court has explained, staying judgments pending appeal not only maintains the status quo for the benefit of parties threatened with irreparable harm but also "ensur[es] that appellate courts can responsibly fulfill their role in the judicial process." *See Nken v. Holder*, 556 U.S. 418, 427 (2009). "A reviewing court must bring considered judgment to bear on the matter before it, but that cannot always be done quickly enough to afford relief to the party aggrieved by the order under review." *Id.*

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ Rule 62(d) provides that "[w]hile an appeal is pending from … [a] final judgment that grants … an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Whether to grant a Rule 62(d) stay is an issue committed to this Court's discretion. *See*, *e.g.*, *National Instruments Corp. v. Mathworks, Inc.*, 2003 WL 24049230, at *6 (E.D. Tex. 2003), *aff'd*, 164 Fed. Appx. 997 (Fed. Cir. 2006).

In deciding whether to grant a stay pending appeal, the Court should consider four factors: (1) whether BI Science has made a strong showing that it is likely to succeed on the merits; (2) whether BI Science will be irreparably injured absent a stay; (3) whether issuing the stay will substantially injure Luminati; and (4) the public interest. *See*, *e.g., Nken,* 556 U.S. at 426; *Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). Particularly where the applicant faces substantial harm absent a stay, the other factors "need not

be given equal weight" and the applicant need only show a "substantial case on the merits" under the first factor. *See Standard Havens*, 897 F.2d at 512-13; *Allergan Sales Inc. v. Pharmacia & Upjohn Inc.*, 1997 WL 377983, at *1 (Fed. Cir. 1997) (granting stay pending appeal).

## II.   ALL FOUR FACTORS OF THE STAY CALCULUS FAVOR GRANTING A STAY PENDING APPEAL IN THIS CASE.

### A.   BI Science's Appeal Is Likely to Succeed.

BI Science intends to present at least these two issues on appeal:  (1) Whether BI Science is subject to personal jurisdiction in Texas; ████████████████████████████████ ████████████████████████  BI Science respectfully submits that, as shown below, it is likely to prevail on these issues.

#### i.   BI Science will argue that it is not subject to personal jurisdiction in Texas.

BI Science intends to argue in the Federal Circuit that it was not subject to specific personal jurisdiction in Texas in connection with Luminati's patent claims.  BI Science has never been to Texas; has no bank accounts, property, or employees in Texas; is not registered to do business in Texas; and has never targeted Texas for advertising.  *See* Dkt. No. 36 ¶ 8 (March 4, 2019 Moyal Declaration).  BI Science's software allows people around the world to share their internet bandwidth as "proxy servers" to access websites from various locations worldwide.

This Court exercised specific jurisdiction over BI Science because BI Science had 56 Texas customers accessing proxy servers outside of Texas (representing ████████ of BI Science's revenue), and because, of the myriad proxy servers accessed by BI Science's non-Texas customers, some happen to be shared by Texans.  *See Luminati Networks Ltd. v. BIScience Inc.*, 2019 WL 2084426, at *4-5 (E.D. Tex. May 13, 2019).  Taken to its logical conclusion, the Court's ruling might allow a company that owns internet software that can be downloaded and

used by anyone in the world with a computer to be subject to personal jurisdiction anywhere in the United States, even if the company has *de minimis* contacts with a particular state.

BI Science respectfully submits that there is a reasonable likelihood that the Court of Appeals will view the issue differently, as the quality and quantity of BI Science's contacts with Texas are similar to contacts that other courts have found to be legally insufficient for personal jurisdiction. In *Pervasive Software Inc. v. Lexware GmbH*, for example, the Fifth Circuit concluded there was no specific jurisdiction over a foreign defendant with only "sparse contacts" with Texas: "fifteen internet website sales of its products to twelve Texas billing addresses" and "tax and financial software" that was internet-accessible but not purposely directed toward Texas. *See* 688 F.3d 214, 227 (5th Cir. 2012); *see also*, *e.g.*, *Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*, 2013 WL 4061259, at *4 (E.D. Va. 2013) ("A company does not 'consciously' or 'deliberately' target a forum if a user unilaterally downloads and uses its software within that forum."); *Tadayon v. Saucon Techs., Inc.*, 2011 WL 1770172, at *4 (D. Md. 2011) (no specific jurisdiction because the transmission of text messages using an alleged patent-infringing wireless internet system did "not result from the 'purposeful activity' of the foreign Defendants, but rather the deliberate intention of the foreign Defendants' subscribers"). So too, the fact that a number of Texans chose to participate in BI Science's global proxy network, and generated some modest revenue for BI Science, does not create the "minimum contacts" necessary to subject BI Science to personal jurisdiction in Texas.



4



---

Unless otherwise indicated, all italic and bold emphasis in this brief has been added.





In sum, whether or not this Court is persuaded that BI Science will succeed in the Federal Circuit, BI Science has a substantial appeal on the merits. Accordingly, the first factor weighs in favor of granting a stay pending appeal.

**B.      BI Science Will Suffer Severe and Irreparable Harm Absent a Stay.**

If the Court declines to stay enforcement of the judgment, BI Science will suffer devastating, irreparable harm.



Accordingly, the factor of irreparable harm weighs decisively in favor of granting a stay.

## C.    A Temporary Stay Will Not Harm Luminati.

If the Court maintains the status quo, Luminati would not be harmed. ███████

███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

    ██████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████

    ████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████



Indeed, Luminati has filed its own notice of appeal in this case (Dkt. No. 233), indicating that it is not entirely satisfied with the Final Judgment. As there would be no substantial harm to Luminati if this Court grants a stay pending appeal, the third factor also weighs decisively in BI Science's favor.

### D.    A Stay Pending Appeal Serves the Public Interest.

The public interest also weighs in favor of a stay pending appeal.

### CONCLUSION

The Supreme Court has acknowledged that, while a stay pending appeal "does not make time stand still," it "does hold a ruling in abeyance to allow an appellate court the time necessary to review it." *Nken,* 556 U.S. at 421.  BI Science asks this Court for a temporary respite from

14

any proceedings that Luminati might pursue — ██████████████████████ — so

that the Federal Circuit may properly consider BI Science's appeal.  The factors informing the

stay decision all favor granting BI Science's application.  Most importantly, BI Science stands to

suffer severe and irreparable injury if the Court does not issue a stay.  Accordingly, this Court

should exercise its discretion to maintain the status quo while the appeal is pending by granting

BI Science's motion to stay enforcement of the Final Judgment, together with ordering such

other, further and different relief in BI Science's favor as the Court deems just and proper.


Dated: August 12, 2020

Respectfully submitted,

By:   _/s/ J.C. Rozendaal_____
J.C. Rozendaal
(admitted *pro hac vice*)
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue NW, Suite 600
Washington, D.C. 20005
Phone: (202) 772-8747
Fax: (202) 371-2540
jcrozendaal@sternekessler.com

Michael A. Charish (admitted *pro hac vice*)
Charish Law Group P.C.
347 Fifth Avenue, Suite 1402
New York, New York 10016
Phone:  (646) 328-0183
michael@charish.law

*Attorneys for Defendant BI Science (2009) Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 12th day of August 2020 with a copy of this document via electronic mail.

  /s/ *J.C. Rozendaal*  
J.C. Rozendaal

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for the parties have complied with Local Rule CV-7(h). Robert Harkins and Ronald Wielkopolski, counsel for Plaintiff, and J.C. Rozendaal, counsel for Defendant, held a telephonic meet-and-confer on August 12, 2020. Plaintiff opposes this motion.

  /s/ *J.C. Rozendaal*  
J.C. Rozendaal

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

  /s/ *J.C. Rozendaal*  
J.C. Rozendaal

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:18-CV-00483-JRG |
| | § | |
| BI SCIENCE, INC., | § | |
| | | |
| Defendant. | | |

## NOTICE OF APPEAL

Defendant BI Science (2009) Ltd. ("BI Science") (which plaintiff has alleged is also known

as BI Science, Inc.) hereby respectfully gives notice that it appeals to the United States Court of

Appeals for the Federal Circuit from the Order and Corrected Final Judgment entered in this action

on February 1, 2021 (Dkt. No. 254) (the "Final Judgment"), and from any ruling or order adverse

to BI Science that is contained in, is subsumed by, or preceded the Final Judgment, including but

not limited to: (1) the Order and Final Judgment entered on July 2, 2020 (Dkt. No. 220);[1] (2) the

portion of the Memorandum Opinion and Order dated May 13, 2019 (Dkt. No. 82) that denied in

part BI Science's motion to dismiss and, in the alternative, transfer venue; and (3) the Court's

April 13, 2020 ruling on Plaintiff's Motion to Enforce Settlement Agreement (Dkt. No. 183).

---

[1] BI Science notes that it filed an appeal from the July 2, 2020 Order and Final Judgment on July 29, 2020. Dkt. No. 228. The Federal Circuit docketed the appeal on August 4, 2020, and assigned it case number 20-2118. Contemporaneously with the filing of this Notice of Appeal, BI Science is filing a submission in the 20-2118 appeal suggesting that the earlier- and later-filed appeals be consolidated.

Dated: February 16, 2021

Respectfully submitted,

By: _/s/ *J.C. Rozendaal*_____
J.C. Rozendaal
(admitted *pro hac vice*)
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue NW, Suite 600
Washington, D.C. 20005
Phone: (202) 772-8747
Fax: (202) 371-2540
jcrozendaal@sternekessler.com

Michael A. Charish (admitted *pro hac vice*)
Charish Law Group P.C.
347 Fifth Avenue, Suite 1402
New York, New York 10016
Phone: (646) 328-0183
michael@charish.law

*Attorneys for Defendant BI Science (2009) Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 16th day of February 2021, with a copy of this document via the Court's CM/ECF system.

 /s/ *J.C. Rozendaal*
J.C. Rozendaal

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:18-CV-00483-JRG |
| BI SCIENCE, INC., | § | |
| Defendant. | § | |

**PLAINTIFF LUMINATI NETWORKS LTD.'S UPDATED NOTICE OF APPEAL OF**
**CORRECTED FINAL JUDGMENT**

Plaintiff Luminati Networks Ltd. ("Luminati") hereby respectfully gives notice that it

appeals to the United States Court of Appeals for the Federal Circuit the finding of indefiniteness

and invalidity of claim 108 of U.S. Patent No. 9,241,044 as found in the Court's December 6, 2019

Order (the "Claim Construction Order," Dkt. No. 130) and incorporated in the February 1, 2021

(the "Corrected Final Judgment").[1]

---

[1] Luminati and Defendant BI Science (2009) Ltd., also known as BI Science Inc., filed a joint
Motion to Correct the Final Judgment on July 24, 2020 ("Joint Motion," Dkt. 223) pursuant to
Fed. R. Civ. Pro. 60 to expressly incorporate the finding that claim 108 of U.S. Patent No.
9,241,044 as indefinite. Out of an abundance of caution, Luminati previously filed a Notice of
Appeal of the original July 2, 2020 Order and Final Judgment on August 12, 2020 (Dkt. 233). The
Federal Circuit docketed the appeal on August 4, 2020 and assigned it case number 20-2118.

Dated: February 16, 2021

Respectfully submitted,

By: */s/ Korula T. Cherian*
J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
State Bar No. 24042033
blake@themannfirm.com
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

Amadou Kilkenny Diaw
Ronald Wielkopolski
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94702

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Attorneys for Plaintiff
Luminati Networks Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 16th day of February 2021, with a copy of this document via CM/ECF.

*/s/ Korula T. Cherian*

# Exhibit E

Redacted version

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

LUMINATI NETWORKS LTD. §
§
         Plaintiff, §
§
     v. §     Case No. 2:18-CV-00483-JRG
§
BI SCIENCE, INC., §
§
        Defendant. §



## BI SCIENCE'S OPPOSED MOTION TO
## STAY ENFORCEMENT OF THE CORRECTED FINAL JUDGMENT

# <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................iii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT.....................................................................................................................2

I.       STAYS PENDING APPEAL SERVE IMPORTANT
         PUBLIC-POLICY GOALS ..................................................................................2

II.      ALL FOUR FACTORS OF THE STAY CALCULUS
         FAVOR GRANTING A STAY IN THIS CASE
         PENDING APPEAL...............................................................................................3

         A.       BI Science has a Substantial Case on the Merits
                  of its Appeal ..............................................................................................3

                  i.       BI Science has a substantial case that it is
                           not subject to personal jurisdiction in Texas................................3

                  ii.      BI Science has a substantial case that ███████
                           ███████████████████████, it is
                           not enforceable under Texas Rule 11.........................................5

                           a.       The Federal Circuit will look to Fifth
                                    Circuit law to determine what law applies
                                    to the ███████████ ...............................................5

                           b.       The Fifth Circuit applies substantive state
                                    law to assess the enforceability of settlement
                                    agreements ......................................................................6

                           c.       The ███████████ is unenforceable
                                    under Texas Rule 11 .......................................................7

                           d.       Even under federal law, there is a genuine
                                    dispute whether the ███████████ is
                                    enforceable ......................................................................8

         B.       BI Science Will Suffer Severe and Irreparable Harm
                  Absent a Stay ............................................................................................11

         C.       A Temporary Stay Will Not Materially Harm Luminati .......................12

D.     A Stay Pending Appeal Serves the Public Interest ................................................14

CONCLUSION...........................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                        **PAGE(S)**

*Allergan Sales Inc. v. Pharmacia & Upjohn Inc.*,
   1997 WL 377983 (Fed. Cir. 1997)...........................................................................3

*Climb Tech, LLC v. Verble*,
   2008 WL 11334913 (W.D. Tex. Feb. 7, 2008).......................................................6

*Cunningham v. Zurich Am. Ins. Co.*,
   352 S.W.3d 519 (Tex. App. – Fort Worth 2011)...................................................7

*Datatreasury Corp. v. Wells Fargo & Co.*,
   522 F.3d 1368 (Fed. Cir. 2008) .......................................................................5, 6

*In re Deepwater Horizon*,
   786 F.3d 344 (5th Cir. 2015) ........................................................................9, 10

*Fleetwood Enters., Inc. v. Gaskamp*,
   280 F.3d 1069 (5th Cir. 2002) ............................................................................6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   2021 WL 1132515 (U.S. Mar. 25, 2021).............................................................4

*Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*,
   2013 WL 4061259 (E.D. Va. 2013).....................................................................4

*Kennedy v. Hyde*,
   686 S.W.2d 525 (Tex. 1984)...............................................................................7

*Liberto v. D.F. Stauffer Biscuit Co.*,
   441 F.3d 318 (5th Cir. 2006) ............................................................................11

*Luminati Networks Ltd. v. BIScience Inc.*,
   2019 WL 2084426 (E.D. Tex. May 13, 2019).................................................3, 14

*Moctezuma v. Islas*,
   2019 WL 8501013 (E.D. Tex. Dec. 28, 2019)...................................................... 6

*National Instruments Corp. v. Mathworks, Inc.*,
   2003 WL 24049230 (E.D. Tex 2003),
   *aff'd,* 164 Fed. Appx. 997 (Fed. Cir. 2006) .............................................2, 14, 15

*Neurovision Med. Products, Inc. v. Medtronic plc*,
    2017 WL 1247139 (E.D. Tex. Apr. 5, 2017)...........................................................................9

*Neurovision Med. Products, Inc. v. Medtronic plc*,
    2017 WL 9470886 (E.D. Tex. Apr. 17, 2017)..........................................................9, 10, 12

*Nken v. Holder*,
    556 U.S. 418 (2009)........................................................................................................2, 15

*Novamedix, Ltd. v. NDM Acquisition Corp.*,
    166 F.3d 1177 (Fed. Cir. 1999)..........................................................................................6

*Nuance Communs., Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010)..........................................................................................5

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*,
    688 F.3d 214 (5th Cir. 2012) .............................................................................................4

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011)........................................................................................12

*Roeglin v. Daves*,
    83 S.W.3d 326 (Tex. App. – Austin 2002) ........................................................................7

*Scaife v. Associated Air Ctr. Inc.*,
    100 F.3d 406 (5th Cir. 1996) ...........................................................................................10

*Songer v. Archer*,
    23 S.W.3d 139 (Tex. App. – Texarkana 2000) ..................................................................7

*Standard Havens Products, Inc. v. Gencor Industries, Inc.*,
    897 F.2d 511 (Fed. Cir. 1990)...................................................................................2, 3, 12

*Tadayon v. Saucon Techs., Inc.*,
    2011 WL 1770172 (D. Md. 2011) .....................................................................................4

*TechRadium, Inc. v. Edulink Sys.*,
    2011 WL 2709029 (S.D. Tex. July 12, 2011).....................................................................6

*Thatcher v. Kohl's Dep't Stores, Inc.*,
    397 F.3d 1370 (Fed. Cir. 2005).........................................................................................6

*Turner v. JPMorgan Chase Bank, N.A.*,
    623 Fed. Appx. 188 (Mem.) (5th Cir. 2015).....................................................................8

*Voda v. Cordis Corp.*,
    476 F.3d 887 (Fed. Cir. 2007) ................................................................................................. 14

*Wang Laboratories, Inc. v. Applied Computer Sciences, Inc.*,
    958 F.2d 355 (Fed. Cir. 1992) ............................................................................................. 8, 9

*Williams v. Huling*,
    43 Tex. 113 (1875) ..................................................................................................................... 7


**STATUTES AND RULES**

Federal Rule of Civil Procedure 62 .................................................................................... 1, 2, 14

Texas Rule of Civil Procedure 11 ...................................................................................... 5, 6, 7, 8

Pursuant to Federal Rule of Civil Procedure 62, defendant BI Science (2009) Ltd. ("BI Science") respectfully moves to stay enforcement of this Court's February 1, 2021 Order and Corrected Final Judgment (Dkt. No. 254) (the "Corrected Final Judgment") pending appeal to the Federal Circuit. BI Science previously filed a motion to stay enforcement of the original Final Judgment (Dkt. No. 234), and the Court has not yet issued a ruling on that motion.

