2020-2118, -2181, 2021-1664, -1667

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### BRIGHT DATA LTD.,
*Plaintiff-Cross-Appellant*

**v.**

### BI SCIENCE (2009) LTD.,
*Defendant-Appellant*

### BI SCIENCE INC.,
*Defendant*

Appeals from the United States District Court for the Eastern District of Texas in No. 2:18-cv-00483-JRG, Chief Judge J. Rodney Gilstrap.

## APPELLEE'S NON-CONFIDENTIAL RESPONSE TO APPELLANT'S CONFIDENTIAL EMERGENCY MOTION TO STAY ENFORCEMENT OF THE DISTRICT COURT'S ORDER AND FINAL JUDGMENT

# TABLE OF CONTENTS

I.   FACTUAL BACKGROUND.............................................................................2

   A.  The Parties Settled the Lawsuit in February 2020 ...........................................2

   B.  The District Court Found the Settlement Valid ...............................................2

   C.  BI Science Participated in Subsequent Arbitration that ████████████
       ██████████ and the District Court ████████████████
       ████████████ in the Final Judgment ████████████ .....................3

   D.  Bright Data Entered the Arbitration Award in Israel Resulting in an Order
       Appointing a Receiver to Monitor a BI Science Account But Without Restricting
       BI Science from Withdrawing Funds ...............................................................4

   E.  On June 21, 2021 The Federal Circuit Deferred to the District Court and
       Stayed the Appellate Proceedings ...................................................................5

   F.  BI Science Filed a Request for an Emergency Hearing in the District Court
       and Offered Grossly Inadequate Security, then 10 Days Later Refiled the Same
       Request to this Court....................................................................................5

II.  LEGAL STANDARD .................................................................................6

III. ARGUMENT ............................................................................................8

   A.  There is No Emergency As BI Science Has Known of Bright Data's
       Enforcement Proceedings in Israel For Over a Year and Waited Until Now to
       File a Motion to Stay the Final Judgment.........................................................8

   B.  The Motion is Improper in This Court As the Appeal is Stayed and Because
       the Motion is Already Before the District Court ...............................................8

   C.  BI Science Cannot Receive Any Relief Under Rule 62(d) as it Offers
       Insufficient Terms to Secure Bright Data's Rights .............................................9

       1.  BI Science's Proposed Security Falls Far Short of Securing Bright Data's
           Rights in the Final Judgement .................................................................10

       2.  There is No Uncertainty – BI Science Knows ████████████
           ████████████ .....................................................................10

       3.  BI Science's Security Offer Is Not Based On ████████████, But
           Rather Based on an Erroneous Assumption Regarding ████████████...11

       4.  BI Science's Security Offer Is Not Sufficient to Protect Bright Data's
           Rights in the Final Judgment ...................................................................12

5. Bright Data Has No Obligation to Prove Damages ....................................12

D. The Court Should Not Exercise its Discretion to Grant a Stay, as the Four-Factor Test Weighs Against BI Science ...............................................................13

E. Mr. Moyal's July 26, 2021 Declaration Is Not Evidence of Record and Is Not Reliable Discovery...............................................................................................19

**IV. CONCLUSION .........................................................................................20**

The redactions in this non-confidential version of Bright Data's opposition to BI Science's emergency motion relate to information derived from an April 13, 2020 hearing in the district court regarding the February 23, 2020 Settlement and underlying documents in footnote 2 and on pages 3 and 14, 15, 17, the district court's subsequent final judgment on footnote 1 and pages 2, 3, 9, 10, 11, 12, 13, 15, 16, 17, 18 the July 22, 2020 Israeli court order responding to Bright Data's entry of the Arbitration Award on page 4 and 5, and a July 1, 2021 hearing before the district court regarding BI Science's motion to stay enforcement of the final judgment in footnote 3 and pages 5 and 9, 10, each of which are under seal.  In addition Bright Data has redacted the underlying information related to BI Science's proposed security amount and Bright Data's response in footnote 1 and pages 1, 6, 10, 11, 12, 17, 18, and 19  which are based on confidential information.

# TABLE OF AUTHORITIES

## Cases

*Barton v. Resort Dev. Latin Am., Inc.*, 413 S.W.3d 232 (Tex. App. 2013)............10

*Dunbar Med. Sys. v. Gammex Inc.*, 216 F.3d 441 (5th Cir. 2000) .........................15

*Foster v. Hallco Mfg. Co.,* 947 F.2d 469 (Fed. Cir. 1991) ......................................19

*FTC v. Actavis, Inc.*, 570 U.S. 136 (2013).................................................................19

*Hemstreet v. Spiegel, Inc.*, 851 F.2d 348 (Fed. Cir. 1988) ......................................19

*Herbert v. Exxon Corp.*, 953 F.2d 936 (5th Cir 1992)...................................................7

*Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80 (Tex. 1992)...........................10

*Ins. Concepts, Inc. v. W. Life Ins. Co.*, 639 F.2d 1108 (5th Cir. 1981) ..................19

*Johnson v. BP Expl. & Prod. (In re Deepwater Horizon)*, 786 F.3d 344 (5th Cir. 2015) ...............................................................................................................15

*Karaha Bodas Co. v. Negara*, 335 F.3d 357 (5th Cir. 2003).....................................8

*Kennedy v. E.I. Dupont De Nemours & Co.*, No, 1:01-cv-904, 2006 U.S. Dist. LEXIS 115288 (E.D. Tex Feb. 13, 2006)............................................................13

*Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386 (5th Cir. 1984) ................16

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................7, 8

*Padilla v. La France*, 907 S.W.2d 454 (Tex. 1995) ...............................................17

*Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189 (5th Cir. 1979) .........................................................................................................7, 13

*Shamrock Psychiatric Clinic, P.A. v. Tex. HHS*, 540 S.W.3d 553 (Tex. 2018) ......17

*Virginian R. Co. v. United States*, 272 U.S. 658 (1926) ............................................7

*Wang Labs., Inc. v. Applied Comput. Scis, Inc.* 958 F.2d 355 (Fed. Cir. 1992) .....16

*Zoch v. Magna Seating (Germany) GmbH*, 810 Fed. Appx. 285 (5th Cir. 2020) ...14

**Rules**

Fed Rules App. Proc 8 ..................................................................... 1, 6, 9

Appellant BI Science's Confidential Emergency Motion to Stay Enforcement of the District Court's Order and Final Judgment (Motion, Dkt. No. 46) should be denied  because (a) there is no emergency, as Defendant has been aware of Bright Data's enforcement efforts in Israel for over a year and waited until now to file for a stay in this Court; (b) Appellant does not meet the requirements of Fed. R. App. P. 8(a)(2)(A)(ii), as this issue is already before the District Court following a July 1, 2021 hearing and subsequent July 16, 2021 filing requesting stay ("Notice"); (c) this Court already stayed the appeal proceedings on June 21, 2021 pending the District Court's decision on the Parties' joint motion to unseal the final judgment and attachments; (d) Appellant's proffered security of only $█████ falls far short of the greater than $█████ necessary to protect Bright Data's monetary interests in the Final Judgment;[1] and (e) the four-factor test for a stay weighs against granting a stay as (i) BI Science's appeal is meritless, (ii) BI Science will not be irreparably injured by denial of a stay, (iii) Bright Data

---

[1] Under ██████ of the February 23, 2020 Settlement Agreement ("Settlement"), April 29, 2020 Arbitration Award, and Corrected Final Judgment ███████████████ Information relating to final judgment ██████████████████████. BI Science is estimated to have had over ███████████ and expected to receive around ████████ Information relating to final judgment ████████████████████.

would continue to be materially harmed by a stay, and (iv) the public interest weighs against a stay.

BI Science's filing of this second emergency motion in the stayed appeal on July 26, 2021 only 10 days after it first made its request with proposed security to the district court is improper. BI Science settled this case more than a year ago on February 23, 2020, yet BI Science has followed a clear strategy of violating the Settlement by ███████████████████████████████████

███████ Information relating to final judgment ███████

███████████████████████ under the Settlement. Bright Data respectfully asks that this Court deny the motion for stay and allow the district court to consider the same motion BI Science recently made to that court.

## I.     FACTUAL BACKGROUND

### A.     The Parties Settled the Lawsuit in February 2020

On November 8, 2018, Bright Data, then known as Luminati Networks Ltd., filed a complaint against BI Science in the Eastern District of Texas ("District Court") for infringement of Bright Data's patents related to residential proxy services.  The parties settled the lawsuit during a mediation on February 23, 2020. Exhibits A, B, C, D.

### B.     The District Court Found the Settlement Valid

BI Science took advantage of the Settlement to avoid its discovery obligations and a jury verdict, but then immediately refused to perform under the

2

agreement, asserting meritless impossibility and *force majeure* arguments and also

███████████████ during the April 13, 2020 hearing.[2]  Exhibit E.  The District

Court rejected BI Science's arguments, found the Settlement valid, and ordered the

Parties ███ Information relating to April 13, 2020 hearing ████

███████. *Id*. at 34:9–35:18, 42:10–44:20.

### C.    **BI Science Participated in Subsequent Arbitration that** ███████████████ **and the District Court** ███ Information relating to final judgment ███ **in the Final Judgment** ██████████

BI Science participated fully in arbitration, after which the arbitrator issued

an Arbitrator's Award ██████████ between the Parties. Exhibit F at 8–

13.  BI Science was ████████████████████████

███ Information relating to final judgment ████████

████████████████. *Id*. On July 2, 2020, the District

Court entered its Final Judgment ███ Information relating to final judgment ████

████████████. Exhibit F at 1-2 and Ex. B at 2-4.

On July 29, 2020, BI Science filed a notice of appeal.  Exhibit G.

---

[2] BI Science appears to be raising a wholly new argument in appeal that it never
saw the settlement agreement, but BI Science never made such an argument before
the District Court, including following the Settlement and during the subsequent
hearing ███ Information relating to April 13, 2020 hearing ████
████.  Motion at 5.  BI Science cannot now make such an obviously
meritless argument on appeal.

**On August 1, 2020, the automatic stay of execution expired, and the**

**Final Judgment became immediately enforceable.** On August 12, 2020, BI

Science filed a motion to stay the judgment in the District Court, followed by a

renewed motion to stay the corrected Final Judgment on April 5, 2021 ("Motions

to Stay"), neither of which provided for a bond or other terms to protect Bright

Data's rights as required under FRCP 62 (b) and (d).  BI Science never during this

time made any motion to stay to this Court.

> **D.    Bright Data Entered the Arbitration Award in Israel Resulting in an Order Appointing a Receiver to Monitor a BI Science Account But Without Restricting BI Science from Withdrawing Funds**

Pursuant to the New York Convention, Bright Data entered the Arbitration

Award in Israel.  Exhibit H at 1–2.[3]  More than a year ago, on July 22, 2020, the

Israeli court ordered ███████████████████████, but expressly stated

that ████████ Information relating to Entry of Arbitration Award in Israel ████████

██████████████████.  *Id*. at 7.

On November 29, 2020, the Israeli Court issued a Judgment against

Defendant that permitted Bright Data to proceed with enforcement of the

---

[3] BI Science has argued that the Judgment in this case precluded action in Israel, which ignores the fact that any arbitration award or judgment from the United States must necessarily be taken to BI Science's home country of Israel to execute on the judgment. The district court expressly stated, "███████████████ Information relating to July 1, 2021 hearing ██████████." Exhibit I at 19:12-23.

Arbitration Award in Israel. Exhibit J.  On June 21, 2021, the Israeli Court issued a decision appointing a receiver to (a) ███████████████████████████, (b) notify the Proxy Services customers of the Receiver's appointment and expected transfer to Bright Data, (c) ███Information relating to███ ███Entry of Arbitration Award in Israel███, and (d) ████████████ ████████████████████. Motion, Exhibit J. BI Science participated and was informed of each step of this process, yet never moved this Court for a stay.

> **E.    On June 21, 2021 The Federal Circuit Deferred to the District Court and Stayed the Appellate Proceedings**

On June 21, 2021, this Court stayed proceedings in this Appeal pending resolution of the Parties joint motion to unseal the Corrected Final Judgment before the District Court.  Accordingly, this case remains before the District Court.

> **F.    BI Science Filed a Request for an Emergency Hearing in the District Court and Offered Grossly Inadequate Security, then 10 Days Later Refiled the Same Request to this Court**

On June 28, 2021, BI Science requested an emergency hearing regarding the pending Motions to Stay before the District Court.  During the July 1, 2021 emergency hearing, the Court ███Information relating to July 1, 2021 hearing███ as BI Science had not previously done so. Exhibit I at 15:8-19; *see also id.,* at 19:12-23.

In its July 16, 2020 Notice to the District Court, BI Science proposed a

5

security of $███, which Bright Data opposed as insufficient.  Within 10 days

of filing this Notice with the District Court BI Science filed substantially the same

request through the Motion here proposing the same security.

## II.    LEGAL STANDARD

Pursuant to Fed. R. App. P. 8(a)(1) "A party must ordinarily move first in

the district court for the following relief: (A) a stay of the judgment or order of a

district court pending appeal; (B) approval of a bond or other security provided to

obtain a stay of judgment; or (C) an order suspending, modifying, restoring, or

granting an injunction while an appeal is pending."  "A motion for relief

mentioned in Rule 8(a)(1) may be made to the court of appeals or to one of its

judges" but "the motion must: (i) show that moving first in the district court would

be impracticable; or (ii) state that, a motion having been made, the district court

denied the motion or failed to afford the relief requested and state any reasons

given by the district court for its action."   Fed. R. App. P. 8(a)(2)

Fed. R. Civ. Proc. 62(d) provides:  "While an appeal is pending from . . . [a]

final judgment that grants, continues, modifies, refuses, dissolves, or refuses to

dissolve or modify an injunction, the court may suspend, modify, restore or grant

an injunction on terms for bond or other terms that secure the opposing party's

rights."  (emphasis added).  "[T]he posting of a bond protects a judgment creditor

the prevailing plaintiff from the risk of a later uncollectible judgment and

compensates him for delay in the entry of final judgment." *Herbert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir 1992). "If a court chooses to depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such a departure. It is not the burden of the judgment creditor to initiate contrary proof." *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979).

"'A stay is not a matter of right, even if irreparable injury might otherwise result.' It is instead 'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.' The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (internal citations omitted); *see also Virginian R. Co. v. United States*, 272 U.S. 658, 672–673 (1926). In exercising its discretion to grant a stay, courts should consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434.

7

## III.    ARGUMENT

### A.    There is No Emergency As BI Science Has Known of Bright Data's Enforcement Proceedings in Israel For Over a Year and Waited Until Now to File a Motion to Stay the Final Judgment

BI Science has known about Bright Data's enforcement proceedings in Israel for more than a year. [4]  Despite filing its Notice of Appeal on July 29, 2020, BI Science waited almost a year to file this Motion.  There is no emergency, but to the extent Appellant argues otherwise, this is a direct result of BI Science's year-long delay.

### B.    The Motion is Improper in This Court As the Appeal is Stayed and Because the Motion is Already Before the District Court

BI Science's Motion is not properly before this Court -- the proceedings here were stayed on June 22, 2021.  BI Science's filing of the Motion in this Court a mere 10 days after filing a Notice in the District Court seeking the same relief is an improper attempt to circumvent the District Court.  The timing conflicts with Appellee's prior action, waiting 16 days after the July 1, 2021 hearing with the District Court regarding the motion to stay to submit an offer of security under

---

[4] To the extent that Appellee asserts that there is anything improper about Bright Data's enforcement proceedings in Israel, BI Science has offered no case law support for its position.  Motion at 8.  To the contrary, the New York Convention governs the Award and provides that an arbitration award in a country with primary jurisdiction is necessarily subject to adjunct enforcement in the parties' home State, which has secondary jurisdiction.  *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 364 (5th Cir. 2003).

Fed. R. Civ. Pro. 62 as ███████████████. Exhibit I at 15:8-19. BI Science has no basis to argue that the District Court failed to afford the relief requested and cannot "state any reasons given by the district for its action" as required under Fed. R. App. P. 8(a)(2). The district court should be afforded a full and fair opportunity to issue a ruling on the same motion already filed before it.

### C.    BI Science Cannot Receive Any Relief Under Rule 62(d) as it Offers Insufficient Terms to Secure Bright Data's Rights

The Final Judgment ████████████████, including, for example, the following:



Exhibit F at 1-2. ██████████ were to be completed by ██████████ with ████ to be completed by ██████████. *Id*. at Ex. B.

BI Science's proffered security is far too low to protect Bright Data during the requested stay.

*1.    BI Science's Proposed Security Falls Far Short of Securing Bright Data's Rights in the Final Judgement*

Under the Final Judgment, BI Science was required to ███████████████

███████████████████████████
Information relating to Final Judgment

█████████████████████████████████████████████████████████

███████████ .

BI Science has no basis to convert Bright Data's ███████████████ into a lost profits judgment. Motion at 16. Consequently, BI Science's reliance on cases involving judgments for lost profit is misplaced. *Barton v. Resort Dev. Latin Am., Inc.*, 413 S.W.3d 232, 234 (Tex. App. 2013) ("Appellees damages are based on lost profits."); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992) (damages were "for lost profits.").

Regardless, to the extent that BI Science asserts that Bright Data's costs are relevant to the issue of a security, BI Science has no basis to assert that these costs would have been significant given that Bright Data already ███████████████

███████████████████████████
Information relating to Calculation of Security

███████████████ .

*2.    There is No Uncertainty – BI Science Knows* ███████████
███████████████████████ .

BI Science knows exactly ███████ Information relating to Final Judgment ████

█████████████████████████████████████████████████████████

██████████████████████████████████████. While BI Science and Mr. Moyal have withheld this information from the Court, Bright Data believes ███

███████████ Information relating to calculation of Security █████████████████████,

about ███████ the size of the security that BI Science is proposing. Bright Data

expects the ████████████████████████████████ over the course of the

appeal.

        *3.     BI Science's Security Offer Is Not Based On ██████████*
            *██████████, But Rather Based on an Erroneous Assumption Regarding*
            *██████████*

Ignoring its actual ████████████████, BI Science instead erroneously

assumes that the ███████ Information relating to Final Judgment ███████████

████████████████████████. There is no █████ linking █████████████████

█████████████████████████. Instead, █████████

expressly sets forth that BI Science is to ███████████████████████

████████████████████. Further, the ███████████████ is clearly only

suited to ████████ Information relating to Final Judgment ██████, ██

████████████████████████████████████████████████

█████████. BI Science's argument that ███████████ is sufficient to cover the entirety

of BI Science's ████████████████████ is not supported by the

Settlement Agreement, Arbitration Award, the Final Judgment, or BI Science's

████████████████████. Motion, Exhibit J at ¶ 15.

4.    *BI Science's Security Offer Is Not Sufficient to Protect Bright Data's Rights in the Final Judgment*

BI Science's proposed security of $███████ is woefully inadequate. Bright Data is ████████████████████████ $███████ and has a right to at least an additional ████ of the ██████Information relating to Final Judgment██████ through the appeal, which would likely add another $███████ or $███████ total. That does not cover the damage to Bright Data in ████████████████ ██████Information relating to calculation of security██████ during this period. Since ██████████, Bright Data also has had an interest in ██ ██████Information relating to Final Judgment██████. Bright Data currently has no protections against BI Science allowing any of these ████████████ ██████Information relating to calculation of security██████ ██████, and BI Science has offered no security to cover this aspect of the Agreement.

BI Science has fallen far short of its burden "to objectively demonstrate the reasons for the Court to depart from the usual practice of requiring a supersedeas bond upon stay of execution of the judgment." *Kennedy v. E.I. Dupont De Nemours & Co.*, No, 1:01-cv-904, 2006 U.S. Dist. LEXIS 115288, *5 (E.D. Tex Feb. 13, 2006).

5.    *Bright Data Has No Obligation to Prove Damages*

As the movant requesting a stay, it is BI Science's (not Bright Data's)

obligation to show that its proffered security is sufficient. *Poplar Grove*, 600 F.2d at 1191. Under the Settlement Agreement, Bright Data was entitled to ▮▮▮ of the ▮▮▮ Information relating to Final Judgment ▮▮▮. There is no dispute that BI Science ▮▮▮. BI Science cites no case law or other support for its meritless position that (a) BI Science should ▮▮▮ ▮▮▮ Information relating to Final Judgment ▮▮▮ when it refused to comply with the Final Judgment and ▮▮▮ ▮▮▮ or (b) that Bright Data would have to file a claim for lost profits. Motion at 19.

### D. The Court Should Not Exercise its Discretion to Grant a Stay, as the Four-Factor Test Weighs Against BI Science

While a stay should be denied because the security is insufficient to protect Bright Data's rights, even were larger security offered, the balancing of the four-factor test weighs against staying the Final Judgment.

#### 1. BI Science's Appeal Is Meritless and Does Not Justify A Stay

BI Science asserts two arguments on appeal, neither of which Bright Data has been able to respond to given the stay of the proceedings.[5]

#### a. The District Court has personal jurisdiction over BI Science

---

[5] BI Science's request to incorporate by reference arguments from its opening appeal brief should be denied; that would improperly circumvent the rules as to word limits,  Appellee is not similarly able to rely upon a responsive brief as this Appeal was stayed before Bright Data filed its brief.

