**2020-2118, -2181, 2021-1664, -1667**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## BRIGHT DATA LTD.,

### Plaintiff-Cross-Appellant

### v.

## BI SCIENCE (2009) LTD.,

### Defendant-Appellant

## BI SCIENCE INC.,

### Defendant.

**Appeals from the United States District Court for the Eastern District of Texas in No. 2:18-cv-00483-JRG, Chief Judge J. Rodney Gilstrap**

### APPELLANT'S NON-CONFIDENTIAL REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY ENFORCEMENT OF THE DISTRICT COURT'S ORDER AND FINAL JUDGMENT

Michael A. Charish
**Charish Law Group, P.C.**
347 Fifth Avenue, Suite 1402
New York, New York 10016
646.328.0183

John Christopher Rozendaal
William H. Milliken
**Sterne Kessler Goldstein & Fox PLLC**
1100 New York Avenue, NW
Washington, DC 20005
202.371.2600

*Counsel for Appellant BI Science
(2009) Ltd.*

Dated:  August 4, 2021

# TABLE OF CONTENTS

I.    The Court should reject Bright Data's attempt to avoid the merits. ...............2

II.   BI Science's proffered security is sufficient to protect Bright Data's rights. .5

III.  The relevant factors weigh strongly in favor of a stay. ..................................7

  A.    BI Science is likely to succeed on the merits. ......................................7

  B.    The equities favor a stay. .....................................................................10

IV.   Conclusion ..................................................................................................11

\*      \*      \*

## CONFIDENTIAL MATERIAL OMITTED

The redactions appearing on pages 1-10 in this non-confidential version of BI Science's reply in support its emergency motion relate to information derived from the district court's final judgment, which is currently under seal.  The parties have jointly moved the district court to unseal the final judgment and associated materials and are awaiting a decision on that motion.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*be2 LLC v. Ivanov*,
  642 F.3d 555 (7th Cir. 2011) ............................................................8

*Cox v. City of Dallas, Tex.*,
  256 F.3d 281 (5th Cir. 2001) ...........................................................4

*Datatreasury Corp. v. Wells Fargo & Co.*,
  522 F.3d 1368 (Fed. Cir. 2008) ........................................................9

*Nken v. Holder*,
  556 U.S. 418 (2009)..........................................................................1

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
  897 F.2d 511 (Fed. Cir. 1990) ..........................................................1

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*,
  395 F.3d 1275 (Fed. Cir. 2005) ........................................................8

**Other Authorities**

Fed. Cir. R. 8(c) ........................................................................1, 3, 5

**CONFIDENTIAL MATERIAL DELETED**

All four stay factors weigh heavily in favor of a stay, and Bright Data fails to show otherwise.  BI Science has a strong case on the merits.  It will be catastrophically and irreparably harmed absent a stay.  A stay will not harm Bright Data because BI Science has offered a security that — as evidenced by the very Final Judgment Bright Data seeks to enforce — will protect Bright Data's rights pending appeal.  And a stay will promote the public interest by avoiding disruption of BI Science's customers' services while this appeal is resolved.  Mot. 11-22.

The irreparable-harm factor is particularly compelling here.  BI Science has shown, and Bright Data does not dispute, that, if the Final Judgment is executed, BI Science will cease to exist as a going concern.  In other words: no stay, no appeal.  That is precisely the sort of situation in which a stay is warranted.  *Nken v. Holder*, 556 U.S. 418, 427 (2009); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 515-16 (Fed. Cir. 1990).

Bright Data's lead arguments in opposition (at 1) attempt to avoid the merits and instead simply request deference to the district court.  But BI Science first asked the district court for a stay *one year ago*.  Mot. 7.  BI Science comes to this Court now only because Bright Data, Information relating to sealed judgment, has obtained an ex parte order from an Israeli court that will result in the destruction of BI Science's business on August 16, 2021.  *Id.* at 2, 8-10.  BI Science can wait no longer for relief.  *See* Fed. Cir. R. 8(c).

**CONFIDENTIAL MATERIAL DELETED**

Bright Data's responses on the merits are equally unpersuasive. Bright Data primarily attacks the adequacy of BI Science's proffered security, asserting that Bright Data is instead entitled to Information relating to sealed judgment ▮. Bright Data's arguments for its proposed security are economically illogical and factually unsupported. BI Science's proposed security, in contrast, is premised on the Final Judgment itself, which Information relating to sealed judgment ▮.

Bright Data's rejection of the proposed security is telling. Bright Data is not simply trying to secure the benefit of a bargain it believes the parties reached; instead, it is attempting to use the Final Judgment as a vehicle to destroy one of its competitors before that competitor has an opportunity to have its appeal heard on the merits. The Court should grant the requested stay.

# I.    The Court should reject Bright Data's attempt to avoid the merits.

**A.**    Bright Data's lead argument (at 1, 8) — that BI Science waited too long to request a stay — is perplexing. After the district court ruled that the Mediator's Proposal constituted a binding settlement agreement and entered final judgment, BI Science immediately sought a stay pending appeal. Mot. Ex. C. That motion was filed nearly one year ago. After the district court entered the corrected Final Judgment, BI Science promptly filed a renewed motion to stay in

**CONFIDENTIAL MATERIAL DELETED**

April 2021 — four months ago.  The latter motion remains pending.  Mot. Ex. E.[1]

BI Science now seeks relief in this Court because it cannot wait any longer for the district court to rule.  For a year, Bright Data, ███████████████ ████████, has been attempting to enforce the judgment in Israel. Those efforts have now borne fruit: BI Science has been ordered to relinquish all its proxy-service customers by August 16, 2021.  BI Science has thus proceeded exactly as it is supposed to under Federal Circuit Rule 8(c).  It first sought relief in the district court, and it seeks relief from this Court only now that — as a result of ████ ████████████████████ — the situation has reached true emergency proportions.

Bright Data's two attempts to defend its decision to pursue enforcement of the Final Judgment in Israel (both of which it confines to footnotes) are meritless.

