2020-2118, -2181, 2021-1664, -1667

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**BRIGHT DATA LTD.,**
*Plaintiff-Cross-Appellant*

**v.**

**BI SCIENCE (2009) LTD.,**
*Defendant-Appellant*

**BI SCIENCE INC.,**
*Defendant.*

Appeals from the United States District Court for the Eastern District of Texas in
No. 2:18-cv-00483-JRG, Chief Judge J. Rodney Gilstrap.

## APPELLEE'S NON-CONFIDENTIAL RESPONSE TO THE EMERGENCY MOTION FOR INJUNCTION TO ENFORCE THE COURT'S AUGUST 16, 2021 ORDER

Ronald Wielkopolski
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
ronw@ruyakcherian.com

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94704
(510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

August 25, 2021

*Counsel for Appellee and Cross-Appellant Bright Data Ltd.*

# **TABLE OF CONTENTS**

I.   **Background** ........................................................................................................ **2**

   A.   Settlement and Arbitration ................................................................ 2

   B.   Enforcement of Arbitration Award in Israel ..................................... 2

   C.   BI Science Appeals Final Judgment in Federal Circuit .................... 3

   D.   BI Science Circumvents the Israel Court By Filing this Motion in the Federal Circuit ...... 3

II.  **Argument** ...................................................................................................... **4**

   A.   The Principles of Comity Preclude a United States Appellate Court from Issuing an Injunction Against an Israeli Enforcement Proceeding that Has Been Confirmed By the Supreme Court of Israel ................................................................ 4

   B.   The Arbitration Award Has Been Separately Enforceable from the District Court Final Judgment Since April 29, 2020 Under the New York Convention ................................ 10

   C.   Proceedings to Enforce Arbitration Awards Are Conducted by the Local Authority in that Jurisdiction – Not the Jurisdiction of Origin ........................................... 12

   D.   BI Science Cannot Show the Required Vexatiousness to Support an Anti-Litigation Injunction ........................................................................................ 14

   E.   BI Science's Motion Threatens Comity and Should Be Denied .................... 17

   F.   BI Science's Motion for an Injunction Is Also Not Appropriate For the Same Reasons Addressed in Bright Data's Response to Appellant's Emergency Motion for Stay ....... 18

   G.   BI Science's Motion Seeks to Continue Delaying Enforcement While Avoiding the Payment of Any Security Protecting Bright Data's Rights ........................... 19

The redactions in this non-confidential version of Bright Data's Response to the Emergency Motion for Injunction to Enforce the Court's August 16, 2021 Order concern argument and evidence provided in briefing related to execution of the Settlement on page 1, 2, 19; terms of the Settlement Agreement on page 2, 19, 20.

# TABLE OF AUTHORITIES

## *Cases*

*Belize Soc. Dev., Ltd. v. Gov't of Belize*, 668 F.3d 724 (D.C. Cir. 2012) ..................................... 12

*Fertilizer Corp. of India v. IDI Mgmt., Inc.*, 517 F. Supp. 948 (S.D. Ohio 1981) ....................... 11

*Karaha Bodas Co. v. Negara*, 335 F.3d 357 (5th Cir. 2003) ................................................ passim

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ...................... 12

*Sanofi-Aventis Deutschland GMBH v. Genentech, Inc.*, 716 F.3d 586 (Fed. Cir. 2013) .............. 6

*Ukrvneshprom State Foreign Econ. Enter. v. Tradeway, Inc.*, No. 95-cv-10278-RPP, 1996 U.S. Dist. LEXIS 2827 (S.D.N.Y. Mar. 11, 1996) .......................................................................... 11

## *Other Authorities*

Article V(1)(e) ....................................................................................................... 11, 12, 13, 18

