2020-2118, -2181, 2021-1664, -1667

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**BRIGHT DATA LTD.,**

**Plaintiff-Cross-Appellant**

**v.**

**BI SCIENCE (2009) LTD.,**

**Defendant-Appellant**

**BI SCIENCE INC.,**

**Defendant.**

**Appeals from the United States District Court for the Eastern District of Texas in No. 2:18-cv-00483-JRG, Chief Judge J. Rodney Gilstrap**

## APPELLANT'S NON- CONFIDENTIAL REPLY IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTION TO ENFORCE THE COURT'S AUGUST 16, 2021 ORDER

Michael A. Charish
**Charish Law Group, P.C.**
347 Fifth Avenue, Suite 1402
New York, New York 10016
646.328.0183

John Christopher Rozendaal
William H. Milliken
**Sterne Kessler Goldstein & Fox PLLC**
1100 New York Avenue, NW
Washington, DC 20005
202.371.2600

*Counsel for Appellant BI Science (2009) Ltd.*

Dated: August 27, 2021

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2020-2118, -2181, 2021-1664, -1667 |
| **Short Case Caption** | Bright Data Ltd. v. BI Science (2009) Ltd. |
| **Filing Party/Entity** | Appellant BI Science (2009) Ltd. |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/27/2021

Signature:  /s/ William H. Milliken

Name:       William H. Milliken

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| BI Science (2009) Ltd. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
July 2020

---

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Findlay Craft PC: Eric H. Findlay | Findlay Craft PC: Kelce S. Wilson | Love Law Firm PC: Gregory P. Love |
| Findlay Craft PC: Robert B. Craft | Liston Abramson LLP: Ronald Abramson | |
| Findlay Craft PC: Debra E. Gunter | Liston Abramson LLP: Mord M. Lewis | |

---

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Luminati Networks Ltd. v. BI Science (2009) Ltd., No. 2:19-cv-352 (E.D. Tex.) | BI Science (2009) Ltd. a/k/a BIScience Inc. v. Luminati Networks Ltd., IPR2020-00166 (PTAB) | |
| Luminati Networks Ltd. v. BI Science (2009) Ltd., No. 2:19-cv-397 (E.D. Tex.) | BI Science (2009) Ltd. a/k/a BIScience Inc. v. Luminati Networks Ltd., IPR2020-00167 (PTAB) | |
| | | |

---

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**CONFIDENTIAL MATERIAL DELETED**

The redaction appearing on page 1 of this non-confidential version of BI Science's Reply in Support of Emergency Motion for Injunction to Enforce the Court's August 16, 2021 Order relates to information derived from the district court's final judgement, which is currently under seal. The parties have jointly moved the district court to unseal the final judgment and associated materials and are awaiting a decision on that motion.

**CONFIDENTIAL MATERIAL DELETED**

## PRELIMINARY STATEMENT

Bright Data's overzealousness compelled BI Science to file the instant motion to enforce the Court's August 16, 2021 temporary stay order (Dkt. 61). Bright Data has stopped at nothing in its attempt to use the district court's Final Judgment as a vehicle to destroy its competitor, BI Science, before this Court has an opportunity to hear BI Science's appeal on the merits. Bright Data's ongoing enforcement efforts in Israel are illegitimate, and its dissertations on international-arbitration jurisprudence inapposite, because — unlike the arbitration awards in Bright Data's cited authorities — the Arbitration Award incorporated into the Final Judgment in this case explicitly confines enforcement to the primary jurisdiction (the Eastern District of Texas). There is no New York Convention carve-out that permits Bright Data to enforce in Israel.

Even after this Court temporarily stayed enforcement of the Final Judgment in its August 16 order, Bright Data continued enforcement. The Israeli receiver requested authorization to immediately implement drastic measures, including (1) instructing ▮▮▮▮ and ▮▮▮▮ BI Science's proxy services; (2) sending a letter to BI Science's proxy-service ▮▮▮▮ a ▮▮▮▮; and (3) forcing BI Science to ▮▮▮▮ ▮▮▮▮. Those actions threatened yet again to irreversibly wipe out BI Science's business, and yet Bright Data would have this Court believe that there

1

was "no emergency here," Opp. 1.  There *was* an emergency, caused by Bright Data, which necessitated this emergency motion to enforce the Court's temporary stay order.  That motion prompted this Court — within a matter of hours — to issue its August 20, 2021 order clarifying that the temporary stay includes a stay of enforcement of the Arbitration Award (Dkt. 62).

Bright Data's opposition misrepresents the status of proceedings in Israel and rests on the faulty premise that Bright Data can ignore this Court's stay order because BI Science's only recourse to obtain a stay rests with the Israeli courts. Bright Data has it backwards.  The Israeli courts will stay enforcement of the Arbitration Award in Israel *only* if it is stayed here in the United States.  Indeed, as BI Science elaborates below, this Court's clarification that the stay covers the Arbitration Award has temporarily paused enforcement proceedings in Israel, and therefore BI Science does not need further relief from the Court at this time.

