**2020-2118, 2020-2181, 2021-1664, 2021-1667**

# United States Court of Appeals
# for the Federal Circuit

BRIGHT DATA LTD.,

*Plaintiff-Cross-Appellant,*

– v. –

BI SCIENCE (2009) LTD.,

*Defendant-Appellant,*

BI SCIENCE INC.,

*Defendant.*

*On Appeal from the United States District Court for the
Eastern District of Texas, Case No. 2:18-cv-00483-JRG
Honorable J. Rodney Gilstrap, Chief Judge*

## BRIEF FOR PLAINTIFF-CROSS-APPELLANT

RONALD WIELKOPOLSKI
RUYAKCHERIAN LLP
1901 L Street NW, Suite 700
Washington DC 20036
(202) 838-1560
ronw@ruyakcherian.com

KORULA T. CHERIAN
ROBERT M. HARKINS
RUYAKCHERIAN LLP
1936 University Avenue,
   Suite 350
(510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

*Counsel for Plaintiff-Cross-Appellant*

FEBRUARY 25, 2022

**U.S. Patent No. 9,241,044 Claim 108:**

A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:

(a) sending the second identifier to the first server;

(b) receiving a second request from the first device, the second request includes the first content identifier and the third identifier;

(c) in response to receiving the second request, sending the first content identifier to the second server using the third identifier;

(d) receiving the first content from the second server; and

(e) in response to receiving the first content, sending the first content to the first device using the first identifier.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**  2020-2118, -2181, 2021-1664, -1667

**Short Case Caption**  Bright Data Ltd. v. BI Science (2009) Ltd.

**Filing Party/Entity**  Bright Data Ltd.

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 6/10/2021

Signature:  /s/ Robert Harkins

Name:  Robert Harkins

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Bright Data Ltd. | | IPPN Group Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Mann Tindel Thompson Law Group<br>300 West Main, Henderson, TX 75652 | James Mark Mann | Gregory Blake Thompson |
| Capshaw DeRieux, LLP<br>114 E. Commerce Ave., Gladewater, TX 75647 | Elizabeth L. DeRieux | S. Calvin Capshaw |
| RuyakCherian LLP<br>1901 L St. NW, Suite 700, Washington, DC 20036 | Amadou Kilkenny Diaw | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES..................................................... viii

I.    JURISDICTIONAL STATEMENT ..............................................1

II.   COUNTER-STATEMENT OF THE ISSUES PRESENTED......................2

III.  INTRODUCTION .........................................................3

IV.   STATEMENT OF THE CASE ON THE PRINCIPAL APPEAL ...............6

    A.  BI Science Entered the February 23, 2020 Settlement Agreement............6

    B.  Following BI Science's Non-Performance, the Court Found the
        Settlement Valid .........................................................7

    C.  The Arbitrator Found the Settlement to Validly Include All the Terms of
        the Agreement, and Plaintiff Performed in Part According to the
        Agreement..................................................................8

    D.  The Final Judgment Incorporated the Settlement Agreement and
        Arbitration Award for All Purposes ........................................9

V.    SUMMARY OF THE ARGUMENT ..............................................10

VI.   ARGUMENT ON PRINCIPAL APPEAL ......................................12

    A.  STANDARD OF REVIEW....................................................12

       1.  On the Procedural Issues in This Case, This Court Applies the Law of
          the Circuit...............................................................12

       2.  Arguments Not Made to the Arbitrator or District Court Are Waived on
          Appeal ..................................................................12

       3.  Legal Standard for Personal Jurisdiction ...............................13

    a)    Personal Jurisdiction May Be Waived Including Via an Arbitration
Provision...................................................................13

    b)    Legal Standard for Underlying Patent Infringement Action .................14

       4.  Legal Standard for Review of Arbitration Award .................................15

       5.  Legal Standard for Review of Settlement Agreement...........................16

    B.  BI SCIENCE WAIVED ANY PERSONAL JURISDICTION DEFENSE.
        ...................................................................16

i

1.  BI Science Waived Any Personal Jurisdiction Defense to Disputes Relating to the Settlement Agreement and Arbitration .........................16

C.  BI SCIENCE WAS PROPERLY SUBJECT TO PERSONAL JURISDICTION IN TEXAS FOR THE UNDERLYING LAWSUIT....20

1.  BI Science Purposefully Directed Business Toward Texas Related to Its Infringement of the Patents-in-Suit........................................................21

2.  BI Science Cites Cases in Which Defendants Did Not Conduct Any Business with District Residents............................................................24

D.  THE SETTLEMENT AGREEMENT IS VALID...................................25

1.  The Validity of the Settlement Terms Were Confirmed in Arbitration, a Finding This Court Should Affirm .......................................................25

2.  The Parties Agreed to Settlement on February 23, 2020......................27

3.  BI Science Waived Any Application of State Law and Texas Rule 11 by Failing to Raise the Issue Before the Arbitrator and the District Court....................................................................................................31

4.  Federal Law Governs Enforceability of Settlement for Alleged Violations of Federal Statute .................................................................31

5.  The Settlement Agreement Is Valid Under Federal Law ......................33

6.  Although Texas Rule 11 Does not Apply, the Settlement Agreement Would Be Valid Under Texas Rule 11 ..................................................37

VII.    ARGUMENT ON CROSS-APPEAL – CLAIM 108 OF THE '044 PATENT IS NOT INDEFINITE....................................................................41

A.  STANDARD OF REVIEW....................................................................41

1.  Claim Construction and Indefiniteness Findings are Reviewed *De Novo*. ..................................................................................................41

B.  Claims Should Be Construed to Preserve Their Validity........................41

C.  Claim 108 is Not Indefinite, as a POSA Would Understand that the Method Steps Are Performed by the Second Device ...............................42

1.  The '044 Patent Specification and Claims Themselves Confirm that the Second Device Performs the Steps of Claim 108 ..................................43

2.  Bright Data's Expert Testimony Supports a Finding that Claim 108 Is Not Indefinite .......................................................................................48

**VIII.    CONCLUSION** ......................................................................**49**

**IX. STATEMENT OF ORAL ARGUMENT** ......................................................**49**

# TABLE OF AUTHORITIES

## *Cases*

*AG Acceptance Corp. v. Veigel*, 564 F.3d 695 (5th Cir. 2009) ........................ 13, 31

*Antwine v. Prudential Bache Secur.,, Inc.*, 899 F.2d 410 (5th Cir.1990) ................15

*Asberry v. United States Postal Service*, 692 F.2d 1378 (Fed. Cir. 1982) ................5

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367 (Fed. Cir. 2004) 12, 42

*Belt v. EmCare, Inc*., 444 F.3d 403 (5th Cir.), rev'd, 549 U.S. 826, 127 S. Ct. 349, 166 L. Ed. 2d 43 (2006) ......................................................................................13

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed. Cir. 1994)..21, 23

*Brabham v. A.G. Edwards & Sons, Inc.,* 376 F.3d 377 (5th Cir. 2004) ..... 15, 16, 26

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) ...............................................................................27

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) .............................................. 16, 17

*Cont'l Circuits LLC v. Intel Corp.,* 915 F.3d 788 (Fed. Cir. 2019) ........................41

*Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519 (Tex App. 2011) ................33

*Datatreasury Corp. v. Wells Fargo & Co*., 522 F.3d 1368 (Fed. Cir. 2008) ..........33

*Dickey's Barbecue Rests., Inc. v. Campbell Invs., LLC*, Civil Action No. 4:18-cv-491-ALM-KPJ, 2019 U.S. Dist. LEXIS 42637 (E.D. Tex. Feb. 11, 2019) . 13, 20, 27

*Dunbar Med. Sys. v. Gammex Inc.*, 216 F.3d 441 (5th Cir. 2000) ........................25

*Dwoskin v. Rollins, Inc*., 634 F.2d 285 (5th Cir. 1981) ..........................................35

*EEOC. v. Philip Servs. Corp.*, 635 F.3d 164 (5th Cir. 2011) .................................33

*Eidos Display, LLC v. AU Optronics Corp.*, 779 F.3d 1360 (Fed. Cir. 2015) ........41

*Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645 (5th Cir. 2018) ................................32

Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207 (5th Cir. 1981)...... 32, 34, 36

*Glud & Marstrand A/S v. Viva Magentics Ltd (Hong Kong)*, No. C12-465 MJP, 2012 U.S. Dist. LEXIS 193043 (W.D. Wash. Aug. 7, 2012)..............................17

*Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008) ........42

*Harmon v. Journal Publ'g. Co.*, 476 F. App'x 756 (5th Cir. 2012)........................34

*Houston v. Holder (In re Omni Video),* 60 F.3d 230 (5th Cir. 1995).....................39

*In re Mortg. Analysis Portfolio Strategies*, 221 B.R. 386 (Bankr. W.D. Tex. 1998) ....................................................................................................................39

*Int'l Chem. Workers Union, Local 683c v. Columbian Chems. Co*., 331 F.3d 491 (5th Cir. 2003)...................................................................................................15

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193 (5th Cir. 2016).............................................................................................. 17, 19

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .................................................14

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.,* 902 F.3d 1372 (Fed. Cir. 2018) ....................................................................................................................41

*Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014) ..................49

*Jazz Pharm., Inc. v. Amneal Pharm.*, LLC, 2017 U.S. Dist. LEXIS 183344 (D.N.J. Nov. 6, 2017) ......................................................................................................42

*Johnson v. BP Expl. & Prod. (In re Deepwater Horizon)*, 786 F.3d 344 (5th Cir. 2015) .............................................................................................. 29, 33

*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602 (5th Cir. 2008)....................21

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274 (5th Cir. 2004) ..................................................... 5, 15, 27

*Khawaja Partners, Ltd. v. Jet All Cos.*, No. 4:14-CV-02975, 2015 U.S. Dist. LEXIS 155351 (S.D. Tex. Nov. 16, 2015) ..............................................35

*Kosowska v. Kahn,* 929 S.W.2d 505 (Tex. App. 1996) ............................................39

*Lee v. Gulf Coast Blood Ctr.*, No. H-19-4315, 2020 U.S. Dist. LEXIS 145806 (S.D. Tex. Aug. 13, 2020) .................................................................. 32, 34

*Lopez v. Kempthorne*, No. 07-cv-1534, 2010 WL4639046 (S.D. Tex. Nov. 5, 2010) ...................................................................................................39

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995 (Fed. Cir. 2018) .................................................................................................. 14, 24

*N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910 (5th Cir. 1996) ...................................................................................................31

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014) ....................... 41, 49

*Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177 (Fed. Cir. 1999) ........12

*Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222 (Fed. Cir. 2010) ...................................................................................................22

*OJSC Ukrnafta v. Carpatsky Petro. Corp.*, 957 F.3d 487 (5th Cir. 2020) ..............18

*Padilla v. La France*, 907 S.W.2d 454 (Tex. 1995) ................................................38

*Painewebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453 (5th Cir. 2001) ...................................................................................19

*Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061 (5th Cir. 1998) ...................................................................................................26

*Petrobras Transcor Astra Grp. S.A. v. Petroleo Brasileiro S.A.*, 409 F. App'x 787 (5th Cir. 2011) ...................................................................................30

*PlasmaCAM, Inc. v. CNCElectronics, LLC*, No. 2021-1689, 2022 U.S. App. LEXIS 3065 (Fed. Cir. Feb. 3, 2022) ..................................................... 16, 28, 39

*Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343 (Fed. Cir. 2016) .............. 21, 22, 24

*Preston v. Ferrer*, 552 U.S. 346, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008).... 13, 27

*Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369 (5th Cir. 2003)............................21

*S & T Mfg. Co. v. Cty of Hillsborough*, 815 F.2d 676 (Fed. Cir. 1987) ....................5

*Sangha v. Navig8 Ship Management Private Ltd.,* 882 F.3d 96 (5th Cir. 2018).....14

*Shamrock Psychiatric Clinic, P.A. v. Tex. HHS*, 540 S.W.3d 553 (Tex. 2018)......38

*Songer v. Archer*, 23 S.W.3d 139 (Tex. App. 2000) ................................................33

*Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316 (Fed. Cir. 2008)...............42

*Teva Pharm. USA, Inc. v. Sandoz, Inc.,* 574 U.S. 318, 135 S. Ct. 831, 841 (2015)41

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) ...................................................................................................................18

*Tristar Fin.  Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed. App'x. 462 (5th Cir. 2004) .........................................................................................................15

*Two Rivers Pipeline & Constr. Co. v. Cimarex Energy Co*., No. PE:19-CV-00049-DC-DF, 2020 U.S. Dist. LEXIS 179287 (W.D. Tex. July 20, 2020)...................31

*Ultravision Techs.*, *LLC v. GoVision, LLC*, No. 2:18-cv-00100-JRG-RSP, 2020 U.S. Dist. LEXIS 4078 (E.D. Tex. Mar. 9, 2020). ...............................................24

*Union Pac. R.R. Co. v. Am. Ry. & Airway Supervisors' Ass'n*, 838 F. App'x 846 (5th Cir. 2020)...................................................................................................12

*Vallejo v. Garda CL Southwest, Inc.*, 948 F. Supp. 2d 720 (S.D. Tex. 2013).........27

*Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704 (N.D. Tex. 2013) ... 33, 39

*Woodson v. Surgitek*, 57 F.3d 1406 (5th Cir. 1995) ................................................28

*Zim Israel Navigation Co. v. Special Carriers, Inc.*, 800 F.2d 1392 (5th Cir. 1986) ............................................................................................................................32

STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Bright Data Ltd.[1] states that the

following cases may be directly affected by the Court's decision in this case:

- *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, No. 2:19-cv-352 (E.D. Tex.); and

- *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, No. 2:19-cv-397 (E.D. Tex.).

---

[1] Bright Data Ltd. was formerly known as Luminati Networks Ltd.

## I.    JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The district court issued its final judgment on July 2, 2020 and its corrected final judgment on February 1, 2021.  BI Science filed its notices of appeal from these judgments on July 29, 2020 and February 16, 2021, respectively.  Bright Data timely filed its Notice of Cross-Appeal.  This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## II.    COUNTER-STATEMENT OF THE ISSUES PRESENTED

1.    Does the United States District Court for the Eastern District of Texas have personal jurisdiction exist over BI Science regarding a settlement agreement BI Science negotiated and reached in the Eastern District of Texas and enforcing an arbitration award in which BI Science participated in the district?

a)    Given BI Science's consent to and participation in the settlement agreement and Arbitration Award in the Eastern District of Texas, must personal jurisdiction over BI Science be shown separately for the underlying patent infringement lawsuit that was superseded by the settlement?

b)    Were this Court to find personal jurisdiction for the underlying case relevant, does the evidence that BI Science purposely directed relevant activity to the forum and practiced the patented methods in the forum establish personal jurisdiction for the claims of patent infringement?

2.    Did the district court correctly hold that the Arbitration Award was enforceable where BI Science did not meet its burden of showing—and does not even argue on appeal—that the arbitrator manifestly disregarded the law?

3.    Should this Court confirm the finding in the Arbitration Award (and made by the district court) that the parties entered into a binding settlement agreement?

**Cross-Appeal**

4.    On Bright Data's cross-appeal, did the district court err in construing claim '108 of U.S. Patent No. 9,241,044 as indefinite due to the finding that the claimed method must be performed by the "first device" despite the claim being directed to method performed "via a second device" with all steps logically performed by the second device?

## III.    INTRODUCTION

Facing the prospect of being found a willful patent infringer subject to enhanced damages and legal fees, BI Science settled the case.  The settlement agreement was committed to a single writing signed by the mediator and filed setting forth with the district court, setting forth all material terms of the settlement. BI Science confirmed the settlement on multiple occasions in multiple ways.  It has never disputed that as part of the settlement, it also agreed any disputes would be sent to arbitration, which, as a matter of law, includes even whether there was a binding agreement in the first instance.  The district court properly sent the case to arbitration, and BI Science participated fully in the arbitration.  That arbitration resulted in an arbitration award confirming the terms of the settlement agreement. Under these circumstances, the only matters for appellate review are (1) whether BI Science agreed it would arbitrate the settlement (which BI Science has never

disputed), and (2) whether the arbitrator is guilty of a manifest disregard of the law (which BI Science has never argued). As a result, there is no basis to reverse the district court's confirmation of the arbitration award, including the finding that the parties entered a settlement agreement with specific terms.

Thus, most of BI Science's appellate brief is irrelevant as a matter of law. Its argument as to personal jurisdiction of the underlying patent lawsuit became moot once it negotiated and agreed in Texas to settle the case and once it participated in Texas in the arbitration leading to the arbitration award. Its remaining disputes were properly resolved in arbitration.

Were the Court nevertheless to assess BI Science's arguments independently, the arguments are also factually and legally incorrect. There is ample evidence supporting personal jurisdiction over BI Science for the underlying patent infringement lawsuit. There is ample evidence to support the finding that the parties agreed to all material terms of the settlement agreement. The Fifth Circuit law is clear and unambiguous that federal law, not Texas state law, applies to settlement agreements for cases involving federal claims. But even if Texas state law applied, the settlement agreement met the conditions of that law. Since BI Science's other complaints were resolved in the arbitration, they are not subject to reevaluation on appeal, but in any event, they do not and would not form the basis for a reversal by this Court.

BI Science knows it settled the case, but at some point it realized that by pretending it did not agree to the settlement agreement and appealing, it could continue to infringe the patents-in-suit for years to come. Sadly, that plan already has succeeded. This Court should not permit the charade to continue.

Public policy weighs heavily in favor of confirming both arbitration awards and settlements. "Absent extraordinary circumstances, a confirming court is not to reconsider an arbitrator's findings." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004). BI Science has not attempted to prove the existence of extraordinary circumstances here. Also, "[i]t is long established that courts favor dispute resolution through voluntary settlements. Those who employ the judicial appellate process to attack a settlement through which controversy has been set to rest bear a properly heavy burden.'" *S & T Mfg. Co. v. Cty of Hillsborough*, 815 F.2d 676, 678 (Fed. Cir. 1987) (internal quotations and citation omitted). BI Science cannot meet that heavy burden in this case.

### Cross-Appeal

Bright Data cross-appeals an invalidity finding regarding one of the patents in the underlying case. As part of the judgment in the case, the Court certified a finding of invalidity due to indefiniteness regarding claim 108 of the '044 patent. The Court erred in its claim construction by finding that the preamble was both limiting and

required the "first device" to perform the method steps when clearly the "second device" also referenced in the preamble performs those steps. This error, and the resulting finding of indefiniteness and invalidity, should be reversed.

