2020-2118, -2181, 2021-1664, -1667

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### BRIGHT DATA LTD.,

*Plaintiff-Cross-Appellant*

**v.**

### BI SCIENCE (2009) LTD.,

*Defendant-Appellant*

### BI SCIENCE INC.,

*Defendant.*

Appeals from the United States District Court for the Eastern District of Texas in No. 2:18-cv-00483-JRG, Chief Judge J. Rodney Gilstrap.

## APPELLANT'S RESPONSE AND REPLY BRIEF

Michael A. Charish
**Charish Law Group P.C.**
347 Fifth Avenue, Suite 1402
New York, New York 10016
646.328.0183

John Christopher Rozendaal
William H. Milliken
**Sterne Kessler Goldstein & Fox**
1100 New York Avenue, NW
Washington, DC 20005
202.371.2600

*Counsel for Appellant BI Science (2009) Ltd.*

Filed:  April 25, 2022

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2020-2118, -2181, 2021-1664, -1667 |
| **Short Case Caption** | Bright Data Ltd. v. BI Science (2009) Ltd. |
| **Filing Party/Entity** | Appellant BI Science (2009) Ltd. |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/04/2021                    Signature:  /s/ William H. Milliken

                                     Name:       William H. Milliken

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| BI Science (2009) Ltd. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Findlay Craft PC: Eric H. Findlay | Findlay Craft PC: Kelce S. Wilson | Love Law Firm PC: Gregory P. Love |
| Findlay Craft PC: Robert B. Craft | Liston Abramson LLP: Ronald Abramson | |
| Findlay Craft PC: Debra E. Gunter | Liston Abramson LLP: Mord M. Lewis | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Luminati Networks Ltd. v. BI Science (2009) Ltd., No. 2:19-cv-352 (E.D. Tex.) | BI Science (2009) Ltd. a/k/a BIScience Inc. v. Luminati Networks Ltd., IPR2020-00166 (PTAB) | |
| Luminati Networks Ltd. v. BI Science (2009) Ltd., No. 2:19-cv-397 (E.D. Tex.) | BI Science (2009) Ltd. a/k/a BIScience Inc. v. Luminati Networks Ltd., IPR2020-00167 (PTAB) | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

PRELIMINARY STATEMENT .................................................................1

ARGUMENT ...........................................................................................2

I.     BRIGHT DATA'S ATTEMPT TO REFRAME THIS APPEAL
FAILS. ..............................................................................................2

II.    THE MEDIATOR'S PROPOSAL IS NOT A BINDING AND
ENFORCEABLE SETTLEMENT AGREEMENT ......................................9

    A.    Texas Law Controls the Dispute Concerning the Mediator's
Proposal. ............................................................................................9

    B.    Under Texas Rule 11, the Mediator's Proposal Is
Unenforceable. ...............................................................................11

        1.    BI Science did not sign the Mediator's Proposal or any
document accepting the terms of that proposal as a
settlement. ...................................................................................12

        2.    The Mediator's Proposal is Materially Incomplete and
Contradictory. .............................................................................14

        3.    This Court May Consider Texas Rule 11. ................................16

    C.    Even if Texas Rule 11 Did Not Apply, There Would Still Be
No Binding Settlement Agreement Under General Contract
Principles. ......................................................................................18

III.   BI SCIENCE IS NOT SUBJECT TO PERSONAL JURISDICTION
IN TEXAS. .....................................................................................24

    A.    BI Science Did Not Purposefully Direct Any Activity
Specifically at Texas Residents. ....................................................24

    B.    Bright Data's Rule 4(k)(2) Argument is Neither Preserved Nor
Meritorious. ...................................................................................27

    C.    BI Science Never Waived its Personal-Jurisdiction Defense. ...........28

ARGUMENT ON CROSS APPEAL ......................................................31

IV.  CLAIM 108 OF THE '044 PATENT IS INVALID AS INDEFINITE........31

    A.    Background of the '044 Patent.............................................31

    B.    Definiteness is Analyzed Under the *Nautilus* "Reasonable Certainty" Standard. ..............................................................32

    C.    The Preamble of Claim 108 Does Not Provide Reasonable Certainty as to Which Device Performs the Claimed Steps. ..............33

    D.    The District Court's Factual Findings Based on Bright Data's Expert Testimony Were Not Clearly Erroneous. ................................36

    E.    The *Tesonet* Decision Undermines, Rather Than Supports, Bright Data's Position. .......................................................38

CONCLUSION ......................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
  18 F.4th 783 (5th Cir. 2021) .................................................................25

*American Int'l Specialty Lines Ins. Co. v. Electronic Data Sys. Corp.*,
  347 F.3d 665 (7th Cir. 2003) ..................................................................9

*ASEP USA, Inc. v. Cole*,
  199 S.W.3d 369 (Tex. App. – Houston 2006).......................................12

*AT&T Techs. Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986).................................................................................8

*Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*,
  359 F.3d 1367 (Fed. Cir. 2004) ............................................................32

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994) ..............................................................26

*Bexar-Mar Int'l, LLC v. Combi Lift GmbH*,
  2020 WL 4979527 (Tex. App. – Houston Aug. 25, 2020)............15, 18

*Bowers v. Abundant Home Health, L.L.C.*,
  803 F. App'x 765 (5th Cir. 2020) ...........................................................9

*Clarent Energy Servs. v. Leasing Ventures, LLC*,
  2020 WL 1173706 (Tex. App. – Houston, Mar. 12, 2020)...........13, 14, 18

*In re Coastal Plains, Inc.*,
  179 F.3d 197 (5th Cir. 1999) ..................................................................7

*CommScope Technologies LLC v. Dali Wireless Inc.*,
  10 F.4th 1289 (Fed. Cir. 2021) .............................................................27

*Cruit v. MTGLQ Inv'rs, LP*,
  2018 WL 4610594 (E.D. Tex. Sept. 26, 2018)............................21, 24

*In re Deepwater Horizon*,
  786 F.3d 344 (5th Cir. 2014) ................................................................10

*Dickey's Barbecue Restaurants, Inc. v. Campbell Invs., LLC*,
   2019 WL 2301367 (E.D. Tex. Feb. 11, 2019),
   *report and recommendation adopted*,
   2019 WL 1219118 (E.D. Tex. Mar. 15, 2019) .................................................30

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
   845 F.3d 1357 (Fed. Cir. 2017) ...........................................................36

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)...........................................................................10

*Fisk Elec. Co. v. DQSI, L.L.C.*,
   894 F.3d 645 (5th Cir. 2018) ..............................................................10

*Fulgence v. J. Ray McDermott & Co.*,
   662 F.2d 1207 (5th Cir. 1981) ............................................................10

*Glud & Marstrand A/S v. Viva Magnetics Ltd. (Hong Kong)*,
   2012 WL 12878686 (W.D. Wash. 2012)...........................................29

*Green Tree Fin. Corp.-Alabama v. Randolph*,
   531 U.S. 79 (2000)................................................................................8

*Halliburton Energy Servs., Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008) ..........................................................33

*Info-Hold, Inc. v. Applied Media Techs. Corp.*,
   783 F.3d 1262 (Fed. Cir. 2015) ..........................................................35

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
   903 F.3d 896 (9th Cir. 2018) ..............................................................29

*Int'l Energy Ventures Mgmt., LLC v. United Energy Group, Ltd.*,
   818 F.3d 193 (5th Cir. 2016) ..............................................................29

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001) ....................................................17, 18

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011)............................................................................25

*Jazz Pharm., Inc. v. Amneal Pharm., LLC*,
   2017 WL 5128748 (D.N.J. Nov. 6, 2017) ..........................................32

*Johnson v. TheHuffingtonPost.com, Inc.*,
   21 F.4th 314 (5th Cir. 2021) ...............................................................25

*Knapp Med. Ctr. v. De La Garza*,
   238 S.W.3d 767 (Tex. 2007) ...............................................................12

