**2020-2118, 2020-2181, 2021-1664, 2021-1667**

# United States Court of Appeals for the Federal Circuit

BRIGHT DATA LTD.,

*Plaintiff-Cross-Appellant,*

– v. –

BI SCIENCE (2009) LTD.,

*Defendant-Appellant,*

BI SCIENCE INC.,

*Defendant.*

*On Appeal from the United States District Court for the Eastern District of Texas, Case No. 2:18-cv-00483-JRG Honorable J. Rodney Gilstrap, Chief Judge*

## REPLY BRIEF FOR PLAINTIFF-CROSS-APPELLANT

RONALD WIELKOPOLSKI
COLBY DAVIS
RUYAKCHERIAN LLP
1901 L Street NW, Suite 700
Washington DC 20036
(202) 838-1560
ronw@ruyakcherian.com
colbyd@ruyakcherian.com

KORULA T. CHERIAN
ROBERT M. HARKINS
RUYAKCHERIAN LLP
1936 University Avenue,
  Suite 350
(510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

*Counsel for Plaintiff-Cross-Appellant*

MAY 16, 2022

# **TABLE OF CONTENTS**

I.   **INTRODUCTION** ........................................................................1

II.  **DISCUSSION** ............................................................................2

    A.  The Standard of Review is Undisputed—'044 Patent Claim 108 Is Presumed Definite ..........................................................................2

    B.  BI Science Incorrectly Views Only the Preamble of Claim 108, When the Test for Definiteness Is Viewed In the Context of the Entire Claim and the '044 Patent Disclosure ........................................................4

    C.  Claim 108 Is Drawn to the Second Device, Not the First Device or Any Other Device ..............................................................................9

    D.  Undisputed Expert Testimony Supports that the Claim 108 Steps Are Taken by the Second Device, Which the District Court Accepted ..........13

       a.  The District Court Accepted Dr. Rhyne's Unrebutted Expert Testimony ...............................................................................13

       b.  The Expert Testimony Shows That Claim 108 Is Directed to Steps Taken by the Second Device..................................................13

    E.  BI Science's Challenge to Definiteness is Not Supported by the District Court Order ..............................................................................16

    F.  BI Science's Argument Regarding the District Court's Order in *Tesonet* Disregards the District Court's Findings that the Terms "By a First Device" and "Via a Second Device" Should Be Construed Consistent With Their Plain and Ordinary Meaning..................................................18

III. **CONCLUSION** ..........................................................................**20**

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573 (Fed. Cir. 1996) ...................................................................................................18

*Bell Atl. Network Servs. v. Covad Communs Grp.,*  262 F.3d 1258 (Fed. Cir. 2001) ...........................................................................................................4

*Cal. Inst. of Tech. v. Hughes Communs. Inc.*, 35 F. Supp. 3d 1176 (C.D. Cal. 2014) ...........................................................................................................6

*Comark Communs, Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998) ..............4

*Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788 (Fed. Cir. 2019)..........................2

*Dow Chem. Co. v. NOVA Chems. Corp. (Can.)*, 809 F.3d 1223 (Fed. Cir. 2015)......................................................................... 3, 14, 15

*Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998) ...............17

*Info-Hold, Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262 (Fed. Cir. 2015)................................................................................ 6, 17

*Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898 (Fed. Cir. 2004) ....................4

*Luminati Networks Ltd. v. BIScience Inc.*, No. 2:18-cv-00483-JRG, 2019 U.S. Dist. LEXIS 210544 (E.D. Tex. Dec. 6, 2019) .............................................................5

*Luminati Networks Ltd. v. UAB Tesonet*, No. 2:18-CV-299-JRG, 2019 U.S. Dist. LEXIS 141513 (E.D. Tex. Aug. 20, 2019)........................................................19

*Nature Simulation Sys. v. Autodesk, Inc.*, 23 F.4th 1334 (Fed. Cir. 2022)......... 6, 16

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014)....................... 2, 3, 5

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339 (U.S. Fed. Cir. 2022) ...................................................................................................3

*Pac. Cost Bldg. Prods. v. CertainTeed Gypsum, Inc.*, 816 Fed. Appx. 454 (Fed. Cir. 2020) ..............................................................................................4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................... 5, 6, 17

*Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 860 Fed. Appx. 735 (Fed. Cir. 2021) ...........3

*Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC,* 824 F.3d 999 (Fed. Cir. 2016) ............................................................................................................4

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370 (Fed. Cir. 2017) .................15

