**VOLUME II of II, Pages Appx1479-2212**

**2020-2118, -2181, 2021-1664, -1667**

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### BRIGHT DATA LTD.,

*Plaintiff-Cross-Appellant*

**v.**

### BI SCIENCE (2009) LTD.,

*Defendant-Appellant*

### BI SCIENCE INC.,

*Defendant*.

Appeals from the United States District Court for the Eastern District of Texas in No. 2:18-cv-00483-JRG, Chief Judge J. Rodney Gilstrap.

### NON-CONFIDENTIAL JOINT APPENDIX

Robert Harkins
Korula T. Cherian
**RUYAKCHERIAN LLP**
1936 University Ave, Ste. 350
Berkeley, CA 94704
(510) 944-0190

Ronald Wielkopolski
Colby Davis
**RUYAKCHERIAN LLP**
1901 L St. NW, Suite 700
Washington, DC 20036
(202) 838-1560

*Counsel for Plaintiff Bright Data Ltd.*

John Christopher Rozendaal
William H. Milliken
**STERNE KESSLER GOLDSTEIN & FOX**
1100 New York Avenue, NW
Washington, DC 20005
(202) 371-2600

Michael A. Charish
**CHARISH LAW GROUP P.C.**
347 Fifth Avenue, Suite 1402
New York, New York 10016
(646) 328-0183

*Counsel for Appellant BI Science (2009) Ltd.*

Dated: May 31, 2022

## Volume I

| Docket Entry | Description | Page No. |
|---|---|---|
| 254 | Order and Correct Final Judgment (2021/02/01) | Appx0001-Appx0013 |
| 220 | Order and Final Judgment (2020/07/02) | Appx0014-Appx0026 |
| 3 | Docket Sheet | Appx0027-Appx0054 |
| 1-01 | U.S. Patent No. 9,241,044 | Appx0055-Appx0281 |
| 1 | Complaint (2018/11/08) | Appx0282-Appx0309 |
| 15 | Motion to Dismiss (2019/01/28) | Appx0536-Appx0556 |
| 21 | Response to Motion to Dismiss Near Final (TOA TOC) (2019/02/12) | Appx0599-Appx0618 |
| 21-05 | Exhibit 4 (2019/02/05) | Appx0632-Appx0636 |
| 28 | Amended Complaint (2019/02/19) | Appx0656-Appx0689 |
| 28-03 | Exhibit C (2019/02/19) | Appx0690-Appx0696 |
| 28-04 | Exhibit D (2019/02/19) | Appx0697-Appx0712 |
| 28-05 | Exhibit E (2019/02/19) | Appx0713-Appx0717 |
| 36 | Motion to Dismiss Amended Complaint (2019/03/04) | Appx0718-Appx0741 |
| 36-01 | Kfir Moyal Declaration (2019/03/04) | Appx0742-Appx0746 |
| 36-02 | Ex. A (2019/03/04) | Appx0747-Appx0748 |
| 36-03 | Ex. B (2019/03/04) | Appx0749-Appx0750 |
| 36-04 | Ex. C (2019/03/04) | Appx0751-Appx0752 |
| 82 | Memorandum Opinion and Order re Motion to Dismiss (2019/05/13) | Appx0853-Appx0875 |
| 85 | Answer to Amended Complaint (2019/05/28) | Appx0876-Appx0899 |
| 109-05 | Exhibit D (2019/10/15) | Appx1044-Appx1057 |
| 110-01 | Exhibit Tutorial (2019/10/16) | Appx1089-Appx1109 |
| 130 | MARKMAN OPINION AND ORDER (2019/12/06) | Appx1355-Appx1410 |
| 144 | ORDER re mediation session (2020/02/04) | Appx1449-Appx1449 |
| 166 | Joint Motion to Stay All Deadlines (2020/02/23) | Appx1474-Appx1475 |
| 167 | ORDER Granting [166] (2020/02/23) | Appx1477-Appx1477 |
| 168 | Mediation Report (2020/02/24) | Appx1478-Appx1478 |

## Volume II

| Docket Entry | Description | Page No. |
|---|---|---|
| 170 | Draft Plaintiff's Mot. to Enforce Settlement Agreement FINAL (2020/03/18) | Appx1479-Appx1495 |
| 170-01 | Wielkopolski Declaration in support of motion to enforce (2020/03/18) | Appx1496-Appx1498 |
| 170-02 | Ex. A (2020/03/18) | Appx1499-Appx1500 |
| 170-03 | Ex. B (2020/03/18) | Appx1501-Appx1501 |
| 170-04 | Ex. C (2020/03/18) | Appx1502-Appx1503 |

| 170-06 | Ex. E (2020/03/18) | Appx1506-Appx1506 |
|---|---|---|
| 170-07 | Ex. F (2020/03/18)<br>**[contains confidential information]** | Appx1507-Appx1508 |
| 170-08 | Ex. G (2020/03/18)<br>**[contains confidential information]** | Appx1509-Appx1510 |
| 170-09 | Ex. H (2020/03/18)<br>**[contains confidential information]** | Appx1511-Appx1512 |
| 170-10 | Ex. I (2020/03/18) | Appx1513-Appx1513 |
| 170-11 | Ex. J (2020/03/18)<br>**[contains confidential information]** | Appx1514-Appx1516 |
| 170-13 | Ex. L (2020/03/18) | Appx1518-Appx1518 |
| 170-14 | Ex. M (2020/03/18)<br>**[contains confidential information]** | Appx1519-Appx1521 |
| 170-15 | Ex. N (2020/03/18) | Appx1522-Appx1524 |
| 170-16 | Ex. O (2020/03/18) | Appx1525-Appx1532 |
| 170-17 | Ex. P (2020/03/18) | Appx1533-Appx1536 |
| 175 | Response to Motion to Enforce Settlement Agreement (2020/03/25) | Appx1547-Appx1554 |
| 183 | Transcript - April 13, 2020 | Appx1652-Appx1698 |
| 184-01 | Exhibit A (2020/04/28) | Appx1701-Appx1704 |
| 184-02 | Exhibit B (2020/04/28) | Appx1705-Appx1708 |
| 187 | Plaintiff Motion for Sanctions (2020/05/01) | Appx1716-Appx1733 |
| 194 | Plaintiff Motion to Enforce Settlement Agreement and Arbitration Award (2020/05/08) | Appx1762-Appx1770 |
| 194-06 | Ex. E (2020/05/08) | Appx1773-Appx1782 |
| 194-07 | Ex. F (2020/05/08) | Appx1783-Appx1783 |
| 198-02 | Exhibit 1 (2020/05/18) | Appx1816-Appx1816 |
| 202 | Reply ISO Motion to Enforce Settlement Near Final (2020/05/21) | Appx1825-Appx1832 |
| 202-03 | Ex. E (2020/05/21) | Appx1835-Appx1844 |
| 203 | Response to Motion to Enforce (2020/05/22) | Appx1845-Appx1848 |
| 205 | Reply ISO Motion for Sanctions (2020/05/26) | Appx1850-Appx1857 |
| 210 | Reply ISO Motion to Enforce (2020/05/29) | Appx1859-Appx1866 |
| 213-06 | Motion to Prevent Scanning Of Documents to the Net Hamishpat Network and to Prevent Third Parties from Viewing these Documents - Original Hebrew (2020/06/03) | Appx1979-Appx2006 |
| 228 | Notice of Appeal (2020/07/29) | Appx2058-Appx2060 |
| 231-01 | Moyal Declaration (2020/08/07) | Appx2078-Appx2082 |
| 234 | Defendant's Opposed Motion to Stay Enforcement of the Final Judgment (2020/08/12) | Appx2084-Appx2103 |
| 236 | Luminati's Reply ISO Motion to Make Final Judgment Public (2020/08/14) | Appx2107-Appx2114 |
| 238 | Notice of Appeal (2020/08/18) | Appx2115-Appx2116 |

| 242 | Luminati's Opposition to BI Science's Motion for Stay Enforcement of Final Judgment (2020/08/27) | Appx2125-Appx2145 |
|---|---|---|
| 246 | BI Science's Reply ISO Motion to Stay Enforcement of the Final Judgment (2020/09/03) | Appx2147-Appx2154 |
| 246-01 | Moyal Reply Declaration (2020/09/03) | Appx2155-Appx2158 |
| 248 | Luminati Sur-Reply on Motion to Stay Enforcement (2020/09/11) | Appx2159-Appx2166 |
| 194-04 | Ex. C (2020/05/08) | Appx2205-Appx2212 |

## CONFIDENTIAL MATERIAL OMITTED

The information deleted from pages Appx1508, Appx1510, Appx1511, Appx1515, and Appx1520 relates to certain confidential business information of the parties that was subject to a protective order in the district court.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | Case No. 2:18-CV-00483-JRG |
| v. | § | |
| | § | FILED UNDER SEAL |
| BI SCIENCE, INC., | § | |
| Defendant. | § | |

<u>**PLAINTIFF LUMINATI NETWORKS LTD.'S**</u>
<u>**MOTION TO ENFORCE SETTLEMENT AGREEMENT**</u>

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   FACTUAL BACKGROUND.......................................................................................... 2

III.  DEFENDANT'S REQUESTS FOR MATERIAL CHANGES TO ALREADY AGREED
      UPON SETTLEMENT TERMS ..................................................................................... 6

IV.   ARGUMENT.................................................................................................................. 7

      a. The Court Has the Authority to Determine the Validity of Agreement ............................. 7

      b. The Parties' Acceptance of the Mediator's February 23, 2020 Proposal Created a Valid
         Enforceable Settlement Agreement. .................................................................................. 8

      c. Defendant's Request for a "More Formal" Settlement Agreement Does Not Render the
         February 23, 2020 Settlement Agreement Unenforceable. ................................................. 9

      d. Agreement to a Mediator's Proposal Creates a Valid and Enforceable Agreement.......... 11

V.    CONCLUSION ............................................................................................................. 12

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904 (5th Cir. 2000) .................................... 10

*In re Deepwater Horizon*, 786 F.3d 344 (5th Cir. 2015) ..................................................... 8, 9, 10

*Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386 (5th Cir. 1984) ......................................... 7, 8

*Neurovision Med. Prods., Inc. v. Meditronic Pub. Ltd. Co.*, No. 2:16-CV-00127-JRG-RSP, 2017
   U.S. Dist. LEXIS 51610 (E.D. Tex. Apr. 4, 2017) ..................................................... 7, 8, 9, 10

*Thorton v. AT&T Advertising, L.P.*, 390 S.W.3d 702 (Tex.App. 2012) ........................................ 8

ii

**Appx1481**

## I.    INTRODUCTION

Having agreed to a mediator's proposal on February 23, 2020 ("Settlement Agreement"), and jointly filed a motion to stay the case based on this settlement, Defendant BI Science (2009) Ltd., also known as BI Science Inc. ("BI Science" or "Defendant") has refused to execute the Settlement Agreement and now demands modifications to its material terms to the detriment of Luminati Networks Ltd. ("Luminati").

The Settlement Agreement includes seventeen enumerated terms that were the product of two months of negotiation facilitated by the mediator between Plaintiff and Defendant (the "Parties") and contain all essential terms of the agreement.  A full and complete set of terms was reduced to writing and agreed upon by both sides and confirmed in writing on behalf of the parties by Mediator William Cornelius, Jr. ("Mediator"), and that final Settlement Agreement is attached as Exhibit A.[1] Then, after Luminati relied upon the Settlement Agreement in jointly moving the court to stay the case and took other steps in good faith to follow the agreement, BI Science began to demand material changes to the Settlement Agreement now that the consequences of Luminati's motion for sanctions are in the past.  Luminati has repeatedly and in good faith moved forward according to the terms of the Settlement Agreement by adding its own signature to the Mediator Signed Copy and requesting BI Science do the same, and at BI Science's request incorporating those terms into a more traditional settlement agreement with standard boilerplate.  But BI Science steadfastly refuses to confirm the agreement and instead continues to insist on material changes. It is too late to rewrite a completed Settlement Agreement.

---

[1] As detailed in Mediator Cornelius's February 23, 2020 email announcing the agreement, the mediator's proposal that resulted in settlement comprised three separate writings: the mediator's proposal on the then open terms, a list of previously agreed upon terms, and further agreed language on "rejection of customers" Ex. B.  The mediator subsequently signed a writing ("Mediator Signed Copy") on behalf of the parties confirming the final terms of the settlement. Ex. A.

As BI Science is creating uncertainty as to the validity of the Settlement Agreement in an apparent attempt to negotiate a different agreement, unfortunately Luminati requires a declaration from the Court that confirms that the completed, signed version of the Settlement Agreement (Ex. A) memorializing the February 23, 2020 Settlement Agreement is binding, valid, and enforceable, and that BI Science is obligated to follow those terms or be held in breach of it.

## II.    FACTUAL BACKGROUND

On December 18, 2019, the Parties engaged in a FRE 408 mediation with the assistance of the court-appointed Mediator, resulting in a negotiation involving BI Science leaving the proxy business in exchange for a share of revenue from new Luminati customers transferred from BI Science.  Plaintiff followed up on the Mediation by sending a proposal based on this framework on January 13, 2020 comprising thirteen enumerated terms.

Over the following month, the Parties continued to exchange proposals on the terms through the Mediator, until the Parties had reached an agreement on most of the non-monetary enumerated terms by February 22, 2020.  On February 22, 2020 at 2:09 P.M. Eastern, Plaintiff's counsel emailed the Mediator restating its understanding of fifteen already agreed upon settlement points and three points still in negotiation. (Ex. D). In response, the Mediator stated that Plaintiff's counsel's February 22, 2020 email is "consistent with [his] understanding except . . . [it] need[s] to add #14 about the litigation stand down [as Plaintiff's counsel] marked as not agreed." *Id.*

On February 22, 2020, at 6:07 P.M., the Mediator sent Plaintiff the Mediator's Proposal addressing five terms, including the monetary terms, for consideration. (Ex. E).  On February 22, 2020, at 10:33 P.M., Plaintiff's counsel emailed the Mediator, agreeing to accept the Mediator's Proposal, but noting that any agreement with Defendant must include the attached previously agreed upon points with which the Mediator helped the parties. (Exs. F-I). Between the Mediator

2

sending the mediator's proposal and the morning of February 23, 2020, the Mediator communicated to Plaintiff that BI Science wanted to modify the below term to provide the basis for Luminati's acceptance.

> In exchange for BI Science vacating the proxy service market on a worldwide and permanent basis, Luminati agrees to make monthly payments to BI Science of 37% of the gross (invoiced) revenue generated by any BI Science customer of proxy services transferred to Luminati's Proxy Services as part of this agreement (<u>transferred customers must be acceptable to Luminati</u>), for a term of 27 months; (emphasis added)

In response to a request from the Mediator, Plaintiff's counsel sent an email on February 23, 2020 at 9:28 A.M. Eastern proposing a modification to this term to add the following language ("Customer Rejection Term") (Ex. J):

> Luminati shall not arbitrarily reject BI Science proxy service customers transferred under the settlement agreement. Any rejection shall be supported by legitimate and reasonable grounds including the existing Luminati compliance procedures. Any disputed rejection shall be submitted to arbitration by William Cornelius.

The Mediator informed us that opposing counsel agreed to the Customer Rejection Term and sent an email shortly afterwards at 9:49 A.M. Eastern to both Parties stating,

> "I am very pleased to report that the mediator's proposal has resulted in a settlement. Incorporated into that is the list of terms that [Plaintiff's counsel] sent me yesterday, and that I provided to [Defendant's counsel]. That list, of course, is modified in some respects by the terms of the proposal, including the most recent proposed language added to it this morning regarding 'rejection of customers'. Unless you object, I will notify Judge Gilstrap of the settlement and request that he cancel Monday's hearing. I will tell him a motion to stay is forthcoming. I will advise if he wants it filed before he will cancel the hearing." (Ex. B).

Defendant's counsel responded at 9:56 A.M. Eastern stating, "Thanks for all your hard work Bill."

*Id*.

In this email correspondence, Defendant's counsel neither objected to the Mediator's Proposal nor challenged the terms of the Settlement Agreement. At 12:10 P.M. Eastern, the Mediator informed the parties that he had heard from Judge Gilstrap and that "[h]e will cancel

3

**Appx1484**

[the] hearing." (Ex. K). Plaintiff's counsel sent the draft joint motion to stay representing that "all matters in controversy between the Parties have been settled, in principle," which was approved by Defendant's counsel at 10:49 A.M. Eastern and subsequently filed shortly thereafter (Dkt. No. 166). (Ex. L). Following the Mediator's 1:10 P.M. Eastern email that the hearing would be cancelled, Defendant's counsel emailed all parties, including the Mediator, asking Plaintiff's counsel for an agreement that the parties would not file "the 6am notice that was called for in [J. Gilstrap's] Order[.]" (Ex. K). That same day, the Court granted the parties' Joint Motion to Stay All Deadlines and Notice of Settlement (Dkt. 167) ordering that all deadlines in the above-captioned case are stayed for thirty days from the date of the Order.

On February 24, 2020, the Mediator submitted to the Court an accurate Supplemental Mediator's Report stating that "[a]fter Mediation was conducted on December 18, 2019, continuing discussions, negotiations, and a mediator's proposal have resulted in settlement of all claims." (Dkt. No. 168). That same day, Plaintiff's counsel consolidated the agreed upon terms in one document and sent that document to the Mediator to ensure that it accurately incorporated the terms of the Settlement Agreement. The Mediator confirmed the accuracy of the document and sent back a signed copy ("Mediator Signed Copy") (Ex. A).

On February 25, 2020, Plaintiff's counsel sent the Mediator Signed Copy to Defendant's counsel signed by Plaintiff with a signature line for Defendant (Ex. C), copying the Mediator, requesting a signed copy of that copy and that BI Science proceed to execute the provision regarding the termination of the IPRs.

> We received the completed settlement as confirmed by Bill Cornelius that both sides had agreed. We think we should make sure we also have it with our client's signatures. That should also streamline moving forward on executing on the terms. The agreement from Bill said confidential at the top but to ensure it was clear as a term we added a line item under his signature confirming. Can you please have your client sign and send back ASAP?

4

**Appx1485**

Also, one of the key aspects of the agreement was to dismiss the pending IPRs, and currently our response is due March 3. We don't want to have to file a response (one important motivation to settle), so can we please get on the phone with you and BI Science's IPR counsel Ron Abramson (cc'd on this email) either today or tomorrow at the latest so we are all on the same page about contacting the Board regarding terminating the IPRs? (Ex. M at 3)

In response, Defendant's counsel stated, "[w]e are fine jointly moving the PTAB to push your response deadline and then within that time hopefully being able to finalize the formal settlement agreement, and get dismissal papers on file… but we are not going to terminate the IPRs until the settlement is finalized." (*Id.* at 3). Plaintiff's counsel responded reiterating that "[i]t is our understanding we have a final deal[.]" (*Id.* at 2).

On February 27, 2020, Defendant's counsel emailed Plaintiff's counsel copying the Mediator requesting "a more formal agreement setting forth the details and particulars of how the settlement is put into effect in [sic] needed." (*Id.* at 2). Plaintiff's counsel responded that same day providing a more formal version of the settlement agreement (Ex. N), tracking the terms and language that the Parties agreed to and the Mediator confirmed in writing, requesting in good faith that Defendant send any edits for review. (Ex. M at 1). Despite Plaintiff's good faith attempt to draft a more formalized Settlement Agreement acceptable to defendant, Defendant's counsel responded on March 1, demanding "clarification" on the Customer Rejection Term that was a point of negotiation and agreed upon just prior to the Parties entering the Settlement Agreement. (Ex. O at 4).

On March 9, Luminati again requested that BI Science send a signed copy of the settlement agreement and also proposed an Implementation Mechanics Schedule (Ex. P) to coordinate the Parties in executing the Settlement Agreement. (Ex. O at 2-3). However, given the lack of response and impending deadlines, Luminati indicated that it was considering raising the issue with the Court.

5

**Appx1486**

In Defendant's March 11, 2020 response, BI Science stated that "we cannot move forward without a detailed understanding of what would constitute a basis to reject a BI Science customer," despite BI Science already agreeing to the Customer Rejection Term as the final dispute before the Parties entered the Settlement Agreement. (*Id.* at 1).  For the first time, and without challenging the accuracy of the Mediator Signed Copy or other draft "formal" writings that Luminati sent to BI Science, BI Science proposed material edits to the agreement ("BI Science Proposed Modifications" Ex. Q)  asserting "the current business climate is far different that it was 3 weeks ago due to the Coronavirus pandemic."  (Ex. O at 1).

## III.    DEFENDANT'S REQUESTS FOR MATERIAL CHANGES TO ALREADY AGREED UPON SETTLEMENT TERMS ARE IMPROPER

The BI Science Proposed Modifications attached to Defendant's March 11, 2020 email proposed extensive changes to the material terms of the February 23, 2020 Settlement Agreement. In addition to other material changes, the BI Science Proposed Modification included the following changes to essential terms:

- BI Science is to be allowed to continue selling residential and data center proxy services until January 1, 2021 (more than 10 months after the Settlement Agreement);

- BI Science is to be allowed to provide its UrbanVPN application unrelated to the selling of residential and data center proxy services, but the UrbanVPN application is not prohibited from practicing Luminati's patents;

- Luminati is required to pay BI Science for pre-existing Luminati customers to the extent that customer is also an active BI Science customer;

- Luminati is also required to pay BI Science for any former BI Science customers that reactivate their accounts after the Settlement Agreement;

- BI Science is to provide to Luminati a perpetual royalty free license to the '244 Patent and related patent applications, continuations, and continuations in part instead of an assignment of the same; and

- The litigation stand-down of 3 years is to be extended by 27 months.

6

**Appx1487**

In addition to others, the above modifications are significant changes to the essential terms of the February 23, 2020 Settlement Agreement that both Parties negotiated through the Mediator. The attached exhibit R is a redline comparing the BI Science Proposed Modifications against the draft agreement proposed to BI Science on February 27, 2020.

## IV.   ARGUMENT

Given BI Science's refusal to sign the Mediator Signed Copy and attempt to change essential terms of the Settlement Agreement through the BI Science Proposed Modifications, Luminati has no choice but to seek relief from the Court, including specifically a finding that the February 23, 2020 Settlement Agreement is a binding agreement on the Parties. To permit BI Science to enter a Settlement Agreement, only to turn around and tear up material terms of that agreement once the consequences of Luminati's pending motion for sanctions (Dkt. 159) have passed while Luminati faces a looming deadline to file preliminary responses to BI Science's IPR petitions, would be a grave injustice to Luminati, which—in good faith—has relied upon and faithfully sought to follow the agreement to its own detriment.

### a.   The Court Has the Authority to Determine the Validity of Agreement

"A district court in the Fifth Circuit has inherent power to enforce a settlement agreement in a case pending before it." *Neurovision Med. Prods., Inc. v. Meditronic Pub. Ltd. Co.*, No. 2:16-CV-00127-JRG-RSP, 2017 U.S. Dist. LEXIS 51610, at *5 (E.D. Tex. Apr. 4, 2017) (citing *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984)). "The court has the ability to summarily enforce a settlement 'if no material facts are in dispute,' but 'when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed evidentiary hearing on disputed issues of the validity and scope of the agreement.'" *Neurovision*, No. 2:16-CV-00127-JRG-RSP, at *5

**Appx1488**

(quoting *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015)). "Questions regarding the enforceability or validity of such agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law." *Mid-S. Towing*, 733 F.2d at 389.

### b.    The Parties' Acceptance of the Mediator's February 23, 2020 Proposal Created a Valid Enforceable Settlement Agreement.

"The existence of a valid contract requires an offer, acceptance in strict compliance with terms of the offer, a meeting of the minds, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutual and binding." *Id.* at 15 (citing *Thorton v. AT&T Advertising, L.P.*, 390 S.W.3d 702, 705 (Tex.App. 2012)).

In *Neurovision*, No. 2:16-CV-00127-JRG-RSP, at *3 (E.D. Tex. Apr. 4, 2017), this Court determined that a valid contract existed when (1) the plaintiff stated in an email that "we accept your offer[,]" in addition to summarizing the material terms of the agreement; and (2) defendant responded stating, "This is excellent news. Thanks for working through[,]" without disputing any material term summarized in the previous email or "[taking] issue with the accepting party's characterization of the state of negotiations as an accepted offer. *Id.* at *7 (internal quotations omitted). *See also In re Deepwater Horizon*, 786 F.3d at 355 (finding that contract formation shall be judged by parties' "overt acts and words").

Further, "[c]ourts generally find there is agreement on *all of the material terms of settlement* where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims." *Neurovision*, No. 2:16-CV-00127-JRG-RSP, at *8-9 (quoting *See In re Deepwater Horizon*, 786 F.3d at 357 n. 26) (internal quotations omitted) (emphasis added).

8

Here, like in *Neurovision*, a valid contract existed (1) when Plaintiff stated in an email to the Mediator that it accepted the mediator's proposal subject to the previously agreed-upon material terms, which Luminati summarized including the specific language of the Customer Rejection Term (Ex. F); (2) when afterwards the Mediator confirmed that BI Science accepted the agreement announcing to both parties that "the mediator's proposal has resulted in a settlement" and further summarized the specific documents comprising the agreement along with a representation that such documents had been shared with BI Science (Ex. B); and (3) when Defendant confirmed the accuracy of the Mediator's announcement of the settlement by stating, "Thanks for your hard work Bill" and did not take any issue with the Mediator's identification of the specific documents comprising the accepted offer. *Id*.

Additionally, subsequent to the Mediator's announcement, the Parties filed the Joint Motion to Stay All Deadlines and Notice of Settlement, notifying this Court that "all matters in controversy between the Parties have been settled, in principle." (Dkt. No. 166). There is no reasonable dispute that the Mediator's proposal resulted in a valid, enforceable settlement. Moreover, there is an agreement here on all of the material terms of the settlement, as the mediated Settlement Agreement expressly includes terms for halting BI Science's infringement of the patents at issue, monetary terms for sharing revenue for those BI Science customers that transfer, assignment of BI Science's patent and dismissal of all pending Texas actions and PTAB proceedings between the Parties. Accordingly, Plaintiff requests this Court to find that a valid and enforceable contract resulted from the February 23, 2020 Settlement Agreement.

### c. Defendant's Request for a "More Formal" Settlement Agreement Does Not Render the February 23, 2020 Settlement Agreement Unenforceable.

Defendant's request for a "more formal" settlement agreement and its March 11, 2020 Modification of the Settlement Agreement does not render the February 23, 2020 Settlement

Agreement unenforceable. Following *Neurovision*, "[c]ourts routinely enforce settlement agreements even where the precise wording . . . has not been finalized." No. 2:16-CV-00127-JRG-RSP, at *9 (quoting *In re Deepwater Horizon*, 786 F.3d at 357 n.26). "Merely because an agreement contemplates future acts does not make the agreement unenforceable." *DietGoal Innovations LLC v. Taco John's Int'l, Inc.*, No. 14-CV-00144-F, at *16 (D. Wyo. Oct. 1, 2014) (noting that "subsequent negotiations over the terms of the draft release agreement constitute[d] reduction of the already-formed settlement to a formal document.") (citing *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 911 (5th Cir. 2000)).

In this case, Defendant requested a "more formal agreement" as a ruse to improperly attempt to renegotiate the mediated February 23, 2020 Settlement Agreement. When Plaintiff provided a more formal version of the settlement agreement in good faith, tracking the terms and language that the Parties agreed to and the Mediator confirmed in writing, Defendant has continued to refuse to execute the Settlement Agreement while demanding changes to essential terms of that agreement. As addressed above, the BI Science Proposed Modifications reach far beyond simply formalizing and/or finalizing the mediated settlement. In fact, Defendant concedes in the March 11, 2020 email that Defendant is seeking an extension on the agreed upon time to exit the market allowing Defendant to continue to profit off its continuing infringement for 10 months after the Settlement Agreement. (Ex. M) ("[I]f BI Science is to survive it must have more time to raise the necessary capital before exiting the proxy business. Thus, we are proposing a delay of our exit of the marketplace."). This is not at all what the parties agreed to and BI Science has no basis to change the terms of the final Settlement Agreement.

Defendant's purported need for formalization and/or finalization of the mediated settlement does not render the February 23, 2020 Settlement Agreement unenforceable. Further,

10

Defendant's attempt to renegotiate already settled terms does not indicate that the February 23, 2020 was not valid or enforceable. Accordingly, Plaintiff respectfully requests this Court to issue an order recognizing the Settlement Agreement as valid and compelling BI Science to execute the terms of that agreement.

      **d.**     **Agreement to a Mediator's Proposal Creates a Valid and Enforceable Agreement**

In *DietGoal*, the court found that a defendant who did not pay or tender an agreed upon payment breached the terms of a mediated agreement under Texas law. *DietGoal Innovations LLC v. Taco John's Int'l, Inc.*, No. 14-CV-00144-F, at *18  In that case, the Court appointed a mediator and ordered the parties to engage in mediation. Following mediated negotiations, on April 11, 2014, the mediator sent an e-mail notifying the parties that "I can now report that both sides accept the proposal so there is agreement to settle the case []." *Id.* at *6. In the days following the mediated settlement, plaintiff's counsel sent defendant's counsel a draft release settlement agreement to memorialize the mediation settlement terms announced by the mediator on April 11, 2014. Afterwards, the parties exchanged emails to discuss the draft release agreement, and on April 23, 2014, defendant's counsel emailed plaintiff's counsel a redline copy of plaintiff's draft release agreement, which included "additional and unreasonable material terms and conditions the parties had never agreed to in the [] mediation settlement." *Id.* at *7. Defendant in *DietGoal* never signed the last draft circulated by plaintiff. Given the circumstances, the district court found that under Texas law defendant breached the terms of the settlement agreement, because "Defendant [n]ever paid or tendered payment of $55,000.00 to Plaintiff . . . [and because] Defendant never signed Plaintiff's tendered release agreement even after Plaintiff made numerous apparently good faith efforts to draft a liability release acceptable to Defendant." *Id.* at *18.

This case involves almost identical facts as *DietGoal*. On February 23, 2020, the Mediator notified the Parties stating, "I am very pleased to report that the mediator's proposal has resulted in a settlement." (Ex. E). In the days following the mediation settlement and notice of the settlement to this Court, like in *DietGoal*, Defendant's counsel emailed Plaintiff's counsel a redlined copy of Plaintiff's draft Settlement Agreement, which included "additional and unreasonable material terms and conditions the parties had never agreed to in the [] mediation settlement." *DietGoal*, No. 14-CV-00144-F, at *7. Further, like in *DietGoal*, BI Science has not signed the Mediator Signed Copy circulated by Plaintiff, the subsequent more formal versions, or executed even the most immediate terms of that agreement including dismissal of BI Science's IPRs. As such, and in accordance with the ruling of *DietGoal*, Plaintiff respectfully requests the Court find the February 23, 2020 Settlement Agreement to be valid and enforceable.

## V.    CONCLUSION

For the reasons provided above, Plaintiff respectfully requests that the Court find that the February 23, 2020 Settlement Agreement is a valid, enforceable settlement agreement.


Dated:  March 18, 2020

By: */s/ Korula T. Cherian*
S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Korula T. Cherian
Robert Harkins
CA State Bar No. 179525
RuyakCherian LLP

12

1936 University Ave, Ste. 350
Berkeley, CA  94702
(510) 944-0190
Email: sunnyc@ruyakcherian.com
Email: bobh@ruyakcherian.com

Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006
Email: ronw@ruyakcherian.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the all counsel of record who are deemed to have consented to electronic service are being served this 18th day of March 2020, with a copy of this document via electronic mail.

*/s/ Korula T. Cherian*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

*/s/ Korula T. Cherian*

13

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that the counsels for the parties have complied with Local Rule CV-7(h).  Counsel participating on the March 18, 2020 meet and confer included: Robert Harkins, Ron Wielkopolski and Calvin Capshaw on behalf of Plaintiff; Eric Findlay and Debby Gunter on behalf of Defendant.

*/s/ Ronald Wielkopolski*

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| v. | § | Case No. 2:18-CV-0483-JRG |
| | § | |
| BI SCIENCE INC. | § | |
| | § | |

**DECLARATION OF RONALD WIELKOPOLSKI IN SUPPORT OF PLAINTIFF
LUMINATI NETOWRKS LTD.'S MOTION TO ENFORCE SETTLEMENT
AGREEMENT**

Pursuant to 28 U.S.C. § 1746, I, Ronald Wielkopolski, hereby declare as follows:

1.      I am more than eighteen (18) years of age and I am competent to make this declaration. I have personal knowledge of the facts stated herein, and would testify to such facts under oath if asked to do so.  I am an associate attorney with the law firm of RuyakCherian LLP and counsel of record for Plaintiff Luminati Networks, Ltd. ("Luminati").

2.      Exhibit A is a true and correct copy of the Settlement Agreement between the parties as confirmed by mediator William Cornelius on February 24, 2020.

3.      Exhibit B is a true and correct copy of email correspondence between mediator William Cornelius, and counsel from both parties on February 23, 2020.

4.      Exhibit C is a true and correct copy of the Settlement Agreement between the parties as confirmed by mediator William Cornelius on February 24, 2020 and signed by O. Lenchner on February 25, 2020. This document was attached to an email from Luminati counsel to BI Science counsel dated February 25, 2020 within the email correspondence in Exhibit M.

5.      Exhibit D is a true and correct copy of email correspondence between Luminati counsel and mediator William Cornelius on February 22, 2018.

6.      Exhibit E is a true and correct copy of the Mediator's Proposal from mediator William Cornelius dated February 22, 2018.

7.      Exhibit F is a true and correct copy of the email from Luminati counsel to mediator William Cornelius dated February 22, 2020 with Exhibits G-I as true and correct copies of the attachments to that email.

8.      Exhibit J is a true and correct copy of the email from Luminati counsel to mediator William Cornelius dated February 23, 2020.

9.      Exhibit K is a true and correct copy of email correspondence between mediator William Cornelius, and counsel from both parties on February 23, 2020.

10.     Exhibit L is a true and correct copy of email correspondence between mediator William Cornelius, and counsel from both parties on February 23, 2020 regarding the Joint Motion to Stay.

11.     Exhibit M is a true and correct copy of email correspondence between the parties between February 25 and February 27.

12.     Exhibit N is a true and correct copy of a formal draft of the Settlement Agreement attached to the February 27, 2020 email from Luminati counsel to BI Science counsel.

13.     Exhibit O is a true and correct copy of email correspondence between the parties between February 25 and March 11.

14.     Exhibit P is a true and correct copy of the implementation mechanics schedule attached to the March 9, 2020 email from Luminati counsel to BI Science counsel.

15.     Exhibit Q is a true and correct copy of BI Science's draft agreement attached to the March 11, 2020 email from BI Science counsel to Luminati counsel.

2

16.    Exhibit R is a true and correct copy of a comparison of Exhibit Q against Exhibit N as performed on Microsoft Word on or around March 11, 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 18, 2020 in Washington, DC.


*/s/ Ronald Wielkopolski*
Ronald Wielkopolski

3

*RESTRICTED – ATTORNEYS' EYES ONLY – Protected by Fed. R. Evid. 408*

## Luminati v. BI Science – Mediated Settlement

Mediator William Cornelius's settlement proposal accepted by parties Luminati Networks Ltd. ("Luminati") and Defendant BI Science (2009) Ltd., also known as BI Science Inc., ("BI Science") (collectively, "Parties") on February 23, 2020 resulting in resolution of the following district court cases and proceedings before the PTAB ("BI Science Proceedings"):

- *Luminati Networks Ltd. v. BI Science Inc.*, Case No 2:18-cv-483, E.D. Texas;
- *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No 2:19-cv-352, E.D. Texas;
- *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No 2:19-cv-397, E.D. Texas;
- Petition for *Inter Partes* Review of U.S. Patent No. 9,241,044, IPR2020-166; and
- Petition for *Inter Partes* Review of U.S. Patent No. 9,742,866, IPR2020-167.

The Parties entered into a global settlement including resolution of patent infringement and invalidity claims involving U.S. Patent Nos. 9,241,044, 9,742,866, 10,257,319, 10,410,244, 10,469,614, 10,484,510, and 10,484,511 ("Patents in Suit") involving BI Science's residential proxy and data center proxy services, including under the "Geosurf" brand ("Proxy Services") proxy service. The Parties agreed to the following:

1. Both Parties dismiss all claims in Case No 2:18-cv-483 with prejudice except for the claim of invalidity with regard to claim 108 of U.S. Patent No. 9,241,044 ("'044 Patent");

2. The Parties shall move for entry of final judgment with regard to claim 108 of the '044 Patent;

3. Luminati dismisses Case No. 2:19-cv-352 and Case No 2:19-cv-397 without prejudice;

4. BI Science withdraws its *inter partes* review petitions (IPR2020-166 and IPR2020-167) against certain Patents-in-Suit;

5. BI Science leaves the Proxy Services business world-wide permanently;

6. BI Science enters a stipulated injunction that BI Science will not use, offer to sell, or sell, Proxy Services in the United States or import Proxy Services into the United States to the extent it is not licensed by Luminati to do so;

7. BI Science may continue providing its Urban VPN application to the extent it does not practice Luminati's patents;

8. Luminati makes monthly payments to BI Science of 37% of the gross (invoiced) revenue generated by any BI Science customer of Proxy Services transferred by BI Science and accepted by Luminati to Luminati's Proxy Services as part of this agreement for a period up to 27 months (Luminati shall not arbitrarily reject BI Science proxy service customers transferred under the settlement agreement. Any rejection shall be supported by legitimate and reasonable grounds including the existing Luminati compliance procedures. Any disputed rejection shall be submitted to arbitration by William Cornelius.);

*RESTRICTED – ATTORNEYS' EYES ONLY – Protected by Fed. R. Evid. 408*

9.  Luminati will set up an escrow account of $350,000 from which payments are to be made to BI Science;

10. Luminati agrees not to file a post grant review petition, inter partes review petition or other reexamination petition against BI Science's U.S. Patent No. 10,410,244 ("'244 Patent") and other BI Science patents to the extent that BI Science does not threaten or otherwise asserts its patents against Luminati, its customers, licensees or affiliates, in which case there is no restriction on Luminati's ability to challenge one or more of the BI Science patents;

11. BI Science agrees not to file a post grant review petition, inter partes review petition or other reexamination petition against the Patents in Suit or any other patents assigned to Luminati; and

12. BI Science assigns the '244 Patent and related patent applications, continuations, and continuations in part to Luminati.

