Nos. 2020-2118, -2181, 2021-1664, -1667

# United States Court of Appeals
# for the Federal Circuit

BRIGHT DATA LTD.,

*Plaintiff-Cross-Appellant*,

*v.*

BI SCIENCE (2009) LTD.,

*Defendant-Appellant*

BI SCIENCE INC.,

*Defendant.*

Appeals from the United States District Court for the Eastern District of Texas in No. 2:18-cv-00483-JRG, Chief Judge J. Rodney Gilstrap

---

## BI SCIENCE'S PETITION FOR PANEL REHEARING

---

Michael A. Charish
**Charish Law Group, P.C.**
347 Fifth Avenue, Suite 1402
New York, NY 10016
646.328.0183

John Christopher Rozendaal
William H. Milliken
**Sterne Kessler Goldstein & Fox PLLC**
1101 K Street, NW
Washington, DC 20005
202.371.2600

*Counsel for Appellant*
*BI Science (2009) Ltd.*

Dated: October 27, 2023

**FORM 9. Certificate of Interest**

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2020-2118, -2181, 2021-1664, -1667 |
| **Short Case Caption** | Bright Data Ltd. v. BI Science (2009) Ltd. |
| **Filing Party/Entity** | Appellant BI Science (2009) Ltd. |

> **Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/10/2023

Signature: /s/ William H. Milliken

Name: William H. Milliken

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| BI Science (2009) Ltd. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Findlay Craft PC: Eric H. Findlay | Findlay Craft PC: Kelce S. Wilson | Love Law Firm PC: Gregory P. Love |
| Findlay Craft PC: Robert B. Craft | Liston Abramson LLP: Ronald Abramson | |
| Findlay Craft PC: Debra E. Gunter | Liston Abramson LLP: Mord M. Lewis | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Luminati Networks Ltd. v. BI Science (2009) Ltd., No. 2:19-cv-352 (E.D. Tex.) | BI Science (2009) Ltd. a/k/a BIScience Inc. v. Luminati Networks Ltd., IPR2020-00166 (PTAB) | |
| Luminati Networks Ltd. v. BI Science (2009) Ltd., No. 2:19-cv-397 (E.D. Tex.) | BI Science (2009) Ltd. a/k/a BIScience Inc. v. Luminati Networks Ltd., IPR2020-00167 (PTAB) | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................. i

TABLE OF AUTHORITIES ....................................................... ii

TABLE OF ABBREVIATIONS ............................................... iv

POINTS OF FACT OR LAW OVERLOOKED OR MISAPPREHENDED
    BY THE COURT ...................................................................1

ARGUMENT ...........................................................................3

I.    THE OPINION MISAPPREHENDS FIFTH CIRCUIT PRECEDENT
    ON STANDARD OF REVIEW. ......................................................3

    A.    The Opinion Relies on *Deepwater Horizon*, Which Mandates
        *De Novo* Review Here. .......................................................3

    B.    For Written Contracts, Contract Formation Is a Question of
        Law Reviewed *De Novo*.......................................................5

    C.    Whether Parties Entered into an Arbitration Agreement Is
        Reviewed *De Novo*.............................................................6

    D.    Whether an Agreement Contains All Essential Terms Is
        Reviewed *De Novo*.............................................................8

II.    THE OPINION OVERLOOKS KEY RECORD FACTS, AND
    MISAPPREHENDS TEXAS LAW REGARDING TERMS
    ESSENTIAL TO A BINDING AGREEMENT. ............................9

III.    THE OPINION OVERLOOKS KEY RECORD FACTS, AND
    MISAPPREHENDS TEXAS LAW REGARDING STANDARDS
    FOR BINDING CONTRACTS. ...................................................12

IV.    THE OPINION MISAPPREHENDS THE EFFECT OF AN
    ARBITRATION CLAUSE ON CONTRACT FORMATION. ...................17

CONCLUSION ......................................................................18

# TABLE OF AUTHORITIES

## Cases

*America's Favorite Chicken Co. v. Samaras*,
   929 S.W.2d 617 (Ct. App. TX – San Antonio 1996) ........................................10

*APS Cap. Corp. v. Mesa Air Grp., Inc.*,
   580 F.3d 265 (5th Cir. 2009) ................................................................................8

*Bexar-Mar Int'l, LLC v. Combi Lift GmbH*,
   2020 WL 4979527 (Tex. App. – Houston Aug. 25, 2020)...........................11, 12

*Clarent Energy Servs. v. Leasing Ventures, LLC*,
   2020 WL 1173706 (Tex. App. – Houston, Mar. 12, 2020)..........................12, 16

*Cruit v. MTGLQ Invs., LP*,
   2018 WL 4610594 (E.D. Tex. Sept. 26, 2018).................................................16

*Datatreasury Corp. v. Wells Fargo & Co.*,
   522 F.3d 1368 (Fed. Cir. 2008) ..................................................................7, 8, 17

*In re Deepwater Horizon*,
   786 F.3d 344 (5th Cir. 2015) .........................................................................3, 4, 5

*Farm Credit Bank of Tex. v. Farish*,
   32 F.3d 184 (5th Cir. 1994) ...................................................................................6

*Flores v. BJ's Restaurant Operations Co.*,
   2023 WL 6533452 (5th Cir. Oct. 6, 2023) ...........................................................7

*Liberto v. D.F. Stauffer Biscuit Co.*,
   441 F. 3d 318 (5th Cir. 2006) ................................................................8, 10, 11

*Scaife v. Associated Air Center Inc.*,
   100 F.3d 406 (5th Cir. 1996) .............................................................................5, 6

*Stanwood Boom Works LLC v. BP Expl. & Prod., Inc.*,
   476 F. App'x 572 (5th Cir. 2012) ..........................................................................6

*Sundown Energy, L.P. v. Haller*,
   773 F.3d 606 (5th Cir. 2014) ................................................................................4

*USHealth Grp., Inc. v. South*,
    636 F. App'x 194 (5th Cir. 2015) ........................................................................8

*Wang Labs., Inc. v. Applied Comput. Sci., Inc.*,
    958 F.2d 355 (Fed. Cir. 1992) ...........................................................................6

## Other Authorities

Fed. R. Evid. 408 ............................................................................................14, 15

# TABLE OF ABBREVIATIONS

BB – BI Science's Principal Brief, Dkt. 73

YB – BI Science's Response and Reply Brief, Dkt. 81

Op. – Opinion, Dkt. 128

## POINTS OF FACT OR LAW OVERLOOKED OR MISAPPREHENDED BY THE COURT

BI Science respectfully submits the panel overlooked or misapprehended the following points of fact or law:

1.    On four grounds, Fifth Circuit precedent requires *de novo* review of BI Science's arguments that the Mediator's Proposal (Appx5-6) is not a valid and binding settlement agreement:

    a.    Challenges to the validity of a settlement agreement are reviewed *de novo*.

    b.    For written contracts, contract formation is a question of law, reviewed *de novo*.

    c.    The Mediator's Proposal contains an arbitration term, and the existence of an arbitration agreement is reviewed *de novo*.

    d.    Whether an agreement contains all essential terms is reviewed *de novo*.