███████████████████████████████████████████████████████████████████

███████████████████████████████ BI Science has been operating on the assumption that the Court would address the Corrected Final Judgment when ruling on BI Science's stay motion. In the meantime, plaintiff Luminati has filed a motion for contempt against BI Science, alleging that BI Science has failed to comply with this Court's judgment. In light of Luminati's contempt motion, BI Science files this second stay motion, out of an abundance of caution, to eliminate any possible doubt that BI Science seeks to stay enforcement of the Corrected Final Judgment.

## PRELIMINARY STATEMENT

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Appellate relief would arrive too late to save BI Science from irreparable harm.

This case presents compelling grounds for a stay. BI Science's appeal is meritorious. BI Science will argue on appeal that it is not subject to personal jurisdiction in Texas ██████

███████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████  Luminati should not be heard to argue that it would be harmed by a similar maintenance of the status quo in this action — particularly as Luminati has itself appealed from the Corrected Final Judgment.  The Court should maintain the status quo pending the parties' appeals and stay enforcement of the Corrected Final Judgment.

## ARGUMENT

## I.      STAYS PENDING APPEAL SERVE IMPORTANT PUBLIC-POLICY GOALS.

Staying judgments pending appeal maintains the status quo for the benefit of parties threatened with irreparable harm and "ensur[es] that appellate courts can responsibly fulfill their role in the judicial process."  *See Nken v. Holder*, 556 U.S. 418, 427 (2009).  "A reviewing court must bring considered judgment to bear on the matter before it, but that cannot always be done quickly enough to afford relief to the party aggrieved by the order under review."  *Id.*

Federal Rule of Civil Procedure 62(d) governs this stay motion and provides that "[w]hile an appeal is pending from … [a] final judgment that grants … an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Whether to grant a Rule 62(d) stay is an issue committed to this Court's discretion.  *See*, *e.g.*, *National Instruments Corp. v. Mathworks, Inc.*, 2003 WL 24049230, at *6 (E.D. Tex. 2003), *aff'd*, 164 Fed. Appx. 997 (Fed. Cir. 2006).

In deciding whether to grant a stay pending appeal, the Court should consider: (1) whether BI Science has made a strong showing that it is likely to succeed on the merits; (2) whether BI Science will be irreparably injured absent a stay; (3) whether issuing the stay will substantially injure Luminati; and (4) the public interest.  *See*, *e.g.*, *Nken,* 556 U.S. at 426; *Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990).

Where, as here, the movant faces substantial harm without a stay, the other factors "need not be given equal weight" and the movant need only show a "substantial case on the merits" under the first factor. *See Standard Havens*, 897 F.2d at 512-13; *Allergan Sales Inc. v. Pharmacia & Upjohn Inc.*, 1997 WL 377983, at *1 (Fed. Cir. 1997).

## II.    ALL FOUR FACTORS OF THE STAY CALCULUS FAVOR GRANTING A STAY IN THIS CASE PENDING APPEAL.

### A.    BI Science has a Substantial Case on the Merits of its Appeal.

#### i.    BI Science has a substantial case that it is not subject to personal jurisdiction in Texas.

BI Science will argue on appeal that it is not subject to specific personal jurisdiction in Texas in connection with Luminati's patent-infringement allegations. BI Science is headquartered in Israel. BI Science has no bank accounts, property, or employees in Texas. BI Science is not registered to do business in Texas and its employees have never visited Texas on business. BI Science has never targeted Texas for advertising. *See* Dkt. No. 36 ¶ 8 (March 4, 2019 Moyal Declaration). BI Science's software allows people *around the world* to share their internet bandwidth as "proxy servers" to access websites from various locations *worldwide*.

This Court exercised specific personal jurisdiction over BI Science because BI Science had 56 Texas customers of its GeoSurf service who accessed proxy servers outside of Texas (███████████████████████████████), and because, of the multitude proxy servers accessed by BI Science's non-Texas customers, some happen to be shared by Texans. *See Luminati Networks Ltd. v. BIScience Inc.*, 2019 WL 2084426, at *4-5 (E.D. Tex. May 13, 2019). Taken to its logical conclusion, the Court's ruling might allow a company that develops internet software that can be downloaded and used by anyone in the world to be subject to personal jurisdiction in all 50 states, even if the company has *de minimis* contacts with a particular state.

BI Science respectfully submits that there is a reasonable likelihood the Court of Appeals will view the issue differently, particularly in view of intervening Supreme Court guidance.  *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 2021 WL 1132515, at *7 n.4 (U.S. Mar. 25, 2021) ("isolated or sporadic transactions" in a forum state generally do not give rise to personal jurisdiction).  The quality and quantity of BI Science's contacts with Texas are similar to contacts that other courts have found to be insufficient for personal jurisdiction.  For example, in *Pervasive Software Inc. v. Lexware GmbH*, the Fifth Circuit concluded there was no specific jurisdiction over a foreign defendant with only "sparse contacts" with Texas: "fifteen internet website sales of its products to twelve Texas billing addresses" and "tax and financial software" that was internet-accessible but not purposely directed toward Texas.  *See* 688 F.3d 214, 227 (5th Cir. 2012); *see also*, *e.g.*, *Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*, 2013 WL 4061259, at *4 (E.D. Va. 2013) ("A company does not 'consciously' or 'deliberately' target a forum if a user unilaterally downloads and uses its software within that forum."); *Tadayon v. Saucon Techs., Inc.*, 2011 WL 1770172, at *4 (D. Md. 2011) (no specific jurisdiction because the transmission of text messages using an alleged patent-infringing wireless internet system did "not result from the 'purposeful activity' of the foreign Defendants, but rather the deliberate intention of the foreign Defendants' subscribers").

Luminati has argued misleadingly that BI Science is subject to specific personal jurisdiction because it purposefully directed its activities at Texas residents by engaging in Texas-targeted advertising.  BI Science will show on appeal that Luminati supported its position by mischaracterizing BI Science webpages and by showing that GeoSurf had users making proxy servers available in 1,700 cities worldwide, including 10 in Texas.  But the fact that GeoSurf is available for download anywhere in the world no more targets Texas than Timbuktu.  It is the

*customers* who choose where to use GeoSurf.  On Luminati's theory, if Texas customers took their internet devices to Arkansas, BI Science would no longer be "targeting" Texas.  A personal-jurisdiction analysis should not turn on such vagaries of circumstance.

Luminati's reliance on stream-of-commerce cases in opposition to BI Science's first stay motion is similarly flawed.  *See* Dkt. No. 248 at 2 (citing, *e.g.*, *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234 (Fed. Cir. 2010) (specific jurisdiction based on evidence of "a distribution system … that was intended to deliver products to the U.S. market via a commonly owned California entity")).  Unlike in the cases cited by Luminati, there was no intentional stream of commerce by BI Science directed specifically into Texas — no distribution specifically into Texas through third-parties; no purposeful shipment of products specifically into Texas; and no channels of commerce directed specifically at Texas.

That some Texans chose to participate in BI Science's GeoSurf global proxy network and generated modest revenue for BI Science does not prove "purposefully directed activity" or any other minimum contacts necessary to establish personal jurisdiction over BI Science in Texas.

>    **ii.**      **BI Science has a substantial case that** ███████████████████
>    ███████████████████**, it is not enforceable under Texas Rule 11.**

On appeal, BI Science will demonstrate that Texas state law governs whether the ███████████████ is enforceable.  Under Texas Rule of Civil Procedure 11 ("Texas Rule 11"), the ███████████████ is not enforceable ███████████████.

>    **a.**      **The Federal Circuit will look to Fifth Circuit law to determine**
>    **what law applies to the** ███████████████.

The Federal Circuit will look to regional circuit law — in this case, Fifth Circuit law — to determine what law applies to assess the enforceability of purported agreements like the ███████████████.  *See Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1371-72 (Fed. Cir. 2008).  Regional circuit law applies because contractual issues are not "unique to

patent law, even if arising in the context of a patent infringement suit." *Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed. Cir. 1999).

> **b.** **The Fifth Circuit applies substantive state law to assess the enforceability of settlement agreements.**

In turn, the Fifth Circuit applies state law to assess the enforceability of purported agreements like the ███████████. *See Datatreasury*, 522 F.3d at 1371-72. In *Datatreasury*, the parties disputed whether an arbitration clause in a patent license agreement was binding. The Federal Circuit noted that "the Fifth Circuit applies state law" when "deciding whether there is a valid agreement between the parties." The court then ruled that the arbitration clause was not enforceable against a party that had not signed the agreement. *See id.* (citing *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). That ruling was consistent with the Federal Circuit's holding in *Thatcher v. Kohl's Dep't Stores, Inc.* that "settlement agreements in patent cases should not be governed by federal common law but instead by state contract law." 397 F.3d 1370, 1374 (Fed. Cir. 2005).

Some Texas district courts have suggested that under Fifth Circuit choice-of-law rules, federal law should inform contract issues arising in federal-question cases. *See*, *e.g.*, *Moctezuma v. Islas,* 2019 WL 8501013, at *3 (E.D. Tex. Dec. 28, 2019) (Nowak, M.J.) (Title VII case), *rejected in part on other grounds*, 2020 WL 548681, at *2 (E.D. Tex. Feb. 4, 2020). But other district courts applying Fifth Circuit law have applied state law even in federal-question cases. *See Climb Tech, LLC v. Verble*, 2008 WL 11334913, at *1-3 (W.D. Tex. Feb. 7, 2008) (applying Texas Rule 11 in federal-question case); *see also TechRadium, Inc. v. Edulink Sys.,* 2011 WL 2709029, at *11-12 (S.D. Tex. July 12, 2011) (same).

The Federal Circuit is not bound by either side of this choice-of-law split among Texas federal courts. BI Science submits that the Federal Circuit will likely adhere to its own precedent

in *Datatreasury* and *Thatcher* and apply state law to the settlement-agreement controversy in this case. As shown below, the ███████████ is unenforceable under state law.

      **c.**    **The** ███████████ **is unenforceable under Texas Rule 11.**

It is undisputed that the relevant state law in this case is Texas law. Under Texas law, ███████████████████████████████: "*no agreement* between attorneys or parties *touching any suit pending will be enforced unless it be* in writing, *signed* and filed with the papers as part of the record, or unless it be made in open court and entered of record." Tex. R. Civ. P. 11.[1] A written settlement agreement may be contained in multiple documents, and those documents may be e-mails, ███████████████████. *See*, *e.g.*, *Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 530 (Tex. App. – Fort Worth 2011) (holding no agreement under Texas Rule 11 because defense counsel's settlement e-mail was not signed). Here, ███████████████████████████████████████████████████████████, "[Texas] Rule 11 prohibits [███████] from being enforced." *See Songer v. Archer*, 23 S.W.3d 139, 141 (Tex. App. – Texarkana 2000).

Luminati argued in opposition to BI Science's first stay motion that an equitable exception to Texas Rule 11 should apply to the ███████████. *See* Dkt. No. 242 at 11. But the three Texas cases it cited in support of this argument *refused to apply* an equitable exception. *See Williams v. Huling*, 43 Tex. 113 (1875); *Kennedy v. Hyde*, 686 S.W.2d 525 (Tex. 1984); *Roeglin v. Daves*, 83 S.W.3d 326 (Tex. App. – Austin 2002). Luminati did not show the type of "manifest … injury or injustice" required for an equitable exception to Texas Rule 11's requirements. *See Williams*, 43 Tex. at 120.

---

[1]    Unless otherwise indicated, all italic and bold emphasis in this brief has been added.

The other Texas Rule 11 cases cited by Luminati in opposition to BI Science's first stay motion, some of which are unpublished and non-precedential, are all inapposite because they involved documents signed by and exchanged between the parties or their counsel. *See*, *e.g.*, *Turner v. JPMorgan Chase Bank, N.A.*, 623 Fed. Appx. 188 (Mem.) (5th Cir. 2015) (unpublished) (counsel electronically signed a notice of settlement and multiple e-mails agreeing to the material terms of the agreement). Additionally, unlike the notice of settlement filed in the unpublished *Turner* case, the notice that the parties filed in this case advised this Court that Luminati and BI Science had settled their dispute "*in principle*" only. *See* Dkt. No. 166. ███████████████████████████████████████████, it is not enforceable.

**d. Even under federal law, there is a genuine dispute whether the ██████████████ is enforceable.**

Even if the Federal Circuit were to apply federal common law to this case, BI Science still would have a substantial case on the merits of its appeal, as highlighted by a similar case in which the Federal Circuit reversed a district-court ruling that the parties had entered into a binding settlement agreement. In *Wang Labs., Inc. v. Applied Computer Sciences, Inc.*, the parties advised the court clerk on the eve of trial that "the parties had agreed to settle" and the district court entered a conditional order of dismissal. *See* 958 F.2d 355, 357 (Fed. Cir. 1992). The parties circulated drafts of a settlement agreement, but never signed the final draft. The district court ruled that the unsigned settlement agreement was enforceable nonetheless. *See id.*

The Federal Circuit reversed. The court acknowledged that the district court was understandably "frustrated" by the parties' failure to reach a final, signed settlement agreement, especially after having advised the court that they had resolved their dispute. *See id.* at 359-60. Nevertheless, the Federal Circuit concluded that a district court "does not have the power to impose a settlement agreement where there was never a meeting of the minds" and "does not

have the power to make an agreement for the parties or to decide, contrary to the facts and the law, that a draft settlement agreement was binding when the parties did not agree on it." *Id.*

BI Science will argue on appeal that the Federal Circuit should reach the same result in this case that it reached in *Wang*. Here, as in *Wang*, the parties advised this Court that they had reached a settlement — although here, the parties were even more explicit in noting that the settlement was "in principle" only. ████████████████████████████████████

████████████████████████████████████████████

Fifth Circuit precedent dictates the same result, BI Science will argue. Luminati did not satisfy the Fifth Circuit's high standard for enforcing a settlement agreement, which requires a district court to deny a motion to enforce if there is "*any* disputed issue of material fact as to the validity of the settlement agreement." *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015). BI Science can make that showing, and one of its primary authorities is the very decision Luminati highlighted in its motion to enforce — a decision that *this Court subsequently vacated*.

Luminati relied heavily on this Court's decision in *Neurovision Med. Products, Inc. v. Medtronic plc,* holding that the parties entered into a binding settlement agreement via e-mail. *See Neurovision*, 2017 WL 1247139 (E.D. Tex. Apr. 5, 2017); Luminati motion (Dkt. No. 170) at 7-9 (discussing *Neurovision* in depth and citing it at least six times). But 12 days after this Court's *Neurovision* decision — and after defendant Medtronic refused to comply with the settlement agreement — the Court vacated the decision. *See* 2017 WL 9470886 (E.D. Tex. Apr. 17, 2017); Civil Docket for Case No. 2:16-cv-00127-JRG-RSP, Dkt. No. 109 (reflecting that 4/5/17 decision was "**VACATED PER [4/17/17] ORDER**") (emphasis in original).

The Court rendered a *new Neurovision* decision, noting that Medtronic "argue[d] that *the agreement is missing material terms, including a defined release provision, a covenant not to*

sue, *indemnity provisions, among others*." *Id.* at *1. Medtronic also argued that it should not be compelled to comply with the settlement agreement because "*if an appellate court ultimately determines that the … agreement is not enforceable*," Medtronic would be prejudiced. *See id.* This Court chose to "revisit[] the question of whether" there was an enforceable agreement, scheduled an evidentiary hearing, and directed the parties to return to mediation. *See id.*

On appeal, BI Science will argue that this Court should have followed its *Neurovision* precedent and denied Luminati's motion to enforce a disputed settlement agreement, particularly given the "disputed issues of material fact" (discussed below) as to whether both parties assented to the ███████████ as a binding agreement. *See Deepwater Horizon*, 786 F.3d at 354.

*First*, ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████.

*Second*, ██████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████.

*Third*, ██████████████████████████████████████████
████████████████████████████████████: "If parties negotiating a contract intend that the contract shall be reduced to writing and signed by the parties … then either party may withdraw at any time before the written agreement is drawn up and signed by both parties." *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 410-11 (5th Cir. 1996).