The District Court found personal jurisdiction over BI Science based on **Appellant's own advertisements promoting its use of Texas based proxies as part of its Proxy Service**. (Dkt. No. 28-5, at 2–3.) Those proxy service activities are 'purposefully directed' at Texas, and Bright Data's claims for patent infringement allege 'injuries that arise out of or relate to those activities.'" Exhibit K at 8. The District Court denied Appellee's motion to dismiss under Rule 12(b)(2) without an evidentiary hearing, in which case on appellate review accepts all facts as alleged in the complaint. *Zoch v. Magna Seating (Germany) GmbH*, 810 Fed. Appx. 285, 287 (5th Cir. 2020). The ruling was based on appropriate submitted evidence. Exhibit L at ¶ 5; Exhibit M at 9-11. Appellee's appeal on the basis of lack personal jurisdiction and motion to transfer are meritless.

    b.    *BI Science's argument that the Settlement Agreement is invalid is contrary to its representations to the Court, the Mediator, and Bright Data*

A district court's findings of fact are reviewed for clear error. *Dunbar Med. Sys. v. Gammex Inc.*, 216 F.3d 441, 448 (5th Cir. 2000). The Parties entered the Settlement Agreement on February 23, 2020. The Mediator informed both Parties that a settlement had been reached:

> "I am very pleased to report that the mediator's proposal has resulted in a settlement. Incorporated into that is the list of terms that [Appellee's counsel] sent me yesterday, and that I provided to [Appellant's counsel]. That list, of course, is modified in some respects by the terms of the proposal, including the most recent proposed language added to it this morning regarding ' ███████████ '.....

> Unless you object, I will notify Judge Gilstrap of the settlement and request that he cancel Monday's hearing."

Exhibit [Dkt. 170-3]. BI Science's counsel confirmed its agreement in its response stating "Thank you for all your hard work." *Id*. The Parties then filed a joint motion to stay all deadlines and notice of settlement stating, "all matters in controversy between the Parties have been settled, in principle." Exhibit N.

Appellant's post-Settlement assertions that it believed it was merely agreeing to what it mischaracterizes as a settlement "framework" is contrary to the record and BI Science's own representations. Motion at 6. "An offer is judged by the parties' overt acts and words, not by the subjective or secret intent of the offeror." *Johnson v. BP Expl. & Prod. (In re Deepwater Horizon)*, 786 F.3d 344, 355 (5th Cir. 2015). **The Court held an evidentiary hearing on April 13, 2020 during which it found that** ███ April 13, 2020 Hearing ███ **and that the Settlement** ███.[6] Exhibit E at 42:12–43:18.

Despite its representations to the Court, the Mediator, and Plaintiff, BI Science now incorrectly argues that its refusal to sign the subsequent February 24, 2020 writing renders the February 23, 2020 Settlement Agreement invalid.

---

[6] Appellee's argument that ███████ of the Settlement contradict one another is unfounded. ███████ unambiguously requires that ███████ Information relating to Final Judgment ███████ which is consistent with ███████ ███████.

*First*, "[q]uestions regarding the enforceability or validity of such agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law." *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). Texas Rule 11 is plainly inapplicable. Courts have applied federal law to settlements involving patent claims. *Wang Labs., Inc. v. Applied Comput. Scis, Inc.* is inapposite. 958 F.2d 355, 357 (Fed. Cir. 1992). Moreover, in contrast to *Wang Laboratories*, counsel for both parties accepted the Mediator's proposal in writing and filed a joint notice notifying the District Court of the Settlement followed by the District Court finding the Settlement ▉▉▉ April 13, 2020 Hearing ▉▉▉ during the April 13, 2020 evidentiary hearing. Exhibit E at 34:9–35:18, 42:10–44:20.

*Second*, Defendant misapprehends Texas Rule of Civil Procedure 11, which would not change the result in this case. Texas Rule 11 is "analog[ous] to the statute of frauds, which requires certain contracts to be in writing," and the exceptions and limitations on the statute of frauds "apply equally to Rule 11 agreements." *Padilla v. La France*, 907 S.W.2d 454, 460 (Tex. 1995) (settlement agreement consisting of letters exchanged between the parties was valid as a matter of law, although one of the parties "refused to accept the checks or sign the agreement"). BI Science confirmed that "the mediator's proposal has resulted in a settlement resolution," acknowledged the terms incorporated in the mediator's

proposal, and signed the joint notice of settlement that was filed with the Court.

Exhibit O, N. The Texas Supreme Court confirmed that these facts satisfy Texas

Rule 11. *Shamrock Psychiatric Clinic, P.A. v. Tex. HHS*, 540 S.W.3d 553, 560-62

(Tex. 2018). The attorney's signature on the Notice of Settlement satisfies Texas

Rule 11. Exhibit N.

The finding of a valid agreement is a factual determination subject to the

clear error standard of review; no such error has been shown. Appellant's very

weak case on the merits of its appeal weighs heavily against BI Science.

### 2. *BI Science Will Not Be Irreparably Injured by Enforcement*

BI Science cannot show irreparable injury. The Settlement Agreement is

likely to improve BI Science's financial situation. BI Science's CEO Kfir Moyal

has represented that ████ BI Science evidence presented at April 13, 2020 hearing

████████████████████. Exhibit P at ¶ 2. Under the Final Judgment,

████ Information relating to Final Judgment ████

████████████████████. As Bright Data has ████

████ Confidential Information relevant to calculating security

████████████████████

████████. ████████████

████. Exhibit P at ¶ 2.

Also, BI Science ignores that even if it succeeded in its appeal, that would

17

result in reinstatement of the patent infringement lawsuit against it, which could result in a larger damages award and injunction against it. This factor weighs against a stay.

### 3.    *Issuance Of A Stay Will Substantially Injure Bright Data*

As discussed above, granting BI Science a stay during the appeal would continue to deprive Bright Data of the benefit of its bargain. There is also a substantial risk that BI Science will go out of business before resolution of the Appeal.  BI Science's ████████ Information relating to Final Judgment ████████ ████████.  Staying performance of the Settlement including ████████ ████ deprives Bright Data of any benefit. At the same time, BI Science's proposed security of $████ is a ████████ of the ████ $██████ that Bright Data would receive from the expected $████████ through the appeal. BI Science's proposed security would deprive Bright Data of more than ████ of damages it would incur during the requested stay.  This factors weighs strongly against a stay.

### 4.    *The Public Interest Strongly Disfavors Reneging on a Settlement*

The public has a strong interest in preventing litigants from entering settlement agreements only to renege on them.  "The vehicle of settlement would be a useless item if contracts, such as the one here, were subject to invalidation after they were consummated." *Hemstreet v. Spiegel, Inc*., 851 F.2d 348, 351 (Fed. Cir.

18

1988); *see also FTC v. Actavis, Inc.*, 570 U.S. 136, 154 (2013) (noting the "general legal policy favoring the settlement of disputes."); *Foster v. Hallco Mfg. Co.,* 947 F.2d 469, 477 (Fed. Cir. 1991) (there is a "strong public interest" in settlements). "Without a doubt, public policy favors the settlement of claims brought before the courts. Settlement agreements have always been a favored means of resolving disputes." *Ins. Concepts, Inc. v. W. Life Ins. Co.*, 639 F.2d 1108, 1111 (5th Cir. 1981) (internal quote and citation omitted).

Having lost its request to be excused from performance for 2020, BI Science simply refused to perform.  Exhibit E at 29:25–35:18.  This factor weighs heavily against a stay.

### E.    Mr. Moyal's July 26, 2021 Declaration Is Not Evidence of Record and Is Not Reliable Discovery

BI Science improperly attempts to support the Motion through a declaration from its CEO Kfir Moyal that make inadmissible hearsay assertions unsupported by any corroborating documentary or other evidence.  Mr. Moyal does not disclose BI Science's ██ Information relevant to calculating security ██, the single most relevant piece of information in determining the security necessary to protect Bright Data's rights. Mr. Moyal's assertion that ████████████ ████████████ and incorrect allegation that Bright Data does not offer the same Proxy Services as BI Science is not reliable evidence and should be disregarded.

## IV.    CONCLUSION

For the foregoing reasons, BI Science's proposed security should be rejected

and Motion should be denied.

Dated:  August 2, 2021                    Respectfully submitted,

By: */s/ Robert Harkins*

Korula T. Cherian
Robert Harkins
**RuyakCherian LLP**
1936 University Ave, Ste. 350
Berkeley, CA 94704
(510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

Ronald Wielkopolski
**RuyakCherian LLP**
1901 L St. NW, Suite 700
Washington, DC 20036
(202) 838-1568
ronw@ruyakcherian.com

*Attorneys for Plaintiff-Cross-Appellant*
*Bright Data Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2021, I electronically filed the foregoing APPELLEE'S NON-CONFIDENTIAL RESPONSE TO APPELLANT'S CONFIDENTIAL EMERGENCY MOTION TO STAY ENFORCEMENT FO THE DISTRICT COURT'S ORDER AND FINAL JUDGMENT with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system, which will also effect service on all counsel of record.


*/s/ Robert Harkins*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**  2020-2118, -2181, 2021-1664, -1667

**Short Case Caption**  Bright Data Ltd. v. BI Science (2009) Ltd.

**Filing Party/Entity**  Bright Data Ltd.

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 6/10/2021

Signature:  /s/ Robert Harkins

Name:  Robert Harkins

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Bright Data Ltd. | | IPPN Group Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable ☐   Additional pages attached

| | | |
|---|---|---|
| Mann Tindel Thompson Law Group<br>300 West Main, Henderson, TX 75652 | James Mark Mann | Gregory Blake Thompson |
| Capshaw DeRieux, LLP<br>114 E. Commerce Ave., Gladewater, TX 75647 | Elizabeth L. DeRieux | S. Calvin Capshaw |
| RuyakCherian LLP<br>1901 L St. NW, Suite 700, Washington, DC 20036 | Amadou Kilkenny Diaw | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑   None/Not Applicable ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# EXHIBIT A

# REMAINS UNDER SEAL

# EXHIBIT B

# REMAINS UNDER SEAL

# EXHIBIT C

# REMAINS UNDER SEAL

# EXHIBIT D

# REMAINS UNDER SEAL

# EXHIBIT E

# REMAINS UNDER SEAL

# EXHIBIT F

# REMAINS UNDER SEAL

# EXHIBIT G

Case 20-2118  Document 50  Page 37  Filed 08/02/2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:18-CV-00483-JRG |
| BI SCIENCE, INC., | § | |
| Defendant. | § | |
| | § | |

## **NOTICE OF APPEAL**

Defendant BI Science (2009) Ltd. ("BI Science") (which plaintiff has alleged is also known as BI Science, Inc.) hereby respectfully gives notice that it appeals to the United States Court of Appeals for the Federal Circuit from the Order and Final Judgment entered in this action on July 2, 2020 (the "Final Judgment"), and from any ruling or order adverse to BI Science that is contained in, is subsumed by, or preceded the Final Judgment, including but not limited to: (1) the portion of the Memorandum Opinion and Order dated May 13, 2019 (Dkt. No. 82) that denied in part BI Science's motion to dismiss and, in the alternative, transfer venue; and (2) the Court's April 13, 2020 ruling on Plaintiff's Motion to Enforce Settlement Agreement (Dkt. No. 183).

Dated: July 29, 2020

Respectfully submitted,

By:  /s/ *J.C. Rozendaal*
J.C. Rozendaal
(admitted *pro hac vice*)
Sterne Kessler Goldstein & Fox P.L.L.C.
110 New York Avenue NW, Suite 600
Washington, D.C. 20005
Phone: (202) 772-8747
Fax: (202) 371-2540
jcrozendaal@sternekessler.com

Michael A. Charish (admitted *pro hac vice*)
Charish Law Group P.C.
347 Fifth Avenue, Suite 1402
New York, New York 10016
Phone:  (646) 328-0183
michael@charish.law

*Attorneys for Defendant BI Science (2009) Ltd.*

Case 20-2118   Document: 50   Page: 39   Filed: 08/02/2021

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 29th day of July 2020, with a copy of this document via the Court's CM/ECF system.

   /s/ *J.C. Rozendaal*
J.C. Rozendaal

# EXHIBIT H

# REMAINS UNDER SEAL

# EXHIBIT I

# REMAINS UNDER SEAL

# EXHIBIT J



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

**Before Her Honor Judge Y. Shevah, V.P.**

| | |
|---|---|
| **Applicant** | **Luminati Networks Ltd.**<br>By means of Advs. Saar Pauker and Benny Winston |

**versus**

| | |
|---|---|
| **Respondent** | **B. I Science (2009) Ltd.**<br>By means of Advs. Assaf Biger and Niran Dor |

## <u>Judgment</u>

1

2   **Application for the enforcement of a foreign arbitration ruling under Section 29A of the**

3   **Arbitration Law, and under the New York Convention for the Recognition and**

4   **Enforcement of Arbitral Awards of 1958.**

5

6   <u>The Proceeding and Necessary Background</u>

7   1.      The Applicant petitions for the enforcement of a foreign arbitration ruling under

8   Section 29A of the Arbitration Law which instructs that "**an application for approval or**

9   **revocation of a foreign arbitration ruling which is subject to an international convention**

10  **to which Israel is a party and which convention sets forth instructions in the matter at**

11  **hand, shall be heard in accordance with said instructions and subject to them**", and

12  according to the New York Convention for the Recognition and Enforcement of Arbitral

13  Awards of the year 1958.

Page 1 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712‑05‑20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1    The Arbitration Award which forms the subject of the Application for Enforcement was issued

2    in the State of Texas by Mr. William Cornelius (hereinafter - **Cornelius**) on April 29, 2020,

▮ ██████████████████████████████████████████████████████████

▮ ██████████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████ (the

6    Hebrew translations attached by the Applicant to the various documents it submitted are not

▮    in dispute, and these shall be used for convenience purposes, in the appropriate places), ████

▮ ██████████████████████████████████████████████████████████

9    ██████████████████████████████████████████████ .

10

11    2.      In the background lies a dispute between the Applicant and the Respondent, two

12    companies engaged in the field of proxy servers, which is rooted in the Applicant's claim

13    pursuant to which the Respondent violated, by its activities, its intellectual property.

14    The Applicant filed a Claim against the Respondent in the state of Texas in the United States

15    with "**The United States District Court for the Eastern District of Texas Marshall Division**"

16    (Civil Action No. 2:18-CV-483-JRG) and it was set for hearing on February 24, 2020. The

17    proceeding was transferred to mediation before Cornelius, who submitted to the court on

18    behalf of the parties a joint application (drafted on February 23, 2020) for "**staying the**

19    **proceeding and issuing a notice of settlement**" ("**Joint motion to stay all deadlines and**

20    **Notice of settlement**") where it was written that "**The Parties hereby notify the court that**

21    **all matters in controversy between the Parties have been settled, in principle**"

22    (hereinafter - **the Joint Application**), i.e., the disputes have been settled in principle and the

23    hearing should be canceled.

Page 2 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

7     The hearing, which was scheduled for February 24, 2020, was canceled.

9     3.     Nevertheless, the Agreement did not put an end to the disputes, and the Applicant

10   petitioned for its enforcement. After the Respondent notified its objection, the parties were

11   summoned to a hearing held in the court in Texas on April 13, 2020 before Judge Rodney

12   Gilstrap, while Cornelius takes part in the hearing and answers the judge's questions via video

     conference (corona!).

Page 3 of 20

11/29/2020



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

▪ ████████████████████████████████████████████

▪ ████████████████████████████████████████████

▪ ████████████████████████████████████████████

4 ████████████████████ my emphases).

5

▪ 4.    █████████████████████████████████████

▪ ████████████████████████████████████████████

▪ ████████████████████████████████████████

▪ ████████████████████████████████████████████

■ ████████████████████████████████████████████

■ ████████████████████████████████████████████

■ ████████████████████████████████████████████

■ ████████████████████████████████████████████

■ ████████████████████████████████████████████

■ ████████████████████████████████████████████

■ ████████████████████████████████████████████

■ ████████████████████████████████████████████

■ ████████████████████████████████████████████

18 ████████████████████████████ (hereinafter - the **Arbitration**

19 **Ruling**).

20

21 5.    To complete the picture I shall begin with the end and note that on July 2, 2020 the

▪ Texas Court issued a judgment titled "**Order and Final Judgment**" ████████

23 ████████████████████████████████████████████

Page 4 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020



3    The Respondent filed an appeal against said ruling on July 29, 2020 with the "**United States**

4    **Court of Appeals for the Federal Circuit**".  The developments in this appeal process are not

5    known.

6

7    6.        In any case, the proceeding before me was filed on May 27, 2020, prior to the Texas

8    court Judgment and prior to the filing of the appeal, in which the Appellant sought "**a petition**

9    **for "confirmation of a foreign arbitration ruling**", and even filed an "**Application for**

     **Interim Relief** (*ex parte*)", including "

14                                                    To the said applications blackened documents were attached

15   in view of an "**American protective order restricting their distribution**", while full versions

16   of some of those documents, as well as of the Judgment of July 2, 2020, were attached only as

17   a "**Response to the Request for Temporary Relief**" filed on July 8, 2020.

18   The request for temporary relief was ruled upon in a decision dated July 22, 2020, and on

19   November 1, 2020 the hearing in the main proceeding took place in the presence of the

20   parties, which included cross-examinations and summaries.

21

22   Arguments of the Respondent

Page 5 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1    7.    The Respondent argues that the Application for Recognition and Enforcement of the

2    Arbitration Ruling must be rejected for a variety of reasons, the main ones being:

3    First, according to the customary case law in Israel, when a foreign court hears the question of

4    confirmation or revocation of an arbitration ruling rendered in its jurisdiction, the applicant

5    must undertake a proceeding under the Enforcement of Foreign Judgments Law, according to

6    the conditions set forth therein, and not a proceeding under the Arbitration Law and the

7    relevant Convention. This is certainly true where the foreign court hearing was initiated by the

8    party seeking enforcement in Israel.

9    Second, the Applicant did not submit to the Court an answer to the Respondent's Objection to

10   the Recognition and Enforcement Proceeding.

▮    Third, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "

▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Page 6 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

▮ ██████████████████████████████

▮ ██████████████████████████████

▮ ██████████████████████████████

▮ ██████████████████████████████

▮ ██████████████████████████████

▮ ██████████████████████████████

▮ ██████████████████████████████

8  ███████

9

10  The Arguments of the Applicant

11  8.      The Applicant did not file an answer to the '**Objection to the Request for Approval**

12  **of a Foreign Arbitration Ruling**" and its position is spread throughout the court documents

13  submitted on its behalf, mainly in response to the Respondent's answer to the request for a

14  temporary restraining order. I shall address this when determining the costs of the procedure.

15  The Applicant claims that it is entitled to obtain the enforcement order by virtue of the

16  provisions of the New York Convention, since none of the grounds set forth therein as an

17  exception for refraining from enforcing an arbitration ruling was proven, of which an exclusive

18  "jurisdiction clause" is not one of them.

▮ ██████████████████████████████

▮ ██████████████████████████████

▮ ██████████████████████████████

22  ██████████████████████

Page 7 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712‑05‑20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

On the claims concerning res-judicata due to the confirmation of the arbitration ruling by a court in Texas, the Applicant refers to the foreign professional legal literature according to which the filing of a procedure to revoke an arbitration ruling in the state where it was issued does not prevent the filing of a petition for the enforcement of an arbitration ruling under the New York Convention. According to it, a fortiori, the confirmation of the ruling in the state wherein it has been granted, even if there is an appeal against the granting of the confirmation, cannot block it from initiating a proceeding in Israel. It further claims that since the Respondent did not submit an expert opinion on foreign law indicating the correctness of its arguments and the chances of appeal in the United States, the assumption is that the confirming judgment shall remain unchanged, and in any case there is no impediment to incidental recognition under Section 11 of the Enforcement of Foreign Judgments Law.

**Discussion and Decision**

8.      The rule is that "**in the case of a foreign arbitration ruling to which the Convention applies, we are not at all dealing with a petition for revocation as defined in Section 24 of the Arbitration Law, since it is not an objection to recognition and enforcement (and if you will - for confirmation) based on the grounds for revocation enumerated in Section 24. We are dealing with a Petition which is based on the provisions of Section 5 of the Convention, and on the grounds enumerated in this Section that allow for the rejection of a petition for recognition or enforcement of an arbitration ruling**"(**Leave of Civil Appeal 4320/11 I.A.M Communications Holdings Ltd. v. Michael Wilson & Partners Ltd.**, paragraph 40 of the Judgment of Judge Danziger, February 15, 2012).

Page 8 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1     Section 5(1) of the Convention lists 5 grounds on which an objection to recognition and
2     enforcement of a foreign arbitration ruling may be based, as follows:  lack of validity of the
3     arbitration agreement or incapacity of the parties to it; failure to provide an adequate
4     opportunity to present arguments in the arbitration proceedings; lack of authority of the
5     arbitration or beyond the scope of authority; deviation from the arbitration regulations or
6     setting regulations in violation of the law governing the arbitration proceedings; invalidity of
7     the arbitration ruling due to it being set aside or due to the fact that it is not final according to
8     the law applicable to it.