*First*, Bright Data's suggestion (at 4 n.3) that it would be impossible to enforce the Final Judgment anywhere *other* than Israel is belied by Bright Data's own actions.  In parallel with its Israeli enforcement efforts, Bright Data also attempted to enforce the Final Judgment in the district court via a motion for contempt.  Mot. 7.  And Bright Data's argument that it must pursue remedies in

───────────────────

[1] It is not clear whether the district court ever ruled on the first motion to stay.  At the July 2021 status conference, the magistrate judge stated that he viewed the Corrected Final Judgment as denying that motion.  But the language to which the magistrate judge referred — "███████████████████████ ████████████████████," Mot. Ex. A at 1-2 — also appeared in the *original* Final Judgment, and there it referred to an earlier motion to stay the proceedings while BI Science obtained substitute counsel.  Ex. K at 1-2; *see also* Ex. L at 3-4.

**CONFIDENTIAL MATERIAL DELETED**

Israel rings particularly hollow given that Bright Data *chose to file suit in Texas*.

Bright Data could have sued BI Science in Israel (where they are both located), but

instead it did so in Texas, where neither company has any presence.  Having made

that choice, Bright Data should not be permitted to ignore ████████████████

████████████████ that it does not like and enforce those it does.

    *Second*, Bright Data's arguments (at 8 n.4) about the New York Convention

are misplaced.  The Convention generally allows for enforcement of foreign

arbitral awards in signatory states.  But that general rule is superseded here by the

████████████████████████████████████████

████████████████████████.  The whole point of a court order is that it

requires an action that would otherwise be optional or forbids an action that would

otherwise be permissible.  *Cf. Cox v. City of Dallas, Tex.*, 256 F.3d 281, 288 (5th

Cir. 2001).  There is no "New York Convention carve-out" ████████████████.[2]

    **B.**    Bright Data next asserts (at 8) that BI Science's filing is premature

because the district court has not yet ruled on the stay motion. Setting aside this

argument's inconsistency with Bright Data's lead contention (that BI Science

waited too long), Bright Data again ignores that BI Science seeks relief in this

---

    [2] The magistrate judge's failure to "████████" Bright Data's enforcement
efforts at the emergency status conference, Opp. 4 n.3, is unilluminating given that
the propriety of those enforcement efforts was not then at issue.

**CONFIDENTIAL MATERIAL DELETED**

Court now because its business faces imminent destruction.  This is precisely the scenario Federal Circuit Rule 8(c) contemplates.

     **C.**    Bright Data's third argument (at 1, 5) — that BI Science's motion is somehow improper because "this case remains before the district court" — misunderstands the record. The Court stayed merits briefing to allow the district court to rule on the parties' joint motion to unseal the Final Judgment, Dkt. 44 at 2, but the Court did not remand the case. It therefore retains appellate jurisdiction and can (and should) decide BI Science's motion to stay.

**II.**    **BI Science's proffered security is sufficient to protect Bright Data's rights.**

     As explained in BI Science's motion (at 16-19), BI Science's proffered security is explicitly based on the Final Judgment.  The ▊▊▊▊▊▊▊ requires Information relating to sealed judgment ▊▊▊▊▊▊▊▊▊▊▊ and it ▊▊▊▊▊▊▊ ▊▊▊▊▊▊▊ That ▊▊▊▊▊ implies ▊▊ ▊▊▊▊▊▊▊▊▊ of which ▊▊ ▊▊▊▊▊ Taking into account ▊▊▊▊▊ ▊▊▊▊▊▊▊▊▊▊▊ ▊▊▊▊▊ That is the security BI Science has offered.

     Bright Data's contention (at 10-13) that it should instead receive ▊▊▊▊ ▊▊▊▊▊▊ is based on two implausible and unsupported

**CONFIDENTIAL MATERIAL DELETED**

assumptions.

The first assumption is that ██Information relating to sealed judgment██ would

████████████████████████ As BI Science's motion explains (at

18-19), that is highly unlikely.  On the contrary, the available evidence indicates

that ██Information relating to sealed judgment██ Bright Data has

no substantive response.  It simply asserts (at 19) (without support) that BI

Science's evidence is "unreliable."

The second assumption is that Bright Data would ██Information relating to sealed judgment██

████████ Bright Data offers no evidence (save for conclusory attorney

argument) supporting this highly implausible proposition.

In short, ██Information relating to sealed judgment██ are irrelevant to the proper security

amount.  *Contra* Opp. 10-13, 18-19.  The purported settlement agreement does not

██Information relating to sealed judgment██ It ████████

████████████████████████████████

████████████████████████.

Finally, Bright Data's citation-free contention (at 11) that the ████████

"is clearly only suited to ██Information relating to sealed judgment██" is belied by Bright

Data's own evidence.  The draft ████████ (which Bright Data says it

agreed to) provides that ██Information relating to sealed judgment██

**CONFIDENTIAL MATERIAL DELETED**

████████████████████████ Opp. Ex. B at 2 (emphasis added).[3]  And the final

████████████████ similarly contemplates that the ████████████████████████

███████████████████████████████████.  Mot. Ex. A at

5-6.  These provisions show that BI Science's proffered security will amply protect

Bright Data during the pendency of this appeal.

## III.    The relevant factors weigh strongly in favor of a stay.

### A.    BI Science is likely to succeed on the merits.

1.    BI Science is not subject to personal jurisdiction in Texas.  Mot. 11-

12; Br. 19-38.  BI Science's services are available equally to everyone around the

world; BI Science does not and has never targeted Texas or Texas residents

specifically.

Bright Data's only response (at 14) — that BI Science "promot[ed] its use of

Texas based proxies as part of its Proxy Service" — is misleading.  The document

Bright Data cites lists 100 cities across 37 states in which BI Science gateways are

available.  Ex. M at 3-4.[4]  That is hardly evidence of specific activity directed at

Texas, particularly given that BI Science has had only about fifty Texas customers

---

[3] That draft proposal also reflects that Bright Data wanted ████████████████
████████████████████, *see* Opp. Ex. B at 2, which suggests that even
Bright Data believed ████████████████████████ would be *lower* than the
amount of BI Science's proffered security.