Appellant BI Science (2009) Ltd.'s ("BI Science's") Emergency Motion for an Injunction (the "Motion," Dkt. Nos. 60, 61) inappropriately asks this Court to interfere with and overrule the Supreme Court of Israel, and under principles of comity the motion should be denied.  BI Science wrongly asserts that Appellee and Cross-Appellant Bright Data Ltd. ("Bright Data") is disregarding the will of this Court.  Motion, at 3.  To be sure, Bright Data conducts itself in accordance with this Court's orders.  However, the arbitration award that BI Science seeks stayed is a private arbitration award that the Supreme Court of Israel confirmed with BI Science having exhausted its appellate rights in an April 21, 2021 Judgment (and that BI Science did not challenge or seek this Court's involvement with for many months until suddenly claiming there was an emergency).  The fact that the arbitration award is also referenced in the district court judgment is a red herring designed to confuse this Court into interfering with a foreign government's judicial system (an order of the Supreme Court of Israel regarding a private arbitration between two Israeli companies).  Such a request runs directly contrary to principles of foreign sovereignty, comity, and the provisions of the New York Convention ("Convention," 9 U.S.C. 301, *et seq.*).

Furthermore, there is no emergency here, as BI Science has already submitted statements under oath confirming that they agreed to ███redacted███ and would not be harmed so long as the ██redacted█ was in or after ██redacted██. BI

1

Science's Motion should be denied.

## I.     Background

### A. Settlement and Arbitration

To resolve the underlying litigation between the parties, BI Science entered

the February 23, 2020 settlement agreement ("Settlement Agreement"), which

included a provision to redacted regarding that agreement via private

redacted . Dkt. No. 51, at 2.  BI Science initially asked the District Court to delay

enforcement of the Settlement Agreement until January 2021 on grounds of

redacted .  See e.g. Dkt. 51, Exhibit P (March 25, 2020 Declaration from BI

Science CEO Kfir Moyal).  The District Court denied BI Science's request, but

instead found the Settlement Agreement to be the product of a meeting of the

minds and valid and ordered the Parties to redacted any disputes as the parties had

previously agreed in an redacted of the Settlement Agreement.  Dkt.

No. 51, Exhibit E.  Instead of filing for a writ of mandamus from this Court or

seeking other relief, BI Science participated fully in the subsequent arbitration,

briefing their positions for the arbitrator.  Dkt. No. 51, at 3.  This arbitration with a

private arbitrator resulted in an April 29, 2020 Arbitration Award ("Arbitration

Award").  Dkt. No. 51, Exhibit F, at 8–13.

### B. Enforcement of Arbitration Award in Israel

Bright Data entered the Arbitration Award in Israel for enforcement on May

2

27, 2020 consistent with the New York Convention.  Dkt. No. 51, Exhibit H at 1–2.  BI Science opposed enforcement in Israel, but after BI Science exhausted all its appellate rights through the Supreme Court of Israel, a June 21, 2021 decision was issued in Israel appointing a receiver to enforce the Arbitration Award.  Dkt. No. 51, Exhibit J.  This June 21, 2021 decision was issued over a year after the April 29, 2020 Arbitration Award.

### C. BI Science Appeals Final Judgment in Federal Circuit

Following the issuance of the Arbitration Award, the District Court issued a Final Judgment ("Final Judgment") on July 2, 2020, which incorporated by reference both the Settlement Agreement and Arbitration Award.  Dkt. No. 51, Exhibit F, at 1–2; Dkt. No. 51, Exhibit B, at 2–4.  The District Court subsequently issued a corrected final judgment on February 1, 2021 ("Corrected Final Judgement") [1] for reasons unrelated to the Settlement Agreement or Arbitration Award.  Both Parties filed appeals.  Dkt. No. 51, at 1.  Without providing any security to protect Bright Data's rights, BI Science filed a pending motion to stay enforcement of the Final Judgment in the District Court on August 12, 2020 with a renewed motion on April 5, 2021, neither of which have been granted.  *Id.* at 4.

### D. BI Science Circumvents the Israel Court By Filing this Motion in the Federal Circuit

---

[1] The Final Judgment was corrected to include the Court's finding of indefiniteness with regard to one patent claim.