## ARGUMENT

Bright Data's repeated assertions (at 1, 3, 13) that BI Science is "ask[ing] this Court to interfere with and overrule the Supreme Court of Israel" or to "[c]ircumvent[] the Israel Court" are wrong.  Quite the contrary.  In the very judgment on which Bright Data relies, the Supreme Court of Israel made clear that a foreign arbitration award will not be enforced in Israel if it has been set aside by the primary jurisdiction, absent "exceptional" circumstances such as where the

court setting aside the award is "not independent" or "is biased." Dkt. 47, Ex. I (English Translation) at 8, 10. Surely Bright Data is not accusing this Court of being "not independent" or "biased." The upshot, then, is that the Israeli court system is taking its cue from the district court and *this Court*, which — as the courts in the country of origin of the Arbitration Award — have primary jurisdiction over the award.

That is precisely why BI Science has asked the district court and this Court for a stay of the Final Judgment and the Arbitration Award incorporated therein: if a stay is in place, BI Science expects — based on the Israeli Supreme Court's judgment — that the Israeli court and collection systems will not proceed with enforcement. This is how things are supposed to work. Courts of secondary jurisdictions (*i.e.*, jurisdictions in which a foreign award is sought to be enforced) generally defer to a decision by the primary jurisdiction to stay or set aside the award. *See id.*; *see also* New York Convention Art. V(1)(e), Art. VI; *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 936 (D.C. Cir. 2007) (citing *Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194 (2d Cir. 1999)).

Accordingly, this Court's August 16, 2021 order temporarily staying the Final Judgment should have been sufficient to preserve the status quo. Under the Israeli Supreme Court's reasoning, this Court's suspension of the Arbitration Award should have resulted in a consequent suspension of enforcement in Israel.

It did not only because Bright Data — in contravention of this Court's order — continued its efforts in Israel to enforce the Arbitration Award. Mot. (Dkt. 61) 2-3. Bright Data did so based on the fallacious rationalization that this Court's stay applied only to the Final Judgment, not to the Arbitration Award contained within the Final Judgment. *Id.* at 3. The Israeli receiver acceded to Bright Data's request and began taking steps to enforce the Arbitration Award — a series of steps that, if completed, would result in the decimation of BI Science's business. Mot. Ex. 1 (Biger Decl.) ¶ 9. That was very much an "emergency," *contra* Opp. 1.[1] And it was brought about solely by Bright Data's refusal to respect this Court's stay order. It is Bright Data — not BI Science — that has "ignore[d] the law without justification," Opp. 5.

These circumstances left BI Science with no choice but to file a motion to enforce the Court's stay order. BI Science explained that Bright Data's argument about the scope of the stay order was irreconcilable with the language of the Final Judgment, which expressly incorporated the Arbitration Award, and so requested

---

[1] Bright Data's criticisms (at 1) of BI Science for waiting until July to "seek this Court's involvement" (and Bright Data's subsequent intimation there was not actually an emergency) are baseless. BI Science moved to stay the district court's original final judgment in August 2020 and moved to stay the corrected final judgment in April 2021. BI Science sought this Court's involvement only when enforcement by the Israeli receiver was imminent and BI Science had not received a stay ruling from the district court. That is precisely how BI Science was supposed to proceed under this Court's rules. *See* Fed. Cir. R. 8(c).

urgent action to prevent the Israeli receiver from proceeding.  Mot. 3-4.

This Court agreed with BI Science's reading of the stay order.  It "clarifie[d] that the August 16, 2021 order temporarily stayed enforcement of the district court's February 1, 2021 final judgment, *including the arbitration award*, pending the district court's decision on the motion for a stay pending before it and this court's subsequent consideration of BI Science's motion to stay enforcement of the final judgment pending appeal."  August 20, 2021 Order (Dkt. 62) at 2 (emphasis added).[2]  The Court then set a briefing schedule on BI Science's motion.

On the next business day in Israel (August 22), BI Science filed this Court's August 20 order with the Israeli Enforcement Authority.  On August 24, the receiver acting under the Enforcement Authority's aegis requested a pause in the enforcement proceedings in light of the August 20 order, which had rejected the prior position of the receiver (and Bright Data) that this Court's temporary stay did not apply to the Arbitration Award.  *See* Mot. Ex. 1 (Biger Decl.) ¶ 11; Mot. Ex. 2 (Receiver's Motion) at 2.  The receiver stated that it would update the Enforcement Authority by August 30, after which Bright Data and BI Science would have an opportunity to brief the impact of the August 20 order on the Israeli enforcement

---

[2] Bright Data's assertion that BI Science is "conflat[ing]" the Final Judgment and the Arbitration Award, Opp. 12, is therefore off the mark.  This Court has made clear that, because the Arbitration Award was expressly incorporated in the Final Judgment, the Court's stay order applied to both.  Dkt. 62 at 2.

proceedings. *See* Receiver's Notice to the Israeli Enforcement Authority (attached as Exhibit 1). The receiver's actions are consistent with the Israeli Supreme Court's holding that, "[i]n general, setting aside the arbitral award in the Original Country bars its enforcement and recognition in a foreign country." Dkt. 47, Ex. I (English Translation) at 8. Bright Data's opposition to BI Science's motion (filed on August 25) inexplicably omits any mention of the receiver's August 24 filing and the current pause in the Israeli proceedings.