## IV.    STATEMENT OF THE CASE ON THE PRINCIPAL APPEAL

### A.    BI Science Entered the February 23, 2020 Settlement Agreement

On December 18, 2019, the parties engaged in a FRE 408 mediation.  Over the following two months, the parties exchanged proposals through the mediator, until the parties had reached an agreement on all but five terms.  On February 22, 2020, the Mediator sent the Mediator's Proposal to the parties addressing those five terms, including the monetary terms.  *See* Appx1506.  Bright Data agreed to accept the Mediator's Proposal, subject to the inclusion of the previously agreed upon terms.  *See* Appx1507-1513.  Similarly, BI Science requested modification only of one term—the "Customer Rejection Term"—before agreeing to the Mediator's Proposal, resulting in the following modification:

> Bright Data shall not arbitrarily reject BI Science proxy service customers transferred under the settlement agreement.  Any rejection shall be supported by legitimate and reasonable grounds including the existing Bright Data compliance procedures. Any disputed rejection shall be submitted to arbitration by William Cornelius.

*See* Appx1514-1516.  With this final modification, the Mediator informed both Parties that a settlement had been reached incorporating the above terms and modifications:

> "I am very pleased to report that the mediator's proposal has resulted in a settlement. Incorporated into that is the list of terms that [Plaintiff's counsel] sent me yesterday, and that I provided to [Defendant's counsel]. That list, of course, is modified in some respects by the terms of the proposal, including the most recent proposed language added to it this morning regarding 'rejection of customers'.   Unless you object, I will notify Judge Gilstrap of the settlement and request that he cancel Monday's hearing. I will tell him a motion to stay is forthcoming. I will advise if he wants it filed before he will cancel the hearing."

See Appx1501.

BI Science reconfirmed the settlement, sending the mediator a response thanking him for his assistance in reaching the settlement.  *Id.*  The parties filed a joint motion to stay all deadlines and notice of settlement on the basis that a settlement had been reached.  *See* Appx1474-1475.  The next day, the mediator filed a Supplemental Mediator's Report confirming "settlement of all claims" (Appx1478) and signed a writing that encapsulated the full Settlement Agreement with all material terms that the mediator had confirmed with the parties (the "Settlement") (Appx1499-1500).  This signed writing was subsequently submitted to the district court and incorporated into the final judgment.  Appx0014-0016.

## B.    Following BI Science's Non-Performance, the Court Found the Settlement Valid

Having secured the benefits of a Settlement Agreement allowing BI Science to avoid a trial, BI Science then refused to perform under the agreement.  In response to Plaintiff's Motion to Enforce the Settlement, BI Science implicitly confirmed that it had agreed to the settlement terms by asking to be excused from performance for

the rest of 2020 as a result of the then-recent COVID outbreak, asserting impossibility and *force majeure*, both of which only apply to entered contracts. *See* Appx1547-1554. The district court held a hearing on April 13, 2020 where it took evidence including representations of counsel and evidence from the mediator. Based on a review of the evidence, the district court rejected BI Science's arguments, found the Settlement valid, and (pursuant to undisputed Term 17 of the Settlement requiring binding arbitration of "any disputes regarding the terms and provisions of the settlement") sent the parties to arbitrate any remaining disputes. *See* Appx1685-1686, Appx1693-1695.

### C. The Arbitrator Found the Settlement to Validly Include All the Terms of the Agreement, and Plaintiff Performed in Part According to the Agreement

BI Science did not oppose the arbitration. It did not argue that the arbitrator lacked jurisdiction to arbitrate the dispute between the parties. It did not ask for reconsideration of the district court's order to arbitration nor file a writ to avoid participation in the arbitration. Instead, by fully participating in the arbitration per the express terms of the Settlement Agreement, BI Science once again confirmed that it had entered a binding agreement that included the arbitration provision. Also, by participating, BI Science committed itself to be bound by the arbitration award. In its arbitration brief, BI Science did not argue that the Settlement was invalid, nor that Texas state law applied to the formation of the Settlement, nor that the

Settlement failed to meet the requirements of Texas Rule 11.  *See* Appx1773-1782.

Instead, BI Science again implicitly confirmed that it had entered the Settlement by

asking the arbitrator to delay its performance until 2021 and to revise a term

regarding the transfer of patent rights to Bright Data.  *Id.* at Appx1775.

The arbitrator took the submission of each side and then issued an Arbitrator's

Award ("Arbitration Award").  The Arbitration Award found there to be a binding

Settlement that incorporated all the terms in the written, signed settlement document,

thereby resolving the disputes between the Parties.  Appx0008-0011.  It is

undisputed that Bright Data fully and timely complied with all of its obligations

under the final Arbitration Award.

### D.    The Final Judgment Incorporated the Settlement Agreement and Arbitration Award for All Purposes

On July 2, 2020, the court entered its Final Judgment confirming and fully

incorporating both (1) the Settlement and (2) the Arbitration Award.  Appx0014-

0016.  On July 29, 2020, BI Science filed a notice of appeal, approximately a month

after the entry of Final Judgment and over five months after agreeing to the

Settlement.  *See* Appx2058-2060.  Subsequently, on February 1, 2021 the district

court entered an Order and Corrected Final Judgment.  *See* Appx0001-0003.  BI

Science filed a notice of appeal.  Bright Data filed a cross-appeal limited to the

narrow issue of the validity of claim 108 of the '044 Patent.  *See* Appx2115-2116.

In the meantime, BI Science continues to breach its remaining obligations under the

Settlement and the Arbitration Award, resulting in its ongoing infringement of Bright Data's patents for years despite settling the case.

## V.    SUMMARY OF THE ARGUMENT

BI Science cannot show lack of personal jurisdiction.  It voluntarily entered the Settlement in Texas with a forum selection clause to arbitrate any disputes in Texas, and it thereby waived any jurisdictional challenge.  The Settlement and arbitration superseded the underlying patent dispute.  However, were the Court to evaluate the underlying case relevant to the issue of personal jurisdiction, BI Science clearly met the requirements by having customers in Texas, actively advertising its accused services as providing residential proxies located in 10 Texas cities, and using Texas proxies to practice the asserted patents.

The standard of review for the Arbitration Award is whether the arbitrator manifestly ignored the law.  BI Science has never argued such disregard in this case, and it is clear that no such manifest disregard occurred here. Thus, the Arbitration Award must be affirmed.

Because the Arbitration Award also confirmed the validity and terms of the Settlement, the Settlement must also be affirmed on that basis. The district court also held a hearing, took evidence, and independently concluded that the Settlement was valid.

BI Science's arguments that Texas state law should apply to the Settlement were never made to either the arbitrator or the district court and are therefore waived. Beyond that, BI Science is wrong; the law clearly holds that federal law (not state law) applies to settlements of federal question cases such as patent infringement, and under federal law the Settlement clearly is valid. Even were Texas Rule 11 to apply, the Settlement here meets the terms of that rule literally and as interpreted by the courts.

BI Science's remaining arguments—(1) that the settlement agreement lacked a client signature purportedly required by Texas state law, (2) that certain settlement terms were insufficiently detailed, and (3) that it disputed that it had agreed to one term regarding the transfer of patent rights—are not issues for this Court in light of the arbitration award finding there was a valid settlement agreement with specific terms. The arguments are also wrong, as found by both the arbitrator and the district court after evaluating the relevant evidence8.

## Cross-Appeal

On Bright Data's cross-appeal, the district erred on a matter of claim construction in finding that claim 108 of the '044 patent required the claimed method is performed "by a first device" when the claim actually is performed "via a second device." This error led the court to find the claim indefinite, a finding this Court should reverse.

## VI.    ARGUMENT ON PRINCIPAL APPEAL

### A.    STANDARD OF REVIEW

#### 1.    On the Procedural Issues in This Case, This Court Applies the Law of the Circuit

The issues in BI Science's appeal are procedural: personal jurisdiction and the validity of an arbitration award and settlement agreement.  On such issues, the Federal Circuit follows the law of the circuit where the lawsuit was pending, here the Fifth Circuit.  *Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed. Cir. 1999).  Bright Data's cross-appeal is purely an issue of patent law, subject to Federal Circuit authority.  *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004).

#### 2.    Arguments Not Made to the Arbitrator or District Court Are Waived on Appeal

The parties arbitrated the issue of all disputes regarding terms and provisions of the Settlement. "If the issue was arbitrable and was not presented to the arbitrator, it is waived." *Union Pac. R.R. Co. v. Am. Ry. & Airway Supervisors' Ass'n*, 838 F. App'x 846, 852 (5th Cir. 2020).

BI Science also appeals orders and the judgment of the district court. "Under this Circuit's general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate 'extraordinary

circumstances.'" *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) (quoting *N. Alamo Water Supply Corp. v. City of San Juan,* 90 F.3d 910, 916 (5th Cir. 1996) (per curiam)). "If a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal." *Belt v. EmCare, Inc*., 444 F.3d 403 (5th Cir.), *cert. denied*, 549 U.S. 826, 127 S. Ct. 349, 166 L. Ed. 2d 43 (2006).