*Kosowska v. Kahn*,
   929 S.W.2d 505 (Tex. App. – San Antonio 1996) ............................13

*Lee v. Gulf Coast Blood Ctr.*,
   2020 WL 4700896 (S.D. Tex. Aug. 13, 2020) ..................................10

*Liberto v. D.F. Stauffer Biscuit Co.*,
   441 F.3d 318 (5th Cir. 2006) ..............................................................15

*Lone Star Air Systems, Ltd. v. Powers*,
   401 S.W.3d 855 (Tex. App. – Houston 2013) ...................................12

*Luminati Networks Ltd. v. UAB Tesonet*,
   2019 WL 3943459 (E.D. Tex. Aug. 20, 2019) ..................................38

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
   890 F.3d 995 (Fed. Cir. 2018) ............................................................27

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ................................................................................29

*Mid-S. Towing v. Har-Win, Inc.*,
   733 F.2d 386 (5th Cir. 1984) ................................................................9

*In re Miller*,
   2022 WL 594417 (Fed. Cir. 2022) .....................................................27

*Minnesota Min. & Mfg. Co. v. Chemque, Inc.*,
   303 F.3d 1294 (Fed. Cir. 2002) .......................................................7, 8

*In re Mortgage Analysis Portfolio Strategies*,
   221 B.R. 386 (Bankr. W.D. Tex. 1998)..............................................13

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)........................................................................33, 36

*Netword, LLC v. Centraal Corp.*,
242 F.3d 1347 (Fed. Cir. 2001) ...........................................................30

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010) ...........................................................26

*OJSC Ukrnafta v. Carpatsky Petroleum Corp.*,
957 F.3d 487 (5th Cir. 2020) ...............................................................30

*In re Omni Video, Inc.*,
60 F.3d 230 (5th Cir. 1995) .........................................................10, 13

*Padilla v. LaFrance*,
907 S.W.2d 454 (Tex. 1995) ........................................................14, 16

*Painewebber Inc. v. Chase Manhattan Private Bank (Switzerland)*,
260 F.3d 453 (5th Cir. 2001) ...............................................................29

*Pfizer, Inc. v. Lee*,
811 F.3d 466 (Fed. Cir. 2016) .............................................................16

*PlasmaCAM, Inc. v. CNCElectronics LLC*,
24 F.4th 1378 (Fed. Cir. 2022) .............................................10, 11, 21

*Polar Electro Oy v. Suunto Oy*,
829 F.3d 1343 (Fed. Cir. 2016) ...........................................................26

*ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*,
17 F.4th 1377 (Fed. Cir. 2021) .......................................................8, 10

*Scott v. Vandor*,
671 S.W.2d 79 (Tex. App. – Houston 1984) ......................................24

*Sec'y, U.S. Dep't of Labor v. Preston*,
873 F.3d 877 (11th Cir. 2017) .............................................................17

*Shamrock Psychiatric Clinic, P.A. v. Tex. HHS*,
540 S.W.3d 553 (Tex. 2018) ........................................................12, 13

*Smith v. Johnson Propeller Co.*,
91 F.3d 166 (Fed. Cir. Apr. 24, 1996) (unpublished)........................13

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  789 F.3d 1335 (Fed. Cir. 2015) ........................................................... 36

*Thatcher v. Kohl's Dep't Stores, Inc.*,
  397 F.3d 1370 (Fed. Cir. 2005) ............................................................. 9

*TriOptima AB v. Quantile Techs. Ltd.*,
  2020 WL 11613655 (E.D. Tex. Nov. 30, 2020) .................................... 28

*UMB Bank, N.A. v. Pahuja*,
  2020 WL 6865788 (N.D. Tex. June 30, 2020) ............................... 13, 21

*United States v. Brown*,
  348 F.3d 1200 (10th Cir. 2003) ........................................................... 30

*Wang Labs., Inc. v. Applied Computer Sciences, Inc.*,
  958 F.2d 355 (Fed. Cir. 1992) ............................................................. 21

*Williamson v. Bank of New York Mellon*,
  947 F. Supp. 2d 704 (N.D. Tex. 2013) ................................................. 14

*Yee v. City of Escondido, Cal.*,
  503 U.S. 519 (1992).................................................................... 16, 17

*Zim Israel Navigation Co. v. Special Carriers, Inc.*,
  800 F.2d 1392 (5th Cir. 1986) ............................................................... 9

# PRELIMINARY STATEMENT

Bright Data has endeavored relentlessly to eliminate its competitor BI Science by cramming down a purported settlement that threatens BI Science's existence. Bright Data falsely accuses BI Science of "know[ing] it settled the case" but engaging in a "charade" to continue infringing Bright Data's patents. BD-Br. 5.[1] In truth, BI Science intended to agree to a settlement in principle, but not on the terms it subsequently received in the "Mediator's Proposal" Bright Data drafted (Appx5-6). That proposal did not reflect any settlement BI Science contemplated or could reasonably accept. The district court incorporated the Mediator's Proposal in its final judgment. But this Court granted a temporary stay of the judgment, and the district court granted a stay pending appeal, in light of the irreparable harm that the Mediator's Proposal would inflict on BI Science.

In its opening brief, BI Science demonstrated that the Mediator's Proposal was not a binding settlement agreement under Texas or federal law, and that BI Science was not subject to personal jurisdiction in Texas from the outset. As shown below, Bright Data's response elides key authorities and evidence, misstates the law on key points, and reverses its own positions in the district court. The district court's judgment should be reversed.

---

[1]  "BIS-Br." refers to BI Science's principal brief (ECF No. 72); "BD-Br." refers to Bright Data's principal brief (ECF No. 77).

## ARGUMENT

## I.    BRIGHT DATA'S ATTEMPT TO REFRAME THIS APPEAL FAILS.

Bright Data's attempt to reconfigure this appeal contradicts controlling law and its own positions in the district court.  BI Science appeals from the district court's ruling that the Mediator's Proposal, which included an arbitration provision, is a binding and enforceable settlement agreement.  *See*, *e.g.*, BIS-Br. 1-2, 60-61. The district court issued that ruling from the bench on April 13, 2020 and compelled BI Science to participate in an ultra-expedited arbitration pursuant to the purported agreement.  Appx1683-1684.  The district court reiterated its ruling in its final judgment.  Appx2.  BI Science also appeals the district court's decision denying its motion to dismiss for lack of personal jurisdiction.  *See*, *e.g.*, BIS-Br. 1, 61.

Bright Data's effort to foreclose BI Science's appellate issues assumes the very conclusion Bright Data must establish to prevail — that the Mediator's Proposal is a valid agreement.  Bright Data contends that, because the Mediator's Proposal was valid, BI Science voluntarily participated in the arbitration and therefore waived any challenge to personal jurisdiction or even to the validity of the agreement itself, except on the manifest-disregard standard for challenging confirmation of an arbitration award.  Bright Data circularly argues:  "[T]he district court…sent the parties to arbitrate any disputes regarding the settlement, including the validity of

2

the contract as a whole, because the parties agreed to arbitrate any such disputes."
BD-Br. 20; *see* BD-Br. 2-3, 18-20, 27.

Bright Data premises its argument on claims that BI Science:

- "never disputed" that it agreed to arbitration (BD-Br. 3-4);

- voluntarily participated in the arbitration (*id.*);

- "confirmed that it had entered a binding agreement" and "committed itself to be bound by the arbitration award" (BD-Br. 8);

- "did not oppose the arbitration" (*id.*);

- "did not contest that it had agreed to arbitrate" (BD-Br. 19); and

- "did not object to the arbitration" — on any ground — "either to the district court or to the arbitrator" (BD-Br. 18).