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335 (Fed. Cir. 2015) ..............15

*University of South Florida v. United States*, 137 Fed. Cl. 658 (2018) ............ 4, 17

## ***Other Authorities***

*Black's Law Dictionary 599* (9th ed. 2009) ..............................................................6

## I.    INTRODUCTION

BI Science's arguments against Bright Data's appeal of the indefiniteness finding do not support the district court's order and apply the wrong legal standards. The district court found that every network component recited in claim 108 of the '044 patent was definite and understandable to a person of ordinary skill in the art (POSA).  The district court further found that another claim with the same preamble (claim 81) was definite because, noting that the claimed method recited a method for "fetching over the internet … by a first device … via a second device," the district court found that claim 81 was reasonably clearly directed to steps taken by the first device and not the second device or some other device.  The district court also accepted the only expert testimony submitted as to the issue of definiteness, from Dr. V. Thomas Rhyne, who found that the steps of claim 108 could be performed by the "second device."  BI Science has challenged none of these findings on appeal.

Instead, the district court error was in its legal conclusion as part of claim construction that despite the above, there remained some unstated uncertainty as to the limits of claim 108.  But there was no such uncertainty—none explained in the Claim Construction Order, and none set forth by BI Science in its appellate brief. The finding of indefiniteness of claim 108 was erroneous because the same logic and context that support definiteness of claim 81 equally support definiteness of claim 108, and because the district court failed to properly find clear and convincing

evidence that a POSA would not be reasonably certain that claim 108 was drawn to steps taken by the second device. The Claim Construction Order erroneously failed to apply this Court's consistent admonishment that claims are presumed valid, that indefiniteness must be shown by clear and convincing evidence, that the validity of claims should be preserved if possible, and that if there is any ambiguity in the claim language, courts must view the claims in the larger context of the specification of which they are a part. Here, as set forth in the unrebutted expert testimony, the specification and context of the claim provides reasonable certainty to a POSA, and this Court should reverse the finding of indefiniteness as to claim 108.

## II.   DISCUSSION

### A.   The Standard of Review is Undisputed—'044 Patent Claim 108 Is Presumed Definite

There is no dispute that claim construction, including indefiniteness, is ultimately a question of law that this Court reviews *de novo. Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 795 (Fed. Cir. 2019). It is further undisputed that the Supreme Court's ruling in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014) governs on issues of indefiniteness. BI Science ignores the first part of the holding in that case, which is that claim terms are presumed definite as a matter of law. *Id.,* at 912 n.10. Furthermore, precedent "requires that the burden of proving indefiniteness ***remains*** on the party challenging validity and that they must establish

2

it by ***clear and convincing*** evidence." *See Dow Chem. Co. v. NOVA Chems. Corp. (Can.)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015) (emphasis added).

BI Science takes issue with other cases cited by Bright Data that close questions are properly resolved in favor of the patentee. However, the presumption of validity always adheres and a finding of indefiniteness must be proved by the clear and convincing standard (*see id.*), not a preponderance of the evidence. *See id.* As clear and convincing evidence is not the territory of close questions, the undisputed legal standard weighs close questions in favor of patent validity. Moreover, several post-*Nautilus* cases have reconfirmed that the clear and convincing standard for patent validity favors the patent owner as set forth in Bright Data's brief.

"Indefiniteness, as a subset of claim construction, is a question of law which this court reviews without deference." *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 860 Fed. Appx. 735, 740 (Fed. Cir. 2021) (quotation omitted). "A claim is indefinite ***only if***, when 'read in light of the specification' and 'prosecution history,' it 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339 at *11 (U.S. Fed. Cir. 2022) (citing *Nautilus, Inc.*, 572 U.S. at 901). "Reasonable certainty does not require absolute or mathematical precision." *Pac. Cost Bldg. Prods. v.*

*CertainTeed Gypsum, Inc.*, 816 Fed. Appx. 454, 458 (Fed. Cir. 2020) (internal quotation marked omitted).

Furthermore, the validity of patent claims should be preserved when possible. It is when a court might otherwise find ambiguity that this Court has repeatedly held that such ambiguity should be resolved, if possible, to preserve the claim's validity. "If, after applying all other available tools of claim construction, a claim is ambiguous, it should be construed to preserve its validity. *Phillips*, 415 F.3d at 1327." *See Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC,* 824 F.3d 999, 1004 (Fed. Cir. 2016) (also citing the "canon favoring constructions that preserve claim validity"); *see also Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 911 (Fed. Cir. 2004) (same).   When claim terms are otherwise "broad and amorphous" the court should consult the written description to provide more definite meaning. *University of South Florida v. United States*, 137 Fed. Cl. 658, 664 (2018) (*citing Bell Atl. Network Servs. v. Covad Communs Grp.,*  262 F.3d 1258, 1269-70 (Fed. Cir. 2001)); *see also Comark Communs, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998).