13. Luminati agrees to provide its Residential proxy network service to BI Science at a lowered, fixed price of $0.40/GB for up to 50 TB/month for 5 years solely in support of BI Science's Adclarity business, under the strict prohibition against Bi Science reselling access to Luminati's residential proxy network;

14. The parties agree to a 3-year litigation stand down, during which neither party shall institute legal action of any kind against the other except as may be necessary to enforce any settlement reached as a result of this proposal;

15. The parties are to release a mutually agreed press release;

16. Each side will bear its own costs and attorney's fees; and

17. The parties agree to submit any disputes regarding the terms and provisions of the settlement to binding arbitration by William Cornelius.

**MEDIATOR**

By: _[signature]_

Name: William Cornelius

Dated: 2-24-2020

**Ron Wielkopolski**

| | |
|---|---|
| **From:** | Eric Findlay <EFindlay@FindlayCraft.com> |
| **Sent:** | Sunday, February 23, 2020 9:56 AM |
| **To:** | William Cornelius, Jr |
| **Cc:** | Calvin Capshaw; Sunny Cherian; Robert Harkins; Ron Wielkopolski |
| **Subject:** | Re: Luminati v BI |

Thanks for all your hard work Bill.

Sent from my iPhone

> On Feb 23, 2020, at 8:48 AM, William Cornelius, Jr <wc@wilsonlawfirm.com> wrote:
>
> Counsel, I am very pleased to report that the mediator's proposal has resulted in a settlement. Incorporated into that is the list of terms that Ron sent me yesterday, and that I provided to Eric. That list, of course, is modified in some respects by the terms of the proposal, including the most recent proposed language added to it this morning regarding "rejection of customers".
>
> Unless you object, I will notify Judge Gilstrap of the settlement and request that he cancel Monday's hearing. I will tell him a motion to stay is forthcoming. I will advise if he wants it filed before he will cancel the hearing.
>
> Congrats to you all for getting this resolved.
>
> Best regards
>
> Sent from my iPhone

*RESTRICTED – ATTORNEYS' EYES ONLY – Protected by Fed. R. Evid. 408*

**Luminati v. BI Science – Mediated Settlement**

Mediator William Cornelius's settlement proposal accepted by parties Luminati Networks Ltd. ("Luminati") and Defendant BI Science (2009) Ltd., also known as BI Science Inc., ("BI Science") (collectively, "Parties") on February 23, 2020 resulting in resolution of the following district court cases and proceedings before the PTAB ("BI Science Proceedings"):
- *Luminati Networks Ltd. v. BI Science Inc.*, Case No 2:18-cv-483, E.D. Texas;
- *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No 2:19-cv-352, E.D. Texas;
- *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No 2:19-cv-397, E.D. Texas;
- Petition for *Inter Partes* Review of U.S. Patent No. 9,241,044, IPR2020-166; and
- Petition for *Inter Partes* Review of U.S. Patent No. 9,742,866, IPR2020-167.

The Parties entered into a global settlement including resolution of patent infringement and invalidity claims involving U.S. Patent Nos. 9,241,044, 9,742,866, 10,257,319, 10,410,244, 10,469,614, 10,484,510, and 10,484,511 ("Patents in Suit") involving BI Science's residential proxy and data center proxy services, including under the "Geosurf" brand ("Proxy Services") proxy service. The Parties agreed to the following:

1. Both Parties dismiss all claims in Case No 2:18-cv-483 with prejudice except for the claim of invalidity with regard to claim 108 of U.S. Patent No. 9,241,044 ("'044 Patent");

2. The Parties shall move for entry of final judgment with regard to claim 108 of the '044 Patent;

3. Luminati dismisses Case No. 2:19-cv-352 and Case No 2:19-cv-397 without prejudice;

4. BI Science withdraws its *inter partes* review petitions (IPR2020-166 and IPR2020-167) against certain Patents-in-Suit;

5. BI Science leaves the Proxy Services business world-wide permanently;

6. BI Science enters a stipulated injunction that BI Science will not use, offer to sell, or sell, Proxy Services in the United States or import Proxy Services into the United States to the extent it is not licensed by Luminati to do so;

7. BI Science may continue providing its Urban VPN application to the extent it does not practice Luminati's patents;

8. Luminati makes monthly payments to BI Science of 37% of the gross (invoiced) revenue generated by any BI Science customer of Proxy Services transferred by BI Science and accepted by Luminati to Luminati's Proxy Services as part of this agreement for a period up to 27 months (Luminati shall not arbitrarily reject BI Science proxy service customers transferred under the settlement agreement. Any rejection shall be supported by legitimate and reasonable grounds including the existing Luminati compliance procedures. Any disputed rejection shall be submitted to arbitration by William Cornelius.);

*RESTRICTED – ATTORNEYS' EYES ONLY – Protected by Fed. R. Evid. 408*

9.  Luminati will set up an escrow account of $350,000 from which payments are to be made to BI Science;

10. Luminati agrees not to file a post grant review petition, inter partes review petition or other reexamination petition against BI Science's U.S. Patent No. 10,410,244 ("'244 Patent") and other BI Science patents to the extent that BI Science does not threaten or otherwise asserts its patents against Luminati, its customers, licensees or affiliates, in which case there is no restriction on Luminati's ability to challenge one or more of the BI Science patents;

11. BI Science agrees not to file a post grant review petition, inter partes review petition or other reexamination petition against the Patents in Suit or any other patents assigned to Luminati; and

12. BI Science assigns the '244 Patent and related patent applications, continuations, and continuations in part to Luminati.

13. Luminati agrees to provide its Residential proxy network service to BI Science at a lowered, fixed price of $0.40/GB for up to 50 TB/month for 5 years solely in support of BI Science's Adclarity business, under the strict prohibition against Bi Science reselling access to Luminati's residential proxy network;

14. The parties agree to a 3-year litigation stand down, during which neither party shall institute legal action of any kind against the other except as may be necessary to enforce any settlement reached as a result of this proposal;

15. The parties are to release a mutually agreed press release;

16. Each side will bear its own costs and attorney's fees; and

17. The parties agree to submit any disputes regarding the terms and provisions of the settlement to binding arbitration by William Cornelius.

**MEDIATOR**

By: *[signature]*

Name: William Cornelius

Dated: 2-24-2020

The undersigned Parties agree that the terms of this agreement are confidential and shall not be disclosed except as reasonably necessary to attorneys, financial representatives, and lenders or as reasonably necessary to comply with governmental laws, regulations, court orders and subpoenas.

| LUMINATI NETWORKS LTD. | BI SCIENCE (2009) LTD. |
|---|---|
| By: *Or Lenchner* | By: |
| Name: Or Lenchner | Name: |
| Dated: 25-Feb-2020 | Dated: |

**Appx1503**

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **LUMINATI NETWORKS, LTD** | § | |
| | § | |
| **V.** | § | **CASE NO. 2:18-CV-00483-JRG** |
| | § | |
| **BI SCIENCE, INC.** | § | |

## MEDIATOR'S PROPOSAL

**PRELIMINARY STATEMENT**

Various non-monetary settlement terms have been extensively negotiated by the parties to the point of agreement in principle.  Most of such terms are not mentioned specifically in the following proposal but will be included in a more formal agreement. If a tentative settlement is reached as a result of this proposal, and the parties are unable to reach complete agreement on the various terms and provisions of a comprehensive settlement document, the unresolved issues will be submitted to binding arbitration by William Cornelius.

- In exchange for BI Science vacating the proxy service market on a worldwide and permanent basis, Luminati agrees to make monthly payments to BI Science of **37%** of the gross (invoiced) revenue generated by any BI Science customer of proxy services transferred to Luminati's Proxy Services as part of this agreement (transferred customers must be acceptable to Luminati), for a term of **27 months**;
- Luminati will set up an escrow account of **$350,000** from which such payments are to be made;
- Luminati will provide its residential proxy network service to BI Science at a fixed price of **$0.40/GB** for up to 50 TB/month for **5 years** solely in support of BI Science's Adclarity business, under the strict prohibition against BI Science reselling its access to Luminati's residential proxy service network;
- The parties will agree to a **3-year** litigation stand down, during which neither party shall institute legal action of any kind against the other except as may be necessary to enforce any settlement reached as a result of this proposal;
- Each side will bear its own costs and attorney's fees.

_____ ACCEPTED          _____ REJECTED

_____
ON BEHALF OF PLAINTIFF LUMINATI

**Ron Wielkopolski**

| | |
|---|---|
| **From:** | Robert Harkins |
| **Sent:** | Saturday, February 22, 2020 10:33 PM |
| **To:** | William Cornelius, Jr; Ron Wielkopolski |
| **Cc:** | Sunny Cherian; Amadou Kilkenny Diaw; Calvin Capshaw |
| **Subject:** | RE: BI Science - Status of Current Luminati Proposal |
| **Attachments:** | Signed_Mediator_Proposal.pdf; Ex 1 - 2020.02.22_Proposal - Confidential and subject to FRE 408 FINAL_.pdf; 2020.02.22 Ex 2 - Email.pdf |

Dear Bill,

We have reluctantly agreed to accept the mediator's proposal that you provided to the parties earlier today.  In addition, any agreement with BI Science must include the previously agreed upon points that you helped the parties with (noted in our signed agreement with the proposal).  Those agreements were cited in our earlier email sent to you on February 22 at 2:09 pm EST including points 1-7, 8 is agreed to pursuant to mediator's proposal, 9 is agreed to pursuant to mediator's proposal, 10-12, 13 is agreed to pursuant to mediator's proposal, 14 is agreed to pursuant to mediator's proposal, and 15 where Luminati will author the draft press release for BI Science's approval.  These points are set forth in exhibit 1 with exhibit 2 being your email on February 22 at 3:38 pm EST time confirming that these points are correct.

Please confirm that both sides agree to the terms including those additional terms in Ex. 1-2.  It is important that we receive confirmation to avoid unnecessary travel and expense to Texas for the hearing set for Monday.

Regards,

**Bob Harkins**
bobh@ruyakcherian.com
(510) 944-0187



---

**From:** William Cornelius, Jr <wc@wilsonlawfirm.com>
**Sent:** Saturday, February 22, 2020 12:38 PM
**To:** Ron Wielkopolski <ronw@ruyakcherian.com>
**Cc:** Sunny Cherian <sunnyc@ruyakcherian.com>; Robert Harkins <bobh@ruyakcherian.com>; Amadou Kilkenny Diaw <amadoukd@ruyakcherian.com>; Calvin Capshaw <ccapshaw@capshawlaw.com>
**Subject:** RE: BI Science - Status of Current Luminati Proposal

This is consistent with my understanding except I think we need to add #14 about the litigation stand down. You have that marked as not agreed.

Bill

---

**From:** Ron Wielkopolski <ronw@ruyakcherian.com>
**Sent:** Saturday, February 22, 2020 1:09 PM
**To:** William Cornelius, Jr <wc@wilsonlawfirm.com>
**Cc:** Sunny Cherian <sunnyc@ruyakcherian.com>; Robert Harkins <bobh@ruyakcherian.com>; Amadou Kilkenny Diaw

CONFIDENTIAL MATERIAL REDACTED

<amadoukd@ruyakcherian.com>; Calvin Capshaw <ccapshaw@capshawlaw.com>; Ron Wielkopolski
<ronw@ruyakcherian.com>
**Subject:** BI Science - Status of Current Luminati Proposal

Bill,

I wanted to be sure that we have not misinterpreted any of our conversations regarding the various settlement points.  Originally, there were 16 points including ████████████████████.  Now there are 15 points, because for the moment Luminati dropped this term.  By our count there are only three points that have not been agreed to.  As shown in the attached update of the February 11 proposal, they are as follows:

    8. The amount of shared revenue.  To be clear, with regard to this point, the customers must also be acceptable to Luminati;

    9.  The size of the escrow account;

    13. The price per GB of residential proxy services.

With regard to point 10, in an effort to reach a compromise, Luminati agrees not to challenge the validity of BI Science patents as long as BI Science does not threaten or assert them against Luminati, its customers, licensees and affiliates.

Please confirm that this is consistent with your understanding.  As attachments, we've included the previous drafts and emails.

Regards,
Ron

**Ronald Wielkopolski**
Associate

RuyakCherian LLP
1700 K St NW, Suite 810
Washington, DC 20006
O:  (202) 838-1568
M:  (907) 952-4866

*RESTRICTED – ATTORNEYS' EYES ONLY – Protected by Fed. R. Evid. 408*

**Luminati v. BI Science – February 22, 2020 Proposal**

As discussed during the December mediation in New York, Luminati Networks Ltd. ("Luminati") proposes the following agreement to Defendant BI Science (2009) Ltd. ("BI Science") to resolve the following actions and proceedings ("BI Science Proceedings"):

- *Luminati Networks Ltd. v. BI Science Inc.*, Case No 2:18-cv-483, E.D. Texas;
- *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No 2:19-cv-352, E.D. Texas;
- *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No 2:19-cv-397, E.D. Texas;
- Petition for *Inter Partes* Review of U.S. Patent No. 9,241,044, IPR2020-166; and
- Petition for *Inter Partes* Review of U.S. Patent No. 9,742,866, IPR2020-167.

Understanding that BI Science has requested a global settlement and that the claims of patent infringement in these actions involving U.S. Patent Nos. 9,241,044, 9,742,866, 10,257,319, 10,410,244, 10,469,614, 10,484,510, and 10,484,511 ("Patents in Suit") involve BI Science's residential proxy and data center proxy services, including under the "Geosurf" brand ("Proxy Services") proxy service. BI Science previously proposed a world-wide solution, and in response Luminati proposes the following:

1. [Agreed] Both Parties dismiss all claims in Case No 2:18-cv-483 with prejudice except for the claim of invalidity with regard to claim 108 of U.S. Patent No. 9,241,044 ("'044 Patent");

2. [Agreed] The Parties shall move for entry of final judgment with regard to claim 108 of the '044 Patent;

3. [Agreed] Luminati dismisses Case No. 2:19-cv-352 and Case No 2:19-cv-397 without prejudice;

4. [Agreed] BI Science withdraws its *inter partes* review petitions (IPR2020-166 and IPR2020-167) against certain Patents-in-Suit;

5. [Agreed] BI Science leaves the Proxy Services business world-wide permanently;

6. [Agreed] BI Science enters a stipulated injunction that BI Science will not use, offer to sell, or sell, Proxy Services in the United States or import Proxy Services into the United States to the extent it is not licensed by Luminati to do so;

7. [Agreed] BI Science may continue providing its Urban VPN application to the extent it does not practice Luminati's patents;

8. Luminati makes monthly payments to BI Science of []% of the invoiced revenue generated by any BI Science customer of Proxy Services transferred by BI Science and accepted by Luminati to Luminati's Proxy Services as part of this agreement for a period up to two years;

**CONFIDENTIAL MATERIAL REDACTED**

*RESTRICTED – ATTORNEYS' EYES ONLY – Protected by Fed. R. Evid. 408*

9.  [Agreed up to $250,000, but BI Science wants $500,000] Luminati will set up an escrow account of $250,000 from which payments are to be made to BI Science for a period of two years;

10. Luminati agrees not to file a post grant review petition, inter partes review petition or other reexamination petition against BI Science's U.S. Patent No. 10,410,244 ("'244 Patent") and other BI Science patents to the extent that BI Science does not threaten or otherwise asserts its patents against Luminati, its customers, licensees or affiliates, in which case there is no restriction on Luminati's ability to challenge one or more of the BI Science patents;

11. [Agreed] BI Science agrees not to file a post grant review petition, inter partes review petition or other reexamination petition against the Patents in Suit or any other patents assigned to Luminati; and

12. [Agreed] BI Science assigns the '244 Patent and related patent applications, continuations, and continuations in part to Luminati.

13. Luminati agrees to provide its Residential proxy network service to BI Science at a lowered, fixed price of $[Luminati offered ▓▓▓▓▓ and BI Science countered at ▓▓▓▓▓▓ for up to 50 TB/month for 5 years solely in support of BI Science's Adclarity business, under the strict prohibition against Bi Science reselling access to Luminati's residential proxy network.

14. [Not Agreed] BI Science asks for a litigation stand-down for 3-5 years;

15. [Agreed] The parties are to release a mutually agreed press release.

**Robert Harkins**

| | |
|---|---|
| **From:** | William Cornelius, Jr <wc@wilsonlawfirm.com> |
| **Sent:** | Saturday, February 22, 2020 12:38 PM |
| **To:** | Ron Wielkopolski |
| **Cc:** | Sunny Cherian; Robert Harkins; Amadou Kilkenny Diaw; Calvin Capshaw |
| **Subject:** | RE: BI Science - Status of Current Luminati Proposal |

This is consistent with my understanding except I think we need to add #14 about the litigation stand down. You have that marked as not agreed.

Bill

**From:** Ron Wielkopolski <ronw@ruyakcherian.com>
**Sent:** Saturday, February 22, 2020 1:09 PM
**To:** William Cornelius, Jr <wc@wilsonlawfirm.com>
**Cc:** Sunny Cherian <sunnyc@ruyakcherian.com>; Robert Harkins <bobh@ruyakcherian.com>; Amadou Kilkenny Diaw <amadoukd@ruyakcherian.com>; Calvin Capshaw <ccapshaw@capshawlaw.com>; Ron Wielkopolski <ronw@ruyakcherian.com>
**Subject:** BI Science - Status of Current Luminati Proposal

Bill,

I wanted to be sure that we have not misinterpreted any of our conversations regarding the various settlement points. Originally, there were 16 points including ███████████████. Now there are 15 points, because for the moment Luminati dropped this term. By our count there are only three points that have not been agreed to. As shown in the attached update of the February 11 proposal, they are as follows:

    8. The amount of shared revenue. To be clear, with regard to this point, the customers must also be acceptable to Luminati;

    9. The size of the escrow account;

    13. The price per GB of residential proxy services.

With regard to point 10, in an effort to reach a compromise, Luminati agrees not to challenge the validity of BI Science patents as long as BI Science does not threaten or assert them against Luminati, its customers, licensees and affiliates.

Please confirm that this is consistent with your understanding. As attachments, we've included the previous drafts and emails.

Regards,
Ron

**Ronald Wielkopolski**
Associate

RuyakCherian LLP
1700 K St NW, Suite 810
Washington, DC 20006
O:  (202) 838-1568
M:  (907) 952-4866



**Appx1512**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS, LTD | § | |
| | § | |
| V. | § | CASE NO. 2:18-CV-00483-JRG |
| | § | |
| BI SCIENCE, INC. | § | |

## MEDIATOR'S PROPOSAL

### PRELIMINARY STATEMENT

Various non-monetary settlement terms have been extensively negotiated by the parties to the point of agreement in principle.  Most of such terms are not mentioned specifically in the following proposal but will be included in a more formal agreement. If a tentative settlement is reached as a result of this proposal, and the parties are unable to reach complete agreement on the various terms and provisions of a comprehensive settlement document, the unresolved issues will be submitted to binding arbitration by William Cornelius.

- In exchange for BI Science vacating the proxy service market on a worldwide and permanent basis, Luminati agrees to make monthly payments to BI Science of **37%** of the gross (invoiced) revenue generated by any BI Science customer of proxy services transferred to Luminati's Proxy Services as part of this agreement (transferred customers must be acceptable to Luminati), for a term of **27 months**;
- Luminati will set up an escrow account of **$350,000** from which such payments are to be made;
- Luminati will provide its residential proxy network service to BI Science at a fixed price of **$0.40/GB** for up to 50 TB/month for **5 years** solely in support of BI Science's Adclarity business, under the strict prohibition against BI Science reselling its access to Luminati's residential proxy service network;
- The parties will agree to a **3-year** litigation stand down, during which neither party shall institute legal action of any kind against the other except as may be necessary to enforce any settlement reached as a result of this proposal;
- Each side will bear its own costs and attorney's fees.

✓ ACCEPTED          _____ REJECTED

_in accordance with the accompanying previously agreed terms. See attached._

_____
ON BEHALF OF PLAINTIFF LUMINATI

2/22/20

## Ron Wielkopolski

| | |
|---|---|
| **From:** | Ron Wielkopolski |
| **Sent:** | Sunday, February 23, 2020 9:28 AM |
| **To:** | William Cornelius, Jr; Robert Harkins |
| **Cc:** | Sunny Cherian; Amadou Kilkenny Diaw; Calvin Capshaw; Ron Wielkopolski |
| **Subject:** | RE: BI Science - Status of Current Luminati Proposal |

Bill,

We would accept the inclusion of the below language:

Luminati shall not arbitrarily reject BI Science proxy service customers transferred under the settlement agreement. Any rejection shall be supported by legitimate and reasonable grounds including the existing Luminati compliance procedures. Any disputed rejection shall be submitted to arbitration by William Cornelius.

**Ronald Wielkopolski**
Associate

RuyakCherian LLP
1700 K St NW, Suite 810
Washington, DC 20006
O:  (202) 838-1568
M:  (907) 952-4866



---

**From:** William Cornelius, Jr <wc@wilsonlawfirm.com>
**Sent:** Saturday, February 22, 2020 10:41 PM
**To:** Robert Harkins <bobh@ruyakcherian.com>
**Cc:** Ron Wielkopolski <ronw@ruyakcherian.com>; Sunny Cherian <sunnyc@ruyakcherian.com>; Amadou Kilkenny Diaw <amadoukd@ruyakcherian.com>; Calvin Capshaw <ccapshaw@capshawlaw.com>
**Subject:** Re: BI Science - Status of Current Luminati Proposal

Thank you Bob. I will advise ASAP.

Bill

Sent from my iPhone

> On Feb 22, 2020, at 9:33 PM, Robert Harkins <bobh@ruyakcherian.com> wrote:

Dear Bill,

## Appx1514

**CONFIDENTIAL MATERIAL REDACTED**

We have reluctantly agreed to accept the mediator's proposal that you provided to the parties earlier today.  In addition, any agreement with BI Science must include the previously agreed upon points that you helped the parties with (noted in our signed agreement with the proposal).  Those agreements were cited in our earlier email sent to you on February 22 at 2:09 pm EST including points 1-7, 8 is agreed to pursuant to mediator's proposal, 9 is agreed to pursuant to mediator's proposal, 10-12, 13 is agreed to pursuant to mediator's proposal, 14 is agreed to pursuant to mediator's proposal, and 15 where Luminati will author the draft press release for BI Science's approval.  These points are set forth in exhibit 1 with exhibit 2 being your email on February 22 at 3:38 pm EST time confirming that these points are correct.

Please confirm that both sides agree to the terms including those additional terms in Ex. 1-2.  It is important that we receive confirmation to avoid unnecessary travel and expense to Texas for the hearing set for Monday.

Regards,

**Bob Harkins**
bobh@ruyakcherian.com
(510) 944-0187

<image001.png>

**From:** William Cornelius, Jr <wc@wilsonlawfirm.com>
**Sent:** Saturday, February 22, 2020 12:38 PM
**To:** Ron Wielkopolski <ronw@ruyakcherian.com>
**Cc:** Sunny Cherian <sunnyc@ruyakcherian.com>; Robert Harkins <bobh@ruyakcherian.com>; Amadou Kilkenny Diaw <amadoukd@ruyakcherian.com>; Calvin Capshaw <ccapshaw@capshawlaw.com>
**Subject:** RE: BI Science - Status of Current Luminati Proposal

This is consistent with my understanding except I think we need to add #14 about the litigation stand down. You have that marked as not agreed.

Bill

**From:** Ron Wielkopolski <ronw@ruyakcherian.com>
**Sent:** Saturday, February 22, 2020 1:09 PM
**To:** William Cornelius, Jr <wc@wilsonlawfirm.com>
**Cc:** Sunny Cherian <sunnyc@ruyakcherian.com>; Robert Harkins <bobh@ruyakcherian.com>; Amadou Kilkenny Diaw <amadoukd@ruyakcherian.com>; Calvin Capshaw <ccapshaw@capshawlaw.com>; Ron Wielkopolski <ronw@ruyakcherian.com>
**Subject:** BI Science - Status of Current Luminati Proposal

Bill,

I wanted to be sure that we have not misinterpreted any of our conversations regarding the various settlement points.  Originally, there were 16 points ███████████████████████.  Now there are 15 points, because for the moment Luminati dropped this term.  By our count there are only three points that have not been agreed to.  As shown in the attached update of the February 11 proposal, they are as follows:

      8. The amount of shared revenue.  To be clear, with regard to this point, the customers must also be acceptable to Luminati;

      9.  The size of the escrow account;

13. The price per GB of residential proxy services.

With regard to point 10, in an effort to reach a compromise, Luminati agrees not to challenge the validity of BI Science patents as long as BI Science does not threaten or assert them against Luminati, its customers, licensees and affiliates.

Please confirm that this is consistent with your understanding. As attachments, we've included the previous drafts and emails.

Regards,
Ron

**Ronald Wielkopolski**
Associate

RuyakCherian LLP
1700 K St NW, Suite 810
Washington, DC 20006
O: (202) 838-1568
M: (907) 952-4866

<image001.png>

<Signed_Mediator_Proposal.pdf>
<Ex 1 - 2020.02.22_Proposal - Confidential and subject to FRE 408 FINAL_.pdf>
<2020.02.22 Ex 2 - Email.pdf>

**Ron Wielkopolski**

| | |
|---|---|
| **From:** | Eric Findlay <EFindlay@FindlayCraft.com> |
| **Sent:** | Sunday, February 23, 2020 10:49 AM |
| **To:** | Ron Wielkopolski |
| **Cc:** | Debby Gunter; Sunny Cherian; Robert Harkins; Calvin Capshaw; Elizabeth DeRieux; Heidi Peterson; William Cornelius |
| **Subject:** | Re: BI Science - Joint Motion to Stay |

Approved.

Eric

Eric H. Findlay
**Findlay Craft  PC**
102 N. College Avenue, Suite 900
Tyler, Texas  75702
(903) 534-1100  M: (903) 571-6963
www.findlaycraft.com

*National Experience. Local Expertise.*

On Feb 23, 2020, at 9:43 AM, Ron Wielkopolski <ronw@ruyakcherian.com> wrote:

Eric,

Please see the attached joint motion to stay.  Do we have your approval to file?

Thank you,
Ron

**Ronald Wielkopolski**
Associate

RuyakCherian LLP
1700 K St NW, Suite 810
Washington, DC 20006
O:  (202) 838-1568
M:  (907) 952-4866
<image001.png>

<2020 02 23 Jnt Mtn to Stay All DLs.docx><2020 02 23 Proposed Order Jnt Mtn to Stay All DLs.docx>

1

**Ron Wielkopolski**

| | |
|---|---|
| **From:** | Robert Harkins |
| **Sent:** | Thursday, February 27, 2020 5:01 PM |
| **To:** | Eric Findlay |
| **Cc:** | William Cornelius, Jr; Sunny Cherian; Debby Gunter; Ron Wielkopolski |
| **Subject:** | RE: Luminati / BI Science Follow Up |
| **Attachments:** | 2020.02.27_Settlement Agreement_DRAFT.docx |

Eric,

Per your request for a more formal version of the settlement agreement, please see attached.  This tracks the terms and language that the parties agreed to and Bill Cornelius confirmed in writing.  If this is acceptable please have your client sign and return.  If you think any edits are required, please send those for our review.

Thanks,

**Bob Harkins**
bobh@ruyakcherian.com
(510) 944-0187



---

**From:** Ron Wielkopolski <ronw@ruyakcherian.com>
**Sent:** Thursday, February 27, 2020 6:47 AM
**To:** Eric Findlay <efindlay@findlaycraft.com>; Robert Harkins <bobh@ruyakcherian.com>
**Cc:** William Cornelius, Jr <wc@wilsonlawfirm.com>; ron.abramson@listonabramson.com; Tom Dunham <tomd@ruyakcherian.com>; Sunny Cherian <sunnyc@ruyakcherian.com>; Debby Gunter <dgunter@findlaycraft.com>; Ron Wielkopolski <ronw@ruyakcherian.com>
**Subject:** RE: Luminati / BI Science Follow Up

Eric,

We will send you a draft shortly.

Thanks,
Ron

**Ronald Wielkopolski**
Associate

RuyakCherian LLP
1700 K St NW, Suite 810
Washington, DC 20006
O:  (202) 838-1568
M:  (907) 952-4866

1

**Appx1519**

**CONFIDENTIAL MATERIAL REDACTED**



---

**From:** Eric Findlay <efindlay@findlaycraft.com>
**Sent:** Thursday, February 27, 2020 9:09 AM
**To:** Robert Harkins <bobh@ruyakcherian.com>
**Cc:** William Cornelius, Jr <wc@wilsonlawfirm.com>; ron.abramson@listonabramson.com; Tom Dunham <tomd@ruyakcherian.com>; Sunny Cherian <sunnyc@ruyakcherian.com>; Ron Wielkopolski <ronw@ruyakcherian.com>; Debby Gunter <dgunter@findlaycraft.com>
**Subject:** Re: Luminati / BI Science Follow Up

Bob,

I understand that Ron A. and Tom Dunham have been in discussions and that a proposal to the PTAB to push your March 3 deadline has or will be made shortly.   In the meantime, we think a more formal agreement setting forth the details and particulars of how the settlement is put into effect in needed.  We will work on the initial draft and endeavor to get it to you as soon as we can.

Regards,

Eric

Eric H. Findlay
**Findlay Craft  PC**
102 N. College Avenue, Suite 900
Tyler, Texas  75702
(903) 534-1100  M: (903) 571-6963
www.findlaycraft.com

*National Experience. Local Expertise.*

> On Feb 25, 2020, at 3:50 PM, Robert Harkins <bobh@ruyakcherian.com> wrote:
>
> Thanks for the response.  It is our understanding we have a final deal, but in any event why don't we talk tomorrow to at least know where we all are.  We can have the call at 11:30 am CT.  Here is the dial-in information: ███████████ code ██████ .
> **Bob Harkins**
> bobh@ruyakcherian.com
> (510) 944-0187
> <image001.png>

> **From:** Eric Findlay <efindlay@findlaycraft.com>
> **Sent:** Tuesday, February 25, 2020 1:23 PM
> **To:** Robert Harkins <bobh@ruyakcherian.com>
> **Cc:** William Cornelius, Jr <wc@wilsonlawfirm.com>; ron.abramson@listonabramson.com; Tom Dunham <tomd@ruyakcherian.com>; Sunny Cherian <sunnyc@ruyakcherian.com>; Ron Wielkopolski <ronw@ruyakcherian.com>; Debby Gunter <dgunter@findlaycraft.com>
> **Subject:** Re: Luminati / BI Science Follow Up

> Bob,

Ron and I have been discussing this.  We are fine jointly moving the PTAB to push your response deadline and then within that time hopefully being able to finalize the formal settlement agreement, and get dismissal papers on file.  I can get on the phone anytime tomorrow to discuss how to make that happen.  But we are not going to terminate the IPRs until the settlement is finalized.

I'll stand by for details for a call.

Eric

Eric H. Findlay
**Findlay Craft  PC**
102 N. College Avenue, Suite 900
Tyler, Texas  75702
(903) 534-1100  M: (903) 571-6963
www.findlaycraft.com

*National Experience. Local Expertise.*

On Feb 25, 2020, at 2:50 PM, Robert Harkins <bobh@ruyakcherian.com> wrote:

Eric,

We received the completed settlement as confirmed by Bill Cornelius that both sides had agreed. We think we should make sure we also have it with our client's signatures.  That should also streamline moving forward on executing on the terms.  The agreement from Bill said confidential at the top but to ensure it was clear as a term we added a line item under his signature confirming.  Can you please have your client sign and send back ASAP?

Also, one of the key aspects of the agreement was to dismiss the pending IPRs, and currently our response is due March 3.  We don't want to have to file a response (one important motivation to settle), so can we please get on the phone with you and BI Science's IPR counsel Ron Abramson (cc'd on this email) either today or tomorrow at the latest so we are all on the same page about contacting the Board regarding terminating the IPRs?  What time can you do that?

Thanks,
**Bob Harkins**
Partner
RuyakCherian LLP
1936 University Ave, Suite 350
Berkeley, CA 94704
(510) 944-0187
<image001.png>

<Mediated Settlement (w signature blocks)-1.pdf>

# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement") effective as of February 23, 2020 (the "Effective Date"), by and among Luminati Networks Ltd. ("Luminati"), on the one hand, and BI Science (2009) Ltd., also known as BI Science Inc., ("BI Science") on the other. Luminati and BI Science are each referred to as a "Party" hereunder and collectively as "the Parties."

WHEREAS, Luminati filed suit against BI Science in the Eastern District of Texas in an action captioned *Luminati Networks Ltd. v. BI Science Inc.*, Case No 2:18-cv-483 ("the First Action"), asserting claims of infringement of U.S. Patent Nos. 9,241,044 (the "'044 Patent"), and 9,742,866 (the "'866 Patent"), misappropriation of trade secrets, false advertising, and tortious interference with Luminati's current and prospective business relationships, and BI Science filed counterclaims for a declaratory judgment of non-infringement and invalidity of the '044 Patent and '866 Patent, as well as counterclaims of false advertising, and monopolization and attempt to monopolize;

WHEREAS, Luminati filed suit against BI Science in the Eastern District of Texas in an action captioned *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No 2:19-cv-397 ("the Second Action"), asserting claims of infringement of U.S. Patent Nos. 10,469,614 (the "'614 Patent"), 10,257,319 (the "'319 Patent"), 10,484,510 (the "'510 Patent"), and 10,484,511 (the "'511 Patent");

WHEREAS, Luminati filed suit against BI Science in the Eastern District of Texas in an action captioned *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No 2:19-cv-352 ("the DJ Action"), asserting a declaratory judgment claim of non-infringement of BI Science U.S. Patent No. 10,410,244 (the "'244 Patent");

WHEREAS, BI Science filed a petition for *inter partes review* at the Patent Trial and Appeal Board ("PTAB") of the '044 Patent captioned *BI Science (2009) Ltd. v. Luminati Networks Ltd.*, IPR2020-00166 ("'044 IPR");

WHEREAS, BI Science filed a petition for *inter partes review* at the Patent Trial and Appeal Board ("PTAB") of the '866 Patent captioned *BI Science (2009) Ltd. v. Luminati Networks Ltd.*, IPR2020-00167 ("'866 IPR");

WHEREAS, the Parties reached terms to enter a global settlement including resolution of patent infringement and invalidity claims involving the '044 Patent, '866 Patent, '614 Patent, '319 Patent, '319 Patent, '510 Patent, '511 Patent, and '244 Patent ("Patents in Suit") involving BI Science's residential proxy and data center proxy services, including under the 'Geosurf' brand ("Proxy Services") through a global settlement mediated by William Cornelius on February 23, 2020 comprising a February 22, 2020 Settlement Proposal, a February 22, 2020 mediator's proposal, and a February 23, 2020 email, and the Parties agreed to merge those terms in this Agreement;

NOW, THEREFORE, in consideration of the promises and covenants contained herein, receipt of which is hereby acknowledged, and with intent to be legally bound, the Parties hereby covenant and agree as follows:

1. The Parties shall dismiss all claims in the First Action with prejudice except for the claim of invalidity with regard to claim 108 of the '044 Patent.

2. The Parties shall move for entry of final judgment with regard to claim 108 of the '044 Patent.

3. Luminati shall dismiss all claims in the Second Action and DJ Action without prejudice.

4. BI Science shall withdraw its *inter partes* review petitions in the '044 IPR and '866 IPR against certain Patents-in-Suit.

5. BI Science shall leave the Proxy Services business world-wide permanently.

6. BI Science shall enter a stipulated injunction that BI Science will not use, offer to sell, or sell, Proxy Services in the United States or import Proxy Services into the United States to the extent it is not licensed by Luminati to do so.

7. BI Science may continue providing its Urban VPN application to the extent it does not practice Luminati's patents.

8. Luminati shall make monthly payments to BI Science of 37% of the gross (invoiced) revenue generated by any BI Science customer of Proxy Services transferred by BI Science and accepted by Luminati to Luminati's Proxy Services as part of this Agreement for a period up to 27 months. Luminati shall not arbitrarily reject BI Science proxy service customers transferred under the settlement agreement. Any rejection shall be supported by legitimate and reasonable grounds including the existing Luminati compliance procedures. Any disputed rejection shall be submitted to arbitration by William Cornelius.

9. Luminati shall set up an escrow account of $350,000 from which payments are to be made to BI Science.

10. Luminati agrees not to file a post grant review petition, inter partes review petition or other reexamination petition against BI Science's U.S. Patent No. 10,410,244 ("'244 Patent") and other BI Science patents to the extent that BI Science does not threaten or otherwise asserts its patents against Luminati, its customers, licensees or affiliates, in which case there is no restriction on Luminati's ability to challenge one or more of the BI Science patents.