2.    Under Fifth Circuit precedent, because the Mediator's Proposal is not a typical settlement agreement providing for an exchange of money and releases, but rather calls for specific performance of obligations that would shut down BI Science's proxy-service business, timing terms are essential. The absence of those essential terms renders the Mediator's Proposal unenforceable.

3.    To form a binding contract, Texas law requires absolute, unconditional, unequivocal, and positive acceptance of an offer. Numerous facts in the record — including that the Mediator's Proposal did not exist at the time it was purportedly agreed to — preclude a finding that Bright Data carried its burden of proving a binding contract.

4.    Under Federal Circuit and Fifth Circuit precedent, where parties have not yet reached a meeting of the minds on all essential terms of an agreement, the existence of an arbitration clause in the not-yet-final agreement cannot convert the agreement into a binding one.

**ARGUMENT**

## I.   THE PANEL MISAPPREHENDED FIFTH CIRCUIT PRECEDENT ON STANDARD OF REVIEW.

The Opinion takes its standard of review from the Fifth Circuit but conflicts with Fifth Circuit standard-of-review principles — on at least four points. In appealing the district court's ruling that the Mediator's Proposal constitutes a binding and enforceable settlement agreement, BI Science urged this Court to apply a *de novo* standard of review. *See* BB 38-39. In the alternative, BI Science argued that, to the extent the Court applies a clear-error standard, a finding that "there was a meeting of minds in which both parties agreed to the Mediator's Proposal as a settlement agreement is clearly erroneous." *Id.* at 39.

### A.   The Opinion Relies on *Deepwater Horizon*, Which Mandates *De Novo* Review Here.

The panel declined to implement *de novo* review, choosing instead a dual standard of (1) abuse of discretion, and (2) clear error. Quoting the Fifth Circuit case of *Deepwater Horizon*, the panel held: "Under Fifth Circuit law, 'a district court may summarily enforce a settlement agreement if no material facts are in dispute, and in such circumstances we review the district court's order for abuse of discretion only.'" Op. 5-6 (quoting *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015)).

But *Deepwater*'s next sentence establishes an exception to that abuse-of-discretion standard. The exception applied in *Deepwater*, and it applies here, but

3

the panel overlooked it: "*However*, 'when opposition to enforcement of the settlement is based … on *a challenge to the validity of the agreement itself*, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement.'" *Id.* (quoting *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984)).[1]

When a party challenges the validity of a purported settlement agreement, the standard of review is essentially the *de novo* standard for reviewing summary judgment. As *Deepwater* explains, both "summary enforcement of a settlement agreement and summary judgment … deprive a party of his right to be heard in the litigation." 786 F.3d at 354.

After extracting the wrong standard from *Deepwater*, the panel relied on *Sundown Energy, L.P. v. Haller* to hold that, when "the district court's enforcement of a settlement agreement does depend on resolution of factual disputes, its fact []findings are reviewed for clear error." Op. 6 (citing 773 F.3d 606, 614 (5th Cir. 2014)). But *Sundown* is inapposite because "the existence and validity of the settlement agreement [were] not at issue." 773 F.3d at 612.

In this case, "the existence and validity of the settlement agreement" are precisely what is at issue. *See*, *e.g.*, BB 1-2, 60-61; YB 2; Op. 10. Thus, under

---

[1] All emphasis added unless otherwise indicated.

4

*Deepwater*, this Court was obligated to "treat [BI Science's] assertions as true and affirm the district court only if [Bright Data] is entitled to enforcement of the agreement as a matter of law." The panel did not do that. It should grant rehearing to rectify that error and review the district court's decision *de novo*.

### B.    For Written Contracts, Contract Formation Is a Question of Law Reviewed *De Novo.*

Beyond *Deepwater*, three independent doctrines of Fifth Circuit law indicate *de novo* review here. The first pertains to cases, like this one, where the "evidence clearly shows that the parties intended that a written contract would govern their agreed upon obligations." *See Scaife v. Associated Air Center Inc.*, 100 F.3d 406, 410 (5th Cir. 1996) (cited at BB 58). Bright Data cannot dispute that point because — after the parties purportedly reached some form of agreement on February 23, 2020: (1) Bright Data compiled the Mediator's Proposal, added signature blocks, and asked BI Science to sign (which it refused to do); (2) drafted a settlement agreement with signature blocks and asked BI Science to sign (which it refused to do); and (3) drafted an "implementation mechanics schedule" with signature blocks and asked BI Science to sign (which it refused to do). *See* Appx1496-1497; Appx1502-1503; Appx1521; Appx1526-1527; Appx1533-1536.

In *Scaife*, the question presented was whether a proposed agreement "was accepted and became a binding contract without the signatures of the parties." 100 F.3d at 410. Held the Fifth Circuit: "When reviewing written negotiations, the

question of whether an offer was accepted and a contract was formed is primarily *a question of law* for the court to decide." *Id*.; *accord, e.g.*, *Stanwood Boom Works LLC v. BP Exploration & Production, Inc.*, 476 F. App'x 572, 574 (5th Cir. 2012). The Fifth Circuit reviews questions of law *de novo*. *See*, *e.g.*, *Farm Credit Bank of Texas v. Farish*, 32 F.3d 184, 187 (5th Cir. 1994).

The Fifth Circuit held in *Scaife* that "the parties contemplated the formation of a binding agreement to include the signatures of both parties," and because the parties did not sign, "no contract was ever formed." 100 F.3d at 411. This Court reached the same conclusion in *Wang Labs., Inc. v. Applied Computer Sciences, Inc.*: "[*I*]*t is inconceivable that Wang and ACS intended the unexecuted ... draft settlement agreement to be interpreted as a binding contract.*" 958 F.2d 355, 359 (Fed. Cir. 1992) (cited at, *e.g.*, BB 53, 54; YB 21). Under Fifth Circuit precedent such as *Scaife*, the panel should grant rehearing and consider *de novo* whether Bright Data carried its burden of proving a binding settlement contract despite the fact that it inserted signature blocks and requested BI Science to sign three different contracts, but BI Science refused to sign any of them.