*Fourth*, ██████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████. *See Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318 (5th

Cir. 2006) (voiding settlement agreement in an intellectual-property case for indefiniteness as to

time of performance and duration — *seven years* after the parties executed it, the district court

entered it as a final judgment, and the defendant partially *performed*).

    *Fifth*, ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

    Whether or not each of these five issues independently creates a disputed issue of

material fact, collectively they do.  Therefore, whether the Federal Circuit assesses the

enforceability of the ████████████ under Texas law or federal law, BI Science has a

substantial case on the merits that the ████████████ is not enforceable as a final, binding

settlement agreement.  █████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████. The first stay factor weighs in favor of granting BI Science's motion.

**B.**     **BI Science Will Suffer Severe and Irreparable Harm Absent a Stay.**

    If the Court declines to stay enforcement of the judgment, BI Science will suffer

devastating, irreparable harm.  ████████████████████████████████████████████

████████████████████████████████████████████████████████



In *Neurovision*, this Court considered the irreparable harm of Medtronic permanently losing IPRs when the Court refused to compel Medtronic to comply with a disputed settlement agreement. *See Neurovision*, 2017 WL 9470886, at *1.

. *See Standard Havens*, 897 F.2d at 515-16 (employee layoffs, immediate insolvency, and possible extinction arising from the immediate enforcement of a judgment constituted the type of "catastrophic" and "irreparable" harm that warranted a stay pending appeal); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1152 (Fed. Cir. 2011) ("loss of market share and access to potential customers" constituted "irreparable harm").

Accordingly, the irreparable-harm factor weighs decisively in favor of granting a stay.

**C.    A Temporary Stay Will Not Materially Harm Luminati.**

If the Court maintains the status quo, Luminati would not be materially harmed.



BI Science has appealed that judgment to the Israeli Supreme Court, and *the Israeli Supreme Court has stayed execution of the judgment pending BI Science's appeal*. *See* Notice of Action in a Related Matter (Dkt. No. 253). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But now

that Luminati has done so, this Court should recognize the value of the Israeli courts' orders in preserving the status quo between these two Israeli companies pending appeal — particularly as the Court earlier deferred to the Israeli judicial system on comity grounds.  *See Luminati v. BI Science*, 2019 WL 2084426, at *6 (citing "[c]omity and the principle of avoiding unreasonable interference with the authority of other sovereigns"); *see also*, *e.g.*, *Voda v. Cordis Corp.*, 476 F.3d 887, 903 (Fed. Cir. 2007) (foreign patent-infringement claims stayed pending appeal; no supplemental jurisdiction, based on "comity and the principle of avoiding unreasonable interference with the authority of other sovereigns").

Rule 62(d) does not require a bond in order to grant a stay of a non-monetary judgment. *See National Instruments*, 2003 WL 24049230, at *6-7 (staying injunction pending appeal without requiring the defendant to post a bond).



*See* Moyal Decl. ¶¶ 25-27.

Luminati's Israeli proceedings mitigate, if not eliminate, any potential adverse effects that a temporary stay might have on Luminati.  Therefore, the third stay factor also weighs in favor of granting a stay.

### D.     A Stay Pending Appeal Serves the Public Interest.

The public interest also weighs in favor of a stay.



. *See* Moyal Decl. ¶ 28.

. *See id.* ¶¶ 20, 29.  In *National Instruments*, this

Court concluded: "A stay of the injunction will ensure that any ultimate interference with the third parties' continuing reliance on these products occurs only after the Court of Appeals designated to hear patent cases has passed on this complex case." *See* 2003 WL 24049230, at *7 (E.D. Tex. 2003) *aff'd* 164 Fed. Appx. 997 (Fed. Cir. 2006). ███████████████

████████████████████████████████████████████████████████████

The public-interest factor as well mitigates in favor of a stay.

## CONCLUSION

The Supreme Court has acknowledged that while a stay pending appeal "does not make time stand still," it "does hold a ruling in abeyance to allow an appellate court the time necessary to review it." *Nken,* 556 U.S. at 421. BI Science asks this Court for a temporary respite from any proceedings that Luminati might pursue — in addition to those it is pursuing in Israel — so that the Federal Circuit may properly consider BI Science's appeal. The Israeli Supreme Court has already granted that relief. The factors informing the stay decision all favor granting BI Science's application. Most importantly, BI Science stands to suffer severe and irreparable injury if the Court does not issue a stay. Accordingly, this Court should maintain the status quo while the appeal is pending by granting BI Science's motion, together with ordering such other, further and different relief in BI Science's favor as the Court deems just and proper.

Dated: April 5, 2021

Respectfully submitted,

By:  /s/*Gregory P. Love*
Gregory P. Love
Texas Bar No. 24013060
Love Law Firm
P.O. Box 948
Henderson, Texas 75652
Phone: (903) 212-4444
Fax: (903) 392-2267
greg@lovetrialfirm.com

J.C. Rozendaal
(admitted *pro hac vice*)
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue NW, Suite 600
Washington, D.C. 20005
Phone: (202) 772-8747
Fax: (202) 371-2540
jcrozendaal@sternekessler.com

Michael A. Charish (admitted *pro hac vice*)
Charish Law Group P.C.
347 Fifth Avenue, Suite 1402
New York, New York 10016
Phone:  (646) 328-0183
michael@charish.law

*Attorneys for Defendant BI Science (2009) Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 5th day of April 2021 with a copy of this document via electronic mail.

/s/ *Gregory P. Love*
Gregory P. Love

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for the parties have complied with Local Rule CV-7(h). Robert Harkins and Ronald Wielkopolski, counsel for Plaintiff, and J.C. Rozendaal and Michael A. Charish, counsel for Defendant, held a telephonic meet-and-confer on March 22, 2021. Plaintiff opposes this motion.

/s/ *Gregory P. Love*
Gregory P. Love

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

/s/ *Gregory P. Love*
Gregory P. Love

# Exhibit F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

LUMINATI NETWORKS LTD.,

    *Plaintiff,*

    v.

BI SCIENCE INC.,

    *Defendant.*

No. 2:18-cv-00483-JRG

JURY TRIAL DEMANDED

## **JOINT MOTION TO UNSEAL ORDER AND CORRECTED FINAL JUDGMENT**

Defendant BI Science (2009) Ltd. (which plaintiff has alleged is also known as BI Science, Inc.) and Plaintiff Luminati Networks, Ltd., now known as Bright Data Ltd., respectfully request that the Court unseal the Order and Corrected Final Judgment [Dkt. #254] in its entirety, including Exhibits A and B thereto. The parties request that the Judgment and its exhibits be unsealed to facilitate citation in their briefs on appeal. *See* Fed. Cir. Rule 25.1(c)(2).

Respectfully submitted,

/s/ *Gregory P. Love*
Gregory P. Love
Texas Bar No. 24013060
LOVE LAW FIRM
P. O. Box 948
Henderson, Texas 75653-0948
903.212.4444
903.392.2267 (Fax)
greg@lovetrialfirm.com

J.C. Rozendaal
(admitted *pro hac vice*)
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue NW, Suite 600
Washington, D.C. 20005
Phone: 202.772.8747
Fax: 202.371.2540
jcrozendaal@sternekessler.com

Michael A. Charish
(admitted *pro hac vice*)
Charish Law Group P.C.
347 Fifth Avenue, Suite 1402
New York, New York 10016
Phone: 646.328.0183
michael@charish.law

*Counsel for Defendant*
*BI Science (2009) Ltd.*


/s/ _____
S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, L.L.P.
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
Ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Mark Mann
Mann | Tindel | Thompson
300 West Main
Henderson, TX 75652
mark@themannfirm.com
Office 903/657-8540
Cell 903/658-0401
Marshall Office 903-472-4294
Tyler Office 903-596-0900
Waco Office 254-776-3336

Korula T. Cherian
Robert Harkins
CA State Bar No. 179525
RuyakCherian LLP
1936 University Ave., Suite 350
Berkeley, CA 94704
(510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

Ronald Wielkopolski

Colby A. Davis
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
ronw@ruyakcherian.com
colbyd@ruyakcherian.com

*Attorney for Plaintiff*
*Luminate Networks Ltd.,*
*Now known as Bright Data Ltd.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rules CV-5(a).  As such, this document was served on all counsel who have consented to electronic service on this 30 day of April 2021.  Local Rule CV-5(a) (3)(A).

/s/ *Gregory P. Love*
Gregory P. Love

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that, pursuant to Local Rule CV-7(h), counsel conferred on April 30, 2021 and agreed to this Joint Motion to Unseal Judgment.

/s/ *Gregory P. Love*
Gregory P. Love

# Exhibit G

Redacted version

2020-2118, -2181, 2021-1664, -1667

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### BRIGHT DATA LTD.,

*Plaintiff-Cross-Appellant*

**v.**

### BI SCIENCE (2009) LTD.,

*Defendant-Appellant*

### BI SCIENCE INC.,

*Defendant.*

Appeals from the United States District Court for the Eastern District of Texas in No. 2:18-cv-00483-JRG, Chief Judge J. Rodney Gilstrap.

## DECLARATION OF KFIR MOYAL IN SUPPORT OF BI SCIENCE'S STAY MOTION

**Introduction**

1.      I am a Co-Founder and the CEO of defendant-appellant-cross-respondent BI Science (2009) Ltd. ("BI Science").   I live and work in Tel Aviv, Israel, where BI Science is headquartered.

2.      I submit this declaration in support of BI Science's motion to stay enforcement of the February 1, 2021 Amended Order and Corrected Final Judgment of United States District Court for the Eastern District of Texas,

Marshall Division (the "Final Judgment"), pending BI Science's appeal of the

Final Judgment to this Court.

      3.      Unless otherwise indicated, I have personal knowledge of the facts

contained in this declaration.  I am over the age of 18 years and I am competent to

testify to the truth of the facts herein if called upon to do so.

**The Impact on BI Science of Enforcing the Judgment**

      4.      If the Final Judgment ███████████████████████████

██████████████ were enforced against BI Science, I believe that the damage to

our company would be devastating and irreversible and would lead to BI Science

going out of business.

      5.      If BI Science were forced to ████████████████████████

███████, I expect that the damage would be irreversible and BI Science would ████

███████████████████████████████.  It takes an average of

3-6 months to get a typical new customer working at full capacity with the

solutions that we offer, and longer for customers with more customized, or greater,

needs.  Customers who depend on our proxy services need to trust them.  It is not

reasonable to expect that ████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████.

6.    Further, I understand that there is a contradiction between ████████

████████████████████████████████████████████████████

████████████████████████████████ if the Final Judgment is enforced.

If the Final Judgment is enforced and BI Science is compelled not only to ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████.

7.    Even with headcount and salary reductions, I do not expect that BI
Science would generate enough revenue to cover our infrastructure and other
expenses.  The company would need to raise capital to survive.  But if BI Science

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████.

8.    For at least three reasons, the irreparable harm to BI Science is not
resolved by the provision of the Final Judgment ████████████████████████

████████████████████████████████████████████████████

████████████████.

9.     First, the █████████████████████████████

████████████████████████████████████████████████

███████

10.     Second, I expect that ████████████████████████

████████████████████████████████████████████

███████

    ■ ██████████████████████████████████████

       ████████████████████████

    ■ ██████████████████████████████████

       ████████████████████████████

    ■ ███████████████████████████████████████

       █████████████████████████████████

       █████████████

    ■ █████████████████████████████████████

       █████████████████████████████████

       ████████████████████████████████

       ██████████████████████████████████

       █████████████████████████████████

       ██████████████████████████████████

4

■ ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

███████████

11.    If Bright Data had: ████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

12.    Third, ██████████████████████████████████████ BI

Science would still suffer irreparable harm.  BI Science ████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

███████████████████ BI Science's overall business would be incapable of

functioning properly.

13.     If the Final Judgment is stayed pending appeal, then I expect that we will remain in business until this Court decides the appeal.

**The Impact on Bright Data of Staying the Judgment**

14.     On information and belief, I expect that the economic consequences of the stay decision will be much less dramatic for Bright Data, which is the industry leader.

15.     Bright Data has posted on the internet the July 2019 "Global IP Proxy Networks Market" report of consulting firm Frost & Sullivan (available at https://luminati.io/static/IPPN-analysis-2019.pdf?md5=3109015-85e418b7). According to the Frost & Sullivan report (at page 50) Bright Data's annual proxy-service revenue was approximately $40 million.  The report states (at page 52) that GeoSurf's annual proxy-service revenue was approximately $8 million, but that is not accurate.  GeoSurf's 2019 annual proxy-service revenue was approximately $███████ and its 2020 revenue was approximately $███████.

16.     As Bright Data has endorsed the Frost & Sullivan report by posting it on the internet, I believe it is reasonable to assume that Frost & Sullivan's $40 million annual revenue number for Bright Data is roughly accurate.  If it is, then even if ████████████████████████████ — and as stated above and also discussed below, I expect ████████ — BI Science's customers would represent in the range of only ████ of Bright Data's proxy-service revenue.  And

even if Bright Data's actual revenues are lower than reported by Frost & Sullivan, on information and belief, BI Science's customers would still represent a relatively small percentage of Bright Data's revenue.

**The Impact on Customers of Enforcing the Judgment**

17.    If the Final Judgment is enforced, I believe there would be adverse effects for at least some of BI Science's customers.  BI Science's customers include businesses that rely on our services as part of their day-to-day operations.



18.    Further, as stated above, based on my review of Bright Data's website, I believe there is a substantial risk that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮.  (This is bolstered by information obtained from recent communications received from some of BI Science's customers, which I discuss in greater detail below.)  ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮.

**Protections Bright Data Has Received from Judgment Enforcement in Israel**

19.    On July 22, 2020, the Tel Aviv District Court issued a decision in the related case that Bright Data prosecuted against BI Science in Israel.  In Paragraph

10 of that decision, the Israeli court issued the following orders directed to BI

Science (quoting from the English translation that Bright Data filed in the district

court):



…

20.    BI Science has complied, and is complying, with those orders.

21.    On June 27, 2021, BI Science learned that Bright Data obtained a new

order in Israel that places the future of BI Science in immediate jeopardy.

22.    Bright Data filed an *ex parte* motion with Israel's Law Enforcement

and Collection System Authority (the "Israeli Enforcement Authority") for the

appointment of a receiver to enforce the Arbitration Award incorporated in the

Final Judgment.  On June 21, a registrar of the Israeli Enforcement Authority

issued a decision partially granting Bright Data's motion and appointing a receiver.

One provision of the order requires the receiver to █████████████████████

████████████████████████████████████████████████████████

██████████.  A true and correct copy of the Hebrew version of the decision, along

with the translation that Bright Data filed in the district court, is attached hereto as

Exhibit 1.

23.    BI Science has begun complying with the order, █████████████

███████████████████████ thereby affording additional protections to

Bright Data.

24.    On June 30, 2021, the receiver sent a letter to BI Science's proxy-

service customers notifying them that on or after August 16, 2021, they will be

transferred to Bright Data.  A true and correct copy of that letter is attached hereto

as Exhibit 2.

25.    Since receiving that letter, numerous BI Science customers have

inquired about it and some have expressed serious concerns.

26.    For example, one BI Science customer wrote: ██████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

██████████████ █████

27.     Another BI Science customer wrote: ████████████████████

██████████████████

28.     As a reaction to the receiver's letter, a third customer has informed BI

Science that████████████████████████████████████

██████████████████████████████.

29.     On information and belief, a substantial majority of BI Science's

customers █████████████████████████████████

████████████████████████████████████

███████████████████████████

██████████████████████████████

██████████████████

30.     Further, I understand that ████████████████████

████████████████████████████████████████

███████████████████████████

31.     There is also a group of customers who have communicated to BI

Science that █████████████████████████████████

███████████████

32.    Given what Bright Data says on its website and what we know about Bright Data from the industry, my team and I estimate that ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████ .

33.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 26, 2021

_____

Kfir Moyal

# Exhibit 1

Redacted in its entirety

Exhibit 2

**Ziv Ironi**
Advocates & Notary

Eliahu House
2 Ibn Gvirol St.
Tel-Aviv 64077

Tel +972-3-6962222
Fax +972-3-6962221

E-mail ziv@ironi-law.com

**Tel Aviv, June 30, 2021**

**To:**

**Appointment of Receiver – Case Number 516123-05-21 – Transition of supplier of proxy services**

Dear client,

1. We are writing to you in our capacity as a Receiver appointed by a decision of the Israeli Tel-Aviv Collections Office's Registrar on June 21st, 2021 (''**the Decision**'' and the ''**Registrar**'', respectively). A copy of the Decision (translated from the original Hebrew) is attached to this letter.

2. As you may be aware, following arbitration proceedings between Bright Data Ltd. (formerly Luminati Networks Ltd.) and BI Science (2009) Ltd (Geosurf) in the USA, the Israeli Courts have found that an Arbitration Award that was awarded in favor of Bright Data in the USA can be enforced in Israel.