9     Section 5(2) of the Convention adds two more grounds to the five mentioned above:
10    incapability to settle the matter in arbitration, and the fact that the arbitration ruling is
11    contrary to public policy.

12    These grounds constitute "... **a closed list of grounds for objection to the approval of the**
13    **ruling**" (Originating Motion in Arbitration 59290-10-15 **Morpho Detection LLC v. Waterfall**
14    **Engineering Ltd.**, granted on May 18, 2016).

15    It is also worth noting the limited scope of intervention in foreign arbitration rulings:  "**It is a**
16    **basic principle that the scope of judicial intervention in an arbitral award is limited and**
17    **delimited to specific grounds for cancellation of the ruling that must be interpreted very**
18    **narrowly. The arbitration institution was established against the background of a legal**
19    **policy that wished to encourage the existence of an efficient and fair system of**
20    **resolving disputes out of court.  This system eases the heavy burden on the courts and is**
21    **there to serve an important public interest... this is especially true, when it comes to**
22    **foreign arbitration, and even more when in our case it was done with their full consent,**
23    **and with the participation of both litigating parties, who approached it, and on which**

Page 9 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020



1     **terms they agreed in advance**" (Leave of Civil Appeal 9544/04 **Chian Shipping Ltd. v.**

2     **Lehmann Commodities**, April 4, 2005).

3

7

8     A.      The attorneys of the parties in the United States, Adv. Harkins on the part of the

9     Applicant, and Adv. Findlay on the part of the Respondent, participated in the meetings before

10    Cornelius;

     B.      Following these meetings, Cornelius drafted the agreement which contained

16

22

Page 10 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020





**District Court in Tel Aviv - Yafo**

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020



20    12.    Needless to further mention and note that also in order to meet the burden required

21    by the Convention to establish a ground for opposing the enforcement of an arbitral ruling

22    whose substance as such is not in dispute, the testimony of the Respondent's CEO expressed

23    in a laconic affidavit that includes hearsay and has no statement regarding personal

Page 13 of 20

## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

involvement on his behalf in the negotiations that lead to drafting of the agreement by Cornelius, or a reference to what has been said and words that have been exchanged in that framework, is not sufficient.

I was convinced that the Respondent agreed to an arbitration proceeding and recognized the validity of the arbitration clause.

Second, on the question of the interpretation of Section 2(2) of the New York Convention, it also is conceivable that its purpose is to determine the conditions under which the local court in the Contracting State **is obliged** to recognize the validity of the arbitration clause, in such a way that it cannot impose additional conditions, however it does not deny it the authority to recognize the validity of an arbitration clause even when they do not fully exist (see, for example: Leonardo D. Graffi, "Harmonized Effects of Arbitration Agreements", 28 **Hous. J. Int'l**

Page 14 of 20



### District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1    **L.** 663, 690-694 (2006).  This view seems to be necessary and promotes judicial certainty. It
2    makes sense that when parties to some or other agreement establish an arbitration clause
3    between them, they do not think of every possibility regarding a future forum where the
4    question of the validity or enforcement of said clause will be discussed, and of proceedings
5    based on it, and they aim to enter into an agreement that is valid under local law that does
6    not necessarily require to meet all the conditions of Section 2(2) of the New York Convention.
7    Certainly, they cannot be viewed as having knowingly chosen to prevent enforcement in a
8    foreign country.
9    The possibility that the said clause in the Convention will deprive the court of a Contracting
10   State of the authority to enforce an arbitration ruling on such formal grounds, which are more
11   stringent than the domestic law considered by the parties, is inconsistent with the purpose of
12   the Convention "... **to improve the efficiency of arbitration in the settlement of disputes**
13   **in private law**" (Letters of Conventions 287).
14
15   14.      Moving on to the litigating framework.
16   The Respondent argues, as aforesaid, that in light of the approval of the arbitration ruling in
17   Texas, the only route which the Applicant can follow is the law for enforcing a foreign
18   judgment, and it cannot walk that route because it fails to comply with the requirement that
19   "**the judgment can no longer be appealed**."
20   With regard to the question of the manner in which a foreign arbitration ruling is received in
21   Israel, which was awarded, in our case, a validating judgment in a foreign country, it was
22   indeed stated that "**if an arbitration ruling was confirmed – it is brought to Israel as a**
23   **judgment of a foreign court ("foreign ruling") and the question of its enforcement in**

Page 15 of 20

11/29/2020



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1   **Israel is discussed in the Enforcement Law**" (Smadar Ottolenghi, **Arbitration: Law and**
2   **Procedure**, Fourth Special Edition 5755-2005, page 945), and **"... once the arbitration ruling**
3   **was confirmed in the foreign court, the only framework in which one can request its**
4   **enforcement is by means of the Law for the Enforcement of Foreign Judgments ...** "(Civil
5   Claim 1137/09 **Elefant v. Haimov**, issued on April 03, 2011).

6   At the same time, in case law, although in a side note, an opposing opinion is mentioned
7   according to which "**the Applicant's claim pursuant to which, since a foreign ruling has**
8   **been issued in arbitration matters by a judicial entity, the only way to enforce it, is**
9   **pursuant to the Enforcement of Foreign Judgments, must be rejected**", where a leave of
10  civil appeal was rejected on the ground that "**the learned judge was right in believing that**
11  **no basis was presented to her determining that according to English law the English**
12  **judgment must be considered as a judgment confirming the foreign arbitration ruling;**
13  **and on this matter, English law should be considered as a fact that must be proven**"
14  (Leave of Civil Appeal 1810/94 **Mafro Kibbutz Hagoshrim v. Leon Pais**, issued on June 26,
15  1994).

16  To my understanding, the question has not yet been decided in unequivocally binding
17  precedent.

18

19  15.      The Applicant attached to the Response to the Request for Temporary Relief an
20  opinion dated July 6, 2020, drafted by Claire Abernathy Henry, a partner in the law firm of
21  Ward Smith & Hill in Texas, and a member of the State's Bar Association since 2006, which
22  relates mainly to the protective order, and does not express an opinion as to the validity of the

Page 16 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1    settlement agreement or the nature or propriety of the proceedings in the Texas court from a

2    procedural point of view, under local law.

3    The Respondent, for its part, did not attach any opinion.

4

5    16.     The Regulations for the Execution of the New York Convention (Foreign Arbitration),

6    5738-1978, state under the heading "**Purpose and Interpretation**" that "**these Regulations**

7    **are for the implementation of the New York Convention, and shall be construed as one**"

8    (Regulation 2), and under "**Exceptions to Confirmation of a Foreign Arbitration Ruling**"

9    that "**if an application has been filed for the revocation of a judgment or for its**

10   **suspension by a competent authority of the place where it was given or according to the**

11   **law it was given, the court may postpone the proceedings to another date, and may at**

12   **the request of the party seeking confirmation of the judgment, order the other party to**

13   **provide an appropriate guarantee**" (Regulation 4). This, in accordance with the provisions of

14   the New York Convention, according to which "**if a request was submitted to the**

15   **competent authority mentioned in Section 5(1)(e) to revoke or suspend the ruling** [in the

16   original - setting aside or suspension; Y.S.], **the requested authority may rely on the**

17   **judgment, if it is right in its opinion, to postpone** [in the original – adjourn; Y.S.] **the**

18   **decision regarding the enforcement of the judgment ...** " (Section 6).

19

20   17.     The thesis according to which it is not possible to initiate proceedings for the

21   recognition and enforcement of a foreign arbitration ruling as long as a proceeding is pending

22   in a foreign court dealing with its validity, in view of non-compliance with the provision of

23   Section 3(2) of the Enforcement of Foreign Judgments Law according to which "**the ruling can**

Page 17 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1  **no longer be appealed**" is inconsistent with the provision of Regulation 4, or with the
2  provision of Section 6 mentioned above, and voids them of any meaning, since the two said
3  provisions grant the court discretion whether to litigate the questions of recognition and
4  enforcement or to postpone the hearing to a later date, as opposed to viewing the proceeding
5  revolving around them as subject to dismissal due to the irregularity of its submission.

6

7  18.       Neither is it clear why the position of a party whose foreign arbitration ruling was
8  granted in his case has already been confirmed in the state that it has been granted, should be
9  worse by manner blocking it from being confirmed in his country of residence, compared to a
10  party who seeks to approve a foreign arbitration ruling that has not yet been submitted to any
11  judicial examination, when logic leads to a contrary result, which actually grants an advantage
12  to whom the judicial decision recognizing the foreign arbitration ruling has been issued, after
13  it has already successfully crossed the foreign furnace.
14  It further should be noted that the application for confirmation was submitted to the court in
15  Israel by the Applicant on May 27, 2020 before July 2, 2020 which then was approved by the
16  court in Texas, certainly before July 29, 2020 when the Respondent filed the appeal.
17  Nor has it been proved that the confirming decision is the result of an initiated application on
18  the part of the Applicant, or is only a warranted provision, even without an application, similar
19  to the provision of Section 28 of the Arbitration Law - an issue that should have been clarified
20  by the Respondent, which objects to the enforcement.
21  A result whereby the Applicant will be barred from clarifying a proceeding that it lawfully filed,
22  will be directed to filing a proceeding under the Foreign Judgment Enforcement Act, which will
23  also not be adjudicated but will be delayed due to an appeal filed by the Respondent in Texas

Page 18 of 20



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1   when its chances are not clear, nor is it clear when it will be heard and adjudicated – is not

2   reasonable.

3

4   ■■ ▬▬▬▬▬▬▬▬▬▬▬▬

    ■ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

    ■ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

    ■ ▬▬▬▬▬▬▬▬▬▬ ▬▬

    ■ ▬▬▬▬▬▬▬▬▬▬▬▬▬

    ■ ▬▬▬▬▬▬▬▬▬▬▬▬▬

    ■ ▬▬▬▬▬▬▬▬▬▬▬▬▬

    ■ ▬▬▬▬▬▬▬▬▬▬▬▬▬

    ■ ▬▬▬▬▬▬▬▬▬▬▬▬▬

    ■ ▬▬▬▬▬▬▬▬▬▬▬▬▬

15  ■■

16  And as to the additional argument concerning the failure to file an Answer: The Applicant did

17  indeed not file a response to the objection to recognize and enforce the arbitration ruling,

18  which was submitted by the Respondent, which is in fact a procedure requiring a decision, and

19  such should have been filed, and the Court will not find itself gathering its position from

20  evidence scattered among the pleadings it filed, except that it is not a violation of a court

21  order – since such order was not given.

22

23  <u>The Result</u>



## District Court in Tel Aviv - Yafo

**Judgment of the District Court 62712-05-20 Luminati Networks Ltd. v. B. I Science (2009) Ltd.**

November 29, 2020

1     20.     Since no cause of action has been established to refrain from doing so, I order the

2     enforcement of the arbitration ruling issued in the State of Texas by Mr. William Cornelius

3     (hereinafter - **Cornelius**) on April 29, 2020.

4     In view of the statements provided in the last paragraph of Section 19, I will refrain from

5     awarding expenses in favor of the Applicant.

6

7     Issued this day, on 13 Kislev 5781, November 29, 2020, *ex parte*.

8

    **Yehudith Shevah, Judge, V.P.**

Page 20 of 20

# EXHIBIT K

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:18-CV-00483-JRG |
| | § | |
| BISCIENCE INC., | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant BIScience Inc.'s ("BIScience") Motion to Dismiss, and in the Alternative, Motion to Transfer Venue (the "First Motion to Dismiss"). (Dkt. No. 15.) Additionally, before the Court is BIScience's Second Motion to Dismiss, and in the Alternative, Motion to Transfer Venue (the "Second Motion to Dismiss") (Dkt. No. 36), as well as Plaintiff Luminati Networks Ltd.'s ("Luminati") Motion to Strike Portions of Defendant's Second Motion to Dismiss (the "Motion to Strike") (Dkt. No. 40). Finally, before the Court is Luminati's Motion for Early Venue Discovery. (Dkt. No. 22.)

Having considered these motions and for the reasons set forth herein, the Court finds that Luminati's Motion to Strike should be and hereby is **DENIED**. The Court further finds that BIScience's First Motion to Dismiss should be and hereby is **DENIED AS MOOT**. BIScience's Second Motion to Dismiss should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART**. BIScience's Second Motion to Dismiss is **GRANTED** as to Luminati's claim for tortious interference with employment agreements, but is otherwise **DENIED**.  Also, Luminati's Motion for Early Venue Discovery is **DENIED AS MOOT**.

## **Background**

Luminati filed its first Complaint (the "Original Complaint") against BIScience alleging direct and indirect infringement of U.S. Patent Nos. 9,241,044 (the "'044 Patent") and 9,742,866 (the "'866 Patent") (collectively, the "Asserted Patents"), as well as tortious interference with Luminati's employment agreements and misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"). (Dkt. No. 1.) BIScience then filed its First Motion to Dismiss directed at the Original Complaint arguing that this Court lacked personal jurisdiction over BIScience; that, if the Court did have jurisdiction, the case should nonetheless be transferred; and that the Original Complaint failed to state claims for violation of the DTSA or indirect infringement of the Asserted Patents. (Dkt. No. 15.) Luminati opposed the First Motion to Dismiss and moved for early venue discovery. (Dkt. No. 22.)

While briefing on the First Motion to Dismiss was ongoing, Luminati filed its First Amended Complaint.[1] (Dkt. No. 28.) The First Amended Complaint adds additional claims for false advertising under the Lanham Act and tortious interference with current and prospective business relationships. (*Id.* ¶¶ 69–78.) The First Amended Complaint also alleges new facts relevant to this Court's personal jurisdiction over BIScience. (*E.g. id.* ¶ 5.) These facts also bear on whether a transfer of venue is appropriate. BIScience took the position that the First Amended Complaint mooted the First Motion to Dismiss and filed its Second Motion to Dismiss. (Dkt. No. 36.) Luminati took the position that the First Motion to Dismiss was not moot in its entirety and

---

[1] The Court notes that the First Amended Complaint was filed 22 days after the First Motion to Dismiss (*compare* Dkt. No. 15 (filed Jan. 28, 2019), *with* Dkt. No. 28 (filed Feb. 19, 2019)), and thus outside of the window in which Luminati could amend as a matter of course. Fed. R. Civ. P. 15(a)(1)(B). The Court is not aware of any written consent given by BIScience for this amendment. *Id.* 15(a)(2). However, in the interest of justice, and to the extent not cured by the subsequent Docket Control Order (Dkt. No. 59), the Court *sua sponte* and *ex post* grants leave for this amendment. *Id.*

moved to strike the portions of the Second Motion to Dismiss that Luminati argued were duplicative of the First Motion to Dismiss. (Dkt. No. 40.) The Second Motion to Dismiss asserts the same bases for dismissal or transfer as the First Motion to Dismiss, except BIScience drops its Rule 12(b)(6) defense as to Luminati's claim for indirect infringement and adds a Rule 12(b)(6) defense as to Luminati's Lanham Act claim. (*Compare* Dkt. No. 15, *with* Dkt. No. 36.)

## Luminati's Motion to Strike

The Court finds that the First Amended Complaint mooted the First Motion to Dismiss directed at the Original Complaint. BIScience properly directed its Second Motion to Dismiss at the First Amended Complaint. Accordingly, BIScience's First Motion to Dismiss is **DENIED AS MOOT** and Luminati's Motion to Strike is **DENIED**.

### I.      Legal Standard

"Generally, an amended pleading supersedes the original for all purposes." *Nolen v. Lufkin Indus., Inc.*, 466 F. App'x 895, 898 (Fed. Cir. 2012); *see also King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect . . . ."). "A motion to dismiss that attacks the superseded complaint may be denied as moot." *New World Int'l, Inc. v. Ford Global Techs., LLC*, No. 3:16-CV-1112-M, 2017 WL 1078525, at \*5 (N.D. Tex. Mar. 22, 2017); *see also WorldVentures Holdings, LLC v. Mavie*, No. 4:18-CV-393, 2018 WL 6523306, at \*16 (E.D. Tex. Dec. 12, 2018). However, where a motion to dismiss attacks the original complaint for deficiencies that persist in the amended complaint, the court has discretion to apply the original motion to dismiss to the amended complaint rather than deny the motion as moot. *New World*, 2017 WL 1078525, at \*5; *see also* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2019) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the

new pleading, the court simply may consider the motion as being addressed to the amended pleading.").

## II.    Discussion

The Court finds that the proper course is to deny the First Motion to Dismiss as mooted by the First Amended Complaint.

Luminati argues that its First Amended Complaint did not necessarily moot the First Motion to Dismiss and, as a result, the Second Motion to Dismiss is a duplicative motion that represents an abusive litigation tactic. (Dkt. No. 40, at 5–6.) While Luminati is correct that other courts have found motions to dismiss and motions to transfer not mooted by amended complaints, these courts recognized that it was an act of their "discretion" to consider such motions to the extent "such a motion remains applicable." *WowWee Grp. Ltd. v. Wallace*, CV-12-2298-MWF(VBKx), 2012 WL 13013022, at *2 (C.D. Cal. June 27, 2012). Indeed, it is within the Court's discretion to consider a motion directed to a superseded pleading where the motion remains applicable to the amended pleading—that is, where the amended pleading has not addressed the defects raised in the motion. However, it is equally within the discretion of the Court to deny such motion where it is not applicable. The Court finds that the latter situation is present here. This decision is largely facilitated by BIScience's filing of its Second Motion to Dismiss.

The purpose of interpreting a motion directed at a superseded complaint as one directed at the amended complaint is to save time and resources in situations where the motion is fairly applicable to amended complaint, not to unfairly tie the hands of the movant in situations where it is not. The plaintiff should not be allowed to amend its complaint in response to a motion and then require the movant to rest on its outdated briefing.

Luminati argues that Rule 12(b)(2) motions are distinguishable from Rule 12(b)(6) motions or other motions on the pleadings and thus cases finding such motions moot are inapposite. (Dkt.

No. 57, at 2–3.) Luminati provides no basis for this supposed distinction. *See, e.g.*, *New World*, 2017 WL 1078525, at *5 (denying as moot a motion to dismiss for lack of personal jurisdiction and improper venue directed towards a superseded complaint). Though discovery is available in determining a Rule 12(b)(2) motion, the Court also relies on the facts pled in the complaint, just as it does in a Rule 12(b)(6) motion. *See Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) ("[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true . . . ."). The First Amended Complaint, in addition to adding new causes of action, alleges new facts, including new facts alleged in support of this Court's jurisdiction. (*See* Dkt. No. 28 ¶ 5.) The plaintiff cannot shift the playing field during the course of briefing on a motion and reasonably expect that the defendant will not be given an opportunity to respond with a new and properly directed motion.

Luminati also argues that the Second Motion to Dismiss is barred by Rule 12(g). (Dkt. No. 40, at 7–8.) It is true that Rule 12(g) would prevent BIScience from raising an argument in its Second Motion to Dismiss that was available to it but not asserted in its First Motion to Dismiss. Fed. R. Civ. P. 12(g)(2). However, Luminati identifies no such arguments. On the contrary, Luminati affirmatively states that "BIScience's Second Motion to Dismiss is based on the same grounds as the First Motion to Dismiss." (Dkt. No. 40, at 9; *see also id.* at 1–2.)

Finally, Luminati's argument that the Second Motion to Dismiss effectively circumvents this Court's local rules regarding briefing schedules and page limits is unfounded. (*Id.* at 8–9.) BIScience timely responded to Luminati's First Amended Complaint with a new motion directed at the First Amended Complaint. Fed. R. Civ. P. 12(a)–(b), 15(a). BIScience briefed this motion within the prescribed page limits and without seeking to incorporate by reference arguments made in its First Motion to Dismiss.

Luminati's First Amended Complaint superseded the Original Complaint and added allegations to address defects asserted by the First Motion to Dismiss. Accordingly, the Court denies the First Motion to Dismiss as moot and considers instead the Second Motion to Dismiss. Luminati's Motion to Strike is denied.

### BIScience's Second Motion to Dismiss

Turning to the Second Motion to Dismiss, the Court finds that it has specific personal jurisdiction or supplemental personal jurisdiction over all of Luminati's claims. However, the Court declines to exercise supplemental jurisdiction over the claim for tortious interference with employment agreements. Accordingly, the tortious interference with employment agreements claim is **DISMISSED WITHOUT PREJUDICE**. The Court further finds that transfer of venue is not warranted and that Luminati has stated claims for violations of the DTSA and the Lanham Act. Therefore, the remainder of BIScience's Second Motion to Dismiss is **DENIED**.

I.      **Motion to Dismiss for Lack of Jurisdiction**

The Court finds that it has specific personal jurisdiction over Luminati's claims for patent infringement and false advertising. Additionally, the Court has supplemental jurisdiction over the remainder of Luminati's claims. However, the Court declines to exercise supplemental jurisdiction over Luminati's claim for tortious interference with employment agreements, as determination of that claim is best left to the judicial authority of the State of Israel.