[4] Bright Data did not attach this document to its opposition, so BI Science
attaches it here as Exhibit M.

## CONFIDENTIAL MATERIAL DELETED

throughout its entire existence.  Br. 22-23; *see be2 LLC v. Ivanov*, 642 F.3d 555,

559 (7th Cir. 2011) (no specific jurisdiction where 20 Chicago residents accessed

defendant's website); *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395

F.3d 1275, 1282 (Fed. Cir. 2005) (because defendants' interactive website was

"not directed at customers in the District of Columbia, but instead [was] available

to all customers throughout the country who have access to the Internet," "the

ability of District residents to access the defendants' websites" did not support

specific jurisdiction).  That this is the strongest evidence of purposeful availment

Bright Data can muster speaks volumes.

     **2.**     The purported settlement agreement is invalid.  Mot. 12-14; Br. 38-61.

As the history recounted in BI Science's motion (at 4-7) demonstrates, the

mediator's proposal that the district court deemed a binding settlement was nothing

of the sort.  At best, it was a tentative framework for settlement; at worst, it was a

hodgepodge of confusing and mutually contradictory terms whose actual content

was known only to the mediator Mr. Cornelius.[5]  Bright Data's own evidence

shows this quite clearly.  In an e-mail sent to the mediator (but not to BI Science),

Bright Data's counsel refers to a proposal that was " Information relating to sealed judgment

_____

    [5] Contrary to Bright Data's assertion (at 3 n.2), BI Science is not arguing "that it never saw the settlement agreement."  BI Science is arguing that it did not see the Mediator's Proposal *before Mr. Cornelius represented there was a settlement*.  Mot. 4-5; Mot. Ex. C at 8-9.  Bright Data has no response to BI Science's actual argument.

**CONFIDENTIAL MATERIAL DELETED**

█████" but tells the mediator that "██Information relating to sealed judgment██"

various *other* terms that had been previously discussed.  Opp. Ex. A at 1.

Perhaps the clearest example of the confusion is the contradiction between

Terms 10 and 12.  Term 12 ██Information relating to sealed judgment██

██.  Mot. Ex. A at 6.  Term 10, in contrast provides that "████████████

██Information relating to sealed judgment██

████████████████████"  *Id.* (emphasis added).  If BI Science

was supposed to ██████████████████, this term makes no sense.

*Contra* Opp. 15 n.6.

Bright Data next attempts to seek refuge in the standard of review, arguing

(at 17) that the district court's finding that there was a settlement agreement is

subject to clear-error review.  BI Science, however, has argued that Texas law

governs the enforceability of the mediator's proposal and that, under Texas law,

the proposal is categorically unenforceable because it was never signed.  Br. 39-53.

That is a legal issue, not a factual one.  *See also Datatreasury Corp. v. Wells Fargo

& Co.*, 522 F.3d 1368, 1371 (Fed. Cir. 2008) (Federal Circuit "review[s] the

district court's determination that the parties have contractually bound themselves

to arbitrate disputes de novo").

In any event, if a showing of clear error were required, BI Science has made

it.  Br. 53-61.  At the time Bright Data contends BI Science agreed to the

**CONFIDENTIAL MATERIAL DELETED**

Mediator's Proposal, BI Science *undisputedly had never seen it*. The district court's finding of a meeting of the minds was erroneous under any standard of review.

**B.     The equities favor a stay.**

Because BI Science's security will fully protect Bright Data's rights, Bright Data will not be harmed by a stay. BI Science, in contrast, will cease to exist if a stay is not granted. The balance of the equities could hardly be clearer.

Bright Data's primary response (at 17) is its unsupported contention that the destruction of its business "is likely to improve BI Science's financial situation." That is plainly wrong — continued operation is, by any accounting, preferable to corporate demise. And BI Science's CEO has explicitly rebutted this argument on multiple prior occasions. Ex. N (¶¶ 16-23). Bright Data's arguments here ring particularly hollow given its contentions elsewhere (at 10-11) concerning ██ Information relating to sealed judgment ████.

Bright Data's assumption that, if BI Science's appeal succeeds, Bright Data will succeed in showing patent infringement is likewise unfounded. BI Science has already successfully invalidated one of the asserted claims, and it intends to prevail on the remaining ones as well once this case proceeds on the merits.

Finally, Bright Data's arguments concerning the public interest (at 18-19) have merit only if there was in fact a settlement between the parties — which is

precisely the issue in dispute.  Bright Data should not be permitted to bootstrap its merits argument into a de facto abrogation of BI Science's appeal rights.

## IV.    Conclusion

The Court should grant the motion to stay.

Dated:  August 4, 2021                                Respectfully submitted,

                                                     /s/ *William H. Milliken*
                                                     John Christopher Rozendaal
                                                     William H. Milliken
                                                     **Sterne Kessler Goldstein**
                                                     **  & Fox PLLC**
                                                     1100 New York Avenue, NW
                                                     Washington, DC 20005
                                                     202.371.2600

                                                     Michael A. Charish
                                                     **Charish Law Group P.C.**
                                                     347 Fifth Avenue, Suite 1402
                                                     New York, New York 10016
                                                     646.328.0183

                                                     *Counsel for Appellant*
                                                     *BI Science (2009) Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2020-2118, -2181, 2021-1664, -1667 |
| **Short Case Caption** | Bright Data Ltd. v. BI Science (2009) Ltd. |
| **Filing Party/Entity** | Appellant BI Science (2009) Ltd. |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/04/2021