Having exhausted its appellate rights in Israel and following the issuance of the June 21, 2021 decision in Israel appointing a receiver to enforce the Arbitration Award, BI Science filed an emergency request for a status conference on June 28, 2021 in the District Court followed by a July 16, 2021 Supplemental Notice proposing a security for the first time as part of its motion for stay.  Dkt. No. 51, at 5–6.  Ten days later on July 26, 2021, BI Science filed an emergency motion for a stay with this Court in which it asserted that BI Science "will cease to exist" as of August 16, 2021 if the judgment is not stayed by that date.  Dkt. 47 at 2.  However, BI Science did not file the Federal Circuit's August 16, 2021 Order with the Registrar in Israel and has not submitted any evidence that BI Science has ceased to exist or has otherwise been harmed.  On August 19, 2021, the Receiver in Israel filed an Application for Instructions, which BI Science characterizes as "Receiver's Motion," notifying the Registrar in Israel of the August 16, 2021 Order and requesting authorization to proceed with enforcement of the Arbitration Award.  Motion, at Exhibit 2.  On August 19, 2021, BI Science filed this Emergency Motion for an Injunction in the Federal Circuit, followed by a request in Israel on August 22, 2021 for permission to submit an objection to the Receiver's Application for Instructions.

## II.    Argument

*A. The Principles of Comity Preclude a United States Appellate Court from*

4

*Issuing an Injunction Against an Israeli Enforcement Proceeding that Has Been Confirmed By the Supreme Court of Israel*

As clarified in the August 20, 2021 Order, "the August 16, 2021 order temporarily stayed enforcement of the district court's February 1, 2021 final judgment, including the arbitration award, pending the district court's decision of the motion for a stay pending before it and this court's subsequent consideration of BI Science's motion to stay enforcement of the final judgment pending appeal." Dkt. 62 at 2. However, BI Science's request for an injunction from this Court regarding the Israeli proceeding is wholly improper. Motion at 5.

The Convention establishes procedure for consideration of the District Court's final judgment, the appeal, and the stay, and expressly rejects the position of BI Science—instead, leaving within the discretion of foreign jurisdictions like Israel if and when the Arbitration Award should be executed. Indeed, even if the Arbitration Award were completely and finally invalidated, the Convention *still* expressly leaves to the discretion of foreign courts whether to execute it, nonetheless. Article V(1)(e). The Convention describes precisely how parties and courts are to proceed in this situation (appeal and stay), and BI Science has chosen to simply ignore the law without justification. BI Science does not even attempt to explain why it cannot apply for adjournment in Israel pursuant to Article V(1)(e), as required by the Convention. BI Science should not be rewarded with an extremely unusual anti-suit injunction under the Convention for its own refusal to

5

abide basic international law and procedure, and supporting federal law.

The Motion never mentions the governing domestic law that supports and upholds international procedure pursuant to the Convention. *See, e.g.*, *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 364 (5th Cir. 2003) ("Although both the district court and the parties discussed all four prerequisites to the issuance of a traditional preliminary injunction, ***the suitability of such relief ultimately depends on considerations unique to antisuit injunctions***.") (emphasis added). Under the actual governing legal standard, BI Science has no basis to request an anti-suit injunction.

The issue presented is whether an anti-suit injunction should be granted, barring participation in international enforcement of an arbitration agreement under the Convention, even though "one of [the Convention's] main purposes was to . . . enable[e] parties to enforce [arbitration awards] in third countries *without first having to obtain either confirmation of such awards or leave to enforce them* from a court in the country of the arbitral situs." *Id.* at 366–67 (emphasis added).

As anti-suit injunctions are not unique to patent law, the law of the U.S. Court of Appeals for the Fifth Circuit governs the Motion. *Sanofi-Aventis Deutschland GMBH v. Genentech, Inc.*, 716 F.3d 586, 590–91 (Fed. Cir. 2013) ("The issue before us is whether an anti-suit injunction should issue, which is not unique to patent law."). The Motion wholly misstates or ignores that governing

6

law. *Karaha*, 335 F.3d at 364.