This Court's clarification of the scope of the temporary stay and the receiver's subsequent action have — for the present time, at least — rendered an injunction unnecessary. The Israeli proceedings have been effectively paused as a result of the temporary stay that is in place while the district court and this Court (which have primary jurisdiction over the disputed Arbitration Award) consider BI Science's request for a stay pending appeal. Accordingly, this Court's stay has not "interfere[d] with" the Israeli proceedings, *contra* Opp. 1 — quite the opposite. The stay has had exactly the effect on those proceedings that the Israeli Supreme Court's judgment contemplated. *See* Dkt. 47, Ex. I (English Translation) at 8, 10.[3]

---

[3] Had the Israeli enforcement proceedings continued *after* this Court's clarification of the scope of its stay order, an injunction would have been appropriate for the reasons explained in BI Science's motion, particularly in view of the imminent and irreparable harm to BI Science that further enforcement would cause. Moreover, further enforcement efforts in contravention of this Court's stay

But let it be clear: the injunction has been rendered unnecessary, and the threatened harm has not come to pass, precisely *because* this Court intervened to clarify that the stay order applies to the Arbitration Award, which in turn prompted the receiver to refrain temporarily from further enforcement action.  Bright Data's intimation (at 4, 19-20) that the harm never existed in the first place is illogical — a bit like saying that, because a person given an umbrella stayed dry in a thunderstorm, it must never have been raining in the first place.

In light of the foregoing, and without prejudice to BI Science's ability to renew its request for an injunction if Bright Data does not yield and it appears that enforcement in Israel may resume, BI Science respectfully requests that the Court simply leave in place its August 20 clarification of the stay order and submits that no further action from the Court is necessary at this time.

---

would have threatened the integrity of the district court's and this Court's jurisdiction over this lawsuit (which, it bears emphasis, Bright Data chose to file in the United States) and their primary jurisdiction over the Arbitration Award, which unequivocally requires any enforcement action to take place in the Eastern District of Texas, under Texas law.  *See Bethell v. Peace*, 441 F.2d 495, 498 (5th Cir. 1971) (Wisdom, J.); *cf. Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 370 (5th Cir. 2003).  Fortunately, however, there is no need for the Court to wade into these issues at present.

Dated:  August 27, 2021          Respectfully submitted,

                             /s/ *William H. Milliken*

John Christopher Rozendaal

William H. Milliken

**Sterne Kessler Goldstein**
  **& Fox PLLC**

1100 New York Avenue, NW

Washington, DC 20005

202.371.2600

Michael A. Charish

**Charish Law Group P.C.**

347 Fifth Avenue, Suite 1402

New York, New York 10016

646.328.0183

*Counsel for Appellant*
*BI Science (2009) Ltd.*

## TABLE OF EXHIBITS

**Exhibit 1** – Notice on Behalf of the Receiver Further to his Petition for Provision of Instructions dated 08/19/2021

# Exhibit 1

Redacted in its entirety

FORM 31. Certificate of Confidential Material

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF CONFIDENTIAL MATERIAL</u>

**Case Number:** 2020-2118, -2181, 2021-1664, -1667

**Short Case Caption:** Bright Data Ltd. v. BI Science (2009) Ltd.

> **Instructions:** When computing a confidential word count, Fed. Cir. R.
> 25.1(d)(1)(C) applies the following exclusions:
>
> - Only count each unique word or number once (repeated uses of the same
>   word do not count more than once).
>
> - For a responsive filing, do not count words marked confidential for the first
>   time in the preceding filing.
>
> The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments;
> exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains ___7___ number of unique words (including
numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by
Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by
Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28
U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule
25.1(d)(1), and the filing is accompanied by a motion to waive the
confidentiality requirements.

Date: 08/27/2021          Signature: /s/ William H. Milliken

Name: William H. Milliken

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  <u>2020-2118, -2181, 2021-1664, -1667</u>

**Short Case Caption:**  <u>Bright Data Ltd. v. BI Science (2009) Ltd.</u>

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes <u>1,487</u> words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>08/27/2021</u>

Signature:  <u>/s/ William H. Milliken</u>

Name:  <u>William H. Milliken</u>