### 3.    Legal Standard for Personal Jurisdiction

#### a)    Personal Jurisdiction May Be Waived Including Via an Arbitration Provision

The judgment in this case is based on the Settlement and the Arbitration Award, not the underlying patent infringement claims.   *See* Appx0015-0016. Personal jurisdiction is a waivable right, and it can be waived by a party's "express or implied consent" to participation in a proceeding. *Burger King*, 471 U.S. at 472 n.14 (1985).   Such consent can include consent to arbitrate disputes, including disputes over whether an agreement was reached at all. *See Preston v. Ferrer*, 552 U.S. 346, 349, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008); *Dickey's Barbecue Rests., Inc. v. Campbell Invs., LLC*, Civil Action No. 4:18-cv-491-ALM-KPJ, 2019 U.S. Dist. LEXIS 42637, at *12-13 (E.D. Tex. Feb. 11, 2019).

### b) Legal Standard for Underlying Patent Infringement Action

Were the Court to determine that personal jurisdiction over the patent infringement claims is relevant to this appeal, "due process requires only that in order to subject a defendant to a judgment in personam, [the defendant must] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). In assessing specific jurisdiction, the Federal Circuit "appl[ies] a three-part test considering whether: (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1000 (Fed. Cir. 2018). "The plaintiff bears the burden as to the first two requirements, and if proven, the burden then shifts to the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* Were this Court to undertake a review of personal jurisdiction over the underlying case, the standard of review would be *de novo. See Sangha v. Navig8 Ship Management Private Ltd.,* 882 F.3d 96, 100 (5th Cir. 2018).

14

### 4.    Legal Standard for Review of Arbitration Award

"Judicial review of an arbitration award is extraordinarily narrow." *Antwine v. Prudential Bache Secur., Inc.*, 899 F.2d 410, 413 (5th Cir.1990). "Absent extraordinary circumstances, a confirming court is not to reconsider an arbitrator's findings." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004). "We review the district court's conclusions of law *de novo* and findings of fact for clear error. *Hughes Training Inc. v. Cook*, 254 F.3d 588, 592 (5th Cir. 2001). We apply a highly deferential standard when reviewing arbitration awards." *Int'l Chem. Workers Union, Local 683c v. Columbian Chems. Co.*, 331 F.3d 491, 494 (5th Cir. 2003). Arbitration agreements are favored, and any doubt should be resolved in favor of arbitration. *See Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed. App'x. 462 (5th Cir. 2004).

Arbitration awards in the Fifth Circuit must be confirmed unless they "manifestly disregard the law." *Brabham v. A.G. Edwards & Sons, Inc.,* 376 F.3d 377, 381 (5th Cir. 2004).

> Manifest disregard "means more than error or misunderstanding with respect to the law." *Prestige Ford*, 324 F.3d at 395 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir. 1986)). The arbitrators must have "appreciated the existence of a clearly governing principle but decided to ignore or pay no attention to it." *Id*. Furthermore, "the governing law ignored by the arbitrators must be well defined, explicit, and clearly applicable." *Id*. (quoting *Merrill Lynch*, 808 F.2d at 934).

*Id.*, at 381-82.

### 5.    Legal Standard for Review of Settlement Agreement

Since the Arbitration Award also confirms the terms of the Settlement, this Court should not reverse unless the arbitrator manifestly disregarded the law by knowing the correct law and then ignoring it.  Prior to the arbitration, the district court also found that there was a valid Settlement. Were the Court to independently review the district court's determination that that there is a valid Settlement of the patent lawsuit, "The Fifth Circuit reviews construction of an unambiguous contract's terms de novo, *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 490 (5th Cir. 2007), but ascertaining whether the parties mutually assented to contract terms is a factual question reviewed for clear error, *see Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1416 (5th Cir. 1995)." *PlasmaCAM, Inc. v. CNCElectronics, LLC*, No. 2021-1689, 2022 U.S. App. LEXIS 3065, at *11 (Fed. Cir. Feb. 3, 2022).

## B.    BI SCIENCE WAIVED ANY PERSONAL JURISDICTION DEFENSE

### 1.    BI Science Waived Any Personal Jurisdiction Defense to Disputes Relating to the Settlement Agreement and Arbitration

Personal jurisdiction can be waived by a party's "express or implied consent" to participation in a proceeding. *Burger King v. Rudzewicz*, 471 U.S. 462 at 472 n.14 (1985).  Here, BI Science waived any personal jurisdiction defense three times: (1) when it entered the Settlement in the Eastern District of Texas; (2) when it

participated in an arbitration in the district; and (3) when it failed to raise any argument to the district court or in its Opening Brief that the Settlement and Arbitration failed to confer jurisdiction over it.

The district court properly found that BI Science entered a contract in Texas—the Settlement Agreement. *See* Appx1693-1694. That contract gave the district court personal jurisdiction over BI Science. Appx0014-0016 and Appx0020-0026. It also conferred the right to resolution of any disputes to arbitration. *See* Appx1503.

BI Science may argue that it only mediated the dispute because it lost a motion to dismiss for lack of personal jurisdiction. But there is no "causation" rule for personal jurisdiction. Once BI Science settled the case by entering a settlement in Texas and agreed to arbitrate in Texas it waived the right to challenge personal jurisdiction. *See Glud & Marstrand A/S v. Viva Magentics Ltd (Hong Kong)*, No. C12-465 MJP, 2012 U.S. Dist. LEXIS 193043, at *5 (W.D. Wash. Aug. 7, 2012) (citing *Burger King*, at 472 n.14) (settlement agreement waives personal jurisdiction challenge to underlying patent litigation claims); *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (arbitration clause gave district court jurisdiction to enforce).

BI Science waived any jurisdictional challenge when it expressly agreed to arbitrate all disputes regarding the Settlement. Parties frequently "stipulate in

advance to submit their controversies for resolution within a particular jurisdiction" through the use of forum-selection clauses, which "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) (internal quotation marks omitted). BI Science has not argued that the district court lacked jurisdiction over disputes regarding the Settlement or Arbitration Award, only as to the underlying case.

A party cannot participate in an arbitration and later challenge jurisdiction regarding that arbitration:

> "A party cannot agree to arbitrate and then later tell a court that the arbitrator lacked authority to decide the case. *Id.*; 3 BORN § 26.05[C][1][h], at 3482 (noting that, even in the Article V(1)(a) context, it 'is well-settled that a party can waive its right to challenge an arbitrator's jurisdiction, including the right to raise jurisdictional challenges in subsequent recognition proceedings'). This waiver rule prevents inefficiency and the gamesmanship that would result if a party could wait to see how the arbitration tribunal ruled before deciding whether to challenge its jurisdiction."

*OJSC Ukrnafta v. Carpatsky Petro. Corp.*, 957 F.3d 487, 498 (5th Cir. 2020).

Here, BI Science agreed to arbitrate any disputes regarding the Settlement Agreement. *See* Appx1503. Having agreed to arbitrate, BI Science then fully participated in the arbitration in Texas. *See* Appx1773-1782. BI Science did not object to the arbitration (on jurisdictional or any other ground) either to the district court or to the arbitrator. *Id.* It did not file a motion to vacate the arbitration award

or challenge the award on the basis that there was a lack of jurisdiction. *See* Appx1845-1848. It did not argue in its Opening Brief that the arbitration lacked jurisdiction. BI Science has waived any personal jurisdiction challenge to the arbitration. Moreover, the arbitration occurred in Texas with BI Science's participation, giving the district court personal jurisdiction over any related dispute. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016); *see also Painewebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 461 (5th Cir. 2001).

BI Science may argue that its participation in the arbitration was not voluntary because it was ordered by the district court to arbitrate. But the district court entered an order to arbitrate only because the parties had voluntarily included an arbitration provision in the settlement agreement. *See* Appx1503, Appx1693-1694. The Arbitration Award itself notes that there was no objection to Term 17 submitting any disputes over terms and provisions to arbitration. Appx0011. BI Science did not contest that it had agreed to arbitrate any disputes regarding the agreement. Such disputes include whether the agreement was validly entered in the first instance:

> Arbitration is an appropriate forum to challenge contract validity, where the entire contract, not merely the arbitration provision, is at issue. *See Preston v. Ferrer*, 552 U.S. 346, 349, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006); *Vallejo v. Garda CL Southwest, Inc.*, 948 F. Supp. 2d 720, 726 (S.D. Tex. June 4, 2013)

(collecting cases). In determining whether the court or an arbitrator should decide the issue of contract enforceability, courts must look to the contract itself to determine the scope of the arbitration clause and the intent of the parties. *See Preston*, 552 U.S. at 349 ("[W]hen parties agree to arbitrate *all disputes* arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court.") (emphasis added).

*Dickey's Barbecue Rests., Inc. v. Campbell Invs., LLC*, Civil Action No. 4:18-cv-491-ALM-KPJ, 2019 U.S. Dist. LEXIS 42637, at *15-16 (E.D. Tex. Feb. 11, 2019).

Thus, the district court properly sent the parties to arbitrate any disputes regarding the settlement, including the validity of the contract as a whole, because the parties agreed to arbitrate any such disputes. BI Science never argued that the arbitrator lacked the authority to do that. It did not object in the arbitration to the authority of the arbitrator to arbitrate the dispute. *See* Appx0011. It did not ask the district court for reconsideration or file a writ with this Court on the basis that the district court had no authority to order an arbitration. Instead, it participated fully in the arbitration. Having done so, it waived any challenge to jurisdiction over it in the arbitration.