These claims are false. And they are diametrically opposed to Bright Data's claims in the district court. Here is the truth:

After failing to persuade BI Science to sign the Mediator's Proposal, its draft settlement agreement, or its "implementation mechanics schedule," Bright Data did not file an arbitration claim (on a theory that BI Science had already agreed to arbitrate). Instead, Bright Data filed a motion to enforce a settlement. That motion asked *the district court* to decide arbitrability — whether the parties had entered into a binding settlement agreement that included an arbitration provision. Bright Data said it "was forced to file its [m]otion…to *confirm the validity and enforceability of*

*the agreement **as a first step before** exercising the arbitration clause*." Appx1721; *accord* Appx1852; *see also* Appx1827.[2]

At the April 13, 2020 hearing on that motion, Bright Data again ascribed arbitrability to the court:  "We're looking for a declaration…that [the Mediator's Proposal] is the settlement agreement and that constitutes a complete and binding settlement agreement between the parties, and that there is an arbitration provision in that that should be enforced."  Appx1657.  BI Science necessarily opposed arbitration because it took the position that the Mediator's Proposal was not a binding settlement agreement — a position the district court "respect[ed]."  Appx1672; Appx1685.

Bright Data prevailed: the district court *first* found an enforceable settlement agreement and *then* compelled BI Science to arbitrate *pursuant to* that agreement.  In Bright Data's words:  The district court "found the Settlement Agreement to be valid and enforceable and ordered the parties to arbitration *pursuant to term 17 of that agreement*."  Appx1721; *see* Appx2002 (court order stating that the Mediator's Proposal "has been held binding by the [district court], and *as a result*, the [court] ordered the parties to submit to binding arbitration").

---

[2]   Unless otherwise indicated, all emphasis in this brief has been added.

The district court "order[ed] that both parties immediately work with Mr. Cornelius to arrange for a binding arbitration of any unresolved issues related to this settlement and present either the parties' agreement or Mr. Cornelius's binding arbitration award…to the Court before the end of this month" — which was 17 days away.  Appx1693-1694.

BI Science participated in arbitration under protest, reserving its right to appeal.   Page 1 of its April 22, 2020 arbitration submission states:   "*BI []Science…reserves its rights to dispute the rulings and orders entered by the Court and this Arbiter, and by submitting this response in no way does BI []Science waive any of its rights, including but not limited to its rights to appeal.*"  Appx1835.

Six days later, the arbitration was over.  On April 28, 2020, mediator-turned-arbitrator Mr. Cornelius issued a final arbitration award.   The arbitration award delineates the scope of the arbitration, and that scope does not include arbitrability: "The scope of the Arbitrator's role is to *'resolve by binding arbitration disputes regarding the terms and provisions of the settlement'"* — not whether there *was* a settlement.  Appx8 (emphasis in original).

Because BI Science contested the arbitration, it declined to join Bright Data in submitting the arbitration award to the district court.  In Bright Data's words:  BI Science "refused to file the Arbitration Award with [the district court] for

enforcement forcing [Bright Data] to file the Award as an *opposed* motion." Appx1765.

BI Science cooperated with Bright Data only afterward, and only to facilitate an appeal. BI Science informed the district court that it was "not opposed to an appealable order being entered by [the district court]. BI []Science intends to appeal the…ruling from the Bench during the April 13, 2020 hearing granting [Bright Data's] Motion to Enforce the Settlement Agreement." Appx1847. In reply, Bright Data urged the district court to issue a final judgment on all issues and *expressly agreed* that "*[i]f BI Science chooses to appeal that judgment in its entirety, it can do so.*" Appx1860.

Bright Data now attempts to renege on that agreement — and effectively deprive BI Science of its appellate rights. After submitting the issue of arbitrability — whether the Mediator's Proposal is a binding settlement agreement — to the district court; after the district court decided that issue and the arbitrator did not; and after Bright Data prevailed on that issue, Bright Data now tells this Court that "*as a matter of law*," "disputes about whether the agreement was validly entered in the first instance are properly referred to arbitration." BD-Br. 3, 27.

Moreover, after BI Science opposed Bright Data's motion to enforce a settlement agreement, objected to the district court's rulings and the arbitration, and stated its intention to appeal from the district court's finding of a settlement

6

agreement; after Bright Data argued to the district court that BI Science had opposed the arbitration award but would be entitled to appeal from the entirety of a final judgment; and after Bright Data prevailed by having the district court incorporate the arbitration award in a final judgment; Bright Data now tells this Court that because BI Science never "disputed," "contest[ed]," "opposed," or "objected" to arbitration on any ground, and even "committed itself to be bound by the arbitration award"; BI Science *cannot* appeal the issue of personal jurisdiction or the validity of the settlement agreement. *See*, *e.g.*, BD-Br. 2-4, 8, 10, 15, 16, 18-19, 25-26.

Equity has a doctrine to contend with such manipulative litigation conduct: judicial estoppel. "'The purpose of the doctrine is to 'protect the integrity of the judicial process,' by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self[-]interest.'" *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1302-03 (Fed. Cir. 2002) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)). Bright Data's positions on this appeal are "clearly inconsistent" with its positions in the district court; Bright Data prevailed on its district-court positions; and it would "impose an unfair detriment" on BI Science if the Court countenanced Bright Data's current positions. Consequently, Bright Data is judicially estopped from arguing that BI Science waived its personal-jurisdiction defense and that "unless…the Arbitration Award manifestly disregarded

the law, the district court's judgment must be upheld." *See Minnesota Min.*, 303 F.3d at 1303; BD-Br. 26.

Beyond judicial estoppel, Bright Data's positions defy the law. Bright Data's position that arbitrators decide arbitrability "as a matter of law" (BD-Br. 3) is frivolous. Time and again, the Supreme Court and this Court have held that, absent "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability, "the issue of arbitrability should be decided by a court." *E.g.*, *ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*, 17 F.4th 1377, 1380 (Fed. Cir. 2021) (quoting *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Term 17 of the Mediator's Proposal contains no such "clear and unmistakable evidence." To the contrary, as Bright Data, the district court, and the arbitrator all understood, for there to be an arbitration about the "terms and provisions of *the settlement*" (Appx6, Term 17), a court must first decide that there *was* a settlement.

In any event, it was the district court that actually decided the validity of the Mediator's Proposal and compelled arbitration. That decision was not appealable when it was first rendered from the bench, but it is appealable now. *See, e.g., Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 87 (2000) (under FAA § 16(a)(3), only a "final decision" compelling arbitration, which dismisses all claims before the court, is appealable). And because BI Science "participated in the arbitration only because the district court ordered it to do so," it has waived no

appellate rights. *See American Int'l Specialty Lines Ins. Co. v. Electronic Data Sys. Corp.*, 347 F.3d 665, 667-69 (7th Cir. 2003). The defective foundation of Bright Data's position on appeal — that this Court is restricted to reviewing "whether the arbitrator manifestly ignored the law" (BD-Br. 10) — collapses.

## II.    THE MEDIATOR'S PROPOSAL IS NOT A BINDING AND ENFORCEABLE SETTLEMENT AGREEMENT

### A.    Texas Law Controls the Dispute Concerning the Mediator's Proposal.

BI Science outlined eleven Supreme Court and Federal Circuit cases constraining the use of federal common law and mandating that "*settlement agreements in patent cases should not be governed by federal common law but instead by state contract law.*" *Thatcher v. Kohl's Dep't Stores, Inc.*, 397 F.3d 1370, 1374 (Fed. Cir. 2005). BIS-Br. 39-44. In response, Bright Data makes no attempt to distinguish *any* of these cases. Instead, Bright Data intransigently insists that, because its claims derive from federal patent law, federal common law must govern the validity of the settlement agreement. BD-Br. 31-33.

Tellingly, Bright Data cites not a single patent case to support its choice-of-law argument. Instead, it cites Fifth Circuit cases concerning admiralty law (*Mid-S. Towing v. Har-Win, Inc.*, 733 F.2d 386 (5th Cir. 1984), *Zim Israel Navigation Co. v. Special Carriers, Inc*., 800 F.2d 1392 (5th Cir. 1986)) and federal statutes such as the Fair Labor Standards Act (*Bowers v. Abundant Home Health, L.L.C.*, 803 F.