### B.    BI Science Incorrectly Views Only the Preamble of Claim 108, When the Test for Definiteness Is Viewed In the Context of the Entire Claim and the '044 Patent Disclosure

BI Science argues that the "preamble" of claim 108 does not provide reasonable certainty.  It further argues that claims 81 and claim 108 share the same

preamble. But it is undisputed that the overall fetching involves four components: (1) a "first device," (2) a "first server," (3) a "second device," and (4) a "second server." BI Science agrees that a POSA would understand that claim 81 and claim 108 recite "fetching over the internet … by a first device … via a second device," (*see* BI Science Reply Br., at 33), so the only question remaining for a POSA is which device performs the particular method steps of the particular claim: the fetching steps "by a first device," or the fetching steps "via a second device"? If the answer to that question can be answered "with reasonable certainty," then the claims are definite and valid. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898,901 (2014).

By looking only at the preamble, BI Science ignores that the steps in claim 108 themselves clearly point to performance by the second device. BI Science also ignores that claim 108 is not viewed in a vacuum. If there is any ambiguity, courts are tasked with construing claims in context, including a review of the specification.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Luminati Networks Ltd. v. BIScience Inc.*, No. 2:18-cv-00483-JRG, 2019 U.S. Dist. LEXIS 210544, at *9 (E.D. Tex. Dec. 6, 2019) (quoting *Philips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (internal quotation omitted) (emphasis added). "'Claim language, standing alone' is not the correct standard of law, and is contrary to uniform precedent." *Nature Simulation Sys. v. Autodesk, Inc.*, 23 F.4th 1334, 1340

(Fed. Cir. 2022). "The specification describes the invention in text, <u>drawings</u>, and <u>flowcharts</u>." *Id*. (emphasis added). BI Science accuses Bright Data of limiting the claim through Fig. 5b, which is clearly untrue.  Unlike *Info-Hold, Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262, 1266 (Fed. Cir. 2015), where the court limited the claims to features disclosed in the preferred embodiment, Fig. 5b is used here as an illustrative example of the claims.

An embodiment is simply an example of an invention encompassed by the patent. *See Black's Law Dictionary 599* (9th ed. 2009) (defining "embodiment" as a "tangible manifestation of an invention."). "The Court generally should not limit the claims to the exemplary aspects of an embodiment. *See Philips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). On the other hand, the specification may describe the embodiment by using a claim term that is not the exemplary aspect of the embodiment. *See id.* at 1323 ("[T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms.")." *Cal. Inst. of Tech. v. Hughes Communs. Inc*., 35 F. Supp. 3d 1176, 1184-1185 (C.D. Cal. 2014).

Fig. 5b of the patent specification is exemplary embodiment of how an internet request is transmitted within the overall proxy network. Both Bright Data and the expert testimony use Fig. 5b as an example to show how, in light of specification (including figures which are part of the specification), a POSA would understand Claim 108 to be drawn to steps performed by the second device.

In its claim construction order, the district court correctly found that Claim 81 is definite and "[a] fair reading of the claim *as a whole* is that the lettered method steps are performed 'by a first device,' which is set forth in the preamble." APPX1373 (emphasis added). As depicted below and shown in Fig. 5b, Claim 81 recites steps performed by the "first device," labelled "CLIENT DEVICE" in Fig. 5b, within the proxy network.



**FIG. 5b**

As confirmed by the district court, Claim 108 also involves two servers and two devices, with the flow of internet requests transmitted within the same overall structure as Claim 81, given the same preamble for both claims. However, the flow of internet requests is depicted below and also shown in Fig. 5b in which the second device is labelled "TUNNEL DEVICE," the first server is labelled "ACCELERATION SERVER" and the second server is labelled "DATA SERVER" in Fig. 5b.



**FIG. 5b**

Therefore, the two claims respectively recite steps performed by the "first device" in claim 81 and the "second device" in claim 108.  Whereas claim 81 is directed to "fetching … by a first device," Claim 108 is directed to "fetching … via a second device."   The recited steps map precisely on the same Figure 5b that sets out how the "client device" (first device) and the "tunnel device" (second device) function to obtain content while preserving the anonymity of the client device from the data server by ensuring that there is an intermediate tunnel device between the client device and the web server (labelled "DATA SERVER" in Fig. 5b).