11. BI Science agrees not to file a post grant review petition, inter partes review petition or other reexamination petition against the Patents in Suit or any other patents assigned to Luminati.

12. BI Science assigns the '244 Patent and related patent applications, continuations, and continuations in part to Luminati.

13. Luminati agrees to provide its Residential proxy network service to BI Science at a lowered, fixed price of $0.40/GB for up to 50 TB/month for 5 years solely in support of BI Science's Adclarity business, under the strict prohibition against BI Science reselling access to Luminati's residential proxy network.

14. The Parties agree to a 3-year litigation stand down, during which neither party shall institute legal action of any kind against the other except as may be necessary to enforce any settlement reached as a result of this proposal.

15. The Parties agree to release a mutually agreed press release with Luminati to author the initial draft.

16. Each Party will bear its own costs and attorney's fees.

17. The Parties agree to submit any disputes regarding the terms and provisions of this Agreement to binding arbitration by William Cornelius.

18. The undersigned Parties agree that the terms of this agreement are confidential and shall not be disclosed except as reasonably necessary to attorneys, financial representatives, and lenders or as reasonably necessary to comply with governmental laws, regulations, court orders and subpoenas.

19. This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas without regard to its conflicts of law provisions.  To the extent that any dispute arises under this Agreement that is not resolved by any other provision in this Agreement, such dispute shall be brought as an action, proceeding or litigation in the Eastern District of Texas, and the Parties shall request that the matter be assigned to the Honorable Judge Rodney Gilstrap.  The Parties agree that, to the extent allowed by law, the Eastern District of Texas shall have continuing jurisdiction to enforce the terms of this Agreement.

20. The Parties and each of them hereby agrees, represents, warrants and covenants that they have full and complete authority to enter into this Agreement, and that there has been no transfer or assignment of any right regarding the intellectual property addressed herein, including the Patents in Suit.


**LUMINATI NETWORKS LTD.**          **BI SCIENCE (2009) LTD.**

By:_____          By:_____
Name: _____          Name: _____
Dated:_____          Dated:_____

**Ron Wielkopolski**

| | |
|---|---|
| **From:** | Eric Findlay <efindlay@findlaycraft.com> |
| **Sent:** | Wednesday, March 11, 2020 5:15 PM |
| **To:** | Robert Harkins; Sunny Cherian; Calvin Capshaw |
| **Cc:** | Ron Wielkopolski; Debby Gunter; William Cornelius, Jr |
| **Subject:** | Re: Luminati / BI Science Follow Up--FRE 408 Settlement Negotiations |
| **Attachments:** | Luminati.BISci.Revised Settlement3.11.2020.docx |

Bob, Sunny and Calvin,

I'm attaching a revised proposed Settlement Agreement.   As you will see we need more in terms of details regarding the framework and points set forth in Bill Cornelius' Mediator's Proposal.  I appreciate your list below of the "mechanics" of how some of this might be implemented, but have not attempted to incorporate those into this Agreement at this point.

A major concern for us is the previously mentioned criteria for rejection of customers.   We cannot move forward without a detailed understanding of what would constitute a basis to reject a BI Science customer.  Without that assurance, we have no reasonable expectation that the revenue share of 37% will be realized. Hence we asking that the bases for customer rejection be detailed in the agreement.

Also, as I would expect anyone can recognize, the current business climate is far different than it was 3 weeks ago due to the Coronavirus pandemic.  As you have undoubtedly seen through the audited financial statements that BI Science has produced in discovery, BI Science relies on an ongoing raising of additional funds to maintain itself as a going concern.   Due to the severe financial impact, business contraction and uncertainty brought about by the spreading Coronavirus pandemic, that ability to raise additional funds has been dramatically curtailed.   Israel for instance, as you no doubt know, is enforcing a 14 day self-quarantine on anyone entering the country.

Given this, if BI Science is to survive it must have more time to raise the necessary capital before exiting the proxy business.   Thus, we are proposing a delay of our exit of the marketplace.  That should provide a significant buffer of time for the Coronavirus situation to recede and, accordingly, for BI Science to raise the funds it needs as a result of exiting the proxy business.

We have communicated these concerns to Bill Cornelius this morning, and we stand by to discuss this with you. It is our strong desire to be able to finalize this agreement.  Perhaps a joint call or meeting with Bill.  I can be available anytime tomorrow afternoon other than 3-4pm Central, and anytime Friday other than between 1:30-2:30pm Central.  We still have time under the stay—and can always seek some additional time—such that it's my sincere hope we can work through these issues.

We also remain willing to assist, if we can, in delaying the need for any action on Luminati's part at the PTAB with respect to the re-exam if we need more time to resolve this.

Thank you for your attention to this matter.

Best,

Eric

Eric H. Findlay
**Findlay Craft  PC**

**Appx1525**

102 N. College Avenue, Suite 900
Tyler, Texas  75702
(903) 534-1100  M: (903) 571-6963
www.findlaycraft.com

*National Experience. Local Expertise.*

On Mar 10, 2020, at 10:32 AM, Sarah Hene <shene@findlaycraft.com> wrote:

Mr. Harkins,

I am responding on Eric's behalf as he is in Court today. He will touch base with you when he is available.

Thanks,
Sarah

Sarah Hene
**Findlay Craft, P.C.**
102 N. College Avenue, Suite 900
Tyler, Texas  75702
(903) 534-1100  M: (903) 312-2030
www.findlaycraft.com

*National Experience. Local Expertise.*

---

**From:** Robert Harkins [mailto:bobh@ruyakcherian.com]
**Sent:** Monday, March 9, 2020 2:58 PM
**To:** Eric Findlay <efindlay@findlaycraft.com>
**Cc:** William Cornelius, Jr <wc@wilsonlawfirm.com>; Sunny Cherian <sunnyc@ruyakcherian.com>; Debby Gunter <dgunter@findlaycraft.com>; Ron Wielkopolski <ronw@ruyakcherian.com>
**Subject:** RE: Luminati / BI Science Follow Up

Eric,

We have not heard from you since the below message a week ago.  While we are still waiting on a signed copy of the settlement agreement signed by Bill Cornelius, to move things along we have attached a proposed implementation mechanics schedule to coordinate the parties in executing the terms of the February 23, 2020 settlement agreement from over two weeks ago.  Obviously, there are a number of filing deadlines between the District Court and the PTAB that the parties need to meet in order to execute the Settlement Agreement, including the deadline to file a motion to terminate with the PTAB by March 17.

While we believe it is unnecessary to complete the settlement, we are sending this at your request to solidify the implementation mechanics, including proposed dates for execution.

2
**Appx1526**

Please send us a signed copy of the settlement agreement and get back to us on the attached schedule.  If BI Science can't confirm the Settlement Agreement and agree to a schedule by Wednesday, we may run out of time and have to consider raising the issue with Judge Gilstrap.

Thanks,
**Bob Harkins**
bobh@ruyakcherian.com
(510) 944-0187
<image001.png>

---

**From:** Robert Harkins
**Sent:** Monday, March 2, 2020 3:49 PM
**To:** Eric Findlay <efindlay@findlaycraft.com>
**Cc:** William Cornelius, Jr <wc@wilsonlawfirm.com>; Sunny Cherian <sunnyc@ruyakcherian.com>; Debby Gunter <dgunter@findlaycraft.com>; Ron Wielkopolski <ronw@ruyakcherian.com>
**Subject:** RE: Luminati / BI Science Follow Up

Eric,

In the past we have had issues with your client using Luminati's in-house information and copying it. There was no negotiation to get into detail about Luminti's vetting procedures or disclose them to BI Science.  BI Science should not have an issue with this, however, because the terms include BI Science's ability to have the mediator resolve any issues in the event it  believes Luminati is not acting properly. We are not able to add anything beyond the deal that was reached.

Regards,
**Bob Harkins**
bobh@ruyakcherian.com
(510) 944-0187
<image001.png>

---

**From:** Eric Findlay <efindlay@findlaycraft.com>
**Sent:** Monday, March 2, 2020 2:14 PM
**To:** Robert Harkins <bobh@ruyakcherian.com>
**Cc:** William Cornelius, Jr <wc@wilsonlawfirm.com>; Sunny Cherian <sunnyc@ruyakcherian.com>; Debby Gunter <dgunter@findlaycraft.com>; Ron Wielkopolski <ronw@ruyakcherian.com>
**Subject:** Re: Luminati / BI Science Follow Up

Bob,

We are asking for clarification on the terms, that is the normal process that happens in working out a final agreement as you know as well as I.

To that end we want to have it more clearly set forth as to what is contained in Luminati's compliance procedures.   They are your client's procedures.  That shouldn't be hard to provide.

Eric

Sent from my iPhone

On Mar 2, 2020, at 3:51 PM, Robert Harkins <bobh@ruyakcherian.com> wrote:

Eric,

We recited exactly the terms that Bill Cornelius had in his proposal that the parties expressly agreed to, and we are not going to renegotiate or add to those terms.  Unless you think there is a mistake in the document, we would like to get this done as soon as possible, so please have your client sign and return the document and we will then do the same.

Thank you,
**Bob Harkins**
bobh@ruyakcherian.com
(510) 944-0187
<image001.png>

---

**From:** Eric Findlay <efindlay@findlaycraft.com>
**Sent:** Sunday, March 1, 2020 6:51 AM
**To:** Robert Harkins <bobh@ruyakcherian.com>
**Cc:** William Cornelius, Jr <wc@wilsonlawfirm.com>; Sunny Cherian <sunnyc@ruyakcherian.com>; Debby Gunter <dgunter@findlaycraft.com>; Ron Wielkopolski <ronw@ruyakcherian.com>
**Subject:** Re: Luminati / BI Science Follow Up

Bob,

A question, can you provide more detail w/r/t possible customer rejection under the "Luminati compliance procedures"?  I think we should list those criteria out in some detail.

Eric


Eric H. Findlay
**Findlay Craft  PC**
102 N. College Avenue, Suite 900
Tyler, Texas  75702
(903) 534-1100  M: (903) 571-6963
www.findlaycraft.com

National Experience. Local Expertise.


On Feb 27, 2020, at 4:01 PM, Robert Harkins <bobh@ruyakcherian.com> wrote:

Eric,

Per your request for a more formal version of the settlement agreement, please see attached.  This tracks the terms and language that the parties agreed to and Bill Cornelius confirmed in writing.  If this is acceptable please have your client sign and return.  If you think any edits are required, please send those for our review.

Thanks,

4
**Appx1528**

**Bob Harkins**
bobh@ruyakcherian.com
(510) 944-0187
<image001.png>

---

**From:** Ron Wielkopolski <ronw@ruyakcherian.com>
**Sent:** Thursday, February 27, 2020 6:47 AM
**To:** Eric Findlay <efindlay@findlaycraft.com>; Robert Harkins
<bobh@ruyakcherian.com>
**Cc:** William Cornelius, Jr
<wc@wilsonlawfirm.com>;ron.abramson@listonabramson.com; Tom
Dunham <tomd@ruyakcherian.com>; Sunny Cherian
<sunnyc@ruyakcherian.com>; Debby Gunter
<dgunter@findlaycraft.com>; Ron Wielkopolski
<ronw@ruyakcherian.com>
**Subject:** RE: Luminati / BI Science Follow Up

Eric,

We will send you a draft shortly.

Thanks,
Ron

**Ronald Wielkopolski**
Associate

RuyakCherian LLP
1700 K St NW, Suite 810
Washington, DC 20006
O:  (202) 838-1568
M:  (907) 952-4866
<image001.png>

---

**From:** Eric Findlay <efindlay@findlaycraft.com>
**Sent:** Thursday, February 27, 2020 9:09 AM
**To:** Robert Harkins <bobh@ruyakcherian.com>
**Cc:** William Cornelius, Jr
<wc@wilsonlawfirm.com>; ron.abramson@listonabramson.com; Tom
Dunham <tomd@ruyakcherian.com>; Sunny Cherian
<sunnyc@ruyakcherian.com>; Ron Wielkopolski
<ronw@ruyakcherian.com>; Debby Gunter
<dgunter@findlaycraft.com>
**Subject:** Re: Luminati / BI Science Follow Up

Bob,

I understand that Ron A. and Tom Dunham have been in discussions and
that a proposal to the PTAB to push your March 3 deadline has or will
be made shortly.   In the meantime, we think a more formal agreement
setting forth the details and particulars of how the settlement is put into
effect in needed.  We will work on the initial draft and endeavor to get it
to you as soon as we can.



1936 University Ave., Suite 350
Berkeley, CA 94704
Direct Dial: (510) 944-0187
bobh@ruyakcherian.com

**Robert Harkins**
**Partner**

March 9, 2020

VIA EMAIL

**Eric H. Findlay**
Findlay Craft
102 North College Avenue, Suite 900
Tyler, Texas 75702
efindlay@findlaycraft.com

**Counsel for Defendant BI Science (2009) Ltd. aka BI Science, Inc.,**

Re:    Regarding February 23, 2020 Settlement – Highly Confidential - Subject to FRE
       408

Dear Mr. Findlay,

        Pursuant to the February 23, 2020 settlement ("Settlement Agreement"), there are a number of issues that Luminati Networks Ltd. ("Luminati") and BI Science (2009) Ltd., also known as BI Science Inc., ("BI Science")(collectively, the "Parties") need to coordinate on.  Referencing the terms in the attached mediated settlement comprising the terms of the agreement signed by Mediator Cornelius, this implementation mechanics schedule confirms the manner and timing of the execution of the terms by the Parties based upon the Settlement Agreement dated February 23, 2020 ("Settlement Date") as follows:

- With regard to terms 1, 2 and 6:
    - Luminati will take the lead in drafting the joint motions for entry of final judgment regarding the 108 claim of the '044 Patent, joint stipulated injunction against unlicensed use, offers to sell and sale of Proxy Services in the US, and dismissal of the 2:18-cv-483 litigation.
    - Luminati will circulate drafts of these documents by March 13, with the joint documents to be filed by March 24, 2020.
    - BI Science will cooperate on these and any other filings necessary to satisfy these terms.

- With regard to term 3:
    - Luminati will prepare and file the necessary papers to dismiss cases 2:19-cv-352 and 2:19-cv-397, with the documents to be filed by March 25, 2020.

- With regard to term 4:

- o By March 17, 2020, the Parties will file a Joint Motion to Terminate along with a Joint Request to File Settlement Agreement as Business Confidential Information.
- o BI Science will also cooperate on any other filings to preserve the confidentiality of Luminati's documents, including its infringement contentions, under the PTAB's protective order.

- With regard to term 5:
  - o By 20 days after the Settlement Date, BI Science will take down BI Science's webpages offering the Proxy Services.
  - o By 20 days after the Settlement Date, BI Science will withdraw BI Science's Geosurf application from web stores including the Chrome store.
  - o By 20 days after the Settlement Date, BI Science will notify BI Science's active customers of the shutdown of BI Science's Proxy Services business ("Notice"). To this end, as discussed below, Luminati will put a referral system and landing page in place by 18 days after the Settlement Date to allow BI Science to transfer its customers.
  - o By 30 days after the Settlement Date, BI Science will shut down its Proxy Services.

- With regard to term 7:
  - o By 30 days after the Settlement Date, BI Science will disable the features that cause UrbanVPN to practice Luminati's patents and disclose to Luminati those alterations made to disable the infringing features.

- With regard to term 8 regarding "BI Science customers of Proxy Services transferred by BI Science and accepted by Luminati to Luminati's Proxy Services as part of this agreement":

  - o By 16 days after the Settlement Date, to the extent that BI Science seeks compensation for transferred customers, BI Science will provide Luminati with a list of BI Science's active customers for Proxy Services including the current rates paid by each customer. Luminati will indicate for each BI Science customer that the customer is (a) "Approved," meaning those customers that are not active Luminati customers and meet Luminati's compliance requirements; (b) "Not Approved," meaning those BI Science customer who are already an active Luminati customer or are not in compliance (including those previously vetted and rejected by Luminati); or (c) "Determination Pending." For every "Not Approved" customer, Luminati will provide the basis for denying approval.
  - o By 18 days after the Settlement Date, Luminati will set up a referral account with the agreed payment terms to allow BI Science to direct BI Science's customers to a landing page on Luminati's website that Luminati will also set up by 18 days after the Settlement Date. The referral account will include a unique affiliate link to allow BI Science and Luminati to track in real time the status of the customers referred to Luminati by Bi Science. Bi Science will have access to its Luminati

Eric Findlay
March 9, 2020
FRE 408 & Confidential
Page 3

referral dashboard which shows the monthly revenue generated by the approved BI Science transferred customers.

- o Within one week of receiving a notification of an "Approved" customer, BI Science will send an email referring the customers to Luminati with a unique referral link for easy tracking to allow the BI Science customer to transfer to Luminati.
- o Within one week of receiving a notification of a "Determination Pending" customer, BI Science will send an email referring the customers to Luminati with a unique referral link for easy tracking to allow Luminati to complete the compliance determination.

- With regard to term 9:
  - o By 16 days after the Settlement Date, Luminati will propose an escrow vendor;
  - o By 30 days after the Settlement Date, Luminati will transfer the agreed sum into an escrow account.
  - o The monthly payments to BI Science will be paid from the escrow account to BI Science at the below account:

    [BI Science Account Information to be provided by BI Science]

  - o Following any last payment to BI Science from the escrow account upon the earlier of either 28 months after the Settlement Date or the termination of the last of the BI Science customers transferred under Settlement Agreement, any funds remaining in the escrow account shall be paid to Luminati.

- With regard to term 11:
  - o By 20 days after the Settlement Date, BI Science will identify those patent applications, continuations, and continuations in part related to the '244 Patent.
  - o Luminati will take the lead in drafting the assignment.
  - o By 30 days after the Settlement Date, BI Science will execute all necessary documents to cause the patent applications, continuations, and continuations in part related to the '244 Patent to be assigned to Luminati.

- With regard to term 13:
  - o BI Science will open a Luminati account and send Luminati the email address used to create the account to allow Luminati to set the up the agreed upon terms for the account.

- With regard to term 15:
  - o By 20 days after the Settlement Date, Luminati will circulate the draft press release.
  - o By March 24, 2020, the Parties will agree to a final version of the press release.

Eric Findlay
March 9, 2020
FRE 408 & Confidential
Page 4

Please confirm that the above implementation mechanics schedule is agreeable to both Parties.

Sincerely,

Bob Harkins

**LUMINATI NETWORKS LTD.**                    **BI SCIENCE (2009) LTD.**

By:_____                           By:_____

Name:_____                           Name:_____

Dated:_____                           Dated:_____

cc: Sunny Cherian & William Cornelius

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 2:18-cv-483-JRG |
| | § | |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| BISCIENCE INC. | § | FILED UNDER SEAL |
| | § | |
| Defendant. | § | |

**<u>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE
SETTLEMENT AGREEMENT</u>**

Defendant BIScience (2009) Ltd. (which Plaintiff alleges is also known as BIScience Inc.) (hereinafter referred to as "BIScience") hereby files this response in opposition to Plaintiff Luminati Networks Ltd.'s ("Luminati") Motion to Enforce Settlement Agreement.

## I.    THE COVID-19 PANDEMIC'S EFFECT ON SETTLEMENT

This is a truly unprecedented time in the history of our country and worldwide.  In a few short weeks the COVID-19 pandemic has thrown much of the globe into chaos.  Recession on a global scale is looming.  According to the International Monetary Fund the pandemic is causing a global recession that may be worse than the financial crisis of 2008-2009.[1]  The financial consequences from COVID-19 have devastated businesses in a variety of sectors all over the world.  The impact of COVID-19 has caused major disruptions in the capital markets, severely curtailing corporate fundraising.[2]  Private equity and venture capital deals have been put on hold as the uncertainty of COVID-19 looms.

This unparalleled crisis has hit BIScience particularly hard. As this Court is aware, BIScience is a small start-up company.  BIScience is not currently profitable and has not been since it was founded.  *See* Ex. A, Declaration of Kfir Moyal.  The auditors from KOST FORER GABBAY & KASIERER, A Member of Ernst & Young Global, in the 2017 and 2018 Audited Financial Statements, stated that "[BIScience] depends on additional funds in order to keep its operations under an ordinary course of business." Ex. B.  Repeatedly, the auditors have stated that BIScience "has incurred recurring operating losses" and that "[t]hese conditions raise substantial

---

[1] https://www.aljazeera.com/ajimpact/imf-covid-19-global-recession-2020-200323231228113.html

[2] There has been substantial coverage of the impact of COVID-19 in the news media.  A few examples of such include: https://techcrunch.com/2020/03/07/vcs-warn-coronavirus-will-impact-fundraising-for-the-next-2-quarters/, https://www.cnbc.com/2020/03/19/silicon-valley-deals-on-pause-until-coronavirus-uncertainty-clears.html.

doubt about [BIScience's] ability to continue as a going concern." *Id*. Most recently in the 2019 Financial Statement, attached to and part of Ex. B, the auditors stated "[t]he Company has incurred losses in the amount of $2,787 thousands during the nine months ended September 30, 2019, and the Company's accumulated deficit is $23,691 thousands as of September 30, 2019. These factors, described in Note 1b, raise substantial doubt about the Company's ability to continue as a "going concern"." *Id*.

This was the state of BIScience *before* the COVID-19 pandemic. On February 22 and 23, 2020 when BIScience agreed to the framework proposed by the meditator as a way to hopefully resolve this case, BIScience intended to replace the revenue stream generated by the sale of proxy services by going to private investors to raise substitute funds. Ex. A. In fact, BIScience had commitments for and influx of capital to bridge this time period, but since COVID-19 exploded on the scene, all of the investors have backed out, and replacements cannot be found. *Id*. As part of the settlement framework, BIScience agreed to exit not only the accused residential proxy service business, but also the non-accused server-based proxy service. Giving up both of these revenue streams amounts to a very large decrease in BIScience's annual revenue. *Id*. As a result of the COVID-19 pandemic the capital has completely dried up, and the investors are not lending or investing. *Id*. At this time, and for the foreseeable future, it will be impossible for BIScience to replace any of the proxy services revenue due to the current state of the financial markets. Given that, if BIScience were to exit the proxy service business now, BIScience could no longer continue as an ongoing entity and would go out of business. *Id*.

Accordingly, BIScience cannot perform as contemplated under the mediated settlement at the current time, and BIScience contends it should be excused from performance in light of the impossibility and impracticability of the current situation. To do so, would put BIScience out of

business.  In the alternative, BIScience contends that, at the least, its performance should be delayed until January 2021.  Having until January 2021 to implement the mediated settlement terms would allow BIScience much needed time to recover to a more stable financial situation, in which BIScience can remain a viable company.   Importantly, ***there is no time indicated or agreed upon for performance in the mediated settlement***.  *See* Ex. C.

## II.    THE DOCTRINES OF FORCE MAJEURE AND IMPOSSIBILITY

The longstanding common law doctrines of *force majeure* and impracticability of performance of contracts support this requested relief.  Black's Law Dictionary defines force majeure as "an event or effect that can be neither anticipated nor controlled; esp., an unexpected event that prevents someone from doing or completing something that he or she had agreed or officially planned to do. The term includes both acts of nature (e.g., floods and hurricanes) and acts of people (e.g., riots, strikes, and wars)."  Black's Law Dictionary (11th ed. 2019).  *Force majeure* is commonly referred to as an "act of God", or a "superior force."  *Force majeure* is a term that describes a particular type of event which may excuse performance under a contract.  *See Perlman v. Pioneer Ltd. Partnership,* 918 F.2d 1244, 1248 n. 5 (5th Cir.1990).

While seldomly asserted, *force majeure* squarely applies to the case at hand.  Unanticipated circumstances have dramatically changed in the short time between the mediator's proposal and the current day.  This is a situation beyond anyone's control.  In ways no one could have foreseen just a few weeks ago the world has been turned upside down.  Virtually entire countries have been "shut down."  Tens of millions are under "shelter in place" mandates.  Cities and entire geographical regions are under quarantine.[3]  These unforeseen, extraordinary events, beyond the

---

[3] Although the mediator's proposal does not include a *force majeure* provision, it was also not intended to be the final settlement agreement between the parties.

control of either party, prevent BIScience from being able to perform as contemplated under the mediator's proposal.

Similarly, and equally persuasive are the doctrines of impossibility and/or impractability:

> The doctrine of impossibility is sometimes referred to as "impracticability." *Tractebel Energy Marketing, Inc. v. E.I. Du Pont De Nemours & Co.,* 118 S.W.3d 60, 64–65 & n. 6 (Tex.App.2003). Impossibility is defined as "that which, in the constitution and course of nature or the law, no person can do or perform." Black's Law Dictionary 755 (6th ed.1990). "Impossibility of performance of contract" is defined as a "doctrine under which a party to a contract is relieved of his or her duty to perform when performance has become impossible or totally impracticable (through no fault of the party)." *Id.* **The definition goes on to note that an action may be legally impossible if it is impracticable, meaning "when it can only be done at an excessive and unreasonable cost."** *Id.; see also* Restatement (Second) of Contracts §261, cmt. d (1981) ("'impracticability' means more than 'impracticality'").

*Petroworks S.A. v. Rollings,* 2009 WL 728581, *6 (S.D. Tex. 2009) (citing *Tractabel Energy Marketing Inc. v. E.I. Du Pont De Nemours & Co.,* 118 S.W.3d 60, 64 (Tex.App.-Houston [14th Dist.], 2003 and Restatement (Second) of Contracts § 261, cmt. d (1981))) (emphasis added).

The case at hand certainly reflects an impossible or impracticable situation, because the performance under the mediated settlement would financially destroy a business. That certainly defeats the intent and purpose behind the settlement as a whole. BIScience would be forced to forfeit a significant revenue stream and have no means to replace it. This is supported by the declaration of Mr. Kfir Moyal, as well as the attached financial statements.

If the Court does not find that the doctrines of *force majeure* and impossibility excuse performance under the mediator's proposal, then alternatively, the Court should order that performance, specifically exiting the proxy service business, should be delayed until at least January 2021. As mentioned previously, there is no time for performance mentioned in the mediated settlement. In fact, the parties intended that they enter into a formal settlement agreement to include all of the necessary details for such a settlement. Missing details, terms to implement

4

the agreement, timeline, clarifications, and other necessary information to complete the settlement was needed in a formal settlement agreement. As is customary in most patent case settlements, typically there is a short term sheet or understanding of the basic terms between the parties memorialized in some sort of writing, followed by a formal settlement agreement which sets out details, timelines, definitions, and clarification of any areas needed.

Admittedly, even Luminati understood that there were a variety of issues and clarifications needed to move the settlement to fruition. As evidenced in Plaintiff counsel's letter of March 9, attached as Ex. D, counsel for Luminati identifies *in three pages* a descriptive list of tasks, dates, means of implementation, and other instructions regarding the terms in the mediated settlement proposal. Clearly, the mediated settlement proposal was not the all-encompassing settlement agreement between the parties, nor was it intended to be.

## III.    CONCLUSION AND RELIEF REQUESTED

The COVID-19 pandemic has disrupted life and business in ways unimaginable just a few weeks or months ago. These facts are uncontested before the Court: 1) BIScience only survives as an ongoing entity by the continued raising of additional funds from investors Ex. A, ¶¶ 1, 3. 2) Those investors have backed out, and are not offering additional funds; 3) If BIScience is forced to exit the proxy services market under the current conditions, it will fail as an ongoing entity. For these reasons, and the others set forth herein, BIScience respectfully requests that this Honorable Court deny Plaintiff Luminati Networks Ltd.'s Motion to Enforce Settlement Agreement, Dkt. No. 170, and, at least, through the remainder of 2020 excuse BIScience from performance under the mediator's proposal.

Dated:  March 25, 2020                                    Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay (TX Bar No. 00789886)
Brian Craft (TX Bar No. 04972020)
Debby Gunter (TX Bar No. 24012752)
FINDLAY CRAFT, P.C.
102 North College Avenue, Suite 900
Tyler, Texas 75702
Tel: (903) 534-1100
Fax: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com
Email: dgunter@findlaycraft.com

Ronald Abramson
M. Michael Lewis
Liston Abramson LLP
405 Lexington Ave.
46th Floor
New York,, NY 10174
212-257-1630
Fax: 917-633-5568
ron.abramson@listonabramson.com
michael.lewis@listonabramson.com

***ATTORNEYS FOR DEFENDANT
BISCIENCE***

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that this document is being filed under seal pursuant to the Protective Order

entered in this matter.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF SERVICE

6

**Appx1553**

I hereby certify that on March 25, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  This document will be served on Defendant in accordance with the Federal Rules of Civil Procedure.

*/s/  Eric H. Findlay*
Eric H. Findlay

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                FOR THE EASTERN DISTRICT OF TEXAS

 3                        MARSHALL DIVISION

 4  LUMINATI NETWORKS LTD.        )(

 5                                )(    CIVIL ACTION NO.

 6                                )(    2:18-CV-483-JRG

 7  VS.                           )(    MARSHALL, TEXAS

 8                                )(

 9  BI SCIENCE INC., ET AL.       )(    APRIL 13, 2020

10                                )(    3:07 P.M.

11             SEALED PORTION OF MOTION HEARING

12                HELD BY VIDEOCONFERENCE

13      BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

14           UNITED STATES CHIEF DISTRICT JUDGE

15

16  FOR THE PLAINTIFF:       Mr. Robert M. Harkins, Jr.
                             Mr. Korula T. Cherian
17                           RUYAKCHERIAN LLP
                             1936 University Avenue
18                           Suite 350
                             Berkeley, California 94704
19

20  COURT REPORTER:          Ms. Shelly Holmes, CSR, TCRR
                             Official Reporter
21                           United States District Court
                             Eastern District of Texas
22                           Marshall Division
                             100 E. Houston Street
23                           Marshall, Texas  75670
                             (903) 923-7464
24

25  (Proceedings recorded by mechanical stenography, transcript
    produced on a CAT system.)
```

```
 1  FOR THE PLAINTIFF (CONTINUED):

 2                          Mr. Amadou Kilkenny Diaw
                            Mr. Ronald Wielkopolski
 3                          RUYAKCHERIAN LLP
                            1700 K Street Northwest
 4                          Suite 810
                            Washington, DC 20006
 5
                            Mr. Sidney Calvin Capshaw, III
 6                          CAPSHAW DERIEUX LLP
                            114 East Commerce Avenue
 7                          Gladewater, Texas 75647

 8                          Mr. James Mark Mann
                            MANN TINDEL & THOMPSON
 9                          300 West Main
                            Henderson, Texas 75652
10

11
    FOR THE DEFENDANTS:     Mr. Eric Hugh Findlay
12                          Ms. Debra Elaine Gunter
                            FINDLAY CRAFT PC
13                          102 North College Avenue
                            Suite 900
14                          Tyler, Texas 75702