## C.    Whether Parties Entered into an Arbitration Agreement Is Reviewed *De Novo.*

The disputed settlement agreement in this case is also a disputed arbitration agreement, and the Fifth Circuit reviews the existence of an arbitration agreement *de novo*. The district court granted Bright Data's motions to "confirm the validity

and enforceability of the [Mediator's Proposal] as *a first step* before exercising the arbitration clause," which is Term 17 in the Mediator's Proposal. *See*, *e.g.*, Appx6; Appx1721. The district court's judgment confirms an arbitration award and holds that, under the "Arbitration Award and the Court's April 13, 2020 ruling, the [Mediator's Proposal] is a valid, binding agreement between the parties." Appx2. That holding requires *de novo* review.

In an appeal from the Eastern District of Texas, this Court held: "'In a case involving the arbitrability of a claim, *the Federal Circuit reviews the district court's determination that the parties have contractually bound themselves to arbitrate disputes de novo*, and its factual findings for clear error.'" *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1371 (Fed. Cir. 2008) (cited at BB 43, 44, 60) (brackets omitted). The Court applied Fifth Circuit law holding that the first step in that determination is "'*whether a valid agreement between the parties exists*'" — the same "first step" that the district court took in this case. *Id*. (quoting *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001)).

Confirming the standard of review in *Datatreasury*, the Fifth Circuit reiterated just weeks ago: "Determining if there is a valid agreement to arbitrate is a question of law, which we review *de novo*." *Flores v. BJ's Restaurant*

*Operations Co.*, 2023 WL 6533452, at *1 (5th Cir. Oct. 6, 2023); *see also*, *e.g.*, *USHealth Grp., Inc. v. South*, 636 F. App'x 194, 202 (5th Cir. 2015).

Under Federal Circuit and Fifth Circuit precedent, then, the Court should grant rehearing, and review *de novo* "whether a valid agreement between the parties exists," *Datatreasury*, 522 F.3d at 1371.

### D.    Whether an Agreement Contains All Essential Terms Is Reviewed *De Novo*.

As it argued below, BI Science argued on appeal that the Mediator's Proposal cannot be a binding and enforceable agreement because it lacks essential terms. *See*, *e.g.*, BB 56-59; YB 14-15, 17-18, 22. Even if the Court were to decline to apply *de novo* review categorically to the settlement-agreement issue, rehearing would still be necessary to enable *de novo* review of the issue of essential terms. That is what Fifth Circuit law unequivocally requires.

The Fifth Circuit has held: "Whether a given term is 'essential' to a contract is a matter of law to be reviewed *de novo*, a determination turning largely on the type of contract at issue ...." *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F. 3d 318, 324 (5th Cir. 2006) (cited at BB 57; YB 15). Echoing the same language, the Fifth Circuit in *APS Cap. Corp. v. Mesa Air Grp., Inc.* explained that, while "an enforceable contract requires a 'meeting of the minds,'" "not every 'meeting of the minds' is a contract." 580 F.3d 265, 271 (5th Cir. 2009). "The minds may not have

met on all essential terms. The question of indefiniteness — whether an agreement reaches all essential terms of a given transaction — is *one of law for the court*." *Id.*

In sum, the panel overlooked or misapprehended four points of Fifth Circuit law (and, in the arbitration context, a corresponding point of Federal Circuit law) that require *de novo* review of at least some, if not all, of BI Science's arguments that the Mediator's Proposal is not a valid and binding settlement agreement or arbitration agreement. The panel rejected BI Science's request for *de novo* review and applied an abuse-of-discretion/clear-error standard. It should now grant rehearing to rectify that mistake and perform a *de novo* review.

## II.    THE PANEL OVERLOOKED KEY RECORD FACTS AND MISAPPREHENDED TEXAS LAW REGARDING TERMS ESSENTIAL TO A BINDING AGREEMENT.

Regardless of the standard of review, rehearing is necessary to address the substantive points that the panel overlooked and misapprehended in rejecting BI Science's argument that the Mediator's Proposal is unenforceable due to the absence of essential terms. The Opinion asserts that "BI Science has not explained, either here or at the district court, why terms specifying the timing of performing certain obligations were necessarily essential to this particular settlement agreement. Time for performance has been found nonessential in other settlement agreements." Op. 8.

But the cases on which the Opinion relies involved typical, plain-vanilla agreements, where one side makes a payment or performs a basic act in exchange for a release or payment from the other (see cases cited at Op. 8-9). In this case, by contrast, the Mediator's Proposal provides for specific performance of an intricate series of complex steps, including BI Science shutting down its flagship GeoSurf proxy service and referring customers to Bright Data. Yet missing are material terms such as the timing and procedures of BI Science's phased exit from the business.

For example, Term 5 says only that BI Science "leaves" the business. In five days? Five months? Five years? That was left open, yet would radically alter the bargain — precluding a finding of an enforceable agreement, per *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318 (5th Cir. 2006).

In *Liberto*, the Fifth Circuit noted that "Texas courts have consistently held that a contract may be held void for indefiniteness if it fails to specify 'the time of performance ….'" *Id*. at 324. The district court entered a settlement agreement as a final judgment, and defendant Stauffer partially performed the agreement. But the Fifth Circuit reversed, holding that the agreement was a non-binding agreement to agree because material terms such as time of performance, duration, and "enforcement mechanisms" were absent. *See id*. at 324-25; *see also*, *e.g.*, *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 623 (Ct. App. TX –

San Antonio 1996) ("more certainty is necessary in an action for specific performance than is necessary in an action for damages."); *Bexar-Mar Int'l, LLC v. Combi Lift GmbH*, 2020 WL 4979527, at \*8 (Tex. App. – Houston Aug. 25, 2020).

Here, too, the timing of the interdependent series of acts required to exit the proxy-server business and refer customers is all-important. Precisely when those acts occur could impact entitlement to millions of dollars in revenues and payments (according to Bright Data), and the very continued existence of BI Science. Timing of performance here is not only material and essential, but *existential*.