3. According to the Arbitration Award, BI Science (Geosurf) is required, among other things, to transition its proxy service customers to receive the same services from Bright Data.

4. In order to facilitate the execution of the Arbitration Award dated April 29th, 2020, a request was filed with the Registrar in Israel.

5. The Decision issued by the Registrar has appointed the undersigned, Advocate Ziv Ironi, to serve as a Receiver in order to conduct certain specific preliminary actions required for such facilitation, and specifically – for the transition of customers from BI Science (Geosurf) to Bright Data.

**Ziv Ironi**

**Advocates & Notary**

Eliahu House
2 Ibn Gvirol St.
Tel-Aviv 64077

Tel +972-3-6962222
Fax +972-3-6962221

E-mail ziv@ironi-law.com

6.    Section 1(b) of the Decision has ordered the undersigned to provide BI Science's (Geosurf) customers with this preliminary notice, to be followed in approximately 50 days, with specific steps for performance of the abovementioned transition. According to the Registrar's decision, the transition will take place not earlier than August 16th, 2021.

7.    I wish to assure you that the transition will be performed with minimal disruption to your business, with all parties working to make it as smooth as possible.

Any additional inquiries may be directed to me by return e-mail. Please do not hesitate to contact me with any questions or concerns.

Sincerely Yours,

Ziv Ironi, Adv.
Ziv Ironi, Advocates & Notary

# Exhibit H

Redacted version



**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

**Before Her Honor Judge Y. Shevah, V.P.**

| | |
|---|---|
| **Applicant** | **Luminati Networks Ltd.** |
| | By means of Advs. Saar Pauker and Benny Winston |

**versus**

| | |
|---|---|
| **Respondent** | **B. I Science (2009) Ltd.** |
| | By means of Advs. Assaf Biger and Niran Dor |

## <u>Judgment</u>

1

2 **Application for the enforcement of a foreign arbitration ruling under Section 29A of the**

3 **Arbitration Law, and under the New York Convention for the Recognition and**

4 **Enforcement of Arbitral Awards of 1958.**

5

6 <u>The Proceeding and Necessary Background</u>

7 1.      The Applicant petitions for the enforcement of a foreign arbitration ruling under

8 Section 29A of the Arbitration Law which instructs that "**an application for approval or**

9 **revocation of a foreign arbitration ruling which is subject to an international convention**

10 **to which Israel is a party and which convention sets forth instructions in the matter at**

11 **hand, shall be heard in accordance with said instructions and subject to them**", and

12 according to the New York Convention for the Recognition and Enforcement of Arbitral

13 Awards of the year 1958.

Page 1 of 20

# District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1  The Arbitration Award which forms the subject of the Application for Enforcement was issued

2  in the State of Texas by Mr. William Cornelius (hereinafter - **Cornelius**) on April 29, 2020,

3  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████ (the

6  Hebrew translations attached by the Applicant to the various documents it submitted are not

7  in dispute, and these shall be used for convenience purposes, in the appropriate places), ████

8  ████████████████████████████████████████████████████

9  ███████████████████████████████████████████ .

10

11  2.      In the background lies a dispute between the Applicant and the Respondent, two

12  companies engaged in the field of proxy servers, which is rooted in the Applicant's claim

13  pursuant to which the Respondent violated, by its activities, its intellectual property.

14  The Applicant filed a Claim against the Respondent in the state of Texas in the United States

15  with "**The United States District Court for the Eastern District of Texas Marshall Division**"

16  (Civil Action No. 2:18-CV-483-JRG) and it was set for hearing on February 24, 2020. The

17  proceeding was transferred to mediation before Cornelius, who submitted to the court on

18  behalf of the parties a joint application (drafted on February 23, 2020) for "**staying the**

19  **proceeding and issuing  a notice of settlement**" ("**Joint motion to stay all deadlines and**

20  **Notice of settlement**") where it was written that "**The Parties hereby notify the court that**

21  **all matters in controversy between the Parties have been settled, in principle**"

22  (hereinafter - **the Joint Application**), i.e., the disputes have been settled in principle and the

23  hearing should be canceled.

Page 2 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712‑05‑20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

██ ████████████████████████████████████████████

██ ████████████████████████████████████████████

██ ████████████████████████████████████████████

██ ████████████████████████████████████████████

██ ████████████████████████████████████████████

6  ████████████████

7  The hearing, which was scheduled for February 24, 2020, was canceled.

8

9  3.      Nevertheless, the Agreement did not put an end to the disputes, and the Applicant

10  petitioned for its enforcement. After the Respondent notified its objection, the parties were

11  summoned to a hearing held in the court in Texas on April 13, 2020 before Judge Rodney

12  Gilstrap, while Cornelius takes part in the hearing and answers the judge's questions via video

██  conference (corona!). ███████████████████████ █████████████

██  █████████████████████████████████████████████

██  █████████████████████████████████████████████

██  █████████████████████████████████████████████

██  █████████████████████████████████████████████

██  █████████████████████████████████████████████

██  █████████████████████████████████████████████

██  █████████████████████████████████████████████

██  █████████████████████████████████████████████

██  █████████████████████████████████████████████

██  █████████████████████████████████████████████

23  █████████████████████████████████████████████

Page 3 of 20

11/29/2020



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

4  ████████████████████████ my emphases).

5

4. ████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

18  ████████████████████████████ (hereinafter - the **Arbitration**

19  **Ruling**).

20

21  5.      To complete the picture I shall begin with the end and note that on July 2, 2020 the

Texas Court issued a judgment titled "**Order and Final Judgment**" ████████████

23  ████████████████████████████████████████████

Page 4 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020



2

3    The Respondent filed an appeal against said ruling on July 29, 2020 with the "**United States**

4    **Court of Appeals for the Federal Circuit**".  The developments in this appeal process are not

5    known.

6

7    6.      In any case, the proceeding before me was filed on May 27, 2020, prior to the Texas

8    court Judgment and prior to the filing of the appeal, in which the Appellant sought "**a petition**

9    **for "confirmation of a foreign arbitration ruling"**, and even filed an "**Application for**

     **Interim Relief** (*ex parte*)", including "

14    To the said applications blackened documents were attached

15    in view of an "**American protective order restricting their distribution**", while full versions

16    of some of those documents, as well as of the Judgment of July 2, 2020, were attached only as

17    a "**Response to the Request for Temporary Relief**" filed on July 8, 2020.

18    The request for temporary relief was ruled upon in a decision dated July 22, 2020, and on

19    November 1, 2020 the hearing in the main proceeding took place in the presence of the

20    parties, which included cross-examinations and summaries.

21

22    <u>Arguments of the Respondent</u>



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

7.     The Respondent argues that the Application for Recognition and Enforcement of the Arbitration Ruling must be rejected for a variety of reasons, the main ones being:

First, according to the customary case law in Israel, when a foreign court hears the question of confirmation or revocation of an arbitration ruling rendered in its jurisdiction, the applicant must undertake a proceeding under the Enforcement of Foreign Judgments Law, according to the conditions set forth therein, and not a proceeding under the Arbitration Law and the relevant Convention. This is certainly true where the foreign court hearing was initiated by the party seeking enforcement in Israel.

Second, the Applicant did not submit to the Court an answer to the Respondent's Objection to the Recognition and Enforcement Proceeding.

Third, █████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████ "
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████

Page 6 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

██ ████████████████████████████████████████████████

██ ████████████████████████████████████████████████

██ ████████████████████████████████████████████████

██ ████████████████████████████████████████████████

██ ████████████████████████████████████████████████

██ ████████████████████████████████████████████████

██ ████████████████████████████████████████████████

8 ██████████

9

10 <u>The Arguments of the Applicant</u>

11 8.      The Applicant did not file an answer to the '**Objection to the Request for Approval**

12 **of a Foreign Arbitration Ruling**" and its position is spread throughout the court documents

13 submitted on its behalf, mainly in response to the Respondent's answer to the request for a

14 temporary restraining order. I shall address this when determining the costs of the procedure.

15 The Applicant claims that it is entitled to obtain the enforcement order by virtue of the

16 provisions of the New York Convention, since none of the grounds set forth therein as an

17 exception for refraining from enforcing an arbitration ruling was proven, of which an exclusive

18 "jurisdiction clause" is not one of them.

██ ████████████████████████████████████████████████

██ ████████████████████████████████████████████████

██ ████████████████████████████████████████████████

22 ████████████████████████████████

Page 7 of 20



### District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1    On the claims concerning res-judicata due to the confirmation of the arbitration ruling by a
2    court in Texas, the Applicant refers to the foreign professional legal literature according to
3    which the filing of a procedure to revoke an arbitration ruling in the state where it was issued
4    does not prevent the filing of a petition for the enforcement of an arbitration ruling under the
5    New York Convention. According to it, a fortiori, the confirmation of the ruling in the state
6    wherein it has been granted, even if there is an appeal against the granting of the
7    confirmation, cannot block it from initiating a proceeding in Israel. It further claims that since
8    the Respondent did not submit an expert opinion on foreign law indicating the correctness of
9    its arguments and the chances of appeal in the United States, the assumption is that the
10    confirming judgment shall remain unchanged, and in any case there is no impediment to
11    incidental recognition under Section 11 of the Enforcement of Foreign Judgments Law.

12

13    <u>**Discussion and Decision**</u>

14    8.     The rule is that "**in the case of a foreign arbitration ruling to which the**
15    **Convention applies, we are not at all dealing with a petition for revocation as defined in**
16    **Section 24 of the Arbitration Law, since it is not an objection to recognition and**
17    **enforcement (and if you will - for confirmation) based on the grounds for revocation**
18    **enumerated in Section 24. We are dealing with a Petition which is based on the**
19    **provisions of Section 5 of the Convention, and on the grounds enumerated in this**
20    **Section that allow for the rejection of a petition for recognition or enforcement of an**
21    **arbitration ruling**"(**Leave of Civil Appeal 4320/11 I.A.M Communications Holdings Ltd. v.**
22    **Michael Wilson & Partners Ltd.**, paragraph 40 of the Judgment of Judge Danziger, February
23    15, 2012).

Page 8 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1    Section 5(1) of the Convention lists 5 grounds on which an objection to recognition and
2    enforcement of a foreign arbitration ruling may be based, as follows:  lack of validity of the
3    arbitration agreement or incapacity of the parties to it; failure to provide an adequate
4    opportunity to present arguments in the arbitration proceedings; lack of authority of the
5    arbitration or beyond the scope of authority; deviation from the arbitration regulations or
6    setting regulations in violation of the law governing the arbitration proceedings; invalidity of
7    the arbitration ruling due to it being set aside or due to the fact that it is not final according to
8    the law applicable to it.

9    Section 5(2) of the Convention adds two more grounds to the five mentioned above:
10   incapability to settle the matter in arbitration, and the fact that the arbitration ruling is
11   contrary to public policy.

12   These grounds constitute "... **a closed list of grounds for objection to the approval of the**
13   **ruling**" (Originating Motion in Arbitration 59290-10-15 **Morpho Detection LLC v. Waterfall**
14   **Engineering Ltd.**, granted on May 18, 2016).

15   It is also worth noting the limited scope of intervention in foreign arbitration rulings:  "**It is a**
16   **basic principle that the scope of judicial intervention in an arbitral award is limited and**
17   **delimited to specific grounds for cancellation of the ruling that must be interpreted very**
18   **narrowly. The arbitration institution was established against the background of a legal**
19   **policy that wished to encourage the existence of an efficient and fair system of**
20   **resolving disputes out of court.  This system eases the heavy burden on the courts and is**
21   **there to serve an important public interest... this is especially true, when it comes to**
22   **foreign arbitration, and even more when in our case it was done with their full consent,**
23   **and with the participation of both litigating parties, who approached it, and on which**

Page 9 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020



1   **terms they agreed in advance**" (Leave of Civil Appeal 9544/04 **Chian Shipping Ltd. v.**

2   **Lehmann Commodities**, April 4, 2005).

3

7

8   A.   The attorneys of the parties in the United States, Adv. Harkins on the part of the

9   Applicant, and Adv. Findlay on the part of the Respondent, participated in the meetings before

10   Cornelius;

    B.   Following these meetings, Cornelius drafted the agreement which contained

16

22

Page 10 of 20



<span style="color:blue">**District Court in Tel Aviv - Yafo**</span>

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712‑05‑20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020



Page 12 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020



18

19

20    12.    Needless to further mention and note that also in order to meet the burden required

21    by the Convention to establish a ground for opposing the enforcement of an arbitral ruling

22    whose substance as such is not in dispute, the testimony of the Respondent's CEO expressed

23    in a laconic affidavit that includes hearsay and has no statement regarding personal

Page 13 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1 involvement on his behalf in the negotiations that lead to drafting of the agreement by
2 Cornelius, or a reference to what has been said and words that have been exchanged in that
3 framework, is not sufficient.

4 I was convinced that the Respondent agreed to an arbitration proceeding and recognized the
5 validity of the arbitration clause.

6



17

18 Second, on the question of the interpretation of Section 2(2) of the New York Convention, it
19 also is conceivable that its purpose is to determine the conditions under which the local court
20 in the Contracting State **is obliged** to recognize the validity of the arbitration clause, in such a
21 way that it cannot impose additional conditions, however it does not deny it the authority to
22 recognize the validity of an arbitration clause even when they do not fully exist (see, for
23 example: Leonardo D. Graffi, "Harmonized Effects of Arbitration Agreements", 28 **Hous. J. Int'l**

Page 14 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1  **L.** 663, 690-694 (2006).  This view seems to be necessary and promotes judicial certainty. It
2  makes sense that when parties to some or other agreement establish an arbitration clause
3  between them, they do not think of every possibility regarding a future forum where the
4  question of the validity or enforcement of said clause will be discussed, and of proceedings
5  based on it, and they aim to enter into an agreement that is valid under local law that does
6  not necessarily require to meet all the conditions of Section 2(2) of the New York Convention.
7  Certainly, they cannot be viewed as having knowingly chosen to prevent enforcement in a
8  foreign country.
9  The possibility that the said clause in the Convention will deprive the court of a Contracting
10  State of the authority to enforce an arbitration ruling on such formal grounds, which are more
11  stringent than the domestic law considered by the parties, is inconsistent with the purpose of
12  the Convention "... **to improve the efficiency of arbitration in the settlement of disputes**
13  **in private law**" (Letters of Conventions 287).
14
15  14.      Moving on to the litigating framework.
16  The Respondent argues, as aforesaid, that in light of the approval of the arbitration ruling in
17  Texas, the only route which the Applicant can follow is the law for enforcing a foreign
18  judgment, and it cannot walk that route because it fails to comply with the requirement that
19  "**the judgment can no longer be appealed**."
20  With regard to the question of the manner in which a foreign arbitration ruling is received in
21  Israel, which was awarded, in our case, a validating judgment in a foreign country, it was
22  indeed stated that "**if an arbitration ruling was confirmed – it is brought to Israel as a**
23  **judgment of a foreign court ("foreign ruling") and the question of its enforcement in**

Page 15 of 20



# District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1  **Israel is discussed in the Enforcement Law**" (Smadar Ottolenghi, **Arbitration: Law and**
2  **Procedure**, Fourth Special Edition 5755-2005, page 945), and **"... once the arbitration ruling**
3  **was confirmed in the foreign court, the only framework in which one can request its**
4  **enforcement is by means of the Law for the Enforcement of Foreign Judgments ...** "(Civil
5  Claim 1137/09 **Elefant v. Haimov**, issued on April 03, 2011).

6  At the same time, in case law, although in a side note, an opposing opinion is mentioned
7  according to which "**the Applicant's claim pursuant to which, since a foreign ruling has**
8  **been issued in arbitration matters by a judicial entity, the only way to enforce it, is**
9  **pursuant to the Enforcement of Foreign Judgments, must be rejected**", where a leave of
10  civil appeal was rejected on the ground that "**the learned judge was right in believing that**
11  **no basis was presented to her determining that according to English law the English**
12  **judgment must be considered as a judgment confirming the foreign arbitration ruling;**
13  **and on this matter, English law should be considered as a fact that must be proven"**
14  (Leave of Civil Appeal 1810/94 **Mafro Kibbutz Hagoshrim v. Leon Pais**, issued on June 26,
15  1994).

16  To my understanding, the question has not yet been decided in unequivocally binding
17  precedent.

18

19  15.    The Applicant attached to the Response to the Request for Temporary Relief an
20  opinion dated July 6, 2020, drafted by Claire Abernathy Henry, a partner in the law firm of
21  Ward Smith & Hill in Texas, and a member of the State's Bar Association since 2006, which
22  relates mainly to the protective order, and does not express an opinion as to the validity of the



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1    settlement agreement or the nature or propriety of the proceedings in the Texas court from a

2    procedural point of view, under local law.