A.  **Legal Standard**

Federal Circuit law governs personal jurisdiction where "a patent question exists." *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). "[W]hether a defendant is subject to specific personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." *Id.* "Because the Texas long-arm statute extends to

6

the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *accord Grober v. Mako Prod., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) ("California and federal due process limitations are coextensive, and thus the inquiry collapses into whether jurisdiction comports with due process.") (internal quotation marks omitted).

For due process to be satisfied, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).  "A court must inquire whether the defendant has 'purposefully directed his activities' at the forum state and, if so, whether 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361–62 (Fed. Cir. 2006) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Upon a showing of purposeful minimum contacts, the defendant bears the burden to prove unreasonableness.  *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).  In rare circumstances, a defendant may defeat the exercise of personal jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Where a court has personal jurisdiction over the patent claims asserted, the court also has supplemental personal jurisdiction over "non-patent claims to the extent they form part of the 'same case or controversy' as the patent claims." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1339 (Fed. Cir. 2008). 28 U.S.C. § 1367 "confers supplemental jurisdiction with respect to both subject matter and personal jurisdiction where the 'same case or controversy' requirement is satisfied." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003).

## B.  Discussion

The Court finds that it has personal jurisdiction over BIScience as to Luminati's claims of patent infringement. BIScience has sold its allegedly infringing GeoSurf service to at least 52 customers in Texas. (Dkt. No. 36-1 ¶ 11.) Additionally, BIScience's service allows customers all over the world to utilize residential proxy devices in ten Texas cities—Arlington, Austin, Crowley, Dallas, El Paso, Fort Worth, Houston, Katy, San Antonio, and Spring—and BIScience advertises as such. (Dkt. No. 28-5, at 2–3.) Those proxy service activities are "purposefully directed" at Texas, and Luminati's claims for patent infringement allege "injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472. Accordingly, specific personal jurisdiction is proper over these claims.

*Blue Spike, LLC v. Texas Instruments, Inc.*, upon which BIScience relies (Dkt. No. 53, at 3–4), is distinguishable. No. 6:12-cv-499, 2014 WL 11829323 (E.D. Tex. Mar. 31, 2014). In *Blue Spike*, the plaintiff attempted to establish jurisdiction by arguing that "[defendant's] partners—and therefore [defendant] itself operates pervasively throughout Texas." *Id.* at *3. The plaintiff also argued that the defendant's website included a "partner locator" that directed customers to partners in Texas. *Id.* at *2. The court found these arguments unpersuasive, noting that "[t]he Court's focus is on [defendant's] actions, not third-party customers." The court held that the plaintiff had not established that the defendant's partner's contacts with Texas related to the claims in that case. *Id.* at *3.

By contrast, in the instant case, BIScience itself, not a third-party, has purposefully directed activities toward Texas. These contacts relate directly to the claims at issue. BIScience is accused, *inter alia*, of directly and indirectly infringing method claims in the Asserted Patents. (Dkt. No. 28 ¶¶ 39–40, 53–54.)  BIScience allegedly does this by allowing its customers to request content via selected residential proxy devices, including many located in Texas. (*See id.* ¶ 49.) BIScience is

8

also accused of implementing these residential proxies. (*Id.* ¶ 24, 39, 53.) The ability to direct internet traffic through proxies situated in various locations, including Texas, is a key advertised feature of BIScience's service:

> A proxy will also give you access to a set of proxy servers located worldwide, which will help you solve the location obstacle easily: Just select your preferred location, whether it's the United States or Madagascar, and surf in total anonymity and freedom.

(Dkt. No. 28-4, at 5; *see also* Dkt. No. 28-3, at 2 ("Location is key. One of the reasons to use a proxy, is to appear as if you were surfing from a different place.").) Far from being unrelated, BIScience's encouragement of customers to use proxies, including those located in Texas, is foundational to Luminati's claims of patent infringement. Specific personal jurisdiction over these claims is therefore appropriate.

BIScience allegedly relied upon false advertising to sell these same proxy services. (Dkt. No. 28 ¶ 20.) Therefore, the Court has personal jurisdiction over BIScience with regard to Luminati's Lanham Act claim as well.

The Court likewise finds that it may exercise supplemental personal jurisdiction over Luminati's claims for tortious interference with employment agreements, misappropriation of trade secrets, and tortious interference with current and prospective business relationships. The factual underpinnings of whether BIScience misappropriated trade secrets by interfering with Luminati employment and confidentiality agreements bear directly on Luminati's claim for patent infringement—particularly whether such infringement was willful. *Droplets, Inc. v. Adobe Sys., Inc.*, No. 2:06-CV-307, 2008 WL 11446843, at *4 (E.D. Tex. Aug. 29, 2008); *see also Performance Pulsation Control, Inc. v. Sigma Drilling Techs.*, LLC, No. 4:17-CV-00450, 2017 WL 5569897, at *4 (E.D. Tex. Nov. 20, 2017) (finding that claims for copyright infringement and trade secret misappropriation arose from the same operative facts). Moreover, Luminati's claims

for patent infringement may be a necessary predicate to a claim for tortious interference with business relations under Texas law, which requires that "the defendant's conduct [be] independently tortious or unlawful." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). These claims "arise out of 'a common nucleus of operative fact'" and thus form the "same case or controversy" for purposes of § 1367. *Silent Drive*, 326 F.3d at 1206 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

Although the Court has supplemental jurisdiction over these claims, its exercise of this jurisdiction is discretionary. 28 U.S.C. § 1367(c). The Court declines to exercise jurisdiction over Plaintiff's claim for tortious interference with employment agreements. As to this claim, Luminati alleges that BIScience hired former employees of Luminati for the purpose of obtaining Luminati's trade secrets, in violation of those former employees' employment agreements, which contained both non-compete and confidentiality provisions. (Dkt. No. 28 ¶¶ 15–17, 59–60.) While Luminati does not allege where these events took place, BIScience CEO Kfir Moyal declared, and Luminati did not dispute, that they occurred exclusively in Israel. (Dkt. No. 36-1 ¶ 13; *see, e.g.,* Dkt. No. 44, at 5–7.) Accordingly, the Court is persuaded that Israeli law would apply to Luminati's claim for tortious interference with employment agreements, and that any evidence of such is likely centered in the State of Israel.

A federal court exercising supplemental jurisdiction must apply the choice-of-law rules of the state in which it sits. *Janvey v. Brown*, 767 F.3d 430, 435 (5th Cir. 2014). Texas has adopted the Restatement (Second) of Conflict of Laws' "most significant relationship" test to decide choice of law issues. *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). Section 145 of the Restatement sets out the following factors for determining which forum's laws should apply to tort claims:

(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the . . . place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2) (1971). Most if not all of these factors counsel in favor of this dispute—between two Israeli companies, regarding contracts executed in Israel, and involving employees based in Israel—being decided under Israeli law. (*See, e.g.*, Dkt. No. 36-1 ¶ 13.)

Having determined that Israeli law would likely apply to this action, the underlying conduct of which occurred entirely in Israel, the Court finds that resolution of this dispute is properly left to the court system in Israel. "[C]omity and the principle of avoiding unreasonable interference with the authority of other sovereigns dictate in this case that the district court decline the exercise [of] supplemental jurisdiction under § 1367(c)." *Voda v. Cordis Corp.*, 476 F.3d 887, 903 (Fed. Cir. 2007). The Court therefore declines to exercise supplemental jurisdiction over Luminati's claim for tortious interference with employment agreements.

## II. Motion to Transfer Venue

Turning to BIScience's alternative motion to transfer venue pursuant to § 1404(a), the Court concludes BIScience has failed to demonstrate that the Southern District of New York is clearly more convenient than Luminati's chosen venue in the Eastern District of Texas.

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing by the movant "that the transferee venue 'is clearly more convenient' than the venue chosen by the plaintiff." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (quoting *In re Volkswagen*

11

*of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)). In making this determination the court considers certain public and private interest factors. *Id.*

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*; *Volkswagen*, 545 F.3d at 315. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Genentech*, 566 F.3d at 1342; *Volkswagen*, 545 F.3d at 315. Motions to transfer venue are to be decided based on the situation that existed when the suit was filed. *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).

## B. Discussion

BIScience, as a foreign corporation, is subject to suit in any judicial district for venue purposes. 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349, 1361 (Fed. Cir. 2018). Accordingly, while venue is proper before this Court, this action also could have been brought in the Southern District of New York. However, BIScience has failed to show that the Southern District of New York is a clearly more convenient forum.

As a preliminary matter, the Court addresses Luminati's allegations that the multiple declarations of Mr. Moyal, are deceptive and improper attempts to bolster BIScience's venue arguments.[2] (*E.g.*, Dkt. No. 73, at 1.) The Court disagrees with Luminati on both points. The Court

---

[2] Mr. Moyal submitted three declarations in support of BIScience's motions to dismiss. The first was submitted in support of the First Motion to Dismiss. (Dkt. No. 15-2.) The second was submitted in support of the Second Motion to Dismiss, and repeated much of the same information as the first declaration. (Dkt. No. 36-1.) The third declaration, filed along with BIScience's reply

accepts Mr. Moyal's explanation that BIScience's New York office address as stated in his first declaration contained a typographical error. (Dkt. No. 36-1 ¶ 4.) Nor does the Court fault BIScience for properly responding to Luminati's First Amended Complaint, which bolstered Luminati's venue arguments, by filing a Second Motion to Dismiss addressed to the new complaint that bolstered BIScience's own arguments in favor of venue in New York.[3]

However, the Court disagrees with BIScience that its presence in Manhattan is significant enough to tip the venue scales in its favor. BIScience has provided little information about the office it maintained at the time this action was filed, but what little information is available—including the membership agreement BIScience submitted as to its subsequently acquired space—indicates that this "office" was simply a single desk in a shared office space. (Dkt. No. 36-1 ¶ 4–6; 53-2.) The Court now turns to a specific analysis of the private and public interest factors.

### 1. Private Interest Factors

<u>Access to Sources of Proof.</u> BIScience argues that New York is a more convenient forum because its "New York office has *access* to relevant documentation." (Dkt. No. 36, at 11 (emphasis added).) Specifically, BIScience argues that relevant documents "can be securely accessed remotely and maintained in the New York office." (*Id.*) BIScience does not explain why this would be relatively easier than accessing documents remotely from anywhere else in the world, such as its home office in Israel or its counsel's offices in Tyler, Texas. Indeed, both of these locations

---

in support of the Second Motion to Dismiss, alerted the Court that BIScience had moved offices in New York (Dkt. No. 53-1), a possibility Mr. Moyal had already raised in his second declaration (Dkt. No. 36-1 ¶ 6).

[3] BIScience's Second Motion to Dismiss elaborated upon the arguments already made in its First Motion to Dismiss. As discussed above, the Court finds that BIScience did not improperly advance new arguments in violation of Rule 12(g).

would be a more convenient place to "securely access" documents than a desk in a shared office in Manhattan. The Court finds this factor is neutral.

Availability of Compulsory Process. Most of the relevant witnesses appear to be within the control of the parties, and those that are not reside in Israel. Neither party has identified potentially relevant witnesses that would be susceptible to compulsory process in one venue but not the other. This factor is neutral.

Cost of Attendance of Willing Witnesses. All of the relevant witnesses identified by the parties reside in Israel. While the Court recognizes the inconvenience of overseas travel, these "witnesses will be inconvenienced with international travel regardless whether this case is transferred." *Accuhale LLC v. AstraZeneca LP*, No. 6:11-cv-707-LED, 2013 WL 12322594, at *4 (E.D. Tex. Mar. 27, 2013). Thus, "these witnesses are discounted for the purpose of transfer analysis." *Id.*; *accord Bionx Implants, Inc. v. Biomet, Inc.*, No. 99 Civ. 740(WHP), 1999 WL 342306, at *3 (S.D.N.Y. May 27, 1999) (stating that witnesses traveling from Finland were no more inconvenienced by having to travel to Indiana than they would be traveling to New York); *Cento Grp., S.p.A. v. OroAmerica, Inc.*, 822 F. Supp. 1058, 1061–62 (S.D.N.Y. 1993) (European plaintiff was no more inconvenienced by litigating in California than in New York); *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 484 (D.N.J. 1993) (plaintiff's witnesses from Japan were no more inconvenienced by testifying in Minnesota than in New York). This factor is also neutral.

Other Practical Problems. "Where multiple and parallel lawsuits in two different jurisdictions are contemplated, judicial economy weighs heavily in the Court's transfer analysis." *ComCam Int'l, Inc. v. Mobotix Corp.*, No. 2:13-cv-798-JRG, 2014 WL 4229711, at *4. A related case currently pending before this Court, *Luminati Networks Ltd. v. UAB Tesonet*, No. 2:18-cv-299-JRG, also alleges infringement of the Asserted Patents. These cases "will present common

issues of law and fact, and judicial economy favors the avoidance of parallel litigation in multiple courts." *ComCam*, 2014 WL 4229711, at *4. This factor weighs against transfer.

## 2. Public Interest Factors

Administrative Difficulties Flowing from Court Congestion. The parties agree that that the average time to trial in the Southern District of New York is 29.4 months,10 months longer than the average time to trial in the Eastern District of Texas, which is 19.1 months. (Dkt. No. 36, at 15; Dkt. No. 44, at 23.) The congestion faced by the Southern District of New York, resulting in trial times more than 50% longer than in the Eastern District of Texas, weighs against transfer.

Local Interest. BISciences argues that this suit "calls into question the work and reputation of BIScience employees conducting business in the Southern District of New York," but BIScience has not identified these employees. (Dkt. No. 36, at 14.) There is no indication, either from the First Amended Complaint or BIScience's Second Motion to Dismiss, that the conduct of any consultant or employee in New York has been implicated by this case. Moreover, evidence that an Israeli company rents what appears to be a single desk in a shared office space in Manhattan does not create a local interest in this case being resolved in New York. Accordingly, the Court finds that this factor is neutral.

Remaining Factors. The Southern District of New York and Eastern District of Texas are both familiar with the federal law that will govern most of the claims in this case. The parties have not alerted the Court to any applications of state or foreign law that would bear upon either courts' relative familiarity with the governing law or any conflict of law issues. The Court finds that these factors are also neutral.

In summary, the Court finds that two of the relevant factors weigh against transfer, six are neutral, and none weigh in favor of transfer. The Court concludes that BIScience has failed to demonstrate that the Southern District of New York is a clearly more convenient forum.

Accordingly, the motion to transfer is denied. Consequently, Luminati's motion for venue discovery is denied as moot.

### III.    Motion to Dismiss for Failure to State a Claim

Having determined that the Court has personal jurisdiction over BIScience and that venue is proper in this district, the Court turns to BIScience's motion to dismiss for failure to state a claim. The Court finds that Luminati has stated a claim for trade secret misappropriation under the DTSA and a claim for false advertising under the Lanham Act.

#### A.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is "plausible on its face" where the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  However, the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.  To be legally sufficient, the complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. *Id*.  The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 255–57.  "In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). If it is apparent from the face of the complaint that an

insurmountable bar to relief exists, the court must dismiss the claim. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

### B. Discussion

#### 1. Trade Secret Misappropriation

BIScience argues that Luminati has failed to state a claim for misappropriation that is actionable under the DTSA because "Luminati fails to allege any conduct occurring in the U.S. relating to the alleged misappropriation," as required under the statute. (Dkt. No. 36, at 16.) Luminati responds that "the sale of [BIScience's] competing 'Geosurf' residential proxy service using [Luminati's] trade secrets causing harm to Luminati in the United States was clearly in furtherance of its misappropriation of Luminati's trade secrets," and thus such a claim is actionable under the DTSA. (Dkt. No. 44, at 6.)

The DTSA "applies to conduct occurring outside the United States if . . . an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837(2).[4] The statute does not define what constitutes "an act in furtherance of the offense." The parties have not identified any case law interpreting this language in the context of the DTSA, nor has the Court found any such case law. However, this language is not foreign to the common law but is regularly used in the area of federal conspiracy law. *See, e.g.*, *Yates v. United States*, 354 U.S. 298, 334 (1957) ("[T]he overt act must be found . . . to have been in furtherance of a conspiracy . . . ."); *Findlay v. McAllister*, 113 U.S. 104, 114 (1885) ("[T]o sustain the action it must be shown not only that there was a conspiracy, but that there were tortious acts in furtherance of it . . . .").

---

[4] The DTSA also applies to extraterritorial conduct if the offender is a U.S. Citizen, permanent resident, or an entity incorporated in the United States. 18 U.S.C. § 1837(1). It is undisputed that BIScience is an Israeli corporation, and therefore not subject to the DTSA via this provision. (*See* Dkt. No. 28 ¶ 2.)

"[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts . . . the meaning its use will convey to the judicial mind unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 263 (1952). As a result, the Court looks to the established common law meaning of "in furtherance of" when interpreting the extraterritoriality provision of the DTSA. 18 U.S.C. § 1837(2).

In *Yates*, the Supreme Court explained what it means for an overt act to be "in furtherance of" a conspiracy:

> It is not necessary that an overt act be the substantive crime charged in the indictment as the object of the conspiracy. Nor, indeed, need such an act, taken by itself, even be criminal in character. The function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work, and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence.

354 U.S. at 334. Applied to the DTSA, *Yates* makes clear that the act in furtherance of the offense of trade secret misappropriation need not be the offense itself or any element of the offense, but it must "manifest that the [offense] is at work" and is not simply "a project in the minds of the" offenders or a "fully completed operation." *Id.* Put another way, an act that occurs before the operation is underway or after it is fully completed is not an act "in furtherance of" the offense.

A civil claim for misappropriation of trade secrets under the DTSA requires: "(1) a trade secret; (2) misappropriation; and (3) use in interstate commerce." *N. Am. Deer Registry, Inc. v. DNA Sols., Inc.*, No. 4:17-CV-00062, 2017 WL 2120015, at *6 (E.D. Tex. May 16, 2017); *see also* 18 U.S.C. § 1836(b)(1). As relevant here, misappropriation is satisfied if disclosure or use of the secret is made without express or implied consent by a person who (1) used improper means to obtain the secret, or (2) at the time of the disclosure or use, knew or had reason to know that the knowledge of the trade secret was improperly obtained or acquired under circumstances giving rise to a duty to maintain its secrecy. 18 U.S.C. § 1839(5)(B).

Both sides have submitted evidence in support of their respective positions that acts "in furtherance of" misappropriation did or did not happen in the United States. BIScience's Second Motion to Dismiss includes a declaration from Mr. Moyal that all of the alleged occurrences supporting Luminati's misappropriation claim "took place between people in Israel. None of the allegations or alleged facts took place in Texas or anywhere in the United States." (Dkt. No. 36-1 ¶ 13.) Luminati responds with exhibits demonstrating that the former Luminati employees who possessed the alleged trade secrets attended conferences in Las Vegas. (Dkt. No. 44-4; Dkt. No. 44-5.) The Court disregards this evidence for purposes of resolving a motion to dismiss under Rule 12(b)(6) and considers only the allegations in the complaint, the documents attached or incorporated therein, and facts subject to judicial notice. *Willard*, 336 F.3d at 379.

The First Amended Complaint alleges that "Luminati's former employees employed Luminati's confidential trade secrets on behalf of [BIScience] in furtherance of the competing 'Geosurf' residential proxy service." (Dkt. No. 28 ¶ 16.) Luminati further alleges that "Luminati lost Texas and United States customers for its residential proxy service and associated revenues to [BIScience's] competing Geosurf service." However, "causing harm to Luminati in the United States" via lost customers is not enough to state a claim actionable under the DTSA. (Dkt. No. 44, at 6.)

Though damages caused as a result of misappropriation are relevant to a plaintiff's remedy, they do not constitute part of the offense itself. *Id.* § 1836(b)(3)(B); *see also id.* §§ 1836(b)(1), 1839(5). Accordingly, damages that occurred in the United States, standing alone, would not be acts "in furtherance of" misappropriation but rather would be the consequence of a "fully completed operation." *Yates*, 354 U.S. at 334.

19

However, Luminati also alleges that, by "using . . . [Luminati's] trade secrets, [BIScience] has committed acts in the State of Texas and the United States." (*Id.* ¶ 5.) The Court finds that this allegation is sufficient to draw a reasonable inference that BIScience used Luminati's trade secrets in the United States to sell its GeoSurf service, or at least committed acts in furtherance of such sales in the United States. Accordingly, Luminati has plausibly stated a claim actionable under the DTSA.