Signature:  /s/ William H. Milliken

Name:  William H. Milliken

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| BI Science (2009) Ltd. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Findlay Craft PC: Eric H. Findlay | Findlay Craft PC: Kelce S. Wilson | Love Law Firm PC: Gregory P. Love |
| Findlay Craft PC: Robert B. Craft | Liston Abramson LLP: Ronald Abramson | |
| Findlay Craft PC: Debra E. Gunter | Liston Abramson LLP: Mord M. Lewis | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Luminati Networks Ltd. v. BI Science (2009) Ltd., No. 2:19-cv-352 (E.D. Tex.) | BI Science (2009) Ltd. a/k/a BIScience Inc. v. Luminati Networks Ltd., IPR2020-00166 (PTAB) | |
| Luminati Networks Ltd. v. BI Science (2009) Ltd., No. 2:19-cv-397 (E.D. Tex.) | BI Science (2009) Ltd. a/k/a BIScience Inc. v. Luminati Networks Ltd., IPR2020-00167 (PTAB) | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF EXHIBITS

**Exhibit K** – Order and Final Judgment, Dkt. No. 220 (July 2, 2020)

**Exhibit L** – BI Science's Supplemental Notice Regarding Posting Security in Support of its Stay Motion, Dkt. No. 299 (July 16, 2021) (sealed version; redacted version filed at Dkt. No. 301)

**Exhibit M** – Blog Post, Exhibit E to Amended Complaint, Dkt. No. 28-5 (Feb. 19, 2019)

**Exhibit N** – Declaration of Kfir Moyal in Support of BI Science's Stay Motion, Dkt. No. 265-1 (Apr. 5, 2021) (sealed version; redacted version filed at Dkt. No. 266-1)

# Exhibit K
## Redacted in its entirety

# Exhibit L

Redacted version

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | Case No. 2:18-CV-00483-JRG |
| v. | § | |
| | § | ██████████████ |
| | § | |
| | § | |
| BI SCIENCE, INC., | § | |
| | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |


## BI SCIENCE'S SUPPLEMENTAL NOTICE REGARDING POSTING SECURITY IN SUPPORT OF ITS STAY MOTION

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................1

ARGUMENT ........................................................................................................................5

    I.     THE FINANCIAL IMPACT OF A STAY IS UNCERTAIN, IF NOT
         SPECULATIVE..........................................................................................5

    II.    BI SCIENCE'S SECURITY OFFER IS BASED ON THE FINAL
         JUDGMENT.................................................................................................8

    III.   BI SCIENCE'S PROPOSED SECURITY MORE THAN
         ADEQUATELY PROTECTS BRIGHT DATA. ...................................9

    IV.   BI SCIENCE WOULD DEPOSIT THE SECURITY FUNDS WITH THE
         COURT.......................................................................................................12

CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barton v. Resort Dev. Latin Am., Inc.*,
    413 S.W.3d 232 (Tex. App. 2013)...........................................................................5, 6

*Examination Mgmt. Servs., Inc. v. Kersh Risk Mgmt., Inc.*,
    367 S.W.3d 835 (Tex. App. 2012)...........................................................................5

*Holt Atherton Indus., Inc. v. Heine*,
    835 S.W.2d 80 (Tex. 1992)..................................................................................5, 6, 8

*Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*,
    877 S.W.2d 276 (Tex. 1994)..................................................................................6

**Rules**

Fed. R. Civ. P. 62(d) ..................................................................................................4, 12

**Other Authorities**

https://brightdata.com/ethical?_ga=2.121963723.1126896098.1625499181-
    959826282.1625152610#use-cases ........................................................................10

https://www.antipiracyforum.org/wp-content/uploads/2021/06/her2ap.png..................................2

*Bright Data Ltd. is financing illegal streaming piracy through embedded SDKs*,
    The Antipiracy Forum (June 28, 2021),
      https://www.antipiracyforum.org/brightdata-supports-piracy ................................11

## INTRODUCTION

Following the July 1, 2021 emergency status conference with the Court regarding defendant BI Science (2009) Ltd.'s motion to stay enforcement of the final judgment, BI Science respectfully submits this supplemental notice that it is prepared to post cash security as a condition of a stay. At the conference, BI Science and plaintiff Bright Data Ltd. committed to confer in an effort to reach agreement on security that would provide adequate protection to Bright Data if the Court granted a stay. If the parties were not able to reach agreement, BI Science committed to submit a unilateral offer of security. As the parties have not been able to reach agreement, BI Science hereby offers to deposit ███████ with the Court as security. In this submission, BI Science will summarize the background of the stay motion and the security issue. BI Science will then explain how its security offer is based on this Court's final judgment and is more than adequate to protect Bright Data's rights if the Court grants a stay — ████████████ ██████████████████████████.

## BACKGROUND

**BI Science's Stay Motions**

On August 12, 2020, BI Science filed a motion (Dkt. 234) to stay enforcement of this Court's Order and Final Judgment (Dkt. 220) pending appeal to the Federal Circuit. As BI Science explained in its stay papers, ███████████████████████████ ███████████████████████████████████████████. On February 1, 2021, the Court issued an Order and Corrected Final Judgment (Dkt. 254) (the "Corrected Final Judgment"). On April 5, 2021, BI Science filed a motion to stay the Corrected Final Judgment pending appeal (Dkt. 265).

**BI Science's Request for an Emergency Status Conference**

█████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████ (Dkt. 254, Ex. B at 1) —

Bright Data has prosecuted enforcement proceedings against BI Science in Israel, under Israeli

and international law. *See*, *e.g.*, Dkt. 273 (BI Science stay reply). On June 27, 2021, BI Science

learned that Bright Data obtained an *ex parte* order from Israel's Law Enforcement and

Collection System Authority (the "Israeli Enforcement Authority") for the appointment of a

receiver ███████████████████████████████████████████.

*See* Dkt. 287 (Israeli Enforcement Order). ████████████████████████

█████████, and so the next day (June 28), BI Science requested an emergency status

conference with the Court. *See* Dkt. 285.