The analysis of the Fifth Circuit in *Karaha*, 335 F.3d at 373–74, is directly

on point, and it compels denial of the instant Motion. *Karaha* was an extreme

case, concerning seeming vexatiousness, bad faith, and forum-shopping under the

Convention. Nonetheless, the Fifth Circuit held that an anti-suit injunction in the

context of the Convention would "clash with the general principle that a sovereign

country has the competence to determine its own jurisdiction and grant the kinds of

relief it deems appropriate." *Id.* at 372–373. If the facts in *Karaha* do not support

an anti-suit injunction in the context of the Convention, *a fortiori* the facts here do

not permit of an injunction either.

Specifically, the parties in *Karaha* completed arbitration in Switzerland, after

a construction-related dispute. *Id.* at 360–61. The Plaintiff-Appellee, KBC,

prevailed in arbitration, and again in the Supreme Court of Switzerland. *Id.* While

the Swiss appeal was still pending, KBC filed enforcement actions under the

Convention in the United States and several other countries, and always prevailed.

*Id.* at 361, 368. The United States enforcement action was awaiting appeal. *Id.* at

362. With the arbitration award already registered and executable in New York,

Delaware, California, and in some foreign countries, the Defendant-Appellee,

Pertamina, filed suit in Indonesia, seeking annulment of the award, in addition to

an "injunction and penalties to prevent KBC from seeking to enforce the award"

7

anywhere on earth. *Id.* at 361.

KBC returned to the district court prior to substantive Indonesian proceedings, and the court issued a temporary restraining order barring Pertamina from pursuing relief there. *Id.* at 362. Regardless, Pertamina proceeded in the Indonesian court, which "permanently enjoined KBC from seeking to enforce the Award and imposed a fine of $500,000 for each day that KBC violated the Indonesian injunction." *Id.* at 363. Thereafter, the United States district court held Pertamina in contempt for ignoring the TRO, replaced the TRO with a preliminary injunction, and issued seven orders to support the anti-suit injunction. *Id.* at 362. Pertamina appealed the preliminary injunction and contempt finding to the Fifth Circuit. *Id.*

The Fifth Circuit reversed, holding that the district court abused its discretion in issuing an anti-suit injunction on matters governed by the Convention. *Id.* at 375–76. The contempt rulings were reversed as well. *Id.* The Fifth Circuit clearly did not apply the purportedly governing rules described in the Motion. Motion, at 4. Instead, for matters relating to the Convention, "[i]n assessing whether an injunction is necessary, [the Fifth Circuit] weigh[s] the need to 'prevent vexatious or oppressive litigation' and to 'protect the court's jurisdiction' against the need to defer to principles of international comity." *Id.* at 366. The factors for assessing vexatiousness are "(1) 'inequitable hardship' resulting from the foreign

8

suit; (2) the foreign suit's ability to 'frustrate and delay the speedy and efficient determination of the cause' and (3) the extent to which the foreign suit is duplicitous of the litigation in the United States." *Id.* at 366.

However, upon taking "into consideration th[e] features of the New York Convention, . . . none of the [vexatiousness] factors that support antisuit injunctions are strong[.]" *Id.* at 368. Indeed, courts "have enforced awards, or permitted their enforcement, ***despite prior <u>annulment</u> in courts of primary jurisdiction***." *Id.* at 367 (citing, *inter alia*, *Chromalloy Aeroservices v. Arab Republic of Egypt*, 939 F. Supp. 907, 909–13 (D.D.C. 1996) (enforcing an arbitral award made in Egypt despite annulment of the award by Egyptian courts, in part because Article V only makes refusal to enforce discretionary, and in part because Article VII enables a secondary jurisdiction to enforce an award if allowed by its domestic law). "By allowing concurrent enforcement and annulment actions, as well as simultaneous enforcement actions in third countries, the Convention necessarily envisions multiple proceedings that address the same substantive challenges to an arbitral award." *Id.*

While the vexatiousness factors that support granting anti-suit injunctions are exceptionally weak in cases under the Convention, the comity factors supporting denial of anti-suit injunctions are exceptionally strong. *Id.* at 371–373. "The immediate issue in this case is whether an injunction, which effectively