## C.  BI SCIENCE WAS PROPERLY SUBJECT TO PERSONAL JURISDICTION IN TEXAS FOR THE UNDERLYING LAWSUIT

The issue of personal jurisdiction over the underlying lawsuit was mooted by the subsequent Settlement and Arbitration Award, but the facts also clearly show personal jurisdiction existed regarding the patent infringement claims.

### 1.     BI Science Purposefully Directed Business Toward Texas Related to Its Infringement of the Patents-in-Suit

BI Science was properly subject to the patent infringement lawsuit suit in Texas because it purposefully directed its infringing activities toward this state.  The Texas long-arm statute extends to the full extent permitted by the Due Process Clause of the U.S. Constitution.  *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003).  "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

All that is required to find personal jurisdiction is that BI Science provided products to Texas or infringed or sold the infringing service in Texas. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1565 (Fed. Cir. 1994) ("The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel.  The cause of action for patent infringement is alleged to arise out of these activities."); *see also Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1350 (Fed. Cir. 2016) (shipping products to retailers in the jurisdiction indicated "an intent and purpose to serve not only the U.S. market generally, but also the [forum state] market specifically.").

The district court properly held that BI Science was subject to personal jurisdiction in the underlying case because, *inter alia*, its "service allows customers all over the world to utilize residential proxy devices in ten Texas cities—Arlington,

Austin, Crowley, Dallas, El Paso, Fort Worth, Houston, Katy, San Antonio, and Spring—and BI Science advertises as such." *See* Appx0715-0716. Those proxy service activities are 'purposefully directed' at Texas, and Bright Data's claims for patent infringement allege 'injuries that arise out of or relate to those activities.'" *See* Appx0860. "The ability to direct internet traffic through proxies situated in various locations, including Texas, is a key advertised feature of BI Science's service." *See* Appx0702; *see also id.* ("A proxy will also give you access to a set of proxy servers located worldwide, which will help you solve the location obstacle easily: Just select your preferred location, whether it's the United States or Madagascar, and surf in total anonymity and freedom."); *See* Appx0692. ("'Location is key. One of the reasons to use a proxy, is to appear as if you were surfing from a different place.'"). "Far from being unrelated, BI Science's encouragement of customers to use proxies, including those located in Texas, is foundational to Bright Data's claims of patent infringement. Specific personal jurisdiction over these claims is therefore appropriate." *See* Appx0706. The District Court's finding of personal jurisdiction was well supported by Bright Data's extensive uncontroverted allegations.[2]

---

[2] *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234 (Fed. Cir. 2010) (making products available in forum state that are accused of infringing established personal jurisdiction -- No more is required for specific jurisdiction."); *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1350 (Fed. Cir. 2016) (shipping

This geographical location of residential proxy IP addresses or "tunnel device[s]" (that BI Science contracted to make available in at least 10 Texas cities and advertised the same) are at the heart of the Asserted Patents, and therefore, the heart of this patent infringement suit. *See, e.g.,* Patent No. 9,241,044 ("'044 Patent"), Appx0068-0069; Appx0218 ("[t]he tunnel device (or devices) to be used may be selected based on physical geographical location, such as based on the physical proximity to another device in the system, such as the data server."); *See* Appx0219; claim 96 ("the second device is selected based on the physical geographical location").

Here, Defendant did not accidentally have Texas residential proxy IP addresses—it sought out and obtained Texas ISPs for the purpose of gaining Texas IP addresses, repeatedly and continuously throughout the damages period. "Far from being unrelated, [BI Science's] encouragement of customers to use [proxy IP addresses], including those located in Texas, is foundational to Luminati's claims of patent infringement." *BI Science Inc.*, 2019 U.S. Dist. LEXIS 79843, at *10 ("'Location is key. One of the reasons to use a proxy, is to appear as if you were surfing from a different place'"). In short, "the [D]efendant purposefully directed its activities at residents of the forum," by targeting Texas ISPs and Texas IP

---

products into the forum state established personal jurisdiction); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994).

addresses. *M-I Drilling*, 890 F.3d at 1000; *see also BI Science Inc.*, 2019 U.S. Dist.

LEXIS 79843, at *10 ("ability to direct internet traffic through proxies situated in

various locations, including Texas is a key advertised feature of BiScience's

service").

The Texas sales in the underlying lawsuit was not a situation where BI Science

"simply place[d] its products in the stream of commerce, with the products

fortuitously reaching [Texas] as a result of the unilateral effort of [a third party]."

*Polar Electro Oy*, 829 F.3d at 1351. Instead, BI Science's "active participation in

[providing the accused proxy service within Texas] thus constitutes purposeful

availment." *Id.* BI Science knew it was selling in Texas, which supports personal

jurisdiction. *Ultravision Techs.*, *LLC v. GoVision, LLC*, No. 2:18-cv-00100-JRG-

RSP, 2020 U.S. Dist. LEXIS 4078, at *19 (E.D. Tex. Mar. 9, 2020).

BI Science attempts to avoid the controlling case law by arguing that it did

not sell "physical products in physical stores or deliver[] physical software to

customers through physical discs or other physical media." Opening Brief, at 35.

But BI Science's discussion of general stream-of-flow authority fails to account for

its actions of using and advertising its use of infringing proxies in the forum state.

None of its cited case authority applies to the facts of this case.

### 2.    BI Science Cites Cases in Which Defendants Did Not Conduct Any Business with District Residents

BI Science concedes that it also had Texas customers, arguing only that it

accepted customers from any location, not just Texas. Opening Brief, at 37-38. That simply admits that BI Science purposefully availed itself of the benefits of Texas in addition to many other jurisdictions.[3] BI Science concedes that it advertised the Accused Services as allowing its customers to use proxies based in ten specific Texas cities. *See* Appx0860. BI Science discusses cases such as *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275 (Fed. Cir. 2005) in which the Court held that a website alone was not interactive enough to form the basis of jurisdiction, but that is inapplicable here where BI Science both had customers in the jurisdiction and performing the allegedly infringing acts via residential IP addresses in 10 different Texas cities. Interactive website cases do not avoid jurisdiction under these facts.

### D.    THE SETTLEMENT AGREEMENT IS VALID

#### 1.    The Validity of the Settlement Terms Were Confirmed in Arbitration, a Finding This Court Should Affirm

Were this just a dispute about settlement contract formation, this Court would review the law *de novo* and facts for clear error. *Dunbar Med. Sys. v. Gammex Inc.*, 216 F.3d 441, 448 (5th Cir. 2000). However, the Arbitration Award independently confirmed the settlement and its terms.

This Court reviews arbitration awards (including one that confirms the validity of a settlement agreement) with great deference. In the Fifth Circuit such

---

[3] Defendant's emphasis on Texas is misplaced, since purposeful availment toward the United States as a whole is sufficient to establish jurisdiction under Rule 4(k)(2).

awards can only be vacated due to "manifest disregard of law." *Brabham v. A.G. Edwards & Sons, Inc.,* 376 F.3d 377, 381 (5th Cir. 2004). Even a finding that an award is "arbitrary and capricious" is insufficient to vacate an arbitration award. *Id.* at 385. There is no need for an arbitrator to provide a rationale and on review courts may not review the arbitrator's reasoning:

> Our established rules of deference foreclose all but the most limited review. Arbitrators need not give reasons for their awards. McIlroy, 989 F.2d at 821. Even when arbitrators do provide a rationale for their awards, courts may not review that reasoning. See Anderman/Smith, 918 F.3d at 1219 n.3. Uncertainty about arbitrators' reasoning cannot justify vacatur, for a court must resolve all doubts in favor of arbitration. See Action Inds., Inc. v. U.S. Fid. & Guar. Co., 358 F.3d 337, 343 (5th Cir. 2004). Given these constraints, judicial review of an award's rationality must be confined to situations in which the party challenging the award can prove that clearly applicable law or the parties' contract indisputably dictates a contrary result.

*Id.* at 381. Thus, unless this Court were to conclude that the Arbitration Award manifestly disregarded the law, the district court's judgment must be upheld.

BI Science concedes that it agreed to the arbitration provision of the Settlement (Term 17). *See* Opening Brief, at 60. It argues that this is irrelevant because the underlying agreement must be valid, citing *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd*., 139 F.3d 1061 (5th Cir. 1998), but that decision states only that the court must determine that "the parties agreed to arbitrate the dispute in question." *Id. at* 1064. It is undisputed that here the Settlement states, "The parties agree to submit any disputes regarding the terms and provisions of the

settlement to binding arbitration by William Cornelius." *See* Appx0006. It was further found in the arbitration that the arbitration term itself (Term 17) was not in dispute at all. *See* Appx0011. The record is undisputed that BI Science agreed to arbitrate all disputes about the Settlement terms and provisions.

Once the parties agree that settlement agreement disputes will be arbitrated, disputes about whether the agreement was validly entered in the first instance also are properly referred to arbitration. *See Preston v. Ferrer*, 552 U.S. 346, 349, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006); *Vallejo v. Garda CL Southwest, Inc.*, 948 F. Supp. 2d 720, 726 (S.D. Tex. June 4, 2013) (collecting cases); *Dickey's Barbecue Rests., Inc.*, at *15-16. BI Science agreed to submit all disputes about the Settlement to arbitration (and did so), and it cannot now avoid that agreement.