App'x 765 (5th Cir. 2020), *Lee v. Gulf Coast Blood Ctr.*, 2020 WL 4700896 (S.D. Tex. Aug. 13, 2020)); the Civil Rights Act (*Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207 (5th Cir. 1981)); the Oil Pollution Act (*In re Deepwater Horizon*, 786 F.3d 344 (5th Cir. 2014)); and the Miller Act (*Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645 (5th Cir. 2018)).  *See* BD-Br. 32.

One of Bright Data's Fifth Circuit cases undermines its position by applying Texas Rule of Civil Procedure 11 ("Texas Rule 11") to a disputed settlement in a federal-question case.  *See In re Omni Video, Inc.*, 60 F.3d 230, 232 (5th Cir. 1995). Thus, Bright Data's response casts no doubt on this Court's consistent application of state law to contract issues in patent cases.  *See* BIS-Br. 42-44.

Moreover, application of state law is doubly mandated here because the disputed settlement contract includes an arbitration provision.  "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability) courts generally…should apply ordinary *state-law principles* that govern the formation of contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *accord*, *e.g.*, *ROHM Semiconductor*, 17 F.4th at 1380.

Bright Data correctly notes (BD-Br. 39) that in *PlasmaCAM, Inc. v. CNCElectronics LLC*, the parties agreed that — on the issue of settlement enforceability — federal common law and Texas state law are "largely indistinguishable."  24 F.4th 1378, 1383 (Fed. Cir. 2022)).  But the parties in

*PlasmaCAM* did not invoke Texas Rule 11. *See* Case No. 2021-1689, ECF Nos. 8, 13, 14 (merits briefs). Here there is a potential, material difference between state law and federal common law. To be sure, BI Science maintains that, even under federal common law, there is no enforceable settlement agreement. But Texas Rule 11 establishes an objective bright line for determining whether an enforceable settlement is reached, without the need for probing the oftentimes more complicated issues of offer, acceptance, and meeting of the minds. That bright line resolves this case. *See* BIS-Br. 46-61; *infra* Points II.C, II.D.

Of all possible jurisdictions in which to bring this case, Bright Data selected Texas. It cannot now de-select Texas's explicit prerequisites for an enforceable settlement. Under binding precedent, Texas law determines whether the Mediator's Proposal is an enforceable settlement agreement.

### B.    Under Texas Rule 11, the Mediator's Proposal Is Unenforceable.

BI Science has shown that the Mediator's Proposal is unenforceable under Texas Rule 11 because (1) BI Science never signed it or subscribed to its terms and (2) it is missing material terms, which Bright Data tried to inject after the fact. BIS-Br. 46-53. As shown below, Bright Data cannot resurrect the Mediator's Proposal under Texas law.

### 1. BI Science did not sign the Mediator's Proposal or any document accepting the terms of that proposal as a settlement.

On Texas Rule 11, Bright Data misstates BI Science's position as well as the law. Bright Data invents the strawman that BI Science argues that "a *client* signature" is "legally necessary for the formation" of a settlement agreement. BD-Br. 31. Bright Data then proffers the baseless argument that — since Rule 11's text does not stipulate who must sign a settlement agreement — anyone can sign it, and one signature is enough. BD-Br. 37-38.

Negative. Texas Rule 11 is a statute of frauds. *See*, *e.g.*, *Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 769 (Tex. 2007). It requires the signature of the party *against whom enforcement is sought*. *See*, *e.g.*, *ASEP USA, Inc. v. Cole*, 199 S.W.3d 369, 379 (Tex. App. – Houston 2006) ("Here, the letter at issue was signed only by one party. Thus, it was not a valid Rule 11 agreement."); *Lone Star Air Systems, Ltd. v. Powers*, 401 S.W.3d 855 (Tex. App. – Houston 2013) ("The signature of the person against whom enforcement is sought authenticates the document as reliable evidence of that person's agreement to the transaction.") (discussing general Texas statute of frauds).

*Shamrock Psychiatric Clinic, P.A. v. Tex. HHS*, 540 S.W.3d 553 (Tex. 2018) (cited at BD-Br. 38), confirms as much. There, the Inspector General clearly agreed via e-mail to consolidate two cases, signed a status report that "expressly state[d]" that agreement, and reaffirmed that agreement in a judicial conference;

12

consequently, the court granted enforcement of a Rule-11-type agreement *against the Inspector General*. *Id.* at 557, 560-61.

As shown in BI Science's opening brief, the recent, on-point decisions in *Clarent Energy Servs. v. Leasing Ventures, LLC*, and *UMB Bank, N.A. v. Pahuja* demonstrate that even where a mediator — or the parties themselves — believe a case has settled and notify the court of a settlement, Texas Rule 11 is not satisfied without a signed writing stating *unequivocal acceptance* of a specific set of settlement terms. BIS-Br. 47-51; *Clarent*, 2020 WL 1173706 (Tex. App. – Houston, Mar. 12, 2020); *UMB*, 2020 WL 6865788 (N.D. Tex. June 30, 2020).

Bright Data offers no response to *Clarent* or *UMB,* or to *Smith v. Johnson Propeller Co.*, in which this Court applied the Michigan analog of Texas Rule 11 and reversed a judgment of a binding settlement agreement because there was no written acceptance of the settlement offer. *See* 91 F.3d 166 (Fed. Cir. Apr. 24, 1996) (unpublished).

Instead, Bright Data marshals an array of inapposite Texas Rule 11 cases. *See* BD-Br. 38-39. Several of those cases involved the *second* prong of Rule 11, not at issue here, under which an agreement may be enforceable if "made in open court and entered of record." *See, e.g., Kosowska v. Kahn,* 929 S.W.2d 505, 507 (Tex. App. – San Antonio 1996); *Omni Video*, 60 F.3d at 232; *In re Mortgage Analysis Portfolio Strategies,* 221 B.R. 386, 389 (Bankr. W.D. Tex. 1998). Another case

involved a party who did not dispute she had agreed to a Rule 11 settlement but wanted to revoke her consent. *See Williamson v. Bank of New York Mellon*, 947 F. Supp. 2d 704, 707 (N.D. Tex. 2013). Lastly, the doppelganger case of *Clarent* explicitly distinguishes the complete, assented-to agreement upheld in *Padilla v. LaFrance,* 907 S.W.2d 454, 461 (Tex. 1995) — differentiating between a "settlement" and a "settlement *in principle*." *See Clarent*, 2020 WL 1173706, at *10.

Here, Bright Data can point to no written communication — signed or even unsigned, from any BI Science employee or attorney — in which BI Science states that it agreed to the 17 terms in the Mediator's Proposal. Instead, Bright Data rests its case on an unsigned attorney e-mail saying only, "Thanks for all your hard work Bill," and a second attorney e-mail authorizing Bright Data to file a notice of settlement "in principle" — with no indication whatsoever of the proposed settlement terms. *See*, *e.g.*, BIS-Br. 7-8, 46-47; BD-Br. 38, 40. As a matter of Texas law, the Mediator's Proposal is unenforceable.

## 2. The Mediator's Proposal is Materially Incomplete and Contradictory.

BI Science showed that Texas Rule 11 bars enforcement of the Mediator's Proposal for a second reason: It is not a "written memorandum which is complete within itself in *every material detail*, and which contains *all of the essential elements of the agreement*…." *Padilla*, 907 S.W.2d at 460. It contains no indication of the

timing or terms under which BI Science would exit the proxy-service business or coordinate the technologically complex "transfer" of customers to Bright Data. If the Mediator's Proposal had been a complete agreement, Bright Data would not have sought BI Science's agreement to, and signature on, its "implementation mechanics schedule," which proposed timing and other specialized terms. *See* Appx1526-1527; Appx1533-1536; BIS-Br. 13, 51-53.