### C.    Claim 108 Is Drawn to the Second Device, Not the First Device or Any Other Device

Claim 108 is clearly directed to steps of the second device and not the first device. The steps are drawn to how the second device interacts with the other components including the first device:

> (a) sending the second identifier to the first server;
> (b) <mark>receiving a second request *from the first device*</mark>, the second request includes the first content identifier and the third identifier;
> (c) in response to receiving the second request, sending the first content identifier to the second server using the third identifier;
> (d) receiving the first content from the second server; and
> (e) in response to receiving the first content, <mark>sending the first content to the first device</mark> using the first identifier.

Neither the Court nor BI Science has asserted that a POSA would read the '044 patent and believe that the claimed "first device" would receive a request from itself (nor that a first server would send itself an identifier, nor that a second server would send itself a first content). On the contrary, the patents and claims are clearly drawn to a four-component system with four different components that interact with each other.

For example, as the Claim Construction Order found, the steps of claim 81 are directed to the first device:

> (a) sending the first identifier to the first server;
> (b) sending a first request to the first server;
> (c) receiving the second identifier from the first server;
> (d) <mark>sending a second request to the second device</mark> using the second identifier, the second request includes the first content identifier and the third identifier; and
> (e) <mark>receiving the first content from the second device</mark>.

A POSA reading claims 81 and 108 together would clearly understand how they interrelate. APPX1052 Claim 81 is directed to the first device sending a request to the second (tunnel) device (claim 81d) and receiving the content from the second device (claim 81e). That is necessary to obtain the benefits of the patents, including, for example, using an intermediate tunnel device to separate the client device from the web server. *See, e.g.,* Abstract ("A method for fetching a content from a web server to a client device is disclosed, using tunnel devices serving as intermediate devices."). Claim 108 in turn recites how the tunnel device receives the request from the first device (claim 108b) and then sends the content to the first device (claim 108e). The interrelationship of the claims and components can be seen by laying the two claims side-by-side:



### Claim 81: fetching … by a first device

**81.** A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:
(a) sending the first identifier to the first server;
(b) sending a first request to the first server;
(c) receiving the second identifier from the first server;
(d) sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier; and
(e) receiving the first content from the second device.

### Claim 108: fetching .. via a second device

**108.** A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:
(a) sending the second identifier to the first server;
(b) receiving a second request from the first device, the second request includes the first content identifier and the third identifier;
(c) in response to receiving the second request, sending the first content identifier to the second server using the third identifier;
(d) receiving the first content from the second server; and
(e) in response to receiving the first content, sending the first content to the first device using the first identifier.

In the context of the '044 patent, this logical layout is shown by the relationship of the components shown in Fig. 11a:



The relationship is also shown in Fig. 5b, again shown with the elements of claims 81 and 108 labelled in Fig. 5b side-by-side:



Claim 81 steps: (a) 53a, (b) 53b, (c) 53c, (d) 56g, (e) 53e   Claim 108 steps: (a) 54a, (b) 54c, (c) 56h, (d) 56i, (e) 56j

This interrelationship of the client and tunnel device are also described in the specification. *See also* '044 pat., 81:32-83:18, 83:43-65, 84:12-18, 86:15-42, 88:46-

89:49, and 106:32-40. Thus, the claim language itself, the claims in relation to each other, and the claims as consistently supported by the specification, all lead to the conclusion that claim 108 is definite and addresses steps to be taken by the second (tunnel) device.

> **D.    Undisputed Expert Testimony Supports that the Claim 108 Steps Are Taken by the Second Device, Which the District Court Accepted**

> **a. The District Court Accepted Dr. Rhyne's Unrebutted Expert Testimony**

Bright Data submitted the expert testimony of Dr. V. Thomas Rhyne, Ph.D. His testimony sets out that a POSA would understand from the context that claim 81 is directed to the first device, whereas claim 108 is directed to the second (tunnel) device. APPX1047-1052. The district court *accepted* this testimony, noting that Dr. Rhyne testified that the steps of Claim 108 can be performed by the second device. APPX1373-1374. *See e.g.* APPX1373 ("[T]he Court does not take issue with Dr. Rhyne's explanation of the exemplary embodiments of Figures 5b and 11a of the '044 Patent or his explanation of how Claim 108 may encompass those embodiments…."). As Bright Data does not argue that the district court erred in accepting the testimony, BI Science's argument that the ruling was not clearly erroneous is irrelevant.