15

16

17

18

19

20

21

22

23

24

25
```

1 Slide 2, which is the first one with substantive text on

2 it, there was a completed settlement in this case.  The

3 settlement was completed on February 23rd, which was a

4 Sunday.  It was the day before we were all scheduled to be

5 before Your Honor on a hearing including motion to compel

6 depositions.  And at that time, we -- the parties were able

7 to reach a -- a complete agreement.  It was over -- it was

8 17 different points.

9       The -- if you read the opposition filed by BI

10 Science, it does not dispute that there was, in fact, a

11 complete agreement reached on substantive points between

12 the parties.

13       The next day, the 24th, Mr. Cornelius, as the

14 mediator, signed a two-page paper that expressly set forth

15 the 24 points that had been agreed upon by the parties over

16 the course of several emails and communications the day

17 before and made sure that they were all in one concise

18 piece of paper signed by Mr. Cornelius.  It is a writing

19 that contains all substantive terms of the settlement.

20       Notably, the 17th point, the last point, is that

21 any disputes regarding the arbitration -- the agreement

22 itself will be arbitrated by Mr. Cornelius.  There's a

23 binding arbitration provision in the agreement.

24       So basically what we need from Your Honor --

25 excuse me, what Luminati is respectfully requesting from

1  Your Honor is a confirmation that there is, in fact, a

2  settlement and hopefully that it is what we've submitted as

3  Exhibit A.

4        After Your Honor confirms that there is a

5  settlement to enforce and that any arbitration would,

6  therefore, be binding, we will be in a position to take up

7  any smaller disputes with Mr. Cornelius as necessary.

8        THE COURT:  So let me -- let me ask this,

9  Mr. Harkins.  You're not -- you're not asking the Court to

10 enforce the settlement agreement.  You're asking the Court

11 to determine and declare that there is a binding settlement

12 agreement, and thereafter, you intend to pursue the binding

13 arbitration provisions therein as far as actual enforcement

14 goes; is that correct?

15       MR. HARKINS:  Your Honor, I -- I think that

16 there's potentially two ways of looking at it, but

17 essentially I think you are correct.  We're looking for a

18 declaration as to the fact that Exhibit A is the settlement

19 agreement and that constitutes a complete and binding

20 settlement agreement between the parties, and that there is

21 an arbitration provision in that that should be enforced.

22       Any other disputes about the agreement can then

23 proceed to that arbitration which based on the Court's

24 declaration and enforcement of the at least arbitration

25 provision of the agreement will allow us to work out any

1  further problems that the parties have with each other.

2         THE COURT:  Mr. Harkins, on February --

3         MR. HARKINS:  Yes.

4         THE COURT:  -- the 23rd of this year, a document

5  was filed in this case bearing Document No. 166, entitled

6  Joint Motion to Stay All Deadlines and Notice of

7  Settlement.  It bears your electronic signature, as well as

8  that of your co-counsel, Mr. Cherian.  And it also bears

9  the electronic signature of Mr. Findlay and Ms. Gunter,

10 along with their partner, Mr. Craft, on behalf of the

11 Defendant, BI Science.  And Document 166 states in part,

12 quote, the parties hereby notify the Court that all matters

13 in controversy between the parties have been settled in

14 principle.

15        Were you authorized on behalf of the Plaintiff to

16 execute that agreement, and did you knowingly represent to

17 the Court by that agreement that all matters in dispute had

18 been resolved and an agreement had been reached?

19        MR. HARKINS:  Yes, Your Honor.

20        THE COURT:  Mr. Findlay -- let me ask Mr. Findlay

21 at this juncture.

22        With regard to the same document, Mr. Findlay,

23 which bears your electronic signature, did you knowingly

24 cause or participate in the filing of that representation

25 to the Court that all matters in controversy had been

1  resolved?

2      MR. FINDLAY:  I did, Your Honor.  I gave

3  co-counsel -- opposing counsel approval to file that

4  document as a joint motion.

5      THE COURT:  Are -- are you disputing that a

6  settlement did, in fact, occur, Mr. Findlay, or are you

7  simply saying there was a settlement, but there's now some

8  uncertainty as to certain particular terms within the

9  settlement?  To me, there's a difference.  Was there an

10  agreement?  Is there a settlement?  Or is there not a

11  settlement?  That's the first question.  If the answer is

12  yes, then any matters that were silent in the settlement

13  can be taken up and addressed and any missing particular

14  terms can be supplied under rules of construction, but

15  that's not appropriate if there's not an agreement to begin

16  with.

17      So let me ask you straight out.  Is it your

18  position that there is an agreement, or is there -- is it

19  your position there is not an agreement between the parties

20  to settle this lawsuit?

21      MR. FINDLAY:  Understood, Your Honor.  It is our

22  position that the mediator proposal -- we referred to it as

23  a framework in our response to the motion to enforce, Your

24  Honor, by itself is not a fully binding settlement

25  agreement.  As we go through the course of this this

1   afternoon, we will point out and make the argument, Your

2   Honor, that we don't think it contained all the material

3   elements and requirements needed to form a completely

4   binding settlement agreement.

5         THE COURT:  Let me -- let me ask this --

6         MR. FINDLAY:  Alternative --

7         THE COURT:  Well, let me ask the question again,

8   Mr. Findlay.

9         In -- is it your position that there is a

10  settlement of this lawsuit, or is it your position that

11  this lawsuit has not been settled and resolved?

12        We can talk about what's in or not in any

13  documentation later.  But are you telling the Court that

14  the threshold of reaching a resolution through the

15  mediation, as represented by this joint motion and as by --

16  represented by communications from the mediator to the

17  Court, that the case had been and the disputes had been

18  settled?  Did that happen?  And now we can argue about what

19  those particulars are.

20        Or are you telling me the threshold was never

21  crossed, and there was never a meeting of the minds and a

22  complete settlement, notwithstanding the representations

23  made in your joint motion.

24        I want to know, did you cross that threshold or

25  not, and then we can talk about where we are after you

1  answer that question.

2       MR. FINDLAY:  Understood, Your Honor.  I apologize

3  if I was not clear.

4       It is -- I believe it is the latter.  We agreed

5  and came to an agreement on a framework to settle the case.

6  That is why I gave permission for Mr. Harkins to file that

7  as a joint motion, which evidences the Court's language

8  from its standing order, indicate that a settlement has

9  been reached in principle.

10      It was my full intention that we would come to a

11  complete and total agreement.  That has not happened.

12      THE COURT:  So your answer to my question is, no,

13  there's not been a settlement from your perspective in this

14  case?

15      MR. FINDLAY:  Correct, Your Honor.

16      THE COURT:  All right.

17      MR. FINDLAY:  And I'm not -- I'm not trying to --

18  I'm sorry.

19      THE COURT:  I'll let you finish your sentence.  I

20  don't want to you lapse into argument on the merits because

21  I interrupted Mr. Harkins, and I want to get back to his

22  argument.

23      But if you -- if you haven't completed your

24  thought, I'll allow you to do that.

25      MR. FINDLAY:  No, I'll -- I'll defer to

1  Mr. Harkins.  I think that's appropriate, Your Honor.

2        THE COURT:  All right.  Mr. Harkins, I apologize

3  for the interruption, but I wanted to get that threshold

4  question out and on the table to begin with.

5        So let me ask you to pick up with your argument

6  from where we left off.

7        MR. HARKINS:  Yeah.  Thank you, Your Honor.

8        And, actually, I appreciate it because it's a

9  question that we've been trying to figure out ourselves,

10  what BI Science's position is on this.

11        You know, notably in the opposition, there was no

12  statement that there was no settlement agreement.  There --

13  in fact, we'll be going into this in a minute, but, Your

14  Honor, they've asked for -- they've asked for certain

15  performance to be excused under the agreement.  How can you

16  be excused from performance under an agreement you don't

17  even think exists?  I don't think this is a consistent

18  position we're hearing today.

19        If you look at the Slide No. 4, you will see that

20  we've -- that there is, in fact, a two-page final written

21  settlement that the mediator confirmed.  This is not a --

22  just a point or two.  This is not a statement that a

23  settlement has been reached in principle.  This is a

24  17-point agreement with a confirmation that both sides have

25  signed off on these 17 points.  That is the -- the

1  dispute that would require interpretation that could not be

2  done in an arbitration.

3          And so we think that in that -- if you look at the

4  opposition that BI Science filed, there is no such request.

5  There's not a here's the term that's -- that's causing us

6  to find that there isn't an agreement.  Really the only

7  term we believe in the agreement that would be appropriate

8  for BI Science to be raising with the Court is if there was

9  a term about the settlement -- whether there's a settlement

10  or not, and that needed interpretation.

11          Once the parties agreed there is a settlement,

12  then there's an arbitration provision, and that can be

13  enforced.

14          So -- and if we turn to Slide 8.

15          There is a complete written agreement.  There --

16  the terms there are -- should not be in dispute.  They were

17  agreed upon on that day.

18          Now, it is true that subsequent to this time, BI

19  Science has tried to change many substantive terms in this

20  agreement.  But that is -- that is after the fact.  It is

21  after the parties already reached their agreement.  So it

22  is too late to do that.

23          We don't think there's a basis for further

24  mediating this if there is an actual written agreement

25  because there's not -- the parties aren't going to go back

1  into mediation and start changing the terms when there

2  is -- if there's an agreement -- if there's a ruling that

3  there is an agreement, there's nothing left to negotiate.

4          THE COURT:  Let me ask you this --

5          MR. HARKINS:  And, frankly, if there's no

6  agreement, it seems very unlikely that the parties would

7  have a successful mediation because, honestly, Luminati

8  could not trust that BI Science was actually agree to

9  anything at that point, given the experience that they've

10 had.

11         THE COURT:  Let me ask you this, Mr. Harkins.

12         MR. HARKINS:  Yes.

13         THE COURT:  Assume for purposes of discussion that

14 you persuade the Court that there is a mutually enforceable

15 settlement agreement between the parties.  In light of the

16 arbitration provision that you've highlighted,

17 procedurally, what do you suggest the Court's proper

18 procedure and procedural stance would be?  Close this case,

19 and then allow the arbitration process to proceed?  I don't

20 have an order of dismissal as I directed the parties to

21 tender to the Court when I stayed the case based on the

22 joint motion.

23         I certainly am not attracted to the prospect of

24 just leaving this case open on my docket for as long as it

25 might take for you and the other side to go through

1    arbitration with Mr. Cornelius and then argue about the

2    enforceability of any arbiter's award.

3         So if I were persuaded that there were an

4    agreement that was enforceable and that the arbitration

5    provision attaches, what -- what does the Court do in the

6    meantime, just sit back and pat my foot for a year or two

7    to wait for you all to work through this?  Tell me -- tell

8    me what your -- your response to that question would be.

9         MR. HARKINS:  Thank you, Your Honor.

10        The -- what Luminati would recommend is, we do

11   have a -- we have this Exhibit A.  We believe it's the

12   settlement agreement.  We -- the arbitrator needs to know

13   what it is that is the agreement that is being enforced or

14   arbitrated.  And so our -- our request is that there's a

15   declaration, that there was a final and complete

16   settlement, that it is Exhibit A that was attached to the

17   motion, that the arbitration provision is effective, and

18   that -- and that -- and that as a result of that, the Court

19   can dismiss this case and the other pending lawsuit between

20   the parties, and they should proceed to other disputes in

21   the arbitration.

22        THE COURT:  All right.  What other substantive

23   arguments do you have for me?

24        MR. HARKINS:  Well, so I -- I would -- what I --

25   the other -- I just want -- because the opposition -- it

1  was a surprise to us, frankly.  The opposition never says

2  there's not an agreement.  But the opposition tries to ask

3  for permission to excuse performance under certain terms of

4  the agreement under force majeure and under impossibility.

5          And we do have some slides about that.  There --

6  there -- just -- what I do want to note about this, in

7  particular, is that -- that this -- the behavior of

8  BI Science after this date when we had started the process

9  of trying to finalize the terms so we can dismiss the case

10  was that they were trying to substantively rewrite many of

11  the terms.  And so we're not even willing to do that.

12          But if -- if -- but this idea that force majeure

13  is a consideration for the Court is one that, again, once

14  there's a decision that there is an agreement, there is no

15  force majeure -- if this is going to be raised again today,

16  it might be better for me to wait and see if Mr. Findlay

17  actually raises these issues.

18          But force majeure is not a common law principle.

19  It has to be an express provision of the contract.

20          BI Science cites one case about this in their

21  brief, which is Perlman versus Pioneer, where there was

22  actually a -- an express provision of force majeure.  And

23  the Fifth Circuit affirmed that it didn't even apply in

24  that case, and it was the only case cited.

25          They've given you no examples of when a Court

1    And we did want to confirm to Your Honor that

2    actually on Slide 15, it's very important to understand,

3    BI Science doesn't owe any money in this case at all.  All

4    they have to do is transfer customers over to Luminati.  It

5    is Luminati that pays BI Science.

6    So there isn't an argument that can really be

7    rendered that BI Science's bankruptcy prevents them from

8    paying money that's due under the agreement because the

9    money flows the other direction.

10    And so it might be more expensive than they

11    thought to them to -- to carry out this agreement, but

12    that's not -- that's the kind of expense or financial

13    hardship that is not even contemplated by force majeure or

14    impossibility.

15    And so with that, I think I've said enough on

16    the -- on the matters that were briefed.  I would like to

17    reserve the right to respond to -- I don't know what

18    Mr. Findlay is going to say.  He hasn't submitted slides,

19    and -- and I don't know what -- what these arguments --

20    these other arguments are going to be.

21    THE COURT:  All right, Mr. Harkins.

22    Mr. Findlay, let me hear argument on behalf of the

23    Defendants.  I'll note that the Defendants' briefing never

24    squarely says there is not an agreement between the parties

25    here.  There is merely one footnote that says that the

1  documentation being presented was not intended to be the

2  complete and fully expressed agreement.

3       But your briefing never says there's not a

4  settlement agreement here, but I'll take you at your

5  earlier representation that it's your position that there

6  is not a settlement agreement.  Unless you care to change

7  that, let me hear your argument on behalf of the

8  Defendants.

9       MR. FINDLAY:  Your Honor, thank you very much.

10      And I was not trying to equivocate and not give

11  you a direct answer.

12      I think on Page 2 of our response, what we

13  indicated -- I'm just -- partial sentence -- is that over

14  the February 22nd and 23rd weekend mediation with

15  Mr. Cornelius and counsel, we agreed to a framework

16  proposed by the mediator as a way to hopefully get this

17  case resolved.  And that is absent, Your Honor.

18      Our position today, however, is just the

19  mediator's proposal, just those points, which is Exhibit C

20  in our response -- it's Exhibit A in Mr. Harkins's

21  motion -- standing alone is not a binding settlement

22  agreement.

23      The reason I say that is if you look at the cases

24  that Luminati has cited, there are five of them, I think

25  they're all very distinguishable from the facts that we

1 have here.  And the fact of the matter is there are many

2 more material terms that would have had to have been in

3 that mediator's proposal for it to be a completely

4 stand-alone binding contract.

5         And if I could, let me explain a little bit more

6 what I mean by that, Your Honor.

7         Mr. Harkins is correct that this is not a

8 situation where BI Science is paying X amount of dollars,

9 and in exchange for that, they're getting their release.

10 All the cases that Plaintiff cited was a much more typical

11 settlement agreement, Your Honor.  Some were personal

12 injury.  There was breach of contract.  There was an

13 employment discrimination case.  I think there was a

14 property damage.  And pretty much in all of those the

15 simple matter of fact is how much is the Defendant going to

16 pay to the Plaintiff to have the case resolved and to get

17 their release.

18         What the mediator's proposal contemplates, as Your

19 Honor can -- can see, is a much more -- what I would call a

20 multifaceted, complicated agreement where all the terms

21 needed to create a binding contract to show a complete

22 meeting of the minds, we respectfully do not think were

23 contained within there.

24         The case that Luminati relies the most on and does

25 sound very familiar in the patent realm is the Neurovision

 1         THE COURT:  Why did you -- why did you authorize

 2    the filing of the joint notice of settlement and request

 3    for a stay on behalf of your clients if you knew that

 4    the -- there were essential terms of an agreement that had

 5    not been resolved?  Why -- why post the mediation where

 6    Mr. Cornelius's mediator's proposal was accepted on the day

 7    before you were set for a hearing before me, and I pulled

 8    that hearing down because it was represented to me that all

 9    matters in controversy had been settled, and

10    subsequent that -- subsequent to that, this joint notice

11    was filed, which you freely admit you authorized to be

12    filed on behalf of your client, why would you authorize

13    that if you did not have key essential terms reduced to

14    writing or some kind of enforceable status?  Why would you

15    authorize a representation to the Court that all matters in

16    controversy had been settled when, in fact, if as you

17    argue, they hadn't?

18         I mean, you can't really have it both ways.  You

19    can't tell me the case is settled, and then tell me, well,

20    the case is not settled because these other terms that we

21    had not reduced to writing when I signed off on the joint

22    notice of settlement have yet to be worked out.

23         MR. FINDLAY:  Very -- very frankly, Your Honor, I

24    realize that language that -- that Mr. Harkins asserted in

25    there is from your Court -- the Court's standard language,

1  but it says --

2        THE COURT:  You --

3        MR. FINDLAY:  I'm sorry?

4        THE COURT:  You knew what the motion would say.

5  You've -- you've signed off on that kind of standing order

6  probably hundreds of times in your practice before this

7  Court.  So the language was -- you knew the language.  I'm

8  convinced of that.

9        But I don't know how you knowingly represent to

10 the Court the case is resolved, which this -- you know,

11 whatever the language is in the notice -- in the notice,

12 that's the intent, to tell the Court the case is resolved.

13 That's why I pulled down the hearing that was set for the

14 next day because and only because I was told, in effect,

15 the case is settled.

16        So how do you do that then and then come back now

17 and say, well, it really wasn't settled because A, B, C,

18 and D that are essential and necessary weren't included,

19 they don't have a binding signature from us, therefore,

20 they can't hold us to anything?

21        I mean, how are those positions consistent,

22 Mr. Findlay?

23        MR. FINDLAY:  Your Honor, I believe, as the motion

24 represents, that we had an agreement to settle the case in

25 principle based on the mediator's proposal in that

1    framework, if you will.  And that we would spend the next

2    30 days during the stay finalizing everything that needed

3    to be finalized.  That's -- that's the best answer I think

4    I can give the Court as to the thought process, Your Honor.

5             It -- for -- and we can --

6             THE COURT:  In --

7             MR. FINDLAY:  -- it just so happens --

8             THE COURT:  In many of these circumstances, again,

9    I suspect you're well familiar with this, where this kind

10   of paper trail exists, provisions such as the one

11   designating Mr. Cornelius to arbitrate any disputes are

12   commonly inserted in memorandums of understanding or

13   documents that evidence and memorialize the acceptance of a

14   mediator's proposal at the end of a mediation session.

15   It's -- it's not uncommon, and matter of fact, it is very

16   common that every small term, every additional provision,

17   every sentence that needs to be included is actually

18   written down and signed off on at the end of the mediation.

19            So the big points, the controlling points, the

20   money, the performance, the who's going to do what and when

21   are spelled out, and then it's very common to have a

22   provision like this that the mediator will act as an

23   arbiter to resolve anything that's -- comes up afterward

24   that's apparently disputed to get that final document and

25   the dismissal motion and order to the Court so the Court

1  unprecedented, evidenced a little bit by what we're doing

2  here today.  The last records I saw -- the last report I

3  saw was almost a third of the world's entire population is

4  under some sort of lockdown.

5          And as Mr. Moyal indicates, if they had to

6  jettison in the proxy business right now, they would not be

7  able to get revenue to make that up and firmly believes he

8  would go out of business.

9          And this is an important point, because

10  Mr. Harkins made it sound like, Judge, there's no concern

11  here because BI Science isn't writing a check.  But that's

12  not accurate.  And I think we spelled that out in the

13  opposition, and I think it's in Mr. Moyal's declaration.

14          Here the situation is we're giving up a big chunk

15  of our business to Luminati, and we'll get some of that

16  back in the revenue sharing provisions that are within the

17  framework.  We get 37 percent back, I think that is.  But

18  in order to make up that other difference, we would have to

19  typically go out to the capital markets to raise that

20  amount so we don't have that huge of a hit of revenue loss.

21          That is simply unable to happen right now.  That's

22  why in our response, we indicated that if -- if it's not

23  appropriate in Your Honor's eyes to excuse performance

24  under force majeure or impossibility, impracticability,

25  that a delay would be warranted to get past this period of

1   time.  We propose 2021 -- January 2021 at some point to get

2   the world and all of us past this area where business

3   returns somewhat more to normal.

4        THE COURT:  Well, Mr. -- Mr. Findlay, if your

5   client did not have the money in their account to fund this

6   transition of turning over certain business to Luminati and

7   then getting a running royalty, if you will, going forward

8   on that transferred business, they should have made that a

9   condition of this agreement.  They either should have had

10  the money in their pocket, or they should have made any

11  obligation to perform conditioned upon being able to get

12  third-party financing within so many days under certain

13  terms.

14       But just to assume we're going to get it, and then

15  the world changes later, and to be silent on it in the

16  agreement is in the least a bad case of drafting.  And in

17  the worst, it's not an excuse when the other side accepts

18  terms that don't have that in there at all, and then you

19  say, well, the world's changed.

20       I mean, how much does the world have to change to

21  let you off the hook?  Does the prime rate have to go up by

22  half a point?  Is that enough?  Or does the national --

23  international monetary system have to collapse?  I mean,

24  it's -- it's silent in this document as to that particular.

25       And so it seems to me the burden was on BI Science

1  to either make their obligations to transfer that business

2  contingent and conditioned on being able to get this kind

3  of third-party outside financing they assumed under the

4  pre-pandemic world they could have gotten, or to have had

5  the money at their disposal already.

6         But to be silent on it and then say circumstances

7  changed which are not a condition of this agreement, and,

8  therefore, we're off the hook, we shouldn't be held to

9  perform, that -- I'll be frank with you, that doesn't seem

10  like a winning argument to me.

11         MR. FINDLAY:  And, Your Honor, I -- I appreciate

12  the question, and I can't -- your question was -- was a

13  good one in terms of what would it take, what level?  And

14  I can't answer what that minimum level would be, Your

15  Honor.

16         But -- but, respectfully, I think what COVID-19

17  has presented, and I don't mean to -- I don't mean to

18  dramatize the situation.  We all know what's going on in

19  the world.  But it is -- I think it is fair to say, without

20  too much drama, it is unprecedented in modern times.

21         So whether -- you know, the prime rate adjustment

22  or something else, I would agree with you, Your Honor,

23  doesn't get us there.  And I don't know what the minimum

24  would be to get us there to that sort of impossibility or

25  impracticability threshold.  But certainly I think what is

1   presented by COVID-19 is -- is clearly enough to get us

2   there.

3          And that -- and, again, in response to the motion,

4   that part of our relief is -- is asked -- and, again, in

5   the alternative.  If Your Honor doesn't feel that an

6   excuse --

7          THE COURT:  Well, it's really --

8          MR. FINDLAY:  -- of performance --

9          THE COURT:  -- it's really not in the alternative

10  where you never come out in your briefing and say we don't

11  have a settlement.  I mean, you drop a single footnote that

12  says the documentation is not the full iteration with all

13  the particulars in it, but even that doesn't say there's no

14  agreement.

15         But yet you've told me twice today on the record

16  in this hearing there is not an agreement.  But you don't

17  say that in your briefing.  I mean, you dance around it,

18  you drop a single footnote that says the documentation

19  before the Court is not the full agreement, but that's a

20  long way from saying there is no agreement.  But that's the

21  position you've taken on the record today, and I'm

22  certainly going to respect the position you've taken.

23         My only point is if outside financing of some type

24  were a necessary part of this, you and I and Luminati would

25  all be better off if the documentation said this is

1  conditioned upon receiving X amount of financing within so

2  many days with terms not to be different than A, B, C.  But

3  that's not in there.  It's silent about that.

4         There's -- there's no reservation or condition or

5  excuse for performance tied to obtaining outside financing

6  of any kind.  And there's nothing that would have kept BI

7  Science from including that, but yet you now come back and

8  say, because the world has changed, and it has, and because

9  the markets have changed, and they have, that should excuse

10 us from performing under these -- these memorandum.

11        And I guess my point to you is it -- it would

12 excuse you if it was included in there as an express

13 condition, but it's not.  And I don't see that -- I don't

14 see that impossibility or force majeure, which is never

15 raised in here, are excuses or reasons why BI Science

16 should be excused from doing what the memorandum suggests

17 and what up until today everybody has told me was the

18 parties' settlement resolving this dispute.

19        What else do you have for me, Mr. Findlay?

20        MR. FINDLAY:  Nothing further, Your Honor.  I

21 think that's all I have.  I appreciate Your Honor's time.

22 Thank you.

23        THE COURT:  Mr. Harkins, do you have any brief

24 follow-up?  I can't hear you, Mr. Harkins.  Are you on

25 mute?  I see you smiling.

1           MR. HARKINS:  Thank you, Your Honor.

2           THE COURT:  All right.  Now I hear you.

3           MR. HARKINS:  Because I figured out how I can make

4    it work again.

5           So, Your Honor, just very briefly, I think that

6    there's a -- I think that there may be a misunderstanding

7    that I do want to make sure gets cleared up, and then two

8    points, and then I'll be done.

9           The misunderstanding is Mr. Moyal's declaration

10   never says that his company cannot afford the cost of

11   transitioning his clients to us.  That cost is minimal.

12   That is just a matter of telling us who they are and

13   sending emails to his clients.  We can take it from there.

14   That is not a cost.  That is far, far less of a cost than

15   continuing on in the lawsuit would have been.

16          What the -- Mr. Moyal's declaration states is that

17   they think that they need that ongoing income from their

18   customers.  It's got nothing to do with their ability to

19   transfer them.  There's no -- there's no cost related to

20   them transferring customers to us that renders this

21   financially difficult.  He just says we expected to

22   get more -- we need more income right now generally

23   speaking, not about our deal but just in general.

24          So I just want to make sure that's clear on the

25   record, that this is not about their in -- they don't lack

1 been involved, and they were on the phone with Mr. Harkins,

2 as I understand it, or Mr. Harkins's colleagues in the last

3 conversation with the PTAB where the PTAB granted this

4 additional extension.

5         THE COURT:  Is there -- are you aware of a

6 possibility that an additional extension could be obtained

7 if jointly requested?  What's your understanding of that?

8         MR. FINDLAY:  Your Honor, I would defer to

9 Mr. Harkins for that.

10         THE COURT:  Mr. Harkins?

11         MR. HARKINS:  In our experience -- in our

12 experience, the 30-day extension that we got is

13 unprecedented already.  That's the problem.  We didn't --

14 they've been willing to give a couple of weeks.  The idea

15 that they were willing to stay this 30 days is already

16 something that we've just never encountered before.  We

17 were actually surprised that we had that much time.

18         THE COURT:  Well, let me ask you this.  If the

19 clock continues to run and they don't hear anything from

20 either you or BI Science, what's going to happen at the end

21 of 30 days?

22         MR. HARKINS:  They will reopen the matter, and

23 they will require us to do work to submit a response to the

24 petition that's current -- petitions that are currently

25 pending in front of them, which we specifically negotiated

1  not to have to incur that expense or to publicly file

2  documents on the IPRs.  I mean, that was -- that was a

3  major, major consideration for -- for entering this

4  agreement, is that we wouldn't have to do that.

5          MR. FINDLAY:  But if -- if I might, Your Honor,

6  I --

7          THE COURT:  Go ahead.

8          MR. FINDLAY:  I don't dispute that -- I don't

9  dispute that may have been part of Mr. Harkins's

10  motivation, but there -- in the mediator proposal, there is

11  part of that -- in resolution of the case, we would dismiss

12  the IPRs.  There's no question that was part of the

13  agreement.

14          There was nothing in the agreement about an

15  upcoming deadline, and they didn't want to have file, and

16  they wanted to make sure everything was done by that

17  deadline.  I just want that to be clear.  That sort of

18  detailed specificity is not in the agreement, and we never

19  talked about that until all this kind of blew up.

20          THE COURT:  All right.  Mr. Cornelius, I know

21  you've been on the videoconference, and you've heard the

22  argument that's presented.

23          As the mediator and officer of the Court, was it

24  your understanding that both parties had accepted your

25  mediator's proposal and come to a resolution of this

1  dispute?

2        MR. CORNELIUS:  It was, Your Honor.

3        THE COURT:  All right.  And given the argument

4  about a provision in the resulting documentation that

5  designates you to resolve any unanswered or disputed

6  questions as a binding arbiter, are you willing and able to

7  serve in that capacity if you're called upon by this Court

8  to do that?

9        MR. CORNELIUS:  I am, Your Honor.

10       THE COURT:  Okay.  Well, here's -- here's what I'm

11  going to order, counsel.

12        I am persuaded that when the mediator contacted

13  the Court on February the 23rd by email and said, quote,

14  Judge, we have just settled this case after extensive

15  negotiations and a mediator's proposal, a motion to stay

16  will be forthcoming.  We ask the Court to cancel Monday's

17  hearing.  California counsel is scheduled to board a plane

18  in the next few hours and would like to avoid that.

19  Thanks, signed Bill Cornelius as mediator, I'm convinced

20  that when email was sent and when the following day on the

21  24th both sides knowingly caused to be filed a joint

22  notice with this Court that their disputes had been

23  resolved that there was a resolution and a settlement of

24  this case.

25        I am persuaded and I find that that resolution

1  includes at a minimum a binding provision that any

2  unresolved issues that might not have been otherwise fully

3  documented at the time the Court was advised that the

4  mediator's proposal had been accepted and a settlement had

5  been reached, that any unresolved issues would be resolved

6  by binding arbitration carried out by Mr. Cornelius as an

7  arbitrator and not a mediator.

8        I'm going to order that both parties immediately

9  work with Mr. Cornelius to arrange for a binding

10 arbitration of any unresolved issues related to this

11 settlement and present either the parties' agreement or

12 Mr. Cornelius's binding arbitration award in those regards

13 to the Court before the end of this month so that the Court

14 can enter a resulting final order enforcing the totality of

15 the settlement.

16       It's clear that the major points were agreed to

17 and a meeting of the minds was reached at the time the

18 Court was informed of the settlement.  Both sides were in a

19 hurry to get this settlement done to avoid having a hearing

20 before the Court where people were going to be flying from

21 California and across the country.  You came to me.  You

22 told me in your joint notice that the case had been

23 resolved and the settlement had been reached.  And then I

24 pulled down the hearing, and now we have this dispute.

25       I'm going to invoke the provision designating

1  Mr. Cornelius as an arbiter to act in a binding and

2  non-appealable fashion.  And either you all are going to

3  resolve every issue and dot every "I" and cross every "T"

4  by agreement, or Mr. Cornelius is going to dot those "I's"

5  and cross those "T's," and one way or the other, I'm going

6  to be fully informed as to every aspect of your settlement

7  before the end of this month so that I can enter an order

8  enforcing that agreement, or in the alternative, enforcing

9  the terms as spelled out and reached under the binding

10 arbitration provision.

11         And I will leave it to both sides to work with

12 Mr. Cornelius as to a time and a method, a ways and means

13 to conduct the arbitration, but we're going to get this

14 buttoned up in finality by the end of the month.

15         And if by the end of the month, Mr. Cornelius, the

16 parties haven't reached some agreement on an outstanding

17 term or condition that's been raised, you're to take a

18 position, enter a final ruling as an arbiter, and

19 communicate that to me.  And that will be the answer that

20 I'll apply.

21         Are there questions?

22         Mr. Harkins, do you have questions for the Court?

23         MR. HARKINS:  No questions.

24         THE COURT:  Mr. Findlay, do you have questions?

25         MR. FINDLAY:  No questions, Your Honor.  Thank

1  you.

2         THE COURT:  All right.  Mr. Cornelius, do you have

3  any questions of me at this juncture?

4         MR. CORNELIUS:  Just one point of clarification,

5  Judge.  Is it your expectation that by the end of this

6  month, you will either have an agreement that the parties

7  have mutually reached, or you will have an arbitration

8  decision from me?

9         THE COURT:  In all honesty, Mr. Cornelius, I'm

10 more likely expecting a combination of both.  These parties

11 are going to raise issues with you from A to Z.  And some

12 of those they will agree to, some of them they will be at

13 an impasse over, and you will make a decision as an arbiter

14 and tell me what the resolution of those points are.

15        But I expect there to be some collective answer to

16 every question that's raised, every point in contention,

17 either by agreement or by arbiter's award before the end of

18 the month so that I can take the totality and reduce it to

19 an enforceable judgment.  And then that can be communicated

20 to the PTAB before May the 1st.

21        MR. CORNELIUS:  Understood, Your Honor.  I just

22 wanted to be certain I understood your deadline for

23 expecting to -- to have that information.

24        THE COURT:  And --

25        MR. CORNELIUS:  I'm clear now.

Trials@uspto.gov                                                Paper 17
571-272-7822                                          Entered: April 28, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

BI SCIENCE (2009) LTD.,
Petitioner
v.
LUMINATI NETWORKS LTD.,
Patent Owner

_____

IPR2020-00166
Patent 9,241,044 B2

_____

Before THOMAS L. GIANNETTI, SHEILA F. McSHANE.
and RUSSEL E. CASS, *Administrative Patent Judges.*

GIANNETTI, *Administrative Patent Judge.*

DECISION
Settlement Prior to Trial
*37 C.F.R. § 42.74*

IPR2020-00166
Patent 9,241,044 B2


On April 24, 2020, Petitioner and Patent Owner filed a Corrected
Joint Motion to Terminate Pursuant to 35 U.S.C. § 317 (Paper 15; "Motion
to Terminate") under 35 U.S.C. § 317(a) and 37 C.F.R. § 42.72.  With that
Motion to Terminate, the Parties filed a Corrected Joint Motion to File
Settlement Agreement as Business Confidential Information Pursuant to 35
U.S.C. § 317(b) (Paper 16, "Motion to Seal Settlement Agreement").

Generally, the Board expects that a proceeding will terminate after the
filing of a settlement agreement, if the settlement agreement includes all
parties.  *See, e.g.*, PTAB Consolidated Trial Practice Guide 86 (July 2019).

The parties submit that termination of this proceeding is proper.
Motion to Terminate 1.  The parties indicate that they have "settled all patent
matters between them" and "have agreed to terminate this IPR."  *Id.*  The
parties are moving to dismiss the district court proceeding relating to the
'044 patent.  *Id.* at 3.  Patent Owner states that it is "not contemplating any
other litigation involving the challenged patent, and neither party is
contemplating any other form of proceeding involving the challenged
patent."  *Id.*

The parties represent that the settlement agreement between the
parties "has been made in writing, and a true and correct copy will be filed
with this request as Exhibit 2001."  *Id.* at 4.  "The parties jointly certify that,
as required by 37 C.F.R. 42.74(b) and the Board's Email dated March 3,
2020, the settlement agreement reflects the final settlement and resolution of
disputes between the parties."  *Id*.

IPR2020-00166
Patent 9,241,044 B2

This proceeding is at its early stages.  Patent Owner has not filed a
preliminary response.  There has been no decision on whether to institute
*inter partes* review.

The parties further jointly request that Exhibit 2001 be treated as
business confidential information and kept separate from the file of the
involved patent.  Motion to Seal Settlement Agreement 1.

At this early stage, we determine that termination is warranted for the
reasons stated in the Motion to Terminate.

We further determine that the Settlement Agreement (Ex. 2001) filed
by the parties constitutes business confidential information.  Therefore, we
find there is good cause to grant the parties' Motion to Seal Settlement
Agreement.

Accordingly, it is

ORDERED that the Motion to Terminate is *granted*;

FURTHER ORDERED that this proceeding is terminated with respect
to both Petitioner and Patent Owner; and

FURTHER ORDERED that the parties' Motion to Seal Settlement
Agreement is granted, and Exhibit 2001 shall be sealed and kept separate
from the file of this case, consistent with 37 C.F.R. § 42.74(b).

IPR2020-00166
Patent 9,241,044 B2

FOR PETITIONER:

Ronald Abramson
Ari J. Jaffess
Mord Michael Lewis
Rebecca Claire Rothkopf
Liston Abramson LLP
ron.abramson@listonabramson.com
ari.jaffess@listonabramson.com
michael.lewis@listonabramson.com
rebecca.rothkopf@listonabramson.com


FOR PATENT OWNER:

Thomas M. Dunham
Don F. Livornese
RuyakCherian LLP
tomd@ruyakcherian.com
donl@ruyakcherian.com

Trials@uspto.gov                                          Paper 15
571-272-7822                                    Entered: April 28, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

BI SCIENCE (2009) LTD.,
Petitioner,
v.
LUMINATI NETWORKS LTD.,
Patent Owner.

————————

IPR2020-00167
Patent 9,742,866 B2

————————

Before THOMAS L. GIANNETTI, SHEILA F. McSHANE.
and RUSSEL E. CASS, *Administrative Patent Judges.*

CASS, *Administrative Patent Judge.*

DECISION
Settlement Prior to Trial
*37 C.F.R. § 42.74*

IPR2020-00167
Patent 9,742,866 B2

On April 24, 2020, Petitioner and Patent Owner filed a Joint Motion
to Terminate Pursuant to 35 U.S.C. § 317 (Paper 13; "Motion to Terminate")
under 35 U.S.C. § 317(a) and 37 C.F.R. § 42.72.  With that Motion to
Terminate, the Parties filed a Joint Motion to File Settlement Agreement as
Business Confidential Information Pursuant to 35 U.S.C. § 317(b) (Paper 14,
"Motion to Seal Settlement Agreement").

Generally, the Board expects that a proceeding will terminate after the
filing of a settlement agreement, if the settlement agreement includes all
parties.  *See, e.g.*, PTAB Consolidated Trial Practice Guide 86 (July 2019).

The parties submit that termination of this proceeding is proper.
Motion to Terminate 1.  The parties indicate that they have "settled all patent
matters between them" and "have agreed to terminate this IPR."  *Id.*  The
parties are moving to dismiss the district court proceeding relating to the
'866 patent.  *Id.* at 3.  Patent Owner states that it is "not contemplating any
other litigation involving the challenged patent, and neither party is
contemplating any other form of proceeding involving the challenged
patent."  *Id.*

The parties represent that the settlement agreement between the
parties "has been made in writing, and a true and correct copy will be filed
with this request as Exhibit 2001."  *Id.* at 4.  "The parties jointly certify that,
as required by 37 C.F.R. 42.74(b) and the Board's Email dated March 3,
2020, the settlement agreement reflects the final settlement and resolution of
disputes between the parties."  *Id.*

IPR2020-00167
Patent 9,742,866 B2

This proceeding is at its early stages.  Patent Owner has not filed a preliminary response.  There has been no decision on whether to institute *inter partes* review.

The parties further jointly request that Exhibit 2001 be treated as business confidential information and kept separate from the file of the involved patent.  Motion to Seal Settlement Agreement 1.

At this early stage, we determine that termination is warranted for the reasons stated in the Motion to Terminate.

We further determine that the Settlement Agreement (Ex. 2001) filed by the parties constitutes business confidential information.  Therefore, we find there is good cause to grant the parties' Motion to Seal Settlement Agreement.

Accordingly, it is

ORDERED that the Motion to Terminate is *granted*;

FURTHER ORDERED that this proceeding is terminated with respect to both Petitioner and Patent Owner; and

FURTHER ORDERED that the parties' Motion to Seal Settlement Agreement is granted, and Exhibit 2001 shall be sealed and kept separate from the file of this case, consistent with 37 C.F.R. § 42.74(b).

IPR2020-00167
Patent 9,742,866 B2

PETITIONER:

Ronald Abramson
M. Michael Lewis
Ari J. Jaffess
Rebecca Rothkopf
LISTON ABRAMSON LLP
ron.abramson@listonabramson.com
michael.lewis@listonabramson.com
ari.jaffess@listonabramson
michael.lewis@listonabramson.com


PATENT OWNER:

Thomas M. Dunham
Don F. Livornese
RUYAKCHERIAN LLP
tomd@ruyakcherian.com
donl@ruyakcherian.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| | § | Case No. 2:18-CV-00483-JRG |
| v. | § | FILED UNDER SEAL |
| BI SCIENCE, INC., | § | |
| Defendant. | § | |

## PLAINTIFF LUMINATI NETWORKS LTD.'S
## MOTION FOR SANCTIONS

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................... 1

II.  FACTUAL BACKGROUND...................................................................... 2

    A.   February 23, 2020 Settlement Agreement ...................................... 2

    B.   BI Science Refused to Confirm Validity of Settlement Agreement ............................... 3

    C.   BI Science Refused to Terminate the BI Science IPRs .................... 3

    D.   BI Science Filed A Countercomplaint in BI Science II Asserting the Patent It Had Assigned to Luminati ................................................ 4

    E.  BI Science Filed a Countercomplaint in BI Science III Asserting the Same Claim that Is To Be Dismissed with Prejudice in BI Science I ........................ 5

    F.  After the Filing of the Motion for Enforcement, BI Science Asserted for the First Time the Contradictory Arguments that there Was No Settlement and Even if There Were, Performance Should Be Excused Under Force Majeure or Impossibility ...................... 6

    G.   Despite Clear Guidance from the Court Finding the Settlement Agreement Valid and Enforceable, BI Science Continued to Dispute the Clear Language of the Settlement Terms and Assert Force Majeure to Excuse Performance............................................. 8

    H.   Following Issuance of the Arbitrator's Award BI Science Continues to Obstruct Performance. ................................................................. 8

III.  LEGAL STANDARD ................................................................................ 9

IV.  ARGUMENT............................................................................................ 11

V.  CONCLUSION ....................................................................................... 13

i

## I.    INTRODUCTION

Having agreed to a mediator's proposal on February 23, 2020 ("Settlement Agreement"), and jointly filed a motion to stay the case based on this settlement, Defendant BI Science (2009) Ltd., also known as BI Science Inc. ("BI Science" or "Defendant") refused to perform under the Settlement Agreement, or even acknowledge its validity, and subsequently breached the agreement by filing countercomplaints violating multiple terms of that agreement—and continues to do so even today.  In addition to being deprived of the benefit of its bargain, Luminati Networks Ltd. ("Luminati") has been forced to incur legal fees and expenses related to (a) Luminati's Motion to Enforce the Settlement Agreement (Dkt. 170) in this case ("BI Science I"); (b) Luminati's Motion to Dismiss BI Science's Countercomplaint (ECF 19) in *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No. 2:19-cv-352 ("BI Science II"); (c) Luminati's Motion to Dismiss BI Science's Countercomplaint (ECF 33) in *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No. 2:19-cv-397 ("BI Science III"); and (d) Luminati's multiple motions for extensions and Luminati's preliminary responses in IPR2020-00166 and IPR2020-00167 ("BI Science IPRs").

Following the Court's finding that the Settlement Agreement is valid and enforceable and order directing the Parties to arbitration per the Settlement Agreement (Dkt. 183 at 42:12-44:20), Luminati requested its attorneys' fees for the above expenses in the arbitration.  The arbitrator confirmed that the February 24, 2020 mediator signed agreement (Ex. A) comprising 17 terms is the operative Settlement Agreement. However, as the arbitrator determined that the issue of post-settlement attorneys' fees is outside the scope of arbitration (Ex. G at 1), Luminati respectfully requests sanctions against BI Science, including Luminati's attorneys' fees incurred in response to BI Science's above post-settlement activity and any other relief deemed appropriate by the Court. Further, given BI Science's continuing breaches of the agreements and ongoing refusal to comply, fees continue to mount, and Luminati requests additional fees going forward as well.

## II.     FACTUAL BACKGROUND

*A.  February 23, 2020 Settlement Agreement*

On February 23, 2020, the parties entered a mediated Settlement Agreement, which was confirmed by an email from mediator William Cornelius stating as follows:

> "I am very pleased to report that the mediator's proposal has resulted in a settlement. Incorporated into that is the list of terms that [Plaintiff's counsel] sent me yesterday, and that I provided to [Defendant's counsel]. That list, of course, is modified in some respects by the terms of the proposal, including the most recent proposed language added to it this morning regarding 'rejection of customers'. Unless you object, I will notify Judge Gilstrap of the settlement and request that he cancel Monday's hearing. I will tell him a motion to stay is forthcoming. I will advise if he wants it filed before he will cancel the hearing." (Ex. B).

Defendant's counsel responded shortly thereafter stating, "Thanks for all your hard work Bill" and authorized the filing of the joint motion to stay all deadlines and notice of settlement.  *Id.*, Dkt. 166, Ex. I.  A copy of the Settlement Agreement signed by the mediator comprised 17 terms (Ex. A), including, but not limited to, the following:

> 1.  Both Parties dismiss all claims in Case No 2:18-cv-483 with prejudice except for the claim of invalidity with regard to claim 108 of U.S. Patent No. 9,241,044 ("'044 Patent");
>
> 3.  Luminati dismisses Case No. 2:19-cv-352 and Case No. 2:19-cv-397 without prejudice;
>
> 4.  BI Science withdraws its *inter partes* review petitions (IPR2020-166 and IPR2020-167) against certain Patents-in-Suit;
>
> 5.  BI Science leaves the Proxy Services business world-wide permanently;
>
> 12.  BI Science assigns the '244 Patent and related patent applications, continuations, and continuations in part to Luminati.
>
> 14.  The parties agree to a 3-year litigation stand down, during which neither party shall institute legal action of any kind against the other except as may be necessary to enforce any settlement reached as a result of this proposal;
>
> 17.  The parties agree to submit any disputes regarding the terms and provisions of the settlement to binding arbitration by William Cornelius.

2

Ex. A ("Settlement Agreement") (emphasis added).

### B.  BI Science Refused to Confirm Validity of Settlement Agreement

Following the Settlement Agreement, Luminati requested that BI Science sign the mediator signed Settlement Agreement, but BI Science refused to do so.  Ex. C at 6. Instead, BI Science delayed performance to the detriment of Luminati while attempting to renegotiate the Settlement Agreement including the changing of multiple essential terms.  *Id*. at 1-4.  After three weeks of obstruction and delay, Luminati was forced to file its Motion to Enforce the Settlement Agreement (Dkt. 170) on March 18, 2020 to confirm the validity and enforceability of the agreement as a first step before exercising the arbitration clause of the Settlement Agreement. During the April 13, 2020 hearing (Dkt. 183 at 42:12-43:24), the Court found the Settlement Agreement to be valid and enforceable and ordered the parties to arbitration pursuant to term 17 of that agreement.