In dismissing this argument, the panel not only overlooked *Liberto* in favor of settlement cases that are off base, it overlooked the dispositive record evidence that both Bright Data and the district court effectively conceded that the Mediator's Proposal lacks essential terms. After BI Science refused to sign the Mediator's Proposal and while the parties were negotiating a settlement agreement, Bright Data sent BI Science a three-page proposed "implementation mechanics schedule." The schedule contains 18 interdependent steps and enforcement mechanisms that attempted to supply many of the material terms missing from the framework reflected in the Mediator's Proposal — such as the components and timing of BI Science's exit from the proxy-service business and timing and procedures for customer referral. *See* Appx1526-1527; Appx1533-1536.

Yet it is the district court's final judgment that conclusively establishes that the Mediator's Proposal was incomplete and that additional terms were essential. The judgment incorporates the arbitration award, which adopts an implementation schedule based on Bright Data's proposed schedule. *See* Appx12-13. And the arbitration award rules that *"[a]n implementation schedule is essential here in order to give meaning and effect to the Arbitrator's resolution of the disputed terms"* of the Mediator's Proposal. Appx8. The panel overlooked this fact as well.

BI Science respectfully urges the Court to grant rehearing and, upon rehearing, find that the Mediator's Proposal is not a binding and enforceable settlement agreement because it lacks essential terms.

## III. THE PANEL OVERLOOKED KEY RECORD FACTS AND MISAPPREHENDS TEXAS LAW REGARDING STANDARDS FOR BINDING CONTRACTS.

The Opinion never mentions the legal standard for proving a binding contract, nor does it identify the factual basis for holding that Bright Data satisfied the legal standard in this case. Texas law requires "*a clear and definite offer followed by a clear and definite acceptance*," and that the parties *agree[d] to the same thing, in the same sense, at the same time.*" *Bexar-Mar*, 2020 WL 4979527, at *6, *8 (citation omitted); *Clarent Energy Servs. v. Leasing Ventures, LLC*, 2020 WL 1173706, at *8 (Tex. App. – Houston, Mar. 12, 2020). Bright Data failed to carry the burden of proving a binding agreement under that standard.

12

The panel found "no basis to disturb the district court's conclusion that when 'both sides knowingly caused to be filed a joint notice ... there was a resolution and settlement of this case." Op. 7. But how? The Opinion does not say what terms and acts comprised the required clear and definite offer, the clear and definite acceptance, and the parties' agreement to the same thing, in the same sense, at the same time, to form a binding agreement. The panel overlooked the absence of factual support in the record for such a showing.

In February 2020, the parties engaged in court-ordered mediation with mediator William Cornelius. *See* Appx1449. On February 23, Cornelius e-mailed counsel stating, "I am very pleased to report that the mediator's proposal has resulted in a settlement." *See* Appx1501. Cornelius did not attach any version of that mediator's proposal; instead, he referred to a disjointed tangle of terms from multiple sources that ambiguously modified and counter-modified each other.

BI Science counsel Eric Findlay ("Findlay") replied: "*Thanks for all your hard work Bill.*" *Id*. Just seven words, none of which communicated affirmative assent to anything more than a thank-you note. Neither party yet had any integrated document purporting to be an agreed-to proposed list of terms, let alone a binding settlement agreement.

Then, with BI Science's approval, Bright Data filed a Joint Motion to Stay All Deadlines and Notice of Settlement ("Joint Motion"), which said: "The parties

13

hereby notify the Court that all matters ... have been settled, *in principle*." Appx1474. The district court granted the motion. Appx1477.

So ended February 23, the date the district court held that there had been a "*resolution and a settlement*." Appx1693. But neither the district court nor this Court explained how the standard for a binding agreement had been met that day.

The *next* day, February 24, Bright Data created the Mediator's Proposal and sent it to Cornelius for his signature, without copying BI Science. *See* Appx1485; YB 19-20. It was not until February 25 that Bright Data sent the Mediator's Proposal to BI Science. *See* Appx1521. Thus, as this Court seemingly overlooked, both the February 23 Joint Notice and the two short Findlay emails *predated the existence* of the Mediator's Proposal purported to be the binding agreement.

The Opinion also overlooks how, on its face, the Mediator's Proposal appeared to be *non*-binding. It was legended as a *non*-final settlement-negotiation communication: "*Protected by Fed. R. Evid. 408*" (emphasis in original); and it refers to itself as a "proposal" as distinguished from a "settlement," which might be "reached *as a result* of this proposal." *See* Appx5-6.

Further, the Opinion overlooks how even *Bright Data* contemporaneously treated the Mediator's Proposal as a non-binding agreement in principle. On February 26, Bright Data's counsel informed the PTAB that "the Parties have reached agreement *in principle* to globally settle their underlying patent disputes"

14

and that the district court "stayed the litigation to permit the Parties to *finalize settlement* and to file appropriate dismissals." Appx1816.

Over the next few weeks, settlement negotiations continued. On March 9, Bright Data sent BI Science its "implementation mechanics schedule." The Opinion overlooks the fact that, two weeks after purportedly entering a binding agreement, Bright Data legended the mechanics schedule **"CONFIDENTIAL – SUBJECT TO FRE 408."** Appx1526-1527; Appx1533-1536 (emphasis in original).

The Opinion places substantial weight on BI Science's March 25, 2020 opposition to Bright Data's settlement-enforcement motion, treating it as a sort of implicit judicial admission that BI Science viewed the Mediator's Proposal as binding. *See* Op. 6-7. But that overlooks or misapprehends BI Science's contentions in opposition not only that the Mediator's Proposal was not a final agreement but that it was merely a "*framework proposed* by the mediator as a way to *hopefully* resolve this case." Appx1549. Though cited in the Opinion, the panel also misapprehended BI Science's contention that settlement was incomplete because "[m]issing details, terms to implement the agreement, timeline, clarifications and other … information" were necessary to complete the settlement. *See* Appx1551-1552.

In any event, the Opinion does not recite or apply the governing Texas standard to determine whether an agreement is binding; it rests on the finding that BI Science's counsel "acknowledged that *something* was agreed to" because counsel stated multiple times at the hearing that the parties agreed to a "framework to settle the case." *See* Op. 7 (emphasis in original). That holding misapprehends Texas contract law.