3    The Respondent, for its part, did not attach any opinion.

4

5    16.      The Regulations for the Execution of the New York Convention (Foreign Arbitration),

6    5738-1978, state under the heading "**Purpose and Interpretation**" that "**these Regulations**

7    **are for the implementation of the New York Convention, and shall be construed as one**"

8    (Regulation 2), and under "**Exceptions to Confirmation of a Foreign Arbitration Ruling**"

9    that "**if an application has been filed for the revocation of a judgment or for its**

10    **suspension by a competent authority of the place where it was given or according to the**

11    **law it was given, the court may postpone the proceedings to another date, and may at**

12    **the request of the party seeking confirmation of the judgment, order the other party to**

13    **provide an appropriate guarantee**" (Regulation 4). This, in accordance with the provisions of

14    the New York Convention, according to which "**if a request was submitted to the**

15    **competent authority mentioned in Section 5(1)(e) to revoke or suspend the ruling** [in the

16    original - setting aside or suspension; Y.S.], **the requested authority may rely on the**

17    **judgment, if it is right in its opinion, to postpone** [in the original – adjourn; Y.S.] **the**

18    **decision regarding the enforcement of the judgment ...** " (Section 6).

19

20    17.      The thesis according to which it is not possible to initiate proceedings for the

21    recognition and enforcement of a foreign arbitration ruling as long as a proceeding is pending

22    in a foreign court dealing with its validity, in view of non-compliance with the provision of

23    Section 3(2) of the Enforcement of Foreign Judgments Law according to which "**the ruling can**

Page 17 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1   **no longer be appealed**" is inconsistent with the provision of Regulation 4, or with the

2   provision of Section 6 mentioned above, and voids them of any meaning, since the two said

3   provisions grant the court discretion whether to litigate the questions of recognition and

4   enforcement or to postpone the hearing to a later date, as opposed to viewing the proceeding

5   revolving around them as subject to dismissal due to the irregularity of its submission.

6

7   18.      Neither is it clear why the position of a party whose foreign arbitration ruling was

8   granted in his case has already been confirmed in the state that it has been granted, should be

9   worse by manner blocking it from being confirmed in his country of residence, compared to a

10  party who seeks to approve a foreign arbitration ruling that has not yet been submitted to any

11  judicial examination, when logic leads to a contrary result, which actually grants an advantage

12  to whom the judicial decision recognizing the foreign arbitration ruling has been issued, after

13  it has already successfully crossed the foreign furnace.

14  It further should be noted that the application for confirmation was submitted to the court in

15  Israel by the Applicant on May 27, 2020 before July 2, 2020 which then was approved by the

16  court in Texas, certainly before July 29, 2020 when the Respondent filed the appeal.

17  Nor has it been proved that the confirming decision is the result of an initiated application on

18  the part of the Applicant, or is only a warranted provision, even without an application, similar

19  to the provision of Section 28 of the Arbitration Law - an issue that should have been clarified

20  by the Respondent, which objects to the enforcement.

21  A result whereby the Applicant will be barred from clarifying a proceeding that it lawfully filed,

22  will be directed to filing a proceeding under the Foreign Judgment Enforcement Act, which will

23  also not be adjudicated but will be delayed due to an appeal filed by the Respondent in Texas

Page 18 of 20



### District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1   when its chances are not clear, nor is it clear when it will be heard and adjudicated – is not

2   reasonable.

3

4   ■■ ██████████████████████████

    ■ ████████████████████████████████████

    ■ ████████████████████████████████████

    ■ ████████████████████████████ ██████

    ■ ████████████████████████████████████

    ■ ████████████████████████████████████

    ■ ████████████████████████████████████

    ■ ████████████████████████████████████

    ■ ████████████████████████████████████

    ■ ████████████████████████████████████

    ■ ████████████████████████████████████

15  ████

16  And as to the additional argument concerning the failure to file an Answer: The Applicant did

17  indeed not file a response to the objection to recognize and enforce the arbitration ruling,

18  which was submitted by the Respondent, which is in fact a procedure requiring a decision, and

19  such should have been filed, and the Court will not find itself gathering its position from

20  evidence scattered among the pleadings it filed, except that it is not a violation of a court

21  order – since such order was not given.

22

23  <u>The Result</u>



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1  20.      Since no cause of action has been established to refrain from doing so, I order the

2  enforcement of the arbitration ruling issued in the State of Texas by Mr. William Cornelius

3  (hereinafter - **Cornelius**) on April 29, 2020.

4  In view of the statements provided in the last paragraph of Section 19, I will refrain from

5  awarding expenses in favor of the Applicant.

6

7  Issued this day, on 13 Kislev 5781, November 29, 2020, *ex parte*.

8

**Yehudith Shevah, Judge, V.P.**

Page 20 of 20

Exhibit I



**בבית המשפט העליון**

**רע"א 44/21**

| | |
|---|---|
| לפני: | כבוד השופט י׳ עמית |
| | כבוד השופט ד׳ מינץ |
| | כבוד השופטת י׳ וילנר |
| | |
| המבקשת: | בי. איי סיאנס (2009) בע"מ |
| | |
| | נ ג ד |
| | |
| המשיבה: | לומינטי נטוורקס בע"מ |

בקשת רשות ערעור על פסק דינו של בית המשפט המחוזי
בתל אביב-יפו (כב׳ השופטת י׳ שבח, סג"נ) בהפ"ב -62712
20-05 מיום 29.11.2020

| | |
|---|---|
| בשם המבקשת: | עו"ד אסף ביגר; עו"ד נירן דור |
| | |
| בשם המשיבה: | עו"ד ד"ר סער פאוקר; עו"ד בני וינסטון |

## פסק-דין

<ins>השופט ד׳ מינץ</ins>:

בקשת רשות ערעור על פסק דינו של בית המשפט המחוזי בתל אביב-יפו (כב׳
השופטת י׳ שבח, סג"נ) מיום 29.11.2020 בהפ"ב 62712-05-20 במסגרתו התקבלה
בקשת המשיבה לאכיפת פסק בוררות שניתן במדינת טקסס שבארצות הברית ביום
29.4.2020.

הרקע לבקשה

1.    ברקע להליך סכסוך בין המבקשת לבין המשיבה, שתי חברות העוסקות בתחום
שרתי Proxy, הנעוץ בטענת המשיבה כי המבקשת הפרה בפעילותה את זכויות קניינה
הרוחני. המשיבה הגישה נגד המבקשת תובענה בבית משפט פדרלי במדינת טקסס
וההליך הועבר לגישור בפני מר William Cornelius (להלן: הבורר). ביום 23.2.2020

הגיש הבורר בקשה משותפת בשם הצדדים לעיכוב ההליך נוכח הגעתם להסכמה עקרונית לפשרה (להלן: הסכם הפשרה). למחרת היום ערך הבורר מסמך נוסף שכותרתו "Mediated Settlement" שנכתב בסופו כי הצדדים מסכימים להביא את כל מחלוקת בנוגע להוראות ותנאי הפשרה לבוררות מחייבת בפני הבורר (להלן: תניית הבוררות).

2.    המשיבה סברה כי המבקשת נמנעת מליישם את הסכם הפשרה ועל רקע זה הגישה לבית המשפט בארצות הברית בקשה להכרה בתוקפו של הסכם הפשרה. ביום 13.4.2020, לאחר שמיעת טיעוני הצדדים, קיבל בית המשפט את טענת המשיבה כי הצדדים הגיעו להסדר פשרה הכולל תניית בוררות.

3.    בהתאם לכך, פנו הצדדים לבורר על מנת שיכריע בסכסוך לגופו של עניין. ביום 29.4.2020 ניתן פסק בוררות, שחייב את המבקשת בביצוע פעולות מסוימות שאין רלוונטיות להכרעה בשאלה העקרונית שמציבה בקשה זו (להלן: פסק הבוררות). בהמשך הגישה המשיבה לבית המשפט בטקסט בקשה לאכיפת הסכם הפשרה ופסק הבוררות (Enforcement of settlement agreement and arbitrator's award).

4.    ביום 27.5.2020 הגישה המשיבה לבית המשפט המחוזי בקשה "לאישור פסק בוררות חוץ" יחד עם בקשה למתן סעדים זמניים שונים. המבקשת בתגובה טענה כי יש לדחות את הבקשה. בין היתר, טענה כי נוכח הגשת הבקשה לאכיפת פסק הבוררות בטקסט, היה על המשיבה לנקוט בהליך לפי חוק אכיפת פסקי חוץ, התשי"ח-1958 (להלן: חוק אכיפת פסקי חוץ) ולא בהליך אישור פסק בוררות לפי חוק הבוררות, התשכ"ח-1968 (להלן: חוק הבוררות). לדעתה אין מדובר רק בשאלה פרוצדורלית גרידא, שכן על פי סעיף 3(2) לחוק אכיפת פסקי חוץ אחד התנאים להכרזה על פסק חוץ כאכיף הוא שהפסק אינו ניתן עוד לערעור. כמו כן, בפסק הבוררות נקבעה "תניית שיפוט ייחודית" לבתי המשפט בטקסט ולכן לא הייתה המשיבה רשאית להגיש את הבקשה בישראל. בנוסף, על הסכם הפשרה חתם הבורר בלבד מבלי שהצדדים חתמו עליו, בניגוד להוראות סעיף 2 לאמנת ניו יורק בדבר הכרתם ואכיפתם של פסקי בוררות חוץ, 1958 (להלן: אמנת ניו יורק) וגם בשל כך לא ניתן להורות על אכיפת פסק הבוררות, והמשיבה גם לא הגישה תגובה להתנגדות לאכיפת הפסק מצד המבקשת. לבסוף, טענה המבקשת כי הסכם הפשרה נעדר תוקף. זאת מפני שלא התגבש בין הצדדים הסדר סופי ומחייב, לרבות תניית הבוררות עליה נסמכה ההתדיינות לפני הבורר. ערעור על קביעתו של בית המשפט הפדרלי כי מדובר בהסדר פשרה מחייב תלוי ועומד ועל כן לא ניתן להסתמך גם על קביעה זו.

5. כאמור, המשיבה לא הגישה תגובה להתנגדותה של המבקשת, אך בית המשפט המחוזי למד את עמדתה מכתבי הטענות השונים שהגישה במסגרת ההליך. בתמצית, המשיבה סברה כי היא זכאית לקבל את צו האכיפה מכוח הוראותיה של אמנת ניו יורק, משעה שהמבקשת לא הוכיחה את התקיימות התנאים הקבועים בה המצדיקים הימנעות מאכיפת פסק בוררות חוץ.

6. לשלמות התמונה יצוין כי ביום 2.7.2020, לאחר הגשת הבקשה לבית המשפט המחוזי לאישור פסק הבוררות, אישר בית המשפט בטקסס את פסק הבוררות. המבקשת הגישה נגד פסק דין זה ערעור לבית המשפט הפדרלי לערעורים, אשר נכון ליום מתן פסק הדין מושא הבקשה טרם הוכרע.

פסק דינו של בית המשפט המחוזי

7. בית המשפט המחוזי דחה את טענת המבקשת בדבר היעדר תוקף לתניית הבוררות והורה על אכיפת הפסק. לאחר עיון בחומר הראיות נקבע כי החומר מצביע על הסכמתה של המבקשת ובאי-כוחה להסכם הפשרה ולתניית הבוררות המעוגנת בו. המבקשת גם לא צירפה ראיה המצביעה על כך שתניית הבוררות הייתה נעדרת תוקף. גם הטענה כי צורתו של ההסכם, קרי היעדרן של חתימות הצדדים, מונעת את אכיפת פסק הבוררות בישראל נדחתה, תוך שבית המשפט מציין כי בא-כוחה של המבקשת אישר לבורר בדוא״ל לפנות לבית המשפט בקשר להסכם, שכלל גם את תניית הבוררות. אישור זה מקיים את דרישת הכתב הקבועה בסעיף 2(2) לאמנת ניו יורק.

8. באשר למסגרת הדיונית, בית המשפט דחה את טענת המבקשת כי לאור אישורו של פסק הבוררות על ידי בית המשפט בטקסס, המסלול היחיד ״לקליטת״ פסק הבוררות הוא המסלול שמתווה החוק לאכיפת פסקי חוץ, ולא חוק הבוררות במסגרתו הוגשה הבקשה לאישור הפסק. בית המשפט סבר כי פרשנותה של המבקשת את סעיף 3(2) לחוק אכיפת פסקי חוץ, לפיה אין לנקוט בהליכי הכרה ואכיפה של פסק בוררות חוץ כל עוד תלוי ועומד הליך בבית משפט זר בנוגע לתוקפו אינה מתיישבת עם תקנה 4 לתקנות לביצוע אמנת ניו-יורק (בוררות חוץ), התשל״ח-1978 ועם הוראת סעיף 6 לאמנת ניו יורק. שתי הוראות אלה מקנות לבית המשפט סמכות לדחות את ההליכים בבקשה לאישור פסק בוררות חוץ כאשר הוגשה בקשה לביטול הפסק או להתלייתו לרשות המוסמכת במקום בו ניתן ואינן קובעות כי עצם הגשת בקשות אלה מובילה למחיקת בקשת אישור הפסק.

9. עוד ציין בית המשפט כי המבקשת לא הצביעה על הצביעה על סיבה בגינה "יופלה" לרעה מי שמחזיק בידיו פסק בוררות חוץ שאושר במדינה אשר על פי חוקיה נערכה הבוררות על פני מי שפסק הבוררות הזר בו הוא מחזיק טרם זכה לכל בחינה שיפוטית. כך, מי שאינו אוחז בידו פסק חוץ המאשר את פסק הבוררות שניתן לטובתו יכול להגיש בקשה לאישור פסק הבוררות במדינת תושבותו. לעומת זאת, מי שאושר פסק הבוררות שניתן לטובתו בפסק חוץ ייאלץ להמתין עד להפיכתו של פסק החוץ לפסק דין חלוט, על מנת שיוכל לאוכפו מכוח חוק אכיפת פסקי חוץ. בנוסף, הבקשה לאישור הפסק הוגשה לפני אישורו על ידי בית המשפט בטקסס ולא הוכח על ידי המבקשת כי הפסק המאשר הוא תוצאה של בקשה יזומה מצד המשיבה.

10. גם טענות המבקשת לגבי תניית שיפוט ייחודית בבית המשפט בטקסס ואי הגשת כתב תשובה על ידי המשיבה נדחו על ידי בית המשפט, על אף שצוין כי היה על המשיבה להגיש תשובה להתנגדות המבקשת. סיכומם של דברים, בית המשפט הורה על אכיפת פסק הבוררות.

טענות הצדדים

11. מכאן הבקשה שלפני. המבקשת מלאה טענות כרימון כלפי פסק דינו של בית המשפט המחוזי. טענתה העיקרית היא כי שגה בית המשפט כאשר דחה את טענתה כי פסק הבוררות נבלע בפסק דינו של בית המשפט בטקסס ועל כן אין כל מקום להכיר ולאכוף את פסק הבוררות בשלב זה. מעבר לכך, פסק הבוררות כלל תניית שיפוט המפנה לבית המשפט בטקסס ועל כן לא היתה המשיבה רשאית להגיש כלל בקשה לאוכפה בישראל. כמו כן, בהתנהלות המשיבה נפלו פגמים דיוניים חמורים אשר הצדיקו את דחיית בקשתה לאכיפת פסק הבוררות. לבסוף, המבקשת עתרה לחלופין לעכב את הדיון בבקשה לאכיפת הפסק עד להכרעה בערעור שהגישה על פסק הדין שאישר את פסק הבוררות בארצות הברית, בהתאם לסעיף 6 לאמנת ניו יורק, ובית המשפט לא התייחס לבקשה זו.

12. בתשובתה טענה המשיבה כי הבקשה אינה נמנית על המקרים המצדיקים מתן רשות ערעור. לגופם של דברים, המשיבה דוחה את טענת המבקשת כי תניית הבוררות נעדרת תוקף. המבקשת לא הפנתה לכל ראיה המצביעה על היעדר הסכמה לקיום הליך הבוררות. להיפך, הראיות מצביעות על שיתוף פעולה של באי-כוחה עם הליך הבוררות. באשר לאישור פסק הבוררות על ידי בית המשפט בארצות הברית, לשיטתה אין באישור האמור כדי למנוע את אכיפתו בישראל. אין היגיון בטענת המבקשת כי אישור פסק הבוררות דווקא מרע את מצבו של הצד המבקש לאוכפו, שיכול עתה להגיש בקשה רק

לפי החוק לאכיפת פסקי-חוץ ולא לפי אמנת ניו יורק. אין ממש גם בטענת המבקשת כי ההוראה בפסק הבורר לפיה סמכות השיפוט על פסק הבוררות תהא בטקסס חוסמת את המשיבה מהגשת בקשה לאכיפת פסק הבוררות בישראל. מדובר בהוראה בפסק בורר ולא בתנייה הסכמית, אשר לא נועדה להוות מחסום דיוני מפני אכיפת פסק הבורר מחוץ לארצות הברית. גם טענת המבקשת כי בית המשפט לא התייחס לבקשתה לעיכוב ההליכים דינה להידחות, שכן בית המשפט נתן דעתו לבקשה. מכל מקום, המבקשת זנחה את בקשתה לעיכוב ההליכים בסיכומיה לפני בית המשפט ולגופם של דברים משעה שלא הוגשה על ידי המבקשת בקשה לביטול פסק הבוררות, היא אינה עומדת בתנאים הקבועים בסעיף 6 לאמנת ניו יורק.