## 2. False Advertising

BIScience also argues that Luminati has failed to state a claim for false advertising under the Lanham Act because Luminati has not identified any false statements made by BIScience in commercial advertising. (Dkt. No. 36, at 17–18.) Section 43(a)(1)(B) of the Lanham Act provides in relevant part:

> Any person who . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

The Fifth Circuit has held that the elements for a false advertising claim under the Lanham Act are:

(1) a false or misleading statement of fact about a product;

(2) such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;

(3) the deception is material, in that it is likely to influence the consumer's purchasing decision;

(4) the product is in interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

BIScience argues that Luminati's allegations fail to clearly identify any false statements made by BIScience. (Dkt. No. 36, at 17–18.) To the contrary, Luminati attached two blog posts published on BIScience's website that each state, "Some proxy providers look great and fancy until you try to integrate them. Some—such as Luminati—are very difficult to integrate, as they require you to install complex proxy managers and to ultimately modify your entire solution." (Dkt. No. 28-3, at 3; Dkt. No. 28-4, at 7.) Luminati has alleged that these statements are false because "Luminati's residential proxy service does not require installation of Luminati's proxy manager." (Dkt. No. 28 ¶ 20.) Thus, Luminati has sufficiently alleged a false statement of fact about its products.

Additionally, BIScience disputes whether a "blog post on its website . . . constitutes false advertising." (Dkt. No. 36, at 18.) The Fifth Circuit has held that in order for representations to constitute "commercial advertising or promotion" under § 43(a)(1)(B) of the Lanham Act, they must be:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996). BIScience's blog posts meet these criteria.

The blog posts are commercial speech by a company that is in commercial competition with Luminati. They are also made for the purpose of influencing customers to use BIScience's GeoSurf service. Shortly after the allegedly false statements at issue, the blog posts continue: "In short, stay away from these proxies. Instead, go for easy-integration proxies that support whatever

21

your needs may be. **GeoSurf**, for instance, takes less than 5 minutes to integrate . . . ." (Dkt. No. 28-3, at 3 (emphasis in original); *see also* Dkt. No. 28-4, at 7.)

Finally, while company blog posts may not be traditional ads, they are a quintessential type of informal promotion. Luminati has alleged that BIScience has purchased advertisements on platforms such as Google that direct potential customers to BIScience's website—where these blog posts appear—when they search for terms like "luminati." (Dkt. No. 28 ¶ 20.) Thus, Luminati has alleged that these blog posts are disseminated sufficiently to the relevant purchasing public.

In sum, the Court finds that these allegedly false statements constitute advertising for purposes of the Lanham Act. Accordingly, Luminati has stated a claim for false advertising.

## Conclusion

For the reasons set forth herein, Luminati's Motion to Strike (Dkt. No. 40) is **DENIED**, and BIScience's First Motion to Dismiss (Dkt. No. 15) is **DENIED-AS-MOOT**. BIScience's Second Motion to Dismiss (Dkt. No. 36) is **DENIED-IN-PART** and **GRANTED-IN-PART**, as follows: BIScience's Second Motion to Dismiss is **GRANTED** in so far as it seeks dismissal of Luminati's claim for tortious interference with employment agreements; however, the remainder of BIScience's Second Motion to Dismiss, including the motion to transfer venue, is **DENIED**. Resultingly, Luminati's Motion for Early Venue Discovery (Dkt. No. 22) is **DENIED-AS-MOOT**.

So ORDERED and SIGNED this 13th day of May, 2019.

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

# EXHIBIT L

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LUMINATI NETWORKS LTD. | |
| Plaintiff, | |
| v. | Case No. |
| BI SCIENCE INC., | JURY TRIAL DEMANDED |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, Luminati Networks Ltd. ("Luminati") brings this action under the patent laws of the United States, Title 35 of the United States Code, and makes the following allegations against BI Science Inc. ("BI Science" or "Defendant"):

**THE PARTIES**

1.      Plaintiff Luminati is an Israeli company having a principal place of business at 3 Hamahshev St., Netanya 42507, ISRAEL.

2.      Upon information and belief, Defendant BI Science is an Israeli corporation headquartered at 6 Hanechoshet St., Tel Aviv, 6971070, ISRAEL.

**JURISDICTION AND VENUE**

3.      This is an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq*.

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over BI Science because it, directly or through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2).  On information and belief, BI Science transacts substantial business in the State of Texas, directly or through agents, including: (i) at least some of the infringement alleged herein in the United States occurring in Texas, and (ii) regularly does or solicits business in Texas, engages in other persistent courses of conduct, maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services provided in Texas.  For example, on information and belief, BI Science utilizes software, which is, *inter alia*, the subject of the infringement alleged herein, that routes internet communications through user devices having IP addresses serving as residential proxies located in the State of Texas, as well as this Judicial District, permitting BI Science to include user devices in this Judicial District as part of BI Science's residential proxy service.

6.      Following *Brunette Machine Works v. Kockum Industries, Inc.*, 406 U.S. 706 1972), venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because, upon information and belief, BI Science is a foreign entity.

## FACTUAL ALLEGATIONS

7.      Derry Shribman and Ofer Vilenski are the named inventors of a number of patents, including U.S. Patent Nos. 9,241,044 ("'044 Patent") and divisional 9,742,866 ("'866 Patent") (collectively the "Asserted Patents").

8.      The Asserted Patents are directed toward methods for fetching content over the Internet through the use of intermediary tunneling devices. Luminati identifies its patents on its

website at https://luminati.io/patent-marking#system-and-method-for-streaming-content-from-multiple-servers.

9.     The Asserted Patents were assigned to Hola Networks Ltd. ("Hola"). Hola has subsequently changed its name to Luminati Ltd., before changing its name to Luminati Networks Ltd., the Plaintiff in this action.

10.     Luminati, formerly known as Hola, provides a cloud service connecting tens of millions of devices over the Internet through a <u>proxy-based network</u>. Each participating device allows the network to utilize a small fraction of that device's idle time for the <u>network</u>. Luminati utilizes this network to provide proxy-based services to businesses.

11.     Since 2014, Luminati has offered proxy-based services relying on its <u>"Residential Proxy Network"</u> that practice one or more claims of the Asserted Patents. Luminati permits its business customers to utilize its residential proxy network to access data over the Internet using residential IP addresses from various localities as required by the customers. These residential IP addresses provide businesses with a number of advantages. For example, Luminati's customers may use this network to anonymously compare prices leading to more transparency and lower prices for consumers. Luminati's customer's may also use residential proxy addresses to test their web sites from any city in the world. Prior to and separate from the technology at issue in this case, Hola provided a Virtual Private Network ("VPN") service called HolaVPN.

12.     Luminati, formerly known as Hola, has a number of investor shareholders. One of these investors, iAngels Crowd Ltd. In Trust ("iAngels"), executed an Agreement to be Bound by an April 15, 2015 Amended and Restated shareholders Rights Agreement on July 14, 2015. This Agreement to be Bound was signed by Shelly Hod Moyal, founding partner of iAngels. As the representative for the shareholder iAngels, Ms. Moyal had access to Luminati confidential

information and know-how.  Upon information and belief, Ms. Moyal was aware of Luminati's intellectual property (including trade secrets and know-how), including the pending patent applications that resulted in the Asserted Patents.

13.    Upon information and belief, as a condition for iAngels to invest in Luminati, Ms. Moyal's husband, Kfir Moyal, conducted technical due diligence at Hola on behalf of iAngels in May 2015.  Upon information and belief, in this role Mr. Moyal also had access to Luminati's confidential information as well as Luminati's intellectual property (including trade secrets and know-how), including the then pending patent applications that resulted in the Asserted Patents and financial records regarding Luminati's residential proxy service.  Upon information and belief, Mr. and Ms. Moyal knew of the pending patent applications that resulted in the Asserted Patents and were aware of Luminati's commercial success resulting from its residential proxy network services.  Upon information and belief, Mr. Moyal did not disclose that BI Science had a residential proxy service or intended to offer a residential proxy service prior to or during the performance of due diligence on behalf of iAngels.

14.    Upon information and belief, Kfir Moyal and Assaf Toval, founded BI Science in 2009.  Upon information and belief, as early as October 14, 2014 Mr. Moyal approached Luminati as a purported customer seeking information regarding Luminati's residential proxy service.  Upon information and belief, BI Science subsequently tested Luminati's residential proxy service as part of a free trial.  Upon information and belief, at some time after Mr. Moyal became aware of the patent applications that resulted in the Asserted Patents and Luminati's commercial success with its residential proxy network services, BI Science decided to provide a residential proxy service. Upon information and belief, BI Science had decided to provide this service as early as May 2017 having estimated that switching to a residential proxy service from a server-based service could

dramatically reduce BI Science's ongoing server costs and provide BI Science with new revenue streams from this capability. Upon information and belief, BI Science introduced its own residential proxy service under the "GeoSurf" brand by July 2017.

15. Alon Ghelber, Samuel Levy, and Vadim Feldman each entered into a Personal Employment Agreement ("Employment Agreement") with Hola Networks Ltd., now known as Luminati, on December 18, 2014, March 1, 2015, and March 3, 2015 respectively. The terms of the Employment Agreement include a confidentiality provision obligating the employee to keep in confidence Luminati's proprietary information. The Employment Agreement also includes a non-compete clause prohibiting the employee from accepting employment with a company offering competing services within twelve months of the termination of employment with Luminati.

16. Luminati terminated employment of Mr. Ghelber and Mr. Feldman on February 2, 2017 and February 20, 2017 respectively. Mr. Levy terminated his employment with Luminati on February 8, 2017. These employees had access to Luminati confidential know-how and trade secrets, including client lists, client records, client data usage, accounts receivable documents, business plans, marketing research, technical documents related to the architecture of Luminati's residential proxy network, and related work product. Luminati's residential proxy service is intended for use in interstate or foreign commerce. Upon information and belief, BI Science subsequently hired these three individuals in 2017 within months of their termination by Luminati. Upon information and belief, BI Science hired Mr. Levy in May 2017 followed by Mr. Feldman in June 2017, which was approximately on or after BI Science decided to offer the residential proxy service. Upon information and belief, BI Science also hired Mr. Ghelber in 2017. Upon information and belief, BI Science hired these former Luminati employees despite the non-

compete clause of the Employment Agreements or was willfully blind to these former Luminati employees being subject to such a provision.  Upon information and belief, BI Science hired these former Luminati employees knowing them to be former Luminati employees with knowledge of Luminati's trade secrets including confidential information related to Luminati's residential proxy service.  Upon information and belief, BI Science hired these former Luminati salespeople for the purposes of selling BI Science's competing "Geosurf" residential proxy service.  Upon information and belief, the former Luminati employees have touted their experience with Luminati as part of their approach to Luminati clients offering the "GeoSurf" service as an alternative in competition with Luminati's residential proxy service.   Upon information and belief, Luminati's former employees employed Luminati's confidential trade secrets on behalf of BI Science in furtherance of the competing "Geosurf" residential proxy service. Upon information and belief, Luminati lost customers for its residential proxy service to BI Science's competing Geosurf service.

17.    By July 2017, Luminati learned that BI Science had hired its three former employees and started offering a residential proxy service through Geosurf.  On July 12, 2017, Mr. Vilenski sent an email to Ms. Moyal requesting that Ms. Moyal collect and provide information about Mr. Moyal's competing business, including its employment of Luminati's three former sales people.  Mr. Vilenski specifically noted that Mr. Moyal gained detailed information from Mr. Vilenski as an advisor to Ms. Moyal, without Ms. Moyal disclosing that Mr. Moyal is involved in or is running a competing business.  On August 14, 2017, Mr. Vilenski sent a follow-up email to Ms. Moyal demanding that Mr. Moyal stop providing residential proxy services through GeoSurf.

18.    On February 8, 2018, Or Lenchner, then VP of Luminati and currently Luminati CEO, sent a letter to Mr. Moyal informing Mr. Moyal that Luminati had become aware that BI Science was developing, using, offering for sale or selling products and services in the field of

VPN services based on residential IP peers, such as the GeoSurf service.  Mr. Lenchner notified BI Science that Luminati owns intellectual property within this field including specifically the '866 Patent attached to that letter in addition to other related patents and patent applications.  Mr. Lenchner invited BI Science to enter into licensing discussions to cover past and future use of this intellectual property by BI Science.  BI Science responded on March 8, 2018 in a letter from BI Science's outside counsel Asaf Biger.

19.     On April 16, 2018, Mr. Toval sent an email to Mr. Lenchner requesting a meeting to discuss potential licensing of Luminati's software patents, that resulted in a meeting on April 30, 2018.   On May 13, 2018, Mr. Lenchner sent a follow-up email with an attached request for information to promote licensing discussions.  Mr. Toval sent a response on May 31, 2018 indicating that BI Science was unable to provide such information.  Following additional efforts by Mr. Lenchner to propose a framework for a licensing agreement, Mr. Toval sent an email response on June 18, 2018 agreeing to review the framework and provide feedback, but BI Science has not done so.

20.     Upon information and belief, BI Science offers large-scale data harvesting products and services under the GeoSurf brand. https://www.GeoSurf.com/products/residential-ips/. Upon information and belief, this includes a residential proxy network with millions of residential IP addresses from more than 192 countries.  *id*.  Upon information and belief, the IP addresses of these residential proxies are assigned by a standard Internet Service Provider (ISP) to a homeowner or other residential or mobile user.  *id*.  Upon information and belief, this residential proxy network is used to access content over the Internet, wherein that content may be divided into portions, each of which includes part of the content and its own content identifier.



# USING MILLIONS OF RESIDENTIAL IPS WILL NEVER GET YOU BLOCKED

The World's most advanced solution for data harvesting, now offers residential IPs! Our Residential IPs are based on a P2P Network, which enables our clients the freedom to harvest the web by harnessing a pool of over 2 Million unblocked IPs.

Our inbuilt IP rotation API is tailor made for high scope & high-performance Enterprise level activities. This unique approach enables you to send unlimited parallel requests through millions of 100% verified working IPs; this means that you will never get blocked again.

https://www.GeoSurf.com/products/residential-ips/



## UNLIMITED CLEAN RESIDENTIAL IPS

Over 2Million clean residential IPs. Our IPs are never detected as proxies. This combination of proxy masking & residential IPs gives us the ability to stay undetectable.

https://www.GeoSurf.com/products/residential-ips/

### ✚ ❷ What is GeoSurf™?

GeoSurf™ is a straight-forward a premium proxy service which enables users to send requests via 3 networks:

- GeoSurf™ Residential IPs proxy network with more than 2 Million Residential IPs in every country and every city in the world.
- GeoSurf™ Premium Static proxy network with servers in 130+ global locations and 30+ DMA's.
- GeoSurf™ Static proxy network with more than 10K static IPs in 20+ global locations

GeoSurf™ products enable users to surf and view geo-targeted local content from other areas. It also emulates many mobile devices. The service is available as a browser toolbar, VPN client, Direct Connect API, Residential IPs API, and smart phone connection.

https://www.GeoSurf.com/resources/faq/#ac_15174_collapse1

## 🅐 State Gateway Overview

This Residential IP Gateway that allows you to choose State's IPs. This service is available for all 50 US states and Washington DC.

**How it works?**

• Authentication – The authentication is done in the same way as all other gateways, so, if your IP is white-listed in our system you can start using the State gateway immediately

• State selection – The State gateway allows you to choose from all states using "loc" proxy header.

• Session persistence – The state gateway allows you to maintain session persistence and open multiple session using the "X-Session" proxy header.

• Limits – Like all other GSR services you have unlimited number of requests/sessions or connections and unlimited concurrent connections.

• Gateway domain – state.geosurf.io

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15171_collapse4

## 🔍 Can I select an IP per city?

Yes, you can select an IP from all major US cities by using the City gateway. Check out GeoSurf Residential IPs Integration Guide for more information and request example. City IP is a premium feature, the city gateway's usage comes with a different pricing compared with your existing plan. Contact your customer success representative for additional information.

https://www.GeoSurf.com/resources/faq/#ac_15216_collapse4

## 🅐 City Gateway overview

This service is currently available for all major US cities and we will continue to add more and more cities in the near future.

**How it works?**

• Authentication – The authentication is done the same way as all other gateways, If your IP is whitelisted in our system you can start using the City gateway immediately.

• City selection – The city gateway allows you to choose from 100 US cities, each city has its own port range.

• Limits – Like all other GSR services you are unlimited with number of requests/sessions or connections, concurrent connections are limited to 20 per machine IP.

• Gateway domain – us-city1.geosurf.io

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15171_collapse1

Upon information and belief, some of these user devices serving as residential proxies (and associated with respective IP addresses) are located in the Eastern District of Texas.

21.     Upon information and belief, the residential proxy network used as part of the GeoSurf service is based upon numerous user devices, each of which is a client device identifiable over the Internet by an IP address.  Upon information and belief, a server ("First Server") is operated by BI Science and/or a third party having a contractual obligation to BI Science to implement residential proxy network requests sent by BI Science.  BI Science touts itself as owning all the servers in the GeoSurf network.  However, upon information and belief, BI Science may contract with a third-party, such as Jetstar Media and/or Microleaves Ltd., to implement its GeoSurf residential proxy network.  Upon information and belief, whether BI Science owns the First Server or contracts with a third-party to operate the First Server, BI Science directs and controls the First Server to implement the GeoSurf residential proxy service.

| ━ ❓ How secure and private is GeoSurf? |
|---|

Our network boasts the highest levels of reliability, availability, and security. Because we own all of the servers on our network and host them in Tier 1 backbone data centers around the world, all of our users experience a totally secure browsing experience. We sign legally binding agreements with our customers to ensure their privacy.

https://www.GeoSurf.com/resources/faq/#ac_15174_collapse5

22.     Upon information and belief, software ("Server Software") is executed that implements the GeoSurf service.  Upon information and belief, BI Science directs and controls the operation of the Server Software to the extent that the Server Software implements the GeoSurf service. For example, upon information and belief, BI Science can direct and control the GeoSurf service to select residential proxy devices located within a specific state or city and can determine

how long a given proxy device will be utilized for a given session, which is referred to as sticky residential IPs and session persistence.

---

**State Gateway Overview**

This Residential IP Gateway that allows you to choose State's IPs. This service is available for all 50 US states and Washington DC.

**How it works?**
• Authentication – The authentication is done in the same way as all other gateways, so, if your IP is white-listed in our system you can start using the State gateway immediately
• State selection – The State gateway allows you to choose from all states using "loc" proxy header.
• Session persistence – The state gateway allows you to maintain session persistence and open multiple session using the "X-Session" proxy header.
• Limits – Like all other GSR services you have unlimited number of requests/sessions or connections and unlimited concurrent connections.
• Gateway domain – state.geosurf.io

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15171_collapse4

---

**Can I select an IP per city?**

Yes, you can select an IP from all major US cities by using the City gateway. Check out GeoSurf Residential IPs Integration Guide for more information and request example. City IP is a premium feature, the city gateway's usage comes with a different pricing compared with your existing plan. Contact your customer success representative for additional information.

https://www.GeoSurf.com/resources/faq/#ac_15216_collapse4



The requests are made by {key:value} pairs. The key represents the GateWay and the value represents the actual IP.

In our dashboard you will see all the different configurations for high rotation, 1 minute, 10 minutes and 30 minutes persistent sessions.

The Sticky country  gateways can be found in your dashboard.

**Port ranges (value) are defined based on the following locig:**

10 minutes sticky port values: +0 – + 2000

30 minutes sticky port values: +4001 – + 6000

1 minutes sticky port values: +2001 – + 4000

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15062_collapse1

23.      Upon information and belief, each user device in the residential proxy network sends its respective identifier to the First Server, which stores these identifiers.  Upon information and belief, to the extent that BI Science has contractual relationship(s) with one or more third parties that provide server services, BI Science directs and/or controls these third-party servers to implement its residential proxy network for the GeoSurf service through the third-party servers and user devices included in the residential proxy network.  Upon information and belief, as part of the GeoSurf service, BI Science provides a device designated as a 'Gateway', which

authenticates the user devices of BI Science customers and controls the access and operation of requests and responses through the one or more third-party proxy residential networks directed and controlled by BI Science, and is in continuous communication with the Server Software.

**BROWSER & OS CONFIGURATION**



1. Open Windows Explorer.
2. Type in "Internet Properties"
3. Click on "connections" tab.
4. Navigate to "LAN settings"
5. Check the first checkbox under "Proxy server"
6. Click "Advanced"
7. Fill in your proxy address (ex: gw1.geosurf.io) and port (ex: 8020) under HTTP.
8. The "use the same proxy server" checkbox should be checked.
9. Click OK and Apply to save your proxy settings.
10. Go to ipinfo.io and verify the IP you got is from the desired country

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15054_collapse1

**— ⊙ Do you support authentication by IP?**

Yes, IP address of every device / Machine which uses Geosurf should be authorized. The IP can be easily managed from our dashboard, click here to login to your dashboard.

https://www.GeoSurf.com/resources/faq/#ac_15217_collapse4



https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15173_collapse6

**— ⓘ Are you getting 408 timeouts?**

If a significant portion of your requests is timing out ( 408 response code), there are a few reasons this could happen:

1. The network connection between you and our gateway or between the gateway and the IP is not stable.
   1. Try using another gateway (ex. gw2.geosurf.io) and see if it fixes the issue.
   2. Try switching an IP, simply end the session and make another request through our gateway (IP will rotate automatically)
2. The request you are making takes a long time to load.
   1. Increase the request timeout using a within the request header.
   2. Switch an IP.
3. The residential IPs has been blocked by the remote site.
   1. Although this rarely happens, switching an IP will resolve the issue.