**The Irreparable Harm to BI Science Begins**

On June 28, an organization called the Antipiracy Forum published a letter from Bright

Data admitting that damage to a proxy-service company's reputation with customers may be

irreparable: "In a sensitive and competitive market . . . **such damages may be irreversible**,"

Bright Data protested. *See* https://www.antipiracyforum.org/wp-

content/uploads/2021/06/her2ap.png (emphasis in original). That same day, BI Science pleaded

with Bright Data to postpone damaging BI Science's reputation with its customers at least until

this Court could hold a conference on the stay motion. Bright Data refused. *See*, *e.g.*, Dkt. 288

at 1 (BI Science Reply on Request for Emergency Status Conference). And so on June 30, the

day before the conference, the Israeli receiver e-mailed a letter to BI Science's proxy-service

customers notifying them that, on or after August 16, 2021, they will be transferred to Bright

Data.  *See* Dkt. 292-1 (letter).  ███████████████████████████

███████████████████.  See the accompanying Declaration of Kfir Moyal ¶¶ 4-8.  ███████

████████████████████████████████████.

**The Status of the August 2020 Stay Motion**



Dkt. 254 at 1-2.

*See* Dkt. 220 at 1-2 (judgment).  ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████.

**The Security Issue**

During the July 1 conference, the Court raised the issue of security under Federal Rule of Civil Procedure 62(d).  Rule 62(d) governs BI Science's stay motion ████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████.  Rule 62(d) provides that "[w]hile an appeal is pending from . . . [a] final judgment that grants . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  On the stay motion, Bright Data argued that the Court cannot grant a stay because BI Science has not posted a bond or other security.  *See*, *e.g.*, Dkt. 268 at 5-6 (Bright Data opposition).

BI Science responded that the Court retains discretion to grant a stay without security and that, in any event, Bright Data has obtained security through its enforcement litigation in Israel. The Israeli district court appointed a receiver and BI Science turned over its customer list to the receiver.  ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████  BI Science has complied with all of those orders.  *See*, *e.g.*, Dkt. 265-1 ¶¶ 31-32 (Moyal Declaration).  ███████████████████████████████████████ ████████████████████.  *See* Dkt. 287 (Israeli Enforcement Order).

At the July 1 conference, the Court decided that it would consider granting a stay only if BI Science provided additional security to protect Bright Data from financial consequences of a delay in enforcing the judgment. BI Science undertook to confer with Bright Data and, if the parties could not agree, to submit an offer of security as a condition for a stay.

## ARGUMENT

### I.    THE FINANCIAL IMPACT OF A STAY IS UNCERTAIN, IF NOT SPECULATIVE.

It is highly uncertain what — if any — financial consequences Bright Data would incur from a stay of the judgment. ██████████████████████████████████. Any future damages claim by Bright Data would necessarily take the form of a claim for lost profits, on a theory that, if BI Science had complied with the judgment sooner, Bright Data would have made more money.

As the Texas Court of Appeals has explained, "[l]ost profits are damages for the loss of net income to a business, reflecting income from the lost business activity, less expenses that would have been attributable to that activity." *Barton v. Resort Dev. Latin Am., Inc.*, 413 S.W.3d 232, 235-36 (Tex. App. 2013) (citing *Examination Mgmt. Servs., Inc. v. Kersh Risk Mgmt., Inc.*, 367 S.W.3d 835, 840-41 (Tex. App. 2012)). Therefore, the "calculation of lost-profit damages must be based on net profits, not on gross revenue or gross profits." *Id.* (citing *Examination Mgmt.* and *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 n.1 (Tex. 1992)) (emphasis added).

It is not easy to prove lost profits. As the Texas Supreme Court has held, plaintiffs claiming lost profits "must do more than show that they suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty." *Holt Atherton*, 835 S.W.2d at 84. Further, "[w]hat constitutes reasonably certain evidence of lost profits is a fact-

intensive determination. [At] a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Id.*

Moreover, "[p]rofits are largely speculative, not reasonably certain, and cannot be recovered, if they result 'from an activity dependent on uncertain or changing market conditions.'" *Barton*, 413 S.W.3d at 239 (quoting *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994)). Even where a plaintiff proffers a damages model constructed by an expert economist, if the projections in the model are questionable and the court finds that the plaintiff has not proven lost profits with reasonable certainty, the court should not award lost-profit damages. *See, e.g., Barton*, 413 S.W.3d at 236 (citing *Examination Mgmt.*).

In this case, there is no assurance that Bright Data has incurred, or will incur, any lost profits — and certainly no assurance that Bright Data could prove any lost profits with the requisite certainty. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████ *See, e.g.*, Corrected Final Judgment at 9. ████████████████████

████████████████████████████████████████████████████████. *See id.*

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

6



Dkt. No. 287, Exhibit B, at 2.

████████████████████████████████████████████████████████████████████

████████████████████████████████ *See id.*

## II.  BI SCIENCE'S SECURITY OFFER IS BASED ON THE FINAL JUDGMENT.

Although the financial impact of a stay is uncertain at best, and Bright Data has already obtained substantial protections in Israel, BI Science is prepared to post cash collateral to further protect Bright Data from any potential financial impact.  Given that Bright Data has no pending lost-profits claim ████████████████████████████████████, it would be unreasonable to ask this Court to undertake a "fact intensive determination" based on dueling damages models or other "objective facts, figures, or data from which the amount of lost profits [could] be ascertained." *See Holt Atherton*, 835 S.W.2d at 84.  That arduous determination is not necessary here ████████████████████████████████████████████

████████████████████████████████████████████████████. █

████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████. *See, e.g.*, Corrected Final Judgment at 6. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████t.

████████████████████████████████

█ ████████████████████████████████████████

█ ████████████████████████████████████████





The issue is what would protect Bright Data from the financial effects of a stay, which would be prospective. Nevertheless, BI Science's security offer is based on ███████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████. Accordingly, BI Science's proposed cash security of █████ protects Bright Data not only from the possible financial impact of a stay but also secures a possible retrospective claim by Bright Data for lost profits.

## III. BI SCIENCE'S PROPOSED SECURITY MORE THAN ADEQUATELY PROTECTS BRIGHT DATA.

BI Science's proposed cash security is more than adequate to protect any interest Bright Data may have in a contingent lost-profits claim that Bright Data has not proven and may never prove. Even if the Federal Circuit affirms the Corrected Final Judgment and Bright Data subsequently succeeds in proving lost profits with reasonable certainty, there are strong grounds for projecting that those lost profits will be lower than BI Science's security of ████████.