9

attempts to arrest the judicial proceedings of another foreign sovereign—here,
[Israel]—sufficiently upsets our interests in preserving comity among nations." *Id.*
at 371; *see also id.* at 372 ("[E]ven if Pertamina is acting in bad faith by pursuing
annulment in Indonesia (as it appears to be), the district court's attempt to enjoin
Pertamina effectively translates into an attempt to enjoin the Indonesian court
itself . . . ."). The Fifth Circuit summarized:

> Reaching out to enjoin proceedings abroad cuts against the Convention's
> grants of separate and limited roles of primary-jurisdiction courts to annul
> awards, and of secondary-jurisdiction courts to enforce, or refuse to
> enforce, awards in their own countries. In sum, an injunction here is likely
> to have the practical effect of showing a lack of mutual respect for the
> judicial proceedings of other sovereign nations and to demonstrate an
> **assertion of authority not contemplated by the New York Convention**.

*Id.* at 373 (citing *Mitsubishi*, 473 U.S. at 639, n. 21) (emphasis added). "As the
Supreme Court has indicated, 'the utility of the Convention in promoting the
process of international commercial arbitration *depends upon the willingness of
national courts to let go of matters they normally would think of as their own*.'"
*Id.* at n.62 (quoting *Mitsubishi*, 473 U.S. at 639, n. 21) (emphasis added).

B. *The Arbitration Award Has Been Separately Enforceable from the
District Court Final Judgment Since April 29, 2020 Under the New York
Convention*

There is no question that the July 8, 2020 Final Judgement and February 1,
2021 Corrected Final Judgment incorporated the Arbitration Award by reference.
However, the separate Arbitration Award, was complete, final, and executable

under the Convention since April 29, 2020, irrespective of any subsequent district court proceedings or any appeal from BI Science.  That is, as a matter of black-letter law, the moment that the arbitrator signed the final Arbitration Award, it was binding under the Convention:

> "The award will be considered 'binding' for the purposes of the Convention if no further recourse may be had to ***another arbitral tribunal*** (that is, an appeals tribunal).  *The fact that recourse may be had to a court of law does not prevent the award from being 'binding.'*  This provision should make it more difficult for an obstructive loser to postpone or prevent enforcement by bringing, or threatening to bring, proceedings to have an award set aside or suspended."

*Fertilizer Corp. of India v. IDI Mgmt., Inc.*, 517 F. Supp. 948, 958 (S.D. Ohio 1981) (quoting G. Aksen, "American Arbitration Accession Arrives in the Age of Aquarius: United States Implements United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards," 3 Sw.U.L.Rev. 1, 11 (1971)) (emphasis added); *see also Ukrvneshprom State Foreign Econ. Enter. v. Tradeway, Inc.*, No. 95-cv-10278-RPP, 1996 U.S. Dist. LEXIS 2827, at *11 (S.D.N.Y. Mar. 11, 1996) ("The binding effect of an arbitral award is well established in the American courts.") (collecting cases).

Indeed, the entire purpose of the Convention is to ensure that arbitration awards are adjudicated as separate and legally distinct from any ongoing dispute, appeal, or stay.  *See, e.g.*, Article V(1)(e); Article VI.  In asserting otherwise, the Motion simply ignores long-settled, routine practice under the Convention.

Motion, at 2–3.  However, the rules set forth in the Convention are federal law, and not merely advisory.  *See, e.g.*, *Belize Soc. Dev., Ltd. v. Gov't of Belize*, 668 F.3d 724, 733 (D.C. Cir. 2012) ("Mandamus is appropriate because the [Federal Arbitration Act], by codifying the New York Convention, provides a carefully structured scheme for the enforcement of foreign arbitral awards and represents an 'emphatic federal policy in favor of arbitral dispute resolution,' which 'applies with special force in the field of international commerce.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

Consequently, the Arbitration Award is enforceable separate and apart from the Final Judgement and BI Science's attempts to conflate the two should be rejected.