### 2.    The Parties Agreed to Settlement on February 23, 2020

The arbitrator's reasoning in finding a valid settlement agreement is outside the scope of appellate review. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004) ("Absent extraordinary circumstances, a confirming court is not to reconsider an arbitrator's findings."). But also, the facts clearly show that a settlement was in fact reached. Were the Court to review the district court's finding the standard of review is clear error regarding the district court's findings of fact. *PlasmaCAM, Inc. v.*

*CNCElectronics, LLC*, No. 2021-1689, 2022 U.S. App. LEXIS 3065, at *11 (Fed. Cir. Feb. 3, 2022); *Woodson v. Surgitek*, 57 F.3d 1406, 1416 (5th Cir. 1995).

The district court properly found that the material terms were agreed to based on its assessment of the facts, including that BI Science's counsel acted with full authority from his client and was a long-time practitioner before the district court who knew when he signed and submitted the Joint Notice of Settlement that he could only sign that document if all material terms of the settlement had been reached. *See* Appx0014-0026. The mediator also provided testimony that the parties had agreed to a complete settlement with the material terms set forth in the written document the mediator signed on February 24, 2020. *See* Appx2208-2209; Appx1478.

The parties entered the Settlement on February 23, 2020 after two months of negotiations. BI Science agreed to the mediator's proposal, which expressly incorporated the list of agreed terms and edits to the "Customer Rejection Term" that was specifically requested by BI Science.

> "I am very pleased to report that the mediator's proposal has resulted in a settlement. Incorporated into that is the list of terms that [Plaintiff's counsel] sent me yesterday, and that I provided to [Defendant's counsel]. That list, of course, is modified in some respects by the terms of the proposal, including the most recent proposed language added to it this morning regarding 'rejection of customers'. Unless you object, I will notify Judge Gilstrap of the settlement and request that he cancel Monday's hearing. I will tell him a motion to stay is forthcoming. I will advise if he wants it filed before he will cancel the hearing."

*See* Appx1501.

Without disputing that "the mediator's proposal has resulted in a settlement" or that the settlement incorporated the "list of terms" as modified regarding "rejection of customers," Defendant's counsel confirmed the settlement stating, "Thanks for all your hard work Bill." *See* Appx1501. BI Science's counsel then signed a filed joint motion to stay all deadlines and notice of settlement stating, "all matters in controversy between the Parties have been settled, in principle." *See* Appx1474-1475. The district court found that BI Science's counsel, a long-time local practitioner before the court, understood that such a document could only be filed if all material terms had been agreed to.

Defendant's post-Settlement assertions that it believed it was merely agreeing to what it mischaracterizes as a "settlement framework" is inconsistent with the record and BI Science's own representations. "An offer is judged by the parties' overt acts and words, not by the subjective or secret intent of the offeror." *Johnson v. BP Expl. & Prod. (In re Deepwater Horizon)*, 786 F.3d 344, 355 (5th Cir. 2015). The February 24, 2020 writing collected the above terms of the Settlement Agreement into one document. The district court held an evidentiary hearing on April 13, 2020 during which it found that a meeting of the minds was reached and that the Settlement is valid. *See* Appx1693-1694.

BI Science argues that its refusal to sign the written Settlement dated February

24, 2020 shows that it never reached an agreement on February 23, 2020. That is wrong. BI Science confirmed its agreement to the terms in various emails with the mediator on February 23, 2020, and the terms from those emails merely assembled into a single document on February 24, 2020 in accordance to the previously reached agreement. Also, the signature block on the February 24, 2020 document did ***not*** require the parties to sign to effectuate the Settlement, but to merely to agree that "the terms of this agreement are confidential." *See* Appx0006. Moreover, BI Science's excuse for not signing the February 24, 2020 writing was because it preferred to await a final version of the agreement with boilerplate. *See* Appx1520, Appx1528. Later, BI Science would not sign because it sought to delay performance that it acknowledged it had undertaken in the Settlement.

Similarly, the facts show that BI Science performed certain of its obligations under the Settlement. Evidence of partial performance supports a finding of contract formation. *See, e.g.*, *Petrobras Transcor Astra Grp. S.A. v. Petroleo Brasiliero S.A.*, 409 F. App'x 787, 790 (5th Cir. 2011) (partial performance via payment made by party later disputing contract formation "evidences the existence of a valid contract"); *Two Rivers Pipeline & Constr. Co. v. Cimarex Energy Co*., No. PE:19-CV-00049-DC-DF, 2020 U.S. Dist. LEXIS 179287, at *25-26 (W.D. Tex. July 20, 2020) ("Ratification occurs when a party recognizes the validity of the contract by acting under the contract, performing under the contract, or affirmatively

acknowledging the contract."). For example, BI Science dismissed its challenges to patent validity before the Patent Trial Appeal Board. *See* Appx1701-1708. It also submitted to the arbitration that it had agreed to in the Settlement. *See* Appx1773-1782. These facts further evidence that BI Science understood it had undertaken obligations when it agreed that the case was settled.

### 3. BI Science Waived Any Application of State Law and Texas Rule 11 by Failing to Raise the Issue Before the Arbitrator and the District Court

For the first time on appeal, BI Science raises the issue of whether a client signature was legally necessary for the formation of a Settlement Agreement. Because BI Science never made this argument to the arbitrator or the district court, the argument is waived. "Under this Circuit's general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate 'extraordinary circumstances.'" *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) (quoting *N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 916 (5th Cir. 1996) (per curiam)). No extraordinary circumstances exist here. Were the Court nevertheless to consider the argument, it is without merit.

### 4. Federal Law Governs Enforceability of Settlement for Alleged Violations of Federal Statute

BI Science argues that Texas state law governs settlement agreements formed in the state, and that, as a result, the agreement here is governed by Texas Rule of

Civil Procedure 11.[4]  That is incorrect—federal law governs settlements of lawsuits

involving a federal claim:

> Federal contract law governs the enforceability of the settlement
> agreement because this case involves a federal claim. *See Bowers v.
> Abundant Home Health, L.L.C.*, 803 F. App'x 765, 767 n.4 (5th Cir.
> 2020) (applying federal law to decide if a settlement of a FLSA claim
> was valid, despite the defendant's argument that Texas law
> controlled); *Mid-S. Towing*, 733 F.2d at 389 ("Questions regarding the
> enforceability or validity of [settlement] agreements are determined by
> federal law—at least where the substantive rights and liabilities of the
> parties derive from federal law."); *Williamson v. Bank of New York
> Mellon*, 947 F. Supp. 2d 704, 707 (N.D. Tex. 2013) (state law, including
> Texas Rule of Civil Procedure 11, applies when the court has diversity,
> not federal question, jurisdiction).

*Lee v. Gulf Coast Blood Ctr.*, No. H-19-4315, 2020 U.S. Dist. LEXIS 145806, at

*14 (S.D. Tex. Aug. 13, 2020).[5]

BI Science erroneously relies upon case law regarding the applicability of

---

[4] This argument itself, arguing that Texas is the location of the Settlement, further
shows that BI Science is subject to personal jurisdiction in Texas and has waived
any personal jurisdiction challenge.

[5] *See also Zim Israel Navigation Co. v. Special Carriers, Inc.*, 800 F.2d 1392, 1394
(5th Cir. 1986) ("We have held that questions regarding the enforceability or validity
of settlement agreements are determined by federal law in cases where the
substantive rights and liabilities of the parties derive from federal law."); *Fisk Elec.
Co. v. DQSI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018) ("Federal law applies.");
Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207, 1209 (5th Cir. 1981) (for a
federal question lawsuit "the federal courts are competent to determine whether a
settlement exists without resort to state law."); *In re Deepwater Horizon*, 786 F.3d
at 354 (when based on federal law claims, "federal contract law governs the validity
and enforceability of Johnson's putative settlement agreement with BP").

agreements to third parties and cases involving underlying state law claims.[6] *Cf.*

*Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704, 707 (N.D. Tex. 2013) ("A

***federal court sitting in diversity*** applies the law of the forum state when deciding

whether to enforce a settlement agreement.") (emphasis added).  Unlike those cases,

here there is no dispute that the claims at issue (and settled) derive from federal law,

specifically the Patent Act.  *See* Complaint, ¶¶ 3-4 ("This is an action for patent

infringement under the patent laws of the United States of America, 35 U.S.C. § 1,

et seq. … This Court has jurisdiction over the subject matter of this action under 28

U.S.C. §§ 1331 and 1338(a).").  Federal law, not Texas law, governs the Settlement.

### 5.     The Settlement Agreement Is Valid Under Federal Law

Federal law does not require an agreement to be written, let alone

signed. *See E.E.O.C. v. Philip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir.

2011) ("Federal law does not require settlement agreements to be reduced to

writing."). The court can enforce a settlement agreement made orally or by

email. *See Harmon v. Journal Publ'g. Co.*, 476 F. App'x 756, 757 (5th Cir. 2012).