In response, Bright Data argues that timing terms are not required for a valid contract, as a "commercially reasonable time" for performance is implied in the absence of specificity. BD-Br. 35. In that case, why not simply leave BI Science to perform in a commercially reasonable time? In fact, "Texas courts have consistently held that a contract may be held void for indefiniteness if it fails to specify 'the time of performance.'" *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006) (executed settlement agreement was non-binding because material terms such as time of performance, duration, and "enforcement mechanisms" were absent); *see also*, *e.g.*, *Bexar-Mar Int'l, LLC v. Combi Lift GmbH,* 2020 WL 4979527, at *8 (Tex. App. – Houston Aug. 25, 2020).

Ultimately, though, the final judgment itself conclusively establishes that the Mediator's Proposal was incomplete and that additional terms were essential. The final judgment incorporates the arbitration award that Bright Data champions. The arbitration award adopts an implementation schedule based on Bright Data's

proposed implementation schedule.  Appx12-13.  And the arbitration award rules that "*[a]n implementation schedule is* **essential** *here in order to give meaning and effect to the Arbitrator's resolution of the disputed terms*."  Appx8.

That alone disqualifies the Mediator's Proposal under Texas Rule 11.  And the irreconcilable conflict between Terms 10 and 12 further renders the Mediator's Proposal unenforceable, as it is not a "contract [that] can be ascertained from the writing[]."  *See Padilla*, 907 S.W.2d at 460; BIS-Br. 52-53; *infra* pp. 22-23.  Under these circumstances — where material terms and essential details are missing from, and contradictory within, the purported agreement — it is unenforceable.

### 3.  This Court May Consider Texas Rule 11.

Bright Data falsely claims that "BI Science's arguments that Texas state law should apply to the Settlement were never made to…the district court and are therefore waived."  BD-Br. 11, 31.  In truth, BI Science extensively argued for the application of Texas state law, and Texas Rule 11 in particular, in four separate district-court briefs supporting BI Science's stay motions, to which Bright Data responded each time on the merits.  *See, e.g.*, Appx2091-2093, Appx2138, Appx2149-2150, Appx2161-2163.

In any event, this Court will adjudicate new or additional *arguments* when those arguments concern an *issue* properly raised below.  *See*, *e.g.*, *Pfizer, Inc. v. Lee*, 811 F.3d 466, 471 (Fed. Cir. 2016).  As the Supreme Court explained in *Yee v.*

*City of Escondido, Cal.*, "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." 503 U.S. 519, 534 (1992); *see also*, *e.g.*, *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001) ("[T]his court does not review supporting arguments, but only the decisions reached by the trial court."); *Sec'y, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 883 n.5 (11th Cir. 2017) ("Parties can most assuredly waive positions and issues on appeal, but not individual arguments — let alone authorities.").

Here, even before the district court's judgment, BI Science raised, and the district court considered, the same grounds for invalidating the Mediator's Proposal as under Texas Rule 11: the absence of material terms and BI Science's signature. Contrary to Bright Data's claim that BI Science "implicitly confirmed that it had agreed to the settlement terms" when it opposed Bright Data's settlement-enforcement motion (BD-Br. 7-8, 40), BI Science argued that the Mediator's Proposal was "*missing details, terms to implement the agreement, timeline, clarifications, and other necessary information to complete the settlement [which were] needed in a formal settlement agreement*." Appx1551-1552.

At the April 13, 2020 hearing, the district court pressed BI Science on its assertion that the Mediator's Proposal was unenforceable because it was missing material terms and BI Science never signed it. *See* Appx1676 (summarizing BI

17

Science's position as terms that "are essential and necessary weren't included" and "they don't have a binding signature from us").  Thus, the fact that BI Science began citing Texas Rule 11 to the district court post-judgment — in support of the same positions and issues it presented *pre*-judgment — represents no "moving target" and is no barrier to this Court considering BI Science's Rule 11 argument.  *See Interactive*, 256 F.3d at 1346.

### C.   Even if Texas Rule 11 Did Not Apply, There Would Still Be No Binding Settlement Agreement Under General Contract Principles.

BI Science has shown that (a) the irregularities and contradictions on the face of the Mediator's Proposal, (b) the post-hoc genesis of the Mediator's Proposal, and (c) the parties' undisputed conduct surrounding the Mediator's Proposal negate basic contract elements under state and federal law alike.  Bright Data did not prove "a clear and definite offer followed by a clear and definite acceptance," and it did not prove a meeting of the minds — that the parties "agree[d] to the same thing, in the same sense, at the same time."  BIS-Br. 53-60; *Bexar-Mar*, 2020 WL 4979527, at *6; *Clarent*, 2020 WL 1173706, *8 (internal quotation marks omitted).

In response, Bright Data remains silent regarding evidence that is too daunting for it.  For example, Bright Data fails to explain how — two days after a purported meeting of the minds on a binding settlement agreement — its own counsel represented to the PTAB that the parties had "reached an agreement *in principle*"

only; the district court had stayed litigation to "permit the Parties *to finalize settlement.*" Appx1816; BIS-Br. 59.

The arguments that Bright Data does make are unconvincing. As of February 23, 2020, the purported settlement was a tossed salad of assorted terms modified in various cross-referenced e-mails. To state Bright Data's evidence of a purported agreement is to refute it: According to mediator Cornelius's e-mail, "*the mediator's proposal…resulted in a settlement. Incorporated into that is the list of terms that Ron sent me yesterday…. That list, of course, is modified in some respects by the terms of the proposal, including the most recent proposed language added to it this morning….*'" Appx1501; *see* BD-Br. 7, 28. Even had BI Science counsel replied saying, "We unequivocally accept those terms as a binding settlement," it might still be impossible to prove that BI Science and Bright Data "agree[d] to the same thing, in the same sense, at the same time." But BI Science sent no such reply. For that matter, neither did Bright Data. *See* Appx1501.

Nevertheless, Bright Data claims that "BI Science confirmed its agreement to the terms in various e-mails with the mediator on February 23, 2020…." Yet Bright Data provides no citations to any such supposed e-mails. *See* BD-Br. 30, 34-35.

Bright Data continues artfully that "the terms from those emails *merely assembled into* a single document on February 24, 2020," as if the settlement terms magically organized themselves into the Mediator's Proposal. BD-Br. 30. But in

fact, *Bright Data* — not mediator Cornelius — created the Mediator's Proposal document that is the purported settlement "agreement" in this case. *See* Appx1485 ("Plaintiff's counsel consolidated the agreed upon terms in one document and sent that document to the Mediator….").[3]

Bright Data sent its Mediator's Proposal to the mediator for his signature, *without copying BI Science*. Only after the mediator and Bright Data signed the document did Bright Data disclose it to BI Science, with a request that BI Science countersign. BI Science refused. Bright Data's version of the Mediator's Proposal did not reflect any deal to which BI Science would have agreed. *See*, *e.g.*, BIS-Br. 8-12; Appx1496-1497; Appx1521; Appx1502-1503; Appx2079.

In the absence of any explicit evidence that BI Science accepted the 17 terms of the Mediator's Proposal, Bright Data attempts to infer (as the district court inferred) that there *must* have been a settlement agreement because BI Science approved a settlement notice to the court. *See* BD-Br. 29. But that notice predated the Mediator's Proposal and spoke only of a settlement "in principle" — the same language that Bright Data used in its e-mail notice to the PTAB. *See* Appx1474; Appx1816. There is no dearth of precedent in which parties, or a mediator, reported even an unqualified settlement to the court only for a court to later find that they

---

[3]   BI Science's opening brief indicated that Cornelius was the drafter (BIS-Br. 8), but further review of the record has shown that it was Bright Data.

never entered into a binding settlement.  *See*, *e.g.*, *Cruit v. MTGLQ Inv'rs, LP*, 2018 WL 4610594 (E.D. Tex. Sept. 26, 2018).