> **b. The Expert Testimony Shows That Claim 108 Is Directed to Steps Taken by the Second Device**

Although the district court accepted Dr. Rhyne's testimony, it found that the testimony was insufficient to compel a finding of definiteness. APPX1373-1374. Thus, there is no fact finding to be reviewed under the clearly erroneous standard, only a legal conclusion to be reviewed *de novo* given that the district court accepted the testimony. The Claim Construction Order found that because the testimony was that the second device "can" perform the steps (rather than "must"), claim 108 was indefinite. *Id*. But the order provides no explanation as to what else the claim might mean, and there is no opposing expert testimony—the ***only*** testimony is that based on the context of the claims and the specification, a POSA would be reasonably certain that claim 108 is directed to steps taken by the second (tunnel) device. *Dow Chem. Co.*, 809 F.3d at 1227 ("This knowledge of the skilled artisan is part of the proof necessary for indefiniteness and the burden of providing it is on the challenger of validity."). Specifically, the only evidence of record is that a POSA would read claim 81 and 108 in context and understand, including due to Fig. 5, that claim 81 is directed to the steps taken by the first device (as properly found in the Claim Construction Order), and claim 108 is direct to the steps taken by the second device. APPX1047-1052. There is no other alternative and the finding of indefiniteness cannot be supported by clear and convincing evidence. Thus, the claim is definite.

Additionally, notwithstanding having accepted Dr. Rhyne's testimony, the District Court committed error in the Claim Construction Order by disregarding this

evidence.   Dr. Rhyne testified not only that the second device can perform all the steps, but that a POSA would understand in reading claims 81 and 108 together, in the context of the patent specification as a whole, that the claim is drawn specifically to the second device and not another device. APPX1052 ("In my further opinion, a POSA would also understand that the lettered steps in claim 108 align with the numbers of actions related to the TUNNEL DEVICE in Fig. 5b as follows: Claim 108 step (a) occurs at 54a; Claim 108 step (b) occurs at 54c; Claim 108 step (c) occurs at 56h; Claim 108 step (d) occurs at 56i; and Claim 108 step (e) occurs at 56j"); *see also* APPX1047-1052.   This testimony was entirely unrebutted, as BI Science did not submit any expert testimony of its own.

Extrinsic evidence could play a significant role in the indefiniteness analysis. *Dow Chem. Co.*, 809 F.3d at 1225. The appellate court reviews a district court's determination that a claim is invalid as indefinite de novo and any factual finding based on extrinsic evidence for clear error. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1376 (Fed. Cir. 2017). "[A] party cannot transform into a factual matter the internal coherence and context assessment of the patent simply by having an expert offer an opinion on it. The internal coherence and context assessment of the patent, and *whether it conveys claim meaning with reasonable certainty*, are questions of law." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015) ("*Teva II*").

Expert testimony is examined to explain who qualifies as one of ordinary skill in the art; the meaning of patent terms to that person; and the state of the art at the time of the invention, etc. *Id*. In the claim construction order, the district court "does not take issue" with Dr. Rhyne's opinion on the definition of POSA, the meaning of patent terms, and his "explanation of the exemplary embodiment of Fig. 5b and 11a of the '044 Patent or his explanation of how Claim 108 may encompass those embodiments." APPX1373. The district court also agreed that Dr. Rhyne pointed out that the steps could be performed by the second device. Nevertheless, the court found that "it is not reasonably certain" if the steps "*must* be performed by the second device." *Id*. at APPX1374. This is clearly a legal conclusion which this court reviews *de novo*.

"One must bear in mind … that patents are 'not addressed to lawyers, or even to the public generally,' but rather to those skilled in the relevant art." *Nature Simulations Sys*., 23 F.4th at 1341 (quotation omitted). In his testimony, Dr. Rhyne explains how a POSA will understand that Claim 108 clearly shows steps performed by the second device (tunnel device) and not by a first device (client device). APPX1052. The testimony thus further supports the finding of indefiniteness on Claim 108.