### C.    BI Science Refused to Terminate the BI Science IPRs

The February 23, 2020 Settlement Agreement includes term 4 ("BI Science withdraws its *inter partes* review petitions (IPR2020-166 and IPR2020-167")), which provided a material benefit to Luminati as it should have permitted Luminati to avoid the expense of defending the IPRs including the filing of preliminary responses initially due on March 3, 2020.  Despite the clear language of the Settlement Agreement, BI Science refused to terminate the BI Science IPRs "until the settlement is finalized." Ex. C at 6.  Understanding the ongoing expenses incurred by Luminati, BI Science used the IPRs as leverage in an improper attempt to renegotiate essential terms of the Settlement Agreement.[1]

---

[1] For example, attached to its March 11, 2020 email (Ex. C at 1) was a proposal which  for example sought to change term 5 of the Settlement Agreement ("BI Science leaves the Proxy Services business world-wide permanently") to "BI Science shall cease selling residential and data service Proxy Services on world-wide basis no later than January 1, 2021," which would have allowed BI Science to delay leaving the Proxy Services business by **ten months**. Ex. D at ¶ 5.

3

The PTAB granted a 14-day and then a 10-day extension, but made it clear that further extensions would only be granted for "extraordinary circumstances" creating pressure on Luminati to expend resources preparing preliminary responses in the two IPRs. Ex. D at 3. Despite repeatedly requesting BI Science's compliance with the Settlement Agreement, BI Science refused to terminate the IPRs, waiting until March 26, the day before the deadline to respond under the second extension to inform Luminati:

> This is a predicament of your own making. **Had you shown any good faith willingness over the past several weeks to negotiate a comprehensive agreement based on the mediator's proposal, and shown any consideration for, among other things, the havoc that the COVID-19 pandemic is having on BIScience's business this likely could have been avoided**.

Ex. D at 1. (Emphasis Added) Having made clear that BI Science's own performance under the Settlement Agreement was conditioned on Luminati agreeing to changes to that agreement, BI Science promptly followed up the same day with a second email stating "**Given Luminati's actions per the below, and more, my client is not willing to assist with any further extensions at the PTAB**." *Id*. at 1 (emphasis added).

Despite BI Science's refusal to join a request for an extension, Luminati requested and received an extension from the PTAB giving Luminati until April 30, 2020 to respond. Subsequently, the Court confirmed that there was a settlement agreement and sent any disputes to arbitration. Yet, even in the face of the Court's order, and even though BI Science never disputed that it was required to terminate the IPRs, it continued to refuse to cooperate in filing termination papers until Arbitrator Cornelius issued a directive that the parties do so on April 24.

### D. BI Science Filed A Countercomplaint in BI Science II Asserting the Patent It Had Assigned to Luminati

The February 23, 2020 Settlement Agreement includes term 12 ("BI Science assigns the '244 Patent and related patent applications, continuations, and continuations in part to Luminati")

4

**Appx1722**

and 14 ("The parties agree to a 3-year litigation stand down, during which neither party shall institute legal action of any kind against the other except as may be necessary to enforce any settlement reached as a result of this proposal").  Despite this clear language of the Settlement Agreement, BI Science filed a counterclaim in BI Science II on March 27, 2020 that asserted that Luminati infringed the '244 Patent, which was assigned to Luminati under the Settlement Agreement.[2]  Luminati was forced to file a motion to dismiss this counterclaim (BI Science II, ECF 19) on April 17, 2020 asserting BI Science lacked standing, was obligated to submit all disputes to arbitration, and noting that "this Counterclaim has no basis in law, couldn't have been filed in good faith, and should be subject to dismissal."  BI Science II, ECF 19 at 1, 3-8. Luminati clearly asserted that any disputes had to be submitted to arbitration without waiving any rights to attorney fees. *Id*. at 6 ("While BI Science's dispute is clearly meritless, by the terms of the Settlement Agreement, to the extent that BI Science has any disputes with Luminati regarding the Settlement Agreement it is obligated to submit all disputes to arbitration by William Cornelius.")

> E.  *BI Science Filed a Counterclaim in BI Science III Asserting the Same Claim that Is To Be Dismissed with Prejudice in BI Science I*

The February 23, 2020 Settlement Agreement includes term 1 ("Both Parties dismiss all claims in Case No 2:18-cv-483 with prejudice except for the claim of invalidity with regard to claim 108 of U.S. Patent No. 9,241,044 ("'044 Patent")") and 14 ("The parties agree to a 3-year litigation stand down, during which neither party shall institute legal action of any kind against the other except as may be necessary to enforce any settlement reached as a result of this proposal").

---

[2] Notably, BI Science was not required to file anything at all. Luminati informed BI Science it did not need to answer the complaints due to the settlement agreement that resolved it.  Ex. H at 1.  BI Science thus decide to spend its time and money—and cause Luminati to spend time and money on motions to dismiss— when it had no reason to do so.

5

**Appx1723**

Despite this clear language of the Settlement Agreement, BI Science filed a counterclaim in BI Science III on March 27, 2020 asserting a claim of monopolization / attempt to monopolize, which was the same claim from BI Science I that was to be dismissed <u>with prejudice</u> under term 1 of the Settlement Agreement. Luminati was forced to file a motion to dismiss this counterclaim (BI Science III, ECF 33) on April 17, 2020 asserting BI Science lacked standing, was obligated to submit all disputes to arbitration, and noting that "this Counterclaim has no basis in law, couldn't have been filed in good faith, and should be subject to dismissal." BI Science II, ECF 33 at 1, 3-8. Luminati clearly asserted that any disputes had to be submitted to arbitration without waiving any rights to attorney fees. *Id*. at 5 ("While BI Science's dispute is clearly meritless, by the terms of the Settlement Agreement, to the extent that BI Science has any disputes with Luminati regarding the Settlement Agreement it is obligated to submit all disputes to arbitration by William Cornelius.")

> F. *After the Filing of the Motion for Enforcement, BI Science Asserted for the First Time the Contradictory Arguments that there Was No Settlement and Even if There Were, Performance Should Be Excused Under Force Majeure or Impossibility*

During the April 13, 2020 hearing, BI Science disclosed for the first time its position to Luminati and the Court that there was no fully binding settlement in contradiction to BI Science's agreement to the settlement (Ex. B) and approval of the motion to stay and notice of settlement (Ex. I). Dkt. 183 at 8:21-9:4 ("It is our position that the mediator proposal – we referred to it as a framework in our response to the motion to enforce, Your Honor, by itself is not a fully binding settlement agreement…. Your Honor, that we don't think it contained all the material elements and requirements needed to form a completely binding settlement agreement."); *Id*. at 9:7-10:15. As noted by the Court:

> [Y]ou've told me twice today on the record in this hearing there is not an agreement. But you don't say that in your briefing. I mean, you dance around it, you drop a

6

**Appx1724**

single footnote that says the documentation before the Court is not the full agreement, but that's a long way from saying there is no agreement. But that's the position you've taken on the record today, and I'm certainly going to respect the position you've taken.

*Id*. at 34:15-22.

During extensive questioning at the hearing, Defendant argued the contradictory positions that it authorized the joint notice of settlement and request for stay on February 23, 2020 in good faith while also asserting that there was only an "agreement to settle the case in principle based on the mediator's proposal in that framework" rather than a settlement agreement as of that date. *Id.* at 25:23-26:4; *see also* 23:24-29:24.

In addition, while asserting that there was no agreement, BI Science also argued "in the alternative" that performance under the agreement was excused by impossibility or force majeure. Regardless, the Court provided a clear finding that the Settlement Agreement was valid and enforceable (Dkt. 183 at 42:12-43:17) and recognized that the Settlement Agreement included no provisions for force majeure or impossibility that would support BI Science's request for a 10-month delay in performance.

My only point is if outside financing of some type were a necessary part of this, you and I and Luminati would all be better off if the documentation said this is conditioned upon receiving X amount of financing within so many days with terms not to be different than A, B, C. But that's not in there. It's silent about that.

There's -- there's no reservation or condition or excuse for performance tied to obtaining outside financing of any kind. And there's nothing that would have kept BI Science from including that, but yet you now come back and say, because the world has changed, and it has, and because the markets have changed, and they have, that should excuse us from performing under these -- these memorandum.

And I guess my point to you is it -- it would excuse you if it was included in there as an express condition, but it's not. And I don't see that -- I don't see that impossibility or force majeure, which is never raised in here, are excuses or reasons why BI Science should be excused from doing what the memorandum suggests and what up until today everybody has told me was the parties' settlement resolving this dispute.

7

Federal courts have the inherent power to impose attorneys' fees as a sanction for bad faith litigation conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47-48 (1991); *see also Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001); *Batson v. Neal Spelce Assoc.*, 805 F.2d 546, 550 (5th Cir. 1986) ("[F]ederal courts possess inherent power to assess attorney's fees and litigation costs when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.") (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber*, 417 U.S. 116, 129 (1974)); *see also SIPCO LLC v. Amazon.com, Inc.*, No. 2:08-CV-359-JRG, 2013 U.S. Dist. LEXIS 137518, at *8 (E.D. Tex. Sept. 25, 2013).

A party's post-settlement actions reneging on a binding settlement agreement and frivolous defense to enforcement constitutes bad faith and warrants attorneys' fees incurred by the opposing party. *Procaccino v. Jeansonne*, No. 17-4748, 2017 U.S. Dist. LEXIS 213149, at *12-13 (E.D. La. Dec. 23, 2017) ("The only issue is whether the defendants' conduct amounts to bad faith. The Court finds that the defendants inexplicably reneged on a binding settlement agreement and then unnecessarily multiplied proceedings by opposing enforcement of the settlement agreement with no factual predicate in support of their opposition….The appropriate sanction is to compensate the plaintiff for the attorneys' fees she was forced to incur as a result of defendant's' misconduct in obstructing the settlement and multiplying proceedings."); *see also Saeed v. Kamboj*, No. 17-13427, 2019 U.S. Dist. LEXIS 132761, at *26 (E.D. La. June 21, 2019) (Defendant's failure to comply with settlement agreement based on meritless argument constitutes bad faith warranting an award of attorneys' fees to Plaintiff); *Travelers Indem. Co. v. Superior Constr., Inc.*, Civil Action No. 87-7449, 1989 U.S. Dist. LEXIS 15221, at *5-6 (E.D. Pa Dec. 18, 1989) ("[Defendant] is liable to plaintiff for reasonable costs and attorneys' fees incurred due to his bad faith behavior in refusing to honor the settlement reached in this matter."); *Hoey v. Sunrise Senior Living Mgmt.*,

10

No. 11-CV-13740, 2013 U.S. Dist. LEXIS 27480, at *8 (E.D. Mich. Feb. 28, 2013) ("Plaintiff should not be required to bear the burden of paying attorney fees for Defendant's failure to comply with the settlement agreement. The consequences of Defendant's belief that the terms would later be included should be borne by Defendant alone. In order to restore Plaintiff to the same position as she would have been if Defendant had complied with the settlement agreement, the Court will award the costs and fees of bringing and defending this motion.")

## IV.    ARGUMENT

BI Science needlessly drove up Luminati's costs and deprived Luminati of the benefit of its bargain by refusing to perform under the Settlement Agreement or even admit the validity of that agreement.  Defendant's opposition to the Motion to Enforce and subsequent defenses of force majeure and impossibility were meritless and had no basis in the Settlement Agreement as confirmed by the Court.  *See* Dkt. 183 at 34:23-35:18; *see also* Ex. G at 2 (e.g. denying any delay to leaving the Proxy Services business world-wide permanently beyond 28 days).  BI Science's actions were particularly egregious as it continued to avoid even stating whether Defendant agreed that the Settlement Agreement was valid and enforceable or not – Luminati had to wait until the April 13, 2020 hearing to learn BI Science's position that there was no agreement. Dkt. 183 at 34:15-20 ("[Y]ou've told me twice today on the record in this hearing there is not an agreement. But you don't say that in your briefing.  I mean, you dance around it, you drop a single footnote that says the documentation before the Court is not the full agreement, but that's a long way from saying there is no agreement").

BI Science's post-settlement actions could only have been taken in bad faith justifying the Court exercising its inherent authority to grant attorneys' fees.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47-48; *see also Crowe v. Smith*, 261 F.3d 558, 563. This was even worse than the

11

**Appx1729**

defendant in *Procaccino*, where the defendant reneged on the settlement a day after agreement, as BI Science knew that Luminati relied upon the Settlement Agreement and continued to incur costs as a result of BI Science's obstruction and delay in performance. *Procaccino v. Jeansonne*, 2017 U.S. Dist. LEXIS 213149, at *12-13. As in *Procaccino*, BI Science's post-settlement actions were taken in bad faith. *Id.*; *see also Saeed v. Kamboj*, No. 17-13427, 2019 U.S. Dist. LEXIS 132761, at *26; *Travelers Indem. Co. v. Superior Constr., Inc.*, 1989 U.S. Dist. LEXIS 15221, at *5-6; *Hoey v. Sunrise Senior Living Mgmt.*, 2013 U.S. Dist. LEXIS 27480, at *8.

Following the February 23, 2020 Settlement, BI Science refused to terminate the BI Science IPRs and attempted to use this as leverage in an attempt to renegotiate terms more favorable to BI Science. BI Science also filed counterclaims that were prohibited by multiple terms of the Settlement Agreement including an assertion of infringement of a patent assigned to Luminati under the agreement and an assertion of the same claim that was to be dismissed with prejudice under the agreement. Given BI Science's agreement to the Settlement Agreement, BI Science knew that the counterclaims lacked merit and none of the above actions could have been taken in good faith. Furthermore, today is another deadline according to the Award to file dismissals of those actions including the counterclaims, and against BI Science has refused to comply, forcing Luminati to file the motions as opposed despite never objecting to them during the pendency of the arbitration.

In order to enforce the terms of the Settlement Agreement, Luminati was forced to file a motion to enforce the Settlement Agreement (Dkt. 171) to confirm the validity of the agreement, and file the minimum motions necessary in the lateral BI Science II, BI Science III and BI Science IPR proceedings to protect its rights while pursuing arbitration to resolve all disputes. As Arbitrator Cornelius has now determined that an award of attorneys' fees are outside the scope of

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| | § | Case No. 2:18-CV-00483-JRG |
| v. | § | FILED UNDER SEAL |
| BI SCIENCE, INC., | § | |
| Defendant. | § | |

**PLAINTIFF LUMINATI NETWORKS LTD.'S MOTION TO ENFORCE**
**<u>SETTLEMENT AGREEMENT AND ARBITRATION AWARD</u>**

187).  Luminati also respectfully requests that the Court retain jurisdiction over enforcement of the Settlement, including the pending Motion for Sanctions, pursuant to the Final Arbitration Award.

## II.    FACTUAL BACKGROUND

### A.  February 23, 2020 Settlement Agreement

On February 23, 2020, the parties entered the settlement agreement (Ex. A, Settlement Agreement), that was subsequently found valid and enforceable by both the Court (Ex. C, Dkt. 183 at 42:12-43:24) and arbitrator William Cornelius (Ex. D at 1).  A copy of the Settlement Agreement signed by the mediator comprised 17 terms (Ex. A), including, but not limited to, the following:

> 1.  Both Parties dismiss all claims in Case No 2:18-cv-483 with prejudice except for the claim of invalidity with regard to claim 108 of U.S. Patent No. 9,241,044 ("'044 Patent");
>
> 2.  The Parties shall move for entry of final judgment with regard to claim 108 of the '044 Patent;
>
> 6. BI Science enters a stipulated injunction that BI Science will not use, offer to sell, or sell, Proxy Services in the United States or import Proxy Services into the United States to the extent it is not licensed by Luminati to do so;
>
> 14.  The parties agree to a 3-year litigation stand down, during which neither party shall institute legal action of any kind against the other except as may be necessary to enforce any settlement reached as a result of this proposal;
>
> 17. The parties agree to submit any disputes regarding the terms and provisions of the settlement to binding arbitration by William Cornelius.

Ex. A ("Settlement Agreement") (emphasis added).

### B.  April 29, 2020 Arbitration

During the April 13, 2020 hearing, the parties were ordered to arbitration pursuant to term 17 of the Settlement Agreement:

I'm going to order that both parties immediately work with Mr. Cornelius to arrange for a binding arbitration of any unresolved issues related to this settlement and present either the parties' agreement or Mr. Cornelius's binding arbitration award in those regards to the Court before the end of this month so that the Court can enter a resulting final order enforcing the totality of the settlement.

Ex. C at 43:8-15.

During the following arbitration, with regard to term 17 of the Settlement Agreement, BI Science agreed in its opening brief dated April 22, 2020[2] that it did not oppose Luminati's proposal that "the choice of law should be Texas; any arbitration order may be submitted to E.D. Texas in Marshall for enforcement" (Ex. E at 9) and consequently the April 29, 2020 Final Arbitration issued as general finding 2: "**Any motion to enforce this Arbitration Award shall be filed in the Eastern District of Texas, Marshall Division, and shall be governed by the laws of the state of Texas**." Ex. B at 1.

*C. BI Science's Failure to Perform under Settlement Agreement and Arbitration Award*

Consistent with the above April 13, 2020 Court Order, BI Science's opening April 23, 2020 brief and April 29, 2020 Arbitration Award adopting the undisputed proposal to submit the arbitration award to this Court for enforcement, Luminati requested that the parties jointly file the Settlement Agreement and Arbitration Award. However, following the issuance of the Arbitration Award, BI Science reversed itself and refused to file the Arbitration Award with this Court for enforcement forcing Luminati to file the Award as an opposed motion. Dkt. 185.

During Arbitration, BI Science complied with the directives issued by Arbitrator Cornelius including the joint termination of the BI Science IPRs on April 24, 2020 per Arbitrator Cornelius's April 23, 2020 letter directing the parties to do so under term 3 of the Settlement Agreement. Ex. F. However, once the Final Arbitration Award was issued on April 29, 2020, BI Science reversed

---

[2] BI Science's opening brief was dated April 22, 2020, but actually served on April 23, 2020.

3

its position back to obstructing and delaying implementation of the Settlement Agreement and Arbitration Award. In addition to refusing to enter the Arbitration Award, and without challenging that award, Defendant has continued to obstruct performance under the Settlement Agreement including its refusal to perform the following tasks per the Arbitration Award Implementation Schedule[3]:

- Task 2: Parties file joint motions to dismiss BI Science II and BI Science III (Settlement Agreement term 3 – due by May 2);

- Task 3: BI Science identifies its Proxy Services customers to Luminati (Settlement Agreement term 8 – due by May 4);

- Task 4: Parties file the joint stipulation, joint motions to dismiss and joint motion for entry of final judgment for claim 108 in BI Science I (Settlement Agreement terms 1, 2, and 6 – due by May 6);

- Task 6: BI Science provides its account information for payment from escrow account (Settlement Agreement term 8 – due by May 6);

- Task 7: BI Science identifies the patent applications, continuations, and continuations in part related to '244 patent (Settlement Agreement term 8 – due by May 6);

- Task 8: BI Science shall refer (transfer) its Proxy Services customers to Luminati (Settlement Agreement term 8 – due by May 6).

Ex. B at 5.

As of this Motion, BI Science has performed none of the above tasks.  With regard to task 4, Luminati requested BI Science's approval to enter the joint stipulation (Ex. H) and motions for partial dismissal (Ex. I) and final judgment (Ex. J) on May 6, 2020 in compliance with the Arbitration Award.  Ex. G. Opposing counsel requested a two-day extension, and Luminati agreed to give opposing counsel until noon Central on May 8, 2020. Ex. K.  The parties held a telephonic

---

[3] While BI Science has performed no tasks after task 1 (termination of the IPRs), to the extent possible Luminati has performed each task for which it has responsibility under the schedule including tasks 1-5, noting that BI Science has obstructed the joint filings and that Luminati has waited two days to give BI Science an opportunity to approve the filing of the joint filings at issue in this Motion, but seeks relief from the Court to enforce these provisions.

4

meet and confer shortly thereafter on May 6, but having further delayed performance, BI Science sent a one-line email just before noon stating that they oppose this motion on May 8, 2020. *Id.*

## III.    ARGUMENT

The Court has the authority to enter judgment confirming an arbitration award. *Stevens v. Conn's, Inc.*, No. 4:16-CV-309, 2019 U.S. Dist. LEXIS 132265, at *6-7 (E.D. Tex. Aug. 7, 2019). In addition, pursuant to the Arbitration Award, "**[a]ny motion to enforce this Arbitration Award shall be filed in the Eastern District of Texas, Marshall Division, and shall be governed by the laws of the state of Texas**." Ex. B at 1.

After two and a half months, BI Science has refused to meet the requirements of the February 23, 2020 Settlement Agreement and has continued to refuse to perform any of the tasks after issuance of the April 29, 2020 Arbitration Award. Subject to resolution of the pending Motion to Enforce (Dkt. 185) and Motion for Sanctions (Dkt. 187) as well as other sanctions or other relief that the Court finds appropriate, pursuant to terms 1, 2, and 6 of the Settlement Agreement consistent with the joint filings required under Exhibits H, I, and J, Luminati seeks an order issuing the following:

- An injunction against BI Science from using, offering to sell, or selling residential proxy and data center proxy services, including under the "Geosurf" brand, in the United States or importing residential proxy and data center proxy services, including under the "Geosurf" brand, into the United States to the extent that BI Science is not licensed by Luminati to do so;

- Partial dismissal of all claims and counterclaims with prejudice, except for the counterclaim of invalidity of claim 108 of Patent 9,241,044; and

- Final judgment on the counterclaim of invalidity of claim 108 of U.S. Patent 9,241,044 (the "'044 Patent"), which the Court found to be indefinite pursuant to the Court's claim construction order (Dkt. 130).

5

Given Defendant's ongoing breach of the Settlement, and Luminati's justified concerns that BI Science has no intention of performing, Luminati also requests that this Court retains jurisdiction over enforcement of the Settlement, pursuant to the Arbitration Award.

## IV.    CONCLUSION

For the reasons provided above, pending resolution of Luminati's Motion for Enforcement of Settlement Agreement and Arbitrator's Award (Dkt. 185) and Motion for Sanctions (Dkt. 187), Plaintiff respectfully requests that the Court enter an order enforcing terms 1, 2, and 6 of the Settlement as well as any additional sanctions or other relief for Defendants' continued breach of the Settlement. Luminati also requests that this Court retains jurisdiction over enforcement of the Settlement.

Dated: May 8, 2020                        Respectfully submitted,

                                          By: */s/ Korula T. Cherian*
                                          Mark Mann
                                          Mann | Tindel | Thompson
                                          300 West Main
                                          Henderson, TX 75652
                                          mark@themannfirm.com
                                          Office 903-657-8540
                                          Cell 903-658-0401
                                          Marshall Office 903-472-4294
                                          Tyler Office 903-596-0900
                                          Waco Office 254-776-3336

                                          Amadou Kilkenny Diaw
                                          Ronald Wielkopolski
                                          RuyakCherian LLP
                                          1901 L St. NW, Suite 700
                                          Washington, DC 20036

                                          Korula T. Cherian

6

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 8th day of May 2020, with a copy of this document via electronic mail.

/s/ *Korula T. Cherian*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the counsels for the parties have complied with Local Rule CV-7(h).  Counsel participating on the May 6, 2020 meet and confer included: Mark Mann on behalf of Plaintiff; Eric Findlay on behalf of Defendant.  Defendant opposes this motion.

/s/ *Korula T. Cherian*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

/s/ *Korula T. Cherian*

1

**Appx1770**

# FINDLAY CRAFT

**Attorneys & Counselors**
102 North College Avenue, Ste. 900 Tyler, Texas 75702
P: 903.534.1100 • F: 903.534.1137
findlaycraft.com

April 22, 2020

*Sent via email*

Mr. William Cornelius
Wilson, Robertson & Cornelius, P.C.
909 ESE Loop 323, Suite 400,
Tyler, Texas  75701

Re:    No. 2:18-cv-483-JRG; *Luminati Networks Ltd. v. BIScience Inc*.; In the U.S.
District Court of the Eastern District of Texas, Marshall Division.

## RESTRICTED- HIGHLY CONFIDENTIAL

## BIScience's Response to Luminati's Proposals on Settlement Terms

Mr. Cornelius,

The following is BIScience's response to settlement terms proposed by Luminati as compared to the mediated settlement agreement document (hereinafter referred to as "agreement") term by term (numbers 1-17).  BIScience incorporates its previous correspondence dated April 20, 2020 into this Response, as if fully set forth herein.  Respectfully, BIScience also reserves its rights to dispute the rulings and orders entered by the Court and this Arbiter, and by submitting this response in no way does BIScience waive any of its rights, including but not limited to its rights to appeal.  Subject to this statement, BIScience responds as follows:

**1. Both Parties dismiss all claims in Case No 2:18-cv-483 with prejudice except for the claim of invalidity with regard to claim 108 of  U.S. Patent No. 9,241,044 ("'044 Patent").**
Luminati's proposal is that the parties should file a joint motion to dismiss within 7 days of the filing of the final arbitration order with the Court.

1

BIScience is not opposed to the timing of the joint motion, though contends it should run from the date of the Court's written adoption of the final arbitration order.

**2.  The Parties shall move for entry of final judgment with regard to claim 108 of the '044 Patent.**

Luminati's proposal on timing appears to be in conjunction with the joint motion to dismiss, but it is not entirely clear.

BIScience is not opposed to the timing on moving for entry of final judgment in conjunction with the joint motion to dismiss

**3.  Luminati dismisses Case No. 2:19-cv-352 and Case No 2:19-cv-397 without prejudice.**

Luminati's proposal is that the parties file a joint motion to dismiss within 3 days of the filing of the final arbitration order with the Court.

BIScience is not opposed to the timing of the joint motion, but consistent with #1 above, believes it should run from the date of the Court's written adoption of the final arbitration order.

**4.  BIScience withdraws its *inter partes* review petitions (IPR2020-166 and IPR2020-167) against certain Patents-in-Suit.**

Luminati's proposal is that the parties should file a joint motion to terminate the IPRs during the arbitration period or one day following the arbitration order.

BIScience is not opposed to the timing of the joint motion, but believes it should run from the date of the Court's written adoption of the final arbitration order.  Moreover, it should be noted that the parties have jointly filed an additional request for an extension of the PTAB deadline until May 15, 2020.

**5.  BIScience leaves the Proxy Services business world-wide permanently.**
Luminati has a series of steps and "tasks" for BIScience to comply with in order to leave the proxy service business.  None of which are part of any agreement and, in fact, the agreement

**Appx1774**

is silent on the timing of BIScience exiting the proxy service business.  BIScience objects to these steps, unilateral dictates and requirements as beyond anything in the Mediator's Proposal. Respectfully, BIScience contends that incorporating any of those in the arbitration order would exceed the Arbiter's authority and would object accordingly.  *See Brook v. Peak Intern., Ltd.*, 294 F.3d. 668, 672 (5th Cir. 2002) (scope of the arbiter's authority is dependent on the agreement between the parties under which the arbiter was appointed).

BIScience proposes the following:

As you are aware, BIScience has encountered substantial financial losses due to COVID-19, whether it is defined as force majeure or impossibility/impracticability, the fact remains that this process of exiting the proxy service business may destroy BIScience as a business due to the lack of funding BIScience typically receives to remain an active business.  In order to lessen the financial strain during the transition, BIScience proposes exiting the proxy service business in January 2021.  At that time, BIScience will take down its webpages offering the proxy service as defined in the agreement.  BIScience will also withdraw its GeoSurf application from web stores including Chrome.  Additionally, BIScience will notify its active customers of the transfer of its proxy service business to Luminati on December 1, 2019, and Luminati will provide a webpage for customers to be transferred to Luminati.  This process of transferring customers may take up to 30 days, and should be completed by January 2, 2021.  Delaying the exit of the residential proxy services causes no prejudice or undue burden on Luminati.  Luminati has not raised any such issue either.

In the alternative, BIScience proposes a staged exit of the accused residential proxy services business and then a later exit of the non-accused non-residential proxy services

3

**Appx1775**

business.  BIScience would propose an exit of the accused services by the end of Q3 2020, and the remainder non-accused services exited end of Q2 2021.

**6.  BIScience enters a stipulated injunction that BIScience will not use, offer to sell, or sell, Proxy Services in the United States or import Proxy Services into the United States to the extent it is not licensed by Luminati to do so.**

Luminati does not make any proposals with respect to this term.

BIScience is not opposed to entering a stipulated injunction, provided that it tracks the language of this term and the agreement, and makes clear that BIScience can utilize proxy services for its own internal non-commercial use.  BIScience agrees under these terms it will no longer sell proxy services.

**7.  BIScience may continue providing its Urban VPN application to the extent it does not practice Luminati's patents.**

Luminati proposes that BIScience disable its Urban VPN's infringing features and disclose to Luminati the alterations made within 1 day of shutting down the proxy service business.

As previously indicated, BIScience has agreed to cease use of its Urban VPN in connection with proxy services.  BIScience has not agreed to anything beyond this.  As set forth in BIScience's initial position statement to the Arbiter, in order to avoid confusion on this issue between the parties, BIScience contends it must still have the ability to use its Urban VPN service outside of the residential proxy/bandwidth services.  Luminati has agreed with that position previously, but the language "to the extent it does not practice Luminati's patents" is unworkably vague and seems destined to lead to needless disputes.  BIScience would propose language that BIScience may continue providing its Urban VPN application as long as it does not sell residential bandwidth services to businesses.

**8.  Luminati makes monthly payments to BI Science of 37% of the gross (invoiced) revenue generated by any BIScience customer of Proxy Services transferred by BIScience and accepted by Luminati to Luminati's Proxy Services as part of this agreement for a period up**

4

**Appx1776**

**to 27 months. (Luminati shall not arbitrarily reject BIScience proxy service customers transferred under the settlement agreement. Any rejection shall be supported by legitimate and reasonable grounds including the existing Luminati compliance procedures. Any disputed rejection shall be submitted to arbitration by William Cornelius).**

Luminati proposes a series of steps and then asserts a new term that "transferred customers do not include current Luminati customers." This is another example of Luminati's inconsistencies. In one breath, Luminati complains that BIScience is attempting to add requirements to the agreement, and in the next they propose numerous terms and requirements that appear nowhere in the agreement. This is also important since some customers may use more than one residential proxy service, so it's entirely possible that someone or some entity may be a customer of Luminati's and BIScience's. It would be manifestly unfair it in that circumstance if BIScience did not get credit and revenue sharing for that customer. BIScience should also get credit for and participate in revenue sharing for any customers that increase the value of their service purchases or are "up sold" into higher revenue services once they are transferred to Luminati. BIScience contends that there should be an audit procedure, at least quarterly, in which the number of customers and revenue generated from same, and the called for revenue sharing can be independently verified.

It should also be clarified and understood that BIScience can continue, after its exit from the residential proxy service business, to refer customers and potential customers that come to BIScience's website/webpages to Luminati and if they purchase Luminati proxy services receive revenue share from that customer.

BIScience is opposed to the procedures listed in response to Term 5 which unilaterally demands a process and timing by which BIScience's proxy service customers would be transferred. BIScience also opposes Luminati's new self-serving term that transferred customers do not include Luminati customers. BIScience contends that the final agreement have some

delineation of under what circumstances Luminati will "reject" a BIScience customer.  A vague reference to "legitimate and reasonable grounds" does not accomplish that.  At the very least, BIScience would propose that the only basis for rejection be a legitimate, reasonable and articulated basis to suspect unethical or illegal activity.  If BIScience customers are rejected for any other reason, then BIScience should be able to continue to service them.  The agreement does not contemplate a process by which proxy customers of BIScience are lost because Luminati chooses not to service them.

**9.  Luminati will set up an escrow account of $350,000 from which payments are to be made to BIScience.**

Luminati proposes a series of steps and a timeframe for which the escrow account will be funded and when it will be terminated.  None of which is included in the terms of the agreement.

BIScience is not opposed to Luminati providing an escrow vendor after the arbitration order is filed.  Based on BIScience's proposals above, Luminati should provide this vendor November 1, 2020, and BIScience will provide its account information on or before November 8, 2020.  Luminati should transfer $350,000 into the escrow account by December 1, 2020.

**10.  Luminati agrees not to file a post grant review petition, inter partes review petition or other reexamination petition against BIScience's U.S. Patent No. 10,410,244 ("'244 Patent") and other BIScience patents to the extent that BIScience does not threaten or otherwise asserts its patents against Luminati, its customers, licensees or affiliates, in which case there is no restriction on Luminati's ability to challenge one or more of the BIScience patents.**

Luminati does not make any proposals with respect to this term.

BIScience does not have a proposal with respect to this term.  However, this provision, drafted by Luminati originally, supports BIScience position below that it never agreed to and Luminati never originally proposed that the '244 patent be assigned to Luminati, only that it have a perpetual royalty free license.  Why would Luminati agree to not file reexamination proceedings against a patent that it owned?  This provision is inconsistent with # 12 below.

6

**11.  BI Science agrees not to file a post grant review petition, inter partes review petition or other reexamination petition against the Patents in Suit or any other patents assigned to Luminati.**

Luminati does not make any proposals with respect to this term.

BIScience does not have a proposal with respect to this term.

**12.  BIScience assigns the '244 Patent and related patent applications, continuations, and continuations in part to Luminati.**

Luminati proposes steps for BIScience to identify the patent applications, continuations and continuations in part related to the '244 Patent, and execution of an assignment within 30 days of the arbitration order being filed.

BIScience opposes this term, and requests that "assign" be changed to "license." BIScience never agreed to "assign" the patent to Luminati.  In the email summary regarding the "Summary of Non-Monetary Terms" dated February 12, BIScience had couched that provision (#10 in that document) in terms of a perpetual royalty free license.  BIScience's position on that never changed.  Moreover, there simply can be no reasonable or practical objection from Luminati to having this implemented as a perpetual royalty free license.   For them it is a distinction without a difference.  For BIScience, it forfeits a company asset that was not agreed to. As mentioned above, this is also supported by # 10 above for the reasons stated.

**13.  Luminati agrees to provide its Residential proxy network service to BIScience at a lowered, fixed price of $0.40/GB for up to 50 TB/month for 5 years solely in support of BIScience's Adclarity business, under the strict prohibition against BIScience reselling access to Luminati's residential proxy network.**

Luminati proposes that BIScience open an account with Luminati and identify the account so that Luminati can set it up per the agreed terms.

BIScience does not oppose Luminati's proposal.

7

**Appx1779**

**14. The parties agree to a 3-year litigation stand down, during which neither party shall institute legal action of any kind against the other except as may be necessary to enforce any settlement reached as a result of the proposal.**

Luminati does not make any proposals with respect to this term.

BIScience contends that this provision should run starting after the 27 month revenue sharing term ends.

**15. The parties are to release a mutually agreed press release.**

Luminati proposes that the parties will agree upon a mutual press release with any disputed language to be decided by the arbitrator.

BIScience is not opposed to Luminati's proposal, though BIScience submits that this release should be worked out before the Arbiter's submission to the Court.

**16. Each side will bear its own costs and attorney's fees.**

Apparently, Luminati is notifying you and BIScience of its intent of not complying with this term of the agreement. Luminati, in its proposal, stated that it seeks its costs and fees incurred since February 24, 2020 in the current case and also for responding to countercomplaints in related cases, as well as work allegedly performed in the related IPR proceeding.

BIScience adamantly opposes Luminati's requests for costs and fees. First, Luminati is not entitled to costs and fees for any of the reasons it stated. Second, the agreement specifically states that each side will bear its own costs and fees. There is no exception mentioned. This is especially troublesome in light of the position Luminati has taken—that the mediated settlement agreement is a binding agreement since February 23, 2020.[1]  Luminati cannot have it both ways.

---

[1] Luminati's inconsistency and hypocrisy is again revealed by this position. Luminati has complained of BIScience for not already agreeing to a dismissal of the IPRs, claiming it's called for in the agreement. Yet, so too is, among other items, a dismissal of the '483 action with prejudice which is actually numerically ***set to occur first***. Moreover, Luminati's repeated complaints of not wanting to comply with PTAB deadlines is again nowhere contained in the agreement, nor is anything in the agreement conditioned upon avoiding the PTAB deadlines. And yet notwithstanding that, Luminati still complains of BIScience ***despite that fact*** that BIScience has repeatedly ***joined*** in seeking extensions of Luminati's PTAB deadlines even though ***nothing*** in the agreement requires BIScience to do so.

**Appx1780**

Third, Luminati never raised this issue in its Motion to Enforce Settlement Agreement with the Court or at the hearing of same before the Court and, therefore, Luminati has waived any such request for fees or costs.  And finally, and respectfully, the Arbiter is not permitted to make such a determination on such a request because it would be outside the scope of the arbitration clause agreed to.  "[B]ecause arbitration is a matter of contract, a party cannot be compelled to submit any dispute to arbitration which he has not agreed to submit. *See United Offshore Co. v. Southern Deepwater Pipeline Co.,* 899 F.2d 405, 408 (5th Cir.1990) (citing *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)); *see also Volt Info. Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.,* 489 U.S. 468, 474–75, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (stating that § 4 of the FAA "does not confer a right to compel arbitration of any dispute at anytime; it confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties'] agreement*'") (quoting 9 U.S.C. § 4) (emphasis not in statute)."  *Coffman v. Provost Umphrey Law Firm, LLP*, 161 F. Supp. 2d 720, 724 (E.D. Tex. 2001).  Clearly, Luminati's request for fees or costs does not fall within the narrow scope of the arbitration clause here which states that "the parties agree to submit any disputes regarding the terms and provisions of the settlement to binding arbitration by William Cornelius."

**17.   The parties agree to submit any disputes regarding the terms and provisions of the settlement to binding arbitration by William Cornelius.**

Luminati proposes that the agreement is confidential; the choice of law should be Texas; any arbitration order may be submitted to E.D. Texas in Marshall for enforcement.

BIScience is not opposed to Luminati's proposal.

9

Very truly yours,

*/s/Eric H. Findlay*
Eric H. Findlay

cc:     All counsel of record (via email only)

10



WILSON, ROBERTSON & CORNELIUS, P.C.
ATTORNEYS & COUNSELORS

WILLIAM CORNELIUS
Attorney/Mediator
Direct Line: 903-509-5004
wc@wilsonlawfirm.com

April 23, 2020

**Via Email: efindlay@findlaycraft.com**          **Via Email: mark@themannfirm.com**
**Eric Findlay**                                   **Mark Mann**

Re:     No. 2:18-cv-483-JRG; Luminati Networks Ltd. V. Bi Science Inc. Arbitration.

Dear Counsel:

As you know, there is no dispute that the settlement agreement calls for the withdrawal of the
IPR's in term #4. As Arbitrator, I find that this action should be taken immediately, and before
the issuance of my Final Arbitration Award.

The parties are therefore directed to file, not later than 5:00 PM on Friday, April 24th, the Joint
Motions to Terminate in IPR 2020-00166 and IPR 2020-00167 (Exhibits C & D attached to
Luminati's opening brief) and  the Joint Motions to file Settlement Agreement as Business
Confidential Information (Exhibits E & F attached to Luminati's opening brief).

Sincerely Yours,

William Cornelius

WILLIAM CORNELIUS
ARBITRATOR

WC/

| | |
|---|---|
| **From:** | Tom Dunham <tomd@ruyakcherian.com> |
| **Sent:** | Wednesday, February 26, 2020 4:10 PM |
| **To:** | trials@uspto.gov |
| **Cc:** | Ronald Abramson; Ari J. Jaffess; M. Michael Lewis; Don Livornese |
| **Subject:** | Case IPR2020-00166 and Case IPR2020-00167: Notice of Agreement and Request for POPR Extensions |

Dear Board Paralegals –

I write jointly on behalf of Patent Owner and Petitioner.

Petitioner BI Science (2009) LTD. and Patent Owner Luminati Networks LTD. (collectively, "the Parties") write jointly to inform the Board that the Parties have reached agreement in principle to globally settle their underlying patent disputes, including without limitation the pending related litigation in District Court (E.D. Texas). The parties have so notified the Court, and the Court has stayed the litigation to permit the Parties to finalize settlement and to file appropriate dismissals.

Accordingly, and in anticipation that the Parties will be filing a joint motion to terminate these IPRs, the Parties request that Patent Owner be accorded a 14-day extension of the deadline to file its Patent Owner Preliminary Response ("POPR") in Case IPR2020-00166 and Case IPR2020-0167, which are currently due by March 3, 2020. With the Board's permission, Patent Owner is prepared to file the following motion in Case IPR2020-00166 and Case IPR2020-0167:

  (1) Unopposed Motion by Patent Owner To Extend the Deadline to File POPR to March 17, 2020.

If the Board would like a teleconference, counsel for Petitioner and Patent Owner are both available this week on Thursday or Friday.

Respectfully Submitted,
**Thomas M. Dunham**
Counsel for Patent Owner

RuyakCherian LLP
1700 K Street NW, Suite 810
Washington, DC 20006
O:  (202) 838-1567
M:  (202) 815-8939

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:18-CV-00483-JRG |
| BI SCIENCE, INC., | § | FILED UNDER SEAL |
| Defendant. | § | |
| | § | |

**PLAINTIFF LUMINATI NETWORKS LTD.'S REPLY IN SUPPORT OF OPPOSED**
**MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT AND**
**ARBITRATOR'S AWARD**

As BI Science has refused to sign the Settlement Agreement, Luminati needs a Court order that publicly identifies the Settlement Agreement and states that it is valid and enforceable. While the Court has already publicly acknowledged the validity of the settlement in other actions[1], Luminati needs an order in this case identifying the operative Settlement Agreement and subsequent Final Arbitration Award ("Arbitration Award") as valid and enforceable. Without this and despite the Court's findings in the April 13, 2020 hearing to the contrary, BI Science will continue to challenge their validity. While Plaintiff does not believe this assertion can be made in good faith, it is apparent that without a public Court order, Luminati will be impeded in its ability to enter the Arbitration Award in any jurisdiction for enforcement, preventing for example Luminati from enforcing the Arbitration Award in Israel where Defendant is located.

BI Science clearly intends to paralyze this litigation through its opposition to entry of the Arbitration Award, despite the clear language of the Arbitration Award allowing the parties to enforce this Arbitration Award through this Court. Without filing any motion objecting to the Arbitration Award or appealing the Court's findings affirming the validity of the Settlement Agreement, BI Science disregards the clear direction from the April 13, 2020 hearing and refuses to submit the Arbitration Award for entry of a final order, which is a necessary step for enforcement. At the same time, BI Science has refused to perform any task required by the Arbitration Award since it was issued, including the filing of the joint stipulated injunction, and will clearly continue to obstruct and delay performance as long as it is permitted to do so.

---

[1] Today, the Court issued orders in *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No. 2:19-cv-352 ("BI Science II"), (ECF 37) and *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No. 2:19-cv-397 ("BI Science III") (ECF 20) that included a footnote 1 acknowledging that the Settlement Agreement "has been held binding by the Court, and as a result, the Court ordered the parties to submit to binding arbitration to resolve any remaining issues related to the settlement as provided in the settlement agreement" citing to the under seal April 13, 2020 hearing.

### A. Entry of a Public Order Affirming the Validity of the Settlement Agreement is Necessary to Enforcement of the Arbitration Award

BI Science appears to be implying that Luminati requested a public order disclosing confidential information. Opposition at 1. The opposite is true. Luminati specifically requested an order preserving the confidentiality of the settlement stating "the Court orders the Parties to comply with the terms of the Settlement Agreement and Arbitrator's Award, Exhibits A and B to the Motion, which is found to be a valid and enforceable agreement." ECF 185-4. As Exhibits A and B were filed under seal in their entirety, the only public information would be that the Settlement Agreement and Arbitrator's Award is a "valid and enforceable agreement," which has already been publicly acknowledged by the Court and is the minimal finding necessary to uphold the Final Arbitrator's Award.

As part of BI Science's strategy of obstructing this litigation and all enforcement, BI Science has not agreed to a public order finding the Settlement Agreement valid and enforceable. The lack of such an order impedes Luminati's ability to enforce the Arbitration Award as Luminati has been given every reason to believe that BI Science will continue denying the validity of the Settlement Agreement despite the April 13, 2020 hearing. In addition, to enforce the Arbitration Award in Israel, Luminati anticipates that it may need to file the Arbitration Award with the appropriate Israeli court, and that such filing may require an accompanying Court order finding the underlying agreement valid and enforceable, given that BI Science has refused to sign the agreement. Unless the Court enters an order enforcing the terms of the Settlement Agreement and Arbitration Award, BI Science will not, for example, enter the stipulated injunction in this action against BI Science using, offering to sell, or selling Proxy Services in the United States (Ex. A at ¶ 6, Ex. B at 5), which Luminati could otherwise use to provide notice to BI Science's third party customers.

2

### B. *BI Science Does Not Dispute the Validity of the Settlement Agreement or Final Arbitration Award*

In its Opposition, BI Science does not dispute that the submitted Settlement Agreement (Ex. A) is the operative agreement, found by both the Arbitrator and the Court to be the binding settlement. Motion at 1.  Neither does BI Science dispute or object to the submitted Arbitration Award (Ex. B).  Motion at 1.  Instead, BI Science asserts in its Opposition ("Opposition," ECF 196) that it does not interpret the hearing transcript or any other court order as calling for an order to enforce the settlement agreement and arbitration award.  Opposition at 1.

### C. *The April 13, 2020 Hearing Clearly Ordered the Parties to Present the Arbitration Award to the Court for Entry in a Final Order*

However, the Court's order during the April 13, 2020 hearing was clear and unambiguous:

I'm going to order that both parties immediately work with Mr. Cornelius to arrange for a binding arbitration of any unresolved issues related to this settlement and present either the parties' agreement or Mr. Cornelius's binding arbitration award in those regards to the Court before the end of this month so that the Court can enter a resulting final order enforcing the totality of the settlement.

….

I'm going to invoke the provision designating Mr. Cornelius as an arbiter to act in a binding and non-appealable fashion. And either you all are going to resolve every issue and dot every "I" and cross every "T" by agreement, or Mr. Cornelius is going to dot those "I's" and cross those "T's," and one way or the other, I'm going to be fully informed as to every aspect of your settlement before the end of this month so that I can enter an order enforcing that agreement, or in the alternative, enforcing the terms as spelled out and reached under the binding arbitration provision.

….

…I expect there to be some collective answer to every question that's raised, every point in contention, either by agreement or by arbiter's award before the end of the month so that I can take the totality and reduce it to an enforceable judgment.