Under Texas law, it is not sufficient that "something was agreed to." The law requires an "'unqualified, absolute, unconditional, unequivocal, unambiguous, [and] positive' acceptance" of an offer "to form a contract." *Cruit v. MTGLQ Inv'rs, LP*, 2018 WL 4610594, at *3 (E.D. Tex. Sept. 26, 2018) (quoting *Scott v. Vandor*, 671 S.W.2d 79, 84 (Tex. App. – Houston 1984)). It also demands proof that the parties "agree[d] to the *same* thing" — not *something* — "in the same sense, at the same time." *See Clarent* 2020 WL 1173706, at *8.

There is no evidence in the record that BI Science agreed to the Mediator's Proposal, or all 17 of its terms, as a binding settlement. Accordingly, even on an abuse-of-discretion standard (let alone *de novo*), the Court should grant rehearing and hold that Bright Data did not satisfy its burden of proving that the Mediator's Proposal is a binding contract under Texas law.

**IV.    THE PANEL MISAPPREHENDED THE EFFECT OF AN ARBITRATION CLAUSE ON CONTRACT FORMATION.**

This Court found "no basis to disturb the district court's conclusion that "there was a resolution and a settlement of this case," which included "*at a minimum a binding provision* that … any unresolved issues would be resolved by binding arbitration." Op. 7. The panel erred to the extent it considers the arbitration clause in the Mediator's Proposal to be a factor in finding that the parties had agreed to a binding settlement.

As BI Science has shown, an arbitration provision in an otherwise not-yet-binding agreement is not self-executing. The arbitration term is of no more effect than any other until the contract in its entirety becomes binding. As even Bright Data's counsel acknowledged before the district court, "*Once* the parties agreed there is a settlement, *then* there's an arbitration provision, and that can be enforced." Appx1665.

In fact, Bright Data's stated reason for bringing an enforcement motion was to ask the district court "to confirm the viability and enforceability of the agreement *as a first step* before exercising the arbitration clause." *See* Appx1721; Appx1827. As discussed above in Point I.C, that is what Federal Circuit and Fifth Circuit precedent demand. A court must first determine "whether a valid agreement between the parties exists." *See*, *e.g.*, *Datatreasury*, 522 F.3d at 1371. There are no shortcuts. An arbitration provision in a settlement framework, or a

17

settlement "in principle," has no bearing on whether that agreement is enforceable. A not-yet-enforceable agreement does not bootstrap itself into an enforceable agreement just because it contains an arbitration provision to resolve disputes.

Therefore, to the extent this Court affirmed the district court's finding of a binding settlement agreement because of the "binding provision" to arbitrate, the Court overlooked both record facts and binding precedent. This issue too warrants rehearing.

## CONCLUSION

The petition should be granted.

Dated: October 27, 2023

Respectfully submitted,

Michael A. Charish
**Charish Law Group, P.C.**
347 Fifth Avenue, Suite 1402
New York, NY 10016
646.328.0183

/s/ *William H. Milliken*
John Christopher Rozendaal
William H. Milliken
**Sterne Kessler Goldstein & Fox P.L.L.C.**
1100 New York Ave., N.W.
Washington, DC 20005
202.371.2600

*Counsel for Appellant BI Science (2009) Ltd.*

# ADDENDUM

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BRIGHT DATA LTD.,**
*Plaintiff-Cross-Appellant*

**v.**

**BI SCIENCE (2009) LTD.,**
*Defendant-Appellant*

**BI SCIENCE INC.,**
*Defendant*

---

2020-2118, 2020-2181, 2021-1664, 2021-1667

---

Appeals from the United States District Court for the Eastern District of Texas in No. 2:18-cv-00483-JRG, Chief Judge J. Rodney Gilstrap.

---

Decided: August 30, 2023

---

ROBERT M. HARKINS, JR., Cherian LLP, Berkeley, CA, argued for plaintiff-cross-appellant. Also represented by KORULA T. CHERIAN; RONALD WIELKOPOLSKI, Washington, DC; COLBY DAVIS, Allen & Overy LLP, Washington, DC.

MICHAEL A. CHARISH, Charish Law Group PC, New York, NY, argued for defendant-appellant. Also argued by

WILLIAM MILLIKEN, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC. Also represented by JOHN CHRISTOPHER ROZENDAAL,.

———————————

Before PROST, SCHALL, and HUGHES, *Circuit Judges*.

PROST, *Circuit Judge*.

Bright Data Ltd. ("Bright Data")[1] sued BI Science (2009) Ltd. and BI Science Inc. (individually or collectively, "BI Science")[2] for patent infringement in the Eastern District of Texas. The district court entered final judgment that: (1) incorporated all terms of the parties' mediated settlement agreement; (2) incorporated all terms of the arbitration award (the product of an arbitration that followed the district court's enforcement of the settlement); and (3) held claim 108 of U.S. Patent No. 9,241,044 ("the '044 patent") invalid as indefinite. J.A. 3. BI Science appeals, arguing that the district court erred by finding an enforceable agreement. Bright Data cross-appeals the district court's determination that claim 108 of the '044 patent is invalid as indefinite. We affirm.

## BACKGROUND

Bright Data brought claims of patent infringement—asserting the '044 patent and U.S. Patent No. 9,742,866 ("the '866 patent")—and false advertising against BI

———————————

[1]   Bright Data was formerly known as Luminati Networks Ltd. Order (June 9, 2021), ECF No. 40.

[2]   The district court indicated that it is unclear whether BI Science (2009) Ltd. and BI Science Inc. are merely two names for the same entity or whether the two entities are separate. J.A. 2 n.1.

Science.[3]  J.A. 656–83; *see also* Am. Compl., *Luminati Networks Ltd. v. BI Sci. Inc.*, No. 2:18-cv-00483 (E.D. Tex. Feb. 19, 2019), ECF No. 28.  BI Science, a company headquartered and with its principal place of business in Israel, moved to dismiss for lack of personal jurisdiction. J.A. 727–32.  The district court denied that motion, determining that it had specific personal jurisdiction over BI Science based on its purposeful contacts with Texas and the direct relationship between those contacts and its alleged infringement and false advertising.  J.A. 858–68.

After its motion to dismiss was denied, BI Science answered and counterclaimed for declaratory judgment of invalidity.  Answer to Am. Compl. and Countercl. ¶¶ 109–114, *Luminati Networks Ltd.*, No. 2:18-cv-00483 (E.D. Tex. May 28, 2019), ECF No. 85.  Subsequently, as part of claim construction, claim 108 of the '044 patent was determined to be invalid as indefinite.  J.A. 1373–74, 1410.  This determination was later incorporated into the district court's final judgment, J.A. 3, and is the subject of Bright Data's cross-appeal.