דיון והכרעה

13. לאחר עיון בבקשה, בתשובה ובנספחים שצירפו הצדדים ובהתאם לסמכות המסורה לי לפי תקנה 149 לתקנות סדר הדין האזרחי, התשע״ט-2018, הגעתי למסקנה כי יש לקבל את הבקשה ולדון בה כבערעור אך זאת רק בכל הנוגע לשאלה האם המסלול לאכיפת פסק בוררות זר, שאושר זה מכבר במדינה שבה ניתן, הוא באמצעות בקשה לפי סעיף 29א לחוק הבוררות או שמא המסלול בו יש לילך הוא המסלול הקבוע בחוק לאכיפת פסקי חוץ. יחד עם זאת באתי לכלל מסקנה כי דין הערעור להידחות וכך אמליץ לחבריי שנעשה.

הטענות הנוספות שהעלתה המבקשת בבקשה אינן חורגות מעניינם הפרטני של הצדדים ואינן מצדיקות מתן רשות ערעור (ראו: רע״א 1751/21 כנג נ׳ ועקנין, פסקה 7 (17.3.2021); רע״א 1847/21 גל עם נכסים בע״מ נ׳ תשובה התחדשות עירונית (2016) בע״מ, פסקה 8 (17.3.2021)).

14. פסק בוררות חוץ מוגדר בסעיף 1 לחוק הבוררות כפסק בוררות שניתן מחוץ לישראל. פסק בוררות חוץ, בדומה לפסק בוררות "מקומי", מחייב את הצדדים כמעשה בית דין מעצם מתן קיומו. הרציונל לכך הוא שפסק בוררות שואב תוקפו מהסכמת הצדדים. עם זאת, לצורך אכיפת פסק הבוררות נדרשת קליטתו בישראל. חוק הבוררות ואמנת ניו יורק מסדירים את אופן קליטתו של פסק בוררות חוץ בישראל. סעיף 29א לחוק הבוררות מעניק לבית משפט בישראל את הסמכות לאשר או לבטל פסק בוררות חוץ שחלה עליו אמנה בינלאומית. כך נקבע בסעיף:

"בקשה לאישור או לביטול של פסק בוררות-חוץ שחלה
עליו אמנה בינלאומית שישראל צד לה והאמנה קובעת

הוראות בעניין הנדון, תוגש ותידון בהתאם לאותן הוראות
ובכפוף להן".

אין מחלוקת בין הצדדים כי אמנת ניו יורק, העוסקת בפסקי בוררות שניתנו
במדינה אחרת מזו שבה מתבקשת הכרתם (Recognition) או אכיפתם (Enforcement),
חלה בענייננו. בסעיף 3 לאמנת ניו יורק בנוסחו בעברית נקבע כדלקמן:

> "כל מדינה מתקשרת תכיר בפסקי בוררות כמחייבים
> ותאכוף אותם בהתאם לסדרי הדין של הארץ שבה
> מסתמכים על הפסק, לפי התנאים הקבועים בסעיפים
> הבאים. על הכרתם או אכיפתם של פסקי בוררות שאמנה
> זו חלה עליהם לא יוטלו תנאים קשים יותר במידה ניכרת,
> או אגרות או היטלים גבוהים יותר, מאלה המוטלים על
> הכרתם או אכיפתם של פסקי בוררות פנימיים".

עוד קובעת אמנת ניו יורק, כי בעל דין המבקש הכרה ואכיפה של פסק בוררות
חוץ נדרש להמציא את בקשתו עם פסק הבוררות המקורי ואת הסכם הבוררות המקורי
(סעיף 4 לאמנת ניו יורק). מדרישות אלה אנו למדים כי לצורך הכרה ואכיפה, לא נדרש
אישורו של פסק הבוררות במדינה בה ניתן. זהו אחד מהחידושים העיקריים של אמנת ניו
יורק על פני אמנת ז'נבה משנת 1927, אמנת הבוררות הבינלאומית שקדמה לה. אחד
התנאים להכרה ואכיפה של פסק בוררות חוץ על פי אמנת ז'נבה היה הוכחה כי פסק
הבוררות אושר במדינה בה ניתן, היינו דרישה ל"הכרה" הכפולה (כלל זה מכונה The
Double Exequatur Doctrine). באמנת ניו יורק ישנה גם רשימה סגורה של עילות
להתנגדות לבקשה לאכיפה והכרה בפסק בוררות (סעיף 5 לאמנת ניו יורק).

15. הדרישה ל-double exequatur הוחלפה בסעיף 5(1)(ה) לאמנת ניו יורק. תחת
דרישה זו, סעיף 5 מונה רשימה סגורה של עילות להתנגדות לבקשה לאכיפה והכרה בפסק
בוררות חוץ: הסכם שאינו בר-תוקף (סעיף 5(1)(א)); אי מתן הזדמנות למתנגד לטעון
טענותיו בהליך הבוררות (סעיף 5(1)(ב)); פסק בוררות המכריע בנושאים שלא נמסרו
להכרעתו של הבורר, היינו טענת חוסר סמכות (סעיף 5(1)(ג)); שהבוררות התנהלה שלא
בהתאם להסכם הבוררות (סעיף 5(1)(ד)); פסק הבוררות בוטל או הותלה על ידי הרשות
המוסמכת במדינה בה ניתן (סעיף 5(1)(ה)). סעיף 5(1)(ה), הוא הרלוונטי לענייננו לנוכח
טענת המבקשת כי אין מקום להכיר ולאכוף את פסק הבוררות בעת הזו, טרם ההחלטה
המאשרת אותו במקום בו ניתן (טקסס) הפכה לחלוטה. בנוסחו באנגלית קובע הסעיף
כדלקמן:

"Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked. Only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a)…

(b)…

(c)…

(d)…

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made".

ובנוסח בעברית:

"לפי בקשת בעל הדין שנגדו מעידים את הפסק אפשר לסרב להכרתו ואכיפתו רק אם אותו בעל דין המציא לרשות המוסמכת, שממנה מבוקשות ההכרה והאכיפה, הוכחה —

(א)...

(ב)...

(ג)...

(ד)...

(ה) שהפסק טרם נעשה חובה על בעלי הדין, או בוטל או הותלה על ידי רשות מוסמכת של הארץ שבה, או שלפי דינה, ניתן הפסק".

היינו, האפשרות להתנגד להכרה בפסק בוררות חוץ במסגרת העילה המפורטת קיימת רק כאשר הפסק "טרם נעשה חובה" או "בוטל" או "הותלה". במקרה דנן, פסק הבוררות לא בוטל ולא הותלה, אך ההחלטה המאשרת אותו טרם הפכה חלוטה, שכן תלוי ועומד לגביה ערעור המבקשת בערכאת הערעור הפדרלית. על פי פשוטו של מקרא, יש אפוא רגליים לסברה כי כל אימת שפסק הבוררות טרם אושר באופן סופי כך שאין עליו עוד עוררין במדינה בה ניתן, הוא "טרם נעשה חובה על בעלי הדין" ועל כן הדין עם המבקשת.

16. אלא מאי, בעניין זה קיים קונצנזוס בקרב המלומדים ובתי משפט במדינות רבות כי המילה "binding" (נעשה חובה, בנוסח העברי) אין משמעה כי הזוכה בפסק הבוררות נדרש להגיש בקשה לאישורו של פסק הבוררות במדינה בה ניתן על מנת להביא להכרה ואכיפה של הפסק במדינה אחרת. על פי עמדה זו, פרשנות לפיה העובדה שפסק הבוררות טרם אושר במדינת המקור מהווה עילה לסרב להכרה ואכיפה לפי אמנת ניו יורק, תחתור תחת כוונתם של מנסחי האמנה, אשר ביקשו כאמור לבטל את דרישת ה- double exequatur (ונבה באמנת נ'גבעה) Dana H. Freyer & Hamid G. Gharavi, *Finality and*

*Enforceability of Foreign Arbitral Awards: From "Double Exequatur" to the Enforcement of Annulled Awards: A Suggested Path to Uniformity Amidst Diversity*, 13 ICSID Foreign Inv. L.J. 101, 106 (1998) (להלן: פרייר וגרבי)). יחד עם זאת, השלילה האמורה אינה מספיקה ועדיין יש לצקת תוכן אל המונח "נעשה חובה".

17. בפסיקת בתי המשפט השונים ובקרב מלומדים קיימות מספר גישות פרשניות למונח. לפי הגישה הראשונה, הבחינה האם פסק בוררות חוץ "נעשה חובה" צריכה להתבצע בהתאם לחוק במדינה שעל פי חוקיה התנהלה הבוררות (להלן: מדינת המקור). כלומר, רק כאשר פסק הבוררות נעשה מחייב לפי חוקי מדינת המקור הוא "נעשה חובה" גם לפי אמנת ניו יורק. על פרשנות זו נמתחה ביקורת, לפיה היא תפגע באחידות האכיפה וההכרה בפסקי דין מכוח אמנת ניו יורק ותוביל לתוצאות שונות ביחס לפסקי בוררות שניתנו במדינות שונות. לפי הפרשנות השנייה, פסק בוררות חוץ "נעשה חובה" לפי אמנת ניו יורק כאשר לא ניתן עוד לערער עליו לגופו. לפי גישה זו, פסק הבוררות "נעשה חובה" אף אם ניתן עוד להגיש בקשה לביטולו. גישה שלישית היא כי פסק הבוררות "נעשה חובה" כאשר לא ניתן לערער עליו עוד במסגרת הליכי בוררות, להבדיל מערעור לפני ערכאה שיפוטית (ראו: Fertilizer Corp. of India v. IDI Management, 517 F. Supp. 948 (S.D Ohio 1981). לבסוף, פרשנות רביעית היא כי פסק הבוררות "נעשה חובה" אלא אם בוטל או הותלה על ידי הרשות המוסמכת. על פי פרשנות זו, מרגע מתן פסק הבוררות הוא נעשה חובה לפי אמנת ניו יורק וניתן להגיש לגביו בקשה להכרה ואכיפה. היינו, כי ניתן פסק בוררות סופי (לפירוט על אודות הגישות הפרשניות השונות, ראו: פרייר וגרבי, עמ' 109-107). הסוגיה טרם נדונה בפסיקה הישראלית, וסבור אני כי הפרשנות לפיה פסק בוררות "נעשה חובה" כאשר לא ניתן עוד להגיש עליו ערעור במסגרת הליכי בוררות היא הפרשנות הראויה. "נעשה חובה" בהקשר של אמנת ניו יורק משמעו שהליך הבוררות הסתיים בפסק בוררות הבשל לאישור על ידי בית המשפט המוסמך, ולא לאחריו.

18. גם סוגיית ההכרה והאכיפה של פסקי בוררות זרים שאושרו או בוטלו במדינת המקור מכוח אמנת ניו יורק והשלכותיה טרם נדונה בפסיקה. סוגיה זו מתעוררת מלכתחילה נוכח לשון סעיף 5 לאמנת ניו יורק לפיו "אפשר לסרב" (may refuse) גם כאשר קיימת עילה להתנגדות לאכיפה והכרה כדוגמת העובדה שפסק הבוררות בוטל על ידי הרשות המוסמכת. לצורך הדיון אציג מספר תרחישים אפשריים. כנקודת מוצא, נניח כי במדינה א' שהיא מדינת המקור ניתן פסק בוררות לטובתו של ב' ולחובתו של ג'. בהינתן תנאי פתיחה אלה, נבחן מספר מקרים עיקריים בהם הסוגיה עשויה להתעורר:

(א)    ג' הגיש בקשה לביטולו של פסק הבוררות במדינת המקור ובית המשפט המוסמך הורה על ביטולו של פסק הבוררות. ניתן להצביע על מספר גישות עיקריות ביחס לאכיפה והכרה של פסקי בוררות זרים שבית המשפט המוסמך הורה על ביטולם. הראשונה היא "הגישה הטריטוריאלית". לפי גישה זו, המקום שעל פי חוקיו נערכה הבוררות הוא שקובע את הדינים שיחולו על ההליך, גם במסגרת של הכרה ואכיפה על פי אמנת ניו יורק. בהתאם לכך, ביטולו של פסק הבוררות במדינת המקור מביא לכך שלא ניתן לאכפו עוד מכיוון שאין עוד מה לאכוף (ex nihilo nil fit). במשך שנים רבות זו הייתה הגישה הפרשנית המובילה. לפי הגישה השנייה, "הגישה האוניברסלית", מערכת המשפט שבה מתבקשת הכרה ואכיפה של פסק הבוררות הזר רשאית להתעלם מהחלטה על ביטול פסק הבוררות במדינת המקור, אם על פי דיני הבוררות החלים בה לא קמה עילת ביטול. עמדה זו נשענת על פרשנות סעיף 7 לאמנת ניו יורק, לפיו "הוראות אמנה זו ... לא ישללו משום צד מעוניין כל זכות שקיימת בידו להשתמש בפסק בוררות בדרך ובמידה המותרת לפי דיניה או הסכמיה של הארץ המתבקשת להסתמך על פסק זה". עיקרון זה מוכר כעיקרון ה-More-Favorable-Right. זוהי הגישה הנוהגת במשפט הצרפתי אך היא לא הכתה שורשים בשיטות משפט אחרות (לפירוט על הגישה הצרפתית והביקורת עליה, ראו: Hamid G. Gharavi, *Enforcing Set Aside Arbitral Awards: France's Controversial Steps* *beyond the New York Convention*, 6 J. Transnat'l L. & Pol'y 93 (1996)). גישה שלישית נסמכת על לשונה של אמנת ניו יורק (...the award *may* be refused), ולפיה ביטול כאמור אינו מונע אפשרות של הכרה ואכיפה של פסק הבוררות. אמנם, ככלל ביטולו של פסק הבוררות במדינת המקור חוסם את אכיפתו והכרתו במדינה זרה. אולם לבית המשפט שיקול דעת בסוגיה ובאפשרותו להכיר ולאכוף את פסק הבוררות על אף שבוטל במדינת המקור. הכרה ואכיפה כאמור תתרחשנה רק במקרים חריגים בהם בית המשפט מגיע למסקנה, למשל, כי ההחלטה על ביטול פסק הבוררות התקבלה על ידי ערכאה שאינה עצמאית או בעלת משוא פנים (למקרה שכזה בהולנד, ראו: Yukos Capital SARL/OAO Rosneft, Gerechtshof [Hof], Amsterdam, Apr. 28, 2009; זוהי גם הגישה הנוהגת באנגליה: Jonathan Hill, *The Significance of Foreign Judgments Relating to an Arbitral Award in the Context of an Application to Enforce the Award in England*, 8(2) J. PRIV. INT'I L. 159, 175 (2012) (להלן: היל)).

(ב)    ג' הגיש בקשה לביטולו של פסק הבוררות במדינת המקור ובית המשפט המוסמך דחה את הבקשה. במקרה זה, ייתכן שפסק דינו של בית המשפט במדינת המקור יהיה בבחינת מעשה בית דין ויקים השתק עילה השתק המונע מג' לטעון טענות זהות בבואו להתנגד לבקשה להכרה ואכיפה של פסק הבוררות (זהו הדין הנוהג באנגליה: House of Spring Garden v. Waite [1991] 1 QB 241; ובארצות הברית: Gulf Petro Trading Co. Inc v. Nigerian

יורק ניו באמנת. National Petroleum Corp., 288 F. Supp. 2d 783 (N.D Tex. 2003)
אין התייחסות למקרה מעין זה, אולם, מטבע הדברים, דחיית בקשה לביטול פסק
הבוררות במדינה המקור תחליש את התנגדותו של ג' להכרה ואכיפה מכוחה.

(ג) ב' הגיש בקשה לאישורו של פסק הבוררות במדינת המקור ובית המשפט המוסמך
קיבל את הבקשה (בדומה לענייננו). העמדה המקובלת בספרות היא, כי אין סימטריה בין
פסק דין המבטל את פסק הבוררות לבין פסק דין המאשר אותו. הווה אומר, לפסק דין
המאשר את פסק הבוררות חשיבות פחותה, בהקשר של אמנת ניו יורק. לפי עמדה זו, על
בית המשפט במדינה בה מתבקשת הכרה ואכיפה לבחון באופן עצמאי האם מתקיימת
אחת מהעילות הקבועות בסעיף 5 לאמנה. אחד הנימוקים המרכזיים לגישה זו הוא בדבר חוסר
סימטריה הוא העובדה שסעיף 5(1)(ה) עוסק במפורש בפסק דין המורה על ביטולו של
פסק הבוררות וקובע את הביטול כאחת הסיבות לסירוב להכיר ולאכוף פסק חוץ, כאמור.
להבדיל, האמנה אינה מתייחסת כלל לאישורו של פסק בוררות על ידי בית המשפט
במדינת המקור (היל, 176-177). עם זאת, בדומה למקרה בו נדחתה בקשה לביטול פסק
בוררות במדינת המקור, גם אישורו יכול להקים השתק עילה המונע מג' להעלות טענות
שנטענו זה מכבר לפני בית המשפט המוסמך במדינת המקור (שם, 181).