If only a small percentage of your requests are getting a 408 response code, the optimal solution is to resend your requests with a short delay of at least 3 seconds in-between each request.

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15173_collapse3

24.     Upon information and belief, BI Science has developed or is developing the software to be used in the user devices as part of the GeoSurf service by integration with different third-party software applications, including at least GSA search engine ranker, Foxy Proxy, AIO

Sneakers Bot, EasyCopy sneakers bot, NikeSlayer, BretterNikeBot (BNB), Supreme Bot, Another Nike Bot, Sneaker Bot 2.0, and StubTabs.

**3RD PARTY SOFTWARE INTEGRATION**

| |
|---|
| ➕ ⚙️ Using Geosurf Residential IP proxy with GSA search engine ranker |
| ➕ ⚙️ Using Geosurf Geosurf Residential IP proxy with Foxy Proxy |
| ➕ ⚙️ Using Geosurf Residential IP proxy with AIO Sneakers Bot |
| ➕ ⚙️ Using Geosurf Residential IP proxy with EasyCop sneakers bot |
| ➕ ⚙️ Using Geosurf Residential IP proxy with NikeSlayer |
| ➕ ⚙️ Using Geosurf Residential IP proxy with BetterNikeBot (BNB) |
| ➕ ⚙️ Using Geosurf Residential IP proxy with Supreme Bot |
| ➕ ⚙️ Using Geosurf Residential IP proxy with Another Nike Bot |
| ➕ ⚙️ Using Geosurf Residential IP proxy with Sneaker Bot 2.0 |
| ➕ ⚙️ Using Geosurf Residential Proxy Network with StubTabs & ProxyTabs |

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15171_collapse4

25.   Upon information and belief, a GeoSurf customer may utilize the GeoSurf residential proxy network by sending a request ("First Request") from the GeoSurf customer's device through the GeoSurf Gateway, either of which could serve as the first device ("First Device"), to the above First Server, which responds by sending the IP address ("Second Identifier") corresponding to one of a group of client devices in the proxy network, any one of which may serve as a proxy device ("Second Device"), back to the First Device.

15

| — ⚙ US Residential 1 minute session persistence CURL example |
|---|

To use the USA residential session persistence, simply make a request to the USA sticky ips gateway (us-s1).

The port range is 10231 – 12231, each port will assign you with a new Sticky IP which can be accessed for 1 minutes.

**Example requests for a sticky residential IP in the United States:**

Curl -v –proxy us-s1.geosurf.io:10231"http://www.ipinfo.io"

Curl -v –proxy us-s1.geosurf.io:10232"http://www.ipinfo.io"

Curl -v –proxy us-s1.geosurf.io:10233"http://www.ipinfo.io"

…

Curl -v –proxy us-s1.geosurf.io:12230"http://www.ipinfo.io"

The process reloads every 30 min and assigns new IPs, even though the reload is very fast (less than 2 seconds) it is recommended to ping the gateway every 5 minutes for availability. Don't forget to whitelist your machine IP, see instruction

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15062_collapse2

26.     Upon information and belief, having received the Second Identifier, the First Device may then send a request ("Second Request") to the Second Device for specific Internet data ("First Content") identified by an identifier ("Content Identifier") from a target server ("Second Server") identified by its own identifier ("Third Identifier"), which is forwarded by the Second Device to the Second Server.  Upon information and belief, the target Second Server responds to the forwarded Second Request by sending the First Content to the Second Device, which is then forwarded back to the First Device.  Upon information and belief, to the extent that the requested content may be divided into portions or slices, the GeoSurf customer's device, which is a First Device, can construct the content from the plurality of Content Slices.



https://vimeo.com/250282014 (**Time: 00:47 sec to 01:20 sec**)



https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15173_collapse6



You should use Sticky IPs when you must run sequential requests to the target domain or website in a single session.

Examples: Running requests to several web pages from the same website, Navigating through several web pages using the same session etc.

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15172_collapse1

27.    The use of the residential proxy network permits anonymity to GeoSurf customers, for example for engaging in activities such as web crawling without disclosing the customer's identity to the targeted web sites.

## COUNT I
### (Infringement of the '044 Patent)

28.    Luminati repeats and re-alleges the allegations contained in paragraphs 1-26 of this Complaint as if fully set forth herein.

29.    The '044 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and Trademark Office on January 19, 2016, from Application No. 14/468,836 filed on August 26,

2014, claiming priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy of the '044 Patent is attached hereto as Exhibit A.

30.     Each and every claim of the '044 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

31.     Luminati exclusively owns all rights, title, and interest in and to the '044 Patent and possesses the exclusive right of recovery, including the exclusive right to recover for past infringement.

32.     Claim 81 of the '044 Patent recites:

Claim 81. A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:
(a) sending the first identifier to the first server;
(b) sending a first request to the first server;
(c) receiving the second identifier from the first server;
(d) sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier; and
(e) receiving the first content from the second device.

33.     As described above in paragraphs 19 to 22, upon information and belief, BI Science's proxy residential network used for the GeoSurf service comprises numerous devices each of which is identifiable by its own IP address ("identifier"), which are stored on servers through the execution of Server Software under the control and/or direction of BI Science. Consequently, BI Science's GeoSurf proxy residential network would comprise at least a First Device and a Second Device with their corresponding First Identifier and Second Identifier and a First Server.

34.     As described above in paragraphs 19-25, upon information and belief, this network would permit a user to access Internet content ("First Content"), identifiable by a content identifier

such as a URL ("First Content Identifier") from a target server ("Second Server"), identifiable by its own corresponding IP address ("Third Identifier").

35.     As described above in paragraphs 19-25, upon information and belief, the GeoSurf customer sends a request with its corresponding IP address to the GeoSurf Gateway which forwards the request to the "First Server."  At least the GeoSurf Gateway can serve as a "First Device" with the First Server storing the corresponding IP address ("First Identifier") of that "First Device."

36.     As described above in paragraphs 19-25, upon information and belief, a GeoSurf customer can utilize its device to send a request ("First Request") through the GeoSurf Gateway, with at least the Gateway serving as the first device ("First Device"), to the First Server, causing the First Server to respond by sending the Second Identifier back to the First Device.  Upon information and belief, a second request ("Second Request"), comprising a First Content Identifier and a Third Identifier to the Second Device, is then sent from the First Device to the Second Server using the Second Identifier.  Upon information and belief, the Second Server responds by sending the requested First Content to the Second Device, which is forwarded back to the First Device.

37.     Upon information and belief, BI Science has had actual notice of the '044 Patent since at least January 8, 2018, and has known, including by way of communications on and since that date and this lawsuit, that implementation of its GeoSurf residential proxy service would infringe at least claim 81 of the '044 Patent.

38.     BI Science has been and is now directly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 81 of the '044 Patent, by implementing its residential proxy service in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(a).

39.     BI Science has been and is now indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 81 of the '044 Patent, by providing this residential proxy service to its customers knowing that the use of such service infringes these claims in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(b).

40.     As a result of BI Science's infringement of the '044 Patent, Luminati has suffered and continues to suffer damages.  Thus, Luminati is entitled to recover from BI Science the damages Luminati sustained as a result of BI Science's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court under 35 U.S.C. § 284.

41.     Luminati has suffered damage because of the infringing activities of BI Science, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless BI Science's infringing activities are preliminarily and permanently enjoined by this Court.

42.     BI Science's infringement of the '044 Patent was, is, and continues to be deliberate and willful because BI Science was and is on notice of the '044 Patent at least as early as January 8, 2018, yet it continued and continues to infringe the '044 Patent.

**COUNT II**
(Infringement of the '866 Patent)

43.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-41 of this Complaint as if fully set forth herein.

44.     The '866 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and

Trademark Office on August 22, 2017 from Application No. 14/930,894 filed on August 22, 2017,

a divisional of Application No. 14/468,836 that issued as the '044 Patent, both of which claim

priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy

of the '866 Patent is attached hereto as Exhibit B.

45.     Each and every claim of the '866 Patent is valid and enforceable, and each enjoys

a statutory presumption of validity under 35 U.S.C. § 282.

46.     Luminati exclusively owns all rights, title, and interest in and to the '866 Patent and

possesses the exclusive right of recovery, including the exclusive right to recover for past

infringement.

47.     Claim 15 of the '866 Patent recites:

Claim 15. A method for fetching a content over the Internet from a first server
identified in the Internet by a second identifier via a group of multiple
devices, each identified in the Internet by an associated group device
identifier, the method comprising the step of partitioning the content into a
plurality of content slices, each content slice containing at least part of the
content, and identified using a content slice identifier, and for each of the
content slices, comprising the steps of:
(a) selecting a device from the group;
(b) sending over the Internet a first request to the selected device using the
group device identifier of the selected device, the first request including the
content slice identifier and the second identifier;
(c) in response to receiving the sent first request by the selected device,
receiving over the Internet the content slice from the selected device; and
wherein the method further comprising the step of constructing the content
from the received plurality of content slices, and
wherein each of the devices in the group is a client device.

48.     As described above in paragraphs 19 to 22, upon information and belief, BI

Science's GeoSurf proxy residential network comprises numerous devices, each of which is a

client device identifiable by its own identifier.  Upon information and belief, BI Science's GeoSurf

proxy residential network permits BI Science's customers to request content from the customer's

device through the GeoSurf Gateway, which forwards such requests through a server and proxy

residential user device ("Selected Device") to a target server ("First Server"), which is identifiable by its own IP address ("Second Identifier"). The Selected Device is selected from a group of client devices ("Group"), each of which has its own IP address ("Group Device Identifier".  As further described above, this content may be divided into portions ("Content Slices") identifiable by their own identifiers ("Content Slice Identifier").

49.     As described above in paragraphs 19-25, upon information and belief, the GeoSurf service permits the GeoSurf customer to select a proxy user device from the Group and send a request ("First Request") over the Internet to the Selected Device using the selected device IP address ("Group Device Identifier of the Selected Device").   This First Request includes the Content Slice Identifier and Second Identifier.

50.     As described above in paragraphs 19-25, upon information and belief, the above Selected Device responds to the First Request by sending the request to the First Server with the Content Slice Identifier.  The First Server responds by sending the requested Content Slice to the Selected Device, which forwards the Content Slice through the GeoSurf Gateway to the device of the GeoSurf customer, which is a client device.  The client device of the GeoSurf customer then constructs the content from the plurality of Content Slices.

51.     BI Science has had actual notice of the '866 Patent since at least January 8, 2018, and has known, including by way of communications on and since that date and this lawsuit, that implementation of its GeoSurf residential proxy service would infringe at least claim 15 of the '866 Patent.

52.     BI Science has been and is now directly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '866 Patent, by

implementing its residential proxy service in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(a).

53.     BI Science has been and is now indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '866 Patent, by providing this residential proxy service to its customers knowing that the use of such service infringes these claims in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(b).

54.     As a result of BI Science's infringement of the '866 Patent, Luminati has suffered and continues to suffer damages.  Thus, Luminati is entitled to recover from BI Science the damages Luminati sustained as a result of BI Science's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court under 35 U.S.C. § 284.

55.     Luminati has suffered damage because of the infringing activities of BI Science, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless BI Science's infringing activities are preliminarily and permanently enjoined by this Court.

56.     BI Science's infringement of the '866 Patent was, is, and continues to be deliberate and willful because BI Science was and is on notice of the '866 Patent at least as early as January 8, 2018, yet it continued and continues to infringe the '866 Patent.

### COUNT III
(Tortious Interference with Luminati's Employment Agreements)

57.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-56 of this Complaint as if fully set forth herein.

58.     Hola Networks Ltd., now known as Luminati, had entered into Employment Agreements with each of three former Luminati employees Alon Ghelber, Samuel Levy, and Vadim Feldman ("Former Luminati Employees"), which include confidentiality and non-compete clauses prohibiting each of the these employees from disclosing information confidential to Luminati and from accepting employment with a company offering competing services within twelve months of the termination of employment with Luminati.

59.     BI Science intentionally and willfully interfered with the Employment Agreements having hired the Former Luminati Employees shortly after termination of their employment by Luminati knowing that they had been employed by Luminati as salesmen for the Luminati residential proxy service.  BI Science knew or should have known that the hiring of the Former Luminati Employees to sell BI Science's competing Geosurf service caused the Former Luminati Employees to violate at least the non-compete clause of their Employment Agreements.

60.     Luminati has suffered damages and BI Science has been unjustly enriched as Luminati lost business to BI Science's competing GeoSurf service.  BI Science's interference with the Employment Agreements and hiring of the Former Luminati Employees was the proximate cause of this lost business.

**COUNT IV**
(Misappropriation of Trade Secret Under Federal Defense of Trade Secret Act)

61.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-61 of this Complaint as if fully set forth herein.

62.     Luminati takes reasonable measures to protect the confidentiality of valuable trade secrets related to its residential proxy service, including the requirement that its employees protect the confidentiality of Luminati trade secrets.  This non-public information has actual independent economic value derived from Luminati's experience in the residential proxy service field.

63.     Luminati's residential proxy service is intended for use in interstate or foreign commerce.

64.     Upon information and belief, BI Science misappropriated Luminati's trade secrets by hiring Luminati's former employees, knowing that each of them had access to Luminati's trade secrets related to Luminati's residential proxy service as well as a duty to preserve the confidentiality of Luminati's trade secrets, for the purpose of competing with Luminati's residential proxy service.

65.     Luminati has suffered damages and BI Science has been unjustly enriched as Luminati lost business to BI Science's competing GeoSurf service as a result of BI Science's misappropriation of Luminati's trade secrets.

66.     BI Science's misappropriation of Luminati trade secrets was willful and malicious.

67.     Luminati is entitled to recover the actual loss suffered by Luminati, any additional damages to account for BI Science's unjust enrichment, and exemplary damages as a result of BI Science's misappropriation of its trade secrets under 18 U.S.C. § 1836(b)(3)(B) and (C).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Luminati respectfully requests that this Court enter:

A.  A judgment that each of the Asserted Patents is valid and enforceable.

B.  A judgment in favor of Luminati that the Defendant has and is infringing the Asserted Patents;

C.  A judgment declaring Defendant's infringement to be willful.

D.  A judgment in favor of Luminati that the Defendant tortiously interfered with Luminati's Employment Agreements;

E.  A judgment in favor of Luminati that the Defendant misappropriated Luminati's trade secrets under 18 U.S.C. § 1836(b);

F.  A judgment and order for damages under 18 U.S.C. § 1836(b)(3)(B);

G.  A judgment and order for exemplary damages under 18 U.S.C. § 1836(b)(3)(C);

H.  A judgment declaring that this case is exceptional within the meaning of 35 U.S.C. § 285;

I.  A permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, associates, partners, customers, server owners and / or operators, and other persons who are in active concert or participation with BI Science, from infringing the Asserted Patents and/or such other equitable relief the Court determines is warranted in this case;

J.  A judgment and order requiring the Defendant to pay to Luminati its damages, enhanced damages, costs, expenses, prejudgment and post-judgment interest, and attorneys' fees, if applicable, for the Defendants' infringement of the Asserted Patents as provided under 35 U.S.C. §284 and/or §285, and an accounting of ongoing post-judgment infringement;

K.  Disgorgement of the amount by which BI Science has been unjustly enriched; and

L.  Any and all other relief, at law or in equity that this Court deems just or proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Luminati hereby demands a trial by jury of all issues so triable.

Dated:  November 08, 2018                    Respectfully submitted,


By: */s/ Korula T. Cherian*

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Korula T. Cherian
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702
Email: sunnyc@ruyakcherian.com

Attorneys for Plaintiff

# EXHIBIT M

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LUMINATI NETWORKS LTD. | |
| Plaintiff, | Case No.  2:18-CV-00483-JRG |
| v. | FILED UNDER SEAL |
| BI SCIENCE INC., | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, AND
IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.   PROCEDURAL HISTORY ...............................................................................2

III.  THE AMENDED COMPLAINT SHOULD NOT BE DISMISSED UNDER 12(B)(6),
      BECAUSE LUMINATI PROPERLY PLED ITS CLAIMS.............................4

      A.  Defendant No Longer Disputes that Plaintiff's Patent Infringement and Tortious
          Interference with Employee Agreements Claims Were Properly Pled .................................4

      B.  The Defense of Trade Secrets Act Covers Defendant's Misappropriation of Trade Secrets,
          Because Defendant Used the Trade Secrets to Sell the Competing Geosurf Service in the
          United States.................................................................................................5

      C.  Luminati Properly Pled All the Allegations Necessary for Its False Advertising Claim
          Under the Lanham Act. ..............................................................................7

IV.   DEFENDANT'S MOTIONS TO DISMISS FOR LACK OF PERSONAL
      JURISDICTION OR TO TRANSFER VENUE, IF CONSIDERED, SHOULD BE
      DENIED .........................................................................................................9

      A.  Background Facts ........................................................................................9

          1.  Accused Geosurf Service Is Directed Toward Texas.........................................9

          2.  BI Science's Allegation Of A Presence In New York Are Contradictory, Completely
              Unsupported By Facts, And Utterly Insufficient To Establish That Defendant Has An
              Office In New York City...................................................................11

      B.  The Court Has Personal Jurisdiction Over BI Science.........................................13

          1.  This Court has Personal Jurisdiction Over the Patent Infringement Claims, Because
              Defendant Directed Its Infringing Geosurf Service to Texas............................13

          2.  The Court Also Has Personal Jurisdiction under Fed. R. Civ. P. 4(k)(2), Because Neither
              New York, Nor Any Other State has General Personal Jurisdiction Over Defendant. .....16

          3.  The Court Has At Least Pendant Jurisdiction Over the Non-Patent Claims, Because
              They Share the Same Nucleus of Facts with the Patent Claims.......................17

      C.  BI Science Fails To Meet Its Burden For Its Motion to Transfer To New York ...............19

          1.  The Private Factors Disfavor Transfer ...................................................20

              a. The Relevant Sources of Proof Are In Israel .......................................20

              b. The Availability of Compulsory Process To Secure The Attendance of Witnesses Is
                 Neutral......................................................................................21

              c. Cost and Convenience For Witnesses Is Neutral....................................21

              d. All Other Practical Considerations, Including Judicial Economy, Strongly Disfavor
                 Transfer ....................................................................................22

2. The Public Factors Also Disfavor Transfer.........................................................................22

    a. The Administrative Difficulties Flowing From Court Congestion Strongly Disfavor Transfer ................................................................................................................... 22

    b. The Local Interest in Having Localized Interests Decided at Home ........................ 23

    c. The Remaining Public Interest Factors ..................................................................... 23

**V.   CONCLUSION** .........................................................................................................................**23**

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 4

*Autogenomics Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009) ......................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 4

*ConCam Int., Inc. v. Mobotix Corp.*, 2:13-cv-798 (E.D. Tex. Aug. 26, 2014) .......................... 22

*Daimler AG v. Bauman.*  571 U.S. 117 (2014) ................................................................ 16

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) ...................................... 4

*In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009) ......................................................... 20

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) .................................................. 20, 22

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017) ................................ 4

*Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) ............................................... 4

*NobelBiz, Inc. v. InsideSales.com, Inc.*, No. 6:13-cv-360 (E.D. Tex. Oct. 14, 2014) ................... 4

*Pizza Hut Inc. v. Papa John's Int'l Inc.*, 227 F.3d 489 (5th Cir. 2000) ................................. 7

*Roberts v. Paulin*, 2007 U.S. Dist. LEXIS 80490 (E.D. Mich. 2007) ...................................... 14

*Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp.2d 765 (N.D. Tex. 2008) ................................ 18

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005) ................................ 4

*Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:17-CV-00170-RWS, 2018 U.S. Dist. LEXIS
        79068 (E.D. Tex. Mar. 9, 2018) ................................................................... 7

*Tuna Processors, Inc. v. Anova Food, Inc.*, No. 07-6192-AA, 2007 U.S. Dist. LEXIS 81386 (D.
        Or. Nov. 1, 2007) ............................................................................... 15

*United States v. Kolon Indus., Inc.*, 926 F.Supp.2d 794 (E.D. Va. 2013) ................................ 5

**Statutes**

18 U.S.C. § 1837 ............................................................................................ 5

28 U.S.C. § 1404(a) ....................................................................................... 19

**Rules**

Fed. R. Civ. P. 4(k)(2) ............................................................................... 16, 17

## I.    INTRODUCTION

This is the second motion to dismiss or transfer filed by Defendant BI Science (2009) Ltd. (a.k.a. BI Science Inc.) ("Defendant" or "BI Science"), and it was filed while the jurisdictional and venue motions from the first motion to dismiss or transfer (Dkt. 15) were already fully briefed and awaiting the Court's disposition.  As a result, Plaintiff Luminati Networks Ltd.'s ("Plaintiff" or "Luminati") moved to strike the duplicative motions to dismiss for lack of jurisdiction or to transfer (Dkt. 40).