*See* Moyal Decl. ¶¶ 10-11.

*Id.* ¶ 12.

*Id.* ¶ 13; *see also id.* ¶¶ 5-12.

*See id.* ¶ 6.



*Id.* ¶ 8.

*See* Moyal Decl. ¶ 13.

. *See, e.g.*, Dkt. 269 at 2-3, 10.

.

Bright Data disputes that the security offer is adequate, but it has not meaningfully rebutted the premises underlying the foregoing calculation. And time is of the essence. █████



. Given the high degree of uncertainty and the stakes involved, BI Science submits that the Court should choose a security anchored in the judgment — as BI Science proposes — and not one divorced from it, as Bright Data would propose.

## IV. BI SCIENCE WOULD DEPOSIT THE SECURITY FUNDS WITH THE COURT.

Rule 62(d) contemplates an alternative to a supersedeas bond in authorizing the Court to grant a stay "on terms for bond *or other terms* that secure the opposing party's rights." Fed. R. Civ. P. 62(d) (emphasis added). ████████████████████████████████████████ ████████████████████████████████. If the Federal Circuit affirms the judgment, the cash security cannot simply be released to Bright Data because Bright Data has not yet filed — let alone proven — a damages claim. Accordingly, BI Science proposes to deposit ████ in trust with the court, on the following terms:

If (a) the Federal Circuit reverses the judgment, or (b) the Federal Circuit affirms the judgment but Bright Data does not file a lost-profits claim against BI Science within three months, the Court would return the funds to BI Science. Alternatively, if the Federal Circuit affirms the judgment and Bright Data files a lost-profits claim within three months, the funds would remain in trust until the final resolution of that claim and would secure the claim. BI Science would reserve its defenses against any lost-profits claim Bright Data may assert.

**CONCLUSION**

For the foregoing reasons, BI Science respectfully requests that the Court accept its offer

of a ███████ deposit with the Court as security for a stay and urgently grant a stay of the

Corrected Final Judgment pending appeal.


 Dated: July 16, 2021

                                          Respectfully submitted,

                                          By: /s/ *J.C. Rozendaal*

                                          Gregory P. Love
                                          Texas Bar No. 24013060
     Love Law Firm
     P.O. Box 948
     Henderson, Texas 75652
     Phone: (903) 212-4444
     Fax: (903) 392-2267
     greg@lovetrialfirm.com

     J.C. Rozendaal
     (admitted *pro hac vice*)
     Sterne Kessler Goldstein & Fox P.L.L.C.
     1100 New York Avenue NW, Suite 600
     Washington, D.C. 20005
     Phone: (202) 772-8747
     Fax: (202) 371-2540
     jcrozendaal@sternekessler.com

     Michael A. Charish
     (admitted *pro hac vice*)
     Charish Law Group P.C.
     347 Fifth Avenue, Suite 1402
     New York, New York 10016
     Phone: (646) 328-0183
     michael@charish.law

     *Attorneys for Defendant BI Science (2009) Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 16th day of July 2021, with a copy of this document via electronic mail.

/s/ *J.C. Rozendaal*
J.C. Rozendaal

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

/s/ *J.C. Rozendaal*
J.C. Rozendaal

# Exhibit M

# EXHIBIT E

## Residential IPs Integration Guide

Here you can find detailed information about GeoSurf™ Residential IPs integration. GeoSurf™ has an inbuilt IP rotation solution designed for easy integration. If you don't find the right documentation for your needs, please fill in the contact us form and one of our representatives will be in touch.

### BROWSER & OS CONFIGURATION

- 🖵 Internet Explorer, Chrome & Edge Browser
- 🖵 Mozilla Firefox
- 🖵 Android Proxy configuration

### API & EXAMPLES

- ⫝ PHP file_get_contents proxy example
- ⫝ PHP cURL proxy example
- ⫝ Python version 2.x proxy example
- ⫝ Python version 3.x proxy example
- ⫝ Ruby proxy example
- ⫝ Java global proxy example
- ⫝ Java apache HttpClient proxy example
- ⫝ Most simple CURL example
- ⫝ Node.js CURL proxy example - Random country selection

### STICKY RESIDENTIAL IPS AND SESSION PERSISTENCE

- ⚙ Session persistence overview
- ⚙ US Residential 1 minute session persistence CURL example
- ⚙ US Residential 10 minutes session persistence CURL example
- ⚙ US Residential 30 minutes session persistence CURL example
- ⚙ Germany (DE) Residential 1 minute session persistence CURL example
- ⚙ Germany (DE) Residential 10 minute session persistence CURL example
- ⚙ Germany (DE) Residential 30 minute session persistence CURL example
- ⚙ France (FR) Residential 1 minute session persistence CURL example
- ⚙ France (FR) Residential 10 minute session persistence CURL example
- ⚙ France (FR) Residential 30 minute session persistence CURL example
- ⚙ Great Britain (GB) Residential 1 minute session persistence CURL example
- ⚙ Great Britain (GB) Residential 10 minute session persistence CURL example

+ ⚙️ Great Britain (GB) Residential 30 minute session persistence CURL example

+ ⚙️ India (IN) Residential 1 minute session persistence CURL example

+ ⚙️ India (IN) Residential 10 minute session persistence CURL example

+ ⚙️ India (IN) Residential 30 minute session persistence CURL example

+ ⚙️ Thailand (TH) Residential 1 minute session persistence CURL example

+ ⚙️ Thailand (TH) Residential 10 minute session persistence CURL example

+ ⚙️ Thailand (TH) Residential 30 minute session persistence CURL example

## CITY & STATE GATEWAY

+ 🏠 City Gateway overview

– 🏠 Available Cities & Ports

Below is a list of all available cities, and their ports:

| CITY | STATE | STATE_ABBREVIATION | START_PORT | END_PORT |
|---|---|---|---|---|
| Albuquerque | New Mexico | NM | 8000 | 8019 |
| Arlington | Texax | TX | 8020 | 8039 |
| Athens | Georgia | GA | 8040 | 8059 |
| Atlanta | Georgia | GA | 8060 | 8079 |
| Auburn | Alabma | AL | 8080 | 8099 |
| Aurora | Colorado | CO | 8100 | 8119 |
| Austin | Texas | TX | 8120 | 8139 |
| Bakersfield | California | CA | 8140 | 8159 |
| Baltimore | Maryland | MD | 8160 | 8179 |
| Baton Rouge | Louisiana | LA | 8180 | 8199 |
| Beaverton | Oregon | OR | 8200 | 8219 |
| Bellevue | Washington | WA | 8220 | 8239 |
| Birmingham | Alabama | AL | 8240 | 8259 |
| Booneville | Mississippi | MS | 8260 | 8279 |
| Boston | Massachusetts | MA | 8280 | 8299 |
| Brooklyn | New York | NY | 8300 | 8319 |
| Buffalo | New York | NY | 8320 | 8339 |
| Charlotte | North Carolina | NC | 8340 | 8359 |
| Chicago | Illinois | IL | 8360 | 8379 |
| Cleveland | Ohio | OH | 8380 | 8399 |
| Colorado Springs | Colorado | CO | 8400 | 8419 |
| Columbia | South Carolina | SC | 8420 | 8439 |
| Columbus | Ohio | OH | 8440 | 8459 |
| Crowley | Texax | TX | 8460 | 8479 |
| Dallas | Texas | TX | 8480 | 8499 |
| Dayton | Ohio | OH | 8500 | 8519 |
| Decatur | Georgia | GA | 8520 | 8539 |
| Denver | Colorado | CO | 8540 | 8559 |
| Detroit | Michigan | MI | 8560 | 8579 |
| El Paso | Texas | TX | 8580 | 8599 |
| Fayetteville | North Carolina | NC | 8600 | 8619 |
| Fort Lauderdale | Florida | FL | 8620 | 8639 |
| Fort Worth | Texas | TX | 8640 | 8659 |
| Fremont | California | CA | 8660 | 8679 |
| Fresno | California | CA | 8680 | 8699 |
| Garwood | New Jersey | NJ | 8700 | 8719 |
| Glendale | California | CA | 8720 | 8739 |
| Harrisburg | Pennsylvania | PA | 8740 | 8759 |
| Henderson | Nevada | NV | 8760 | 8779 |
| Hollywood | California | CA | 8780 | 8799 |
| Honolulu | Hawaii | HI | 8800 | 8819 |
| Houston | Texas | TX | 8820 | 8839 |
| Indianapolis | Indiana | IN | 8840 | 8859 |
| Jackson | Mississippi | MS | 8860 | 8879 |
| Jacksonville | Florida | FL | 8880 | 8899 |
| Kansas City | Missouri | MO | 8900 | 8919 |

| CITY | STATE | STATE_ABBREVIATION | START_PORT | END_PORT |
|---|---|---|---|---|
| Katy | Texas | TX | 8920 | 8939 |
| Lansing | Michigan | MI | 8940 | 8959 |
| Lapel | Indiana | IN | 8960 | 8979 |
| Las Vegas | Nevada | NV | 8980 | 8999 |
| Lexington | Kentucky | KY | 9000 | 9019 |
| Los Angeles | California | CA | 9020 | 9039 |
| Louisville | Kentucky | KY | 9040 | 9059 |
| Macon | Georgia | GA | 9060 | 9079 |
| Madison | Wisconsin | WI | 9080 | 9099 |
| Memphis | Tennessee | TN | 9100 | 9119 |
| Miami | Florida | FL | 9120 | 9139 |
| Milwaukee | Wisconsin | WI | 9140 | 9159 |
| Minneapolis | Minnesota | MN | 9160 | 9179 |
| Nashville | Tennessee | TN | 9180 | 9199 |
| New Orleans | Louisiana | LA | 9200 | 9219 |
| New York | New York | NY | 9220 | 9239 |
| Newark | New Jersey | NJ | 9240 | 9259 |
| Oakland | California | CA | 9260 | 9279 |
| Oklahoma City | Oklahoma | OK | 9280 | 9299 |
| Omaha | Nebraska | NE | 9300 | 9319 |
| Orlando | Florida | FL | 9320 | 9339 |
| Philadelphia | Pennsylvania | PA | 9340 | 9359 |
| Phoenix | Arizona | AZ | 9360 | 9379 |
| Pittsburgh | Pennsylvania | PA | 9380 | 9399 |
| Pompano Beach | Florida | FL | 9400 | 9419 |
| Portland | Oregon | OR | 9420 | 9439 |
| Prescott Valley | Arizona | AZ | 9440 | 9459 |
| Princeton | New Jersey | NJ | 9460 | 9479 |
| Raleigh | North Carolina | NC | 9480 | 9499 |
| Richmond | Virginia | VA | 9500 | 9519 |
| Rochester | New York | NY | 9520 | 9539 |
| Rockvale | Colorado | CO | 9540 | 9559 |
| Sacramento | California | CA | 9560 | 9579 |
| Saint James | Missouri | MO | 9580 | 9599 |
| Saint Paul | Minnesota | MN | 9600 | 9619 |
| Salem | Massachusetts | MA | 9620 | 9639 |
| Salt Lake City | Utah | UT | 9640 | 9659 |
| San Antonio | Texas | TX | 9660 | 9679 |
| San Diego | California | CA | 9680 | 9699 |
| San Francisco | California | CA | 9700 | 9719 |
| San Jose | California | CA | 9720 | 9739 |
| Seattle | Washington | WA | 9740 | 9759 |
| Shreveport | Louisiana | LA | 9760 | 9779 |
| Spokane | Washington | WA | 9780 | 9799 |
| Spring | Texas | TX | 9800 | 9819 |
| St Louis | Missouri | MO | 9820 | 9839 |
| Stockton | California | CA | 9840 | 9859 |
| Tacoma | Washington | WA | 9860 | 9879 |
| Tampa | Florida | FL | 9880 | 9899 |
| The Bronx | New York | NY | 9900 | 9919 |
| Tucson | Arizona | AZ | 9920 | 9939 |
| Wallingford | Connecticut | CT | 9940 | 9959 |
| Washington | District of Columbia | DC | 9960 | 9979 |
| Wichita | Kansas | KS | 9980 | 9999 |

+ 🛡 Simple CURL example

+ 🛡 State Gateway Overview

+ 🛡 What is the benefit of using Proxy headers?