### C. Proceedings to Enforce Arbitration Awards Are Conducted by the Local Authority in that Jurisdiction – Not the Jurisdiction of Origin

The New York Convention explicitly grants discretion for enforcement of arbitration agreements regardless of "suspension" (stay), or even "annulment" (invalidation) of the award in the origin country.  *See, e.g.*, Article V(1) ("Recognition and enforcement of the award ***may*** be refused" if, *inter alia*, "(e) [t]he award . . . has been set aside or ***suspended***" in the origin country) (emphasis added); Article VI ("If an application for the setting aside or suspension . . . has been made" a court "***may, if it considers it proper***, adjourn the decision on the enforcement . . . and may also, on the application of the party claiming

12

enforcement of the award, order the other party to give suitable security.")
(emphasis added).  Thus, international law and supporting domestic law is very
clear:  After this Court entered a stay ("*suspended*" execution in the origin
country), the burden was—and is—upon BI Science to apply for adjournment of
proceedings in Israel pursuant to Article V(1)(e).

 As BI Science had not filed anything with the Registrar following the
August 16, 2021 Order from the Federal Circuit, out of an abundance of caution
the Receiver in Israel filed an Application for Instructions on August 19, 2021
notifying the Registrar in Israel of the August 16, 2021 Order and requesting
authorization to proceed with enforcement of the Arbitration Award.  On August
22, 2021, BI Science filed with the Registrar in Israel a request for permission to
submit an objection to the Receiver's Application for Instructions referencing the
August 20, 2021 Order and seeking to further delay enforcement by an additional
20 days without providing any security to protect Bright Data's rights under the
Arbitration Award.

 As made apparent by BI Science's actions, BI Science seeks to circumvent
the Israeli Courts, where it has exhausted its appellate rights, by requesting an
injunction against enforcement of the Arbitration Award from this Court.
However, BI Science offers no excuse whatsoever for ignoring routine
international practice under the Convention.

### D. BI Science Cannot Show the Required Vexatiousness to Support an Anti-Litigation Injunction

In this case, to show vexatiousness, BI Science must (but cannot) prove "(1) 'inequitable hardship' resulting from the foreign suit; (2) the foreign suit's ability to 'frustrate and delay the speedy and efficient determination of the cause' and (3) the extent to which the foreign suit is duplicitous of the litigation in the United States." *Id.* at 366.

"First, as the Convention already provides for multiple simultaneous proceedings, it is difficult to envision how court proceedings in [Israel] could amount to inequitable hardship." *Id.* at 368. To the extent that any "hardship" befalls BI Science from the requirement to apply for adjournment in Israel based upon this Court's stay, that hardship is anything but "inequitable." Rather, the requirement to apply for adjournment notwithstanding a stay is fundamental to the international scheme to which the United States is a party.

Further, it is unlikely that "the financial hardship about which [BI Science] complains will ever materialize." *Id.* As it stands, the Motion's argument is self-defeating: BI Science alleges hardship from the requirement to ask for adjournment in Israel, while simultaneously asserting that Israel ***will in fact defer to this Court's decisions***. *See, e.g.*, Motion, Ex. B, at 3. To demonstrate hardship, much less "inequitable hardship," BI Science must show the *opposite* of what is contained in the Motion—that the Israel court is likely to *disregard* the stay and

14

overall legal posture in the United States and proceed immediately with execution of the Arbitration Award.  BI Science cannot (and has not even attempted) to make that showing.  Thus, the first factor weighs against a finding of vexatiousness.

As to the second factor, BI Science cannot demonstrate that the Israel proceedings will "frustrate and delay the speedy and efficient determination of the cause."  *Karaha*, 335 F.3d at 369.  BI Science has not even taken the first step of filing an application for adjournment in Israel based upon this Court's issuance of a temporary stay.  At the same time, BI Science asserts that, upon request, the Israel court is likely to adjourn proceedings in response to the stay issued by this Court.  Motion, Ex. B, at 3.

Accordingly, if anything could "delay the speedy and efficient determination of the cause," it is BI Science's own unexplained decision to ignore the governing domestic and international law, refusing to file an application for adjournment in the Israel court.  BI Science expresses confidence that, in fact, the Israel court would *not* frustrate or delay the proceedings here.  *Id.*  BI Science has simply applied to the wrong court for the relief requested in the Motion, without reason.  The Convention entitles the Israel court to pass upon the issue of adjournment, and BI Science offers no justification for refusal to abide routine international procedure.  Thus, the second factor does not support a finding of vexatiousness.