---

[6] BI Science erroneously relies upon case law finding that third parties are not subject to arbitration clauses in an arbitration agreement, which is entirely irrelevant to the facts here. *See, e.g., Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1373 (Fed. Cir. 2008). Similarly, BI Science relies on other cases involving state law claims rather than federal claims. *See, e.g., Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 521-522 (Tex App. 2011) (breach of contract claim in Texas state court); *Songer v. Archer*, 23 S.W.3d 139, 141 (Tex. App. 2000) (breach of contract claim in Texas state court).

Furthermore, a party who "changes his mind when presented with the settlement documents . . . remains bound by the terms of the agreement" if the parties agreed to all the material terms. *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981).

In *Lee v. Gulf Coast Blood Ctr.,* No. H-19-4315, 2020 U.S. Dist. LEXIS 145806, at *17 (S.D. Tex. Aug. 13, 2020), the court entertained the same argument as presented by BI Science here—that a settlement agreement was not enforceable because was not a signed writing. The court there carefully reviewed the law to conclude that Texas Rule 11 did not apply to the settlement of a case involving a federal question of law, and then found "that the settlement agreement is enforceable because the parties agreed on the material terms." *Id.*

BI Science's cited case law only recites hornbook law that a contract must be sufficiently definite and clear on essential terms, but these terms are set forth in the written document signed by the mediator based on the written exchange of the parties and confirmation that all material terms in those writings were agreed.

BI Science makes several other arguments that were either never made below or were rejected by the arbitrator and the district court upon a review of the relevant facts. For example, BI Science argues that the parties did not have the February 24, 2020 writing when they agreed to the settlement on February 23, 2020. However, the mediator's written, signed Settlement document merely conformed with the

written terms as previously agreed in emails.

BI Science argues that the "Mediator's Proposal" was a proposal, which is entirely irrelevant. The Settlement document itself, not a prior proposal, sets forth all material terms of the agreement. *See* Appx0005. BI Science complains of the timing in which it would exit the proxy business, but BI Science understood that the timing was to be as soon as practicable—it confirmed that when asking to delay its performance under the doctrine of force majeure. Furthermore, absence of detailed terms on time are not required for a valid contract; when not otherwise set forth specifically, the timing is to be a commercially reasonable time. "Where a contract does not specify the time for performance, a party's obligation must be performed within a reasonable period of time under the circumstances of the case. *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn*., 706 F.2d 638, 640-41 (5th Cir. 1983)." *Khawaja Partners, Ltd. v. Jet All Cos*., No. 4:14-CV-02975, 2015 U.S. Dist. LEXIS 155351, at *9 (S.D. Tex. Nov. 16, 2015); *see also Dwoskin v. Rollins, Inc*., 634 F.2d 285, 294 (5th Cir. 1981). This is also true of the implementation mechanics schedule that Bright Data sent to BI Science, which was not a material term but merely a proposal for non-material terms as to implementation timing.

BI Science attempts to create a conflict where there is none about the Settlement terms regarding the '244 patent. The reference to "BI Science's '244 patent" in Term 10 is correct because the patent was BI Science's; that does not

contradict Term 12 that sets out a future requirement for BI Science to assign the '244 patent to Bright Data. *See* Appx0006. BI Science also argues that its refusal to sign the Settlement document shows no intent to be bound, but as the case law authority cited herein makes perfectly clear, refusal to sign a final settlement document does not unwind the settlement agreement already reached. On this point *Core-Vent Corp. v. Implant Innovations, Inc.*, 53 F.3d 1252, 1259 (Fed. Cir. 1995), cited by BI Science, supports Bright Data's position. There the Court held that when the parties provided terms of settlement but never could agree to a later written settlement document, the trial court properly found that a settlement was indeed reached. *Id.* Further, the fact that party later changes its mind cannot undermine its prior agreement. *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981).

Finally, BI Science again cites the fact that the parties used the district court's standard form that refers to a settlement "in principle" when BI Science is fully aware, as the district court found, that such an agreement must include all material terms prior to the filing of a notice and request for stay, leaving only boilerplate, non-material terms to be finalized. In short, none of BI Science's post-hoc rationalizations change the fact that it settled this lawsuit and that it is bound by that settlement.

BI Science's citation to *Wang Laboratories, Inc. v. Applied Computer*

*Sciences, Inc.*, 958 F.2d 355, 357 (Fed. Cir. 1992) is inapposite. In that case the parties misreported that they had settled a case they had not settled and had only a "draft settlement" exchanged at the time. Here, unlike in *Wang*, the parties agreed not only to settle the case but to arbitrate any disputes regarding terms. Also, unlike in *Wang*, here the parties confirmed to the mediator that all material terms were reached and the case had settled. A neutral mediator confirmed with each side that a settlement had been reached and issued a signed writing confirming all terms. The parties filed a notice with the district court further confirming where they knew per the practice of the court that such a notice could only be filed if all material terms were reached first. BI Science partially performed under the agreement, including taking measures to dismiss its challenge in the Patent Trial Appeal Board and participating in arbitration. It asked for an excuse in performance of other terms based on *force majeure*, which only applies if there is an obligation under the agreement in the first instance. These and the other facts above are more than sufficient to support the independent findings of the district court and the arbitrator that a valid settlement agreement was entered under federal law.

### 6.    Although Texas Rule 11 Does not Apply, the Settlement Agreement Would Be Valid Under Texas Rule 11

Even if Texas Rule 11 applied (it does not), the result in this case would remain that the Settlement is binding. First, Texas Rule 11 ("Agreements to Be in Writing") does not specify who must sign a written agreement. The rule in its

entirety states, "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."

Here, BI Science confirmed that "the mediator's proposal has resulted in a settlement resolution," acknowledged the terms incorporated in the mediator's proposal, and signed the joint notice of settlement that was filed with the Court. *See* Appx1501, Appx1474-1475. Furthermore, the mediator signed the Settlement, and that signed document was submitted to the court. The Texas Supreme Court recently confirmed that these facts satisfy Texas Rule 11. *Shamrock Psychiatric Clinic, P.A. v. Tex. HHS*, 540 S.W.3d 553, 560-62 (Tex. 2018) ("Here, the alleged agreement, made via email and memorialized in the Inspector General's status report, was in writing, signed, and filed with the court, as required by Rule 11 . . . .").

Second, courts have interpreted this rule as "analog[ous] to the statute of frauds, which requires certain contracts to be in writing," and the exceptions and limitations on the statute of frauds "apply equally to Rule 11 agreements." *Padilla v. La France*, 907 S.W.2d 454, 460 (Tex. 1995) (Texas Supreme Court reversing denial of summary judgment because the settlement agreement consisting of letters exchanged between the parties was valid as a matter of law, although one of the parties "refused to accept the checks or sign the agreement"). The rule therefore

largely reflects the same Federal common law of contracts that applies here.  *Id.*; *see also Lopez v. Kempthorne*, No. 07-cv-1534, 2010 WL4639046, at *4 (S.D. Tex. Nov. 5, 2010); *Williamson*, 947 F. Supp. 2d at 707 (finding that under Texas Rule 11, emails are writings, automatic signature blocks or typed first names are signatures, and a lawyer's signature is sufficient).  As the Federal Circuit held earlier this year, "The parties dispute whether federal common law or Texas state law applies, but they nonetheless agree that the two are largely indistinguishable." *PlasmaCAM, Inc. v. CNCElectronics, LLC*, No. 2021-1689, 2022 U.S. App. LEXIS 3065, at *11 (Fed. Cir. Feb. 3, 2022).

The argument made by BI Science was rejected in the case *In re Mortg. Analysis Portfolio Strategies*, 221 B.R. 386, 389 (Bankr. W.D. Tex. 1998) when a third party transcribed the settlement terms but it was not signed.  *See also Kosowska v. Kahn,* 929 S.W.2d 505, 508 (Tex. App. 1996) (state court enforced a settlement agreement transcribed and signed by a court reporter but not the parties); *Matter of Omni Video, Inc.,* 60 F.3d 230, 232 (5th Cir. 1995) (but despite a lack of signatures, the Texas Rule 11 was met by a recorded confirmation of the settlement by the parties).

BI Science clearly knew that its confirmation of the Settlement Agreement and subsequent filing of the joint notice of settlement would cause the district court, the mediator, and Bright Data to understand that the Parties entered the Settlement.

*See* Appx1692-1693. BI Science subsequently sought to be excused from performance while confirming it had agreed to perform under the settlement agreement. *See* Appx1549-1550 ("BIScience cannot perform ***as contemplated under the mediated settlement*** at the current time, and BIScience contends it should be excused from performance in light of the impossibility and impracticability of the current situation." (emphasis added)). Thus, even were Texas Rule 11 applicable (it is not), the Settlement signed by the neutral mediator, as well as confirmed by the Notice of Settlement signed by BI Science's counsel, would comply with the rule both literally and as interpreted by decisional authority.

The Court should find that the Arbitration Award is valid and the Settlement was validly entered. If either are confirmed, the Court should affirm the judgment because then the case was validly settled, and BI Science must perform the remainder of its obligations under that settlement.