For example, in *Wang Labs., Inc. v. Applied Computer Sciences, Inc.*, this Court reversed a district court's enforcement of an unsigned settlement agreement and cautioned that courts do "not have the power to impose a settlement agreement when there was never a meeting of the minds."  958 F.2d 355, 359 (Fed. Cir. 1992); BIS-Br. 53-55 (discussing *Wang*).   This Court reached a different result in *PlasmaCAM*, where: the parties reported that they had *not* reached a settlement; the district court nevertheless found a settlement agreement; and this Court reversed and found a different agreement.  The Court found a meeting of the minds by identifying the parties' express written agreements (in e-mails and court briefs) to each of the terms at issue.  *See* 24 F.4th at 1381, 1383-84.

If trial-court judges can make mistakes about whether parties have reached a binding settlement, and *parties* can make mistakes about whether *they* have reached a binding settlement, then so too can mediators make mistakes about whether they have mediated a binding settlement, as the mediator in this case did.  *See*, *e.g.*, *UMB*, 2020 WL 6865788, at \*1 (finding no settlement despite mediator's notice that "the case had [s]ettled as a result of ADR").   The fulcrum is clear, definite, objective evidence of a meeting of the minds.   Bright Data's sundry factual distinctions

between this case and *Wang* (BD-Br. 37) thus make no difference; as in *Wang*, that evidence is lacking.

Moreover, even had BI Science *tried* to accept the Mediator's Proposal, it would be unenforceable because it is missing essential terms (*see supra* Point II.B.2) and because it literally cannot be enforced as written.  It contains an irreconcilable contradiction on the essential issue of who was to own BI Science's prized '244 patent:  Term 12 calls for BI Science to assign the patent to Bright Data.  But Term 10 unambiguously contemplates that BI Science will *retain* the patent, as it prohibits Bright Data from challenging "*BI Science's* ['244 patent]."  Appx5; BIS-Br. 9-11, 59.

In response, Bright Data posits no contradiction because Term 12 "sets out a *future* requirement for BI Science to assign the '244 patent to Bright Data."  BD-Br. 35-36.  That is the opposite of what Bright Data (originally) argued to the district court: that the Mediator's Proposal "*Is* A Written Assignment of the '244 Patent," and there was no further assignment or "*any future action*" required.  Appx2109-2111.

Regardless, Bright Data's revised interpretation is not plausible.  Why would BI Science insist on a term that Bright Data cannot challenge the '244 patent if BI Science were assigning the patent to Bright Data?  Bright Data's revised interpretation — a patent assignment under Term 12 at an unspecified future time,

22

and an unspecified time limit on a Term 10 challenge to the patent — serves only to underscore that the Mediator's Proposal lacks material terms. Either way, there was no meeting of the minds.

Finally, Bright Data again contradicts its representations to the district court in asserting that BI Science's alleged "partial performance" of the Mediator's Proposal evidences that BI Science acknowledged the validity of a settlement (*see* BD-Br. 30-31, 37). In the district court, Bright Data filed three enforcement motions, plus one sanctions motion, in which it complained bitterly that "*BI Science steadfastly refused to perform under the agreement or even acknowledge its validity*." Appx1851; *accord*, *e.g.*, Appx1719; Appx1721; Appx1729; Appx1765; Appx1767; Appx1826; Appx1827; Appx1830.

Bright Data's primary example of alleged partial performance further damages its credibility. BI Science did terminate IPRs challenging Bright Data patents at the PTAB. *See* BD-Br. 31, 37. But what Bright Data omits is that BI Science "refuse[d] to cooperate in filing termination papers" for the IPRs because it *disputed* the claimed settlement; it ultimately cooperated only because Mr. Cornelius issued an arbitration order compelling it do so. *See* Appx1721-1724, Appx1783 (Bright Data brief and arbitration order); *see also*, *e.g.*, Appx1486 (2/25/20 BI Science e-mail stating, "we are not going to terminate the IPRs *until the settlement is finalized*").

23

In sum, even general contract principles require an "'unqualified, absolute, unconditional, unequivocal, unambiguous, [and] positive' acceptance" of an offer "to form a contract." *Cruit*, 2018 WL 4610594, at *3 (quoting *Scott v. Vandor*, 671 S.W.2d 79, 84 (Tex. App. – Houston 1984)).  Bright Data failed to prove that BI Science unqualifiedly, absolutely, and unequivocally accepted the Mediator's Proposal or its 17 terms at any time — not before, upon, or after receiving the Proposal.  The district court's decision finding a binding settlement agreement, and ordering the parties to arbitrate its terms, should be reversed.

## III.  BI SCIENCE IS NOT SUBJECT TO PERSONAL JURISDICTION IN TEXAS.

### A.  BI Science Did Not Purposefully Direct Any Activity Specifically at Texas Residents.

BI Science demonstrated that it is not subject to personal jurisdiction in Texas because it never purposefully directed any activity specifically at Texas residents. BI Science's website and its GeoSurf residential proxy network were available equally to everyone around the world.  The few Texans who joined the GeoSurf network did so unilaterally, without any BI Science marketing or advertising targeting Texas.  Affirming the district court's exercise of jurisdiction over BI Science would unconstitutionally expand the law of personal jurisdiction and subject companies that connect people through cyberspace to jurisdiction in every district in the United States where their technology is used.  BIS-Br. 19-38.

Moreover, since BI Science filed its opening brief, the Fifth Circuit has ruled twice that a defendant does not have sufficient minimum contacts with a forum state just because its website is accessible there: "The Internet is premised on the lack of territorial limits. Personal jurisdiction works just the opposite." *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783 (5th Cir. 2021)); *see Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 321-22 (5th Cir. 2021) ("HuffPost shows ads to all comers; it treats Texans like everyone else. To target every user everywhere, as those ads do, is to target no place at all.").

Bright Data does not meaningfully address BI Science's substantive points, or the authority and precedent supporting them. The three jurisdiction arguments that Bright Data does make are unpersuasive.

*First*, Bright Data claims that BI Science's use of allegedly "infringing proxies" in Texas is sufficient to confer jurisdiction under the stream-of-commerce theory. BD-Br. 24. Not so. Stream-of-commerce jurisprudence requires the delivery of physical products into the local forum, which must be made through a third-party distributor using intentionally established distribution chains. BIS-Br. 34-37 (citing, *e.g.*, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011)). Neither prerequisite is present here. BI Science has never sold hardware to GeoSurf members in Texas, or to anyone, anywhere. GeoSurf is a residential proxy network that relies on the hardware of its members. *See* BIS-Br. 3-5. Needless to say, then,

there is no evidence or claim that BI Science relied on third-party distributors to deliver products into Texas.  Thus, Bright Data's continued reliance on stream-of-commerce cases like *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1350 (Fed. Cir. 2016), *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234 (Fed. Cir. 2010), and *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994), is unavailing.

*Second*, Bright Data asserts that BI Science relies exclusively on personal-jurisdiction cases where the defendants conducted no business with residents of the forum.  BD-Br. 24.  Not so.  BI Science discussed *Pervasive Software*, which found no jurisdiction in Texas, even though Texas residents accessed the defendant's website and purchased software, because the website, like BI Science's website, was not specifically directed to Texas residents.  BIS-Br. 23, 26 (citing *Pervasive Software*, 688 F.3d at 227-28).  BI Science also discussed *be2*, which reversed a finding of personal jurisdiction in Illinois even though 20 Chicagoans registered themselves on the defendant's website.  BIS-Br. 24, 27-28 (discussing *be2*, 642 F.3d at 556-59).  Even in *Trintec* — the only personal-jurisdiction case in BI Science's opening brief that Bright Data actually attempts to distinguish — the defendant made sales in the forum jurisdiction, and this Court nevertheless found there was no personal jurisdiction over the defendant.  BIS-Br. at 23, 27 (citing *Trintec*, 395 F.3d at 1281).