**E.    BI Science's Challenge to Definiteness is Not Supported by the District Court Order**

BI Science does not argue that a POSA would believe that claim 108 could be performed by a device serving as the "client device" (first device) or by either of the recited servers.  Instead, BI Science argues that the '044 patent's teaching that the devices can be "any network element," that introduces fatal ambiguity.  BI Science Reply Br., at 34-35.  In the context of claim 81, the functionality of the first device is clear.  Similarly, in the context of claim 108, the functionality of the second device is clear.  The use of a "first device" and "second device" in claims 81 and 108 does not create any ambiguity.  Consistent with the District Court's finding that claim 81 is not indefinite, claim 108 should also be not indefinite.  APPX1373.

BI Science's citation to *Info-Hold, Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262, 1266 (Fed. Cir. 2015) is similarly misapplied.  While a patent claim is not necessarily limited to a single embodiment, as a matter of law a patent claim "may be no broader than the supporting disclosure." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998).  Such patent claims also must be read in light of the specification (*Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*)), and their validity must be preserved if possible (*Univ. of S. Fla. v. United States*, 137 Fed. Cl. 658, 664 (Fed. Cir. 2018)).  Since the parties agree the preamble is limiting, and that preamble sets out the four components that interact in the claims, there is no other scenario that makes logical sense to a POSA other than

that a computer acting as a "second device" (tunnel device) performs those steps, and BI Science fails to provide any other plausible possibilities.

Also, given "an equal choice between a broader and a narrower meaning . . . the notice function of the claim [is] best served by adopting the narrower meaning." *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996). Here, BI Science fails to identify any actual ambiguity, simply arguing the claim might be broader to allow some other unrecited element to perform the steps. In finding indefiniteness, the District Court referenced a "zone of uncertainty" citing to *Nautilus* regarding the scope of claim 108. APPX1374. However, the concept of a zone of uncertainty arises generally where there is a vagary about a range—for example, if a patent claim requires one object to be "close" to another, is it possible to determine whether the object is or is not close enough to be within the claim? Here, the purported ambiguity is similarly about what device performs the steps—that is known with reasonable certainty in claim 108 to be the second device just as the district court found claim 81 was drawn with reasonable certainty to the first device. Pursuant to *Athletic Alternatives*, the courts should not engage in such a vague hypothetical when the method of the claim itself in light of the specification has a well-supported and understandable meaning.

F.    **BI Science's Argument Regarding the District Court's Order in** *Tesonet* **Disregards the District Court's Findings that the Terms**

**"By a First Device" and "Via a Second Device" Should Be Construed Consistent With Their Plain and Ordinary Meaning**

BI Science argues that the district court's finding of indefiniteness as to the same claim in another case (*Tesonet*) supports its position here.  BI Science Reply Br., at 38.  It does not.  The district court in *Tesonet*, having first found indefiniteness, vacated that ruling in its final judgment.  The claim construction order in that case as to claim 108 of the '044 patent remains relevant, however, because there the district court otherwise held that the terms in claim 108 have definite meaning and are readily understood and should receive their plain and ordinary meaning. *Luminati Networks Ltd. v. UAB Tesonet*, No. 2:18-CV-299-JRG, 2019 U.S. Dist. LEXIS 141513, at *83 (E.D. Tex. Aug. 20, 2019) ("The Court accordingly hereby construes 'by a first device,' 'from a second server,' 'via a second device,' and 'using a first server' to have their plain and ordinary meaning . . .").  Those constructions were adopted in this case.  APPX1373 ("The Court also reiterates and adopts the reasoning and ruling expressed in Tesonet regarding the role of the various components in performing the steps of Claim 108").  BI Science has not challenged that finding on appeal, which confirms that a POSA has a definite understanding of what the devices and servers are, the only question is which of them perform the steps of claim 108, and in the context of the patent claims and specification, there is only one answer to that question: the second device.

### III.    CONCLUSION

For the reasons set forth herein and in Bright Data's Response Brief, Bright

Data respectfully requests its cross-appeal be granted.


Dated:  May 16, 2022                            Respectfully submitted,

By: */s/ Robert Harkins*

Robert Harkins
Korula T. Cherian
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94704
(510) 944-0190
bobh@ruyakcherian.com
sunnyc@ruyakcherian.com

Ronald Wielkopolski
Colby Davis
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
ronw@ruyakcherian.com
colbyd@ruyakcherian.com

*Attorneys for Plaintiff*
*Bright Data Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2020-2118, 2020-2181, 2021-1664, 2021-1667

**Short Case Caption:** Bright Data Ltd. v. BI Science (2009) Ltd.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __4970__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __05/16/2022__

Signature: __/s/ Robert Harkins__

Name: __Robert Harkins__

Save for Filing