April 13, 2020 Hearing Transcript (Ex. D), ECF 183, 43:8-15, 43:25-43:10, 45:15-20.  BI Science's opposition to the entry of a Court Order enforcing the settlement contrasts with the direction from the April 13, 2020 hearing and is obviously intended to further delay this proceeding and continue avoiding performance of the Settlement.

3

### D. The Court Findings Regarding the Settlement Were Confirmed by the Arbitrator, But BI Science Continues to Refuse to Perform While Seeking to Paralyze this Litigation

The Court found that that the parties had reached a resolution and settled the case, that the settlement included a binding arbitration clause, and "the major points were agreed to and a meeting of the minds was reached at the time the Court was informed of the settlement." Ex. D at 42:12-43:7, 43:16-18. The Arbitrator similarly found the agreement signed by Mr. Cornelius on February 24, 2020 to be the operative agreement constituting a binding settlement. Motion at 1; Ex. C at 1.

Having waited a month and a half to contest the validity of the February 23, 2020 settlement for the first time at the April 13, 2020 hearing (Ex. D at 7:20-10:15; 20:22-21:22), and having lost that argument at the hearing, BI Science fully participated in the subsequent arbitration, only to subsequently refuse to perform any of its obligations under the Arbitration Award. Regardless, BI Science has filed no motion objecting to that Arbitration Award or arbitrator Cornelius's finding that the Settlement Agreement is the operative agreement for the binding settlement or any paper seeking to appeal the Court's findings regarding the underlying Settlement Agreement.

Instead, BI Science refused to perform under the Settlement Agreement and Arbitration Award, while engaging in bad faith tactical maneuvers designed to paralyze this proceeding and delay a meritless appeal. Among the other breaches of the Settlement Agreement and Arbitration Award, BI Science refused to (a) join the motions to dismiss the parallel cases of BI Science II, (ECF 19) and BI Science III (ECF 33); (b) identify its Proxy Services customers to Luminati; (c) join the joint stipulation, motion for partial dismissal, and motion for entry of final judgment with regard to claim 108 of the '044 Patent (ECF 194); (d) provide its account information to Luminati; (e) identify its patent applications, continuations, and continuations in part related to '244 Patent to Luminati; and (f) refer (transfer) its Proxy Services customers to Luminati. Ex. B at 5. It is clear

4

**Appx1829**

that the requested order is necessary to bring this issue to a close as BI Science is content to do nothing without it.

### E. The Court Has the Authority to Enter an Order Enforcing the Agreement

The Court has the authority to enter judgment confirming an arbitration award. *Stevens v. Conn's, Inc.*, No. 4:16-CV-309, 2019 U.S. Dist. LEXIS 132265, at *6-7 (E.D. Tex. Aug. 7, 2019). In addition, pursuant to the Arbitration Award, "[a]ny motion to enforce this Arbitration Award shall be filed in the Eastern District of Texas, Marshall Division, and shall be governed by the laws of the state of Texas." Pl. Ex. B at 1. To be clear, in BI Science's opening arbitration brief, BI Science expressly stated that it did not oppose the submission of any arbitration order to the Eastern District of Texas in Marshall for enforcement. Ex. E at 9. However, subsequent to the issuance of the Arbitration Award, BI Science now reverses it position and opposes submitting the Arbitration Award to this Court for enforcement.

### F. BI Science's Continued Obstruction is a Tactic to Deprive Luminati of the Benefit of its Bargain

After almost three months, BI Science has refused to meet the requirements of the February 23, 2020 Settlement Agreement and has continued to refuse to perform any of the tasks after issuance of the April 29, 2020 Arbitration Award. Given Defendant's ongoing breach of the Settlement, Luminati has every reason to believe that BI Science has no intention of performing under the Settlement Agreement and will similarly refuse to shut down its Proxy Services business on May 28, 2020 as required under the Final Arbitration Award. Ex. B at 5-6.

For the reasons provided above, Plaintiff respectfully requests that the Court enter an Order identifying the Settlement Agreement (Exhibit A) and Arbitration Award (Exhibit B) as valid and enforceable and enforcing the Settlement Agreement and Arbitration Award. Luminati also requests that this Court retain jurisdiction over enforcement of the Settlement.

**Appx1830**

Dated: May 21, 2020

Respectfully submitted,

By: */s/ Korula T. Cherian* \_\_
Mark Mann
Mann | Tindel | Thompson
300 West Main
Henderson, TX 75652
mark@themannfirm.com
Office 903-657-8540
Cell 903-658-0401
Marshall Office 903-472-4294
Tyler Office 903-596-0900
Waco Office 254-776-3336

Amadou Kilkenny Diaw
Ronald Wielkopolski
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Attorneys for Plaintiff
Luminati Networks Ltd.

6

**FINDLAY CRAFT**

Attorneys & Counselors
102 North College Avenue, Ste. 900 Tyler, Texas 75702
P: 903.534.1100 • F: 903.534.1137
findlaycraft.com

April 22, 2020

*Sent via email*

Mr. William Cornelius
Wilson, Robertson & Cornelius, P.C.
909 ESE Loop 323, Suite 400,
Tyler, Texas  75701

> Re:   No. 2:18-cv-483-JRG; *Luminati Networks Ltd. v. BIScience Inc*.; In the U.S.
> District Court of the Eastern District of Texas, Marshall Division.

**RESTRICTED- HIGHLY CONFIDENTIAL**

**BIScience's Response to Luminati's Proposals on Settlement Terms**

Mr. Cornelius,

The following is BIScience's response to settlement terms proposed by Luminati as compared to the mediated settlement agreement document (hereinafter referred to as "agreement") term by term (numbers 1-17).  BIScience incorporates its previous correspondence dated April 20, 2020 into this Response, as if fully set forth herein.  Respectfully, BIScience also reserves its rights to dispute the rulings and orders entered by the Court and this Arbiter, and by submitting this response in no way does BIScience waive any of its rights, including but not limited to its rights to appeal.  Subject to this statement, BIScience responds as follows:

**1. Both Parties dismiss all claims in Case No 2:18-cv-483 with prejudice except for the claim of invalidity with regard to claim 108 of  U.S. Patent No. 9,241,044 ("'044 Patent").**
Luminati's proposal is that the parties should file a joint motion to dismiss within 7 days of the filing of the final arbitration order with the Court.

BIScience is not opposed to the timing of the joint motion, though contends it should run from the date of the Court's written adoption of the final arbitration order.

**2. The Parties shall move for entry of final judgment with regard to claim 108 of the '044 Patent.**

Luminati's proposal on timing appears to be in conjunction with the joint motion to dismiss, but it is not entirely clear.

BIScience is not opposed to the timing on moving for entry of final judgment in conjunction with the joint motion to dismiss

**3. Luminati dismisses Case No. 2:19-cv-352 and Case No 2:19-cv-397 without prejudice.**

Luminati's proposal is that the parties file a joint motion to dismiss within 3 days of the filing of the final arbitration order with the Court.

BIScience is not opposed to the timing of the joint motion, but consistent with #1 above, believes it should run from the date of the Court's written adoption of the final arbitration order.

**4. BIScience withdraws its *inter partes* review petitions (IPR2020-166 and IPR2020-167) against certain Patents-in-Suit.**

Luminati's proposal is that the parties should file a joint motion to terminate the IPRs during the arbitration period or one day following the arbitration order.

BIScience is not opposed to the timing of the joint motion, but believes it should run from the date of the Court's written adoption of the final arbitration order. Moreover, it should be noted that the parties have jointly filed an additional request for an extension of the PTAB deadline until May 15, 2020.

**5. BIScience leaves the Proxy Services business world-wide permanently.**
Luminati has a series of steps and "tasks" for BIScience to comply with in order to leave the proxy service business. None of which are part of any agreement and, in fact, the agreement

2

**Appx1836**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 2:18-cv-483-JRG |
| | § | |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| BISCIENCE INC. | § | FILED UNDER SEAL |
| | § | |
| Defendant. | § | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ENFORCEMENT OF
SETTLEMENT AGREEMENT AND ARBITRATOR'S AWARD**

Defendant BIScience (2009) Ltd. (which Plaintiff alleges is also known as BIScience Inc.) (hereinafter referred to as "BIScience") hereby files this response in opposition to Plaintiff Luminati Networks Ltd.'s ("Luminati") Motion to Enforce Settlement Agreement and Arbitrator's Award.

On April 29, Luminati filed a previous Motion for Enforcement of Settlement Agreement and Arbitrator's Award (Dkt. No. 185) requesting that the Court enter an Order "enforcing the Settlement Agreement" and "Arbitration Award." Luminati continues to seek a public court order in its latest Motion to Enforce. Luminati continues to allege that the Court wants an order from the parties. However, neither the mediator nor BIScience interpreted that from the hearing transcript or any other court order in this matter. For that reason, BIScience opposed Luminati's Motion for Enforcement of Settlement Agreement and Arbitrator's Award as stated in its Response.

Here, in Luminati's Motion to Enforce, Luminati requests that the Court issue the following:

• An injunction against BI Science from using, offering to sell, or selling residential proxy and data center proxy services, including under the "Geosurf" brand, in the United States or importing residential proxy and data center proxy services, including under the "Geosurf" brand, into the United States to the extent that BI Science is not licensed by Luminati to do so;

• Partial dismissal of all claims and counterclaims with prejudice, except for the counterclaim of invalidity of claim 108 of Patent 9,241,044; and

**Appx1846**

• Final judgment on the counterclaim of invalidity of claim 108 of U.S. Patent 9,241,044 (the "'044 Patent"), which the Court found to be indefinite pursuant to the Court's claim construction order (Dkt. 130).

BIScience does not oppose the Court dismissing all claims and counterclaims with prejudice, except for claim 108 of the '044 Patent. As stated in previous filings, BIScience is not opposed to an appealable order being entered by this Court. BIScience intends to appeal this Honorable Court's ruling from the Bench during the April 13, 2020 hearing granting Luminati's Motion to Enforce Settlement Agreement (Dkt. 170). In light of that, BIScience would request that an injunction not be entered because of the impending appeal which BIScience has a right to pursue.

For these reasons, BIScience respectfully requests that this Honorable Court deny Plaintiff Luminati Networks Ltd.'s Motion to Enforce Settlement Agreement and Arbitrator's Award.


Dated:  May 22, 2020                    Respectfully submitted,


                              By:   */s/ Eric H. Findlay*
                                    Eric H. Findlay (TX Bar No. 00789886)
                                    Brian Craft (TX Bar No. 04972020)
                                    Debby Gunter (TX Bar No. 24012752)
                                    FINDLAY CRAFT, P.C.
                                    102 North College Avenue, Suite 900
                                    Tyler, Texas 75702
                                    Tel: (903) 534-1100
                                    Fax: (903) 534-1137
                                    Email: efindlay@findlaycraft.com
                                    Email: bcraft@findlaycraft.com
                                    Email: dgunter@findlaycraft.com


                                    ***ATTORNEYS FOR DEFENDANT
                                    BISCIENCE***


3

**Appx1847**

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that this document is being filed under seal pursuant to the Protective Order

entered in this matter.

*/s/ Eric H. Findlay*
Eric H. Findlay

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2020, I electronically filed the foregoing document with

the Clerk of the Court using the CM/ECF system.  This document will be served on Plaintiff in

accordance with the Federal Rules of Civil Procedure.

*/s/  Eric H. Findlay*
Eric H. Findlay

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:18-CV-00483-JRG |
| | § | FILED UNDER SEAL |
| BI SCIENCE, INC., | § | |
| Defendant. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF LUMINATI NETWORKS LTD.'S
<u>MOTION FOR SANCTIONS</u>**

Since entering the Settlement Agreement on February 23, 2020, BI Science steadfastly refused to perform under the agreement or even acknowledge its validity under the guise that BI Science needed a more formal written agreement. BI Science merely intended to buy time and leverage its performance to renegotiate the deal. Despite the Court and Arbitrator finding the settlement binding and rejecting BI Science's meritless force majeure argument and requests for delay, BI Science has refused to perform any of the required tasks of the Arbitration Award to have BI Science leave the Proxy Business, stop its infringement of Luminati's patents, and transfer its customers to Luminati for a share of revenue. It is clear that BI Science intends to obtain through obstruction what it gave up in the settlement. After three months of continuing delay, unnecessarily driving up Luminati's litigation costs and depriving Luminati of the benefit of its bargain, BI Science cannot be said to have operated in good faith and should be sanctioned.

### A. Luminati's Motion for Sanctions is Not Limited to Three Specific Bad Acts

BI Science's Opposition mischaracterizes the Motion as limited to three specific post-settlement acts. Oppn. at 3. This is incorrect. The Motion requested sanctions against BI Science, including Luminati's attorneys' fees, incurred in response to BI Science's post-settlement activity as well as Luminati's fees going forward as a result of BI Science's ongoing breach of every obligation it has under the Settlement Agreement and Arbitration Award, as well as any other relief deemed appropriate by the Court. Motion at 1, 13. BI Science has not objected to the Arbitration Award or the Arbitrator's finding that the Settlement Agreement is the operative agreement.

Since Luminati filed its Motion, BI Science has refused to perform any of the requirements under the Settlement Agreement and Arbitration Award. Meanwhile, it continues to engage in bad faith tactical maneuvers designed to suspend this proceeding. For example, among the other breaches of the Settlement Agreement and Arbitration Award since the filing of the Motion, BI Science refused to (a) join the motions to dismiss the parallel cases of *Luminati Networks Ltd. v.*

*BI Science (2009) Ltd.*, Case No. 2:19-cv-352 ("BI Science II"), (ECF 19) and *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, Case No. 2:19-cv-397 ("BI Science III") (ECF 33); (b) identify its Proxy Services customers to Luminati; (c) join the joint stipulation, motion for partial dismissal, and motion for entry of final judgment with regard to claim 108 of the '044 Patent (ECF 194);  (d) provide its account information to Luminati; (e) identify its patent applications, continuations, and continuations in part related to '244 Patent to Luminati; and (f) transfer its Proxy Services customers to Luminati. Ex. B at 5.  Given its continuing breach of the Settlement Agreement (Ex. A), Luminati anticipates that BI Science will similarly refuse to leave the Proxy Business (Ex. A at 5) as it is required to do by May 27, 2020 (Ex. G, task 11 at 5-6).

### B. Luminati Did Not Waive Any Right to Sanctions Regarding BI Science's Post-Settlement Activities Including Its Current Ongoing Breach of the Settlement Agreement and Arbitration Award

Luminati did not waive any right to seek sanctions.  Oppn. at 2. The Motion to Enforce the Settlement Agreement that resulted in the April 13, 2020 hearing was necessary to find the Settlement Agreement valid and enforceable as a first step to seeking arbitration on the disputes. Then Luminati sought sanctions in the arbitration, but the arbitrator ruled that sanctions are outside his scope of authority, requiring a motion to this Court.  Motion at 12-13, Ex. G at 1.

### C. BI Science Provided No Notice that it Challenged the Validity of the Settlement Agreement Before the April 13, 2020 Hearing and Cannot Avoid Sanctions by Asserting that Luminati Should Have Anticipated It Would Renege

BI Science's argument regarding surprise merely confirms its bad faith and justifies sanctions.  A party cannot avoid sanctions by arguing that despite entering a settlement agreement, Luminati should simply have accepted it was refusing to honor the agreement.  That is no excuse.

Beyond that, in fact BI Science concedes that it challenged the validity of the Settlement Agreement for the first time during the April 13, 2020 hearing.  Motion at 6; Ex. K at 8:21-9:4,

2

9:7-10:15.  The Court recognized that BI Science "dance[d] around it" in the briefing and that the single relied upon footnote in BI Science's briefing was "a long way from saying there is no agreement," (ECF 183 at 34:15-22), yet BI Science now asserts Luminati should not have been surprised. Oppn. at 1.  Luminati's surprise is irrelevant, but also, BI Science had accepted the mediator's proposal and joined the motion to stay and notice of settlement on February 23, 2020. Ex. C.  BI Science's requests for a more formal agreement did not provide notice of a plan to renege. *Id*. at 1, 5.[1]

As recognized by the Court during the April 13, 2020 hearing "you can't really have it both ways.  You can't tell me the case is settled, and then tell me, well, the case is not settled because these other terms that we had not reduced to writing when I signed off on the joint notice of settlement have yet to be worked out."  Ex. K at 24:18-22.  However, that is exactly what BI Science has sought to do.  BI Science entered the Settlement Agreement to halt the litigation, only to renege on that agreement.  Even worse, it did so without disclosing its position to further obstruct and delay the proceedings.  BI Science cannot argue that it acted in good faith.

### D.  COVID-19 Does Not Excuse BI Science Reneging on the Settlement Agreement

Without any case law support, BI Science continues to assert that COVID-19 justified all its post-settlement actions delaying performance of the Settlement, before finally challenging the validity of the Settlement Agreement at the April 13, 2020 hearing.  The Settlement Agreement included no provision for force majeure or other term making BI Science's obligations to perform

---

[1] BI Science places great weight on the February 26, 2020 joint e-mail to the PTAB requesting an extension to argue that Luminati should not have been surprised by BI Science's subsequent reneging on the agreement. Oppn. at 4. However, BI Science does not disclose that it refused to join the email request for an extension unless it was altered to include the language "in principle" mirroring the standard language from the motion for stay and notice of settlement from this case (ECF 166).

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| | § | Case No. 2:18-CV-00483-JRG |
| v. | § | FILED UNDER SEAL |
| BI SCIENCE, INC., | § | |
| Defendant. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF LUMINATI NETWORKS LTD.'S**
**MOTION TO ENFORCE SETTLEMENT AGREEMENT AND ARBITRATION**
**AWARD**

In its opposition, BI Science agrees to most of the requested relief in Luminati's motion, including the dismissal and entry of judgment on '044 patent claim 108. The only point of contention is Luminati's request that the Court enter the injunction that BI Science expressly agreed to as part of the settlement agreement this Court has already found was entered by the parties. Moreover, BI Science does not dispute that the agreed upon injunction was part of the settlement agreement. Instead, its sole ground of opposition is that it wants to appeal the underlying order finding an enforceable settlement. But if the Court dismissed the case without the injunction, that would violate the terms of the agreement the Court found exists. The logical course of action is to grant Luminati's relief, at which point there is a final judgment on all issues. If BI Science chooses to appeal that judgment in its entirety, it can do so. Other than threating appeal, BI Science has pursued no other recognized course of action. BI Science has given no reason whatsoever for the Court to deny Luminati the request to follow the terms of the settlement agreement in its entirety.

*A.  BI Science Does Not Dispute that the Injunction is Part of the Settlement Agreement*

BI Science does not dispute that the Settlement Agreement includes term 6: "**BI Science enters a stipulated injunction** that BI Science will not use, offer to sell, or sell, Proxy Services in the United States or import Proxy Services into the United States to the extent it is not licensed by Luminati to do so." Ex. A at 6 (emphasis added). During Arbitration, BI Science asserted "**BI Science is not opposed to entering a stipulated injunction, provided that it tracks the language of this term and the agreement**, and makes clear that BIScience can utilize proxy services for its own internal non-commercial use. Bi Science agrees under these terms it will no longer sell proxy services." Ex. E at 4 (emphasis added). Ultimately the arbitrator confirmed that the term as written stands and that BI Science must stipulate to the injunction. Ex. B at 2.

*B.  BI Science's Request to Deny an Order Enforcing the Terms of the Settlement Agreement Would Create the Perverse Outcome of Placing the Burden on Luminati to Appeal*

This Court found that that the parties had reached a resolution and settled the case, that the settlement included a binding arbitration clause, and "the major points were agreed to and a meeting of the minds was reached at the time the Court was informed of the settlement." Ex. C at 42:12-43:7, 43:16-18.  The Arbitrator similarly found the 17-point agreement signed by Mr. Cornelius on February 24, 2020 to be the operative agreement constituting a binding settlement. Motion at 2; Ex. D at 1.  Regardless, and despite its claims to desire an appeal, BI Science has consistently opposed Luminati's motions to enter an order enforcing the Arbitration Award. Oppn. at 2; *see also* ECF 196.  In other words, BI Science has taken the contrary positions of both resisting the entry of an order entering the Settlement Agreement and Arbitration Award in this case, while demanding its right to pursue appeal.  Oppn. at 2-3.  BI Science cannot take these contrary positions in good faith and has clearly been attempting to paralyze the proceedings to further its delay in performance to the detriment of Luminati.

Now, BI Science claims that it is not opposed to an appealable order from this Court.  Oppn. at 3.  Rather, BI Science claims it intends to appeal the Court's ruling during the April 13, 2020 hearing, despite having done nothing so far to do so.  While BI Science does not oppose enforcement of the Settlement Agreement to the extent it dismisses the case and enters final judgment of invalidity against Luminati's patent claim, BI Science requests that the order not include the injunction, which is an express term of both the Settlement Agreement and Arbitration Award.  Oppn. at 3.  As addressed above, during arbitration BI Science expressly asked that the injunction track the language of the Settlement Agreement, which it does.  Now, BI Science

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:19-CV-00352-JRG |
| | § | |
| BI SCIENCE (2009) LTD., | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Before the Court is Plaintiff Luminati Networks Ltd.'s ("Luminati") Opposed Motion for Dismissal (the "Motion"). (Dkt. No. 22.) In the Motion, Luminati requests dismissal of Defendant BI Science (2009) Ltd.'s ("BI Science") counterclaims with prejudice and Luminati's claims without prejudice. (*Id.* at 2.) Additionally, Luminati requests attorneys' fees and all other relief the Court deems appropriate. (*Id.*) Luminati contends that dismissal is appropriate in light of a settlement agreement reached between the parties in *Luminati Networks Ltd. v. BI Science Inc.*, No. 2:18-cv-483 (E.D. Tex.).[1] (*Id.*) BI Science has not filed a response to the Motion and has represented that it does not oppose an appealable order being entered.[2] (*See* Dkt. No. 30.)

Accordingly, having considered the Motion and its unopposed nature, the Court is of the opinion that the Motion should be **GRANTED-IN-PART** and **DENIED-IN-PART**. It is therefore **ORDERED** that all claims and causes of action asserted by Luminati against BI Science in the above-captioned case are **DISMISSED WITHOUT PREJUDICE**. It is further **ORDERED** that

---

[1] Which settlement agreement in Case No. 2:18-cv-483 has been held binding by the Court, and as a result, the Court ordered the parties to submit to binding arbitration to resolve any remaining issues related to the settlement as provided for by the settlement agreement. (No. 2:18-cv-483, Dkt. No. 183 at 42:25–43:15.)

[2] The Motion was filed on May 1, 2020 and any response to the same was due May 15, 2020. L.R. CV-7(e). Due to BI Science's failure to respond and in view of BI Science's Notice Regarding Plaintiff's Motion for Dismissal (Dkt. No. 30), the Court now properly treats the Motion as unopposed. *See* L.R. CV-7(d).

all claims and causes of action asserted by BI Science against Luminati in the above-captioned case are **DISMISSED WITH PREJUDICE**. However, Luminati's request for attorneys' fees in this action is **DENIED**. All other pending requests for relief not expressly granted are **DENIED AS MOOT** and the Clerk of the Court is directed to **CLOSE** this case.

**So ORDERED and SIGNED this 21st day of May, 2020.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:18-CV-00483-JRG |
| BI SCIENCE, INC., | § | |
| Defendant. | § | |

**NOTICE OF APPEAL**

Defendant BI Science (2009) Ltd. ("BI Science") (which plaintiff has alleged is also known as BI Science, Inc.) hereby respectfully gives notice that it appeals to the United States Court of Appeals for the Federal Circuit from the Order and Final Judgment entered in this action on July 2, 2020 (the "Final Judgment"), and from any ruling or order adverse to BI Science that is contained in, is subsumed by, or preceded the Final Judgment, including but not limited to: (1)  the portion of the Memorandum Opinion and Order dated May 13, 2019 (Dkt. No. 82) that denied in part BI Science's motion to dismiss and, in the alternative, transfer venue; and (2) the Court's April 13, 2020 ruling on Plaintiff's Motion to Enforce Settlement Agreement (Dkt. No. 183).

Dated: July 29, 2020

Respectfully submitted,

By:   /s/ *J.C. Rozendaal*                
J.C. Rozendaal
(admitted *pro hac vice*)
Sterne Kessler Goldstein & Fox P.L.L.C.
110 New York Avenue NW, Suite 600
Washington, D.C. 20005
Phone: (202) 772-8747
Fax: (202) 371-2540
jcrozendaal@sternekessler.com

Michael A. Charish (admitted *pro hac vice*)
Charish Law Group P.C.
347 Fifth Avenue, Suite 1402
New York, New York 10016
Phone:  (646) 328-0183
michael@charish.law

*Attorneys for Defendant BI Science (2009) Ltd.*

**Appx2059**

### CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 29th day of July 2020, with a copy of this document via the Court's CM/ECF system.

 /s/ *J.C. Rozendaal*
J.C. Rozendaal

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:18-CV-00483-JRG |
| | § | FILED UNDER SEAL |
| BI SCIENCE, INC., | § | |
| | § | |
| Defendant. | § | |

**DECLARATION OF KFIR MOYAL IN SUPPORT OF
BI SCIENCE'S STAY MOTION AND OPPOSITION TO
LUMINATI'S MOTION TO MAKE THE FINAL JUDGMENT PUBLIC**

1.      I am a Co-Founder and the CEO of defendant BI Science (2009) Ltd. ("BI Science"). I live and work in Tel Aviv, Israel, where BI Science is headquartered.

2.      I submit this declaration in support of: (a) BI Science's motion to stay enforcement of this Court's July 2, 2020 Order and Final Judgment (the "Final Judgment"); and (b) BI Science's opposition to the motion of plaintiff Luminati Networks Ltd. ("Luminati") to make the Final Judgment public.

3.      Unless otherwise indicated, I have personal knowledge of the facts contained in this declaration. I am over the age of 18 years and I am competent to testify to the truth of the facts herein if called upon to do so.

4.      The Final Judgment does not reflect the agreement BI Science was prepared to make during the parties' settlement negotiations in this case.

5.      For example, BI Science never would have agreed, and did not agree, to assign its U.S. Patent No. 10,410,244 ("the '244 patent") to Luminati. The '244 patent is the core of BI Science's advertising-intelligence business and is not a proxy-service patent.

1

**Appx2078**

6.      My fellow BI Science co-founder Assaf Toval and I are the inventors on the '244 patent.  Beginning in 2010, Assaf and I dedicated two years to extensive research to lay the groundwork for the patented technology.  We then developed the technology with a team of data scientists and developers.  I would estimate that, collectively, our team invested hundreds of thousands of man-hours in researching and developing the technology.

7.      BI Science applied for the '244 patent in November 2013 and prosecuted the patent for nearly six years until it was finally granted in September 2019.  Throughout that period, Assaf and I, and the BI Science team, have continued developing the '244-patent-technology.  The '244 patent and the underlying technology are the crown jewels of our business.

8.      BI Science was not willing to assign the '244 patent to our competitor and litigation adversary Luminati.  BI Science's counsel communicated that message to mediator William Cornelius and to Luminati's counsel.  Instead, as part of a business arrangement and in the context of negotiating a global settlement of the disputes between the parties, BI Science was willing to grant Luminati a license to use the '244 patent — if Luminati agreed not to challenge the '244 and other BI Science patents.  The mistaken reference to an assignment of BI Science's '244 patent to Luminati in the mediator's 17-point settlement proposal was one of the reasons why BI Science declined to sign the proposal.

9.      There were other reasons why BI Science did not intend to agree to the settlement proposal as a binding settlement agreement but rather as a framework for settlement that we understood was subject to a definitive settlement agreement, which required further negotiation.

10.      For example, although the mediator's proposal stated that Luminati would pay 37% of gross revenues generated by any proxy-service customer transferred from BI Science,

2

**Appx2079**

and would not arbitrarily reject customers, BI Science remained concerned that Luminati would manipulate the process and find ways to lower the revenues it paid to BI Science.

11.     As a result, BI Science was not willing to agree to a settlement in which Luminati would have sole discretion to reject a customer — without committing to any criteria for rejecting customers and without subjecting its revenue-sharing reports to audits by a third-party accounting or financial firm.  BI Science continued negotiating for those terms after the February 23, 2020 date of the mediator's proposal.  Relatedly, the parties continued to disagree whether former BI Science customers, or joint customers of BI Science and Luminati, would be counted for purposes of revenue sharing.

12.     If the mediator's proposal and the arbitration award, which are part of the Final Judgment, were enforced against BI Science (while this case is on appeal), I believe that the effects on our company would be devastating.

13.     If BI Science were forced to shut down its GeoSurf proxy-service business, I expect that the damage would be irreversible and BI Science would lose most (if not all) of its proxy-service customers permanently.  It takes an average of 3-6 months to get a typical new customer working at full capacity with the solutions that we offer, and longer for customers with more customized, or greater, needs.  Customers who depend on our proxy services need to trust them.  It is not reasonable to expect that if BI Science shuts down its proxy services and refers its customers to Luminati, customers will later return to BI Science if BI Science were to prevail on appeal and reinitiate services.

14.     Further, if BI Science is forced to shut down its GeoSurf operations and assign the '244 Patent to Luminati, I expect that we would be forced to initially terminate approximately 30 employees (including engineers, technicians, marketers, and sales associates), or about two-

3

**Appx2080**

thirds of our workforce. I also expect that BI Science would be forced to reduce the salaries of our remaining employees.

15. Even with headcount and salary reductions, I do not expect that BI Science would generate enough revenue to cover our infrastructure and other expenses. The company would need to raise capital to survive.

16. But if BI Science lost its GeoSurf business and '244 patent to Luminati, the company's value, and its attractiveness as an investment, would plummet. To make matters worse, my understanding is that the general fundraising environment during the pandemic is exceptionally challenging.

17. In this case, I previously submitted a declaration dated March 25, 2020. In paragraph 4 of that declaration, I stated that if BI Science "were to exit the proxy service business now, I believe BI Science could no longer continue as an ongoing entity and would go out of business." Unfortunately, I believe that that statement remains true as of today.

18. In paragraph 8 of the March 25 declaration, I stated that allowing BI Science until January 2021 to exit the proxy-service business "would allow BI Science the needed time for our financial situation to recover to a more stable financial situation, in which we can remain a viable company." Unfortunately, now that the world is over four months deeper into the pandemic, if the Final Judgment is enforced, I do not believe it is likely that BI Science will succeed in raising capital and remaining a viable company, even if an exit from the proxy-service business were delayed until January 2021 or beyond.

19. Regardless of whether and when the Final Judgment is enforced against BI Science, I believe that the mere public disclosure of the judgment would cause irreversible reputational and competitive harm to BI Science. I expect BI Science would be severely harmed

4

**Appx2081**

by public disclosure of a court order to shut down the GeoSurf business and transfer our key patent, and by the enforcement campaign that I understand Luminati is threatening to wage against BI Science's customers and partners. In addition, the documents incorporated in the Final Judgment contain commercially sensitive terms, including confidential price terms, the disclosure of which might harm BI Science's business interests.

20.    Finally, if the Final Judgment is enforced, I believe there would be adverse effects for at least some of BI Science's customers. BI Science's customers include businesses that rely on our services as part of their day-to-day operations. Those customers likely would suffer an interruption in proxy services, as they would need to integrate the proxy-service systems of Luminati or another company, a process that can take a few weeks.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 7, 2020

_____

Kfir Moyal

5

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | §<br>§ | |
| Plaintiff, | §<br>§ | Case No. 2:18-CV-00483-JRG |
| v. | §<br>§ | FILED UNDER SEAL |
| BI SCIENCE, INC., | §<br>§ | |
| Defendant. | § | |

**DEFENDANT BI SCIENCE'S OPPOSED MOTION
<u>TO STAY ENFORCEMENT OF THE FINAL JUDGMENT</u>**

Michael A. Charish
(admitted *pro hac vice*)
Charish Law Group P.C.
347 Fifth Avenue, Suite 1402
New York, New York 10016
Phone: (646) 328-0183
michael@charish.law

J.C. Rozendaal
(admitted *pro hac vice*)
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue NW, Suite 600
Washington, D.C. 20005
Phone: (202) 772-8747
jcrozendaal@sternekessler.com

*Attorneys for Defendant
BI Science (2009) Ltd.*

August 12, 2020

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ..........................................................................................................2

    I.      STAYS PENDING APPEAL SERVE IMPORTANT PUBLIC-POLICY GOALS...........................................................................................2

    II.    ALL FOUR FACTORS OF THE STAY CALCULUS FAVOR GRANTING A STAY PENDING APPEAL IN THIS CASE. ..............................3

           A.      BI SCIENCE'S APPEAL IS LIKELY TO SUCCEED.............................3

                    i.      BI Science will argue that it is not subject to personal jurisdiction in Texas. ...........................................3

                    ii.     BI Science will argue that the settlement proposal is not enforceable. ................................................................4

                              a.     Under Texas Rule 11, an unsigned settlement agreement is unenforceable. ...............................4

                              b.     Even under federal law, there is a genuine dispute whether the Mediator's Proposal is enforceable. ..........................................................6

           B.      BI SCIENCE WILL SUFFER SEVERE AND IRREPARABLE HARM ABSENT A STAY. .........................................11

           C.      A TEMPORARY STAY WILL NOT HARM LUMINATI.....................13

           D.      A STAY PENDING APPEAL SERVES THE PUBLIC INTEREST.........................................................................................14

CONCLUSION......................................................................................................14

of the Final Judgment. Accordingly, the Court should maintain the status quo pending appeal and stay enforcement of the Final Judgment.

## ARGUMENT

**I.    STAYS PENDING APPEAL SERVE IMPORTANT PUBLIC-POLICY GOALS.**

As the Supreme Court has explained, staying judgments pending appeal not only maintains the status quo for the benefit of parties threatened with irreparable harm but also "ensur[es] that appellate courts can responsibly fulfill their role in the judicial process." *See Nken v. Holder*, 556 U.S. 418, 427 (2009). "A reviewing court must bring considered judgment to bear on the matter before it, but that cannot always be done quickly enough to afford relief to the party aggrieved by the order under review." *Id.*

As the Final Judgment does not require BI Science to pay money to Luminati but rather prohibits or mandates certain actions by BI Science, Federal Rule of Civil Procedure 62(d) governs this stay motion. Rule 62(d) provides that "[w]hile an appeal is pending from … [a] final judgment that grants … an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Whether to grant a Rule 62(d) stay is an issue committed to this Court's discretion. *See, e.g.*, *National Instruments Corp. v. Mathworks, Inc.*, 2003 WL 24049230, at *6 (E.D. Tex. 2003), *aff'd*, 164 Fed. Appx. 997 (Fed. Cir. 2006).

In deciding whether to grant a stay pending appeal, the Court should consider four factors: (1) whether BI Science has made a strong showing that it is likely to succeed on the merits; (2) whether BI Science will be irreparably injured absent a stay; (3) whether issuing the stay will substantially injure Luminati; and (4) the public interest. *See, e.g., Nken,* 556 U.S. at 426; *Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). Particularly where the applicant faces substantial harm absent a stay, the other factors "need not

2

**Appx2089**

be given equal weight" and the applicant need only show a "substantial case on the merits" under the first factor. *See Standard Havens*, 897 F.2d at 512-13; *Allergan Sales Inc. v. Pharmacia & Upjohn Inc.*, 1997 WL 377983, at *1 (Fed. Cir. 1997) (granting stay pending appeal).

## II.     ALL FOUR FACTORS OF THE STAY CALCULUS FAVOR GRANTING A STAY PENDING APPEAL IN THIS CASE.

### A.     BI Science's Appeal Is Likely to Succeed.

BI Science intends to present at least these two issues on appeal:  (1) Whether BI Science is subject to personal jurisdiction in Texas; and (2) Whether the Mediator's Proposal is a binding and enforceable settlement agreement.  BI Science respectfully submits that, as shown below, it is likely to prevail on these issues.

### i.     BI Science will argue that it is not subject to personal jurisdiction in Texas.

BI Science intends to argue in the Federal Circuit that it was not subject to specific personal jurisdiction in Texas in connection with Luminati's patent claims.  BI Science has never been to Texas; has no bank accounts, property, or employees in Texas; is not registered to do business in Texas; and has never targeted Texas for advertising.  *See* Dkt. No. 36 ¶ 8 (March 4, 2019 Moyal Declaration).  BI Science's software allows people around the world to share their internet bandwidth as "proxy servers" to access websites from various locations worldwide.

This Court exercised specific jurisdiction over BI Science because BI Science had 56 Texas customers accessing proxy servers outside of Texas (representing less than 1% of BI Science's revenue), and because, of the myriad proxy servers accessed by BI Science's non-Texas customers, some happen to be shared by Texans.  *See Luminati Networks Ltd. v. BIScience Inc.*, 2019 WL 2084426, at *4-5 (E.D. Tex. May 13, 2019).  Taken to its logical conclusion, the Court's ruling might allow a company that owns internet software that can be downloaded and

**Appx2090**

used by anyone in the world with a computer to be subject to personal jurisdiction anywhere in the United States, even if the company has *de minimis* contacts with a particular state.

BI Science respectfully submits that there is a reasonable likelihood that the Court of Appeals will view the issue differently, as the quality and quantity of BI Science's contacts with Texas are similar to contacts that other courts have found to be legally insufficient for personal jurisdiction. In *Pervasive Software Inc. v. Lexware GmbH*, for example, the Fifth Circuit concluded there was no specific jurisdiction over a foreign defendant with only "sparse contacts" with Texas: "fifteen internet website sales of its products to twelve Texas billing addresses" and "tax and financial software" that was internet-accessible but not purposely directed toward Texas. *See* 688 F.3d 214, 227 (5th Cir. 2012); *see also*, *e.g.*, *Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*, 2013 WL 4061259, at *4 (E.D. Va. 2013) ("A company does not 'consciously' or 'deliberately' target a forum if a user unilaterally downloads and uses its software within that forum."); *Tadayon v. Saucon Techs., Inc.*, 2011 WL 1770172, at *4 (D. Md. 2011) (no specific jurisdiction because the transmission of text messages using an alleged patent-infringing wireless internet system did "not result from the 'purposeful activity' of the foreign Defendants, but rather the deliberate intention of the foreign Defendants' subscribers"). So too, the fact that a number of Texans chose to participate in BI Science's global proxy network, and generated some modest revenue for BI Science, does not create the "minimum contacts" necessary to subject BI Science to personal jurisdiction in Texas.

### ii.    BI Science will argue that the settlement proposal is not enforceable.

#### a.    Under Texas Rule 11, an unsigned settlement agreement is unenforceable.

On appeal, BI Science will argue that Texas law governs the issue of whether the parties entered into a settlement agreement, and Texas law dictates unequivocally that the Mediator's Proposal is *not* binding because BI Science declined to sign it. The Federal Circuit will look to

Fifth Circuit law regarding the settlement-agreement issue and — as the Federal Circuit has held

in a patent case — "in deciding whether there is a valid agreement between the parties, the Fifth

Circuit applies state law." *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1371-72

(Fed. Cir. 2008) (citing *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.

2002), and holding that there was no binding arbitration agreement between the parties).

State law in this case is Texas law, which includes Texas Rule of Civil Procedure 11

("Texas Rule 11").  Under Texas Rule 11, settlement agreements that are not signed by both

parties — like the Mediator's Proposal — are not valid:  "*no agreement* between attorneys or

parties *touching any suit pending will be enforced unless it be* in writing, *signed* and filed with

the papers as part of the record, or unless it be made in open court and entered of record."  Tex.

R. Civ. P. 11.[1]

Texas Rule 11 is a substantive rule of Texas contract law.  *See*, *e.g.*, *Oliver Street*

*Dermatology, LLC v. Creger*, 2018 WL 2452975, at *2 (W.D. Tex. 2018) (citing *Condit Chem.*

*& Grain Co. v. Helena Chem. Corp.*, 789 F.2d 1101, 1102 (5th Cir. 1986)).  Under Texas Rule

11, a written settlement agreement may be contained in multiple documents, and those

documents may be e-mails, but the agreement still must be signed.  *See*, *e.g.*, *Cunningham v.*

*Zurich Am. Ins. Co.*, 352 S.W.3d 519, 530 (Tex. App. – Fort Worth 2011) (holding no agreement

under Texas Rule 11 because defense counsel's settlement e-mail was not signed).  Because the

Mediator's Proposal was not signed by both parties, and BI Science's counsel never sent a signed

e-mail manifesting BI Science's assent to be bound by the Proposal as a settlement agreement,

"[Texas] Rule 11 prohibits [the Proposal] from being enforced."  *See Songer v. Archer*, 23

S.W.3d 139, 141 (Tex. App. – Texarkana 2000).

---

[1]       Unless otherwise indicated, all italic and bold emphasis in this brief has been added.

Although there are cases suggesting that *federal* law should control the settlement-agreement issue on appeal, the better reading of Fifth Circuit case law demands that *state* law control.  Thus, some courts have understood the Fifth Circuit to hold that, while state contract law applies in diversity cases, federal contract law applies in federal-question cases.  *See*, *e.g.*, *Moctezuma v. Islas,* 2019 WL 8501013, at *3 (E.D. Tex. Dec. 28, 2019) (Nowak, M.J.) (declining to apply Texas Rule 11 in Title VII case), *rejected in part on other grounds*, 2020 WL 548681, at *2 (E.D. Tex. Feb. 4, 2020).  But as other courts have held, even in federal-question cases in the Fifth Circuit, *state law* applies to "determine the enforceability of a claimed settlement agreement," unless there is a "strong federal interest or policy" that requires application of federal law "'to protect or effectuate a federal scheme.'"  *See Climb Tech, LLC v. Verble*, 2008 WL 1133491, at *1 (W.D. Tex. Feb. 7, 2008) (quoting *In re Omni Video, Inc.*, 60 F.3d 230, 232 (5th Cir. 1995)).  In *Climb Tech*, the district court applied Texas Rule 11 in a patent case and ruled that certain defendants were not bound to a settlement agreement.  *See id.* at *2-3.  Similarly, in the patent case of *TechRadium, Inc. v. Edulink Sys.,* the district court applied Texas Rule 11 and held that, even though one party signed the agreement, since plaintiff TechRadium never signed, the agreement was unenforceable.  *See* 2011 WL 2709029, at *11-12 (S.D. Tex. July 12, 2011).

On appeal in this case, BI Science will ask the Federal Circuit to apply state contract law to the settlement issue.  If the Federal Circuit follows its precedents like *Datatreasury* and applies state law, Texas Rule 11 should render the disputed settlement agreement unenforceable.

> **b.    Even under federal law, there is a genuine dispute whether the Mediator's Proposal is enforceable.**

BI Science respectfully submits that even if the Federal Circuit declines to apply Texas Rule 11, BI Science is likely to prevail on appeal because Luminati did not satisfy the Fifth

Circuit's high standard for enforcing a settlement agreement. That standard requires a district court to deny a motion to enforce if there is "**any** *disputed issue of material fact as to the validity of the settlement agreement*." *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015). As the Fifth Circuit has explained, it is "not mere coincidence" that "[t]he stakes in summary enforcement of a settlement agreement and summary judgment on the merits … are roughly the same — both deprive a party of his right to be heard in the litigation." *Id.*

To succeed on appeal, then, BI Science need only show that there was a disputed issue as to whether the parties agreed to a binding settlement in this case. BI Science can make that showing, and one of its primary authorities on appeal will be the very decision Luminati highlighted in its motion to enforce — a decision of this Court *that the Court vacated.* Luminati relied heavily on this Court's April 5, 2017 decision in *Neurovision Med. Products, Inc. v. Medtronic plc,* holding that the parties entered into a binding settlement agreement via e-mail. *See Neurovision*, 2017 WL 1247139 (E.D. Tex. Apr. 5, 2017); Dkt. No. 170 (Luminati's Motion to Enforce) at 7-9 (discussing *Neurovision* in depth and citing it at least six times). But 12 days after this Court's *Neurovision* decision — and after defendant Medtronic refused to comply with the settlement agreement — the Court vacated the decision. *See* 2017 WL 9470886 (E.D. Tex. Apr. 17, 2017); Civil Docket for Case No. 2:16-cv-00127-JRG-RSP, Dkt. No. 109 (reflecting that 4/5/17 decision was "**VACATED PER [4/17/17] ORDER**") (emphasis in original).

The Court rendered a *new Neurovision* decision, noting that Medtronic "argue[d] that *the agreement is missing material terms, including a defined release provision, a covenant not to sue, indemnity provisions, among others*." *Id.* at \*1. Medtronic also argued that it should not be compelled to comply with the settlement agreement because "*if an appellate court ultimately determines that the … agreement is not enforceable*," Medtronic would be prejudiced. *See id.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:18-CV-00483-JRG |
| BI SCIENCE, INC., | § | **FILED UNDER SEAL** |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF LUMINATI NETWORKS LTD.'S
### OPPOSED MOTION TO MAKE FINAL JUDGMENT PUBLIC

The Court should exercise its sound discretion to unseal the Final Judgment to protect the public and Luminati's rights. The February 23, 2020 Settlement Agreement included important provisions whereby BI Science agreed to immediately cease its infringing business and transfer its customers to Luminati, as well as an injunction against its infringing activity. After obtaining a settlement that meant no jury verdict would issue against it finding BI Science, BI Science immediately began a campaign of delay, including seeking to delay performance by a year due to *force majeure*, a tactic rejected by the Court. BI Science's legal machinations have allowed it to continue to receive the benefit of the bargain without having to meet its own obligations and give Luminati the benefit Luminati was owed. BI Science should not be allowed to obstruct implementation of the Final Judgment by hiding behind its confidentiality to frustrate recordation of BI Science's patent assignment to Luminati and keep unlicensed third parties ignorant of the assignment and injunction against BI Science.

### A. The Court Should Make the Final Judgment Public To Protect Luminati and the Public And BI Science Admits That The Court has the Sound Discretion To Do So

BI Science admits that the Court has the discretion to make the Final Judgment public.[1] Luminati's prior request for confidentiality is irrelevant—Luminati has since determined that BI Science's refusal to cooperate is worse than allowing the terms to become public. Oppn. at 4-5. The "confidential price terms and other commercially sensitive information" that BI Science refers to in its Opposition (*Id*. at 5) are the Settlement Agreement terms that are confidential to Luminati, not BI Science (payment terms from Luminati for business it receives). ECF 220 at 5-6. Since BI Science is discontinuing its own infringing activity under the agreement, the agreement cannot be said to reveal any sensitive information to BI Science's business. Meanwhile, Luminati's benefits

---

[1] BI Science's reference to Rule 60 is inapplicable as Luminati is merely requesting the unsealing of the Final Judgment rather than a correction. Oppn. at 6.

of the bargain have been improperly obstructed by confidentiality coupled with BI Science's refusal to perform including regarding the recordation of the '241 Patent assignment and putting the public on notice of both the assignment and injunction. These needs strongly outweigh BI Science's interest in selling unlicensed services to the public.

### B. BI Science's Secret Intention To Renege Is Irrelevant As It Made Clear Representations To Luminati, The Mediator, And The Court That It Agreed To The February 23, 2020 Settlement Agreement Between The Parties

The Settlement Agreement is not a mere Mediator's Settlement Proposal. Oppn. at 3. On February 23, 2020, **as confirmed by BI Science's counsel**, BI Science accepted the mediator's proposal incorporating the list of terms sent to BI Science's counsel. ECF 170-3, 170-6, 170-8, 170-11. That same day, BI Science further confirmed the settlement by joining the Notice of Settlement. ECF 166. BI Science made clear representations to Luminati, the mediator, and the Court that it agreed to the Settlement Agreement, and thereby benefited by avoiding discovery and a trial. Oppn. at 2, 6, 10-11. The Court subsequently found that there was a meeting of the minds (ECF 183 at 43:16-18) and that the parties entered a valid settlement (ECF 183 at 41:20-44:20) and the Arbitrator confirmed the terms of the Settlement (ECF 217).