Following its claim construction order, the district court noted its "opinion that th[e] case could benefit from renewed mediation efforts" and ordered the parties to conduct a mediation session within ten days.  J.A. 1449.  Nineteen days later, on February 23, 2020, the parties filed a joint motion to stay and notice of settlement, which (1) stated "[t]he Parties hereby notify the Court that all matters in controversy between the Parties have been settled, in principle," (2) requested a thirty-day stay "so that appropriate dismissal papers may be submitted," and (3) was signed by counsel for Bright Data and BI Science. J.A. 1474–75.  The district court granted the joint motion

---

    [3]    Bright Data also brought claims of tortious interference, J.A. 683, but the district court declined to exercise supplemental jurisdiction over those claims, J.A. 861–63.

to stay and cancelled the hearing set for the following day. J.A. 1477. The next day, the mediator also filed a report indicating that mediation had "resulted in settlement of all claims." J.A. 1478.

Bright Data moved to enforce the settlement about a month after the joint notice of settlement was filed. J.A. 1479–95. BI Science opposed with arguments related to why its performance should be excused. J.A. 1547–54. At a hearing on the motion to enforce, BI Science argued for the first time that there was no binding agreement between the parties. The district court disagreed, determining that "[i]t's clear that the major points were agreed to and a meeting of the minds was reached at the time the Court was informed of the settlement." J.A. 1694. And since "that resolution includes at a minimum a binding provision that any unresolved issues . . . would be resolved by binding arbitration," the court instructed the parties to either work together to resolve, or submit to arbitration to resolve, any outstanding issues related to the settlement terms. J.A. 1693–94.

After arbitration, the district court entered final judgment that fully incorporated the settlement agreement and arbitration award. J.A. 3. The judgment also incorporated the court's indefiniteness determination on claim 108 of the '044 patent. *Id.* BI Science timely appealed. Bright Data timely cross-appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

BI Science raises two issues on appeal. First, it argues that the district court erred by denying its motion to dismiss for lack of personal jurisdiction. Second, it argues that the district court erred by finding a binding agreement between the parties. As for the cross-appeal, Bright Data raises a single issue. It argues that the district court's indefiniteness determination as to claim 108 of the '044 patent was erroneous. We address these issues in that order:

(1) personal jurisdiction; (2) existence of an enforceable agreement; and (3) indefiniteness.

## I

Because jurisdiction is a threshold matter, we address it first. Unlike with subject-matter jurisdiction, a party can consent to personal jurisdiction. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–04 (1982). BI Science dedicated significant briefing to its argument that the district court erred by denying BI Science's motion to dismiss for lack of personal jurisdiction. *See* Appellant's Br. 21–38; Appellant's Reply Br. 24–31. But BI Science also acknowledged that if we affirm the district court's determination that a binding settlement agreement was formed, then the district court had personal jurisdiction over BI Science for purposes of enforcing that settlement agreement—i.e., it had consented to personal jurisdiction at least to that extent. Oral Arg. at 0:40–57.[4] For the reasons discussed below, we affirm the district court's determination that there was an enforceable agreement. As a result, we need not reach BI Science's personal-jurisdiction arguments related to the underlying lawsuit.[5]

## II

We apply the law of the regional circuit, here the Fifth Circuit, when reviewing a district court's enforcement of a settlement agreement. *Panduit Corp. v. HellermannTyton Corp.*, 451 F.3d 819, 825 (Fed. Cir. 2006). Under Fifth

---

[4]    https://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-2118_06072023.mp3.

[5]    This dispute about personal jurisdiction also does not impact the cross-appeal issue because BI Science itself brought a counterclaim of invalidity. *See* Answer to Am. Compl. and Countercl. ¶¶ 109–114, *Luminati Networks Ltd.*, No. 2:18-cv-00483 (E.D. Tex. May 28, 2019), ECF No. 85.

Circuit law, "[a] district court may summarily enforce a settlement agreement if no material facts are in dispute, and in such circumstances we review the district court's order for abuse of discretion only." *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015) (footnote omitted); *cf. Haggart v. United States*, 943 F.3d 943, 947 (Fed. Cir. 2019) ("[W]e join the majority of our sibling courts in holding that a district court's decision whether to summarily enforce a settlement agreement is reviewed for an abuse of discretion."). When the district court's enforcement of a settlement agreement does depend on resolution of factual disputes, its factfindings are reviewed for clear error. *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 614 (5th Cir. 2014).

BI Science argues that any finding by the district court that there was a meeting of the minds related to the settlement agreement was clearly erroneous. Appellant's Br. 39. Considering the record before the district court and the positions taken before it, we discern no error.

When Bright Data moved to enforce the settlement against BI Science, it represented that "[a] full and complete set of terms was reduced to writing and agreed upon by both sides and confirmed in writing," and it attached that writing as an exhibit. J.A. 1482. Additionally, Bright Data presented a detailed factual narrative about mediation and the parties' resulting seventeen-term agreement. J.A. 1482–85. In opposition, BI Science did not contest Bright Data's position that there was an agreement between the parties, nor did it challenge Bright Data's factual narrative. Instead, BI Science's arguments were *premised* on the existence of an agreement; it asked that performance under the settlement be either excused or delayed. J.A. 1549–50. BI Science did contend, in support of its excuse or delay arguments, that the operative agreement was not the final or formal version of the settlement. J.A. 1550 n.3; J.A. 1552. Still, regardless of this characterization of the agreement's formality, one would search in vain for any hint that BI Science did not consider itself bound or did not

intend to bind itself to the agreement when it filed this opposition.

When the district court held a hearing on the motion to enforce, BI Science argued for the first time that the mediated settlement "by itself is not a fully binding settlement" and that it did not "contain[] all the material elements and requirements needed to form a completely binding settlement agreement." J.A. 1659–60. However, its attorney also affirmed that he had knowingly participated in the filing of the joint notice of settlement representing that all matters were resolved, J.A. 1658–59—the precise type of notice the district court noted BI Science's counsel had "signed off on . . . probably hundreds of times in [his] practice before th[at] [c]ourt," J.A. 1676. Further, while BI Science's counsel was careful not to call the parties' agreement a settlement, he still acknowledged that *something* was agreed to. J.A. 1661 ("We agreed and came to an agreement on a framework to settle the case."); J.A. 1672 ("[W]e agreed to a framework proposed by the mediator as a way to hopefully get this case resolved."); J.A. 1676–77 ("[W]e had an agreement to settle the case in principle based on the mediator's proposal in that framework, if you will."); J.A. 1692 ("There's no question that was part of the agreement."). The district court also heard testimony from the mediator that he understood both parties to have accepted his proposal and resolved the dispute. J.A. 1692–93.