19. מכל מקום, פתיחתו של הליך אישור פסק בוררות במדינת המקור, ואף אישורו,
אינם מונעים הגשת בקשה להכרה ואכיפה מכוח סעיף 29א לחוק בהתאם לאמנת ניו יורק.
פרשנות המבקשת, לפיה פסק הבוררות הזר "נבלע" על ידי פסק הדין הזר המאשר אותו,
כך שלאחר אישורו במדינת המקור או פתיחתו בהליך אישור, לא ניתן עוד להגיש בקשה
להכרה ואכיפה לפי סעיף 29א לחוק הבוררות, חוטאת לתכליתה של אמנת ניו יורק –
יצירת מנגנון חלופי לפתרון סכסוכים בינלאומיים. יתרה מכך, היא תביא למצב דברים
בו מדינת ישראל מפרה את ההתחייבויות שנטלה על עצמה במסגרת חתימתה על האמנה
(ראו: Martin L. Roth, *Recognition by Circumvention: Enforcing Foreign Arbitral Awards*
*as Judgments under the Parallel Entitlements Approach*, 92 CORNELL L. REV. 573, 581
(2007) (להלן: Recognition by Circumvention)).

20. שאלה נגזרת היא האם אישורו של פסק הבוררות על ידי בית המשפט
המוסמך, יכול הזוכה לפנות גם במסלול מקביל של אכיפת פסק חוץ, המוסדר בחוק
אכיפת פסקי חוץ. על פי גישת המכירה באפשרות זו, המכונה גישת "הזכאות המקבילה"
(Parallel Entitlement), אדם המחזיק בידו פסק בוררות חוץ ופסק חוץ המאשר, יכול
לפעול הן בדרך המותווית באמנת ניו יורק לאכיפה והכרה של פסק בוררות חוץ והן בדרך
של אכיפת פסק החוץ. זוהי הגישה המקובלת בארצות הברית (ראו למשל: Seetransport

Wiking Trader Schiffahrtsgesellschaft Mbh & Co v. Navimpex Centrala Navala 29
Island Territory of Curacao v. Solitron Devices Inc. 489 ;F.3d 79 (2d Cir 1994)
העמדה וגם, (586-584 ,Recognition by Circumvention ;F.2d 1313 (2d Cir 1973)
Maxi Scherer, *Effects of Foreign Judgments Relating to* :ראו) ובאוסטרליה בהודו הנוהגת
*International Arbitral Awards: Is the 'Judgment Route' the Wrong Road?*, 4 J. Int'l Disp.
Resol. 587, 600 (2013). במובן מסוים, גישה זו אומצה גם בישראל, אגב אורחא, ברע"א
10854/07 פיקהולץ (בדנר) נ' JAIME SOHACHESKI (17.3.2010)). באותו מקרה נקבע
כי ניתן לאכוף פסק דין אמריקאי בו אושר פסק בוררות באמצעות החוק לאכיפת פסקי
חוץ. ברם, סבורני כי על אף שאין לחסום כליל את האפשרות לעשות שימוש במסלול זה,
דרך המלך להכרה ואכיפה של פסקי חוץ צריכה שתהא רק במסלול הקבוע בסעיף 29א
לחוק הבוררות ובאמנת ניו יורק. הווה אומר, שימוש בחוק לאכיפת פסקי חוץ לשם
אכיפת פסק בוררות שאושר צריך שיהיה החריג, בו ייעשה שימוש במקרים נדירים בלבד.

21. סיכומם של דברים, בכל הנוגע לבקשה דנא, לא נפל פגם בפסק דינו של בית
המשפט המחוזי, על פיו ניתן להגיש בקשה לאכיפת פסק הבוררות הזר למרות שהוגשה
בקשה מקבילה לאישורו במדינת המקור. באשר לשאלות הנוספות שנדונו, ניתן לסכם את
העניין כך:

א. המושג "נעשה חובה" בסעיף 5(1)(ה) לאמנת ניו יורק משמעו כי לא ניתן עוד
להגיש על פסק הבוררות ערעור במסגרת הליכי הבוררות, להבדיל מערעור לפני
ערכאה שיפוטית.

ב. ככלל, לאחר ביטולו של פסק בוררות במדינת המקור, אין להכיר בו ולאכפו מכוח
אמנת ניו יורק, למעט במקרים חריגים. לדוגמה, כאשר ההחלטה על ביטולו
התקבלה על ידי פורום שיפוטי שאינו עצמאי ובלתי תלוי.

ג. מנגד, אישורו של פסק הבוררות במדינת המקור אינו מביא מיניה וביה להכרה
ואכיפה מכוח אמנת ניו יורק. לצד זאת, דחיית טענות הנוגעות לתוקפו של פסק
הבוררות במסגרת בקשה לאישורו או לביטולו יכולה להקים השתק המונע עילה
העלאת טענות זהות במסגרת התנגדות לאכיפה ואישור פסק הבוררות בישראל.

ד. המסלול לאישור ואכיפה של פסק בוררות חוץ הוא המסלול הקבוע בסעיף 29א
לחוק הבוררות ובאמנת ניו יורק. לצד זאת, במקרים נדירים וחריגים, לאחר אישור

פסק הבוררות על ידי בית המשפט המוסמך במדינת המקור, ניתן יהיה להכיר בפסק החוץ המאשר באמצעות המסלול הקבוע בחוק לאכיפת פסקי חוץ.

בסופו של יום אפוא אציע לחבריי שהערעור יידחה, והמבקשת תישא בהוצאות המשיבה בסך של 15,000 ש"ח.

ש ו פ ט

השופט י׳ עמית:

אני מסכים.

ש ו פ ט

השופטת י׳ וילנר:

אני מסכימה לפסק דינו המקיף והמעניין של חברי השופט ד׳ מינץ.

ש ו פ ט ת

הוחלט כאמור בפסק דינו של השופט ד׳ מינץ.

ניתן היום, ט׳ באייר התשפ"א (21.4.2021).

| ש ו פ ט ת | ש ו פ ט | ש ו פ ט |
|---|---|---|

English Translation

Translated from the Hebrew
Legaltrans.com | Rina Ne'eman

[Emblem of the State of Israel]

**In the Supreme Court**

**Leave for Civil Appeal 44/21**

Before:             The Honorable Justice I. Amit
                    The Honorable Justice D. Mintz
                    The Honorable Justice Y. Willner

The Petitioner:     B.I. Science (2009) Ltd.

                              v.

The Respondent:     Luminati Networks Ltd.

                    Motion for leave to appeal from a judgment by the Tel Aviv-Jaffa District Court
                    (the Honorable Judge Judith Shevach, Deputy President of the Court) in
                    Originating Motion 62712-05-20 dated November 29, 2020

For the Petitioner:  Adv. Asaf Biger; Adv. Niran Dor

For the Respondent:  Adv. Dr. Saar Pauker; Adv. Benny Winston

## Judgment

**Justice D. Mintz:**

A petition for leave to appeal a judgment by the Tel Aviv-Jaffa District Court (the Honorable Judge Judith Shevach, Deputy President of the Court) dated November 29, 2020 in Originating Motion 62712-05-20, in which the Respondent's motion to enforce an arbitral award that was issued in the State of Texas, in the United States, on April 29, 2020, was granted.

**The background for the motion**

1.    The background for the proceeding is a dispute between the Petitioner and the Respondent, two companies that operate in the field of proxy servers, which is based on the Respondent's claim that the Petitioner, in its activity, violated its intellectual property rights. The Respondent filed an action against the Petitioner with a federal court in the State of Texas, and the proceeding was transferred to mediation before Mr. William Cornelius (hereinafter: the **"Arbitrator"**). On February 23, 2020, the Arbitrator filed a joint motion, on behalf of the parties, for a stay of the proceeding, given that they had reached an agreement in principle on a settlement (hereinafter: the **"Settlement Agreement"**). The next day, the Arbitrator drew up an additional document, entitled "Mediated Settlement." The end of that document stated that the parties agreed to bring any dispute with respect to the provisions and terms of the settlement to binding arbitration before the Arbitrator (hereinafter: the **"Arbitration Clause"**).

1

2.     The Respondent believed that the Petitioner was refraining from performing the Settlement Agreement, and, against that background, it filed a motion to recognize the validity of the Settlement Agreement with the court in the United States. On April 13, 2020, after having heard the argumentation by the parties, the court accepted the Respondent's assertion that the parties had reached a Settlement Agreement that contains an Arbitration Clause.

3.     Accordingly, the parties contacted the Arbitrator, so that he would decide the dispute on the merits. On April 29, 2020, an arbitral award was issued, which required the Petitioner to perform certain acts that are not relevant to the decision on the basic question posed in the present Petition (hereinafter: the **"Arbitral Award"**). Subsequently, the Respondent filed with the court in Texas a Motion for Enforcement of the Settlement Agreement and Arbitral Award.

4.     On May 27, 2020, the Respondent filed a "Motion for the Certification of a Foreign Arbitral Award" with the District Court, together with a motion to grant various temporary remedies. The Petitioner, in its Response, argued that the motion should be denied. *Inter alia*, it argued that, in light of the filing of the motion for the enforcement of the Arbitral Award in Texas, the Respondent should have initiated a proceeding under the Enforcement of Foreign Judgments Law, 5718-1958 (hereinafter: the **"Enforcement of Foreign Judgments Law"**), and not a proceeding for the certification of an arbitral award under the Arbitration Law, 5728-1968 (hereinafter: the **"Arbitration Law"**). In its opinion, this is not merely a procedural question, given that, pursuant to Section 3(2) of the Enforcement of Foreign Judgments Law, one of the conditions for declaring a foreign judgment enforceable is that the judgment can no longer be appealed. In addition, the Arbitral Award contained an "exclusive jurisdiction clause" to the courts in Texas and therefore the Respondent was not allowed to submit the motion in Israel, Additionaly, the Settlement Agreement was signed by the Arbitrator alone, and the parties did not sign it, in contravention of the provisions of Article 2 of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 1958 (hereinafter: the **"New York Convention"**), and, for this reason as well, it is not possible to enforce the Arbitral Award. The Respondent also did not file a reply to the Petitioner's opposition to the enforcement of the award. Finally, the Petitioner argued that the Settlement Agreement is invalid. This, because the parties had not reached a final and binding agreement, including the Arbitration Clause on which the litigation before the Arbitrator was based. An appeal of the federal court's ruling that there is a binding settlement agreement is pending, and, therefore, that ruling also cannot be relied upon.

5.     As stated, the Respondent did not file a reply to the Petitioner's opposition. Nonetheless, the District Court learned its position from the various pleadings that it filed in the proceeding. In brief, the Respondent believed that it was entitled to receive the enforcement order under the provisions of the New York Convention, given that the Petitioner had not proven the fulfillment of the conditions set forth therein that justify refraining from enforcing a foreign arbitral award.

6.     In order to provide a complete picture, it should be stated that, on July 2, 2020, after the motion to certify the Arbitral Award had been filed with the District Court, the court in Texas certified the Arbitral Award. The Petitioner filed an appeal from that judgment with the Federal Court of

Translated from the Hebrew
Legaltrans.com | Rina Ne'eman

Appeals, which, as of the date that the judgment that is the object of the present Petition was rendered, has not yet been decided.

**The District Court judgment**

7.  The District Court rejected the Petitioner's argument with respect to the invalidity of the Arbitration Clause and ordered that the award be enforced. After a review of the evidentiary material, it was determined that the material indicates that the Petitioner and its counsel consented to the Settlement Agreement and the Arbitration Clause set forth therein. In addition, the Petitioner appended no evidence to indicate that the Arbitration Clause is invalid. The argument that the form of the agreement – i.e., the absence of the parties' signatures – precludes the enforcement of the Arbitral Award in Israel was also rejected, and the court stated that counsel for the Petitioner had given the Arbitrator approval, by email, to apply to the court in connection with the agreement, which also included the Arbitration Clause. That approval fulfills the requirement for written form provided in Article 2(2) of the New York Convention.

8.  As for the procedural framework, the court rejected the Petitioner's argument that, in light of the certification of the Arbitral Award by the court in Texas, the only track for the "adoption" of the Arbitral Award is the track outlined in the Enforcement of Foreign Judgments Law, and not that in the Arbitration Law, under which the motion to certify the award had been filed. The court believed that the Petitioner's interpretation of Section 3(2) of the Enforcement of Foreign Judgments Law, that proceedings for recognition and enforcement of a foreign arbitral award should not be initiated as long as a proceeding with respect to its validity is pending in a foreign court, cannot be reconciled with Regulation 4 of the Regulations for the Execution of the New York Convention (Foreign Arbitration), 5738-1978, and the provisions of Article 6 of the New York Convention. Those two provisions confer upon the court the authority to adjourn the proceedings in a motion to certify a foreign arbitral award, when a motion to set aside or to suspend the award has been filed with the competent authority in the place where it was issued, and they do not state that the filing of those motions, *per se*, leads to the striking of the motion to certify the award.

9.  The court further stated that the Petitioner had not indicated a reason why the holder of an arbitral award, which was certified in the country according to whose laws the arbitration had been conducted, should be "discriminated against," relative to the holder of a foreign arbitral award that had not yet been subjected to any judicial review. Thus, an entity that does not have a foreign judgment certifying the arbitral award that was issued in its favor can file a motion to certify the arbitral award in the country where it is domiciled. On the other hand, an entity whose arbitral award that was issued in its favor was certified in a foreign judgment will be forced to wait until the foreign judgment becomes a peremptory judgment, in order to be able to enforce it under the Enforcement of Foreign Judgments Law. In addition, the Motion to Certify the Award was filed before the certification by the court in Texas, and the Petitioner did not prove that the judgment certifying the award is the result of a motion initiated by the Respondent.

10.  The Petitioner's arguments with respect to an exclusive jurisdiction clause for the court in Texas and the Respondent's lack of a response were also rejected by the court, although it did state that the Respondent should have filed a response to the Petitioner's opposition. In summary, the court ordered the enforcement of the Arbitral Award.

**The arguments by the parties**

11.  This is the background for the Petition before me. The Petitioner has made a plethora of arguments against the District Court's judgment. Its principal argument is that the court erred in rejecting its argument that the Arbitral Award was engulfed in the judgment of the Texas court, which certified it, and, therefore, it is not appropriate to recognize and enforce the Arbitral Award at this stage. Aside from that, the Arbitral Award contained a jurisdiction clause that refers to the court in Texas, and, therefore, the Respondent was not even entitled to file a motion to enforce it in Israel. Furthermore, the Respondent's conduct was tainted with grievous procedural flaws, which justified denying its motion to enforce the Arbitral Award. Finally, the Petitioner petitioned, in the alternative, to stay the hearing of the Motion to Enforce the Award pending a decision in the appeal that it filed from the judgment certifying the Arbitral Award in the United States, pursuant to Article 6 of the New York Convention, and the court did not address that request.

12.  In its Response, the Respondent argued that the Motion is not one of the cases that justify granting leave to appeal. On the merits, the Respondent rejects the Petitioner's argument that the Arbitration Clause is invalid. The Petitioner did not refer to any evidence indicating lack of consent to conduct the arbitration proceeding. Quite the opposite is true: the evidence indicates that counsel for the Petitioner cooperated with the arbitration proceeding. As for the certification of the Arbitral Award by the court in the United States: according to the Respondent, that certification does not preclude its enforcement in Israel. There is no logic to the Petitioner's argument that certifying the Arbitral Award actually worsens the situation of the party seeking to enforce it, which can now only file a motion under the Enforcement of Foreign Judgments Law and not under the New York Convention. Nor is there any real substance to the Petitioner's argument that the provision of the Arbitral Award that grants jurisdiction with respect to the Arbitral Award to the court in Texas, blocks the Respondent from filing a motion to enforce the Arbitral Award in Israel. Said provision is a provision in an arbitral award, and not a contractual clause, which was not intended to constitute a procedural barrier to the enforcement of the Arbitral Award outside the United States. Moreover, the Petitioner's argument that the court had not addressed its request to stay the proceedings should be rejected, because the court did consider the request. In any event, the Petitioner abandoned its request to stay the proceedings in its summations before the court; and, on the merits, given that the Petitioner did not file a motion to set aside the Arbitral Award, it does not fulfill the conditions set forth in Section 6 of the New York Convention.