This motion also contains a Rule 12(b)(6) motion as to Luminati's misappropriation of trade secrets and false advertising claims, and that portion of the motion was permissibly refiled subsequent to Luminati's filing of an amended complaint (Dkt. 36).  However, the arguments made in it are incorrect, and that motion should be denied as well.  Luminati has pled its claims appropriately. Luminati pled specific facts supporting its trade secret misappropriation claim, and it identified with specificity the false statements in BI Science advertising as well as alleging facts that, if true, meet the other legal requirements for false advertising.  Therefore, the only procedurally appropriate part of the motion should be denied.

While Defendants' motion to dismiss for lack of personal jurisdiction or transfer venue is inappropriate and should be stricken, it is also as factually baseless as the first motion, and were the Court to consider it substantively, it should nonetheless deny these motions.  This Court has personal jurisdiction over the asserted patent claims, because BI Science directed its "Geosurf" service toward Texas by selling the service in Texas and advertising the use of proxy devices belonging to Texas Residents in ten Texas cities as part of its "Geosurf" service.  This Court also has at least pendant personal jurisdiction over the non-patent claims as they share the same nucleus of facts involving the sale of the same competing and infringing "Geosurf" service.

1

Defendant also has no basis to repeat its motion to transfer to the Southern District of New York as the First Motion to Dismiss/Transfer falsely identified BI Science as having a purported office on the sixteenth floor of a vacant fifteen-story building and the Second Motion to Dismiss/Transfer has provided no evidence beyond Mr. Moyal's bare assertions that BI Science sublets space in a second location and has two unnamed "employees (through consulting agreements)" that work in New York city, when in fact the second location does not list BI Science as an occupant and has no signage on the building or in the lobby indicating otherwise.[1]  In addition, this motion should be denied because there are no relevant sources of discovery in New York, judicial efficiencies favor retaining the case in Texas with the related Tesonet case, and the Courts in the proposed transferee district are far more congested.

Consequently, the Second Motions to Dismiss/Transfer should be denied.  However, to the extent that the Court entertains either motion, Plaintiff requests a ruling on its pending motion for venue discovery for limited discovery regarding Defendant's purported presence in New York and activities in Texas (filed at Dkt. 22).[2]

## II.   PROCEDURAL HISTORY

---

[1] Despite a pending motion for venue discovery (Dkt. 22) seeking, among other discovery, documentary evidence of BI Science's control of this office space and relationship with these unidentified purported "employees (through consulting agreements)," BI Science has provided no such discovery to Luminati nor attached such documentation to the Second Motion to Dismiss/Transfer. First Moyal Declaration at 4; Second Moyal Declaration at 5.  Without these agreements, Luminati cannot take a position on the relationship between BI Science and these two unnamed individuals, but based on Mr. Moyal's description they would appear to be no more than consultants at best and will be described as such herein.

[2] Despite the opening of discovery with yesterday's scheduling conference, this motion is still relevant as Plaintiff should not be forced to conduct a deposition of declarant Mr. Moyal as a matter of right under FRCP 30(a)(1) to secure limited venue discovery, only to require Plaintiff to later seek leave of the Court to depose Mr. Moyal under FRCP 30(a)(2) on the substantive issues of the case.

2

In Defendant's original motions to dismiss for lack of personal jurisdiction and alternative motion to transfer for *forum non conveniens* ("First Motion to Dismiss/Transfer", Dkt. 15) , BI Science submitted false representations regarding the location of its purported New York office supported by a declaration under oath from its CEO, Kfir Moyal ("First Moyal Declaration," Dkt. 15-2).  Luminati filed an opposition ("First Opposition," Dkt. 21 at 10-11), supported by a declaration from a licensed New York city investigator ("First Dell'Olio Declaration" Dkt. 21-9 at ¶¶ 3-9) showing the purported office to be located on the sixteenth floor of a vacant fifteen-story building, and a motion for venue discovery (Dkt. 22) including requests for documentation evidencing BI Science's control of the purported office, BI Science's relationship to the purported New York consultants, and a deposition of Mr. Moyal.  Despite having asked for and been given an extension, BI Science filed no reply in support of the First Motion to Transfer/Dismiss. Instead, BI Science filed only an opposition to the motion for venue discovery asserting incorrectly that all briefing following the original motion, including the motions challenging personal jurisdiction, requesting transfer of venue and venue discovery are mooted by the amended complaint. Dkt. 31.[3]

Less than a week after misleadingly asserting that the jurisdictional and venue briefing are moot in an apparent attempt to sweep its initial misrepresentations under the rug, BI Science filed its second motion to dismiss ("Second Motion to Dismiss/Transfer" Dkt. 36) attempting to reargue

---

[3] Luminati filed a prompt reply and notice (Dkts. 33 and 34) two days later providing case law to show that the mere filing of an amended complaint does not moot motions to dismiss under Fed. R. Civ. Pro. 12(b)(2), motions to transfer under 28 U.S.C. 1404 or motions for venue discovery.  Prior to BI Science's opposition, Luminati advised BI Science's counsel that the motions remained pending, sent counsel supporting case law, and advised BI Science that if it chose not to file a substantive reply that it was waiving its ability to file further pleadings on jurisdictional or venue grounds later.  Nevertheless, BI Science opted not to file any substantive response by the extended deadline.

3

the same jurisdictional and venue arguments already fully briefed in the First Motion to Dismiss/Transfer (which includes another declaration by the same declarant that made the first false representations under oath and further fails to show the existence a New York office, let alone one that would support BI Science's motion to transfer, *see* Section IV.A.ii, *infra*).

## III.   THE AMENDED COMPLAINT SHOULD NOT BE DISMISSED UNDER 12(B)(6), BECAUSE LUMINATI PROPERLY PLED ITS CLAIMS

Motions to dismiss for failure to state a claim are governed by regional circuit law. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376 (Fed. Cir. 2017). "In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) for failure to state a claim 'are viewed with disfavor and are rarely granted.'" *NobelBiz, Inc. v. InsideSales.com, Inc.*, No. 6:13-cv-360, Dkt. 32 at 1-2, (E.D. Tex. Oct. 14, 2014); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The Court must accept as true all facts alleged in a plaintiff's complaint, and the Court views the facts in the light most favorable to a plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a Rule 12(b)(6) motion if it includes facts sufficient "to raise a right to relief above the speculative level." *Id*. at 205 (quotations and citations omitted). In other words, the issue is whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

### A.   *Defendant No Longer Disputes that Plaintiff's Patent Infringement and Tortious Interference with Employee Agreements Claims Were Properly Pled*

In the Second Motion to Dismiss/Transfer, BI Science no longer disputes that Luminati's patent infringement, tortious interference with employee agreements and tortious interference with

current and prospective business relationship claims were properly pled.[4]  BI Science only disputes

the misappropriation of trade secrets claim and false advertising claim under FRCP 12(b)(6).

> **B.  The Defense of Trade Secrets Act Covers Defendant's Misappropriation of Trade Secrets, Because Defendant Used the Trade Secrets to Sell the Competing Geosurf Service in the United States.**

The Defense of Trade Secrets Act includes provisions specifically covering conduct

outside the United States by a foreign entity.  Pursuant to 18 U.S.C. § 1837, "[t]his chapter also

applies to conduct occurring outside the United States if (1) the offender is a natural person who

is a citizen or permanent resident alien of the United States, or an organization organized under

the laws of the United States or a State or political subdivision thereof; *or* (2) an act in furtherance

of the offense was committed in the United States." (emphasis added). "In enacting the trade secret

statutes, Congress plainly provided that their terms are applicable to foreign defendants where 'an

act in furtherance of the offense was committed in the United States.'"  *United States v. Kolon*

*Indus., Inc.*, 926 F.Supp.2d 794, 802 (E.D. Va. 2013).  Consistent with the clear language of this

section, an "act in furtherance of the offense" need not include every element of the offense, as

such an offense would otherwise already be covered by this chapter without the need for this

section.

Plaintiff alleges that BI Science misappropriated Luminati's trade secrets by hiring

Luminati's former employees, knowing that each of them had access to Luminati's trade secrets

---

[4] BI Science includes a single introductory sentence that lists "indirect infringement" among the other claims that BI Science is challenging under FRCP 12(b)(6) (Second Motion to Dismiss/Transfer at 15), but this appears to be in error as BI Science has otherwise dropped all briefing on this issue from the First Motion to Dismiss/Transfer and excluded this request for relief from its conclusion.  To the extent that this is not a typographical error, Luminati opposes such a motion as Luminati has met the pleading requirements for this claim as argued in the Opposition and the Second Motion to Dismiss/Transfer has not made any allegation to the contrary.

related to Luminati's residential proxy service" for the purpose of promoting BI Science's competing "Geosurf" service, including through sales in Texas and the  United States, causing harm to Luminati in the United States.  Amended Complaint at ¶¶ 65-66; see also ¶¶ 15-17, 59-61.  Luminati alleges, for example, that the former employees had access to "client lists, client records, client data usage, accounts receivable documents, business plans, marketing research, technical documents related to the architecture of Luminati's residential proxy network, and related work product."  Amended Complaint at ¶16. "Upon information and belief, Luminati's former employees employed Luminati's confidential trade secrets on behalf of BI Science in furtherance of the competing "Geosurf" residential proxy service.  Upon information and belief, Luminati lost Texas and United States customers for its residential proxy service and associated revenues to BI Science's competing Geosurf service."  *Id*.  BI Science is simply wrong when it asserts "Luminati fails to allege any conduct occurring in the U.S. relating to the alleged misappropriation."  Second Motion to Dismiss at 16.

BI Science's actions in the United States related to the sale of the competing "Geosurf" residential proxy service using these trade secrets causing harm to Luminati in the United States was clearly in furtherance of its misappropriation of Luminati's trade secrets.  As Defendant is well aware and Luminati previously asserted in its Opposition, these former Luminati employees did not exclude the United States from their "Geosurf" sales activities.  For example, Luminati's former employee Vadim Feldman posted a picture on Facebook of him in what appears to be a Geosurf-branded shirt at a convention in Las Vegas, Nevada in July 2018. Ex. 1.  Similarly, former employee Samuel Levy posted a notice on LinkedIn seeking to schedule meetings at the Affiliate Summit West 2019! Convention held in Las Vegas, Nevada.  Ex. 2.  Were the Court to find the allegations insufficient, Luminati requests leave to amend with additional facts, but based on the

6

pleading standards this should not be necessary.  As Defendant has furthered its misappropriation of trade secrets by selling the accused "Geosurf" service in the United States, Plaintiff may properly assert this claim and Defendant's motion should be dismissed.

### C. Luminati Properly Pled All the Allegations Necessary for Its False Advertising Claim Under the Lanham Act.

"The Fifth Circuit has held that the elements for a false advertising claim under the Lanham Act are: (1) a false or misleading statement of fact about a product; (2) such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue." *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:17-CV-00170-RWS, 2018 U.S. Dist. LEXIS 79068, at *30 (E.D. Tex. Mar. 9, 2018) (citing *Pizza Hut Inc. v. Papa John's Int'l Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)).  The allegations in the amended complaint align with these requirements.

BI Science cannot plausibly assert that it has not been put on notice of Luminati's false advertising claims with specificity that meets these pleading requirements.  Luminati clearly identified those advertisements of which Luminati is aware including the two BI Science blog posts attached as exhibits C and D to the Amended Complaint. Dkt. 28-3 and 28-4.  Referring to exhibit C, Luminati specifically alleged that "BI Science has made false and/or misleading statements regarding Luminati and Luminati's residential proxy service in advertising directed toward Luminati's customers" including for example "a blog post on its website titled 'Six Mistakes to Avoid When You Buy a Proxy' by Mr. Ghelber, Luminati's former employee, located on

7

BI Science's website at https://www.geosurf.com/blog/six-mistakes-to-avoid-when-you-buy-a-proxy/."  Amended Complaint at ¶ 20.

Luminati identified a specific false statement ("[s]ome proxy providers look great and fancy until you try to integrate them.  *Id.* Some – such as Luminati-are very difficult to integrate, as they require you to install complex proxy managers and to ultimately modify your entire solution").  *Id.* Luminati explained why it was false ("use of Luminati's residential proxy service does not require installation of Luminati's proxy manager").  *Id.* Luminati also alleged upon information and belief that Mr. Ghelber, who was a former Luminati salesperson, knew it to be false.  *Id.* These blog posts are designed to divert customers away from Luminati's service to BI Science's competing Geosurf service. The post ends with the bold pitch "Get your GeoSurf's Residential IP Proxy Network account today!" which is a link to allow a prospective customer to order the Geosurf service.  The same false statement was repeated in the second blog post.  *Id.* Luminati further alleged "[u]pon information and belief, BI Science has specifically targeted customers searching for Luminati in its advertising campaign for Geosurf, which directs prospective customers of residential proxy services to BI Science's website" and provided an image of such an advertisement.  *Id.* Luminati alleges, and there is no dispute, that "Geosurf" is a product in interstate commerce. By its very nature, this service is designed to allow a user to route requests through a proxy device located in a specific state or city, including ten cities in Texas.  "BI Science hired these former Luminati salespeople for the purposes of selling BI Science's competing "Geosurf" residential proxy service, including in Texas and the United States." *Id.* at ¶ 16. "Finally, Luminati alleged that it has suffered "commercial injuries as a direct result of BI Science's false statements directed to Luminati's customers regarding at least Luminati's residential proxy service." *Id.* at ¶ 73.  These allegations clearly meet the legal pleading standard for false advertising under the Lanham Act, and there is no basis to dismiss this claim.  Were the Court to disagree, Luminati

requests leave to amend with additional facts, but based on the pleading standards this should not be necessary.

## IV.   DEFENDANT'S MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR TO TRANSFER VENUE, IF CONSIDERED, SHOULD BE DENIED

The remainder of this opposition should be unnecessary—if the Court grants Luminati's motion to strike, that resolves the duplicative jurisdictional and venue arguments.  However, were the Court to entertain the second motion by BI Science on the same pending and fully briefed grounds, the second motion also fails.

### A.  *Background Facts*

#### 1.  <u>Accused Geosurf Service Is Directed Toward Texas</u>

In general, the asserted claims of the Asserted Patents (U.S. Patent Nos. 9,241,044 ("'044 Patent") and 9,742,866 ("'866 Patent")) are directed toward proxy services that permit a user to request content from a target server over the Internet via a proxy device, such as a third person's mobile device. By routing requests through a proxy device, these inventions permit a user to conceal its identity while the target server perceives the user to be a resident from a specific geographic location indicated by the residential proxy IP address.  The claims necessarily require (1) a first device such as a user or client device, (2) one or more proxy devices, and (3) a target server.

Plaintiff asserts that Defendant's residential proxy service known under the brand name "Geosurf" infringes Asserted Patent claims by providing a service that performs all the steps of the claims. Amended Complaint at ¶¶ 21-57. BI Science's customers also infringe the Asserted Patents by implementing the service. Amended Complaint at ¶ 26. As shown in the Amended Complaint, BI Science advertises "Geosurf" as a residential proxy service enabling users to send

requests to a target server over the internet via a pool of millions of proxy devices and specifically touts the ability to select proxies located within 10 specific cities in Texas: Arlington, Austin, Crowley, Dallas, El Paso, Fort Worth, Houston, Katy, San Antonio, and Spring.   Amended Complaint at ¶ 21; Ex. E at 2-3 (Dkt. 28-5).   In addition, at any given time "Geosurf" is believed to have a hundred or more residential proxies available in the Eastern District of Texas. Amended Complaint at ¶ 21. This service involves both Texas customers, who implement the service by activating Defendant's software through their user devices, and Texas residents, who implement the service through Defendant's use of their devices as proxy devices.   Complaint at ¶¶ 5, 21, 22 (explanatory text added in red below).



https://vimeo.com/250282014 (**Time: 00:47 sec to 01:20 sec**)



10

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15173_collapse6

Amended Complaint at ¶ 27.

      Defendant admits that it has multiple Texas customers currently utilizing this service, but ignores its reliance on Texas residents to provide the necessary residential proxy devices in Texas, despite Luminati making this same argument in the Complaint, Opposition, and Amended Complaint and specifically requesting discovery on the volume and number of Geosurf requests routed through Texas proxies. Second Motion to Dismiss/Transfer at 6. Defendant cannot deny that it is providing a service allowing customers located outside of Texas to specifically route internet requests and responses through the devices of Texas residents.

      2.   **BI Science's Allegation Of A Presence In New York Are Contradictory, Completely Unsupported By Facts, And Utterly Insufficient To Establish That Defendant Has An Office In New York City**

      After filing the First Motion to Dismiss/Transfer and First Moyal Declaration falsely stating that BI Science has an office at a first location in New York City and having asked the Court to wipe the slate clean by mooting all briefing, BI Science has provided a second declaration by Mr. Moyal ("Second Moyal Declaration," Dkt. 36-1 at ¶¶ 4-5) providing a different address for its purported New York office at a second location supposedly occupied by "2 employees (through consulting agreements)," neither of whom are identified, with pictures showing what appears to be an empty conference room (Dkt. 36-2, Ex. A), a receptionist area with approximately 143 mailboxes (Dkt. 36-3, Ex. B), and a large room with at least five rows of tables with at least 3-4 workstations/desks a piece (Dkt. 36-4, Ex. C).  These pictures do not show any signage for BI Science or other evidence that Defendant controls any portion of this office, much less a space where "some sales and marketing documents are located." (Dkt. 36-1 at ¶ 10).  Glaringly, despite Luminati's specific request for documentation showing Defendant's control over the purported

office and relationships with any purported employees residing in New York (Dkt. 22), BI Science provided no agreements or other such documentary evidence of BI Science's control of this space or employment of the two unnamed consultants.[5]

Mr. Dell'Olio, the licensed investigator who submitted the First Dell'Olio Declaration (Dkt. 21-9) showing the representations regarding the purported office in the original Motion to Dismiss and First Moyal Declaration to be false, has also investigated the purported BI Science office location identified in the Second Moyal Declaration, finding no signage for BI Science (2009) Ltd., BI Science Inc. or Geosurf outside the building or in the lobby and no listing for any of entities as occupants at this second location identified in the Second Moyal Declaration. Second Dell'Olio Declaration at ¶ 5. Mr. Moyal asserts that this office "is part of shared office space, and BI Science sublets its office space there." Dkt. 36-1 at ¶ 5. However, consistent with the pictures submitted as part of the Second Moyal Declaration, this location appears to simply be a shared office space where one can rent a desk for as little as $550/month. Ex. 4. http://www.coworkingnyc.info/places/build-grand-central-tech-midtown-west-335-madison-ave.html. Without any documentary evidence showing what exactly BI Science is "subletting" from whom, it appears that BI Science could simply be claiming a desk used by a purported

_____

[5] Neither Mr. Moyal nor BI Science have identified who these purported employees are, clarified how they are employees through consulting agreements, or provided the purported consulting agreements for these individuals. Luminati has been provided no information to allow it to investigate whether these individuals really are employees of BI Science or third-parties who provide consulting work and control the purported office space themselves. In addition, Mr. Moyal also asserts that BI Science is currently in process of leasing a different office location in New York City at yet a third location, but has not identified this location, and as with the purported current location, has provided no documentation evidencing BI Science's lease or control of this location. Dkt. 36-1 at ¶ 6. The only New York address on BI Science's website (https://www.biscience.com/) is at a fourth location, which BI Science admits is not an office, but merely a mailing address. Dkt. 36 at 1.

consultant as BI Science's New York office space.  If BI Science were a domestic entity, which it is not, it is doubtful that such evidence would be sufficient to establish a regular and established place of business under 28 U.S.C. 1400, much less the higher requirements necessary to consider for a motion to transfer to the Southern District of New York under 28 U.S.C. 1404(a).

### B.  The Court Has Personal Jurisdiction Over BI Science

A district court may exercise "specific personal jurisdiction over the defendant subject to a three-part test: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. With respect to the last prong, the burden of proof is on the defendant, which must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' under the five-factor test articulated by the Supreme Court in *Burger King*." *Autogenomics Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009).

### 1.  This Court has Personal Jurisdiction Over the Patent Infringement Claims, Because Defendant Directed Its Infringing Geosurf Service to Texas.

As discussed above, Defendant purposefully directs its activities at residents of Texas, both through Texas customers of the accused Geosurf service and the Texas residents whose devices serve as proxy devices for this service.  As admitted by Defendant, Plaintiff alleges that "BI Science utilizes software, which is, inter alia, the subject of the infringement alleged herein, that routes internet communications through user devices having IP addresses serving as residential proxies located in the State of Texas, as well as this Judicial District, permitting BI Science to include user devices in this Judicial District as part of BI Science's residential proxy service." Second Motion to Dismiss/Transfer at 6; Amended Complaint at ¶ 5.