+ 🛡 Simple CURL example

**BEST PRACTICES – RESIDENTIAL IPS API**

+ ☑ When and Where Should I use Sticky IPs?

Residential IPs Integration Guide | GeoSurf       Page 4 of 4

Case 2:18-cv-01630-JCC  Case 2:18-cv-01630-JCC  Document 28-56  Document 28-56  Filed 09/14/19  Filed 03/05/2021  Page 4 of 4  PageID #: 1386

+ ☑ Choosing the correct sticky IPs time

+ ☑ When and Where should I use the High Rotation gateway?

### 3RD PARTY SOFTWARE INTEGRATION

+ ⚙ Using Geosurf Residential IP proxy with GSA search engine ranker

+ ⚙ Using Geosurf Geosurf Residential IP proxy with Foxy Proxy

+ ⚙ Using Geosurf Residential IP proxy with AIO Sneakers Bot

+ ⚙ Using Geosurf Residential IP proxy with EasyCop sneakers bot

+ ⚙ Using Geosurf Residential IP proxy with NikeSlayer

+ ⚙ Using Geosurf Residential IP proxy with BetterNikeBot (BNB)

+ ⚙ Using Geosurf Residential IP proxy with Supreme Bot

+ ⚙ Using Geosurf Residential IP proxy with Another Nike Bot

+ ⚙ Using Geosurf Residential IP proxy with Sneaker Bot 2.0

+ ⚙ Using Geosurf Residential Proxy Network with StubTabs & ProxyTabs

+ ⚙ Using Geosurf Residential Proxies With Insomniac Browser

### CONNECTION PROBLEMS

+ ⓘ Are you behind a firewall?

+ ⓘ Are you getting Connection Refused from AWS/EC?

+ ⓘ Are you getting 408 timeouts?

+ ⓘ Are you getting error code(-7) or (-3) when making an API request?

+ ⓘ Are you getting denied access errors?

+ ⓘ Do you have DNS leak issues?

# SIGN UP NOW

Start your experience with our GeoSurf Premium Proxy!

GET STARTED

# Exhibit N

Redacted version

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Case No. 2:18-CV-00483-JRG |
| v. | § | |
| | § | |
| BI SCIENCE, INC., | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF KFIR MOYAL
## IN SUPPORT OF BI SCIENCE'S STAY MOTION

**Introduction**

1.      I am a Co-Founder and the CEO of defendant BI Science (2009) Ltd. ("BI Science"). I live and work in Tel Aviv, Israel, where BI Science is headquartered.

2.      I submit this declaration in support of BI Science's motion to stay enforcement of this Court's February 1, 2021 Order and Corrected Final Judgment (Dkt. No. 254) (the "Corrected Final Judgment"), pending BI Science's appeal of the Corrected Final Judgment to the Federal Circuit.

3.      Unless otherwise indicated, I have personal knowledge of the facts contained in this declaration. I am over the age of 18 years and I am competent to testify to the truth of the facts herein if called upon to do so.



4.      The Corrected Final Judgment,

1



5.

6.

7.

8.

9. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████

10. ███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

11. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

**The Impact on BI Science of Enforcing the Judgment**

12.     If the Corrected Final Judgment ████████████████████████

████████████ were enforced against BI Science, I believe that the damage to our company

would be devastating and irreversible ██████████████████████████.

13. ██████████████████████████████████████

███████████████████████████████████████████

14.

15.

**Bright Data's Position Regarding the Impact on BI Science of Enforcing the Judgment**

16.     I have reviewed Bright Data's opposition to BI Science's prior stay motion (Dkt. No. 242).  On page 14 of that opposition, ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████  For a number of reasons, I believe that claim to be false.

17.     First, ██████████████████████████████████████████ ████████████████████████████████████

18.     As stated above, ████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████

19.     Additionally, ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████

20.     Furthermore, ██████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████

21. ████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████

22. Second, ████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

23. Third, ████████████████████████████████████████

██████████████████████████████████████

24. If the Corrected Final Judgment is stayed pending appeal, ████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████

**The Impact on Bright Data of Staying the Judgment**

25. On information and belief, I also expect that the economic consequences of the stay decision will be much less dramatic for Bright Data, which is the industry leader.

26. Bright Data has posted on the internet the July 2019 "Global IP Proxy Networks Market" report of consulting firm Frost & Sullivan (available at https://luminati.io/static/IPPN-

analysis-2019.pdf?md5=3109015-85e418b7).  According to the Frost & Sullivan report (at page

50) Bright Data's annual proxy-service revenue was approximately $40 million.  The report

states (at page 52) that GeoSurf's annual proxy-service revenue was approximately $8 million,

████████████████████     ███████████████████████████████
████████████████████████████████

      27.    As Bright Data has endorsed the Frost & Sullivan report by posting it on the

internet, I believe it is reasonable to assume that Frost & Sullivan's $40 million annual revenue

number for Bright Data is roughly accurate.  ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████

██████████████████████████████████

      28.    If the Corrected Final Judgment is enforced,  ██████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████.

      29.    ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████



I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 1, 2021

Kfir Moyal

**FORM 31. Certificate of Confidential Material**

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2020-2118, -2181, 2021-1664, -1667

**Short Case Caption:** Bright Data Ltd. v. BI Science (2009) Ltd.

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains ___15___ number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 08/04/2021

Signature: /s/ William H. Milliken

Name: William H. Milliken

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  2020-2118, -2181, 2021-1664, -1667

**Short Case Caption:**  Bright Data Ltd. v. BI Science (2009) Ltd.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✔]  the filing has been prepared using a proportionally-spaced typeface and includes  2,562  words.

[ ]  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ]  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/04/2021

Signature:  /s/ William H. Milliken

Name:  William H. Milliken