"Third, the duplication inherent in the [Israel] proceedings is less

problematic than it might be otherwise, as the Convention already allows for multiple proceedings addressing the same or similar legal bases against enforcement and confirmation." *Karaha*, 335 F.3d at 370. Both Parties here are Israeli companies, comprised of Israeli executives and personnel, organized under Israeli law. Clearly, enforcement in a secondary jurisdiction is not duplicitous of proceedings in a primary jurisdiction under the Convention. *Id.* Thus, the third factor militates against a finding of vexatiousness.

BI Science has not suggested that Israel would be a primary jurisdiction, but "to any extent that the [Israel] courts might be acting as legitimate courts of primary jurisdiction, such courts would have domestic law grounds on which to analyze the propriety of a foreign arbitral award, but which, under the Convention, may not be relied on by enforcement courts in other states." *Id.* "Thus, assuming *arguendo* that the [Israel] courts might somehow be deemed to be courts of primary jurisdiction, they still would not precisely duplicate the enforcement proceedings that took place in the United States." *Id.*

In sum, BI Science's entire explanation for vexatiousness is that it simply does not wish to apply for adjournment in Israel, though it strongly believes it would prevail if it simply abided by routine practice under the Convention. Motion, Ex. B, at 3. Even a scintilla of concern for comity would outweigh BI Science's unexplained refusal to accept routine international procedure. *See*

*Karaha*, 335 F.3d at 371 ("Balanced against the scant vexatiousness and oppressiveness of Pertamina's acts are the not-insubstantial interests in preserving international comity."). Consequently, BI Science's Motion should be denied.

### E. BI Science's Motion Threatens Comity and Should Be Denied

In this case, the threat to comity from international anti-suit injunctions under the Convention is unusually high. "The immediate issue in this case is whether an injunction, which effectively attempts to arrest the judicial proceedings of another foreign sovereign—here, [Israel]—sufficiently upsets our interests in preserving comity among nations." *Karaha*, 335 F.3d at 371. "In sum, an injunction here is likely to have the practical effect of showing a lack of mutual respect for the judicial proceedings of other sovereign nations and to demonstrate an assertion of authority not contemplated by the New York Convention." *Id.* at 373.

It bears repeating that both Parties are Israeli companies, comprised of Israeli executives and personnel, organized under Israeli law. The Israel court has heard from the Parties on numerous occasions, for over a year. The Convention does not set the bar unreasonably high, merely requiring BI Science to file for adjournment under Article V(1)(e), rather than filing in the first instance for an anti-suit injunction in the United States. "The Convention already appears to allow for some degree of forum shopping, and, as with many treaties, the efficacy of the

17

Convention depends in large part on the good faith of its sovereign signatories."
*Karaha*, 335 F.3d, at 373. BI Science does not challenge the good faith of the
court in Israel. Motion, Ex. B, at 3. Israel has worked in close cooperation with
the United States on diverse international legal matters for decades, and neither
party expects that this case would be any different. *Id.*

The question is whether the interest in international comity for the nation
that both Parties call home is sufficient to outweigh BI Science's unexplained
hostility toward applying for adjournment under Article V(1)(e), and providing any
security requested by the Israel court. The question is not a close one: BI Science
easily can, and clearly should, abide routine international procedure for securing
the relief described in the Motion.