## VII.   ARGUMENT ON CROSS-APPEAL – CLAIM 108 OF THE '044 PATENT IS NOT INDEFINITE

### A.    STANDARD OF REVIEW

#### 1.    Claim Construction and Indefiniteness Findings are Reviewed *De Novo*

Claim construction, including indefiniteness, is ultimately a question of law that this Court reviews de novo. *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 795 (Fed. Cir. 2019) (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015)); *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1377 (Fed. Cir. 2018). This Court reviews any underlying factual findings regarding extrinsic evidence for clear error. *Id.*

### B.    Claims Should Be Construed to Preserve Their Validity

Claim terms are presumed definite as a matter of law.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 912 n.10 (2014).  The question for the court is whether "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty."  *Id.* at 910; *see also See also Eidos Display, LLC v. AU Optronics Corp.*, 779 F.3d 1360 (Fed. Cir. 2015) (reversing district court for failing to properly take into consideration specification that provided guidance to a POSA as to the meaning of a patent claim).

Claims should be construed to preserve their validity if possible.  *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008).  "[C]lose

questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." *Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004). "[I]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, the claim is sufficiently clear to avoid invalidity on indefiniteness grounds." *Jazz Pharm., Inc. v. Amneal Pharm.*, LLC, 2017 U.S. Dist. LEXIS 183344, at *7 (D.N.J. Nov. 6, 2017) (citing *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008) (internal quotations omitted)).

### C. Claim 108 is Not Indefinite, as a POSA Would Understand that the Method Steps Are Performed by the Second Device

The '044 patent is directed to a proxy network, where consumer devices such as smartphones and laptops register with a server to become proxies. Proxies are "stand ins" and can be used to request information from a web server in lieu of another device. Using proxies, and particularly using a large network of user device proxies, has many benefits, such as enabling a user to request information without being blocked or having misinformation delivered.

The '044 patent sets forth a novel type of four-component proxy network where (1) a "first device" makes a request into (2) a network server (called the "first server"), and the server then finds (3) a "second device" proxy that obtains the sought information from (4) a web server (called the "second server").

The '044 patent includes different method claims directed at two different components in the network: claim 81 is directed to a method of the "first device" that originates the requests, whereas claim 108 is directed to a method by the proxy device (via the "second device") that actually makes the request to the web server and obtains the content to send back to the first device through the network server.

The district court entered a claim construction order in this case on December 6, 2019. *See* Appx1355-1410. The district erroneously found that method of claim 108 of the '044 patent is performed by the "first device" when the claim is performed by the "second device." The court held that "the preamble recites that the method is performed 'by a first device,' not by the second device." *See* Appx1373. In fact, claim 108 also states that the method is performed "via a second device." Bright Data appeals the claim construction finding of indefiniteness of claim 108.

### 1.    The '044 Patent Specification and Claims Themselves Confirm that the Second Device Performs the Steps of Claim 108

The Cross-Appeal concerns a finding of indefiniteness of Claim 108 of U.S. Patent No. 9,241,044 ("'044 Patent"). The '044 Patent is directed to using intermediate tunnel devices as proxies to request content from target servers over the Internet. *See* '044 Patent Abstract ("A method for fetching a content from a web server to a client device is disclosed, using tunnel devices serving as intermediate devices."). Claim 108 recites the following:

108. A method for fetching over the Internet a first content, identified by a

first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:

(a) sending the second identifier to the first server;

(b) receiving a second request from the first device, the second request includes the first content identifier and the third identifier;

(c) in response to receiving the second request, sending the first content identifier to the second server using the third identifier;

(d) receiving the first content from the second server; and

(e) in response to receiving the first content, sending the first content to the first device using the first identifier.

The District Court found Claim 108 indefinite because "[t]he recital of 'via a second device' in [the Preamble of] Claim 108 fails to find any reasonably clear meaning in the context of the remainder of the claim." *Luminati Networks Ltd. v. BIScience Inc.*, No. 2:18-cv-00483-JRG, 2019 U.S. Dist. LEXIS 210544, at *25–27 (E.D. Tex. Dec. 6, 2019); *see also Luminati Networks Ltd. v. UAB Tesonet*, No. 2:18-CV-299-JRG, 2019 U.S. Dist. LEXIS 141513, at *86–88 (E.D. Tex. Aug. 20, 2019). These finding were further confirmed and incorporated in the claim construction in this case. *See* Appx1373.

As confirmed by the Court's other claim construction rulings on Claim 108, the five limitations, (a)–(e), set forth the flow of internet requests through a network involving two servers and two devices:



The same flow of requests is depicted in Fig. 5b regarding the device, labelled "TUNNEL DEVICE":



**FIG. 5b**

Fig. 5b aligns exactly with the claim steps, where the second (tunnel) device (a) sending its identifier to the acceleration [first] server, (b) receiving the content request from client [first] device (c) sending that content request to a data [second] server (second server), (d) receiving the content from the data [second] server, and (e) sending the content to the client [first] device, also as described at Appx0233-0234; see also Fig. 11(a) (showing the second device 33b's interaction with first device 31a, and second server 22a).

The district court held Claim 108 indefinite due to a finding that under the preamble, the claimed method had to be "by a first device" despite the additional phrase "via a second device" also appearing in furtherance of how the method would

be performed.

Notably, the district court correctly rejected a charge of indefiniteness as to Claim 81 of the '044 (a finding no party has appealed), which has the identical preamble:

> 81. A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:
>
> (a) sending the first identifier to the first server;
>
> (b) sending a first request to the first server;
>
> (c) receiving the second identifier from the first server;
>
> (d) sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier; and
>
> (e) receiving the first content from the second device.

The difference between Claim 81 and Claim 108 is that the limitations of Claim 81 (**_not_** Claim 108) recite steps performed by the "first device," as depicted below and shown in the same Fig. 11a:



Thus, the two claims address the two aspects of fetching – Claim 81 is directed to "fetching… by a first device" but Claim 108 is directed to "fetching … via a second device." The "fetching . . . via a second device" in Claim 108 is part of the overall fetching by the first device but it is the part that is done "via a second device."

The overall process, as set forth by expert testimony in the District Court, can be depicted as follows, with Claim 81 covering steps performed by the "Client Device" and Claim 108 covering steps performed by the "Tunnel Device."

Thus, while the preambles of both claim 81 and claim 108 refer to four components where fetching is "by a first device … via a second device," in contrast to claim 108's focus on the "tunnel device," claim 81 is directed to just steps performed by the "Client Device" as highlighted below in Fig. 5b:



**FIG. 5b**

A POSA would understand given the patent specification and interrelationship of the system components with certainty that the client device (first device) is not performing the steps of the tunnel device (second device) that are set out in claim 108. Claim 108 is clearly drawn to steps performed by the tunnel device, so the claim

is not indefinite.

### 2. Bright Data's Expert Testimony Supports a Finding that Claim 108 Is Not Indefinite

As part of the claim construction process, Bright Data submitted expert testimony from Dr. Tom Rhyne showing that a POSA would understand the parameters of claim 108.  As he noted, the preamble is the same for claim 81 and claim 108, but the two claims focus on method steps of a different part of the fetching.  Both claims recite "fetching … by a first device … via a second device." Dr. Rhyne correctly noted that claim 81 relates to steps performed by the first device, whereas claim 108 relates to steps performed via the second device.  That division is entirely consistent with the preamble that sets out all the major components and their roles, even though two different devices perform different steps set forth in the different claims.  Dr. Rhyne set out in detail how claim 108 is supported in this way (Appx1047-1051), and there is no refuting testimony.

Dr. Rhyne found that claim 108 itself would be understood by a POSA to identify steps taken by the second device, and merely confirmed that by viewing the claim in light of the specification, which is required by the legal test regarding definiteness.  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) ("The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art.") (citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 913 (2014)).

In a prior lawsuit, the Court already provided claim constructions for each of the terms at issue in Claim 108, finding that the terms have definite meaning and that they are readily understood and should receive their plain and ordinary meaning. *Luminati Networks Ltd. v. UAB Tesonet*, No. 2:18-CV-299-JRG, 2019 U.S. Dist. LEXIS 141513, at *83 (E.D. Tex. Aug. 20, 2019) ("The Court accordingly hereby construes 'by a first device,' 'from a second server,' 'via a second device,' and 'using a first server' to have their plain and ordinary meaning . . . ."). Here, the district court agreed that Dr. Rhyne stated that the steps could be performed by the second device, but stated that it was unclear if they must be. On the whole, Dr. Rhyne's testimony was that to a POSA claim 108 clearly showed steps performed by the second device (tunnel device) and not by a first device (client device). That further supports that the claim is definite.

## VIII.  CONCLUSION

For the foregoing reasons, BI Science's appeal should be denied. Bright Data's cross-appeal should be granted.

## IX.    STATEMENT OF ORAL ARGUMENT

Oral argument is respectfully requested.

Dated:  February 25, 2021

Respectfully submitted,

By: */s/ Robert Harkins*

Robert Harkins
Korula T. Cherian

RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94704
(510) 944-0190
bobh@ruyakcherian.com
sunnyc@ruyakcherian.com

Ronald Wielkopolski
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
ronw@ruyakcherian.com

*Attorneys for Plaintiff*
*Bright Data Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2020-2118, 2020-2181, 2021-1664, 2021-1667

**Short Case Caption:** Bright Data Ltd. v. BI Science (2009) Ltd.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓] the filing has been prepared using a proportionally-spaced typeface and includes __11,820__ words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __02/25/2022__

Signature: /s/ Robert Harkins

Name: Robert Harkins

Save for Filing