*Third*, Bright Data cites *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.* (BD-Br. 24), but that case is inapposite.  *M-I Drilling* held that defendant Dynamic had purposefully directed activities at the United States by installing systems on two American ships and engaging in allegedly infringing activities aboard those ships.  *See* 890 F.3d 995, 1000 (Fed. Cir. 2018).   Unlike Dynamic, BI Science did not purposefully direct anything at Texas, but treated Texas like everywhere else, and Texans like everyone else.  BI Science did not install or sell hardware in Texas as part of its GeoSurf network.  It provided *access* to a peer-to-peer network whose members chose to share their proxies with other network members around the globe in order to access the internet anonymously.

## B.      Bright Data's Rule 4(k)(2) Argument is Neither Preserved Nor Meritorious.

Bright Data claims in a one-sentence footnote that, pursuant to Federal Rule of Procedure 4(k)(2), the Court should weigh BI Science's contacts throughout the United States for personal-jurisdiction purposes.  BD-Br. 25 n.3.  This Court does not normally address arguments raised in a footnote.  *See*, *e.g.*, *In re Miller*, 2022 WL 594417, at *3 n.2 (Fed. Cir. 2022).   Indeed, even if it were in the text, the argument is so cursory that Bright Data has not adequately developed it for the Court's consideration.  *See*, *e.g.*, *CommScope Technologies LLC v. Dali Wireless Inc.,* 10 F.4th 1289, 1296 (Fed. Cir. 2021).

In any event, as BI Science showed in its opening brief, and argued below, Rule 4(k)(2) is not applicable here because BI Science was subject to — and indeed consented to — personal jurisdiction in New York. BIS-Br. 21; *see also*, *e.g.*, *TriOptima AB v. Quantile Techs. Ltd.*, 2020 WL 11613655, at *6 (E.D. Tex. Nov. 30, 2020) ("as [defendant] has asserted that it is subject to personal jurisdiction in New York, Rule 4(k)(2) does not apply here.").

## C.    BI Science Never Waived its Personal-Jurisdiction Defense.

Instead of substantively addressing BI Science's personal-jurisdiction arguments and authority on the merits, Bright Data hangs its hat on meritless waiver arguments. According to Bright Data, BI Science cannot pursue its personal-jurisdiction defense on appeal because it "voluntarily" participated in mediation and arbitration. As shown above in Point I, Bright Data is wrong; and because it took the opposite position in the district court, it should be judicially estopped from claiming waiver. The mediation and arbitration were court-ordered. By obeying the district court's orders after unsuccessfully contesting jurisdiction, BI Science did not waive its constitutional right to due process.

To the contrary, BI Science preserved its personal-jurisdiction defense by raising it at the first opportunity, when it moved to dismiss Bright Data's complaint (Appx542-546); again, when it moved to dismiss the amended complaint (Appx725-730); again, when it filed its answer: "BI Science denies that this Court has personal

jurisdiction over BI Science for the reasons articulated in its Motion to Dismiss" (Appx877); and yet again, when it moved for a stay pending appeal (*e.g.*, Appx2090-2091). That was more than sufficient. "Absent an invitation from the district court to re-litigate the issue…a defense of personal jurisdiction that has been timely asserted and litigated to an adverse decision from the district court will remain preserved for appeal." *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 903 F.3d 896, 901 n.1 (9th Cir. 2018).

Bright Data cites two cases that actually *rejected* waiver arguments like those it advances. BD-Br. 17, 19. In *Int'l Energy Ventures Mgmt., LLC v. United Energy Group, Ltd.*, the Fifth Circuit affirmed dismissal of the case for lack of personal jurisdiction. *See* 818 F.3d 193, 212 (5th Cir. 2016). In *Painewebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, the Fifth Circuit ruled that the defendant had *not* waived its personal-jurisdiction defense since it briefed that defense in a motion to stay pending appeal. *See* 260 F.3d 453, 460-61 (5th Cir. 2001).

The other cases Bright Data cites are readily distinguishable, as they found jurisdiction where the defendant had contractually agreed to jurisdiction or arbitration in the forum — unlike BI Science (*see supra* Points I & II). *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972) (contractual forum-selection clause); *Glud & Marstrand A/S v. Viva Magnetics Ltd. (Hong Kong)*, 2012 WL 12878686, at *1 (W.D. Wash. 2012) (defendant signed a settlement agreement

consenting to personal jurisdiction); *Dickey's Barbecue Restaurants, Inc. v. Campbell Invs., LLC*, 2019 WL 2301367, at *5 (E.D. Tex. Feb. 11, 2019) (parties agreed to arbitration and to litigate non-arbitrable claims in Texas courts); *OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, 957 F.3d 487, 498 (5th Cir. 2020) (parties agreed to arbitration).

Finally, Bright Data argues that BI Science forfeited the right to press its personal-jurisdiction defense because its opening brief did not preemptively address Bright Data's waiver arguments. BD-Br. 17. BI Science did not forfeit anything. An appellant is not required to anticipate and dispute in its opening brief every possible alternative ground for affirmance that an appellee might (or might not) raise in its brief. That is what reply briefs are for. *See, e.g.*, *United States v. Brown*, 348 F.3d 1200, 1213 (10th Cir. 2003) ("When an appellee raises in its answer brief an alternative ground for affirmance, the appellant is entitled to respond in its reply brief"); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1356 (Fed. Cir. 2001) (same).

In sum: As part of its appellate strategy, Bright Data ignored substantive arguments and authorities on personal jurisdiction that BI Science presented in its opening brief. Bright Data opted instead to focus on meritless waiver arguments. The Court should reverse the final judgment because the Mediator's Proposal is unenforceable and there was never any binding settlement agreement — or

arbitration agreement — between the parties. And, because the district court lacked jurisdiction over BI Science, this Court should order dismissal of the Amended Complaint.

## ARGUMENT ON CROSS APPEAL

## IV.  CLAIM 108 OF THE '044 PATENT IS INVALID AS INDEFINITE

Claim 108 of the '044 patent is indefinite because a skilled artisan would not understand with reasonable certainty what structure recited in the limiting preamble performs any or all of the claimed method steps. Bright Data's contrary contention relies on an incorrect understanding of the law, unsupported attorney argument, and attempts to impermissibly read exemplary embodiments into the claim. Bright Data also relies on testimony from its expert, Dr. Rhyne. But Dr. Rhyne merely repeats the same flawed and conclusory analysis advanced by Bright Data.

The district court fully considered all of Bright Data's arguments and correctly found claim 108 indefinite. Bright Data offers no basis for this Court reaching a different conclusion on the ultimate question of law, nor does it identify any clear error in the district court's underlying factual findings. The district court's judgment on this issue should be affirmed.

### A.    Background of the '044 Patent

The '044 patent describes a method for fetching content from a web server to a client device. Appx55 (Abstract). The patent describes the use of tunnel devices to serve as intermediate devices when fetching content from the web server. *Id.* A

31

request may be sent from a client device to a web server that connects the client device with one or more tunnel devices, which provide content from a web server to the client device. Beyond this exemplary implementation, a client device may also serve as a tunnel device and a tunnel device may also serve as a client device. *Id.*; *see also* Appx239 (93:34–49) (client devices and tunnel devices can be implemented as either client devices or server devices).

The claim at issue, claim 108, describes a method for fetching a first content over the internet. It does not refer to client devices or tunnel devices, but instead describes "a first device" and "a second device." Appx279 (claim 108). While the specification states that, in some embodiments, a first device could be a client device, or that a second device could be a tunnel device, it takes pains to explain that they are not so limited and may be any network element. Appx222-23 (60:66-67, 61:10-11). Indeed, the patent states that a device may be either a client device or a tunnel device and can even be *both* at the same time. Appx218 (51:43-46).