BI Science's post-settlement claims of a "mistake" are baseless. Oppn. at 2, 7. BI Science was represented by counsel, the terms of the Settlement were clearly communicated, BI Science confirmed its agreement, and the agreement was reduced to a writing. Luminati expressly asked if BI Science was asserting that there was a mistake in the Settlement Agreement on March 2, 2020 and BI Science did not assert mistake. ECF 170-16 at 3-4. BI Science's subsequent desire to renegotiate a more favorable deal does not invalidate the Agreement.

### C. The Final Judgment Is A Written Assignment of the '244 Patent As It Incorporated the Settlement Agreement and Arbitration Award for All Purposes Including the Express Assignment Provision

2

BI Science admits that the Final Judgment (ECF 220) incorporates both the Settlement Agreement and the Arbitration Award and does not dispute that these documents are "fully incorporate[ed] for all purposes…." Motion at 3; Oppn. at 2. BI Science also does not dispute that the Settlement Agreement includes the clear and express term: "BI Science assigns the '244 Patent and related patent applications, continuations, and continuations in part to Luminati" and that this term is in the present tense. Oppn. at 6. The language is clear and unambiguous.

However, BI Science asserts that it never agreed to such an assignment, or alternatively that this term was a "present tense action[] that [was] contemplated for the future." Oppn. at 6. However, the list of terms including the assignment provision was sent to BI Science (ECF 170-8), incorporated in the mediator's proposal, and confirmed as accepted by BI Science (ECF 170-3). In contrast to the assignment provision (term 12), which BI Science did not seek to change, BI Science did demand changes to the specific language regarding the "rejection of customers" (term 8) before agreeing to the settlement on the morning of February 23, 2020. Compare ECF 170-8, ECF 170-11 and ECF 220, Ex. A. Luminati had to propose last-minute edits to the language of claim 8 on the morning of February 23, 2020 (ECF 170-11), that was subsequently accepted by BI Science and incorporated in the Settlement Agreement as confirmed by the mediator and BI Science (ECF 170-3). BI Science's false assertions that it did not agree to the Settlement because of the "rejection of customers" terms is completely contrary to the record. Oppn. at 10-11. Luminati had previously rejected BI Science's proposal for a license instead of an assignment. If this were a sticking point for BI Science, it could have refused to enter the Settlement Agreement, but instead it agreed.

With regard to the second argument, BI Science clearly assigned patent rights in the Settlement Agreement itself with the statement "BI Science assigns the '244 Patent and related

3

**Appx2110**

patent applications, continuations, and continuations in part to Luminati." That did not require any future action. If BI Science wanted to make the provision an agreement to assign the patents in the future, the term would have been in future tense, like other terms in the Agreement. *See, e.g.,* term 2 ("the Parties shall move…"). Reply at 6-7.

Anticipating that BI Science would need to identify patent applications, continuations and continuations-in-part related to the '244 Patent, the April 29, 2020 Arbitration Award provided the parties with deadlines for performance (with which BI Science failed to comply). Regardless, by the terms of the Final Judgment, the assignment has been incorporated for all purposes in the Final Judgment, and Luminati needs the assignment to be public to record it with the U.S.P.T.O. and put the public on notice.

### D. The Final Judgment Incorporated The Settlement Agreement And Arbitration Award For All Purposes Including The Express Assignment Of The '244 Patent

By continuing its proxy business in violation of the Settlement Agreement, Arbitration Award, Final Judgment, and various terms therein including the express injunction, BI Science is exploiting the confidentiality of the Final Judgment to mislead third parties including BI Science's customers and partners. Oppn. at 9-10. BI Science does not dispute that the Settlement Agreement and Final Judgment incorporate an "injunction that BI Science will not use, offer to sell, or sell, Proxy Services in the United States or import Proxy Services into the United States to the extent it is not licensed by Luminati to do so." ECF 220 at 5. BI Science does not have a license to continue its Proxy Services, and neither do its customers and other third parties. As the joint public press release states that "BI Science will … work together with Luminati in a strategic partnership to transition BI Science proxy service customers to Luminati's service," these same third parties could easily be misled into believing that BI Science's continued provision of Proxy Services is

4

licensed. ECF 218 at 2. The public has a strong interest in the Final Judgment, including the injunction, being public.

### E. BI Science Mischaracterizes the Protections Afforded By The Israel Proceeding, Which Did Not Create An Escrow Account

BI Science mischaracterizes the July 22, 2020 order by the Israeli Court in Tel Aviv-Jaffa as setting up an escrow. Oppn. 4, 11. That is false. That order merely permits an appointed receiver to monitor an account. It is expressly not a "trust account," and BI Science has unfettered access to the funds. ECF 225-1 at 7. BI Science cannot rely on this order to assert that Luminati will not be harmed by keeping the Final Judgment sealed. Oppn. at 11.

### F. The Appeal Does Not Provide BI Science With A Right To Continue Its Breach Of The Settlement Agreement

BI Science has refused to perform under the February 23, 2020 Settlement Agreement and been in breach for almost six months. The automatic stay of the Final Judgment under Fed. R. Civ. Pro. 62(a) expired as of August 3, 2020. On August 6, 2020, one day before BI Science's Opposition was due, BI Science requested for the first time a meet and confer to request a stay in enforcement. Oppn. at 1, 2-3. Such relief would only allow BI Science to continue its breach of the Settlement Agreement to achieve the excuse from performance that it initially sought under its rejected force majeure argument. ECF 175 at 5; ECF 183 at 29:25-35:18. At the same time, keeping the Final Judgment under seal would do nothing to protect third parties who currently have no notice of BI Science's agreement to stop its infringing business or that continued use exposes them to damages for infringement. Confidentiality also prevents Luminati from recording the assigned patents and patent applications, which can only be done through public documents.

For the reasons addressed above, and in the Motion, Luminati respectfully requests that the Court exercise its sound discretion to make the Final Judgment public.

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:18-CV-00483-JRG |
| BI SCIENCE, INC., | § | |
| Defendant. | § | |

### PLAINTIFF LUMINATI NETWORKS LTD.'S NOTICE OF APPEAL

Following the July 29, 2020 Notice of Appeal (Dkt. 228) filed by Defendant BI Science

(2009) Ltd., also known as BI Science Inc., Plaintiff Luminati Networks Ltd. ("Luminati") hereby

respectfully gives notice that it appeals to the United States Court of Appeals for the Federal Circuit

from the Order and Final Judgment entered in this action on July 2, 2020 (the "Final Judgment")[1],

and from the Court's December 6, 2020 Order (the "Claim Construction Order," Dkt. No. 130)

subsumed within the Final Judgment, to the extent that Final Judgment and Claim Construction

Order found claim 108 of U.S. Patent No. 9,241,044 indefinite.

Dated: August 18, 2020                    Respectfully submitted,

                                          By: _/s/ Korula T. Cherian_
                                          Mark Mann
                                          Mann | Tindel | Thompson

---

[1] Luminati and Defendant BI Science (2009) Ltd., also known as BI Science Inc., filed a joint
Motion to Correct the Final Judgment on July 24, 2020 ("Joint Motion," Dkt. 223) pursuant to
Fed. R. Civ. Pro. 60 to expressly incorporate the finding that claim 108 of U.S. Patent No.
9,241,044 as indefinite.  While the Joint Motion is still pending and under Federal Circuit Rule
4(a)(4)(A)(vi) "the time to file an appeal runs for all parties from the entry of the order disposing
of the last such remaining motion," out of an abundance of caution, Luminati files this Notice of
Appeal with regard to the Final Judgment, and in the event that the Joint Motion is granted, the
corrected Final Judgment.

300 West Main
Henderson, TX 75652
mark@themannfirm.com
Office 903-657-8540
Cell 903-658-0401
Marshall Office 903-472-4294
Tyler Office 903-596-0900
Waco Office 254-776-3336

Amadou Kilkenny Diaw
Ronald Wielkopolski
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Attorneys for Plaintiff
Luminati Networks Ltd.

2

**Appx2116**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:18-CV-00483-JRG |
| v. | § | |
| | § | FILED UNDER SEAL |
| BI SCIENCE, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF LUMINATI NETWORKS LTD.'S OPPOSITION TO BI SCIENCE'S
OPPOSED MOTION TO STAY ENFORCEMENT OF THE FINAL JUDGMENT**

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................... 1

II. FACTUAL BACKGROUND ............................................................................ 1

    A. BI Science Entered the February 23, 2020 Settlement Agreement ................... 1

    B. Following BI Science's Non-Performance The Court Found The Settlement Valid ....... 2

    C. The Arbitrator Found the Settlement To Include All The Terms of the Agreement ........ 3

    D. The Final Judgment Incorporated The Settlement Agreement and Arbitration Award For All Purposes ........................................................................ 3

    E. In Separate Israel Proceeding, An Order Was Issued Appointing A Receiver To Monitor The BI Science Account Without Restricting BI Science From Withdrawing Funds ...... 4

III. LEGAL STANDARD ...................................................................................... 4

IV. ARGUMENT ................................................................................................... 5

    A. BI Science Cannot Receive Any Relief Under Rule 62(d) As It Offers No Terms To Secure Luminati's Rights ....................................................................... 5

    B. The Court Should Not Exercise Its Discretion To Grant A Stay, As The Four-Factor Test Weighs Against BI Science ................................................................ 6

    1. BI Science's Appeal Is Meritless And Does Not Justify A Stay ..................... 6

        *a. The Court has personal jurisdiction over BI Science through BI Science's efforts to direct the accused residential proxy service to Texas including through its advertising of proxy devices located in Texas* ............................................. 6

        *b. BI Science's meritless argument that the Settlement Agreement is invalid is contrary to its representations to the Court, the Mediator, and Luminati* ................................. 7

    3. Issuance Of A Stay Will Substantially Injure Luminati As It Will Deprive Luminati Of The Benefit Of Its Bargain While BI Science Continues To Infringe Luminati's Patents With The Substantial Risk That BI Science Will Go Out Of Business During The Appeal Which Weighs Strongly Against A Stay ...................................... 14

    4. The Public Interest Strongly Disfavors Reneging On A Settlement Particularly As In This Case Where BI Science Had An Evidentiary Hearing And Arbitrated Its Disputes Before Seeking To Invalidate The Underlying Agreement ........................... 15

V. CONCLUSION ................................................................................................ 15

i

Science offers nothing to protect Luminati's rights, BI Science cannot be granted a stay under Rule 62(b). For this reason alone, a stay cannot be granted.

## B. The Court Should Not Exercise Its Discretion To Grant A Stay, As The Four-Factor Test Weighs Against BI Science

While a stay may not be granted given the lack of any surety to protect Luminati's rights, even if such terms were provided, the balancing of the four-factor test weighs against allowing BI Science to continue obstructing its performance under the Settlement.

### 1. BI Science's Appeal Is Meritless And Does Not Justify A Stay

BI Science asserts two arguments on appeal. First, BI Science asserts that the Court erred in finding personal jurisdiction over BI Science. Second, BI Science asserts that the Settlement Agreement is not valid. Both of these arguments are meritless.

### a. The Court has personal jurisdiction over BI Science through BI Science's efforts to direct the accused residential proxy service to Texas including through its advertising of proxy devices located in Texas

"The plaintiff has the burden of establishing jurisdiction. Where, as here, the district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing, the plaintiff may meet his burden with *prima facie* evidence. .... In determining whether the plaintiff has presented a *prima facie* case of personal jurisdiction, we "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Zoch v. Magna Seating (Germany) GmbH*, 810 Fed. Appx. 285, 287 (5th Cir. 2020) (internal quotation marks and citation omitted).

The Court clearly has personal jurisdiction over BI Science as it purposely directed its activities regarding the accused residential proxy service to Texas, including the advertising of its Texas proxies. As fully briefed in the complaint, amended complaint and related motions to dismiss, the accused instrumentality is BI Science's residential proxy service, which utilizes

software installed on a large numbers of client devices, such as cell phones, causing these devices to operate under BI Science's control as proxies in BI Science's network. *See e.g.* ECF 1 at ¶ 5; *see also* ECF 44 at 9-11. As stated in the May 13, 2019 Order, "BIScience's service allows customers all over the world to utilize residential proxy devices in ten Texas cities—Arlington, Austin, Crowley, Dallas, El Paso, Fort Worth, Houston, Katy, San Antonio, and Spring—and BIScience advertises as such. (Dkt. No. 28-5, at 2–3.) Those proxy service activities are 'purposefully directed' at Texas, and Luminati's claims for patent infringement allege 'injuries that arise out of or relate to those activities.'" ECF 82 at 8. "The ability to direct internet traffic through proxies situated in various locations, including Texas, is a key advertised feature of BIScience's service:

> A proxy will also give you access to a set of proxy servers located worldwide, which will help you solve the location obstacle easily: Just select your preferred location, whether it's the United States or Madagascar, and surf in total anonymity and freedom.

> (Dkt. No. 28-4, at 5; *see also* Dkt. No. 28-3, at 2 ('Location is key. One of the reasons to

use a proxy, is to appear as if you were surfing from a different place.').) Far from being unrelated, BIScience's encouragement of customers to use proxies, including those located in Texas, is foundational to Luminati's claims of patent infringement. Specific personal jurisdiction over these claims is therefore appropriate." *Id.* at 9. The Court's finding of personal jurisdiction was well supported by Luminati's extensive uncontroverted allegations and is very unlikely to be reversed.

### b. *BI Science's meritless argument that the Settlement Agreement is invalid is contrary to its representations to the Court, the Mediator, and Luminati*

A district court's findings of fact are reviewed for clear error. *Dunbar Med. Sys. v. Gammex Inc.*, 216 F.3d 441, 448 (5th Cir. 2000). As discussed above, the Parties entered the Settlement Agreement on February 23, 2020 after two months of negotiations. BI Science agreed

7

**Appx2134**

to the mediator's proposal, which expressly incorporated the list of agreed terms and edits to the "Customer Rejection Term" that was specifically requested by BI Science.

> "I am very pleased to report that the mediator's proposal has resulted in a settlement. Incorporated into that is the list of terms that [Plaintiff's counsel] sent me yesterday, and that I provided to [Defendant's counsel]. That list, of course, is modified in some respects by the terms of the proposal, including the most recent proposed language added to it this morning regarding 'rejection of customers'. Unless you object, I will notify Judge Gilstrap of the settlement and request that he cancel Monday's hearing. I will tell him a motion to stay is forthcoming. I will advise if he wants it filed before he will cancel the hearing."

ECF 170-3

Without disputing that "the mediator's proposal has resulted in a settlement" or that the settlement incorporated the "list of terms" as modified regarding "rejection of customers," Defendant's counsel confirmed the settlement stating, "Thanks for all your hard work Bill." *Id*. The Parties then filed a joint motion to stay all deadlines and notice of settlement stating "all matters in controversy between the Parties have been settled, in principle." ECF 166. Defendant's post-Settlement assertions that it believed it was merely agreeing to what it mischaracterizes as a "settlement framework" is inconsistent with the record and BI Science's own representations. Motion at 1, 8. "An offer is judged by the parties' overt acts and words, not by the subjective or secret intent of the offeror." *Johnson v. BP Expl. & Prod. (In re Deepwater Horizon)*, 786 F.3d 344, 355 (5th Cir. 2015). The February 24, 2020 writing collected the above terms of the Settlement Agreement into one document. The Court held an evidentiary hearing on April 13, 2020 during which it found that a meeting of the minds was reached and that the Settlement is valid. ECF 183 at 42:12-43:18. Despite its contrary representations to the Court, the Mediator, and Luminati, BI Science now argues that its refusal to sign the subsequent February 24, 2020 writing renders the February 23, 2020 Settlement Agreement invalid. This is wrong for multiple reasons.

8

*First*, "[q]uestions regarding the enforceability or validity of such agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law." *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) ("Because the claims in this case are premised on federal general maritime law, we apply federal law to decide the validity of the agreement to settle the claims"); *See also In re Deepwater Horizon*, 786 F.3d at 354 ("Because Johnson alleged causes of action under general maritime law and the Jones Act against BP, federal contract law governs the validity and enforceability of Johnson's putative settlement agreement with BP"); *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (because provision of Texas Arbitration Act requiring additional signature on arbitration agreement was preempted by Federal Arbitration Act, signature was not a prerequisite to enforcement of arbitration agreement.). Without having previously raised this argument at the April 13, 2020 hearing, BI Science asserts for the first time that the Settlement Agreement is not valid under Texas Rule of Civil Procedure 11.

However, as the Settlement Agreement resolves the Parties' patent infringement disputes under federal law, BI Science's reliance on Texas Rule 11 is misplaced. BI Science erroneously relies upon case law regarding the applicability of agreements to third parties and cases involving underlying state law claims.[1] "Texas substantive law applies to Plaintiffs' Motions to enforce the

---

[1] BI Science erroneously relies upon case law finding <u>third-parties</u> are not subject to arbitration clauses in an arbitration agreement. For example, in *Datatreasury Corp. v. Wells Fargo & Co.*, the Federal Circuit affirmed that third-parties were not subject to an arbitration clause where "neither party in this litigation signed the [arbitration agreement] or participated in negotiating any of its terms." 522 F.3d 1368, 1373 (5th Cir. 2008). *Datatreasury* cites to *Fleetwood Enters* in the overbroad statement that "in deciding whether there is a valid agreement between the parties the Fifth Circuit applies state law, *see Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)." *Id*. at 1371-1372. However, in *Fleetwood Enters*, the Fifth Circuit found that the third-party children of a party to an arbitration agreement were not bound by an arbitration clause for personal injury claims where "the parties agree that Texas state law governs matters that are not addressed by the Federal Arbitration Act." 280 F.3d 1069, 1073. Unlike *Fleetwood Enters*, the

MSA because this is a diversity case involving state law claims, not substantive rights or liabilities under federal law." *MedVision, Inc. v. MediGain, LLC*, Civil Action No. 3:15-CV-77-L, 2017 U.S. Dist. LEXIS 48744, at *29 (N.D. Tex. Mar. 31, 2017) (internal citations omitted).

Courts have applied federal law to settlements involving patent claims. *Neurovision Med. Prods., Inc. v. Meditronic Pub. Ltd. Co.*, No. 2:16-CV-00127-JRG-RSP, 2017 U.S. Dist. LEXIS 51610, at *7 (E.D. Tex. Apr. 5, 2017) (vacated on other grounds); *Goodman v. Smart Modular Techs., Inc.*, No. H-14-1380, 2016 U.S. Dist. LEXIS 112436, at *5 (S.D. Tex. Aug. 23, 2016) ("When considering the validity of a settlement agreement in a case involving federal law, such as this patent case, the court applies federal law."). While BI Science relies upon other district courts that have applied Texas state law in determining the validity of a patent settlement, the parties to these cases either agreed that Texas law applies or completely failed the basic requirements of an offer and acceptance. *Climb Tech, LLC et al. v. Verble, et al.*, No. 1:05-cv-00864, 2008 WL 1133491, at *1 (W.D. Tex. Feb. 7, 2008) (finding no agreement between all parties where the collection of emails "evidences neither offer to nor acceptance by Defendants Verble, Hagler, Valcor, or Reeves or their respective attorneys."); *TechRadium Inc. v. Edulink Sys.*, No. H-10-1887, 2011 U.S. Dist. LEXIS 74828, at *7 (S.D. Tex July 12, 2011) ("The parties agree that Texas law applies"). In line with *Mid-S. Towing Co.* and *In re Nexion Health*, the Federal Circuit should

---

Settlement Agreement in this case resolved a patent dispute, which is clearly a right derived from Federal law consistent with *Mid-South Towing Co.* Similarly, BI Science relies on other cases involving state law claims. *Oliver St. Dermatology, LLC v. Creger,* No. 1:17-CV-528-LY, 2018 U.S. Dist. LEXIS 91018, at *3-5 (W.D. Tex. May 30, 2018) ("In diversity cases such as this, 'substantive law … is established by the usual principles of conflict of law, but procedural rules are the rules of the forum.'"); *Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 521-522 (Tex App. 2011) (breach of contract claim in Texas state court); *Songer v. Archer*, 23 S.W.3d 139, 141 (Tex. App. 2000) (breach of contract claim in Texas state court).

10

**Appx2137**

follow Fifth Circuit precedent applying federal law and affirm the validity of the Settlement Agreement and Arbitration Award.

*Second*, unlike *Climb Tech* and *TechRadium*, this case involved a single writing from the mediator confirming that "the mediator's proposal has resulted in a settlement resolution" and identifying the terms incorporated in that mediator's proposal, which was confirmed by BI Science's response and followed by a joint notice of settlement to the Court signed by BI Science. ECF 170-3, 166.  To the extent that BI Science is now attempting to assert that Texas Rule 11 applies and that the Settlement Agreement is invalid because BI Science did not sign the subsequent February 24, 2020 writing collecting all the terms in one document, the *Williams-Kennedy* equitable exception to Texas Rule 11 would apply. *Roeglin v. Daves*, 83 S.W.3d 326, 332 (Tex. App. 2002).  Equity may excuse strict compliance with Rule 11 to prevent "an unfair advantage by the violation of such agreement." *Williams v. Huling*, 43 Tex. 113, 120 (1875).

BI Science clearly knew that its confirmation of the Settlement Agreement and subsequent filing of the joint notice of settlement would cause the Court, the Mediator, and Luminati to understand that the Parties entered a Settlement Agreement. ECF 183 at 41:20-42:2.  Instead of rejecting the Settlement Agreement or asserting that a mistake had been made, BI Science asserted that it merely sought to be excused from performance under the contract theories of *force majeure* and impossibility.  ECF 183 at 29:25-35:18.  BI Science even participated in the arbitration to resolve its dispute regarding the Settlement Agreement, before turning around and challenging the validity of the underlying Settlement Agreement.  In addition to securing "unfair advantage," BI Science's representation that it made the "intentional decision not to sign the Mediator's Proposal" raises the issue of fraud in inducing Luminati to perform under the Settlement Agreement which is a separate equity ground for excusing strict compliance with Rule 11.  Motion at 9.

11

*Third*, under federal law, the Parties clearly met the requirements for a valid Settlement Agreement. In *Neurovision*, the Court similarly applied federal law in finding that a valid contract existed when (1) the plaintiff stated in an email that "we accept your offer[,]" in addition to summarizing the material terms of the agreement; and (2) defendant responded stating, "This is excellent news. Thanks for working through[,]" without disputing any material term summarized in the previous email or "[taking] issue with the accepting party's characterization of the state of negotiations as an accepted offer." *Neurovision Med. Prods., Inc. v. Meditronic Pub. Ltd. Co.*, No. 2:16-CV-00127-JRG-RSP, 2017 U.S. Dist. LEXIS 51610, at *7 (E.D. Tex. Apr. 4, 2017) (internal quotations omitted). "The court has the ability to summarily enforce a settlement 'if no material facts are in dispute,' but 'when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed evidentiary hearing on disputed issues of the validity and scope of the agreement.'" *Id.* at *5 (quoting *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015)).

Subsequent to the April 4, 2017 order in *Neurovision*, the defendant raised new arguments concerning the enforceability of the agreement based on the purported absence of material terms, which resulted in the setting of an evidentiary hearing. *Neurovision Med. Prods., Inc. v. Meditronic Pub. Ltd. Co.*, No. 2:16-CV-00127-JRG-RSP, Dkt. 118, at *2 (April 17, 2017) ("the new arguments raised by Medtronic warrant revisiting the question of whether the February 17 agreement in enforceable … The court will hear argument and evidence on the issues."). BI Science appears to place a great deal of weight on the docket identifying the April 4, 2017 as vacated per the April 17, 2017 order, without acknowledging that the April 17, 2017 merely ordered an evidentiary hearing consistent with its previous order and that case settled before the hearing.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:18-CV-00483-JRG |
| v. | § | FILED UNDER SEAL |
| | § | |
| BI SCIENCE, INC., | § | |
| | § | |
| Defendant. | § | |

**BI SCIENCE'S REPLY BRIEF IN SUPPORT OF ITS**
**OPPOSED MOTION TO STAY ENFORCEMENT OF THE FINAL JUDGMENT**

Michael A. Charish
(admitted *pro hac vice*)
Charish Law Group P.C.
347 Fifth Avenue, Suite 1402
New York, New York 10016
Phone: (646) 328-0183
michael@charish.law

J.C. Rozendaal
(admitted *pro hac vice*)
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue NW, Suite 600
Washington, D.C. 20005
Phone: (202) 772-8747
jcrozendaal@sternekessler.com

*Attorneys for Defendant BI Science (2009) Ltd.*

September 3, 2020

## PRELIMINARY STATEMENT

BI Science's stay motion (Dkt. No. 234) presented compelling grounds for staying this Court's Order and Final Judgment (Dkt. No. 220) (the "Final Judgment") pending the parties' cross-appeals to the Federal Circuit. BI Science is a small company, with a substantial appeal, that will likely be forced to fire its employees and go out of business if the Court does not grant a stay. Plaintiff Luminati Networks Ltd. ("Luminati") is the industry heavyweight that has aggressively sought to eradicate the competition and has already obtained protections for its rights in this case, via parallel litigation in its home forum of Israel. The stay should be granted.

## ARGUMENT

### I.    BI SCIENCE IS LIKELY TO SUCCEED ON APPEAL.

#### A.    BI Science Will Argue that it Is Not Subject to Personal Jurisdiction in Texas.

In its motion, BI Science demonstrated substantial grounds for the Federal Circuit to conclude that BI Science lacked sufficient Texas contacts for specific jurisdiction. *See* Mtn. at 3-4. In opposition, Luminati neither addresses BI Science's legal authority nor cites any authority of its own. Instead, Luminati falls back on its only jurisdictional evidence, purportedly showing that BI Science engaged in Texas-targeted advertising: mischaracterized BI Science webpages, showing that GeoSurf had users making proxy-servers available in 1,700 cities worldwide, including 10 in Texas. But the fact that GeoSurf is available for download anywhere in the world no more targets Texas than Timbuktu. It is the *customers* who choose where to use GeoSurf. On Luminati's theory, if Texas customers took their internet devices to Arkansas, BI Science would no longer be "targeting" Texas.

Luminati's only other jurisdictional allegations are made "on information and belief." *See* Opp. at 6-7; Dkt. No. 28 ¶ 5. Such allegations are insufficient to establish personal jurisdiction, especially where, as here, the defendant has submitted a sworn affidavit disputing

them.  *See* Dkt. No. 36 (March 4, 2019 Moyal Declaration); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (finding no personal jurisdiction where allegations of Texas contacts were "on information and belief").

**B.     BI Science will argue credibly that the settlement proposal is not enforceable.**

BI Science's motion demonstrated a substantial likelihood that the Federal Circuit will hold — as a matter of law, under Texas Rule 11 — that the Mediator's Proposal is not an enforceable settlement agreement because it was not signed by both parties.  *See* Mtn. at 4-6 (discussing Tex. R. Civ. P. 11).  Luminati argues that federal common law, not Texas law, will govern, but the Federal Circuit holds the opposite: "*settlement agreements in patent cases should not be governed by federal common law but instead by state contract law*."  *Thatcher v. Kohl's Dep't Stores, Inc.*, 397 F.3d 1370, 1374 (Fed. Cir. 2005) (summarizing a holding of *Gjerlov v. Schuyler Labs., Inc.,* 131 F.3d 1016, 1020 (Fed. Cir. 1997)) (all emphasis in this brief has been added).

Luminati relies on Fifth Circuit case law.  Yet, the Federal Circuit will advert to Fifth Circuit law only *because* the Federal Circuit holds that settlement-agreement issues are not "unique to patent law, even if arising in the context of a patent infringement suit."  *Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed. Cir. 1999).  By definition, then — even under Fifth Circuit law — there is no strong federal-patent-law policy that mandates application of federal law to a settlement dispute.  That is what the district court held in *Climb Tech, LLC v. Verble*, where it applied Texas Rule 11 in a patent case.  *See* 2008 WL 1133491, at *2-3 (W.D. Tex. Feb. 7, 2008) (relying on *In re Omni Video*, 60 F.3d 230, 232 (5th Cir. 1995)).  While Luminati has highlighted a conflict on this choice-of-law issue between courts in the Fifth Circuit (*see* Opp. at 9-11), that does not override the conclusion that the *Federal* Circuit will apply state law in this case, as it has done consistently when analyzing disputed settlement

2

**Appx2149**

agreements in patent cases.

Once Texas law applies, the Mediator's Proposal becomes plainly unenforceable under Texas Rule 11. Luminati does not even attempt to argue that the Proposal meets the standards of Rule 11, resorting instead to a half-hearted suggestion that an equitable exception should apply. *See* Opp. at 11. Luminati cites three Texas cases that *refused to apply* an equitable exception and that actually favor BI Science. *See Williams v. Huling*, 43 Tex. 113 (1875); *Kennedy v. Hyde*, 686 S.W.2d 525 (Tex. 1984); *Roeglin v. Daves*, 83 S.W.3d 326 (Tex. App. – Austin 2002). Luminati does not and cannot show the type of "manifest … injury or injustice" required for an equitable exception. *See Williams*, 43 Tex. at 120. Luminati cannot even show prejudice, as it relied on the Mediator's Proposal to dismiss its claims in two other cases *without prejudice*.

BI Science's motion further demonstrated that its appeal would remain likely to succeed even if the Federal Circuit departed from precedent and applied federal common law, which is "largely indistinguishable from general contract principles under state common law." *See In re Deepwater Horizon*, 786 F.3d 344, 354-55 (5th Cir. 2015). Under federal law, there are numerous bases for finding a "disputed issue of material fact as to the validity of the settlement agreement," including: (1) the Mediator's Proposal refers to itself as merely a "proposal"; (2) it contradicts itself on material terms regarding BI Science's key '244 patent; (3) it is missing material terms such as timing of performance; and (4) Luminati subsequently attempted to fill in those missing material terms and negotiate a settlement agreement with BI Science. *See* Mtn. at 8-10 (quoting *Deepwater Horizon*, 786 F.3d at 354).

Luminati's evidence purportedly showing a meeting of the minds on a final, binding settlement agreement is unpersuasive. It amounts to nothing more than one e-mail from counsel thanking the mediator for his hard work and another consenting to a joint notice that the parties

had reached a "settlement *in principle*." *See* Opp. at 7-8. Luminati did not carry its burden of proving no "disputed issues of material fact as to the validity of the settlement agreement." BI Science has a substantial case on appeal; the first stay factor favors BI Science.

## II.   BI SCIENCE FACES SEVERE IRREPARABLE HARM ABSENT A STAY.

BI Science's motion demonstrated that enforcement of the Final Judgment would subject it to the sort of "catastrophic" and irreparable harm that necessitates a stay pending appeal: employee layoffs, irreversible loss of customers and goodwill, and "possibly, extinction." *See* August 7, 2020 Moyal Decl. (Dkt. No. 231); Mtn. at 11-12 (quoting *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990)). Without a stay, an appellate victory may "come too late" for BI Science. *See Nken v. Holder*, 556 U.S. 418, 427 (2009).

Luminati responds with a claim that is speculative, patronizing, and downright false: that BI Science would be "in a much better financial situation than it is now" if the Court denies the stay and forces BI Science to transfer its proxy-service customers to Luminati. The accompanying Reply Declaration of Kfir Moyal discredits that already-incredible claim. Mr. Moyal (BI Science's CEO) explains that, absent a stay: (1) BI Science would receive revenues from Luminati for a limited time only; (2) 37% of revenues from customers transferred to Luminati would equal far less than 37% of BI Science's current proxy-service revenues; and (3) those revenues would not suffice to sustain BI Science's business. *See* Reply Decl. ¶¶ 4-12. The damage to BI Science "would be devastating and irreversible and would lead to BI Science going out of business." *Id.* ¶ 12. Accordingly, the irreparable-harm factor weighs heavily in favor of granting a stay.

## III.   A STAY WILL NOT COMPARABLY HARM LUMINATI.

BI Science's motion demonstrated that Luminati would not be harmed by a stay because Luminati filed a lawsuit in Israel and secured interim relief that will protect it from any adverse

**Appx2151**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:18-CV-00483-JRG |
| | § | FILED UNDER SEAL |
| BI SCIENCE, INC., | § | |
| | § | |
| Defendant. | § | |

**REPLY DECLARATION OF KFIR MOYAL**
**IN SUPPORT OF BI SCIENCE'S OPPOSED MOTION TO**
**STAY ENFORCEMENT OF THE FINAL JUDGMENT**

1.      I am a Co-Founder and the CEO of defendant BI Science (2009) Ltd. ("BI Science").  I live and work in Tel Aviv, Israel, where BI Science is headquartered.

2.      I submit this reply declaration in support of BI Science's motion to stay enforcement of this Court's July 2, 2020 Order and Final Judgment (the "Final Judgment").

3.      Unless otherwise indicated, I have personal knowledge of the facts contained in this declaration.  I am over the age of 18 years and I am competent to testify to the truth of the facts herein if called upon to do so.

4.      I have reviewed plaintiff Luminati Network Ltd.'s ("Luminati's") opposition to BI Science's stay motion stay.  On page 14 of that opposition, Luminati claims that if the Final Judgment were enforced and BI Science received "37% of the gross invoiced revenue from its [proxy-service] customers transferred to Luminati for a period of 27 months," BI Science would be "in a much better financial situation than it is now."  For a number of reasons, I believe that claim to be false.

1

5.    First, the revenue stream would last for only 27 months and would not substitute economically for BI Science's customer base and an indefinite revenue stream.

6.    Second, I expect that any revenue received from Luminati would be far lower than 37% of BI Science's current gross revenues from proxy-service customers.

7.    As I stated in my August 7, 2020 declaration, BI Science was not willing to agree to a settlement in which Luminati would have sole discretion to reject a customer — without committing to any criteria for rejecting customers and without subjecting its revenue-sharing reports to audits by a third-party accounting or financial firm.  Relatedly, BI Science and Luminati never reached agreement about whether joint customers of BI Science and Luminati (or former BI Science customers) would be counted for purposes of revenue sharing.

8.    Additionally, it would be up to BI Science's customers to decide whether they want to switch to Luminati.  But Luminati never agreed to offer our customers the same terms as they receive from BI Science.  For that reason or others, I consider it probable that some, and perhaps many BI Science customers would decide not to switch to Luminati.

9.    Furthermore, BI Science supports significant proxy-service customers that are business customers and not residential.  Based on my review of Luminati's website, I believe there is a substantial risk that Luminati would not be able to support some of BI Science's key customers.

10.    If Luminati had: (a) sole discretion to reject customers, (b) no audit supervision of its revenue sharing with BI Science, (c) no obligation to share revenues from customers who currently use both Luminati and BI Science, (d) no obligation to offer BI Science customers the same terms, and/or (e) no ability to support some of BI Science's key customers, I expect that BI Science's effective revenue percentage would be far lower than 37%.

11.     Third, even if the effective revenue percentage were close to 37%, BI Science would still not be in a "much better financial situation," as Luminati claims. BI Science would have to terminate all of the employees responsible for its GeoSurf proxy-service business. Many of those same employees also share responsibilities for BI Science's other business lines. Without them, BI Science's overall business would be incapable of functioning properly.

12.     As I stated in my August 7, 2020 declaration, if the Final Judgment (including the mediator's proposal and the arbitration award) were enforced against BI Science, I believe that the damage to our company would be devastating and irreversible and would lead to BI Science going out of business.

13.     Conversely, if the Final Judgment is stayed against BI Science pending appeal, then I expect that during that time, we would continue to face challenges as we strive for profitability, like so many small high-tech companies. Yet I expect that we would remain in business and, contrary to Luminati's claim, be in a "much better financial situation" than if the Final Judgment were enforced.

14.     On information and belief, I also expect that the economic consequences of the stay decision will be much less dramatic for Luminati, which is the industry leader.

15.     Luminati has posted on the internet the July 2019 "Global IP Proxy Networks Market" report of consulting firm Frost & Sullivan (available at https://luminati.io/static/IPPN-analysis-2019.pdf?md5=3109015-85e418b7). According to the Frost & Sullivan report (at page 50) Luminati's annual proxy-service revenue was approximately $40 million. The report states (at page 52) that GeoSurf's annual proxy-service revenue was approximately $8 million, but that is not accurate. In any event, GeoSurf's annual proxy-service revenue is approximately $3.5 million.

3

**Appx2157**

16.     As Luminati has endorsed the Frost & Sullivan report by posting it on the internet, I believe it is reasonable to assume that Frost & Sullivan's $40 million revenue number for Luminati is roughly accurate.  If it is, then even if Luminati took all of BI Science's customers — and as stated above, I expect they will not — BI Science's customers would represent in the range of only 10% of Luminati's proxy-service revenue.  And even if Luminati's actual revenues are lower than reported by Frost & Sullivan, on information and belief, BI Science's customers would still represent a relatively small percentage of Luminati's revenue.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 3, 2020

_____
Kfir Moyal

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

LUMINATI NETWORKS LTD.

        Plaintiff,

    v.

BI SCIENCE, INC.,

        Defendant.

Case No. 2:18-CV-00483-JRG

FILED UNDER SEAL

**PLAINTIFF'S SUR-REPLY ON DEFENDANT'S**
**MOTION TO STAY ENFORCEMENT OF THE FINAL JUDGMENT**

BI Science continues to obstruct performance under the February 23, 2020 Settlement Agreement (the "Settlement"). BI Science has no real basis to stay this case and cannot succeed in its appeal to the Federal Circuit (the "Appeal"). Yet, BI Science continues to obstruct the Settlement, including through the current Motion to Stay Enforcement (the "Motion"). Such a delay would afford BI Science the same relief it requested (and that this Court denied) during the April 13, 2020 hearing. The Motion is meritless, and the arguments in BI Science's Reply Brief (the "Reply") do nothing to alter that conclusion.

## I.    BI SCIENCE CANNOT AND WILL NOT SUCCEED ON APPEAL

To justify a motion to stay, BI Science would need to prove likelihood of success in the appeal. *Nken v. Holder*, 556 U.S. 418, 434 (2009). It cannot.

### A.  The Federal Circuit Will Hold That BI Science Is Clearly Subject to Personal Jurisdiction in Texas, Based on BI Science's Own Admissions Before This Court.

There is no question that the rulings of this Court with respect to personal jurisdiction will be affirmed on appeal. The sole case cited in BI Science's Reply in support of its personal jurisdiction argument is inapposite—like each and every case BI Science cited in its Motion— because Federal Circuit law controls issues of personal jurisdiction where "a patent question exists." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). The Federal Circuit "appl[ies] a three-part test considering whether: (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1000 (Fed. Cir. 2018). BI Science concedes the last two elements by ignoring them throughout its Motion and Reply, and therefore the jurisdictional question is both simple and singular: ***Did BI Science purposefully direct any***

1

*proxy services toward the State of Texas?*

The answer is plainly in the affirmative, because, in the words of this Court, "BIScience has sold its allegedly infringing GeoSurf service to at least 52 customers in Texas." *Luminati Networks, Ltd. v. BIScience Inc.*, No. 2:18-CV-00483-JRG, 2019 U.S. Dist. LEXIS 79843, at *8 (E.D. Tex. May 13, 2019). Nothing more is required under the controlling precedents. *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234 (Fed. Cir. 2010); *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343 (Fed. Cir. 2016); *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1565 (Fed. Cir. 1994). Independently supporting jurisdiction, the Court also found that BI Science allows its customers all over the world to utilize residential proxy devices in ten Texas cities. ECF 82 at 8-9. The Court's jurisdictional findings were supported by evidence including Defendants' own advertising and declarations from Defendant's CEO Kfir Moyal. *Id.*; *see also* ECF 28-3, 28-4, 28-5 and 36-1.

BI Science's "active participation in [providing the accused proxy services within Texas] thus constitutes purposeful availment." *Polar*, 829 F.3d at 1350; *accord Ultravision*, 2020 U.S. Dist. LEXIS 40781, at *19. This conclusion is even more compelling and inevitable in light of the fact that BI Science's proxy services are ***intentionally conducted through*** at least ten Texas cities. *BIScience*, 2019 U.S. Dist. LEXIS 79843, at *8.

**B.  The Settlement Agreement Is Clearly Enforceable Including Based on BI Science's Signed Writings.**

Federal law applies to assessing the validity of settlements. Oppn. at 10. However, even applying state law Rule 11 of the Texas Rules of Civil Procedure as BI Science has advocated would not change the conclusion that the settlement is valid, because BI Science sufficiently (and clearly) manifested assent to the Settlement. BI Science's central argument is that the Settlement

2

**Appx2161**

"was not signed by both parties." Reply, at 2. That is not true under the Fifth Circuit's controlling interpretation of Texas Rule 11: "*[the challenging party's] attorney electronically signed the Notice of Settlement filed in the district court*, as well as multiple e-mails agreeing to the material terms of the agreement. These written, signed documents, which were filed in the district court, constitute an agreement to settle that satisfies the requirements of Rule 11." *Turner v. JPMorgan Chase Bank, N.A.*, 623 F. App'x 188, 189 (5th Cir. 2015) (emphasis added) (citing *Padilla v. La France*, 907 S.W.2d 454, 460–61 (Tex. 1995) (holding that a series of letters reflecting agreement to the material terms of a settlement satisfied Texas Rule 11, because the rule is "analog[ous] to the statute of frauds," functioning to ensure "'that the [settlement] can be ascertained from the writings without resorting to oral testimony'") (citation omitted)); *see also Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 911 (5th Cir. 2000) ("The purpose of the Texas Rule 11 writing requirement is to minimize disputes by allowing the court to ascertain the terms of the agreement without resorting to oral testimony."). The settlement, including the multiple exchanged writings and notice of settlement were all submitted to the Court, and a hearing was held during which BI Science had its opportunity to challenge the validity of the settlement, which it lost. *See e.g.* ECF 166, 170-2, 170-3, 170-4, 170-5, 170-6, 170-7, 170-8, 170-9, 170-10, 170-11, and 170-13.

The Fifth Circuit has unfailingly rejected attempts by a party to invalidate a settlement in reliance upon Texas Rule 11 where it previously submitted a notice of settlement or otherwise acknowledged settlement before the trial court. *Houston v. Holder (In re Omni Video)*, 60 F.3d 230, 232–33 (5th Cir. 1995); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 266-67 (5th Cir. 1995) (holding Rule 11 was satisfied by letters between counsel, which "were on file with the court, and their authenticity was uncontested at the evidentiary hearing"); *Fuentes v.*

3

*Creamland Dairies*, No. 98-50378, 1999 U.S. App. LEXIS 40540, at *3 (5th Cir. May 7, 1999) ("[T]he district court did not clearly err in enforcing such agreement [by exchange of letters] in the face of Fuentes's attempt to unilaterally revoke it.").

This case is indistinguishable from *Turner* and its progeny. As a matter of law, Rule 11 is satisfied where counsel has "***signed a response filed with the Court that reported that . . . 'the parties agreed to settle the above-styled cause*.'"** *Williams v. Sorrells*, No. 3:15-cv-351-M, 2015 U.S. Dist. LEXIS 173460, at *18–19 (N.D. Tex. Nov. 24, 2015); *compare with* ECF 166 ("The Parties hereby notify the Court that all matters in controversy between the Parties have been settled, in principle."). BI Science's assent to the Settlement is unmistakable, because its "attorney electronically signed the Notice of Settlement filed in the district court," (*Turner*, 623 F. App'x at 189), as well as the e-mails acknowledging that "the mediator's proposal has resulted in a settlement," (ECF 170-3). The law is well-settled that "[u]nder these circumstances, [BI Science] is not free to back out of the parties' settlement simply because [it] has not personally executed the final settlement documents." *Williams*, 2015 U.S. Dist. LEXIS 173460, at *19. The same conduct likewise justifies application of the equitable exception to Texas Rule 11.

BI Science also argues that the Settlement might also fail for "missing material terms such as timing of performance," but this too, is meritless under the controlling authorities. *Martineau*, 203 F.3d at 911; *see also Padilla*, 907 S.W.2d at 460–61. Thus, BI Science has failed entirely to identify any material term that cannot be implied from the Settlement, nor any other justification that could overcome the venerable tenet that "the compromise of a disputed claim . . . ought not to be overthrown." *Hennessy v. Bacon*, 137 U.S. 78, 85 (1890). Accordingly, the Federal Circuit is highly likely to affirm.

## II.    THE EQUITIES AND RULE 62 MILITATE AGAINST A STAY

4

The Motion also requires BI Science to prove that the equities support granting it (*Nken*, 556 U.S. 418, 434), but here the equities weigh against granting the Motion. BI Science does not dispute that the receiver account is not an escrow. Regardless, BI Science seeks a discretionary stay without even attempting to satisfy the Rule 62(d) requirement for a "bond or other terms that secure [Luminati's] rights." *See, e.g.*, Fed. R. Civ. P. 62(d); *Hill v. Schilling*, Civil Action No. 3:07-CV-2020-L, 2018 U.S. Dist. LEXIS 214191, at *34-35 (N.D. Tex. Dec. 20, 2018) (denying stay of injunction despite Defendant's offer to post bond as security). The absence of any surety against loss to Luminati, combined with the meritless nature of the Appeal and the admitted probability that BI Science will soon be insolvent, (Reply at 4), entails a deeply vulnerable position for Luminati in the event of a stay. BI Science does not dispute that has been suffering "recurring operating losses" since at least 2017 and the settlement would provide BI Science with 37% of the gross invoiced revenue of transferred customers without cost to Luminati. Instead, BI Science asserts that its continued breach of the Settlement and infringement of Luminati's patents allow it to secure more revenue than under the Settlement. That is not the deal that the parties bargained for. Luminati has already fulfilled its obligations under the Settlement by dismissing its lawsuits against BI Science and otherwise halting enforcement, and yet BI Science—to this day—continues to profit from its patent infringement. Luminati will be wholly deprived of the benefit of the compromise reflected in the Settlement if BI Science is permitted to continue flouting the Settlement during pendency of its meritless Appeal. The Court should not exercise its discretion in granting a stay with such an inequitable result.

## III.    CONCLUSION

BI Science's appeal is meritless for the reasons set forth above and in the Opposition. A stay would violate Rule 62 and prejudice Luminati. Therefore, the Motion should be denied.

5

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF TEXAS

 3                     MARSHALL DIVISION

 4  LUMINATI NETWORKS LTD.        )(

 5                                )(    CIVIL ACTION NO.

 6                                )(    2:18-CV-483-JRG

 7  VS.                           )(    MARSHALL, TEXAS

 8                                )(

 9  BI SCIENCE INC., ET AL.       )(    APRIL 13, 2020

10                                )(    3:07 P.M.

11            SEALED PORTION OF MOTION HEARING

12              HELD BY VIDEOCONFERENCE

13      BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

14          UNITED STATES CHIEF DISTRICT JUDGE

15

16  FOR THE PLAINTIFF:      Mr. Robert M. Harkins, Jr.
                            Mr. Korula T. Cherian
17                          RUYAKCHERIAN LLP
                            1936 University Avenue
18                          Suite 350
                            Berkeley, California 94704
19

20  COURT REPORTER:         Ms. Shelly Holmes, CSR, TCRR
                            Official Reporter
21                          United States District Court
                            Eastern District of Texas
22                          Marshall Division
                            100 E. Houston Street
23                          Marshall, Texas  75670
                            (903) 923-7464
24

25  (Proceedings recorded by mechanical stenography, transcript
    produced on a CAT system.)
```

```
 1  FOR THE PLAINTIFF (CONTINUED):

 2                              Mr. Amadou Kilkenny Diaw
                                Mr. Ronald Wielkopolski
 3                              RUYAKCHERIAN LLP
                                1700 K Street Northwest
 4                              Suite 810
                                Washington, DC 20006
 5
                                Mr. Sidney Calvin Capshaw, III
 6                              CAPSHAW DERIEUX LLP
                                114 East Commerce Avenue
 7                              Gladewater, Texas 75647

 8                              Mr. James Mark Mann
                                MANN TINDEL & THOMPSON
 9                              300 West Main
                                Henderson, Texas 75652
10

11
    FOR THE DEFENDANTS:         Mr. Eric Hugh Findlay
12                              Ms. Debra Elaine Gunter
                                FINDLAY CRAFT PC
13                              102 North College Avenue
                                Suite 900
14                              Tyler, Texas 75702

15

16

17

18

19

20

21

22

23

24

25
```