The district court did not err in concluding that the parties' correspondence and conduct, both at the time of agreement and in response to the motion to enforce, objectively indicated mutual assent. Thus, we see no basis to disturb the district court's conclusion that when "both sides knowingly caused to be filed a joint notice . . . there was a resolution and a settlement of this case," which included "at a minimum a binding provision that . . . any unresolved issues would be resolved by binding arbitration." J.A. 1693–94.

We also note that the extent to which BI Science raised factual disputes related to a meeting of the minds is difficult to discern. Indeed, even on appeal, BI Science confusingly argues both that the facts surrounding the mediated settlement are undisputed, Appellant's Br. 39, while also contending that "Bright Data cannot demonstrate that there are no disputed issues of material fact . . . because there is no objective evidence of a meeting of the minds, or mutual assent," *id.* at 56. The district court made reasonable inferences about mutual assent based on the facts as presented in Bright Data's motion, which BI Science did not contest or challenge, and in light of representations BI Science's counsel made to the court. BI Science has not shown clear error in those inferences or, to whatever extent they were put at issue, pointed to a clearly erroneous apprehension of the facts that underlie them.

As for BI Science's additional argument that the district court erred in finding a binding agreement because the mediated settlement was missing material terms, we disagree. Appellant's Br. 51–53. We note that this argument too was not presented in BI Science's opposition to the motion to enforce. At the hearing, BI Science argued that the mediated settlement was "a multifaceted, complicated agreement," and given this complexity it was missing key terms. J.A. 1673. The district court did not err in rejecting this contention. *See* J.A. 1694.

BI Science primarily argues that the absence of terms defining time for performance rendered the agreement nonbinding—i.e., timing was essential or material. We are not persuaded. "Generally, the materiality of a contract term is determined on a contract-by-contract basis, in light of the circumstances of the contract." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 514 (Tex. 2014). BI Science has not explained, either here or at the district court, why terms specifying the timing of performing certain obligations were necessarily essential to this particular settlement agreement. Time for

performance has been found nonessential in other settle-ment agreements. *See CherCo Props. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 266 (Tex. App. 1999); *cf. Houston Cnty. v. Leo L. Landauer & Assocs.*, 424 S.W.2d 458, 463 (Tex. App. 1968) ("[W]here the contract does not fix a time for performance, the law allows reasonable time for its performance."); *Jennings v. Jennings*, 625 S.W.3d 854, 865 (Tex. App. 2021) (noting that even where timing is included as a term, "a date of performance in a contract does not in itself mean that the parties intended timely per-formance to be of the essence"). We do not see a reason to conclude otherwise based on the circumstances here.[6]

Next, BI Science argues that the district court erred by concluding that there was an enforceable settlement agree-ment because the agreement does not comply with the re-quirements of Texas Rule of Civil Procedure 11 ("Texas Rule 11"). We need not address whether the agreement here complies with Texas Rule 11 because BI Science for-feited this argument by failing to raise it at the district court. Indeed, there are several independent reasons to find forfeiture here. First, BI Science never mentioned Texas Rule 11 at the district court until after a final judg-ment was entered. Oral Arg. at 20:36–21:19; *see also* Ap-pellant's Reply Br. 16 (citing only briefing on a motion to stay enforcement of the final judgment in support of its ar-gument that this issue was raised at the district court). Next, even setting aside BI Science's failure to raise the specific rule, its applicability is contingent on a threshold choice-of-law argument that BI Science also failed to pre-sent. Finally, evaluating compliance with Texas Rule 11 would require resolving factual issues that were not

---

[6]    We also reject BI Science's argument that terms 10 and 12 of the agreement are facially contradictory. The terms simply refer to the separate obligations of each party.

presented based on a record that was not developed with those issues in mind.

At the outset, we are unpersuaded that noncompliance with Texas Rule 11 is merely a new argument supplied in support of a properly raised issue—namely, contract invalidity. BI Science's position would require us to find that any assertion that a contract is invalid preserves all arguments about every possible basis for contract invalidity. This asks too much. *See Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 401–02 (5th Cir. 2022) (where the district court had passed on contract enforceability in general, the issue of contract invalidity under a particular state statute was forfeited where it was raised for the first time on appeal); *cf. In re KP Eng'g, L.P.*, 63 F.4th 452, 457 (5th Cir. 2023) (theory of unjust enrichment based on fraud, duress, or undue advantage presented for the first time on appeal was forfeited even where theory of unjust enrichment based on passive receipt of a benefit was presented at the district court); *Green Tree Servicing v. House*, 890 F.3d 493, 503 (5th Cir. 2018) (finding new theory in support of invalidity of arbitration clause was forfeited because it was not raised before the district court even where a different theory of invalidity was raised at the district court); *Colony Ins. Co. v. Wright ex rel. Wrongful Death Beneficiaries of Wright*, 16 F.4th 1186, 1189 n.1 (5th Cir. 2021) (finding forfeiture where party pointed to a new clause in insurance policy on appeal to support its previously raised position that there was coverage); *id.* at 1191 (Costa, J., concurring) (explaining why even though contract interpretation is a legal question subject to de novo review, it is not a "pure question of law" such that it should be excepted from the rules of forfeiture); *cf. also Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1273 (Fed. Cir. 2012) ("This court reviews claim constructions without deference. However, a party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below." (cleaned up)).

Simply put, BI Science's Texas Rule 11 arguments do not amount to "supplementing an [existing invalidity] argument with new authority." *Thomas*, 34 F.4th at 402. Instead, compliance with Texas Rule 11 is a new issue, which was not presented—via BI Science's cursory arguments about contract invalidity at the hearing—or passed upon at the district court.