**Discussion and decision**

13.  Following a review of the Petition, the Response, and the appendices attached by the parties, and by virtue of the power vested in me pursuant to Regulation 149 of the Regulations of Civil

Translated from the Hebrew
Legaltrans.com | Rina Ne'eman

Procedure, 5779-2018, I have come to the conclusion that the Petition should be granted and should be heard as an appeal, but only with respect to the question of whether the way to enforce a foreign arbitral award that has already been certified in the country in which it was issued, is by filing a motion under Section 29A of the Arbitration Law, or whether the track that should be followed is that set forth in the Enforcement of Foreign Judgments Law. At the same time, I have come to the conclusion that the appeal should be dismissed, and this is what I will recommend to my colleagues that we do.

The additional arguments made by the Petitioner in the Petition do not transcend the individual matter between the parties and do not justify granting leave to appeal (see: Leave for Civil Appeal 1751/21, **Kenes v. Vaknin**, Section 7 (March 17, 2021); Leave for Civil Appeal 1847/21, **Gal Am Properties Ltd. v. Urban Renewal Response (2016)Ltd.**, Section 8 (March 17, 2021)).

14. A foreign arbitral award is defined in Section 1 of the Arbitration Law as an arbitral award that was issued outside Israel. A foreign arbitral award, like a "local" arbitral award, binds the parties as *res judicata* by its very existence. The rationale for this is that an arbitral award draws its force from the consent of the parties. However, for the purpose of enforcing the arbitral award, it must be adopted in Israel. The Arbitration Law and the New York Convention regulate the manner in which a foreign arbitral award is absorbed in Israel. Section 29A of the Arbitration Law confers upon a court in Israel the authority to certify or to set aside a foreign arbitral award to which an international convention applies. The section reads as follows:

> A motion to certify or to set aside a foreign arbitral award to which an international convention applies, when Israel is a party to that convention, and when the convention determines provisions in the matter, will be filed and heard pursuant and subject to those provisions.

The parties do not dispute that the New York Convention, which deals with arbitral awards that were issued in another country than that in which their recognition or their enforcement is sought, applies to the present case. Article 3 of the New York Convention states as follows:

> Each contracting state shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles. There shall not be imposed substantially more onerous conditions, or higher fees or charges on the recognition or enforcement of arbitral awards to which this convention applies than are imposed on the recognition or enforcement of domestic arbitral awards.

The New York Convention further provides that a litigant seeking recognition and enforcement of a foreign arbitral award is required to produce, along with his motion, the original arbitral award and the original arbitration agreement (Article 4 of the New York Convention). From these requirements, we learn that for the purposes of recognition and enforcement, the certification of the arbitral award in the country in which it was issued is not required. This is one of the principal innovations of the New York Convention over the 1927 Geneva Convention, the international

Translated from the Hebrew
Legaltrans.com | Rina Ne'eman

arbitration convention that preceded it. One of the conditions for recognition and enforcement of a foreign arbitral award under the Geneva Convention was proof that the arbitral award had been certified in the country in which it was issued – that is, a demand for double "recognition" (this rule is called the **Double Exequatur Doctrine**). The New York Convention also provides a closed list of grounds for opposition to recognition and enforcement of an arbitral award (Article 5 of the New York Convention).

15. The double exequatur requirement was replaced in Article 5(1)(e) of the New York Convention. Instead of that requirement, Article 5 sets forth a closed list of grounds for opposing the recognition and enforcement of a foreign arbitral award: an agreement that is not valid (Article 5(1)(a)); not having given the opponent an opportunity to raise its arguments in the arbitration proceeding (Article 5(1)(b)); an arbitral award that decides issues that were not submitted to the arbitrator to decide – that is, an argument of lack of jurisdiction (Article 5(1)(c)); the arbitration was not conducted pursuant to the arbitration agreement (Article 5(1)(d)); the arbitral award was set aside or suspended by the competent authority in the country in which it was issued (Article 5(1)(e)). Article 5(1)(e) is the article relevant to the present case, in light of the Petitioner's argument that it is not appropriate to recognize and enforce the Arbitral Award at this time, before the decision certifying it in the place in which it was issued (Texas) has become peremptory. That article states as follows:

> Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

> (a)…

> (b)…

> (c)…

> (d)…

> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

In other words, the possibility of opposing the recognition of a foreign judgment under the ground set forth above only exists when the award "has not yet become binding" or has been "set aside" or "suspended." In the present case, the Arbitral Award was not set aside and was not suspended, but the decision certifying it has not yet become peremptory, as the Petitioner's appeal from it is pending before the Federal Court of Appeals. Based on a simple reading, there is accordingly a basis for the belief that, as long as the Arbitral Award has not yet been finally certified in such a way that it can no longer be appealed in the country in which it was issued, it "has not yet become binding on the parties" – and, therefore, the law is on the Petitioner's side.

6

16. However, there is a consensus in this regard among learned academics and courts in many countries that the word "becomes binding" does not mean that the party that was awarded the arbitral award must file a motion for certification of the arbitral award in the country in which it was issued in order for the arbitral award to be recognized and enforced in another country. According to this position, an interpretation proposing that the fact that the arbitral award has yet to be certified in the original country constitutes grounds for refusal of recognition and enforcement pursuant to the New York Convention undermines the intention of the drafters of the convention, who, as stated, sought to cancel the double exequatur requirement provided in the Geneva Convention (Dana H. Freyer & Hamid G. Gharavi, *Finality and Enforceability of Foreign Arbitral Awards: From "Double Exequatur" to the Enforcement of Annulled Awards: A Suggested Path to Uniformity Amidst Diversity*, 13 ICSID Foreign Inv. L.J. 101, 106 (1998) (hereinafter: **"Freyer & Gharavi"**). However, said statement of what it does not mean is not sufficient, and content must be injected into the term "becomes binding."

17. Several interpretative approaches to the term can be found in judgments of the various courts and among academics. According to the first approach, the examination of whether a foreign arbitral award has "become binding" must be performed in accordance with the laws of the country pursuant to whose laws the arbitration was conducted (hereinafter: the **"Original Country"**). In other words, the arbitral award only "becomes binding" pursuant to the New York Convention when it becomes binding pursuant to the law of the Original Country. This interpretation has been criticized as damaging the uniformity of the enforcement and recognition of judgments by virtue of the New York Convention and that it will lead to different results with respect to arbitral awards issued in different countries. According to the second interpretation, a foreign arbitral award "becomes binding" pursuant to the New York Convention when it is no longer possible to appeal from it on the merits. According to this approach, the arbitral award "becomes binding" even if a motion to set it aside can still be filed. A third approach states that the arbitral award "becomes binding" when it is no longer possible to appeal from it in arbitration proceedings, as distinct from an appeal before a court (see: Fertilizer Corp. of India v. IDI Management, 517 F. Supp. 948 (S.D. Ohio 1981)). Finally, a fourth interpretation is that the arbitral award "becomes binding" unless set aside or suspended by the competent authority. According to this interpretation, as soon as the arbitral award is issued, it becomes binding pursuant to the New York Convention and a motion to recognize and enforce it can be filed. In other words, a final arbitral award has been rendered (for details about the different interpretative approaches, see: Freyer & Gharavi, pages 107-109). The matter has yet to be discussed in Israeli case law, and in my opinion, the correct interpretation is that an arbitral award "becomes binding" when it is no longer possible to file an appeal from it in arbitration proceedings. "Becomes binding" in the context of the New York Convention means that the arbitration proceeding has come to an end with an arbitral award that is ready to be certified by the competent court, and not at a later stage.

18. The issue of recognition and enforcement of foreign arbitral awards that were certified or set aside in the Original Country by virtue of the New York Convention and its ramifications has also yet to be discussed in case law. This issue arises in the first place in light of the wording of Article 5 of

the New York Convention, according to which it "may refuse" even when there are grounds to oppose enforcement and recognition such as the fact that the arbitral award was set aside by the competent authority. For the sake of discussion, I will present several possible scenarios. As a point of departure, we will assume that an arbitral award was issued in favor of B and against C in country A, which is the Original Country. Given those opening conditions, we will examine several main cases in which the issue could arise:

(a) **C filed a motion to set aside the arbitral award in the Original Country, and the competent court set aside the arbitral award**. Several main approaches can be seen with respect to enforcement and recognition of foreign arbitral awards that were set aside by the competent court. The first is the "territorial approach." According to that approach, the place pursuant to whose laws the arbitration was conducted determines the law that will apply to the proceeding, including with respect to recognition and enforcement pursuant to the New York Convention. In accordance with such, the setting aside of the arbitral award in the Original Country makes it impossible to enforce it, since there is no longer anything to enforce (*ex nihilo nil fit*). This was the prevalent interpretative approach for many years. According to the second approach, the "universalistic approach," the legal system in which recognition and enforcement of the foreign arbitral award is requested is entitled to ignore a decision to set aside the arbitral award in the Original Country if there are no grounds for setting aside pursuant to the arbitration laws that apply in it. This position relies on interpretation of Article 7 of the New York Convention, according to which:

> The provisions of the present Convention shall not … deprive any interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law or the treaties of the country where such award is sought to be relied upon.

This principle is known as the Most Favorable Right principle. It is the approach used in French law, but has not struck roots in other legal systems (for details about the French approach and criticism thereof, see: Hamid G. Gharavi, *Enforcing Set Aside Arbitral Awards: France's Controversial Steps beyond the New York Convention*, 6 J. Transnat'l L. & Pol'y 93 (1996)). A third approach relies on the words of the New York Convention ("the award *may* be refused …), and states that such setting aside does not prevent the possibility of recognition and enforcement of the arbitral award. **In general**, setting aside the arbitral award in the Original Country bars its enforcement and recognition in a foreign country. However, the court has discretion in the matter, and is able to recognize and enforce the arbitral award even though it was set aside in the Original Country. Such recognition and enforcement will only occur in unusual cases in which the court reaches the conclusion, for example, that the decision to set aside the arbitral award was issued by a forum that is not independent or that is biased (for such a case in Holland, see: Yukos Capital SARL/OAO Rosneft, Gerechtshof [Hof], Amsterdam, Apr. 28, 2009; this is also the approach used in England: Jonathan Hill, *The Significance of Foreign Judgments Relating to an Arbitral Award in the Context of an*

8

Translated from the Hebrew
Legaltrans.com | Rina Ne'eman

*Application to Enforce the Award in England*, 8(2) J. PRIV. INT'I L. 159, 175 (2012) (hereinafter: **"Hill"**)).

(b) **C filed a motion to set aside the arbitral award in the Original Country and the competent court denied the motion**. In this case, the judgment of the court in the Original Country may give rise to *res judicata* and to cause of action estoppel that bars C from making identical claims when coming to oppose the motion to recognize and enforce the arbitral award (this is the case in the law in practice in England: House of Spring Garden v. Waite [1991] 1 QB 241; and in the United States: Gulf Petro Trading Co. Inc. v. Nigerian National Petroleum Corp., 288 F. Supp. 2d 783 (N.D. Tex. 2003). The New York Convention does not address cases such as this. However, naturally, denial of a motion to set aside the arbitral award in the Original Country will weaken C's opposition to recognition and enforcement by virtue thereof.

(c) **B filed a motion for certification of the arbitral award in the Original Country and the competent court granted the motion** (similar to this case). The position accepted in literature is that there is no symmetry between a judgment setting aside the arbitral award and a judgment certifying it. In other words, a judgment certifying the arbitral award is less important, in the context of the New York Convention. According to this position, the court in the country in which recognition and enforcement is requested must examine independently whether one of the grounds provided in Article 5 of the Convention exists. One of the main explanations for this approach with respect to the lack of symmetry is the fact that Article 5(1)(e) deals expressly with a judgment that sets aside the arbitral award and states that its setting aside is one of the reasons to refuse to recognize and enforce a foreign judgment, as stated. In contrast, the Convention does not address certification of an arbitral award by the court in the Original Country (Hill, 176-177). However, similar to the case in which a motion to set aside an arbitral award was denied in the Original Country, its certification can also give rise to cause of action estoppel that bars C from raising claims already raised before the competent court in the Original Country (*ibid.*, 181).

19. In any event, initiation of an arbitral award certification proceeding in the Original Country, and even certification of the arbitral award, do not prevent a motion to recognize and enforce from being filed by virtue of Section 29a of the Law, pursuant to the New York Convention. The Petitioner's interpretation, that the foreign arbitral award was "swallowed up" by the foreign judgment that certifies it, so that after its certification in the Original Country, or initiation of a certification proceeding, it is no longer possible to file a motion to recognize and enforce pursuant to Section 29a of the Arbitration Law, goes against the purpose of the New York Convention – creation of an alternative mechanism for resolving international disputes. Moreover, it will lead to a state of affairs whereby the State of Israel breaches undertakings that it accepted upon itself when signing the Convention (see: Martin L. Roth, *Recognition by Circumvention: Enforcing Foreign Arbitral Awards as Judgments under the Parallel Entitlements Approach*, 92 CORNELL L. REV. 573, 581 (2007) (hereinafter: **"Recognition by Circumvention"**)).

Translated from the Hebrew
Legaltrans.com | Rina Ne'eman

20. A related question is whether, after the arbitral award has been certified by the competent court, the party in whose favor it was issued can also begin a parallel track of enforcement of a foreign judgment, which is regulated in the Enforcement of Foreign Judgments Law. According to the approach that recognizes such a possibility, which is known as the "parallel entitlement" approach, a person who has a foreign arbitral award and a foreign judgment certifying such, can take action, either in the manner mapped out in the New York Convention for enforcement and recognition of a foreign arbitral award, or by means of enforcement of a foreign judgment. This is the accepted approach in the United States (see, for example: Seetransport Wiking Trader Schiffahrtsgesellschaft Mbh& Co v. Navimpex Centrala Navala 29 F.3d 79 (2d Cir. 1994); Island Territory of Curacao v. Solitron Devices Inc. 489 F.2d 1313 (2d Cir. 1973); Recognition by Circumvention 584-586), and the position adopted in India and Australia (see: Maxi Scherer, *Effects of Foreign Judgments Relating to International Arbitral Awards: Is the 'Judgment Route' the Wrong Road?,* 4 J. Int'l Disp (2013) Resol. 587, 600). To a certain extent, this approach was also adopted in Israel, by the way, in Leave for Civil Appeal 10854/07 **Fikelhotz (Bodner) v. Jamie Sohacheski** (March 17, 2010)). It was ruled in that case that an American judgment in which an arbitral award is certified can be enforced by means of the Enforcement of Foreign Judgments Law. However, I am of the opinion that even though the possibility of using that track should not be completely blocked, the ideal path for recognition and enforcement of foreign judgments should only be through the route provided in Section 29a of the Arbitration Law and in the New York Convention. In other words, use of the Enforcement of Foreign Judgments Law to enforce an arbitral award that was certified should be the exception, which will only be applied in rare cases.

21. In conclusion, with respect to this Motion, there is no flaw in the District Court's judgment that a motion to enforce the foreign arbitral award can be filed even though a parallel motion to certify it was filed in the Original Country. As for the additional issues discussed, they can be summed up as follows:

a. The term "becomes binding" that appears in Article 5(1)(e) of the New York Convention means that it is no longer possible to file an appeal from the arbitral award in the arbitration proceeding, as distinct from an appeal before a court.

b. In general, after the arbitral award is set aside in the Original Country, it should not be recognized and enforced by virtue of the New York Convention, except for exceptional cases. For example, the decision to set it aside was made by a judicial forum that is not autonomous and independent.

c. On the other hand, certification of the arbitral award in the Original Country does not automatically lead to recognition and enforcement by virtue of the New York Convention. However, rejection of claims pertaining to the validity of the arbitral award in a motion to certify or set it aside could give rise to cause of action estoppel that bars identical claims from being raised in the opposition to enforcement and certification of the arbitral award in Israel.

d. The way to certify and enforce foreign arbitral awards is the track provided in Section 29a of the Arbitration Law and in the New York Convention. However, in rare and unusual cases,

following certification of the arbitral award by the competent court in the Original Country, it will be possible to recognize the foreign judgment that certifies it by means of the track provided in the Enforcement of Foreign Judgments Law.

I therefore propose to my colleagues that the Appeal should be denied, and the Petitioner will be charged with the Respondent's costs in the amount of NIS 15,000.

Justice

<u>Justice I. Amit</u>:

I concur.

Justice

<u>Justice Y. Willner</u>:

I concur with the comprehensive and interesting judgment of my colleague, Justice D. Mintz.

Justice

Decided as stated in the judgment of Justice D. Mintz

Handed down on this day, 9 Iyar 5781 (April 21, 2021)

| Justice | Justice | Justice |
|---------|---------|---------|

_____

21000440_N04.docx

Information center, tel. 077-2703333, *3852; website, https://supreme.court.gov.il

# Exhibit J

Redacted in its entirety

FORM 31. Certificate of Confidential Material

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 20-2118

**Short Case Caption:** Bright Data Ltd. v. BI Science (2009) Ltd.

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains ___268___ number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☑ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 07/26/2021

Signature: /s/ Michael A. Charish

Name: Michael A. Charish

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  20-2118

**Short Case Caption:**  Bright Data Ltd. v. BI Science (2009) Ltd.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  5,156  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 07/26/2021

Signature:  /s/ Michael A. Charish

Name:  Michael A. Charish