The asserted infringement claims clearly arise or relate to BI Science's accused residential proxy service.  Amended Complaint at ¶¶ 21-57. Defendant admits that it has current and former

13

"GeoSurf" residential customers in Texas. Second Motion to Dismiss/Transfer at 7. As alleged in the Amended Complaint, Defendant and these customers practice the asserted claims *each time* they send a request from a client device in Texas through the Geosurf proxy service. Amended Complaint at ¶ 26, see also ¶¶ 21-57. Tellingly, Defendant provides no data showing the number of requests that each Texas customer submitted, but based upon Defendant's advertised prices, BI Science appears to charge about $10-$15/GB. Ex. 3. Estimating an average request to be about 20KB or about 50,000 requests/GB, and given that Defendant admitted to sales of approximately ███████████ in Texas, we can conservatively estimate more than ███████ or ██████ requests a month in Texas. First Motion to Dismiss/Transfer at 5.[6]

As previously addressed in the Opposition, Defendant's reliance on *Roberts v. Paulin* and *Tuna Processors, Inc. v. Anova Food, Inc.* for the proposition that "minimal sales in a forum state, *absent any purposeful activity focused on the state*, are insufficient to confer personal jurisdiction" is misplaced. Second Motion to Dismiss/Transfer at 7 (emphasis added). *Roberts* states that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet…. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of the computer files over the Internet, personal jurisdiction is proper." *Roberts v. Paulin*, 2007 U.S. Dist. LEXIS 80490, at *17 (E.D. Mich. 2007) (finding that defendant

---

[6] In the Second Motion to Dismiss/Transfer, BI Science now provides a lower total revenue that is specifically limited to the month of February 2019. Second Motion to Dismiss/Transfer at 7. Regardless of whether the previous average or the February data is used, we can safely estimate that Defendant's Texas customers are infringing the patents ██████████████████ a month.

did not direct her activities to Michigan where defendant did not make the product available in Michigan stores or feature Michigan on defendant's website); *see also Tuna Processors, Inc. v. Anova Food, Inc*., No. 07-6192-AA, 2007 U.S. Dist. LEXIS 81386, at *7 (D. Or. Nov. 1, 2007) (finding lack of personal jurisdiction in Oregon where only two products were purchased by Oregon residents through defendant's website and crucially defendant had no distribution network designed to bring its products into Oregon).  In contrast, BI Science has admitted to entering into service contracts with Texas residents that necessarily involve the "knowing and repeated transmission" of computer files over the Internet in Texas and between Texas and other venues. In addition, by offering a residential proxy service advertising its IP addresses in Texas, Defendant is purposefully focusing on Texas.  Also, as discussed above, BI Science is purposefully directing Internet communications through devices in Texas as an express feature of its "Geosurf service," which is touted on BI Science's website. Amended Complaint at ¶ 21; Ex. E at 2-3 (Dkt. 28-5).

The asserted claims clearly arise *or relate* to BI Science's advertised use of proxy devices belonging to Texas residents.  The asserted claims of the '044 Patent include the elements of "sending a second request to the second device," and "receiving the first content from the second device" where the second device is a proxy device including the above devices of Texas residents. Amended Complaint at ¶37, ¶¶ 21-27.  The asserted claims of the '866 Patent include the elements of "sending over the Internet a first request to the selected device…" and "receiving over the Internet the content slice from the selected device" where the selected device is a proxy device including the above devices of Texas residents.  Complaint at ¶¶ 50-51, ¶¶ 21-27.  Given that BI Science touts Texas proxy devices, Defendant's position that the use of proxy devices in Texas "is unrelated to any BIScience customer or user" is ridiculous.  Second Motion to Dismiss/Transfer at 6.

15

Defendant's assertion that it "never purposefully directed any aspect of its business operations to Texas" is simply not true.  Second Motion to Dismiss/Transfer at 8. Similarly, Defendant cannot credibly argue that assertion of personal jurisdiction is not reasonable and fair given that it actively provides the service to customers in Texas and advertises its service to non-Texas customers as allowing them to utilize residential proxies belonging to residents in Texas. With regard to the last prong, despite having the burden of proof, Defendant has put forth no argument that personal jurisdiction would not be reasonable and fair.  Consequently, personal jurisdiction is proper with regard to the patent infringement claims.

> 2.  <u>The Court Also Has Personal Jurisdiction under Fed. R. Civ. P. 4(k)(2), Because Neither New York, Nor Any Other State has General Personal Jurisdiction Over Defendant.</u>

In the alternative, Plaintiff asserted personal jurisdiction under Fed. R. Civ. P. 4(k)(2), which provides "for a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."  Amended Complaint at ¶5.  As discussed above in Section IV, Defendant has provided contradictory and unsupported facts that would not be sufficient to establish that BI Science has a regular and established place of business in New York, much less that it could meet the requirements for general jurisdiction in the New York.  At most, without any supporting documentary evidence, BI Science appears to allege that it sublets some space in a shared office in New York City, which may amount to renting a desk, where BI Science purportedly has two consultants.  Even assuming that these unsubstantiated representations are true, such ties are too tenuous and insubstantial to satisfy the requirements for general jurisdiction following *Daimler AG v. Bauman*.  571 U.S. 117, 127 (2014) ("a court may assert general

16

jurisdiction over foreign (sister state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state.")  Given Defendant's activities in Texas and without any evidence that the Southern District of New York has general jurisdiction over Defendant, this Court also has personal jurisdiction under Fed. R. Civ. P. 4(k)(2).

### 3. The Court Has At Least Pendant Jurisdiction Over the Non-Patent Claims, Because They Share the Same Nucleus of Facts with the Patent Claims.

The non-patent claims are similarly related to the infringement claims, specifically BI Science's sales activities related to its infringing "Geosurf" service, which BI Science admits selling to Texas customers and promoting as a service that uses Texas proxy devices. Plaintiff alleges that Defendant (a) tortiously interfered with Luminati's employee contracts with former salespeople of Luminati's residential proxy service, by employing them to sell BI Science's competing "Geosurf" service in Texas and the United States; (b) misappropriated Luminati trade secrets known to these former employees in the selling of the "Geosurf" service in Texas and the United States; (c) engaged in false advertising including the posting of a "Geosurf" promotional blog by one of the former Luminati employee with a false statement disparaging Luminati's residential proxy service; and (d) tortiously interfered with Luminati's business relationships by intentionally contacting Luminati current and prospective residential proxy service customers using Luminati's former salespeople and Luminati's trade secrets to prevent these relationships. Amended Complaint at ¶¶ 59-61, 65-66, 71-73; 76-78; see also ¶¶ 15-21.  All the claims are related through the sale and offers for sale of the infringing "Geosurf" service ties.

> "Upon information and belief, BI Science hired these former Luminati employees despite the non-compete clause of the Employment Agreements or was willfully blind to these former Luminati employees being subject to such a provision. Upon information and belief, BI Science hired these former Luminati employees knowing them to be former Luminati employees with knowledge of Luminati's trade secrets

including confidential information related to Luminati's residential proxy service. Upon information and belief, BI Science hired these former Luminati salespeople for the purposes of selling BI Science's competing "Geosurf" residential proxy service, including in Texas and the United States. Upon information and belief, the former Luminati employees have touted their experience with Luminati as part of their approach to Luminati clients offering the "GeoSurf" service as an alternative in competition with Luminati's residential proxy service. Upon information and belief, Luminati's former employees employed Luminati's confidential trade secrets on behalf of BI Science in furtherance of the competing "Geosurf" residential proxy service. Upon information and belief, Luminati lost Texas and United States customers for its residential proxy service and associated revenues to BI Science's competing Geosurf service." *Id.* at ¶ 16.

Luminati lost customers of its residential proxy service in Texas to BI Science's competing "Geosurf" service as a result of Defendant's actions that are the subject of Luminati's claims. Consequently, personal jurisdiction is proper, because elements of the claims, including the harm suffered by Plaintiff as a result of Defendant's tortious interference were committed in Texas.

In the alternative, to the extent that the Court does not find specific personal jurisdiction over the tortious interference claim, "[p]endant personal jurisdiction … exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp.2d 765, 783 (N.D. Tex. 2008). "[T]he exercise of pendent personal jurisdiction remains discretionary with the court." *Id.* at 784.

Here, all the non-patent claims involve overlapping allegations involving the former Luminati salesmen and the sale/promotion of the infringing "Geosurf" service that resulted in harm to Luminati in Texas and the United States. These non-patent claims share the same nucleus of facts with the patent claims, which includes Luminati's former employee salespeople selling or

18

offering to sell the infringing "Geosurf" service to prospective and current Luminati customers. Amended Complaint at ¶¶ 5, 20, 39-40, 53-54, 60-61, 65-66, 70.  BI Science cannot credibly argue that the tortious interference claims do not rise from the same set of facts as the patent infringement claims.  Second Motion to Dismiss/Transfer at 9.  Under either specific personal jurisdiction or pendant personal jurisdiction, the Court has personal jurisdiction over the tortious interference claim.

### C.   BI Science Fails To Meet Its Burden For Its Motion to Transfer To New York

As an alternative to dismissal, despite the still pending First Motion to Dismiss/Transfer, Defendant makes a new motion to transfer of this action to the Southern District of New York under 28 U.S.C. § 1404(a).  As discussed above in Section IV.A.ii, the motion to transfer in the First Motion to Dismiss/Transfer was based on Mr. Moyal's false representation that BI Science has an office on what turned out to be the sixteenth floor of a fifteen-story building.  This new motion is based upon Mr. Moyal's new representation that BI Science "sublets" what could be no more than a desk in a "shared space" at a second location in New York City where BI Science has two unnamed "employees (through consulting agreements)." Second Moyal Declaration at ¶ 5. As with the First Moyal Declaration, these representations are not supported by any sub-lease agreement or consulting agreements despite Luminati's pending motion for venue discovery seeking such. Instead, the Second Moyal Declarations include pictures of an empty conference room, over a hundred mailboxes, and a room which appears to be a large shared space with many rows of workstations, each of which appears to have at least 3-4 desks.  At best, these pictures are consistent with renting one of the desks advertised at $550 a month rather than office space. Ex. 4.  http://www.coworkingnyc.info/places/build-grand-central-tech-midtown-west-335-madison-

ave.html.  In addition, there is no signage for BI Science (2009) Ltd., BI Science Inc. or Geosurf outside the building or in the lobby and no listing for any of entities as occupants at this second location identified in the Second Moyal Declaration. Second Dell'Olio Declaration at ¶ 5.

Plaintiff does not dispute that this case could have been brought in the Southern District of New York, given that BI Science similarly directs its "Geosurf" service to customers and residents of New York, although Defendant only advertises half as many cities in New York compared to Texas as proxy locations.  Ex. E of Amended Complaint (Dkt. 28-5).  However, the Southern District of New York is not "clearly more convenient" than the Eastern District of Texas and this motion should be denied.  *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009).

### 1.   The Private Factors Disfavor Transfer

The private factors to be weighed in considering transfer are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  The private factors disfavor transfer.

### a.  *The Relevant Sources of Proof Are In Israel*

To the extent that evidence needs to be collected on site, the relevant sources of proof are in Israel for both parties.  As admitted by BI Science, "[t]he individuals referenced and identified in Plaintiff's Complaint ***all*** live and work in Israel, including Kfir Moyal, Assaf Toval, Alon Ghelber, Samuel Levy, and Vadim Feldman…"  Second Motion to Dismiss/Transfer at 12-13 (emphasis in original). At most, BI Science asserts that the purported "New York office has access to relevant documentation, such as documents regarding sales and marketing activity" without

asserting that any documents are actually stored at this purported shared space.[7] Id. At 11. Obviously, electronically stored documents can be accessed anywhere and certainly more conveniently at an actual office as opposed to a shared space such as a desk.  Consistent with the default protective order, Plaintiff anticipates source code being stored at the offices of outside counsel.  Consequently, this factor does not favor transfer.

> **b.**   *The Availability of Compulsory Process To Secure The Attendance of Witnesses Is Neutral*

While not addressed in Defendant's motion, neither District has an advantage in the availability of compulsory process to secure the attendance of witnesses.  This factor is neutral.

> **c.**   *Cost and Convenience For Witnesses Is Neutral.*

As previously addressed in the Opposition, Defendant mistakenly relies upon *Uniloc USA, Inc. v. Apple, Inc.* where the Court transferred an action to the Northern District of California stating "the Court finds that the significant number of both party and non-party witnesses in California have shown that the convenience of the witnesses weighs strongly in favor of transfer." Ex. B to Second Motion to Dismiss/Transfer (Dkt. 36-3) at 21.   In contrast, as admitted by Defendant, "[t]he individuals referenced and identified in Plaintiff's Complaint ***all*** live and work

---

[7] Where the Second Motion to Dismiss is ambiguous in referring to accessibility, the Second Moyal Declaration states "[s]ome sales and marketing documents are located in BI Science's New York office."  Second Moyal Declaration at 10.  Given the inconsistencies in Mr. Moyal's declarations, little weight should be given to this declaration absent an opportunity for the venue discovery requested in Luminati's pending motion for venue discovery (Dkt. 22), which includes a request for a limited deposition of Mr. Moyal.  Despite the opening of discovery with yesterday's scheduling conference, this motion is still relevant as Plaintiff should not be forced to conduct a deposition of declarant Mr. Moyal as a matter of right under FRCP 30(a)(1) to secure limited venue discovery, only to require Plaintiff to later seek leave of the Court to depose Mr. Moyal under FRCP 30(a)(2) on the substantive issues of the case.

Case 2:20-cv-03118   Document 50   Page 142   Filed 08/02/2021

in Israel, including Kfir Moyal, Assaf Toval, Alon Ghelber, Samuel Levy, and Vadim Feldman…"
Second Motion to Dismiss/Transfer at 12-13 (emphasis in original).  Any relative difference in
international travel time between Israel and Texas or New York is marginal. This factor does not
favor transfer.

> ### d.  All Other Practical Considerations, Including Judicial Economy, Strongly Disfavor Transfer

Defendant admits that "judicial economy" is a consideration to be considered under other
practical considerations, but ignores the fact that a case involving the same Asserted Patents is
already pending before this Court in *Luminati Networks Ltd. v. UAB Tesonet*, case no. 2:18-cv-
299-JRG.  With a claim construction hearing and jury selection already scheduled for July 24,
2019 and February 3, 2020, judicial economy favors keeping the action in Texas.  "Where multiple
and parallel lawsuits in two different jurisdictions are contemplated, judicial economy weighs
heavily in the Court's transfer analysis." *ConCam Int., Inc. v. Mobotix Corp.*, 2:13-cv-798, slip
op. at 7 (E.D. Tex. Aug. 26, 2014) (citing *In re Volkswagen*, 566 F.3d at 1351). These cases will
present common issues of law and fact, and judicial economy favors the avoidance of parallel
litigation in multiple courts disfavoring transfer.

> ## 2. *The Public Factors Also Disfavor Transfer*

The public factors to be weighed in considering transfer are: (1) the administrative
difficulties flowing from court congestion; (2) the local interest in having localized interest decided
at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the
avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *In re
Volkswagen AG*, 371 F.3d at 203.  The public factors also disfavor transfer.

> ### a.  The Administrative Difficulties Flowing From Court Congestion Strongly Disfavor Transfer

Defendant admits that the average time to trial in the Southern District of New York is 29.4 months or 10 months longer than the average time to trial in the Eastern District of Texas of 19.1 months.  Second Motion to Dismiss/Transfer at 15.  Clearly, this factor disfavors transfer.

### b.   The Local Interest in Having Localized Interests Decided at Home

Both Districts have the same interest in having this case decided locally as the case involves Defendant's infringing residential proxy service, which directs Internet requests through proxies located in both Districts.  Defendant's bogus argument that the Southern District of New York has an interest in this dispute because "[a]s alleged by Luminati, this suit calls into question the work and reputation of BIScience employees conducting business in the Southern District of New York" (Second Motion to Dismiss/Transfer at 14) is completely false as BI Science also admits that "[t]he individuals referenced and identified in Plaintiff's Complaint *all* live and work in Israel, including Kfir Moyal, Assaf Toval, Alon Ghelber, Samuel Levy, and Vadim Feldman…" (id. At 12-13, emphasis in original).

### c.   The Remaining Public Interest Factors

The remaining factors do not favor transfer either as the Eastern District of Texas has extensive experience with patent law cases.  These factors are at least neutral.

## V.   CONCLUSION

Luminati respectfully requests that the motions to dismiss and transfer be denied. However, to the extent that the Court entertains either motion, Luminati also requests a ruling on its pending motion for venue discovery, including (a) documentation showing Defendant's control over the purported office in New York and relationship with any purported employees residing in New York; (b) a deposition of Mr. Moyal limited to jurisdictional discovery and separate from the normal deposition anticipated during normal discovery under FRCP 30(a)(1); (c) documentation

23

showing Defendant's correspondence with entities located in Texas regarding "Geosurf"; and (d)

documentation and/or other written discovery showing the volume and number of Internet requests

initiated from or routed through Texas as part of the Geosurf service by month and year.


Dated:  March 19, 2019                         By: /s/ Ronald Wielkopolski
                                               S. Calvin Capshaw
                                               State Bar No. 03783900
                                               Elizabeth L. DeRieux
                                               State Bar No. 05770585
                                               Capshaw DeRieux, LLP
                                               114 E. Commerce Ave.
                                               Gladewater, TX 75647
                                               Telephone: 903-845-5770
                                               ccapshaw@capshawlaw.com
                                               ederieux@capshawlaw.com

                                               Korula T. Cherian
                                               Robert Harkins
                                               CA State Bar No. 179525
                                               RuyakCherian LLP
                                               1936 University Ave, Ste. 350
                                               Berkeley, CA  94702
                                               (510) 944-0190
                                               Email: sunnyc@ruyakcherian.com
                                               Email:  bobh@ruyakcherian.com

                                               Ronald Wielkopolski
                                               RuyakCherian LLP
                                               1700 K St. NW, Suite 810
                                               Washington, DC 20006
                                               Email: ronw@ruyakcherian.com

                                               Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

I hereby certify that the all counsel of record who are deemed to have consented to electronic service are being served this 19th day of March, 2019, with a copy of this document via electronic mail.

*/s/ Ronald Wielkopolski*

### CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that this document is being filed under seal pursuant to the Unopposed Motion for Leave to File Under Seal that is being filed concurrently with this Response.

*/s/ Ronald Wielkopolski*

# EXHIBIT N

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| v. | § | Case No. 2:18-CV-0483-JRG-RSP |
| | § | |
| BI SCIENCE INC. | § | |

## JOINT MOTION TO STAY ALL DEADLINES AND NOTICE OF SETTLEMENT

COME NOW, Plaintiff Luminati Networks Ltd. and Defendant BI Science (2009) Ltd.,

also known as BI Science Inc., (collectively, the "Parties"), and file this Joint Motion to Stay All

Deadlines and Notice of Settlement.  The Parties hereby notify the Court that all matters in

controversy between the Parties have been settled, in principle.  The Parties request that the

Court stay all deadlines in the case for thirty (30) days so that appropriate dismissal papers may

be submitted.

Dated:  February 23, 2020

By: */s/ Robert Harkins*
S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Korula T. Cherian
Robert Harkins
CA State Bar No. 179525
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702
(510) 944-0190

Email: sunnyc@ruyakcherian.com
Email: bobh@ruyakcherian.com

Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006
Email: ronw@ruyakcherian.com

Attorneys for Plaintiff

*/s/ Eric H. Findlay*
Eric H. Findlay (State Bar No. 00789886)
Brian Craft (State Bar No. 04972020)
Debby Gunter (State Bar No. 24012752)
Findlay Craft, P.C.
102 N. College Ave, Ste 900
Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com
dgunter@findlaycraft.com

COUNSEL FOR DEFENDANT BI SCIENCE

# EXHIBIT O

**Ron Wielkopolski**

---

| | |
|---|---|
| **From:** | Eric Findlay <EFindlay@FindlayCraft.com> |
| **Sent:** | Sunday, February 23, 2020 9:56 AM |
| **To:** | William Cornelius, Jr |
| **Cc:** | Calvin Capshaw; Sunny Cherian; Robert Harkins; Ron Wielkopolski |
| **Subject:** | Re: Luminati v BI |

Thanks for all your hard work Bill.

Sent from my iPhone

> On Feb 23, 2020, at 8:48 AM, William Cornelius, Jr <wc@wilsonlawfirm.com> wrote:
>
> Counsel, I am very pleased to report that the mediator's proposal has resulted in a settlement. Incorporated into that is the list of terms that Ron sent me yesterday, and that I provided to Eric. That list, of course, is modified in some respects by the terms of the proposal, including the most recent proposed language added to it this morning regarding ▮▮▮▮▮▮▮▮▮▮
>
> Unless you object, I will notify Judge Gilstrap of the settlement and request that he cancel Monday's hearing. I will tell him a motion to stay is forthcoming. I will advise if he wants it filed before he will cancel the hearing.
>
> Congrats to you all for getting this resolved.
>
> Best regards
>
> Sent from my iPhone

# EXHIBIT P

# REMAINS UNDER SEAL

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2020-2118, -2181, 2021-1664, -1667

**Short Case Caption:** Bright Data Ltd. v. BI Science (2009) Ltd.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✔] the filing has been prepared using a proportionally-spaced typeface and includes 4,877 words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/02/2021

Signature: /s/ Robert Harkins

Name: Robert Harkins

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2020-2118, -2181, 2021-1664, -1667

**Short Case Caption:** Bright Data Ltd. v. BI Science (2009) Ltd.

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains <u>108</u> number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☑ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 08/02/2021

Signature: /s/ Robert Harkins

Name: Robert Harkins