### F. BI Science's Motion for an Injunction Is Also Not Appropriate For the Same Reasons Addressed in Bright Data's Response to Appellant's Emergency Motion for Stay

In addition to the reasons provided above, BI Science also does not meet the
requirements for a stay or injunction for the reasons provided in Appellee's
Confidential Response to Appellant's Confidential Emergency Motion to Stay
Enforcement of the District Court's Order and Final Judgement ("Opposition").
Dkt. 51 at 8-20. In addition to other reasons provided in the Opposition, BI
Science has not offered sufficient terms to secure Bright Data's rights and BI
Science does not satisfy the requirements of the four-factor test as BI Science (i) is

not likely to succeed on the merits, (ii) BI Science will not be irreparably injured by enforcement, (iii) issuance of a stay will substantially injure Bright Data, and (iv) the public interest strongly disfavors reneging on a settlement. *Id.* at 9-19. The August 6, 2021 Order did not provide a ruling on the merits, but merely held a decision in abeyance pending a District Court decision. Dkt. 58. For the same reasons provided in the Opposition, BI Science's Motion should also be denied.

### G. BI Science's Motion Seeks to Continue Delaying Enforcement While Avoiding the Payment of Any Security Protecting Bright Data's Rights

In March 2020, BI Science and its CEO Kfir Moyal initially asked the District Court to merely delay enforcement of the Settlement Agreement until redacted. *See e.g.* Dkt. 51, Exhibit P (March 25, 2020 Declaration from BI Science CEO Kfir Moyal). Having refused to comply with the Arbitration Award and Final Judgment, despite both being issued over a year ago and no stay of enforcement being in place before the temporary stay issued by this Court on August 16, 2021, BI Science seeks to continue to improperly delay enforcement far beyond BI Science's initial request to delay enforcement until redacted. Now, BI Science seeks to continue the same delay including by circumventing the proceeding in Israel through the present Motion.

While BI Science clearly did not cease to exist after August 16, 2021, BI Science continues to make unsubstantiated claims of "immediate and possibly company-ending harm." Motion at 3-4. Despite receiving redacted of the redacted

19

redacted that should have gone to Bright Data, BI Science seeks to continue doing so without having to provide any security to protect Bright Data's rights – the present Motion does not even include the insufficient security that BI Science proposed in the July 26, 2021 Motion to Stay.  Dkt 47.

For the reasons provided above, Appellant's Motion should be denied.

Dated:  August 25, 2021

Respectfully submitted,

By: */s/ Robert Harkins*

Korula T. Cherian
Robert Harkins
**RuyakCherian LLP**
1936 University Ave, Ste. 350
Berkeley, CA 94704
(510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

Ronald Wielkopolski
**RuyakCherian LLP**
1901 L St. NW, Suite 700
Washington, DC 20036
(202) 838-1568
ronw@ruyakcherian.com

*Attorneys for Plaintiff-Cross-Appellant*
*Bright Data Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2021, I electronically filed the foregoing APPELLEE'S NON-CONFIDENTIAL RESPONSE TO THE EMERGENCY MOTION FOR INJUNCTION TO ENFORCE THE COURT'S AUGUST 16, 2021 ORDERwith the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system, which will also effect service on all counsel of record.

*/s/ Robert Harkins*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2020-2118, -2181, 2021-1664, -1667 |
| **Short Case Caption** | Bright Data Ltd. v. BI Science (2009) Ltd. |
| **Filing Party/Entity** | Bright Data Ltd. |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/25/2021

Signature:   /s/ Robert Harkins

Name:        Robert Harkins

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.<br><br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Bright Data Ltd. | | IPPN Group Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Mann Tindel Thompson Law Group<br>300 West Main, Henderson, TX 75652 | James Mark Mann | Gregory Blake Thompson |
| Capshaw DeRieux, LLP<br>114 E. Commerce Ave., Gladewater, TX 75647 | Elizabeth L. DeRieux | S. Calvin Capshaw |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**FORM 31. Certificate of Confidential Material**

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF CONFIDENTIAL MATERIAL</u>

**Case Number:** 2020-2118, -2181, 2021-1664, -1667

**Short Case Caption:** Bright Data Ltd. v. BI Science (2009) Ltd.

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains __13__ number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 08/25/2021

Signature: /s/ Robert Harkins

Name: Robert Harkins

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19<br>July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2020-2118, -2181, 2021-1664, -1667

**Short Case Caption:** Bright Data Ltd. v. BI Science (2009) Ltd.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes _____4663_____ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/25/2021

Signature: /s/ Robert Harkins

Name: Robert Harkins