## B. Definiteness is Analyzed Under the *Nautilus* "Reasonable Certainty" Standard.

Bright Data cites (BD-Br. 41-42) a number of cases for the proposition that claims should be construed to avoid invalidity on indefiniteness grounds. But these cases ground their holdings in this Court's pre-*Nautilus* "insolubly ambiguous" standard. *See Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004); *Jazz Pharm., Inc. v. Amneal Pharm., LLC*, 2017 WL 5128748, at

*3 (D.N.J. Nov. 6, 2017) (citing *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008)). "Insolubly ambiguous" is no longer the governing test.

Instead, under the Supreme Court's 2014 decision in *Nautilus*, the question is whether the claims, "read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Post-*Nautilus*, a claim that does not provide skilled artisans with reasonable certainty about its scope cannot be construed to avoid a finding of indefiniteness. *See id.* at 912 n.10 ("presumption of validity does not alter the degree of clarity that § 112, ¶ 2 demands from patent applicants; to the contrary, it incorporates that definiteness requirement by reference."). Bright Data errs in suggesting otherwise.

### C.    The Preamble of Claim 108 Does Not Provide Reasonable Certainty as to Which Device Performs the Claimed Steps.

Both claim 81 and claim 108 recite "[a] method for fetching over the internet…by a first device…via a second device." Appx279 (173:19-23, 174:58-62). While the claims share an identical preamble, they recite distinct methods with disparate steps. And they provide no additional guidance as to whether any or all of the claimed method steps can be, or must be, performed by either the first or second

device.  The district court thus correctly concluded that the scope of claim 108 is not reasonably certain. Appx1373-1374.

Bright Data's argument (BD-Br. 47-48) is essentially that a skilled artisan would, in the context of claim 81, understand the phrase "by a first device…via a second device" to mean "by a first device," but that the skilled artisan would understand *the exact same phrase* in claim 108 to mean "by a second device."  Bright Data does not and cannot cite any support in the claims for this strained interpretation.  Instead, Bright Data focuses on an exemplary embodiment in Figure 5b of the patent.  It argues that this embodiment shows the methods of both claim 81 and claim 108 and that a skilled artisan would understand that claim 81 is concerned with steps performed by the "client device," which Bright Data claims is the recited "first device," while claim 108 is concerned with steps performed by the "tunnel device," which it alleges is the recited "second device."  *See* BD-Br. 44-47. Bright Data contends that this example would inform a skilled artisan "with certainty" as to the roles of the first and second devices.

But Bright Data's analysis is merely hand-waving.  Neither claim states that the "first device" is (or must be) a "client device" or that the "second device" is (or must be) a "tunnel device."  To the contrary, the specification expressly teaches that the first and second devices may "consist of, comprise, or be part of, *any network element*."  Appx222-223 (60:66–67, 61:11–12) (emphasis added).  Bright Data

points to no evidence supporting either its mapping of the exemplary embodiment of Figure 5b onto claim 108 or its assertion (BD-Br. 47) that claim 108 is "clearly drawn to steps performed by the tunnel device." On the contrary, since the two devices of claim 108 may be "any network element," a skilled artisan would not understand with reasonable certainty that the "second device" must perform the claimed steps. And that is particularly so given that claim 81, as Bright Data concedes (BD-Br. 46), has the same preamble but recites steps that (according to Bright Data) must be performed by the *first device*.

Moreover, even assuming Bright Data's explanation of the Figure 5b embodiment is correct and that claim 108 covers it, the claim is still indefinite because the Figure 5b example is merely that — an example. Claims are not limited to an embodiment in the specification "absent a clear expression of intent to limit the claims' scope." *Info-Hold, Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262, 1266 (Fed. Cir. 2015). No such clear expression exists in the '044 patent, as neither the specification nor the claim itself provides any indication that the claimed method is limited to the Figure 5b example or that it must be performed by a particular recited device. And, absent such a limitation, it is not reasonably certain whether any or all of the steps must be performed by the second device to effect fetching of content "via a second device."

35

In short, as the district court explained, "Claim 108 as written, and even in light of [Bright Data's] argument and evidence, leaves a 'zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims.'" Appx1374 (quoting *Nautilus*, 572 U.S. at 909-10).

### D.     The District Court's Factual Findings Based on Bright Data's Expert Testimony Were Not Clearly Erroneous.

Bright Data also relies (BD-Br. 48) on its expert Dr. Rhyne's testimony that claim 108 would be understood by a skilled artisan to identify steps taken by the second device.  But this argument fails as well.

Expert testimony relating to how a skilled artisan would understand particular claim terms constitutes extrinsic evidence, so a district court's determinations based on such evidence are factual determinations reviewed for clear error.  *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015) ("Understandings that lie outside the patent documents about the meaning of terms to one of skill in the art or the science or state of the knowledge of one of skill in the art are factual issues."); *see also Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1370-71 (Fed. Cir. 2017).  Here, the district court considered Dr. Rhyne's testimony and ultimately concluded that a person of ordinary skill would not have understood with reasonable certainty that the method of claim 108 *must be* performed by the "second device." Appx1373-1374.

Bright Data does not and cannot show that this determination was clear error. On the contrary, the district court's conclusion was correct. Dr. Rhyne opined that a skilled artisan would interpret the same preamble language differently in claims 81 and 108. Appx1047-1048 (¶ 9). He also testified that a skilled artisan would understand claim 108 discloses fetching where "each claim steps [sic] can be performed by the second device." Appx1050-1051 (¶ 14). But he did *not* testify either that the steps *must* be performed by the second device or that the steps could not be performed by the first device. The district court found Dr. Rhyne's testimony "unhelpful" because his conclusion — that a skilled artisan would understand that the claimed steps *can* be performed by the second device — did not provide the requisite reasonable certainty about the scope of the claim. Appx1373-1374. Dr. Rhyne did not answer the key question: *must* the claimed steps be performed by the second device? Or might they be performed by something else? On that key question, Bright Data has no evidence at all.

In short, Bright Data has failed to point to any clear error by the district court. The court's factual finding that a skilled artisan would not have understood "by a first device…via a second device" to mean that any or all steps are performed by the second device should not be disturbed.

E.    **The *Tesonet* Decision Undermines, Rather Than Supports, Bright Data's Position.**

Bright Data states that the district court in *Luminati Networks Ltd. v. UAB Tesonet* found that "the terms [of claim 108] have definite meaning and that they are readily understood and should receive their plain and ordinary meaning." BD-Br. 49 (citing *Luminati Networks Ltd. v. UAB Tesonet*, 2019 WL 3943459 (E.D. Tex. Aug. 20, 2019)). That is false. On the contrary, the court in *Tesonet* considered the same arguments Bright Data advances here and found that "Claim 108 of the '044 Patent is indefinite." 2019 WL 3943459, at *33. While this claim construction was later vacated in response to an unopposed motion as part of a settlement agreement, the *Tesonet* court did not reconsider the merits or revisit its findings in granting the unopposed motion. *See* No. 2:18-CV-299-JRG Dkt. 231. *Tesonet* thus supports BI Science's position — not Bright Data's.

## CONCLUSION

This Court should reverse the district court's holdings that BI Science is subject to personal jurisdiction and that the Mediator's Proposal constituted a binding settlement agreement, and affirm its holding that claim 108 of the '044 patent is void for indefiniteness.

Dated:  April 25, 2022                Respectfully submitted,

 /s/ *Michael A. Charish*
Michael A. Charish
**Charish Law Group P.C.**
347 Fifth Avenue, Suite 1402
New York, New York 10016
646.328.0183

John Christopher Rozendaal
William H. Milliken
**Sterne Kessler Goldstein**
 **& Fox PLLC**
1100 New York Avenue, NW
Washington, DC 20005
202.371.2600

*Counsel for Appellant*
*BI Science (2009) Ltd.*

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2020-2118, -2181, 2021-1664, -1667

**Short Case Caption:** Bright Data Ltd. v. BI Science (2009) Ltd.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 8,843 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 04/25/2022

Signature: /s/ Michael A. Charish

Name: Michael A. Charish