3

```
1                    I N D E X

2

3  April 13, 2020

4                                              Page

5      Appearances                             1

6      Sealed Portion of Hearing               4

7      Court Reporter's Certificate           47

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  not to have to incur that expense or to publicly file

2  documents on the IPRs.  I mean, that was -- that was a

3  major, major consideration for -- for entering this

4  agreement, is that we wouldn't have to do that.

5        MR. FINDLAY:  But if -- if I might, Your Honor,

6  I --

7        THE COURT:  Go ahead.

8        MR. FINDLAY:  I don't dispute that -- I don't

9  dispute that may have been part of Mr. Harkins's

10  motivation, but there -- in the mediator proposal, there is

11  part of that -- in resolution of the case, we would dismiss

12  the IPRs.  There's no question that was part of the

13  agreement.

14        There was nothing in the agreement about an

15  upcoming deadline, and they didn't want to have file, and

16  they wanted to make sure everything was done by that

17  deadline.  I just want that to be clear.  That sort of

18  detailed specificity is not in the agreement, and we never

19  talked about that until all this kind of blew up.

20        THE COURT:  All right.  Mr. Cornelius, I know

21  you've been on the videoconference, and you've heard the

22  argument that's presented.

23        As the mediator and officer of the Court, was it

24  your understanding that both parties had accepted your

25  mediator's proposal and come to a resolution of this

1  dispute?

2          MR. CORNELIUS:  It was, Your Honor.

3          THE COURT:  All right.  And given the argument

4  about a provision in the resulting documentation that

5  designates you to resolve any unanswered or disputed

6  questions as a binding arbiter, are you willing and able to

7  serve in that capacity if you're called upon by this Court

8  to do that?

9          MR. CORNELIUS:  I am, Your Honor.

10         THE COURT:  Okay.  Well, here's -- here's what I'm

11  going to order, counsel.

12         I am persuaded that when the mediator contacted

13  the Court on February the 23rd by email and said, quote,

14  Judge, we have just settled this case after extensive

15  negotiations and a mediator's proposal, a motion to stay

16  will be forthcoming.  We ask the Court to cancel Monday's

17  hearing.  California counsel is scheduled to board a plane

18  in the next few hours and would like to avoid that.

19  Thanks, signed Bill Cornelius as mediator, I'm convinced

20  that when email was sent and when the following day on the

21  24th both sides knowingly caused to be filed a joint

22  notice with this Court that their disputes had been

23  resolved that there was a resolution and a settlement of

24  this case.

25         I am persuaded and I find that that resolution

1  includes at a minimum a binding provision that any

2  unresolved issues that might not have been otherwise fully

3  documented at the time the Court was advised that the

4  mediator's proposal had been accepted and a settlement had

5  been reached, that any unresolved issues would be resolved

6  by binding arbitration carried out by Mr. Cornelius as an

7  arbitrator and not a mediator.

8        I'm going to order that both parties immediately

9  work with Mr. Cornelius to arrange for a binding

10  arbitration of any unresolved issues related to this

11  settlement and present either the parties' agreement or

12  Mr. Cornelius's binding arbitration award in those regards

13  to the Court before the end of this month so that the Court

14  can enter a resulting final order enforcing the totality of

15  the settlement.

16        It's clear that the major points were agreed to

17  and a meeting of the minds was reached at the time the

18  Court was informed of the settlement.  Both sides were in a

19  hurry to get this settlement done to avoid having a hearing

20  before the Court where people were going to be flying from

21  California and across the country.  You came to me.  You

22  told me in your joint notice that the case had been

23  resolved and the settlement had been reached.  And then I

24  pulled down the hearing, and now we have this dispute.

25        I'm going to invoke the provision designating

1    Mr. Cornelius as an arbiter to act in a binding and

2    non-appealable fashion.  And either you all are going to

3    resolve every issue and dot every "I" and cross every "T"

4    by agreement, or Mr. Cornelius is going to dot those "I's"

5    and cross those "T's," and one way or the other, I'm going

6    to be fully informed as to every aspect of your settlement

7    before the end of this month so that I can enter an order

8    enforcing that agreement, or in the alternative, enforcing

9    the terms as spelled out and reached under the binding

10   arbitration provision.

11        And I will leave it to both sides to work with

12   Mr. Cornelius as to a time and a method, a ways and means

13   to conduct the arbitration, but we're going to get this

14   buttoned up in finality by the end of the month.

15        And if by the end of the month, Mr. Cornelius, the

16   parties haven't reached some agreement on an outstanding

17   term or condition that's been raised, you're to take a

18   position, enter a final ruling as an arbiter, and

19   communicate that to me.  And that will be the answer that

20   I'll apply.

21        Are there questions?

22        Mr. Harkins, do you have questions for the Court?

23        MR. HARKINS:  No questions.

24        THE COURT:  Mr. Findlay, do you have questions?

25        MR. FINDLAY:  No questions, Your Honor.  Thank

47

1                                    <u>CERTIFICATION</u>

2

3           I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9     <u>/S/ Shelly Holmes            </u>           <u>4/15/2020   </u>
      SHELLY HOLMES, CSR, TCRR                      Date
10   OFFICIAL REPORTER
      State of Texas No.: 7804
11   Expiration Date: 12/31/20

12

13

14

15

16

17

18

19

20

21

22

23

24

25