Regardless, BI Science's failure to raise an issue about the applicability of Texas state law at the district court is another reason to find forfeiture here. The Fifth Circuit has concluded that "[f]ailure to raise an argument before the district court waives that argument, including an argument for choice-of-law analysis." *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011); *see also Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 540 (5th Cir. 1987).[7] Even though Bright Data's motion to enforce the settlement argued that federal law governed questions of contract validity because of the underlying federal claims, J.A. 1489, BI Science did not ask the district court to engage in a choice-of-law analysis, assert that Texas law applied, or identify any particularities to Texas contract law (even aside from Texas Rule 11) that might impact the district court's determination that there was an enforceable agreement between the parties. The application of Texas Rule 11 was predicated on BI Science first prevailing on this unadvanced choice-of-law argument at the district court.[8]

---

[7] "Though previous cases may have used the term 'waiver' instead of 'forfeiture,' their holdings are good law for a case, like this one, involving the issue of forfeiture." *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 n.8 (Fed. Cir. 2020).

[8] Because the only substantive contract law difference identified between federal common law and Texas state law relates to BI Science's forfeited argument about

Finally, even if the applicability of Texas law and non-compliance with Texas Rule 11 were both proper new arguments in support of an issue already presented, BI Science still failed to preserve the factual disputes required to resolve the question of compliance with Texas Rule 11. Texas Rule 11 requires, among other things, that a settlement "be in writing, signed and filed with the papers as part of the record." Tex. R. Civ. P. 11. However, the district court was never asked to pass upon the question of whether the series of emails between the parties and the mediator culminating in the agreement to file a joint notice of settlement were, taken together, sufficient to satisfy the writing requirement—or which emails should be considered part of the whole. Likewise, the district court was never asked to determine which emails from BI Science's attorney could be considered "signed" by considering "the context and surrounding circumstances." *Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 529 (Tex. App. 2011). Indeed, at oral argument, BI Science could not point to anywhere in the record where its counsel raised the issue of signatures at all. Oral Arg. at 23:46–24:40. "Once we start dissecting the record, we find ourselves exactly where the forfeiture rule says we should not be—deciding issues based on inadequately developed facts." *Colony Ins. Co.*, 16 F.4th at 1191 (Costa, J., concurring).

In sum, we affirm the district court's determination that there was a binding settlement agreement between the parties. Since BI Science does not challenge any of the arbitrator's determinations about disputed contract terms, we affirm the district court's judgment to the extent it

————————————————

Texas Rule 11, we decline to resolve the parties' dispute about which law applies. Citations to Texas contract cases in this opinion are illustrative of general contract principles and do not indicate an implicit resolution of this dispute.

incorporated the settlement agreement and incorporated the arbitration award.

## III

On cross-appeal we also affirm the district court's determination that claim 108 of the '044 patent is indefinite. The '044 patent generally relates to "an apparatus and method for improving communication over the Internet by using intermediate nodes, and in particular, to using devices that may doubly function as an end-user and as an intermediate node." '044 patent col. 1 ll. 13–17.

Claim 108 is reproduced below:

108.    A method for fetching over the Internet a first content, identified by a first content identifier, *by a first device*, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier *via a second device* identified in the Internet by a second identifier, using a first server, the method comprising the steps of:

> (a) sending the second identifier to the first server;
>
> (b) receiving a second request from the first device, the second request includes the first content identifier and the third identifier;
>
> (c) in response to receiving the second request, sending the first content identifier to the second server using the third identifier;
>
> (d) receiving the first content from the second server; and
>
> (e) in response to receiving the first content, sending the first content to the first device using the first identifier.

'044 patent claim 108 (emphasis added).

Section 112's definiteness requirement mandates that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). "We review a determination of indefiniteness de novo." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). To the extent reliance on extrinsic evidence is appropriate, we review any relevant factfindings for clear error. *Id.*

The district court first concluded that the preamble of claim 108 is limiting. J.A. 1366. Bright Data does not challenge that determination. Next, the district court concluded that the claim is indefinite because "[t]he recital of 'via a second device' in Claim 108 fails to find any reasonably clear meaning in the context of the remainder of the claim, in particular as to the steps recited in the body of the claim." J.A. 1373. The court also found Bright Data's arguments and expert testimony about whether all the steps *can* be performed by the second device unhelpful in providing reasonable certainty about which steps *must* be performed by the second device. J.A. 1374. We agree with the district court's analysis.

Bright Data argues that a person of ordinary skill in the art ("POSA") would understand that all the steps of claim 108 are performed by the "second device." In other words, despite the preamble's requirement that the steps are, among other things, "[a] method for fetching over the Internet a first content, identified by a first content identifier, *by a first device*," '044 patent claim 108 (emphasis added), a POSA would understand that a first device need not perform any of the enumerated steps. In support of this argument, Bright Data contends that a POSA would understand both that "second device" is synonymous with the specification's discussion of "tunnel device" and that the focus of claim 108 is on the steps performed by this second/tunnel device. Bright Data contrasts this

understanding with claim 81, bearing an identical preamble, which it contends involves steps a POSA would understand to be performed by the client/first device. In addition, Bright Data points to expert testimony explaining that the enumerated steps in claim 108 *could* be performed by a second device. Cross-Appellant's Br. 48 (citing J.A. 1047–51). We are not persuaded that the specification or this expert testimony resolves the uncertainty created by the language of claim 108.

The specification does not define a tunnel device as a second device. In fact, the specification explains that "[a] device may be *both* a client device and a tunnel device, and the roles may be assumed one at a time, or may be employed in parallel using multitasking or multiprocessing." '044 patent col. 51 ll. 43–46 (emphasis added). Thus, even if we look to the specification's descriptions of a tunnel device, there is still a zone of uncertainty about the roles of a "first device" and a "second device" required to practice claim 108.

Similarly, Bright Data's expert's testimony that a second device could perform the steps does not resolve this uncertainty. If all the steps are performed by the "second device," then the role of "by a first device" in the preamble is unknown. Alternatively, if "by a first device" means that some of the steps are performed by that device (Bright Data insists this is not the case), then it is uncertain which steps those are. Thus, even if Bright Data is correct that a POSA would understand from the language of the steps alone that they *can* be performed by a second device, there is no reasonable certainty about how to harmonize an understanding of the limiting preamble with the body of the claim.

For these reasons, we affirm the district court's determination that claim 108 of the '044 patent is invalid as indefinite.

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive.  We affirm the district court's final judgment.

**AFFIRMED**

COSTS

No Costs.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**   20-2118, -2181, 2021-1664, -1667

**Short Case Caption:**   Bright Data Ltd. v. BI Science (2009) Ltd.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑    the filing has been prepared using a proportionally-spaced typeface and includes  3,811  words.

☐    the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐    the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 10/27/2023         Signature:    /s/ William H. Milliken

                                    Name:    William H. Milliken